No. 21-16756

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TODD YUKUTAKE, and DAVID KIKUKAWA,
*Plaintiffs-Appellees,*

v.

HOLLY T. SHIKADA, in her Official Capacity
as the Attorney General of the State of Hawaiʻi,
*Defendant-Appellant,*[1]

and

CITY AND COUNTY OF HONOLULU,
*Defendant.*[2]

On Appeal from the United States District Court for the District of Hawaiʻi
Honorable J. Michael Seabright, Chief United States District Judge
(Civil No. 1:19-cv-00578 JMS-RT)

---

## OPENING BRIEF OF DEFENDANT-APPELLANT
## HOLLY T. SHIKADA

---

[1] HOLLY T. SHIKADA succeeded CLARE E. CONNORS as Attorney General of the State of Hawaiʻi on December 10, 2021 and is automatically substituted as a party pursuant to Fed. R. App. P. 43(c)(2).

[2] Defendant CITY AND COUNTY OF HONOLULU was dismissed with prejudice by stipulation in the District Court on June 12, 2020. 3-ER-440-444 (ECF 53).

HOLLY T. SHIKADA    4017
  Attorney General of the State of
  Hawaiʻi
KIMBERLY T. GUIDRY    7813
  Solicitor General

ROBERT T. NAKATSUJI    6743
  First Deputy Solicitor General
CARON M. INAGAKI    3835
KENDALL J. MOSER    6515
  Deputy Attorneys General
Dept. of the Attorney General
425 Queen Street
Honolulu, Hawaiʻi 96813
Telephone: (808) 586-1360
E-mail: Kimberly.T.Guidry@hawaii.gov
        Robert.T.Nakatsuji@hawaii.gov
        Caron.M.Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov

Counsel for Defendant-Appellant HOLLY T. SHIKADA, in her
Official Capacity as the Attorney General of the State of Hawaiʻi

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    STATEMENT OF JURISDICTION ...........................................1

III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........2

IV.   STATEMENT OF AUTHORITIES ............................................3

V.     STATEMENT OF THE CASE .................................................3

VI.   SUMMARY OF THE ARGUMENT .........................................5

VII.   REVIEWABILITY AND STANDARD OF REVIEW .................9

VIII.   ARGUMENT.......................................................................10

       A.     Ninth Circuit Law on the Second Amendment. ...................10

       B.     The History of Hawaii's Firearm Permitting and Registration Laws.....................................................................13

       C.     The District Court Erred in Striking Down the Ten-Day Expiration Date for Permits to Acquire. ...............................22

            1.     Longstanding Prohibitions and Conditions and Qualifications on the Commercial Sale of Firearms. ...................................................................22

            2.     Intermediate Scrutiny Should Have Been Applied in this Case. .................................................................25

            3.     The Evidence Supporting the Ten-Day Expiration Date for Permits to Acquire ......................................27

            4.     Common Sense Supports the Ten-Day Expiration Date for Permits to Acquire ......................................30

       D.     The District Court Erred in Striking Down the Requirement that Firearms Be Inspected In-Person at Registration. .........................................................................41

1. Longstanding Prohibitions and Conditions and Qualifications on the Commercial Sale of Firearms. ....................................................................41

2. Intermediate Scrutiny Should Have Been Applied in this Case. ..................................................................43

3. The Evidence Supporting In-Person Inspection at Registration ..................................................................45

4. Common Sense Supports In-Person Inspection at Registration ..................................................................51

E. The District Court Erred in Not Appreciating that Plaintiffs' Facial Challenge Should Have Failed. ..............................55

IX. CONCLUSION..............................................................................56

ADDENDUM

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE FOR BRIEFS

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

## Cases

*Adams Fruit Co., Inc. v. Barrett*,
494 U.S. 638 (1990) ...................................................................... 48, 56

*Burson v. Freeman*,
504 U.S. 191 (1992) .................................................................. *passim*

*Crowley Cutlery Co. v. United States*,
849 F.2d 273 (7th Cir. 1988) ................................................................39

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) (en banc) ............................................10

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ("*Heller I*") ................................................. *passim*

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021) (en banc) ........................... 23, 31, 32, 52

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995) ....................................................................... 31, 52

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) ................................................................22

*Hall v. U.S. Dep't of Agriculture*,
984 F.3d 825 (9th Cir. 2020) ................................................................48

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*").................................. 22, 42, 43, 55

*Heller v. District of Columbia*,
45 F. Supp. 3d 35 (D.D.C. 2014) ("*Heller III*"), *aff'd in part and
rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015) .......................................43

*Heller v. District of Columbia*,
801 F.3d 264 (D.C. Cir. 2015) ("*Heller IV*").................................. 42, 43, 53, 54

*Italian Colors Rest. v. Becerra*,
878 F.3d 1165 (9th Cir. 2018) ..............................................................55

*Jackson v. City & County of San Francisco*,
746 F.3d 953 (9th Cir. 2014) ............................................................. 10, 11-12, 26

*Kansas v. Glover*,
140 S. Ct. 1183 (2020) ........................................................................36

*Mai v. United States*,
952 F.3d 1106 (9th Cir. 2020) ..............................................................27

*Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456 (1981)..............................................................................40

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
700 F.3d 185 (5th Cir. 2012) ......................................................... 22, 23

*Nevada ex rel. Dep't of Transp. v. United States*,
925 F. Supp. 691 (D. Nev. 1996)..........................................................29

*Nordyke v. King*,
681 F.3d 1044 (9th Cir. 2012) (en banc) ....................................... 55-56

*Pena v. Lindley*,
898 F.3d 969 (9th Cir. 2018) ...................................................... *passim*

*Porter v. California Dep't of Corrections*,
419 F.3d 885 (9th Cir. 2005) ......................................................... 30, 51

*Silvester v. Harris*,
843 F.3d 816 (9th Cir. 2016) .....................................................*passsim*

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) (en banc) ...............................................24

*Turner Broadcasting System, Inc. v. F.C.C.*,
520 U.S. 180 (1997).................................................................. 26-27, 44

*United States v. Buckland*,
289 F.3d 558 (9th Cir. 2002) ...............................................................48

*United States v. Carter*,
669 F.3d 411 (4th Cir. 2012) ....................................................30-31, 48, 52

iv

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ....................................................... 10, 12

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ...............................................................51

*United States v. Mobley,*
   956 F.2d 450 (3d Cir. 1992) .............................................................51

*United States v. Otherson*,
   637 F.2d 1276 (9th Cir. 1980) ..........................................................33

*United States v. Salerno*,
   481 U.S. 739 (1987) ..........................................................................55

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) ............................................................23

*Young v. Hawaiʻi*,
   No. 12-17808 (9th Cir.) (en banc) ................................... 4, 22, 23, 55

**Federal and Hawaiʻi Statutes and Legislative History**

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1343 ...................................................................................1

Haw. Rev. Stat. § 134-2 (1968) .........................................................17

Haw. Rev. Stat. § 134-2 (2011, Supp. 2018, 2019, 2020) ............... *passim*

   Haw. Rev. Stat. § 134-2(a) .................................................. 38, 40, 49

   Haw. Rev. Stat. § 134-2(b) ..............................................................41

   Haw. Rev. Stat. § 134-2(e) ................................................... 2, 5, 34

   Haw. Rev. Stat. § 134-2(f) ..............................................................40

Haw. Rev. Stat. § 134-3 (1968) .........................................................17

Haw. Rev. Stat. § 134-3 (2011, Supp. 2018, 2019, 2020) ................. 1, 3, 18-19, 55

Haw. Rev. Stat. § 134-3(a) ................................................................49

Haw. Rev. Stat. § 134-3(b) ......................................................... 43, 49

Haw. Rev. Stat. § 134-3(c) ......................................................... 2, 3, 5

Haw. Rev. Stat. § 134-7.3 ..................................................................38

Haw. Rev. Stat. § 134-8 (2011) ................................................... 48, 49

Haw. Rev. Stat. § 134-8.5 (Supp. 2019) .............................................49

Haw. Rev. Stat. § 134-10 (1968) .......................................................17

Haw. Rev. Stat. § 134-10 (2011) .................................................. 19, 50

Haw. Rev. Stat. § 134-23(a)(6) ..........................................................53

Haw. Rev. Stat. § 134-24(a)(6) ..........................................................53

Haw. Rev. Stat. § 134-25(a)(6) (2011) ...............................................53

Haw. Rev. Stat. § 710-1016.3 ............................................................40

Haw. Rev. Stat. § 710-1016.4 ............................................................40

Rev. Laws Haw. ch 128 (1925) .........................................................16

Rev. Laws Haw. § 2541 .....................................................................16

Rev. Laws Haw. § 2542 .....................................................................16

1907 Haw. Sess. Laws Act 85, § 1 .....................................................13

1907 Haw. Sess. Laws Act 85, § 2 .....................................................13

1907 Haw. Sess. Laws Act 85, §§ 1-8 at 112-15..................................13

1907 Haw. Sess. Laws Act 85, §§ 1-2 at 112-13..................................43

1919 Haw. Sess. Laws Act 124, §§ 1-2 at 166-67................................ 13, 14, 23, 29

1923 Haw. Sess. Laws Act 156, § 1 at 185-86 ....................................14

1927 Haw. Sess. Laws Act 206, §§ 1-31 at 209-17..............................14

1927 Haw. Sess. Laws Act 206, § 5 at 209-10 .......................................... 14, 54

1927 Haw. Sess. Laws Act 206, § 18 at 213.................................................14

1927 Haw. Sess. Laws Act 206, § 23 at 215.................................................14

1933 Haw. Sess. Laws (Special Sess.) Act 26, § 1-17 ................................ 6, 15, 29

1933 Haw. Sess. Laws (Special Sess.) Act 26, §§ 3, 4 at 36-38................ 15-16

1933 Haw. Sess. Laws (Special Sess.) Act 26, § 4 .................................. 23, 28

1933 Haw. Sess. Laws (Special Sess.) Act 26 § 6 at 210 ........................ 15, 17

1933 Haw. Sess. Laws (Special Sess.) Act 26 § 7 at 71-11.............................14

1933 Haw. Sess. Laws (Special Sess.) Act 26 § 8 at 39 .................................17

1933 Haw. Sess. Laws (Special Sess.) Act 26 § 13 at 212 .............................15

1981 Haw. Sess. Laws Act 239 § 3 at 463-64 ........................................18

1988 Haw. Sess. Laws Act 275, §§ 1-6 at 510-17.................................17

1990 Haw. Sess. Laws Act 195, §§ 1-7 at 422-24.................................20

2002 Haw. Sess. Laws Act 224, §§ 1-6 at 894-96.................................40

2020 Hawaii Laws Act 74 (H.B. 2744) (Westlaw) .................................21

2020 Haw. Sess. Laws Act 74, §§ 1-9 at 479-83............................. *passim*

2020 Haw. Sess. Laws Act 74, § 2.................................................... 21, 46, 47

2020 Haw. Sess. Laws Act 74, § 3.................................................... 21, 46

2020 Haw. Sess. Laws Act 74, § 5.................................................... *passim*

Act 74, Part I (§ 1).................................................................45

Act 74, Part II (§§ 2-5)...........................................................46

Act 74, Part III (§§ 6-9).........................................................21, 46

H. Stand. Comm. Rep. No. 89, in 1933 House Journal, at 427 ....................... 15, 28

vii

S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at 1420 ...........................14

S. Stand. Comm. Rep. No. 384, in 1927 Senate Journal, at 1023 .........................15

S. Stand. Comm. Rep. No. 3058, in 1990 Senate Journal, at 1242 .......................20

Commentary on Haw. Rev. Stat. §§ 710-1016.3 and 710-1016.4..........................40

**Statutes from Other States**

430 Ill. Comp. Stat. 65/2, 65/7 ............................................................33

Cal. Penal Code §§ 26840, 31615, 31655.................................................33

Conn. Gen. Stat. § 29-36i(a) ..............................................................39

Conn. Gen. Stat. §§ 29-33, 29-36f, 29-36h, 29-37a, 29-37p, 29-37r .....................33

D.C. Code §§ 7-2502.01, 7-2502.06.......................................................34

Mass. Gen. Laws ch. 140, § 131A .........................................................35

Mass. Gen. Laws ch. 140, §§ 131A, 131E.................................................35

Mass. Gen. Laws ch. 140, § 131E(b).......................................................23

Mass. Gen. Laws ch. 140, §§ 121, 129B, 129C, 131A, 131E ..............................32

Mass. Gen. Laws ch. 140, §§ 121, 131 ....................................................33

Mass. Gen. Laws ch. 140, §§ 121, 131, 129B ..............................................34

Md. Code Pub. Safety §§ 5-123(b) & (c); 5-124(c) & (d).....................................33

Md. Code Pub. Safety § 5-117.1............................................................ 32, 33

Md. Code Pub. Safety § 5-117.1(k)(1) ......................................................39

Md. Code Pub. Safety §§ 5-101(r), 5-117, 5-123, 5-124.....................................33

Mich. Comp. Laws § 28.422................................................................ 32, 37

Mich. Comp. Laws § 28.422a ..............................................................32

N.C. Gen. Stat. § 14-402 ..................................................................34

N.J. Stat. § 2C:58-3 ......................................................................32

Neb. Rev. Stat. § 69-2407 .............................................................39

Neb. Rev. Stat. §§ 69-2404, 69-2407, 69-2409 ...........................33

N.Y. Penal Law § 400.00 ..............................................................33

R.I. Gen. Laws § 11-47-35.............................................................34

Rev. Code Wash. § 9.41.090..........................................................33

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...............................................................2

Fed. R. App. P. 43(c)(2)...................................................................1

**Other Authorities**

2A Sutherland Statutory Construction § 46:5 (2021) (7th ed.) ......... 28-29

Alexander D. McCourt, et al., *Purchaser Licensing, Point-of-Sale
   Background Check Laws, and Firearm Homicide and Suicide in 4
   US States, 1985-2017*, 110 (no. 10) Am. J. of Pub. Health 1546,
   1549 (Oct. 2020),
   https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7483089/pdf/AJPH
   .2020.305822.pdf ....................................................................... 24, 30

Alexander Pope, *An Essay on Criticism* (1711) .....................................52

*Firearm Registrations in Hawaii, 2020*, Department of the Attorney
   General, Crime Prevention & Justice Assistance Division, at 1,
   https://ag.hawaii.gov/cpja
   /files/2021/03/Firearm-Registrations-in-Hawaii-2020.pdf...................37

*Licensing*, Giffords Law Center, https://giffords.org/lawcenter/gun-
   laws/policy-areas/owner-responsibilities/licensing/.............................32

*Testimony of Hawai'i County Police Department*, Hawai'i State
   Legislature, https://www.capitol.hawaii.gov/
   Session2020/Testimony/HB2744_HD1_TESTIMONY_PSM_03-
   12-20_.PDF (at pdf 2)..........................................................................51

*Untraceable – The Rising Specter of Ghost Guns*, Everytown for Gun Safety (May 14, 2020), https://everytownresearch.org/report/the-rising-specter-of-ghost-guns/ ................................................................53

## I.    INTRODUCTION

In this case, the District Court invalidated portions of two Hawaiʻi firearm statutes:  (1) a provision that established a ten-day expiration date for permits to acquire handguns; and (2) a provision that required the in-person inspection of firearms at the time of registration.  In ruling in favor of Plaintiffs-Appellees TODD YUKUTAKE and DAVID KIKUKAWA ("Plaintiffs"), the District Court disregarded authoritative case law, disregarded or misunderstood legislative history, and failed to apply common sense.  Defendant-Appellant HOLLY T. SHIKADA,[3] in her official capacity as the Attorney General of the State of Hawaiʻi ("Defendant"), respectfully requests that this Court reverse the District Court's decision and direct the District Court to grant summary judgment in favor of Defendant.

## II.    STATEMENT OF JURISDICTION

This case is a challenge to the constitutionality of portions of Sections 134-2 and 134-3 of the Hawaiʻi Revised Statutes based on the Second Amendment to the U.S. Constitution.   Therefore, the District Court had jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

---

[3] HOLLY T. SHIKADA succeeded CLARE E. CONNORS as Attorney General of the State of Hawaiʻi on December 10, 2021 and is automatically substituted as a party pursuant to Fed. R. App. P. 43(c)(2).

On August 16, 2021, the District Court issued its Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Counter Motion for Summary Judgment. 1-ER-041-073. The District Court declared the challenged portions of the statutes unconstitutional and entered an injunction. *Id.* On September 23, 2021, the District Court entered its Order (1) Clarifying Remedies; and (2) Granting in Part and Denying in Part Defendant's Motion for Stay Pending Appeal, ECF No. 113, which clarified its prior decision and granted a partial stay pending appeal with respect to one claim. 1-ER-004-040. A final Judgment based on these orders was entered on September 23, 2021. 1-ER-003.

Defendant filed her Notice of Appeal on October 14, 2021. 3-ER-469-475. Pursuant to 28 U.S.C. § 1291 (final decisions) and Fed. R. App. P. 4(a)(1)(A) (thirty days to file), this Court has jurisdiction over this appeal.

## III. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err in granting summary judgment to Plaintiffs and denying summary judgment to Defendant when it held that the ten-day expiration date for permits to acquire handguns under Section 134-2(e) of the Hawai'i Revised Statutes violated the Second Amendment to the U.S. Constitution?

2.      Did the District Court err in granting summary judgment to Plaintiffs and denying summary judgment to Defendant when it held that the requirement of

2

in-person inspection of firearms at the time of registration under Section 134-3(c) of the Hawaiʻi Revised Statutes violated the Second Amendment to the U.S. Constitution?

## IV. STATEMENT OF AUTHORITIES

Defendants set forth the pertinent constitutional provisions, statutes, and rules in an Addendum attached below.

## V. STATEMENT OF THE CASE

On October 24, 2019, Plaintiffs filed their Verified Complaint for Declaratory and Injunctive Relief against Defendant and against Defendant CITY AND COUNTY OF HONOLULU ("the City"), challenging, among other things, portions of Sections 134-2 and 134-3. 3-ER-445-468.

On June 12, 2020, the City entered into a Joint Stipulation with Plaintiffs that settled the claims against it. 3-ER-440-444. The City was dismissed with prejudice but the case proceeded against Defendant. *Id.*

On July 20, 2020, Plaintiffs filed their Motion for Summary Judgment. ECF 54. On August 12, 2020, Defendant filed her combined Counter Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. ECF 60.

At a hearing on October 19, 2020, the District Court discussed a recent amendment to Section 134-3(c) and denied the pending Motions for Summary

Judgment without prejudice.  3-ER-439.  The District Court ordered Plaintiffs to file an amended complaint to clarify the statutory provisions at issue in the case. *Id.*  The District Court also ordered that after Plaintiffs file their amended complaint, the case would be stayed until the Ninth Circuit issued its opinion in *Young v. Hawaiʻi*, No. 12-17808 (9th Cir.) (en banc).  3-ER-439.

On October 30, 2020, Plaintiffs filed their First Amended Complaint.  3-ER-417-438.

On March 24, 2021, the Ninth Circuit issued its en banc decision in *Young*. The District Court ordered the instant case reopened on March 25, 2021.  ECF 80.

On April 28, 2021, Plaintiffs filed another Motion for Summary Judgment. 3-ER-383-416.  On May 28, 2021, Defendant filed her combined Counter Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment.  2-ER-279-312.  On June 7, 2021, Plaintiffs filed their Reply and Opposition to Defendant's Counter Motion for Summary Judgment.  2-ER-135-157.  On June 14, 2021, Defendant filed her Reply Memorandum.  2-ER-115-127.

A hearing on the two Motions for Summary Judgment was held on June 28, 2021.  1-ER-074-112; ECF 102 .

On August 16, 2021, the District Court issued its Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Counter Motion for

4

Summary Judgment. 1-ER-041-073. The District Court declared the challenged portions of Sections 134-2 (e) and 134-3(c) unconstitutional and enjoined Defendant's officers, agents, servants, employees, and all persons in active concert with Defendant from enforcing them. *Id.*

The District Court subsequently allowed Defendant to file a Motion for Stay Pending Appeal on an expedited basis. ECF 112. On August 31, 2021, Defendant filed her Motion for Stay Pending Appeal in the District Court. ECF 113.

On September 23, 2021, the District Court entered its Order (1) Clarifying Remedies; and (2) Granting in Part and Denying in Part Defendant's Motion for Stay Pending Appeal, ECF No. 113, which clarified its prior decision, granted a stay with respect to the ten-day expiration date for permits to acquire, and denied a stay with respect to the in-person inspection at registration requirement. 1-ER-004-040. Judgment based on these orders was entered on September 23, 2021. 1-ER-003.

Defendant filed a Notice of Appeal on October 14, 2021. 3-ER-469-475.

## VI.    SUMMARY OF THE ARGUMENT

The District Court erred in striking down the ten-day expiration date for permits to acquire. The District Court improperly failed to apply the exception for "longstanding prohibitions" because it refused to consider 20th century laws, in violation of numerous Court of Appeals and Supreme Court decisions. The

5

District Court also improperly failed to apply the exception for "conditions and qualifications on the commercial sale of arms[.]"

The District Court purported to apply intermediate scrutiny to this case but in fact scrutinized this case to a degree that amounted to strict scrutiny. The District Court failed to consider whether the "government interest … would be achieved less effectively absent the regulation[,]" did not defer to the Legislature's "predictive judgments," rejected the Legislature's "reasonable inferences," and disregarded the legislative history.

The District Court erred in believing that the statute was not supported by evidence. The District Court ignored the legislative history of the statute that enacted the ten-day expiration date. The District Court failed to understand that the general purpose of a bill also applies to the specific provisions within the bill. It is a cardinal rule of statutory construction that a statute's general purpose applies to its subsidiary provisions as well. Like the rest of Act 26, the ten-day expiration date provision had a public safety purpose in helping "law enforcing agencies" "control[] the sale, transfer and possession of firearms[.]" And that provision was intended to provide a "better means" of doing so by adding a short expiration date to permits to acquire. There are also studies that support the efficacy of permitting or licensing requirements as a whole in reducing gun violence. Furthermore, the

District Court failed to construe the evidence and inferences in the light most favorable to Defendant as the nonmoving party.

The District Court also refused to apply common sense to this case, notwithstanding the fact that many appellate decisions have endorsed the use of common sense. The District Court did so based on the mistaken assumption that Hawaiʻi is an outlier among states in the way it handles permitting requirements. In fact, Hawaiʻi is well within the tradition established by many states. In addition, the District Court erred in assuming that common sense is dependent upon popularity or unanimity rather than the strength of the logical connection. Here, the common sense principle that should have been applied was that a short expiration date for a permit to acquire, such as ten days, ensures that the information upon which a permit is based is accurate by the time the handgun is acquired. The District Court refused to accept this as common sense, even though it is similar to the approach taken in cases like *Burson v. Freeman*.

The District Court also erred in striking down the requirement that firearms be inspected in-person at registration. First, the District Court erred in failing to apply the exception for "longstanding prohibitions[.]" Basic registration requirements, like having serial numbers, are longstanding in American law. In-person inspection of a firearm is a corollary to registration because it enforces the requirement of having a serial number. Incidental enforcement provisions have

been upheld if the underlying regime is lawful and enforceable too.  Hawaii's in-person inspection requirement is a corollary to a registration requirement (i.e., having a serial number) that dates back to 1907.  Registration is also a longstanding "condition[] and qualification[] on the commercial sale" of firearms, and in-person inspection is valid as a corollary to that exception as well.

As with the ten-day expiration date, the District Court improperly subjected the in-person inspection requirement to what amounted to strict scrutiny even though it purported to apply intermediate scrutiny.  The District Court failed to consider whether the "government interest … would be achieved less effectively absent the regulation[,]" did not defer to the Legislature's "predictive judgments," rejected the Legislature's "reasonable inferences," and disregarded the legislative history.

The District Court erred in believing that the statute was not supported by evidence.  The District Court severely misinterpreted the legislative history of Act 74.  Even though the preamble to the "ghost guns" part of the bill expressly mentioned the amendment of "certain requirements relating to firearm registration[,]" the District Court refused to see the connection between the requirement of in-person inspection at registration and the ghost guns issue.  The purpose of in-person inspection is to ensure that the required engraving or embedding of serial numbers on ghost guns is done legibly, permanently, and

accurately, but the District Court refused to see this. In addition, there is other legislative text in Hawaii's statutory scheme for firearms, such as laws prohibiting certain types of firearms and accessories, laws requiring registration of firearms in private party sales, laws requiring registration of firearms coming from out of state, and laws prohibiting altering or defacing serial numbers, that provided additional purposes supporting the in-person inspection requirement. The District Court again failed to construe the evidence and inferences in the light most favorable to Defendant as the nonmoving party.

The District Court further ignored the common sense conclusion that in-person inspection of the firearm verifies the accuracy of the serial number, ensures that the firearm otherwise complies with Hawaiʻi law, and confirms the identity of the firearm to facilitate tracing by law enforcement. The District Court also improperly relied on a case from the District of Columbia Circuit that is distinguishable from the circumstances in Hawaiʻi.

Finally, the District Court erred in not appreciating that Plaintiffs' facial challenge should have failed because not all applicants would have been harmed by the challenged statutes and Plaintiffs' harm was de minimis in any event.

## VII. REVIEWABILITY AND STANDARD OF REVIEW

Defendant opposed Plaintiffs' claims in her combined Counter Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Motion for

Summary Judgment, filed on May 28, 2021. 2-ER-279-312. Defendant also opposed Plaintiffs' claims in her Opposition to Plaintiffs' Concise Statement and Concise Statement in Support of her Counter Motion, also filed on May 28, 2021. 2-ER-158-278. Defendant also opposed Plaintiffs' claims in her Reply Memorandum, filed on June 14, 2021. 2-ER-115-127. The District Court ruled on Plaintiffs' claims in its August 16, 2021 Order and its September 23, 2021 Order. 1-ER-041-073; 1-ER-004-040.

A court reviews de novo the constitutionality of a statute. *See United States v. Chovan*, 735 F.3d 1127, 1131 (9th Cir. 2013). An appellate court also reviews a district court's grant of summary judgment de novo. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

## VIII. ARGUMENT

**A.    Ninth Circuit Law on the Second Amendment.**

Following the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), most courts of appeals, including the Ninth Circuit, have adopted a two-step analysis for Second Amendment cases. *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). "The two-step inquiry … '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.'" *Id.*

10

In the first step, the question is "'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations and brackets omitted). In *Heller I*, the Supreme Court set forth non-exhaustive categories of "presumptively lawful regulatory measures" that are presumed to be consistent with the historical scope of the Second Amendment:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on **longstanding prohibitions** on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or **laws imposing conditions and qualifications on the commercial sale of arms**.

*Heller I*, 554 U.S. at 626–27 & n.26 (emphases added). The Court, however, did not define the contours of these "presumptively lawful" categories. *See id.* at 635 ("[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when these exceptions come before us.").

"If a prohibition falls within the historical scope of the Second Amendment, [the court] must then proceed to the second step of the Second Amendment inquiry to determine the appropriate level of scrutiny." *Jackson*, 746 F.3d at 960. When ascertaining the appropriate level of scrutiny, the court considers: "(1) how close

the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Id.* at 960-61 (internal quotation marks omitted). "A law that implicates the core of the Second Amendment right **and** severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate. '[I]f a challenged law does not implicate a core Second Amendment right, *or* does not place a substantial burden on the Second Amendment right,' the court may apply intermediate scrutiny." *Silvester v. Harris*, 843 F.3d 816, 822 (9th Cir. 2016) (emphases added) (citations omitted).

"[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Chovan*, 735 F.3d at 1138. And in determining whether a burden is substantial, the Ninth Circuit has held that "laws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Jackson*, 746 F.3d at 961 (emphasis in original).

Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective. *Id.* at 965. "[I]ntermediate scrutiny does not require the least restrictive means of furthering a given end." *Id.* at 969. Even if there are "less burdensome means," a law can survive intermediate scrutiny. *Id.* The statute

only has to "promote[] a 'substantial government interest that would be achieved less effectively absent the regulation.'" *Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018).

## B.    The History of Hawaii's Firearm Permitting and Registration Laws.

Hawaii's firearm permitting and registration laws have an extensive history that stretches back before Hawai'i was even a state.  A basic registration requirement was first adopted by the Territorial Legislature in 1907.  *See* 1907 Haw. Sess. Laws Act 85, §§ 1-8 at 112-15 (*see* 2-ER-169-173).  Act 85 required "any person, firm, corporation or copartnership" residing or doing business in Hawai'i that has "any fire arm or fire arms or any ammunition" in its possession to file a "description" of the firearm, firearms, or ammunition with the county clerk. *Id.* § 1 at 112.  The description included the "class of fire arms," the "name of the maker[,] and the factory number." *Id.*  The name of the owner or possessor, the person's address, and the person's signature also had to be included on the description form. *Id.* § 2 at 112-13.

In 1919, the Territorial Legislature adopted a "permit to purchase" requirement for firearms.  1919 Haw. Sess. Laws Act 124, §§ 1-2 at 166-67 (*see* 2-ER-174-176).  Act 124 provided that:

> Any person, firm, or corporation, dealing in or keeping for sale firearms, or any other person in possession of firearms, shall not make an individual or retail sale of any such firearms, unless the person desiring to purchase the same shall first have obtained from the sheriff

13

or a deputy sheriff of the county or city and county a written permit
for such purchase[.]

*Id.* § 1 at 167.  The Senate Committee on Military stated the purpose of this

provision as follows:

> The purpose of this amendment is to have the sheriff or deputy
> sheriff of the county or City and County issue a permit to any one
> desiring to purchase firearms or ammunition, said permit to be
> presented to the vendor of said article and to be endorsed on the back
> thereof by said vendor describing the article so purchased, said permit
> to be immediately transmitted to the officer issuing the same.
>     As this will enable the police authorities to have a better
> supervision and check over the sale of firearms, your Committee
> would recommend the passage of this bill.

S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at 1420 (*see* 2-ER-177-

178).

In 1923, Act 156 was passed by the Territorial Legislature.  1923 Haw. Sess.

Laws Act 156, § 1 at 185-86 (*see* 2-ER-179-181).  Act 156 changed the language

from a "permit to purchase" to a "permit to acquire."  *Id.*

In 1927, Act 206 was passed by the Territorial Legislature.  1927 Haw. Sess.

Laws Act 206, §§ 1-31 at 209-17 (*see* 2-ER-182-191).  Act 206 clarified that the

required "description" had to be in a "report" to the county sheriff and that the

"permit to acquire" applied to "a sale, a gift, a loan or otherwise" and not just to

disposition by dealers.  *Id.* § 18 at 213, § 23 at 215.  Act 206 also added a scheme

by which firearms would be confined to a person's "dwelling house or business

office," unless the person obtained a license to carry.  *Id.* § 5 at 209-10, § 7 at 210-

14

11.  An exception was also made for transporting a firearm in a wrapper between a place of purchase or repair, a home, or a place of business.  *Id.* § 6 at 210.  Act 206 also prohibited the alteration of identifying marks:  "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver."  *Id.* § 13 at 212.

In passing Act 206, the Legislature indicated that its purpose was to make the firearms statutes more effective.  The bill "seeks to make effective the existing firearms statutes found in Chapter 128 of the Revised Laws of Hawaii 1925, those statutes having heretofore been of no practicable benefit to the people of this Territory because of inconsistencies and ambiguities."  S. Stand. Comm. Rep. No. 384, in 1927 Senate Journal, at 1023 (*see* 2-ER-192-194).

In the 1933-1934 Special Session, the firearms statutes were comprehensively revised when Act 26 was passed by the Territorial Legislature. 1933 Haw. Sess. Laws (Special Sess.) Act 26, §§ 1-17 (*see* 2-ER-195-201).  "The purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition."  H. Stand. Comm. Rep. No. 89, in 1933 House Journal, at 427 (*see* 2-ER-202-204).  Act 26 provided in relevant part:

> SECTION 3:  Every person residing or doing business or temporarily sojourning within the Territory on the effective date of this Act who possesses a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already

15

registered in the name of the present possessor, or who possesses ammunition of any kind or description, except shotgun ammunition, shall, within ten days of said effective date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

Every person arriving in the Territory after the effective date of this Act, who brings with him firearms or ammunition of the type and description set out in this section, shall register the same in a similar manner within forty-eight hours after arrival.

....

SECTION 4: No person residing or doing business or temporarily sojourning within the Territory shall take possession of any firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior Acts or unregistered, or of any ammunition of any kind or description, except shotgun ammunition, either through sale, gift, loan, bequest, or otherwise, whether procured in the Territory or imported by mail, express, freight, or otherwise, until he shall first have procured from the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein.... Such permit shall be void unless used within ten days after the date of issue....

Any person acquiring a firearm or ammunition under the provisions of this section shall, within five days of acquisition, register same in the manner prescribed by Section 3 of this Act.

....

1933 Haw. Sess. Laws (Special Sess.) Act 26, §§ 3, 4 at 36-38. *See also* Rev.

Laws Haw. §§ 2541 & 2542 (1935) (*see* 2-ER-205-207). Therefore, by 1933-

1934, Hawaii's permitting and registration laws were taking their modern form.

The modern terminology, "registration" and "permit to acquire," had replaced the

previous language. The ten-day deadline to use a permit to acquire was adopted. And the five-day deadline to register a firearm after acquiring it was also adopted. The place to keep provision also took on its more modern language, requiring persons to confine their firearms to the "possessor's place of business, residence, or sojourn," except if it is carried in a wrapper between a place of purchase or repair, a home, a place of business, or a place of sojourn, or except if a concealed carry permit is granted. *See* Act 26, § 6 at 38, § 8 at 39.

In 1968, the Hawaiʻi Revised Statutes replaced the Revised Laws of Hawaiʻi. The registration provision was codified as Section 134-2 and the permit to acquire provision was codified as Section 134-3. *See* Haw. Rev. Stat. §§ 134-2 and 134-3 (1968) (*see* 2-ER-208-213). The prohibition on alteration of identification marks was codified as Section 134-10. *See* Haw. Rev. Stat. § 134-10 (1968) (*see* 2-ER-215). In 1988, Chapter 134, Part I, of the Hawaiʻi Revised Statutes was entirely recodified. *See* 1988 Haw. Sess. Laws Act 275, §§ 1-6 at 510-17 (*see* 2-ER-218-226). The registration and permitting provisions were reversed, with the permit to acquire provision becoming Section 134-2 and the registration provision becoming Section 134-3. *See* Act 275, § 2 at 511-13.

Amendments have since been made to these statutes; however, they remain fundamentally the same. The current permit to acquire provision continues to be located in Section 134-2 and provides in relevant part:

**Permits to acquire.** (a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section….

(b) The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and a photograph are already on file with the department, these may be waived.

….

(e) …. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year[4] from the date of issue without a separate application and permit for each acquisition ….

Haw. Rev. Stat. § 134-2 (2011, Supp. 2018, 2019, 2020) (*see* 2-ER-227-250). The

current registration provision continues to be located in Section 134-3 and provides

in relevant part:

**Registration, mandatory, exceptions.** (a) Every resident or other person arriving in the State who brings or by any other manner

---

[4] Permits to acquire rifles or shotguns were made valid for one year in 1981. *See* 1981 Haw. Sess. Laws Act 239, § 3 at 463-64.

causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within five days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn….

Every person registering a firearm under this subsection shall be fingerprinted and photographed by the police department of the county of registration; provided that this requirement shall be waived where fingerprints and photographs are already on file with the police department….

(b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration of all firearms shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant….

Haw. Rev. Stat. § 134-3 (2011, Supp. 2018, 2019, 2020) (*see* 2-ER-227-250).  The

prohibition against alteration of identification marks is still located in Section 134-

10 and provides:

**Alteration of identification marks prohibited.**  No person shall wilfully alter, remove, or obliterate the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition. Possession of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be presumptive evidence that the possessor has altered, removed, or obliterated the mark of identity.

Haw. Rev. Stat. § 134-10 (2011) (*see* 2-ER-239).

Based on the foregoing, it is clear that Hawaii's firearm registration and permitting statutes date back to 1907 and 1919, respectively, and they took what is essentially their modern form in 1933-1934. But even though Hawaii's firearms statutes are so venerable, as recently as 1990 the Legislature reasserted the public safety purpose underlying these statutes. In 1990, the Legislature considered amending the statutes to prohibit the possession of firearms near public and private schools. Ultimately, however, the Legislature decided to instead increase the penalties for the existing firearms laws. *See* 1990 Haw. Sess. Laws Act 195, §§ 1-7 at 422-24 (*see* 2-ER-251-254). The Senate Judiciary Committee explained: "While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that **our entire community** should be a **safe place** to live and learn and that **everyone** deserves to feel free from the **threat of harm wherever they go**." S. Stand. Comm. Rep. No. 3058, in 1990 Senate Journal, at 1242 (*see* 2-ER-255-257) (emphases added). Consequently, the purpose behind Hawaii's firearm registration and permitting statutes is to make the entire community safer by reducing the threat of gun violence.

Consistent with that purpose, in 2020, the Hawaiʻi Legislature enacted Act 74 (H.B. 2744, H.D. 1, S.D. 2), which created a Gun Violence and Violent Crime Commission in Part I and addressed the problem of "ghost guns" in Part II (the

remaining Part III contained standard administrative provisions). *See* 2020 Haw.

Sess. Laws Act 74, §§ 1-9 at 479-83.[5]  As described in the preamble to Part II:

> The legislature finds that a "ghost gun" is a firearm that is assembled without serial numbers or other identification markings.  A person may assemble a ghost gun from a prepackaged kit requiring only minimal expertise and, thus, bypass background checks, registration, and other legal requirements.  The legislature also finds that the State's lack of laws addressing ghost guns allows persons who would normally be prohibited under state law from owning or possessing firearms to do so.  The ease with which ghost guns may be obtained defeats the intent of the State's otherwise strict firearm permitting and registration laws.  It is these laws that have helped Hawaii to achieve the lowest gun violence death rate in the nation.
> Accordingly, the purpose of this part is to:
> (1)  Prohibit the manufacture, purchase, or obtaining of firearm parts for the purpose of assembling a firearm having no serial number; and
> (2)  Amend certain requirements relating to firearms registration.

*Id.* § 2 at 480-81.  The substantive provisions of Part II prohibited manufacturing,

purchasing, or obtaining firearm parts to assemble a firearm having no serial

number.  *Id.* § 3 at 481.  They also required unfinished firearm receivers to be

registered and receive a serial number (including engraving the registration number

on the receiver, or embedding it in a 3-D printed receiver, if it does not have an

imprinted serial number) before assembly of the finished firearm or sale or transfer

of unassembled firearm parts or a receiver.  *Id.* § 5 at 482-83.  Finally, although

---

[5] *See* Addendum.  Also available on Westlaw at 2020 Hawaii Laws Act 74 (H.B. 2744) (Westlaw).

licensed firearms dealers did not have to have their firearms physically inspected at registration, *see id.*, Part II required that "[a]ll other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration." *Id.* § 5 at 483.

## C.    The District Court Erred in Striking Down the Ten-Day Expiration Date for Permits to Acquire.

### 1.    Longstanding Prohibitions and Conditions and Qualifications on the Commercial Sale of Firearms.

The District Court refused to apply the exception for "longstanding prohibitions," apparently based on the belief that doing so would be contrary to *Young v. Hawai'i*, 992 F.2d 765 (9th Cir. 2021) (en banc).  1-ER-052-053. However, *Young* does not say that 20th century laws can be ignored.  *Young* merely expressed a preference for founding era laws, saying that 20th century laws "may be less reliable[.]"  *Id.* at 811.  The District Court's approach contradicts the approach taken by numerous Courts of Appeals, as well as the Supreme Court.  *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015); *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1253-55 (D.C. Cir. 2011) ("*Heller II*").  The Supreme Court itself, in *Heller I*, recognized prohibitions on felons and the mentally ill possessing firearms as being "longstanding," *see* 554

U.S. at 626-27, even though such restrictions date back to the mid-20th century, *see Nat'l Rifle Ass'n*, 700 F.3d at 196; *Heller II*, 670 F.3d at 1253; *United States v. Skoien*, 614 F.3d 638, 640-41 (7th Cir. 2010). And in *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc), which was decided even more recently than *Young*, the en banc court cited "firing-capacity restrictions" that have been imposed "for nearly a century[,]" since 1932 and 1933. *Id.* at 1102.[6]

Hawaii's statutory scheme is "longstanding." The ten-day expiration date for Hawaii's permit to acquire dates back to 1933-1934. *See* 1933 Haw. Sess. Laws (Special Sess.) Act 26, § 4 at 37.[7] Other states can also trace their permitting requirements to a similar timeframe. Massachusetts has a ten day expiration date for its "permit to purchase" that dates back to 1926.[8] 2-ER-268. Michigan also enacted a permit requirement in 1927 in which the permit was originally valid for

---

[6] The author of the en banc decision in *Young*, Judge Bybee, also accepted early 20th century regulations as being "longstanding" in his concurring and dissenting opinion in *Pena*, 898 F.3d at 1003-04 (Bybee, J., concurring in part and dissenting in part).

[7] A permit to purchase requirement, without an expiration date, goes back even further, to 1919. *See* 1919 Haw. Sess. Laws Act 124, § 1-2 at 166-67.

[8] The District Court apparently believed, based on Plaintiffs' representations, that Massachusetts' permit to purchase requirement was repealed. 1-ER-053. That claim is not true. Massachusetts still requires a permit to purchase for holders of firearms identification cards who want to purchase handguns. Mass. Gen. Laws ch. 140, § 131E(b). These permits are still valid for ten days. *Id.* § 131A.

ten days.[9]  2-ER-271.  Missouri also enacted a permit requirement in 1921, with an

expiration date of thirty days.  2-ER-260.[10]

The District Court also erred in refusing to apply the exception for

"conditions and qualifications on the commercial sale of arms[.]"  *See Heller I*, 554

U.S. at 627.  The District Court apparently did so based on *Teixeira v. County of*

*Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc).  1-ER-052 n.7.  But *Teixeira*

noted that the issue in that case was the "claim that retail establishments can assert

an independent, freestanding right to sell firearms under the Second Amendment."

*Teixeira*, 873 F.3d at 682.  The *Teixeira* court then stated that "'the commercial

sale of arms[]' [exception,] however, is sufficiently opaque **with regard to that**

**issue** that, rather than relying on it alone to dispose of Teixeira's claim, we conduct

a full textual and historical review."  *Id.* at 682-83 (emphasis added).

Consequently, *Teixeira*'s refusal to apply the exception was limited to the "claim

that retail establishments can assert an independent, freestanding right to sell

---

[9] Although Michigan's expiration date was subsequently extended to thirty days, it
is still a single use, short expiration date permit, within the tradition described in
Part VIII.C.4 below.

[10] Although Missouri repealed its permitting requirement in 2007, when it did so,
its firearm homicide rate increased 47.3% and its firearm suicide rate increased
23.5%.  *See* Alexander D. McCourt, et al., *Purchaser Licensing, Point-of-Sale*
*Background Check Laws, and Firearm Homicide and Suicide in 4 US States, 1985-*
*2017*, 110 (no. 10) Am. J. of Pub. Health 1546, 1549 (Oct. 2020),
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7483089/pdf/AJPH.2020.305822.
pdf.

firearms" rather than a blanket refusal to consider the exception in all cases. Indeed, since the Supreme Court in *Heller I* expressly mentioned the "conditions and qualifications on the commercial sale of arms" as an exception, the categorical refusal to apply the exception would be inconsistent with *Heller I*.

Chief Judge Thomas' concurrence in *Silvester*, 843 F.3d at 829-32 (Thomas, C.J., concurring), provides an example of how to apply the exception in other circumstances. In *Silvester*, Chief Judge Thomas applied the exception to waiting periods. *Id.* He noted that a waiting period is a condition or qualification on the sale of guns. *Id.* at 830. He noted that waiting periods are longstanding because they "first appeared on the books in California in 1923" and "[t]he term 'longstanding' is not restricted to the time of the founding of the Republic." *Id.* at 831. He then cited statutes from California, Connecticut, and North Dakota for the proposition that waiting periods have existed in several states since the 1920s. *Id.*

Hawaii's ten-day expiration date for permits to acquire also dates back to the early 20th century. It is a condition or qualification on the sale of guns because it sets a deadline for a gun sale to be completed. And other states, such as Massachusetts, Michigan, and Missouri, also trace their expiration dates back to the early 20th century. The analysis for Hawaii's permit to acquire is no different than California's waiting period and the statute should be upheld.

## 2. Intermediate Scrutiny Should Have Been Applied in this Case.

The District Court held that intermediate scrutiny applies because only the manner of acquiring a firearm is affected and it does not impose a complete ban. 1-ER-055. See *Jackson*, 746 F.3d at 961. Moreover, the only burden alleged by Plaintiffs was that they had to take time off from work to complete the purchase of their firearms. 1-ER-055; 3-ER-403. "[I]f a challenged law does not implicate a core Second Amendment right, **or** does not place a substantial burden on the Second Amendment right,' the court may apply intermediate scrutiny." *Silvester*, 843 F.3d at 822. Plaintiffs did not suffer a severe burden; therefore, intermediate scrutiny was appropriate. Defendant agrees with this determination. However, Defendant respectfully submits that although the District Court said that it was applying intermediate scrutiny, it in fact scrutinized this case to a degree that amounted to strict scrutiny.

Well-established Ninth Circuit law provides that the government only has to show that "the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation[.]" *Pena*, 898 F.3d at 879 (internal quotation marks omitted). When considering the purposes behind a statute, "we do not impose an 'unnecessarily rigid burden of proof[.]'" *Id.* A court "considers the legislative history of the enactment as well as studies in the record or cited in pertinent case law." *Id.* (internal quotation marks omitted). "Nor do we substitute

26

our own policy judgment for that of the legislature." *Id.* "In reviewing the constitutionality of a statute, 'courts must accord substantial deference to the predictive judgments of [the Legislature].'" *Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 195 (1997). Legislatures are allowed to make "reasonable inferences" in formulating their judgments. *Id.* "Sound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable." *Mai v. United States*, 952 F.3d 1106, 1118 (9th Cir. 2020).

The District Court rejected all these principles and instead strictly scrutinized Section 134-2 to the point where it inevitably failed. As discussed more fully below, a short expiration date ensures that the information upon which a permit is based is accurate by the time the handgun is acquired. This protects public safety by helping to prevent people who are disqualified from owning firearms from acquiring them and by facilitating the tracing of firearms. This purpose is less effectively achieved without a short expiration date because a longer expiration date undermines the accuracy of the information. The District Court failed to defer to the Legislature's "predictive judgment" in favor of a short expiration date, rejected the Legislature's "reasonable inferences," and disregarded the legislative history.

27

3. **The Evidence Supporting the Ten-Day Expiration Date for Permits to Acquire**

The District Court believed that the ten-day expiration date for permits to acquire was not supported by evidence.  1-ER-058-061.  However, the only way the District Court could reach this conclusion was by disregarding the legislative history of the permit to acquire statute.  The ten-day expiration date was adopted in 1933-1934.  1933 Haw. Sess. Laws (Special Sess.) Act 26, § 4 (*see* 2-ER-198).  It was adopted as part of a bill that was a comprehensive revision of firearms statutes.  "The purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition."  H. Stand. Comm. Rep. No. 89, in 1933 House Journal, at 427 (*see* 2-ER-203).  Since the general purpose of the entire bill was to help "law enforcing agencies" in "controlling the sale, transfer and possession of firearms[,]" that general purpose should also apply to the specific provisions within that bill.  It is a cardinal rule of statutory construction that a statute's general purpose applies to its subsidiary provisions as well.

> A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent…. Courts presume lawmakers have a definite purpose in every enactment and have adapted and formulated subsidiary provisions in harmony with the purpose…. This intention also illuminates the sense and scope of minor provisions…. From this assumption proceeds the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts are subsidiary and harmonious to its manifest object[.]

28

2A Sutherland Statutory Construction § 46:5 (2021) (7th ed.). *See also United States v. Otherson*, 637 F.2d 1276, 1282-83 (9th Cir. 1980) (applying general purpose of statute in interpreting subsidiary provision); *Nevada ex rel. Dep't of Transp. v. United States*, 925 F. Supp. 691, 694 n.2 (D. Nev. 1996) (quoting Sutherland).

Consequently, contrary to the District Court's view, the connection to public safety is clear. Moreover, the Legislature expressly stated that its intent was to provide a "better means" of protecting public safety. Although the permit to acquire requirement was originally enacted in 1919, it did not have an expiration date at that time. 1919 Haw. Sess. Laws Act 124, § 1-2 at 166-67 (*see* 2-ER-175-176). Therefore, it is the addition of the ten-day expiration date in 1933-1934 that was meant to provide the "better means" of "controlling the sale, transfer and possession of firearms[.]"

Thus, the purpose of the ten-day expiration date is plain to see from the legislative history of Act 26. Like the rest of the bill, it had a public safety purpose in helping "law enforcing agencies" "control[] the sale, transfer and possession of firearms[.]" And it was intended to provide a "better means" of doing so by adding a short expiration date to permits to acquire, which previously did not have an expiration date. The only reason why the District Court believed Defendant had

no evidence supporting the ten-day requirement was that the Court refused to properly understand the legislative history.

Furthermore, although Defendant has no studies specifically regarding the length of time permits are valid, there are studies that support the efficacy of permitting or licensing requirements as a whole in reducing gun violence. When Connecticut adopted a permitting requirement in 1995, its firearm homicide rate fell 27.8% and its firearm suicide rate fell 32.8%. *See* McCourt article, *supra*. But when Missouri repealed its permitting requirement in 2007, its firearm homicide rate increased 47.3% and its firearm suicide rate increased 23.5%. *See id.*

Consequently, there is evidence supporting Defendant's position. But if a court applies an excessively strict standard that renders it blind to the evidence available, it will not see the connection. Furthermore, with respect to grants of summary judgment, evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter v. California Dep't of Corrections*, 419 F.3d 885, 891 (9th Cir. 2005). Seen in this light, the legislative history and other evidence should have been enough to support Defendant.

### 4. Common Sense Supports the Ten-Day Expiration Date for Permits to Acquire

The District Court also refused to apply common sense to this case, notwithstanding the fact that many appellate decisions have endorsed the use of common sense. 1-ER-058-061. The government "may resort to a wide range of

sources, such as legislative text and history, empirical evidence, case law, and **common sense**, as circumstances and context require." *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012) (emphasis added). In upholding waiting periods for firearms, the Ninth Circuit has relied in part on "the **common sense** understanding that urges to commit violent acts or self harm may dissipate after there has been an opportunity to calm down." *Silvester*, 843 F.3d at 828 (emphasis added). The Ninth Circuit has also relied on "the **common-sense** conclusion that the benefits of a large-capacity magazine are most helpful to a soldier," *Duncan*, 19 F.4th at 1105 (emphasis added), and the "**common sense**" judgment "that large-capacity magazines significantly increase the devastating harm caused by mass shootings and that removing those magazines from circulation will likely reduce deaths and serious injuries[,]" *id.* at 1111 (emphasis added). The Supreme Court has "even, in a case applying strict scrutiny, … justif[ied] restrictions based solely on history, consensus, and 'simple **common sense**[.]'" *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (emphasis added).

In the present case, the District Court appears to have refused to apply common sense because it believed that Hawai‘i is an outlier among states since it is "the *only* state in the nation to maintain such a restrictive requirement." 1-ER-061 (emphasis in original). The District Court's belief was incorrect.

Thirteen states and the District of Columbia have some form of permitting or licensing requirement for the purchase or acquisition of certain firearms.[11]  *See Licensing*, Giffords Law Center, https://giffords.org/lawcenter/gun-laws/policy-areas/owner-responsibilities/licensing/ (last visited Jan. 14, 2022).  The approaches taken by these jurisdictions fall into several broad categories.

Some states require a separate permit for each firearm that is acquired or purchased.  These states generally impose relatively short expiration dates on their permits, ranging from 10 days to 90 days, which is apparently due to the fact that each permit is good for only a single transaction.  Michigan, New Jersey, and Massachusetts (for firearm identification card holders) are examples of states utilizing such permits.  *See* Mich. Comp. Laws §§ 28.422, 28.422a; N.J. Stat. § 2C:58-3; Mass. Gen. Laws ch. 140, §§ 121, 129B, 129C, 131A, 131E.  Other states require people to obtain permits to purchase, but because they can be used for multiple transactions, these permits are valid for a longer period, such as several years.  Connecticut, Nebraska, and Maryland[12] are examples of states using this

---

[11] In *Duncan*, the court noted that "California is not alone in banning the possession of large-capacity magazines ….  The District of Columbia and eight other states have imposed significant restrictions on large-capacity magazines." *Duncan*, 19 F.4th at 1098.

[12] Although Maryland requires a handgun purchaser to obtain a Handgun Qualification License and the license is valid for several years, *see* Md. Code Pub. Safety § 5-117.1, Maryland **also** requires anyone who "purchases, rents, or

kind of permit. *See* Conn. Gen. Stat. §§ 29-33, 29-36f, 29-36h, 29-37a, 29-37p, 29-37r; Neb. Rev. Stat. §§ 69-2404, 69-2407, 69-2409; Md. Code Pub. Safety § 5-117.1. Another category of states requires people to obtain a license to possess or carry firearms, which is essentially the equivalent of a permit to purchase because once a firearm is purchased, it is in that person's possession and a license is required. These licenses also are generally for longer periods since they authorize possession over a period of time rather than focusing on a single transaction. New York, Illinois, and Massachusetts (for license to carry holders) are examples of states following this approach. *See* N.Y. Penal Law § 400.00; 430 Ill. Comp. Stat. 65/2, 65/7; Mass. Gen. Laws ch. 140, §§ 121, 131. Some states require people to complete firearm safety training and receive a certificate before they can purchase a firearm. California and Washington (for semi-automatic assault rifles) are examples of such states. *See* Cal. Penal Code §§ 26840, 31615, 31655; Rev. Code Wash. § 9.41.090. Finally, the District of Columbia requires a registration

---

transfers a regulated firearm" (which includes handguns and certain assault weapons) to submit a "firearm application" for each transaction, *see* Md. Code Pub. Safety §§ 5-101(r), 5-117, 5-123, 5-124. The transaction must be completed within 90 days, otherwise the application becomes void. *See id.* §§ 5-123(b) & (c); 5-124(c) & (d). Consequently, Maryland is similar to the first category of states in this respect.

certificate that effectively functions like a permit to purchase.  *See* D.C. Code §§ 7-2502.01, 7-2502.06.[13]

Hawaiʻi actually has a mixture of the first two types of permits.  Handguns are subject to the single use, short expiration type of permit while long guns are subject to the multiple use, longer expiration type of permit.  *See* Haw. Rev. Stat. § 134-2(e).  Consequently, Hawaiʻi is not an outlier and its statutory scheme fits well within the tradition established by several states.  In fact, much like Hawaiʻi, Massachusetts still maintains a "permit to purchase" requirement for handguns, the permits are valid for ten days, and it was enacted in the early 20th century.  Massachusetts has two types of licenses for firearms:  (1) the license to carry, which allows the holder to purchase and possess handguns and long guns, both large capacity and non-large capacity, and (2) the firearms identification card ("FID"), which allows the holder to purchase and possess only non-large capacity long guns.  Mass. Gen. Laws ch. 140, §§ 121, 131, 129B.  If an FID holder wishes to purchase and possess a handgun, he or she has to obtain a permit to purchase.

---

[13] Rhode Island is somewhat unusual in that their application to purchase is submitted by the buyer to the seller, who forwards a copy on to the police for investigation.  If the investigation does not turn up disqualifying information within 7 days, the seller is authorized to complete the sale.  R.I. Gen. Laws § 11-47-35.  Consequently, there is no actual expiration date for the permit, since permission is granted at the same time the sale is completed.  North Carolina is also unusual in that a separate permit to purchase is required for each transaction, but it is valid for several years.  N.C. Gen. Stat. § 14-402.

*Id.* § 131A, 131E.  The permit to purchase is valid for ten days.  *Id.* § 131A.  The

permit to purchase requirement was originally enacted in the 1920s.  2-ER-265-

268.  Therefore, Hawaiʻi is not unique among states.

Even if Hawaiʻi was the only state that had enacted permitting requirements

(which, as described above, it is not), common sense is not dependent upon the

number of states that apply a particular principle.  In *Burson v. Freeman*, 504 U.S.

191 (1992), the Supreme Court upheld a 100 foot campaign free zone around

polling places.  The plurality opinion relied on the "common sense" principle that

"[t]he only way to preserve the secrecy of the ballot is to limit access to the area

around the voter."  *Id.* at 207-08 (plurality opinion).  The plurality emphasized

"[t]he logical connection between ballot secrecy and restricted zones[.]"  *Id.* at 208

n.10.  They also separately addressed the long history of election reforms,

particularly those in the 1890s, and the fact that "all 50 States limit access to the

areas in or around polling places."  *Id.* at 204-06.  They concluded by holding that

"[a] long history, a substantial consensus, **and simple common sense** show that

some restricted zone around polling places is necessary to protect [the]

fundamental right [to vote]."  *Id.* at 211 (emphasis added).  The fact that the

Supreme Court distinguished "simple common sense" from "substantial

consensus" indicates that they are not the same thing.  Based on *Burson*, whether

something is "common sense" depends more on the strength of the logical connection than on popularity.

This truth is confirmed by the fact that there is often no consensus as to whether a principle is supported by common sense, and the conclusion that it is can be subject to dispute. In *Kansas v. Glover*, 140 S. Ct. 1183 (2020), a majority of the Supreme Court upheld a traffic stop because it was based on the "commonsense inference" that the owner of a vehicle is likely to be the driver. *Id.* at 1188. However, Justice Sotomayor dissented, on the ground that "[w]hether the driver of a vehicle is likely to be its unlicensed owner is 'by no means obvious.'" *Id.* at 1196 (Sotomayor, J., dissenting). In a concurring opinion, Justice Kagan felt that under some circumstances, it might be common sense (since "a person often buys a vehicle to drive it himself"), but under other circumstances (such as if "you knew that the registered owner of the vehicle no longer had a valid driver's license"), it might not be. *Id.* at 1192-93 (Kagan, J., concurring). Consequently, whether something is common sense is not a numbers game and does not depend on unanimity or even popularity.

In the present case, the "logical connection," *see Burson*, 504 U.S. at 208 n.10, is the relationship between the expiration date for a permit to acquire and the accuracy of the information it is based on. If a permit to acquire is allowed to be valid for a long period, such as five years, the chances are high that some of the

36

information it is based on will go out of date during that time period. Names or addresses can change, one's appearance can change, and most importantly, a person could suffer an event that disqualifies him or her from owning a firearm, such as a criminal conviction, a mental health diagnosis, or being subjected to a restraining order. Consequently, the shorter the expiration date, the better.[14] The common sense conclusion is that a short expiration date, such as ten days, ensures that the information upon which a permit is based is accurate by the time the handgun is acquired. Accurate information prevents disqualified people from acquiring firearms and facilitates tracing.

The District Court disagrees that this is common sense. 1-ER-060-061. The District Court argues that having a short expiration date for the permit to acquire actually harms public safety because it increases the likelihood that a person will

---

[14] The limit on how short an expiration date can get is the practical one of how long it takes to purchase a firearm. If the expiration date is so short that no one can actually complete a purchase, then it is clearly too short. But in the present case, it is undisputed that ten days is not a problem. According to Plaintiffs' own evidence, only 1.4% of applicants were unable to complete their purchases within the ten days and had their permits voided in 2020. 1-ER-060 n.12; 2-ER-329; *Firearm Registrations in Hawaii, 2020*, Department of the Attorney General, Crime Prevention & Justice Assistance Division, at 1, https://ag.hawaii.gov/cpja /files/2021/03/Firearm-Registrations-in-Hawaii-2020.pdf . The figures for prior years were similar. 1-ER-060 n.12; 2-ER-339; 2-ER-348; 2-ER-357. Note that this can vary between states. Michigan may have concluded that thirty days is now needed to complete a firearm purchase **in Michigan**, but that does not mean that thirty days is needed in Hawaiʻi. *See* Mich. Comp. Laws § 28.422.

already have acquired his or her firearm when a disqualifying event occurs. 1-ER-060. The District Court's reasoning is flawed.

First, the District Court's argument assumes omniscient knowledge. It assumes we know for a fact that a particular applicant is destined to suffer a disqualifying event in the future. Because of that, a shorter expiration date is less safe than a longer expiration date because with a shorter date, the applicant will be able to obtain the firearm before the disqualifying event occurs. But in the real world, we do not have omniscient knowledge. We do not know for certain who is going to be disqualified in the future. Because the premise underlying the Court's hypothetical is unrealistic, it is flawed.

Second, a permit to acquire authorizes the original acquisition of the firearm, and if a disqualifying event occurs **after** the firearm is lawfully acquired, that is simply not a permitting issue. *See* Haw. Rev. Stat. § 134-2(a). Because the permit has already been used, the permit's role in the process is over. The District Court is improperly confusing permitting with other issues, such as seizure of a firearm after disqualification. *See* Haw. Rev. Stat. § 134-7.3. Moreover, there would be no legal basis for denying acquisition of the firearm if the permit holder was fully qualified at the time of the acquisition.

Third, the District Court seems to be suggesting that with a longer expiration date, authorities could **prevent** acquisition of the firearm, after the permit is issued

but before the purchase is completed, if a person becomes disqualified. 1-ER-060. However, this argument depends on having a mechanism to prevent someone from acquiring their firearm when a disqualifying event occurs after the permit is issued. Although it is possible to revoke a permit if a person suffers a disqualifying event, and most states have such provisions, *see, e.g.,* Conn. Gen. Stat. § 29-36i(a); Neb. Rev. Stat. § 69-2407; Md. Code Pub. Safety § 5-117.1(k)(1), doing so largely depends on self-reporting. Changes to most of the information that permits are based on will not come to the attention of authorities unless the permit holder reports them. In contrast, if a permit has a short expiration date, it will expire naturally. The person will have to reapply, and when the person reapplies, changes in qualifications and information will come up then. If the person has suffered some disqualifying event, the new permit can be denied. Thus, the short deadline avoids the need for self-reporting and the reliability of the permit is better ensured.

Consequently, states face a policy choice: a short expiration date, which is more accurate and secure, or a long expiration date with a revocation mechanism, which is more cost-effective but less accurate and less secure. Hawaiʻi chose the first option for handguns.[15] This was a legitimate choice for Hawaii's Legislature,

---

[15]Hawaiʻi also chose the second option for rifles and shotguns. This was due to the fact that handguns are more dangerous than long guns because they are more easily concealed. *See, e.g., Heller I*, 554 U.S. at 625 (sawed-off shotguns as dangerous and unusual weapons); *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278

39

based on the relative advantages and disadvantages of the policy options, which should not be second-guessed by a court. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469 (1981) (holding that a court should not "substitut[e] its judgment for that of the legislature").[16]

This case is similar in many ways to *Burson*. The idea of a campaign free zone around polling places was supported by common sense, *see Burson*, 504 U.S. at 207-08, but because the statutes were enacted so many years ago, the legislative history was sparse, *see id.* at 208. There were also few empirical studies because

---

(7th Cir. 1988) (switchblades more dangerous due to concealability). Therefore, the more cost-effective (but less secure) option was appropriate for long guns, since they are less dangerous.

[16] The District Court also discounts the risk of a permit with a long expiration date being used if lost or stolen. 1-ER-060 n.11. The District Court apparently believes that sellers will verify the identity of buyers under Section 134-2(f). However, sellers have an interest in completing their sales rather than policing a buyer's identity. And not all sellers will be federally licensed firearms dealers. Hawaii's permit to acquire laws apply to private party sales as well as purchases from licensed dealers. *See* Haw. Rev. Stat. § 134-2(a). Private individuals are even less likely to police a buyer's identity. Also, for out of state sellers, the **buyer** actually fills out the back of the permit, **not** the seller. *See* Haw. Rev. Stat. § 134-2(f). And the District Court ignores the fact that identity theft is clearly a risk in modern society. *See* 2002 Haw. Sess. Laws Act 224, § 1-6 at 894-96 (creating new identity theft crimes); Commentary on Haw. Rev. Stat. §§ 710-1016.3 and 710-1016.4 ("The legislature found that misappropriation of personal identification information was on the rise. Act 224 addresses the criminal conduct associated with intentional identity theft."). Moreover, even if a lost permit is not used by the finder to actually buy a gun, identifying information on the permit tells the finder that this particular person may have other guns in his/her home or business, which would set him/her up as a target for burglary. 2-ER-369.

testing other rules would have risked the integrity of elections.  *See id.* at 208-09.

Therefore, the plurality relied on common sense and upheld the statute.  *See id.* at

211.  Moreover, they noted that "[t]he real question … is *how large* a restricted

zone is permissible[,]" s*ee id.* at 208 (emphasis in original), just like the real

question in the present case is **how long** the expiration period should be.  In

*Burson*, whether the zone should be less than 100 feet was not a question of

"constitutional dimensions."  *See id.* at 210.  Similarly, the length of the expiration

period in this case should not be of "constitutional dimensions."[17]

## D.  The District Court Erred in Striking Down the Requirement that Firearms Be Inspected In-Person at Registration.

### 1.  Longstanding Prohibitions and Conditions and Qualifications on the Commercial Sale of Firearms.

The District Court erred in striking down the requirement that firearms be

inspected in-person at registration because it failed to apply the exception for

---

[17] The District Court's approach to the ten-day expiration date sets a dangerous
precedent for other permitting requirements.  There are many subsidiary provisions
in statutes that do not have detailed explanations in legislative history.  For
example, Section § 134-2(b) requires an applicant to submit, among other things,
his or her name and address in order to obtain a permit to acquire.  But there do not
appear to be any express statements in the legislative history as to why such
information is necessary.  And it is unlikely that any social scientist would do an
empirical study on such an obvious issue.  Instead, common sense supports the
conclusion that a name and address help identify the permit applicant, which is
necessary to facilitate tracing of the firearm.  *See Burson*, 504 U.S. at 207-09.  If
name and address requirements are permissible under *Burson*, expiration dates
should be as well.

"longstanding prohibitions[.]"  Basic registration requirements are "longstanding in American law, accepted for a century in diverse states and cities and now applicable to more than one fourth of the Nation by population" and should be "presume[d] … not [to] impinge upon the right protected by the Second Amendment."  *See Heller II*, 670 F.3d at 1254.  *See also Heller v. District of Columbia*, 801 F.3d 264, 273 (D.C. Cir. 2015) ("*Heller IV*").  These basic registration requirements include "the submission of certain information," such as serial numbers.  *See Heller II*, 670 F.3d at 1254 (citing registration statutes requiring, among other things, serial numbers).

The District Court failed to appreciate that in-person inspection of a firearm is a corollary to registration because it enforces the requirement of having a serial number.  Incidental enforcement provisions have been upheld if the underlying regime is lawful and enforceable too.  *See id.* at 1249 n.*; *Heller IV*, 801 F.3d at 277.  Here, the inspection requirement is a corollary to the registration requirement of having a serial number, which is a longstanding, lawful, and enforceable underlying regime.  Inspection of the firearm is analogous to requiring the in-person appearance of the registrant.  *See Heller IV*, 801 F.3d at 277.  Just like having the registrant appear in person is a corollary to identification of the registrant through fingerprinting and photographing, inspecting the firearm is a corollary to identification of the firearm through having a serial number.  *See*

*Heller v. District of Columbia*, 45 F. Supp. 3d 35, 59 (D.D.C. 2014) ("*Heller III*") ("[I]f in-person appearance is necessary to verify the identity of the registrant, then physically bringing the gun is similarly necessary to verify the character of the registered weapon"), *aff'd in part and rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015).

Hawaii's registration requirement dates back to 1907, when Act 85 first required gun owners to report the "factory number." *See* 1907 Haw. Sess. Laws Act 85, §§ 1-2 at 112-13 (*see* 2-ER-170-171). Although the in-person inspection requirement was adopted much later, it is merely a corollary to the longstanding registration requirement of having a serial number.

Registration is also a longstanding "condition[] and qualification[] on the commercial sale" of firearms. A firearm has to be registered within five days of acquisition, *see* Haw. Rev. Stat. § 134-3(b); therefore, it is a condition on gun sales. Registration requirements, including having a serial number, are longstanding. *See Heller II*, 670 F.3d at 1254. Since in-person inspection of a firearm is a corollary to registration meant to enforce the requirement of a serial number, *see id.* at 1249 n.*; *Heller IV*, 801 F.3d at 277, it also qualifies as a corollary to "conditions and qualifications on the commercial sale" of firearms. *See Silvester*, 843 F.3d at 829-32 (Thomas, C.J., concurring).

**2.    Intermediate Scrutiny Should Have Been Applied in this Case.**

As with the ten-day expiration date for permits to acquire, the District Court held that intermediate scrutiny applies because only the manner of registering a firearm is affected and it does not impose a complete ban.  1-ER-066.  Moreover, the only burden alleged by Plaintiffs was that they had to take time off from work to complete the purchase of their firearms.  *Id.*; 1-ER-403.  Plaintiffs did not suffer a severe burden; therefore, intermediate scrutiny was appropriate.  Defendant agrees with this determination.  However, Defendant again respectfully submits that although the District Court said that it was applying intermediate scrutiny, it in fact scrutinized this case to a degree that amounted to strict scrutiny.

The District Court disregarded well-established Ninth Circuit law providing that the government only has to show that "the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation[.]"  *Pena*, 898 F.3d at 879 (internal quotation marks omitted).  The District Court also disregarded cases directing courts to "consider[] the legislative history of the enactment[.]"  *See id.*  The District Court further disregarded cases directing courts to defer to the "predictive judgments" of the legislature and to allow the legislature to make "reasonable inferences."  *See Turner Broadcasting System, Inc.*, 520 U.S. at 195.

As discussed more fully below, in-person inspection of the firearm verifies the accuracy of the serial number, ensures that the firearm otherwise complies with Hawai'i law, and confirms the identity of the firearm to facilitate tracing by law enforcement. This purpose is less effectively achieved because, without inspection, the integrity of serial numbers, compliance with Hawai'i law, and law enforcement tracing would all be based on the assumption that everything in the process is being performed perfectly. In other words, the system would be dependent on blind faith. But it was the Legislature's "predictive judgment" that, in light of the risk of human error, public safety is more effectively protected with verification. The District Court failed to defer to the Legislature's "predictive judgment" on this issue, rejected the Legislature's "reasonable inferences," and disregarded the legislative history.

### 3.    The Evidence Supporting In-Person Inspection at Registration

The District Court believed that the in-person inspection at registration requirement was not supported by evidence. 1-ER-067-069. However, the only way the District Court could reach this conclusion was by severely misinterpreting the legislative history of the bill that enacted the requirement. 1-ER-067-068 n.15. The in-person inspection at registration requirement was adopted by Act 74. *See* 2020 Haw. Sess. Laws Act 74, §§ 1-9 at 479-83. Act 74 accomplished two things: (1) it set up the Gun Violence and Violent Crime Commission, *see* Act 74, Part I

(consisting of § 1); and (2) it addressed the problem of "ghost guns,"[18] *see* Act 74, Part II (consisting of §§ 2-5). Although the bill also contained a Part III (consisting of §§ 6-9), Part III was limited to standard administrative provisions common to all legislation.

After considering Act 74, the District Court held that the in-person inspection requirement was unrelated to ghost guns. 1-ER-068 n.15. It looked at the language stating that the purpose of the bill was to "[a]mend certain requirements relating to firearms registration" and concluded this language referred to a "separate, secondary reason" unrelated to ghost guns. *Id.* But this is completely wrong. The language addressing the registration amendments was actually in the preamble to Part II, s*ee* 2020 Haw. Sess. Laws Act 74, § 2 at 480-81, and Part II was the part of the bill specifically addressing ghost guns, *see id.* § 2-5 at 480-83. Therefore, contrary to the District Court's conclusion, the "requirements relating to firearms registration" that were being amended in Act 74 **did in fact relate to ghost guns**.

---

[18] The Legislature described "ghost guns" as follows:

> The legislature finds that a "ghost gun" is a firearm that is assembled without serial numbers or other identification markings. A person may assemble a ghost gun from a prepackaged kit requiring only minimal expertise and, thus, bypass background checks, registration, and other legal requirements.

Act 74, § 2 at 480-81.

46

The substantive amendments in the bill confirm that the registration amendments were related to ghost guns. Among other things, they mandated that firearm dealers "register the unfinished firearm receiver and receive a serial number before the assembly of the firearm or the sale or transfer of unassembled firearm parts or a receiver to a third party[.]" *Id.* § 5 at 483. They also addressed how to fill out registration forms for unfinished receivers and what numbers to engrave or embed on receivers without serial numbers. *Id.* § 5 at 482. The in-person inspection amendment was physically located adjacent to these other amendments within Section 5 of the bill. *Id.* § 5 at 483. No distinction was made between the in-person inspection amendment and the other amendments to the registration requirements. *Id.* Consequently, the in-person inspection at registration amendment, like the other registration amendments, must also relate to ghost guns. The District Court acted as if the in-person inspection requirement was an entirely separate issue and did not relate to ghost guns at all, when its placement within Part II—the ghost guns part of the bill—clearly indicates that it was indeed about ghost guns.

Since ghost guns are, by definition, guns without serial numbers, *see id.* § 2 at 480, logically the in-person inspection requirement must also be there to address the serial number problem. Act 74 requires ghost guns to be registered, and it also requires the registration number to be engraved or embedded on firearm receivers

47

to serve as a serial number. *See id.* § 5 at 482-83. If engraving or embedding a serial or registration number on the receiver is mandated, it would be perfectly logical for authorities to additionally check to ensure that the engraving or embedding was done legibly, permanently, and accurately. In other words, in-person inspection helps to enforce the requirement of having a serial or registration number engraved or embedded on ghost guns, as required by Act 74. Therefore, despite the District Court's refusal to see it, the legislative history of Act 74 supports the in-person inspection requirement.

Furthermore, in defending the constitutionality of statutes, the government "may resort to a wide range of sources, such as **legislative text** and history, empirical evidence, case law, and common sense, as circumstances and context require." *Carter*, 669 F.3d at 418 (emphasis added). Also, the meaning of statutes can be affected by other Acts. *Hall v. U.S. Dep't of Agriculture*, 984 F.3d 825, 838-39 (9th Cir. 2020). And statutes are supposed to be construed consistent with "the history and purposes of the statutory scheme." *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 642 (1990); *United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002). Based on other legislative text in Hawaii's statutory scheme for firearms, there are other purposes served by the in-person inspection requirement.

Hawaiʻi law prohibits certain types of firearms and accessories. Section 134-8 of the Hawaiʻi Revised Statutes prohibits, among other things, "assault

48

pistols … ; automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; … ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol[.]"  Haw. Rev. Stat. § 134-8 (2011). Section 134-8.5 prohibits bump fire stocks, multiburst trigger activators, and trigger cranks.  Haw. Rev. Stat. § 134-8.5 (Supp. 2019).  Moreover, Hawaiʻi law requires registration of a firearm not only when acquired through purchases from licensed dealers but also through sales or transfers between private parties.  Haw. Rev. Stat. §§ 134-3 (b) & 134-2(a).  Hawaiʻi law also allows people to bring their firearms into Hawaiʻi from out-of-state, as long as they subsequently register them in Hawaiʻi within five days of arrival.  Haw. Rev. Stat. § 134-3(a).

What all this means is that, based on Hawaii's statutory scheme, there are people who are particularly vulnerable to unknowingly possessing firearms that are illegal under Hawaiʻi law.  Unlike licensed dealers, who are familiar with firearms and Hawaii's firearm laws, private individuals may not be familiar with the technical details of their firearms or the requirements of Hawaiʻi law.  Newcomers to Hawaiʻi may come from states where the firearm laws are very different, and they may not realize that their firearms are illegal under Hawaiʻi law.  If these people are required to have their firearms inspected at registration, the illegal

49

firearms can be discovered and removed from circulation, which clearly protects public safety, and under circumstances that minimize the risk of prosecution. Similarly, Section 134-10 prohibits wilful alteration, removal, or obliteration of identifying marks on a firearm. However, it also states that "**[p]ossession** of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be **presumptive evidence** that the possessor has altered, removed, or obliterated the mark of identity." *Id.* (emphasis added). If a newly-purchased firearm is brought in for inspection and it has an altered or defaced serial number, this presumption would be rebutted by the fact that the person freely brought it to the registration. Under those circumstances, it is more likely that the prior owner altered or defaced the serial number.[19] Consequently, other legislative text in Hawaii's statutory scheme for firearms provides additional purposes for the in-person inspection requirement beyond enforcing the ghost guns law.

Moreover, the importance of serial numbers in facilitating the tracing of firearms by law enforcement is well established in the case law, which provides further support for the in-person inspection requirement. *See Pena*, 898 F.3d at

---

[19] Ironically, by invalidating in-person inspections at registration, Plaintiffs' lawsuit harms firearm owners. If a violation of Hawaiʻi law is discovered at registration, the owner is unlikely to be prosecuted under those circumstances. Prosecutors are likely to use their discretion and decline to prosecute. On the other hand, without inspection at registration, an illegality would be discovered much later, and the owner is more likely to be prosecuted.

982; *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) ("[P]reserving the ability of law enforcement to conduct serial number tracing … constitutes a substantial government interest."); *United States v. Mobley,* 956 F.2d 450, 454 (3d Cir. 1992) ("It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible."). The legislative history of Act 74 also supports the importance of tracing. Testimony from the Hawaiʻi County Police Department in support of Act 74 stated: "[T]hese assembled firearms [i.e., ghost guns] are devoid of **serial numbers with which they could be traced when recovered by Law Enforcement Agencies** in the course of criminal investigations. This poses a significant problem for law enforcement and should be of concern to the communities we are sworn to protect." *Testimony of Hawaiʻi County Police Department*, Hawaiʻi State Legislature, https://www.capitol.hawaii.gov/ Session2020/Testimony/HB2744_HD1_TESTIMONY_PSM_03-12-20_.PDF (at pdf 2) (emphasis added).

All of this evidence, and the inferences from them, especially when construed in the light most favorable to the nonmoving party, should have been sufficient to support Defendant's position. *See Porter*, 419 F.3d at 891.

### 4. Common Sense Supports In-Person Inspection at Registration

As with the ten-day expiration date for permits to acquire, the District Court refused to apply common sense to the in-person inspection issue, notwithstanding the fact that many appellate decisions have endorsed the use of common sense. *See Florida Bar*, 515 U.S. at 628; *Burson*, 504 U.S. at 207-11; *Carter*, 669 F.3d at 418; *Silvester*, 843 F.3d at 828; *Duncan*, 19 F.4th at 1105 & 1111. As discussed above, common sense is not a popularity contest but instead relies on the strength of the "logical connection" involved. *Burson*, 504 U.S. at 208 n.10.

In the present case, the "logical connection" between inspection, registration, serial numbers, and the other prohibitions under Hawai'i law is clear. *See Burson*, 504 U.S. at 208 n.10. Serial numbers are critical to enable law enforcement to trace firearms, and serial numbers have long been required as part of registration requirements. Act 74 also required ghost guns to be registered and for serial numbers to be engraved or embedded on them. However, it is also true that human beings make mistakes.[20] Consequently, it makes sense to require a firearm to be inspected at registration to verify the serial number on the firearm. In addition, there are people who might not be aware that their firearms or accessories are illegal under Hawai'i law. An inspection will help discover these illegal

---

[20] "**To err is human**; to forgive, divine." Alexander Pope, *An Essay on Criticism* (1711) (emphasis added).

firearms and remove them from circulation. And under such circumstances, the risk of the unknowing owner being prosecuted will be minimized. Consequently, the common sense conclusion is that in-person inspection of the firearm verifies the accuracy of the serial number, ensures that the firearm otherwise complies with Hawaiʻi law, and confirms the identity of the firearm to facilitate tracing by law enforcement.

The District Court cited *Heller IV*, 801 F.3d at 277, in support of its conclusion that in-person inspections are unconstitutional. 1-ER-070. However, the present case is distinguishable from *Heller IV* on this issue. *Heller IV* was decided several years ago (2015) and did not consider the more recent problem of ghost guns. *See Untraceable – The Rising Specter of Ghost Guns*, Everytown for Gun Safety (May 14, 2020), https://everytownresearch.org/report/the-rising-specter-of-ghost-guns/ (describing the ghost guns issue as a "rising specter" that is "the fastest growing gun safety problem facing our country."). In contrast, Hawaii's in-person inspection requirement was only passed in 2020 as part of Act 74, which specifically addressed ghost guns. In addition, fear of the police shooting a gun owner who brings a gun to the police station, which was relied upon in *Heller IV*, 801 F.3d at 277, does not apply to Hawaii's circumstances. Hawaii's place to keep laws specifically authorize people to bring guns to police stations. *See* Haw. Rev. Stat. §§ 134-23(a)(6), 134-24(a)(6), and 134-25(a)(6)

(2011).  Place to keep requirements have existed under Hawaiʻi law since 1927.  *See* 1927 Haw. Sess. Laws Act 206, § 5 at 209-10.  Therefore, the police in Hawaiʻi have long expected people to bring their firearms to police stations.  Although *Heller IV* might be an appropriate decision based on the circumstances in the District of Columbia, it does not apply to the circumstances in Hawaiʻi.

The District Court also argues that it is not a common sense conclusion that mistakes in registration were a problem prior to the enactment of the in-person inspection requirement.  1-ER-069-070.  To the contrary, it is within common sense understanding that human beings make mistakes.  For the District Court to believe that no one would make mistakes in transcribing or recording serial numbers is itself contrary to common sense.  Moreover, public safety is such a serious matter that requiring verification for something that affects public safety, such as serial numbers on firearms, is also a common sense idea.  The District Court further argues that serial numbers will be checked at other points in the permitting or registration process.  1-ER-070; 1-ER-036.  It is true that writing down serial numbers may be required at different stages in the process, such as when applying for a permit to acquire, when completing the back of the permit to acquire, and when applying for registration.  But common sense indicates that when filling out forms, people often copy information from previously completed forms.  Therefore, an early mistake could be perpetuated throughout the process.  It

is only if someone takes the trouble to look at the number actually imprinted, engraved, or embedded on the firearm that the mistake can be discovered. This is precisely what the District Court's decision prohibits.

## E. The District Court Erred in Not Appreciating that Plaintiffs' Facial Challenge Should Have Failed.

The District Court treated this case as a facial challenge. 1-ER-048 n.6. Indeed, this case must be a facial challenge rather than an as-applied challenge because the State does not actually **apply** the permitting and registration statutes. The county police chiefs are the ones who actually grant permits and registrations. *See* Haw. Rev. Stat. §§ 134-2, 134-3 (referencing county police chiefs). Under a facial challenge, the plaintiff must show that "no set of circumstances exists under which [the challenged law] would be valid[.]" *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (internal quotation marks omitted). *See also United States v. Salerno*, 481 U.S. 739, 745 (1987). A facial challenge is "limited to the text of the statute itself" while an as-applied challenge is "wholly fact dependent[.]" *Young*, 992 F.3d at 779.

Plaintiffs in the present case cannot satisfy this standard. Although Plaintiffs claim that they had to miss work to comply with the statutes, other applicants clearly would not. It would depend on their work hours. At least some applicants will suffer no harm at all. Plaintiffs' claims are therefore "wholly fact dependent." Moreover, merely missing work is "self-evidently de minimis[.]" *See Heller II*,

670 F.3d at 1254-55; *Nordyke v. King*, 681 F.3d 1044 (9th Cir. 2012) (en banc) (requirement of using "a sturdy cable attaching the firearm to a fixture" was a "minimal[]" regulation).  Because at least some applicants will not be harmed by the challenged statutes and Plaintiffs' harm would be de minimis in any event, there is insufficient standing and the facial challenge should have failed.

## IX.   CONCLUSION

The District Court made multiple errors in this case, which Defendant has pointed out.  However, the overarching error committed by the District Court was that it overlooked the logical connections that were in front of it.  The District Court disregarded authoritative case law, disregarded or misunderstood legislative history, and failed to apply common sense.  Defendant respectfully requests that this Court reverse the District Court's decision and direct the District Court to grant summary judgment in favor of Defendant.

DATED:  Honolulu, Hawaiʻi, February 22, 2022.

s/ Robert T. Nakatsuji
_____
KIMBERLY T. GUIDRY
  Solicitor General
ROBERT T. NAKATSUJI
  First Deputy Solicitor General
CARON M. INAGAKI
KENDALL J. MOSER
  Deputy Attorneys General

Attorneys for Defendant-Appellant HOLLY
T. SHIKADA, in her Official Capacity as
the Attorney General of the State of Hawaiʻi

# ADDENDUM

## **Index to Addendum**

**Federal Statutes**..................................................................... 1

    28 U.S.C.A. § 1291................................................................. 1

    28 U.S.C.A. § 1331................................................................. 1

    28 U.S.C.A. § 1343................................................................. 1

**Hawaiʻi Statutes and Acts**.................................................... 2

    Haw. Rev. Stat. § 134-2........................................................ 2

    Haw. Rev. Stat. § 134-3........................................................ 6

    Haw. Rev. Stat. § 134-7.3..................................................... 8

    Haw. Rev. Stat. § 134-8........................................................ 9

    Haw. Rev. Stat. § 134-8.5................................................... 10

    Haw. Rev. Stat. § 134-10..................................................... 10

    Haw. Rev. Stat. § 134-23..................................................... 10

    Haw. Rev. Stat. § 134-24..................................................... 11

    Haw. Rev. Stat. § 135-25..................................................... 11

    Haw. Rev. Stat. § 710-1016.3.............................................. 12

    Haw. Rev. Stat. § 710-1016.4.............................................. 12

    Rev. Laws Haw. §§ 2541 and 2542..................................... 13

    Haw. Rev. Stat. §§ 134-2, 134-3, 134-10 (1968) .................. 13

    1907 Haw. Sess. Laws Act 85 .............................................. 13

1919 Haw. Sess. Laws Act 124 ................................................................ 13

1923 Haw. Sess. Laws Act 156 ................................................................ 13

1927 Haw. Sess. Laws Act 206 ................................................................ 13

1933 Haw. Sess. Laws (Special Sess.) Act 26 ........................................ 13

1981 Haw. Sess. Laws Act 239 ................................................................ 13

1988 Haw. Sess. Laws Act 275 ................................................................ 14

1990 Haw. Sess. Laws Act 195 ................................................................ 14

2002 Haw. Sess. Laws Act 224 ................................................................ 14

2020 Haw. Sess. Laws Act 74 .................................................................. 15

**Statutes from Other States** ................................................................. 21

California
    Cal. Penal Code § 26840 ................................................................ 21
    Cal. Penal Code § 31610 ................................................................ 21
    Cal. Penal Code § 31615 ................................................................ 21
    Cal. Penal Code § 31655 ................................................................ 21

Connecticut
    Conn. Gen. Stat. § 29-33 ................................................................ 22
    Conn. Gen. Stat. § 29-36f ............................................................... 22
    Conn. Gen. Stat. § 29-36h ............................................................. 23
    Conn. Gen. Stat. § 29-36i ............................................................... 23
    Conn. Gen. Stat. § 29-37a .............................................................. 23
    Conn. Gen. Stat. § 29-37p .............................................................. 23
    Conn. Gen. Stat. § 29-37r ............................................................... 25

District of Columbia
    D.C. Code § 7-2502.01 ................................................................... 25
    D.C. Code § 7-2502.06 ................................................................... 25

Illinois
    430 Ill. Comp. Stat. 65/2 ..................................................................... 25
    430 Ill. Comp. Stat. 65/7 ..................................................................... 26

Massachusetts
    Mass. Gen. Laws ch. 140 § 121 ........................................................ 26
    Mass. Gen. Laws ch. 140 § 129B ...................................................... 26
    Mass. Gen. Laws ch. 140 § 129C ...................................................... 27
    Mass. Gen. Laws ch. 140 § 131 ........................................................ 27
    Mass. Gen. Laws ch. 140 § 131A ...................................................... 28
    Mass. Gen. Laws ch. 140 § 131E ...................................................... 29

Maryland
    Md. Code Pub. Safety § 5-101 ......................................................... 29
    Md. Code Pub. Safety § 5-117 ......................................................... 30
    Md. Code Pub. Safety § 5-117.1 ...................................................... 30
    Md. Code Pub. Safety § 5-123 ......................................................... 31
    Md. Code Pub. Safety § 5-124 ......................................................... 31

Michigan
    Mich. Comp. Laws § 28.422 ............................................................. 32
    Mich. Comp. Laws § 28.422a ........................................................... 32

North Carolina
    N.C. Gen. Stat. § 14-402 ................................................................. 33
    N.C. Gen. Stat. § 14-403 ................................................................. 33

Nebraska
    Neb. Rev. Stat. § 69-2403 ................................................................ 34
    Neb. Rev. Stat. § 69-2404 ................................................................ 34
    Neb. Rev. Stat. § 69-2407 ................................................................ 34

New Jersey
    N.J. Stat. 2C:58-3 ............................................................................. 36

New York
    McKinney's N.Y. Penal Law § 400.00 ............................................. 36

Rhode Island
    R.I. Gen. Laws § 11-47-35 ................................................................ 40

Washington
    Rev. Code Wash. § 9.41.090 ............................................................. 41

## FEDERAL STATUTES

**28 U.S.C.A. § 1291**
**§ 1291. Final decisions of district courts**
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**28 U.S.C.A. § 1331**
**§ 1331. Federal question**
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C.A. § 1343**
**§ 1343. Civil rights and elective franchise**
(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
(b) For purposes of this section--
(1) the District of Columbia shall be considered to be a State; and
(2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## HAWAI'I STATUTES AND ACTS

**Haw. Rev. Stat. § 134-2**
**§ 134-2. Permits to acquire**

(a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of a firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequested firearm directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section.

(b) The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and a photograph are already on file with the department, these may be waived. (c) An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental health of the applicant. The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State.

(d) The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a

period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

(e) The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to issue a permit or to deny an application is made.

(f) In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be

delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority that issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable.

(g) Effective July 1, 1995, no person shall be issued a permit under this section for the acquisition of a pistol or revolver unless the person, at any time prior to the issuance of the permit, has completed:

(1) An approved hunter education course as authorized under section 183D-28;

(2) A firearms safety or training course or class available to the general public offered by a law enforcement agency of the State or of any county;

(3) A firearms safety or training course offered to law enforcement officers, security guards, investigators, deputy sheriffs, or any division or subdivision of law enforcement or security enforcement by a state or county law enforcement agency; or

(4) A firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least two hours of firing training at a firing range and a total of at least four hours of classroom instruction, which may include a video, that focuses on:

(A) The safe use, handling, and storage of firearms and firearm safety in the home; and

(B) Education on the firearm laws of the State.

An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph.

(h) No person shall sell, give, lend, or deliver into the possession of another any firearm except in accordance with this chapter.

(i) No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued.

(j) In all cases where a permit application under this section is denied because an applicant is prohibited from owning, possessing, receiving, or controlling firearms under federal or state law, the chief of police of the applicable county shall, within ten business days from the date of denial, send written notice of the denial including the identity of the applicant and the reasons for the denial to the:

(1) Prosecuting attorney in the county where the permit was denied;
(2) Attorney general;
(3) United States Attorney for the District of Hawaii; and
(4) Director of public safety.

If the permit to acquire was denied because the applicant is subject to an order described in section 134-7(f), the chief of police shall, within three business days from the date of denial, send written notice of the denial to the court that issued the order.

When the director of public safety receives notice that an applicant has been denied a permit because of a prior criminal conviction, the director of public safety shall determine whether the applicant is currently serving a term of probation or parole, and if the applicant is serving such a term, send written notice of the denial to the applicant's probation or parole officer.

## Haw. Rev. Stat. § 134-3
### § 134-3. Registration, mandatory, exceptions

(a) Every resident or other person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within five days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:

(1) A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve permit issued pursuant to section 183D-34;

(2) A written document indicating the person has been invited to the State to shoot on private land; or

(3) Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

Every person registering a firearm under this subsection shall be fingerprinted and photographed by the police department of the county of registration; provided that this requirement shall be waived where fingerprints and photographs are already on file with the police department. The police department shall perform an inquiry on the person by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to register a firearm is made. Any person attempting to register a firearm, a firearm receiver, or the parts used to assemble a firearm, and who is found to be disqualified from ownership, possession, or control of firearms or ammunition under section 134-7, shall surrender or dispose of all firearms and ammunition pursuant to section 134-7.3.

(b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration of all firearms shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has been assembled from separate parts and an unfinished firearm receiver, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "assembled from parts" shall be recorded in the space provided for model. If the firearm has been assembled from parts created using a three-dimensional printer, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "3-D printer" shall be recorded in the space provided for model. If the firearm has no serial number, the registration number shall be entered in the space provided for the serial number, and the registration number shall be engraved upon the receiver portion of the firearm before registration. On firearms assembled from parts created using a three-dimensional printer, the serial number shall be engraved on stainless steel and permanently embedded to the firearm receiver during fabrication or construction. All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required:

6

(1) For processing the registration;

(2) For database management by the Hawaii criminal justice data center;

(3) By a law enforcement agency for the lawful performance of its duties; or

(4) By order of a court.

(c) Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration. An authorized dealer, as provided in section 134-31, or a dealer licensed by the United States Department of Justice, who brings, assembles, or causes to be brought into the State by any other means, separate parts and an unfinished firearm receiver that when assembled create a firearm, or parts created by a three-dimensional printer that when assembled create a firearm, shall register the unfinished firearm receiver and receive a serial number before the assembly of the firearm or the sale or transfer of unassembled firearm parts or a receiver to a third party in accordance with subsection (b). Any sale or transfer of unfinished firearm receivers by an authorized dealer to a third party shall be conducted as if they were fully assembled firearms with a serial number engraved on the firearm receiver and in accordance with the firearms permitting process in section 134-2. All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration.

(d) Registration shall not be required for:

(1) Any device that is designed to fire loose black powder or that is a firearm manufactured before 1899;

(2) Any device not designed to fire or made incapable of being readily restored to a firing condition; or

(3) All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice pursuant to Title 27, Code of Federal Regulations.

(e) Every person who permanently moves firearms out of the State shall contact and notify the county police department in the county where the firearms are registered about the removal of the firearms within five days of the removal from the State. Any person who fails to timely notify the appropriate police department shall be subject to a civil penalty of $100 per firearm.

(f) No fee shall be charged for the registration of a firearm under this section, except for a fee chargeable by and payable to the registering county for persons registering a firearm under subsection (a), in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint registration, the fee provided for in this section may be charged to each person.

(g) No person less than twenty-one years of age shall bring or cause to be brought into the State any firearm.

**Haw. Rev. Stat. § 134-7.3**
**§ 134-7.3. Seizure of firearms upon disqualification**

(a) If any applicant is denied a permit, the chiefs of police of the respective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition. If an applicant fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date notice was mailed, the chief of police may seize all firearms and ammunition.

(b) Any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7 or part IV, within forty-eight hours of disqualification, shall voluntarily surrender all firearms and ammunition to the chief of police where the person resides or dispose of all firearms and ammunition. If any person fails to voluntarily surrender or dispose of all firearms and ammunition within forty-eight hours from the date of disqualification, the chief of police may seize all firearms and ammunition.

(c) For any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7(c), or because the person has been admitted to a psychiatric facility, whether for emergency or involuntary hospitalization, pursuant to part IV of chapter 334, once the chief of police is notified that the person is disqualified, the chief of police shall promptly issue a notice to the disqualified person to immediately surrender all firearms and ammunition. The notice shall be in writing, shall set forth the reasons for the disqualification, and shall state the requirement that the person immediately surrender all firearms and ammunition to the chief of police. If any person fails to voluntarily surrender all firearms and ammunition upon receiving notice, the chief of police may seize all firearms and ammunition. The firearms and ammunition shall be held in police custody until the person has been medically documented to be no longer adversely affected as provided in section 134-7 or until transferred or sold by the owner. Nothing in this subsection shall be construed to limit the duties imposed by subsection (b).

(d) For the purposes of this section, "dispose" means selling the firearms to a gun dealer licensed under section 134-31, transferring ownership of the firearms to any person who meets the requirements of section 134-2, or surrendering all firearms to the chief of police where the person resides for storage or disposal; provided that, for a person subject to section 134-7(f) or part IV, "dispose" shall not include

transferring ownership of the firearms to any person who meets the requirements of section 134-2.

(e) The chief of police of the respective counties shall adopt procedures to implement and administer the provisions of this section by December 31, 2001.

**Haw. Rev. Stat. § 134-8**
**§ 134-8. Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties**

(a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

(b) Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

(c) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

(d) Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

9

**Haw. Rev. Stat. § 134-8.5**
**[§ 134-8.5]. Bump fire stock, multiburst trigger activator, or trigger crank; prohibition**

(a) Any person in this State who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any bump fire stock, multiburst trigger activator, or trigger crank shall be guilty of a class C felony.

(b) As used in this section:

"Bump fire stock" means a butt stock designed to be attached to a semiautomatic firearm and designed, made, or altered to increase the rate of fire achievable with such firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

"Multiburst trigger activator" means:

(1) A device that simulates automatic gunfire by allowing standard function of a semiautomatic firearm with a static positioned trigger finger or a device that fires multiple shots with the pull and release of the trigger; or

(2) A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it simulates automatic gunfire.

"Trigger crank" means any device to be attached to a semiautomatic firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion, but does not include any firearm initially designed and manufactured to fire through the use of a crank or lever.

**Haw. Rev. Stat. § 134-10**
**§ 134-10. Alteration of identification marks prohibited**

No person shall wilfully alter, remove, or obliterate the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition. Possession of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be presumptive evidence that the possessor has altered, removed, or obliterated the mark of identity.

**Haw. Rev. Stat. § 134-23**
**[§ 134-23]. Place to keep loaded firearms other than pistols and revolvers; penalty**

(a) Except as provided in section 134-5, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon

change of place of business, residence, or sojourn, or between these places and the following:

 (1) A place of repair;

 (2) A target range;

 (3) A licensed dealer's place of business;

 (4) An organized, scheduled firearms show or exhibit;

 (5) A place of formal hunter or firearm use training or instruction; or

 (6) A police station.

"Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

 (b) Any person violating this section by carrying or possessing a loaded firearm other than a pistol or revolver shall be guilty of a class B felony.

## Haw. Rev. Stat. § 134-24

## [§ 134-24]. Place to keep unloaded firearms other than pistols and revolvers; penalty

 (a) Except as provided in section 134-5, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:

 (1) A place of repair;

 (2) A target range;

 (3) A licensed dealer's place of business;

 (4) An organized, scheduled firearms show or exhibit;

 (5) A place of formal hunter or firearm use training or instruction; or

 (6) A police station.

"Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

 (b) Any person violating this section by carrying or possessing an unloaded firearm other than a pistol or revolver shall be guilty of a class C felony.

## Haw. Rev. Stat. § 134-25

## [§ 134-25]. Place to keep pistol or revolver; penalty

 (a) Except as provided in sections 134-5 and 134-9, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of

purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:

(1) A place of repair;

(2) A target range;

(3) A licensed dealer's place of business;

(4) An organized, scheduled firearms show or exhibit;

(5) A place of formal hunter or firearm use training or instruction; or

(6) A police station.

"Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

(b) Any person violating this section by carrying or possessing a loaded or unloaded pistol or revolver shall be guilty of a class B felony.

**Haw. Rev. Stat. § 710-1016.3**

**§ 710-1016.3. Obtaining a government-issued identification document under false pretenses in the first degree**

(1) A person commits the offense of obtaining a government-issued identification document under false pretenses in the first degree if that person, with intent to mislead a public servant and intent to facilitate a felony, obtains an identification document issued by the State or any political subdivision thereof by:

(a) Making any statement, oral or in written, printed, or electronic form, that the person does not believe to be true, in an application for any identification document issued by the State or any political subdivision thereof; or

(b) Submitting or inviting reliance on any statement, document, or record, in written, printed, or electronic form, that the person knows to be falsely made, completed, or altered.

(2) Obtaining a government-issued identification document under false pretenses in the first degree is a class C felony.

**Haw. Rev. Stat. § 710-1016.4**

**§ 710-1016.4. Obtaining a government-issued identification document under false pretenses in the second degree**

(1) A person commits the offense of obtaining a government-issued identification document under false pretenses in the second degree if that person, with intent to mislead a public servant, obtains an identification document issued by the State or any political subdivision thereof by:

(a) Making any statement, oral or in written, printed, or electronic form, that the person does not believe to be true, in an application for any identification document issued by the State or any political subdivision thereof; or

(b) Submitting or inviting reliance on any statement, document, or record, in written, printed, or electronic form, that the person knows to be falsely made, completed, or altered.

(2) Obtaining a government-issued identification document under false pretenses in the second degree is a misdemeanor.

**Rev. Laws. Haw. §§ 2541 and 2542**
*See* Excerpts of Record at 2-ER-205-207

**Haw. Rev. Stat. §§ 134-2, 134-3, 134-10 (1968)**
*See* Excerpts of Record at 2-ER-208-213, 2-ER-215

**1907 Haw. Sess. Laws Act 85**
*See* Excerpts of Record at 2-ER-169-173

**1919 Haw. Sess. Laws Act 124**
*See* Excerpts of Record at 2-ER-174-176

**1923 Haw. Sess. Laws Act 156**
*See* Excerpts of Record at 2-ER-179-181

**1927 Haw. Sess. Laws Act 206**
*See* Excerpts of Record at 2_ER-182-191

**1933 Haw. Sess. Laws (Special Sess.) Act 26**
*See* Excerpts of Record at 2-ER-195-201

**1981 Haw. Sess. Laws Act 239**

. . .

SECTION 3.  Section 134-3, Hawaii Revised Statutes, is amended to read as follows:

. . . Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue . . . .

. . .

SECTION 9.  This Act shall take effect upon its approval . . . .

(Approved June 24, 1981.)

**1988 Haw. Sess. Laws Act 275**
*See* Excerpts of Record at 2-ER-218-226

**1990 Haw. Sess. Laws Act 195**
*See* Excerpts of Record at 2-ER-251-254

**2002 Haw. Sess. Laws Act 224**
. . .
SECTION 1.  Chapter 708, Hawaii Revised Statutes, is amended by adding to part IV three new sections to be appropriately designated and to read as follows:
　　"**§708-　Identity theft in the first degree.** . . .
　　**§708-　Identity theft in the second degree.** . . .
　　**§708-　Identity theft in the third degree.** . . .
SECTION 2.  Chapter 710, Hawaii Revised Statutes, is amended by adding to part V three [sic] new sections to be appropriately designated and to read as follows:
　　"**§710-　Obtaining a government-issued identification document under false pretenses in the first degree.** . . .
　　**§710-　Obtaining a government-issued identification document under false pretenses in the second degree.** . . .
SECTION 3.  Section 286-131, Hawaii Revised Statutes, is amended to read as follows:
　　"**§286-131  Unlawful use of license.** . . .
. . .
SECTION 6.  This act shall take effect upon its approval.
(Approved June 28, 2002.)

**2020 Haw. Sess. Laws Act 74**

*See* copy of published version of Act 74 on the following pages.

**ACT 74**                                H.B.  NO. 2744

A Bill for an Act Relating to Gun Violence Prevention.

*Be It Enacted by the Legislature of the State of Hawaii:*

### PART I

SECTION 1.    The Hawaii Revised Statutes is amended by adding a new chapter to be appropriately designated and to read as follows:

"**CHAPTER**
**GUN VIOLENCE AND VIOLENT CRIMES COMMISSION**

**§    -1   Gun violence and violent crimes commission; established.**    There is established the gun violence and violent crimes commission that shall be placed within the department of the attorney general for administrative purposes only.

**§    -2   Gun violence and violent crimes commission; membership.**    (a) The attorney general or the attorney general's designee shall coordinate and serve as the chair of the gun violence and violent crimes commission.

16                                **479**

ACT 74

    (b)   The following individuals, or their designees, shall serve as members of the gun violence and violent crimes commission:

    (1)   The chief justice of the supreme court of Hawaii;
    (2)   The director of health;
    (3)   The director of public safety;
    (4)   A county prosecuting attorney to be selected by the chair of the commission;
    (5)   The public defender;
    (6)   The chief of police of each county;
    (7)   The administrator of the Hawaii state hospital;
    (8)   The dean of the college of social sciences at the University of Hawaii at Manoa;
    (9)   The dean of the John A. Burns school of medicine;
   (10)   One representative from a group that advocates for stricter gun safety laws; and
   (11)   One representative from a firearm advocacy group.

    (c)   The chair of the gun violence and violent crimes commission may request the participation or input of experts in gun violence and violent crimes; county, state, and federal officials; members of the public; and other persons as necessary.

    (d)   The members of the gun violence and violent crimes commission shall serve without compensation but may be reimbursed for their actual and necessary expenses, including travel expenses, incurred in carrying out their duties.

    §   -3   **Gun violence and violent crimes commission; powers and duties.** (a) The purpose of the gun violence and violent crimes commission shall be to address gun violence and violent crimes in Hawaii.

    (b)   The gun violence and violent crimes commission shall provide coordination, facilitation, and planning among state and county agencies, federal agencies, and other partners as appropriate to carry out its purpose.

    (c)   The gun violence and violent crimes commission shall endeavor to:

    (1)   Identify relevant data that may be used to reduce gun violence and violent crimes;
    (2)   Identify areas in which relevant data is not available;
    (3)   Maximize the sharing between the agencies represented on the commission and other appropriate stakeholders of data relevant to reducing gun violence and violent crimes; and
    (4)   Coordinate and conduct research on gun violence and violent crimes.

    (d)   The gun violence and violent crimes commission may work with and engage stakeholders for the purposes of this chapter.

    (e)   The gun violence and violent crimes commission shall submit a report of its findings and recommendations, including any proposed legislation, to the legislature no later than forty days prior to the convening of the regular session of 2022 and each regular session thereafter, on policy relating to preventing gun violence and violent crimes."

PART II

    SECTION 2.   The legislature finds that a "ghost gun" is a firearm that is assembled without serial numbers or other identification markings. A person may assemble a ghost gun from a prepackaged kit requiring only minimal expertise and, thus, bypass background checks, registration, and other legal require-

17

ments. The legislature also finds that the State's lack of laws addressing ghost guns allows persons who would normally be prohibited under state law from owning or possessing firearms to do so. The ease with which ghost guns may be obtained defeats the intent of the State's otherwise strict firearm permitting and registration laws. It is these laws that have helped Hawaii to achieve the lowest gun violence death rate in the nation.

Accordingly, the purpose of this part is to:

(1) Prohibit the manufacture, purchase, or obtaining of firearm parts for the purpose of assembling a firearm having no serial number; and

(2) Amend certain requirements relating to firearms registration.

SECTION 3.   Chapter 134, Hawaii Revised Statutes, is amended by adding a new section to part I to be appropriately designated and to read as follows:

**"§134-    Manufacturing, purchasing, or obtaining firearm parts to assemble a firearm having no serial number; penalty.**   (a) A person who is not licensed to manufacture a firearm under section 134-31, or who is not a dealer licensed by the United States Department of Justice, shall not, for the purpose of assembling a firearm, purchase, produce with a three-dimensional printer, or otherwise obtain separately, or as part of a kit:

(1) A firearm receiver that is not imprinted with a serial number registered with a federally licensed manufacturer;

(2) A firearm receiver that has not been provided a serial number that may be registered in accordance with section 134-3(c); or

(3) Any combination of parts from which a firearm having no serial number may be readily assembled; provided that the parts do not have the capacity to function as a firearm unless assembled.

(b) Violation of this section is a class C felony."

SECTION 4.   Section 134-1, Hawaii Revised Statutes, is amended by adding two new definitions to be appropriately inserted and to read as follows:

""Assembly" means the fabrication of a firearm or the fitting together of component parts to construct a firearm.

"Firearm receiver" means the part of a firearm that provides housing for the firearm's internal components, including a hammer, bolt, breechblock, action, or firing mechanism. "Firearm receiver" includes any object or part that is not a firearm frame or receiver in finished form but that is designed or intended to be used for that purpose and may readily be made into a firearm frame or receiver through milling or other means."

SECTION 5.   Section 134-3, Hawaii Revised Statutes, is amended by amending subsections (a) through (d) to read as follows:

"(a) Every resident or other person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within five days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:

ACT 74

(1) A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve permit issued pursuant to section 183D-34;
(2) A written document indicating the person has been invited to the State to shoot on private land; or
(3) Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

Every person registering a firearm under this subsection shall be fingerprinted and photographed by the police department of the county of registration; provided that this requirement shall be waived where fingerprints and photographs are already on file with the police department. The police department shall perform an inquiry on the person by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to register a firearm is made. Any person attempting to register a firearm, a firearm receiver, or the parts used to assemble a firearm, and who is found to be disqualified from ownership, possession, or control of firearms or ammunition under section 134-7, shall surrender or dispose of all firearms and ammunition pursuant to section 134-7.3.

(b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration of all firearms shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has been assembled from separate parts and an unfinished firearm receiver, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "assembled from parts" shall be recorded in the space provided for model. If the firearm has been assembled from parts created using a three-dimensional printer, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "3-D printer" shall be recorded in the space provided for model. If the firearm has no serial number, the [permit] registration number shall be entered in the space provided for the serial number, and the [permit] registration number shall be engraved upon the receiver portion of the firearm before registration. On firearms assembled from parts created using a three-dimensional printer, the serial number shall be engraved on stainless steel and permanently embedded to the firearm receiver during fabrication or construction. All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required:

(1) For processing the registration;
(2) For database management by the Hawaii criminal justice data center;
(3) By a law enforcement agency for the lawful performance of its duties; or
(4) By order of a court.

(c) Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be re-

19

quired to have the firearms physically inspected by the chief of police at the time of registration. <u>An authorized dealer, as provided in section 134-31, or a dealer licensed by the United States Department of Justice, who brings, assembles, or causes to be brought into the State by any other means, separate parts and an unfinished firearm receiver that when assembled create a firearm, or parts created by a three-dimensional printer that when assembled create a firearm, shall register the unfinished firearm receiver and receive a serial number before the assembly of the firearm or the sale or transfer of unassembled firearm parts or a receiver to a third party in accordance with subsection (b). Any sale or transfer of unfinished firearm receivers by an authorized dealer to a third party shall be conducted as if they were fully assembled firearms with a serial number engraved on the firearm receiver and in accordance with the firearms permitting process in section 134-2. All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration.</u>

    (d)    Registration shall not be required for:

    (1)    Any device that is designed to fire loose black powder or that is a firearm manufactured before 1899;

    (2)    Any device not designed to fire or made incapable of being readily restored to a firing condition; or

    (3)    All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, [and] Firearms<u>, and Explosives</u> of the United States Department of Justice pursuant to Title 27, Code of Federal Regulations."

## PART III

    SECTION 6.    This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date.

    SECTION 7.    If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the invalidity does not affect other provisions or applications of the Act that can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

    SECTION 8.    Statutory material to be repealed is bracketed and stricken. New statutory material is underscored.[1]

    SECTION 9.    This Act shall take effect upon its approval.

(Became law on September 15, 2020, without the governor's signature, pursuant to Art. III, §16, State Constitution.)

**Note**

1. Edited pursuant to HRS §23G-16.5.

## STATUTES FROM OTHER STATES

### California

**Cal. Penal Code § 26840**
**§ 26840. Delivery of firearm; valid firearm safety certificate or unexpired handgun safety certificate**

(a) A dealer shall not deliver a firearm unless the person receiving the firearm presents to the dealer a valid firearm safety certificate, or, in the case of a handgun, an unexpired handgun safety certificate. The firearms dealer shall retain a photocopy of the firearm safety certificate as proof of compliance with this requirement.

. . .

**Cal. Penal Code § 31610**
**§ 31610. Legislative intent**

(a) It is the intent of the Legislature in enacting this article to require that persons who obtain firearms have a basic familiarity with those firearms, including, but not limited to, the safe handling and storage of those firearms. It is not the intent of the Legislature to require a firearm safety certificate for the mere possession of a firearm.

. . .

**Cal. Penal Code § 31615**
**§ 31615. Prohibition on purchase or receipt of, or sale, delivery, loan, or transfer of a firearm to a person lacking a valid safety certificate; penalties**

(a) A person shall not do either of the following:

(1) Purchase or receive any firearm, except an antique firearm, without a valid firearm safety certificate, except that in the case of a handgun, an unexpired handgun safety certificate may be used.

. . .

**Cal. Penal Code § 31655**
**§ 31655. Certificates; contents; expiration**

. . .

(c) The firearm safety certificate shall expire five years after the date that it was issued by the certified instructor.

. . .

## Connecticut

**Conn. Gen. Stat. § 29-33**
**§ 29-33. Sale, delivery or transfer of pistols and revolvers. Procedure. Penalty**
. . .

(b) On and after October 1, 1995, no person may purchase or receive any pistol or revolver unless such person holds a valid permit to carry a pistol or revolver issued pursuant to subsection (b) of section 29-28, a valid permit to sell at retail a pistol or revolver issued pursuant to subsection (a) of section 29-28 or a valid eligibility certificate for a pistol or revolver issued pursuant to section 29-36f or is a federal marshal, parole officer or peace officer.
. . .

**Conn. Gen. Stat. § 29-36f**
**§ 29-36f. Eligibility certificate for pistol or revolver**

(a) Any person who is twenty-one years of age or older may apply to the Commissioner of Emergency Services and Public Protection for an eligibility certificate for a pistol or revolver.

(b) The Commissioner of Emergency Services and Public Protection shall issue an eligibility certificate unless said commissioner finds that the applicant: (1) Has failed to successfully complete a course approved by the Commissioner of Emergency Services and Public Protection in the safety and use of pistols and revolvers including, but not limited to, a safety or training course in the use of pistols and revolvers available to the public offered by a law enforcement agency, a private or public educational institution or a firearms training school, utilizing instructors certified by the National Rifle Association or the Department of Energy and Environmental Protection and a safety or training course in the use of pistols or revolvers conducted by an instructor certified by the state or the National Rifle Association; (2) has been convicted of a felony or of a violation of section 21a-279 or section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d; (3) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120; (4) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13; (5) (A) has been confined in a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding sixty months by order of a probate court; or (B) has been voluntarily admitted on or after October 1, 2013, to a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding six months for care and treatment of a psychiatric disability and not solely for being an alcohol-dependent person or a drug-dependent person as those terms are

defined in section 17a-680; (6) is subject to a restraining or protective order issued by a court in a case involving the use, attempted use or threatened use of physical force against another person, including an ex parte order issued pursuant to section 46b-15 or section 46b-16a; (7) is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and hearing; (8) is prohibited from shipping, transporting, possessing or receiving a firearm pursuant to 18 USC 922(g)(4); or (9) is an alien illegally or unlawfully in the United States.

. . .

**Conn. Gen. Stat. § 29-36h**
**§ 29-36h. Fee for eligibility certificate. Expiration and renewal of eligibility certificate**

. . .

(b) An eligibility certificate originally issued under the provisions of section 29-36f shall expire five years after the date it becomes effective and each renewal thereof shall expire five years after the expiration date of the certificate being renewed.

. . .

**Conn. Gen. Stat. § 29-36i**
**§ 29-36i. Revocation of eligibility certificate. Reinstatement**

(a) Any eligibility certificate for a pistol or revolver shall be revoked by the Commissioner of Emergency Services and Public Protection upon the occurrence of any event which would have disqualified the holder from being issued the certificate pursuant to section 29-36f.

. . .

**Conn. Gen. Stat. § 29-37a**
**§ 29-37a. Sale, delivery or transfer of long guns. Procedure. Penalty**

. . .

(c) On and after April 1, 2014, no person may purchase or receive any long gun unless such person holds a valid long gun eligibility certificate issued pursuant to section 29-37p, a valid permit to carry a pistol or revolver issued pursuant to subsection (b) of section 29-28, a valid permit to sell at retail a pistol or revolver issued pursuant to subsection (a) of section 29-28 or a valid eligibility certificate for a pistol or revolver issued pursuant to section 29-36f.

. . .

**Conn. Gen. Stat. § 29-37p**

**§ 29-37p. Long gun eligibility certificate. Disqualifiers**

(a) Any person who is eighteen years of age or older may apply to the Commissioner of Emergency Services and Public Protection for a long gun eligibility certificate.

(b) The Commissioner of Emergency Services and Public Protection shall issue a long gun eligibility certificate unless said commissioner finds that the applicant: (1) Has failed to successfully complete a course approved by the Commissioner of Emergency Services and Public Protection in the safety and use of firearms including, but not limited to, a safety or training course in the use of firearms available to the public offered by a law enforcement agency, a private or public educational institution or a firearms training school, utilizing instructors certified by the National Rifle Association or the Department of Energy and Environmental Protection and a safety or training course in the use of firearms conducted by an instructor certified by the state or the National Rifle Association; (2) has been convicted of (A) a felony, or (B) on or after October 1, 1994, a violation of section 21a-279 or section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d; (3) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120; (4) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13; (5) has been confined in a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding sixty months by order of a probate court; (6) has been voluntarily admitted to a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding six months for care and treatment of a psychiatric disability and not solely for being an alcohol-dependent person or a drug-dependent person as those terms are defined in section 17a-680; (7) is subject to a restraining or protective order issued by a court in a case involving the use, attempted use or threatened use of physical force against another person, including an ex parte order issued pursuant to section 46b-15 or 46b-16a; (8) is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and hearing; (9) is prohibited from shipping, transporting, possessing or receiving a firearm pursuant to 18 USC 922(g)(4); or (10) is an alien illegally or unlawfully in the United States.

. . .

**Conn. Gen. Stat. § 29-37r**
**§ 29-37r. Long gun eligibility certificate. Fees. Expiration and renewal**
. . .
(b) A long gun eligibility certificate originally issued under the provisions of section 29-37p shall expire five years after the date it becomes effective and each renewal thereof shall expire five years after the expiration date of the certificate being renewed.
. . .

## District of Columbia

**D.C. Code § 7-2502.01**
**§ 7-2502.01. Registration requirements.**
(a) Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm. . . .
. . .

**D.C. Code § 7-2502.06**
**§ 7-2502.06. Time for filing registration applications.**
(a) An application for a registration certificate shall be filed (and a registration certificate issued) prior to taking possession of a firearm from a licensed dealer or from any person or organization holding a registration certificate therefor. In all other cases, an application for registration shall be filed immediately after a firearm is brought into the District. It shall be deemed compliance with the preceding sentence if such person personally communicates with the Metropolitan Police Department (as determined by the Chief to be sufficient) and provides such information as may be demanded; provided, that such person files an application for a registration certificate within 48 hours after such communication.
. . .

## Illinois

**430 Ill. Comp. Stat. 65/2**
**65/2. Firearm Owner's Identification Card required; exceptions**
**§ 2. Firearm Owner's Identification Card required; exceptions.**
(a)(1) No person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification

Card previously issued in his or her name by the Department of State Police under the provisions of this Act.

   . . .

**430 Ill. Comp. Stat. 65/7**
**65/7. Validity of Firearm Owner's Identification Card**
**§ 7. Validity of Firearm Owner's Identification Card.**

   (a) Except as provided in Section 8 of this Act or subsection (b) of this Section, a Firearm Owner's Identification Card issued under the provisions of this Act shall be valid for the person to whom it is issued for a period of 10 years from the date of issuance.

   . . .

## Massachusetts

**Mass. Gen. Laws ch. 140, § 121**
**§ 121. Firearms sales; definitions; antique firearms; application of law; exceptions**

   As used in sections 122 to 131Y, inclusive, the following words shall, unless the context clearly requires otherwise, have the following meanings:--

   . . .

   "Firearm", a stun gun or a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk- through metal detectors.

   . . .

**Mass. Gen. Laws ch. 140, § 129B**
**§ 129B. Firearm identification cards; conditions and restrictions**

   A firearm identification card shall be issued and possessed subject to the following conditions and restrictions:

   . . .

   (6) A firearm identification card shall not entitle a holder thereof to possess: (i) a large capacity firearm or large capacity feeding device therefor, except under a license issued to a shooting club as provided under section 131 or under the direct

supervision of a holder of a license issued to an individual under said section 131 at an incorporated shooting club or licensed shooting range; or (ii) a non-large capacity firearm or large capacity rifle or shotgun or large capacity feeding device therefor, except under a license issued to a shooting club as provided under said section 131 or under the direct supervision of a holder of a license issued to an individual under said section 131 at an incorporated shooting club or licensed shooting range. A firearm identification card shall not entitle a holder thereof to possess any rifle or shotgun that is, or in such manner that is, otherwise prohibited by law. A firearm identification card issued pursuant to subclause (vi) of clause (1) of section 122D,[1] shall be valid to purchase and possess chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate. Except as otherwise provided herein, a firearm identification card shall not be valid for the use, possession, ownership, transfer, purchase, sale, lease, rental or transportation of a rifle or shotgun if such rifle or shotgun is a large capacity weapon as defined in section 121.

. . .

**Mass. Gen. Laws ch. 140, § 129C**
**§ 129C. Application of Sec. 129B; ownership or possession of firearms or ammunition; transfers; report to commissioner; exemptions; exhibiting license to carry, etc. on demand**
    No person, other than a licensed dealer or one who has been issued a license to carry a pistol or revolver or an exempt person as hereinafter described, shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card by the licensing authority pursuant to the provisions of section one hundred and twenty-nine B.

    . . .

    Nothing in this section shall permit the sale of rifles or shotguns or ammunition therefor to a minor under the age of eighteen in violation of section one hundred and thirty nor may any firearm be sold to a person under the age of 21 nor to any person who is not licensed to carry firearms under section one hundred and thirty-one unless he presents a valid firearm identification card and a permit to purchase issued under section one hundred and thirty-one A, or presents such permit to purchase and is a properly documented exempt person as hereinbefore described.

    . . .

**Mass. Gen. Laws ch. 140, § 131**
**§ 131. Licenses to carry firearms; conditions and restrictions**
    The issuance and possession of a license to carry firearms shall be subject to the following conditions and restrictions:

(a) A license shall entitle a holder thereof of a license to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority considers proper; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor, for all lawful purposes; provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it considers proper. A violation of a restriction imposed by the licensing authority under this paragraph shall be cause for suspension or revocation and shall, unless otherwise provided, be punished by a fine of not less than $1,000 nor more than $10,000; provided, however, that section 10 of chapter 269 shall not apply to a violation of this paragraph.

. . .

(i) A license to carry or possess firearms shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue and shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue; . . .

. . .

**Mass. Gen. Laws ch. 140, § 131A**

**§ 131A. Permits to purchase, rent or lease firearms, or to purchase ammunition; fee; penalties**

A licensing authority under section one hundred and thirty-one, upon the application of a person qualified to be granted a license thereunder by such authority, may grant to such a person, other than a minor, a permit to purchase, rent or lease a firearm if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will. The colonel of the state police or a person authorized by him, upon the application of a person licensed under section one hundred and thirty-one F, may grant to such licensee, other than a minor, a permit to purchase, rent or lease a firearm, rifle or shotgun, or to purchase ammunition therefor, if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will. Such permits shall be issued on forms furnished by the commissioner of the department of criminal justice information services shall be valid for not more than ten days after issue, and a copy of every such permit so issued shall within one week thereafter be sent to the said executive director. The licensing authority may impose such restrictions relative to the caliber and capacity of the firearm to be purchased, rented or leased as he deems proper. Whoever knowingly issues a permit in violation of this section shall be punished by a fine of not less than five hundred nor more than one thousand dollars and by imprisonment

for not less than six months nor more than two years in a jail or house of correction.
 . . .

**Mass. Gen. Laws ch. 140, § 131E**
**§ 131E. Purchase by residents; licenses; firearm identification cards; purchase for use of another; penalties; revocation of licenses or cards**
 A resident of the commonwealth may purchase firearms, rifles, shotguns and ammunition feeding devices from a dealer licensed pursuant to section 122 or from a person qualified pursuant to section 128A or may purchase ammunition from a licensee under section 122B subject to the following conditions and restrictions:
 . . .

 (b) firearms and feeding devices therefor, including large capacity firearms and large capacity feeding devices therefor, may be so purchased only upon presentment of: (i) a valid license to carry firearms issued pursuant to section 131; (ii) a valid firearm identification card issued pursuant to section 129B; or (iii) valid proof of exempt status under section 129C; provided, however, that neither a firearm identification card issued pursuant to said section 129B nor proof of exempt status under said section 129C shall be valid to purchase a firearm or ammunition feeding device therefor, including large capacity firearms and large capacity feeding devices therefor, without being presented together with a valid and proper permit to purchase issued under section 131A; and provided further, that an alien permit to possess a rifle or shotgun shall not be valid to purchase firearms, ammunition or ammunition feeding devices therefor; and provided further, that no firearm, ammunition or ammunition feeding device therefor shall be sold to a person younger than 21 years of age.
 . . .

**<u>Maryland</u>**

**Md. Code Pub. Safety § 5-101**
**§ 5-101. Definitions**
 (r) "Regulated firearm" means:
  (1) a handgun; or
  (2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon:

**Md. Code Pub. Safety § 5-117**
**§ 5-117. Application for regulated firearm required**
    A person must submit a firearm application in accordance with this subtitle before the person purchases, rents, or transfers a regulated firearm.

**Md. Code Pub. Safety § 5-117.1**
**§ 5-117.1. Handgun qualification license required to sell, rent, or transfer handguns**

**Handgun qualification license required for purchaser, lessee, or transferees**
    (b) A dealer or any other person may not sell, rent, or transfer a handgun to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a valid handgun qualification license issued to the purchaser, lessee, or transferee by the Secretary under this section.

**Requirements for purchase, rent, or receipt of handguns**
    (c) A person may purchase, rent, or receive a handgun only if the person:
(1)(i) possesses a valid handgun qualification license issued to the person by the Secretary in accordance with this section;
. . .

**Issuance of handgun qualification license**
    (d) Subject to subsections (f) and (g) of this section, the Secretary shall issue a handgun qualification license to a person who the Secretary finds:
(1) is at least 21 years old;
(2) is a resident of the State;
(3) except as provided in subsection (e) of this section, has demonstrated satisfactory completion, within 3 years prior to the submission of the application, of a firearms safety training course approved by the Secretary that includes:
    (i) a minimum of 4 hours of instruction by a qualified handgun instructor;
    (ii) classroom instruction on:
        1. State firearm law;
        2. home firearm safety; and
        3. handgun mechanisms and operation; and
    (iii) a firearms orientation component that demonstrates the person's safe operation and handling of a firearm; and
(4) based on an investigation, is not prohibited by federal or State law from purchasing or possessing a handgun.

. . .

**Expiration of license**

(i) A handgun qualification license issued under this section expires 10 years from the date of issuance.

. . .

**Revocation of license**

(k)(1) The Secretary may revoke a handgun qualification license issued or renewed under this section on a finding that the licensee no longer satisfies the qualifications set forth in subsection (d) of this section.

. . .

**Md. Code Pub. Safety § 5-123**
**§ 5-123. Time for licensee to complete transactions**

**Completion required in 90 days**

(b) A licensee shall complete the sale, rental, or transfer of a regulated firearm within 90 days after the firearm application was stamped by the Secretary as not being disapproved.

**Incomplete transactions**

(c)(1) If the sale, rental, or transfer of a regulated firearm is not completed within 90 days after the firearm application was stamped by the Secretary as not being disapproved, a licensee shall return the firearm application to the Secretary within 7 days.

(2) The Secretary shall void a firearm application returned under paragraph (1) of this subsection as an incomplete sale, rental, or transfer.

. . .

**Md. Code Pub. Safety § 5-124**
**§ 5-124. Secondary transactions**

**Completion required in 90 days**

(c) A person shall complete the sale, rental, or transfer of a regulated firearm within 90 days after the firearm application was stamped by the Secretary as not being disapproved.

31

**Incomplete transactions**

(d)(1) If the sale, rental, or transfer of a regulated firearm is not completed within 90 days after the firearm application was stamped by the Secretary as not being disapproved, a person shall return the firearm application to the Secretary within 7 days.

(2) The Secretary shall void a firearm application returned under paragraph (1) of this subsection as an incomplete sale, rental, or transfer.

. . .

## Michigan

**Mich. Comp. Laws § 28.422**
**28.422. Licensure to purchase, carry, possess, or transport pistol; requirements; eligibility; application procedure; disposition of license copies; purchase or inheritance of pistol; nonresidents; exemptions; forgery; penalties**

Sec. 2. (1) Except as otherwise provided in this act, a person shall not purchase, carry, possess, or transport a pistol in this state without first having obtained a license for the pistol as prescribed in this section.

. . .

(4) Applications for licenses under this section shall be signed by the applicant under oath upon forms provided by the director of the department of state police. Licenses to purchase, carry, possess, or transport pistols shall be executed in triplicate upon forms provided by the director of the department of state police and shall be signed by the licensing authority. Three copies of the license shall be delivered to the applicant by the licensing authority. A license is void unless used within 30 days after the date it is issued.

. . .

**Mich. Comp. Laws § 28.422a**
**28.422a. Purchasing, carrying, possessing, using, or transporting pistols by individuals with other licenses; duties of seller and purchaser; failure to comply; pistol entry database; possession of record; false statements; penalties; promulgation of rules; verification of information**

Sec. 2a. (1) The following individuals are not required to obtain a license under section 2 to purchase, carry, possess, use, or transport a pistol:

(a) An individual licensed under section 5b, except for an individual who has an emergency license issued under section 5a(4) or a receipt serving as a concealed pistol license under section 5b(9) or 5*l*(3).

(b) A federally licensed firearms dealer.

(c) An individual who purchases a pistol from a federally licensed firearms

32

dealer in compliance with 18 USC 922(t).

(d) An individual currently employed as a police officer who is licensed or certified under the Michigan commission on law enforcement standards act, 1965 PA 203, MCL 28.601 to 28.615.

. . .

## North Carolina

**N.C. Gen. Stat. § 14-402**
**§ 14-402. Sale of certain weapons without permit forbidden**

(a) It is unlawful for any person, firm, or corporation in this State to sell, give away, or transfer, or to purchase or receive, at any place within this State from any other place within or without the State any pistol unless: (i) a license or permit is first obtained under this Article by the purchaser or receiver from the sheriff of the county in which the purchaser or receiver resides; or (ii) a valid North Carolina concealed handgun permit is held under Article 54B of this Chapter by the purchaser or receiver who must be a resident of the State at the time of the purchase.

. . .

**N.C. Gen. Stat. § 14-403**
**§ 14-403. Permit issued by sheriff; form of permit; expiration of permit**

The sheriffs of any and all counties of this State shall issue to any person, firm, or corporation in any county a permit to purchase or receive any weapon mentioned in this Article from any person, firm, or corporation offering to sell or dispose of the weapon. The permit shall expire five years from the date of issuance. The permit shall be a standard form created by the State Bureau of Investigation in consultation with the North Carolina Sheriffs' Association, shall be of a uniform size and material, and shall be designed with security features intended to minimize the ability to counterfeit or replicate the permit and shall be set forth as follows:

. . .

I, _____, Sheriff of said County, do hereby certify that I have conducted a criminal background check of the applicant, _____ whose place of residence is_____ in _____ (or) in _____ Township, _____ County, North Carolina, and have received no information to indicate that it would be a violation of State or federal law for the applicant to purchase, transfer, receive, or possess a handgun. The applicant has further satisfied me as to his, her (or) their good moral character. Therefore, a permit is issued to _____ to purchase one pistol from any person, firm or corporation authorized to dispose of the same.

. . .

33

**Nebraska**

**Neb. Rev. Stat. § 69-2403**
**69-2403. Sale, lease, rental, and transfer; certificate required; exceptions**

(1) Except as provided in this section and section 69-2409, a person shall not purchase, lease, rent, or receive transfer of a handgun until he or she has obtained a certificate in accordance with section 69-2404. Except as provided in this section and section 69-2409, a person shall not sell, lease, rent, or transfer a handgun to a person who has not obtained a certificate.

. . .

**Neb. Rev. Stat. § 69-2404**
**69-2404. Certificate; application; fee**

Any person desiring to purchase, lease, rent, or receive transfer of a handgun shall apply with the chief of police or sheriff of the applicant's place of residence for a certificate. The application may be made in person or by mail. The application form and certificate shall be made on forms approved by the Superintendent of Law Enforcement and Public Safety. The application shall include the applicant's full name, address, date of birth, and country of citizenship. If the applicant is not a United States citizen, the application shall include the applicant's place of birth and his or her alien or admission number. If the application is made in person, the applicant shall also present a current Nebraska motor vehicle operator's license, state identification card, or military identification card, or if the application is made by mail, the application form shall describe the license or card used for identification and be notarized by a notary public who has verified the identification of the applicant through such a license or card. An applicant shall receive a certificate if he or she is twenty-one years of age or older and is not prohibited from purchasing or possessing a handgun by 18 U.S.C. 922. A fee of five dollars shall be charged for each application for a certificate to cover the cost of a criminal history record check.

**Neb. Rev. Stat. § 69-2407**
**69-2407. Certificate; contents; term; revocation**

A certificate issued in accordance with section 69-2404 shall contain the holder's name, address, and date of birth and the effective date of the certificate. A certificate shall authorize the holder to acquire any number of handguns during the period that the certificate is valid. The certificate shall be valid throughout the state and shall become invalid three years after its effective date. If the chief of police or sheriff who issued the certificate determines that the applicant has become disqualified for the certificate under section 69-2404, he or she may immediately revoke the certificate and require the holder to surrender the certificate immediately.

Revocation may be appealed pursuant to section 69-2406.

**New Jersey**

**N.J. Stat. 2C:58-3**
**2C:58-3. Purchase of firearms**
    a. Permit to purchase a handgun.
    (1) No person shall sell, give, transfer, assign or otherwise dispose of, nor receive, purchase, or otherwise acquire a handgun unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or has first secured a permit to purchase a handgun as provided by this section.
    . . .
    b. Firearms purchaser identification card.
    (1) No person shall sell, give, transfer, assign or otherwise dispose of nor receive, purchase or otherwise acquire an antique cannon or a rifle or shotgun, other than an antique rifle or shotgun, unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or possesses a valid firearms purchaser identification card, and first exhibits the card to the seller, donor, transferor or assignor, and unless the purchaser, assignee, donee, receiver or holder signs a written certification, on a form prescribed by the superintendent, which shall indicate that he presently complies with the requirements of subsection c. of this section and shall contain his name, address and firearms purchaser identification card number or dealer's registration number. The certification shall be retained by the seller, as provided in paragraph (4) of subsection a. of N.J.S.2C:58-2, or, in the case of a person who is not a dealer, it may be filed with the chief of police of the municipality in which he resides or with the superintendent.
    . . .
    f. Granting of permit or identification card; fee; term; renewal; revocation. The application for the permit to purchase a handgun together with a fee of $2, or the application for the firearms purchaser identification card together with a fee of $5, shall be delivered or forwarded to the licensing authority who shall investigate the same and, unless good cause for the denial thereof appears, shall grant the permit or the identification card, or both, if application has been made therefor, within 30 days from the date of receipt of the application for residents of this State and within 45 days for nonresident applicants. A permit to purchase a handgun shall be valid for a period of 90 days from the date of issuance and may be renewed by the issuing authority for good cause for an additional 90 days. A firearms purchaser identification card shall be valid until such time as the holder becomes subject to any of the disabilities set forth in subsection c. of this section, whereupon the card shall

be void and shall be returned within five days by the holder to the superintendent, who shall then advise the licensing authority. Failure of the holder to return the firearms purchaser identification card to the superintendent within the five days shall be an offense under subsection a. of N.J.S.2C:39-10. Any firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit. The county prosecutor of any county, the chief police officer of any municipality or any citizen may apply to the court at any time for the revocation of the card.

. . .

i. Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . . .

. . .

A person shall not be restricted as to the number of rifles or shotguns he may purchase, provided he possesses a valid firearms purchaser identification card and provided further that he signs the certification required in subsection b. Of this section for each transaction.

. . .

## New York

### McKinney's N.Y. Penal Law § 400.00
### § 400.00 Licenses to carry, possess, repair and dispose of firearms

. . .

2. Types of licenses. A license for gunsmith or dealer in firearms shall be issued to engage in such business. A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (f) have and carry concealed,

without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols which are defined as follows: (i) any single shot, muzzle loading pistol with a matchlock, flintlock, percussion cap, or similar type of ignition system manufactured in or before l898, which is not designed for using rimfire or conventional centerfire fixed ammunition; and (ii) any replica of any pistol described in clause (i) hereof if such replica--

. . .

6. License: validity. Any license issued pursuant to this section shall be valid notwithstanding the provisions of any local law or ordinance. No license shall be transferable to any other person or premises. A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city. Such license to carry or possess shall be valid within the city of New York in the absence of a permit issued by the police commissioner of that city, provided that (a) the firearms covered by such license have been purchased from a licensed dealer within the city of New York and are being transported out of said city forthwith and immediately from said dealer by the licensee in a locked container during a continuous and uninterrupted trip; or provided that (b) the firearms covered by such license are being transported by the licensee in a locked container and the trip through the city of New York is continuous and uninterrupted; or provided that (c) the firearms covered by such license are carried by armored car security guards transporting money or other valuables, in, to, or from motor vehicles commonly known as armored cars, during the course of their employment; or provided that (d) the licensee is a retired police officer as police officer is defined pursuant to subdivision thirty-four of section 1.20 of the criminal procedure law or a retired federal law enforcement officer, as defined in section 2.15 of the criminal procedure law, who has been issued a license by an authorized licensing officer as defined in subdivision ten of section 265.00 of this chapter; provided, further, however, that if such license was not issued in the city of New York it must be marked "Retired Police Officer" or "Retired Federal Law Enforcement Officer", as the case may be, and, in the case of a retired officer the license shall be deemed to permit only police or federal law enforcement regulations weapons; or provided that (e) the licensee is a peace officer described in subdivision four of section 2.10 of the criminal procedure law and the license, if issued by other than the city of New York, is marked "New York State Tax Department Peace Officer" and in such case the exemption shall apply only to the firearm issued to such licensee by the department of taxation and finance. A license as gunsmith or dealer in firearms shall not be valid outside the city or county, as the case may be, where issued. Notwithstanding any inconsistent

provision of state or local law or rule or regulation, the premises limitation set forth in any license to have and possess a pistol or revolver in the licensee's dwelling or place of business pursuant to paragraph (a) or (b) of subdivision two of this section shall not prevent the transport of such pistol or revolver directly to or from (i) another dwelling or place of business of the licensee where the licensee is authorized to have and possess such pistol or revolver, (ii) an indoor or outdoor shooting range that is authorized by law to operate as such, (iii) a shooting competition at which the licensee may possess such pistol or revolver consistent with the provisions of subdivision a of section 265.20 of this chapter or consistent with the law applicable at the place of such competition, or (iv) any other location where the licensee is lawfully authorized to have and possess such pistol or revolver; provided however, that during such transport to or from a location specified in clauses (i) through (iv) of this paragraph, the pistol or revolver shall be unloaded and carried in a locked container, and the ammunition therefor shall be carried separately; provided further, however, that a license to have and possess a pistol or revolver in the licensee's dwelling or place of business pursuant to paragraph (a) or (b) of subdivision two of this section that is issued by a licensing officer other than the police commissioner of the city of New York shall not authorize transport of a pistol or revolver into the city of New York in the absence of written authorization to do so by the police commissioner of that city. The term "locked container" shall not include the glove compartment or console of a vehicle.

. . .

9. License: amendment. Elsewhere than in the city of New York, a person licensed to carry or possess a pistol or revolver may apply at any time to his or her licensing officer for amendment of his or her license to include one or more such weapons or to cancel weapons held under license. If granted, a record of the amendment describing the weapons involved shall be filed by the licensing officer in the executive department, division of state police, Albany. The superintendent of state police may authorize that such amendment be completed and transmitted to the state police in electronic form. Notification of any change of residence shall be made in writing by any licensee within ten days after such change occurs, and a record of such change shall be inscribed by such licensee on the reverse side of his or her license. Elsewhere than in the city of New York, and in the counties of Nassau and Suffolk, such notification shall be made to the executive department, division of state police, Albany, and in the city of New York to the police commissioner of that city, and in the county of Nassau to the police commissioner of that county, and in the county of Suffolk to the licensing officer of that county, who shall, within ten days after such notification shall be received by him or her, give notice in writing of such change to the executive department, division of state police, at Albany.

10. License: expiration, certification and renewal. (a) Any license for gunsmith

or dealer in firearms and, in the city of New York, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire not more than three years after the date of issuance. In the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire not more than five years after the date of issuance; however, in the county of Westchester, any such license shall be certified prior to the first day of April, two thousand, in accordance with a schedule to be contained in regulations promulgated by the commissioner of the division of criminal justice services, and every such license shall be recertified every five years thereafter. For purposes of this section certification shall mean that the licensee shall provide to the licensing officer the following information only: current name, date of birth, current address, and the make, model, caliber and serial number of all firearms currently possessed. Such certification information shall be filed by the licensing officer in the same manner as an amendment. Elsewhere than in the city of New York and the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not previously revoked or cancelled, shall be in force and effect until revoked as herein provided. Any license not previously cancelled or revoked shall remain in full force and effect for thirty days beyond the stated expiration date on such license. Any application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer. In the case of a license for gunsmith or dealer in firearms, in counties having a population of less than two hundred thousand inhabitants, photographs and fingerprints shall be submitted on original applications and upon renewal thereafter only at six year intervals. Upon satisfactory proof that a currently valid original license has been despoiled, lost or otherwise removed from the possession of the licensee and upon application containing an additional photograph of the licensee, the licensing officer shall issue a duplicate license.

     . . .

**Rhode Island**

**R.I. Gen. Laws § 11-47-35**
**§ 11-47-35. Sale of concealable weapons--Safety courses and tests--Review board-- Issuance of permits to certain government officers**

(a)(1) No person shall deliver a pistol or revolver to a purchaser until seven (7) days shall have elapsed from twelve o'clock (12:00) noon of the day following the day of application for the purchase, and when delivered, the pistol or revolver shall be unloaded and securely wrapped, with the bill of sale to be enclosed within the wrapper with the pistol or revolver. Any citizen of the United States and/or lawful resident of this state who is twenty-one (21) years of age or older, and any nonresident member of the armed forces of the United States who is stationed in this state and who is twenty-one (21) years of age or older, may, upon application, purchase or acquire a pistol or revolver. At the time of applying for the purchase of a concealable firearm, the purchaser shall: (i) Complete and sign in triplicate and deliver to the person selling the pistol or revolver the application form described in this section, and in no case shall it contain the serial number of the pistol or revolver; and (ii) Shall present to the person selling the pistol or revolver a pistol/revolver safety certificate issued by the department of environmental management. The certificate shall be retained in the possession of the buyer. The pistol/revolver safety certificate shall certify that the purchaser has completed a basic pistol/revolver safety course as shall be administered by the department of environmental management.

. . .

(2) The person selling the pistol or revolver shall on the date of application sign and forward by registered mail, by delivery in person, or by electronic mail if approved by the applicable police department, the original and duplicate copies of the application to the chief of police in the city or town in which the purchaser has his or her residence or to the superintendent of the Rhode Island state police in the instance where the purchaser either resides in the town of Exeter or resides out of state. The superintendent of the Rhode Island state police or the chief of police in the city or town in which the purchaser has his or her residence shall mark or stamp the original copy of the application form with the date and the time of receipt and return it by the most expeditious means to the person who is selling the pistol or revolver. The triplicate copy duly signed by the person who is selling the pistol or revolver shall within seven (7) days be sent by him or her by registered mail, by delivery in person, or by electronic mail to the attorney general. The person who is selling the pistol or revolver shall retain the original copy duly receipted by the police authority to whom sent or delivered for a period of six (6) years with other records of the sale. It shall be the duty of the police

40

authority to whom the duplicate copy of the application form is sent or delivered to make a background check of the applicant to ascertain whether he or she falls under the provisions of § 11-47-5, § 11-47-6, § 11-47-7, or § 11-47-23. If, after the lapse of seven (7) days from twelve o'clock (12:00) noon of the day following application, no disqualifying information has been received from the investigating police authority by the person who is selling the pistol or revolver, he or she will deliver the firearm applied for to the purchaser. Upon the finding of no disqualifying information under the provisions of the above cited sections of this chapter, and in no case later than thirty (30) days after the date of application, the duplicate and triplicate copies of the application will be destroyed. Retention of the duplicate and triplicate copies in violation of this section or any unauthorized use of the information contained in the copies by a person or agency shall be punishable by a fine of not more than one thousand dollars ($1,000). The provisions of this section shall not apply to bona fide sales at wholesale to duly licensed retail dealers, nor to purchases by retail dealers duly licensed under the provisions of § 11-47-39.

. . .

**Washington**

**Rev. Code Wash. § 9.41.090**
**9.41.090. Dealer deliveries regulated--Hold on delivery--Fees authorized**

. . .

(2) In addition to the other requirements of this chapter, no dealer may deliver a semiautomatic assault rifle to the purchaser thereof until:

(a) The purchaser provides proof that he or she has completed a recognized firearm safety training program within the last five years . . .

. . .

The training must be sponsored by a federal, state, county, or municipal law enforcement agency, a college or university, a nationally recognized organization that customarily offers firearms training, or a firearms training school with instructors certified by a nationally recognized organization that customarily offers firearms training. The proof of training shall be in the form of a certification that states under the penalty of perjury the training included the minimum requirements; .

. . .

. . .

## <u>STATEMENT OF RELATED CASES</u>

Defendant is not aware of any related cases pending in this Court.

DATED:  Honolulu, Hawaiʻi, February 22, 2022.

s/ Robert T. Nakatsuji
_____
KIMBERLY T. GUIDRY
 Solicitor General
ROBERT T. NAKATSUJI
 First Deputy Solicitor General
CARON M. INAGAKI
KENDALL J. MOSER
 Deputy Attorneys General

Attorneys for Defendant-Appellant HOLLY
T. SHIKADA, in her Official Capacity as
the Attorney General of the State of Hawaiʻi

1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  No. 21-16756

I am the attorney or self-represented party.

**This brief contains  13,960  words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Robert T. Nakatsuji                **Date**  February 22, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

1

## **CERTIFICATE OF SERVICE**

I hereby certify that Opening Brief of Defendant-Appellant HOLLY T. SHIKADA was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 22, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED:  Honolulu, Hawaiʻi, February 22, 2022.

   s/ Robert T. Nakatsuji
KIMBERLY T. GUIDRY
 Solicitor General
ROBERT T. NAKATSUJI
 First Deputy Solicitor General
CARON M. INAGAKI
KENDALL J. MOSER
 Deputy Attorneys General

Attorneys for Defendant-Appellant HOLLY T. SHIKADA, in her Official Capacity as the Attorney General of the State of Hawaiʻi