No. 21-16756

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TODD YUKUTAKE, and DAVID KIKUKAWA,
*Plaintiffs-Appellees,*

v.

HOLLY T. SHIKADA, in her Official Capacity
as the Attorney General of the State of Hawaiʻi,
*Defendant-Appellant,*[1]

and

CITY AND COUNTY OF HONOLULU,
*Defendant.*[2]

On Appeal from the United States District Court for the District of Hawaiʻi
Honorable J. Michael Seabright, Chief United States District Judge
(Civil No. 1:19-cv-00578 JMS-RT)

**EXCERPTS OF RECORD FOR DEFENDANT-APPELLANT
HOLLY T. SHIKADA (VOLUME 2 OF 3)**

---

[1] HOLLY T. SHIKADA succeeded CLARE E. CONNORS as Attorney General of the State of Hawaiʻi on December 10, 2021 and is automatically substituted as a party pursuant to Fed. R. App. P. 43(c)(2).
[2] Defendant CITY AND COUNTY OF HONOLULU was dismissed with prejudice by stipulation in the District Court on June 12, 2020.  3-ER-440-444 (ECF 53).

HOLLY T. SHIKADA          4017
  Attorney General of the State of
  Hawaiʻi
KIMBERLY T. GUIDRY        7813
  Solicitor General

ROBERT T. NAKATSUJI        6743
  First Deputy Solicitor General
CARON M. INAGAKI           3835
KENDALL J. MOSER           6515
  Deputy Attorneys General
Dept. of the Attorney General
425 Queen Street
Honolulu, Hawaiʻi 96813
Telephone: (808) 586-1360
E-mail:  Kimberly.T.Guidry@hawaii.gov
       Robert.T.Nakatsuji@hawaii.gov
       Caron.M.Inagaki@hawaii.gov
       Kendall.J.Moser@hawaii.gov

Counsel for Defendant-Appellant HOLLY T. SHIKADA, in her
Official Capacity as the Attorney General of the State of Hawaiʻi

CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI          3835
KENDALL J. MOSER          6515
Deputy Attorneys General
Department of the Attorney
  General, State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1494
Facsimile:   (808) 586-1369
E-Mail: Caron.M.Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA, <br><br>          Plaintiffs, <br><br>     vs. <br><br> CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, <br><br>          Defendant. | CIVIL NO. 19-00578 JMS-RT <br><br> DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S REPLY MEMORANDUM IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE <br><br> ECF No. 91 |

<u>Hearing</u>
Date:  June 28, 2021
Time:  10:00 a.m.
Chief Judge J. Michael Seabright

Trial Date:  February 23, 2022

2-ER-116

## DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S REPLY MEMORANDUM IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT

Defendant Clare E. Connors, in her Official Capacity as the Attorney General of the State of Hawaii ("Defendant"), by and through her attorneys, Caron M. Inagaki and Kendall J. Moser, Deputy Attorneys General, hereby submits this Reply Memorandum in support of her Counter Motion for Summary Judgment filed on May 28, 2021 [ECF No. 91].

I.    The Plaintiffs Do Not Have an As-Applied Challenge Against Defendant.

As the Court is aware, in their original Complaint the Plaintiffs sued not only Defendant but the City and County of Honolulu as well, and later settled with the City and County and filed a stipulation for dismissal with prejudice.  See ECF No. 53.  The statutes the Plaintiffs challenge, Hawaii Revised Statutes § 134-2(d) and § 134-3(a), are clear that it is the county chiefs of police who issue permits to acquire firearms, and with whom firearms are registered.  In the event Defendant was not clear in her Counter Motion for Summary Judgment, she is not merely "suggesting" that the Plaintiffs waived their as-applied challenge by dismissing the City and County, she is declaring unequivocally that they did so.  Again, from *Young v. State of Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021):  "A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law."  The City and County

through its police department executes the statutory provisions the Plaintiffs

complain of.  The Plaintiffs' as-applied challenge went away when they chose to

dismiss the City and County with prejudice.  If the Plaintiffs had wanted to

continue pursuing as-applied claims then they should not have voluntarily

dismissed the City and County from this action.  Instead, they chose to pursue only

their claims against Defendant in her official capacity, i.e. the State, and those

claims cannot be as-applied challenges because the State does not apply the

firearm permitting and registration laws.

II.     The Evidence Shows That the Challenged Statutes Are
        Not A Substantial Burden.

Throughout their Reply and Opposition the Plaintiffs complain that under

Hawaii's statutes it is "difficult" to complete handgun purchases (pp. 3-4); that the

statutes have more than a "de minimis" impact on their Second Amendment rights

(p. 6); the statutes "severely hamper" the Plaintiffs' ability to purchase handguns

because they must take time off work (p. 8); and that the statutes make it "very

difficult" to purchase a handgun (p. 9).  But nowhere do the Plaintiffs provide

evidence or even argument that the challenged statutes constitute a ban on them

purchasing handguns, only that the laws make it inconvenient for them to do so.

Having to take time off work is not a sufficient basis upon which to invalidate state

statutes designed to promote public safety.

As part of their Concise Statement (ECF No. 86), the Plaintiffs provide Hawaii firearm registration reports for the years 2017, 2018, 2019 and 2020.  See Exhibits "B"-"E."  Defendant has admitted that those reports are true and correct.  What those reports evidence is that over the past four years only 2% of all approved firearm permit applications were voided after the applicants failed to return for their permits within the specified time period.  Id.  The other 98% of Hawaii's firearm applicants managed to timely pick up their permits.  Given these facts, it cannot be said that Hawaii's permit to acquire statute constitutes a substantial burden on the Plaintiffs' right to obtain handguns.  The Plaintiffs' arguments are without merit.

III.    The Laws Plaintiffs Challenge Are Longstanding.

As set out in Defendant's Counter Motion, the provisions in the Hawaii Revised Statutes ("HRS") that the Plaintiffs challenge, § 134-2 (permit to acquire) and § 134-3 (registration), date back more than 100 years to 1907 and 1919, only a few years after Hawaii became a Territory, and took their modern form in 1933-1934.[1]  Relying on *Young v. State of Hawaii,* the Plaintiffs argue that these laws are not longstanding because they "are not old enough."  See the Plaintiffs' Reply and Opposition at p. 4.  Reliance on *Young* for this proposition is not helpful.  The

---

[1] See Exhibits "A," "B," and "G" to Defendant's Concise Statement of Material Facts [ECF No. 92].

Court in *Young* based its holding in large part on the fact that there were carry restrictions in the Statute of Northampton which was enacted in 1328, four and a half ***centuries*** before the Second Amendment was ratified. Open carry restrictions are obviously longstanding. This is not an open carry case.

A more useful analysis is found in the cases discussed in Defendant's Counter Motion, which hold that firearms regulations dating back to the early 20th century are sufficiently longstanding so as to qualify for what the Supreme Court in *Heller I* called "presumptively lawful regulatory measures." *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (mentioning "early twentieth century" laws); *National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012) ("By 1923, therefore, twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1254-55 (D.C. Cir. 2011) ("*Heller II*") ("The Court in *Heller [I]* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century.").

There can be no reasonable dispute that Hawaii's permit to acquire and registration provisions are therefore presumptively lawful under *Heller I*. That should end the analysis. The Plaintiffs argue, however, that they have rebutted the

presumption of constitutionality because the challenged provisions are a substantial burden on their rights, and the justifications for registration laws have been eclipsed by modern technology.

IV.     HRS § 134-2 Survives Intermediate Scrutiny.

As explained in Defendant's Counter Motion, and in section II. above, using a permit to acquire a handgun within ten days is not a substantial burden on conduct protected by the Second Amendment.  Strict scrutiny therefore does not apply.  The ten-day requirement in HRS § 134-2 affects only ***the manner*** in which a person obtains a handgun.  It is not a ban.  *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014).  Defendant briefed these issues on pp. 13-18 of her Counter Motion and need not repeat her arguments here.

In response to the Plaintiffs' arguments beginning at p. 11 of their Reply and Opposition, it was the Hawaii Legislature's decision whether to treat pistols and revolvers differently than rifles and shotguns.  "[I]n the face of policy disagreements, or even conflicting legislative evidence, 'we must allow the government to select among reasonable alternatives in its policy decisions.' . . . Our role is not to re-litigate a policy disagreement that the [Hawaii] legislature already settled, and we lack the means to resolve that dispute." *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018).  If the Legislature felt that the concealability of pistols and revolvers justified limiting permits to acquire to ten days rather than the

one year accorded to rifles and shotguns, it was entitled to make that determination.  Furthermore, *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*") itself makes a significant distinction between handguns and other firearms, such as long guns.  *Heller I* gave handguns "special consideration" because they are the "quintessential self-defense weapon."  *See Kolbe v. Hogan*, 849 F.3d 114, 138-39 (4th Cir. 2017); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 144 (3d Cir. 2016).  If the Supreme Court can distinguish handguns from long guns, so can the Hawaii Legislature.

The Plaintiffs further argue that the difference between the expiration periods for handguns and long guns makes the permitting statute constitutionally underinclusive.  However, the Ninth Circuit has held that "underinclusiveness does not doom [a statute] under intermediate scrutiny."  *Pena*, 898 F.3d at 981.  Under intermediate scrutiny, "[t]he government must show that the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, but not necessarily that the chosen regulation is the least restrictive means of achieving the government's interest."  *Id.* at 979 (internal quotation marks omitted).  Here the ten-day expiration date promotes public safety, which would be less effectively achieved otherwise, and even if a longer expiration date, such as for long guns, were possible, it is not required.

6

The Plaintiffs argue that permits should be given a longer expiration date than ten days because under HRS § 134-7(g), "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3." Relying on voluntary surrender in this way ignores reality. Many people may not realize that they are supposed to turn in their firearms. Other people may simply refuse to do so. The requirement of having to get a new permit for each pistol or revolver, with an expiration date of ten days for each, ensures that a person's qualifications will be checked again each time he or she applies for a new permit. The governmental objective of public safety is promoted because a relatively short expiration date will ensure that the information in a person's application remains accurate when they acquire their firearm.

V.    <u>HRS § 134-3 Survives Intermediate Scrutiny.</u>

As the Plaintiffs point out, HRS §134-3, which dates back nearly one century, was amended in 2020, during the pendency of this action, to require in-person inspection of firearms at the time of registration. This does not change the statute's constitutionality. The provision at issue dates back to 1919 and constitutes a longstanding "condition and qualification on the commercial sale of arms." *Heller I*, 554 U.S. at 626-27 & n.26. *See also Silvester v. Harris*, 843 F.3d

2-ER-123

816, 829-32 (9th Cir. 2016) (Thomas, C.J., concurring) (applying the "conditions and qualifications on the commercial sale of arms" exception).  If the Court goes on to the second step of the analysis, intermediate scrutiny should be applied because an in-person inspection requirement merely affects the manner in which registration takes place rather than imposing a complete ban.  And it is not hard to bring a firearm to a police station in any event.  Moreover, an in-person inspection protects public safety by ensuring that the registration information is accurate, ensuring that the firearm complies with Hawaii law, and confirming the identity of the firearm to facilitate tracing by law enforcement.  *See Heller v. District of Columbia*, 801 F.3d 264, 285-86 (D.C. Cir. 2015) ("*Heller IV*") (Henderson, J., concurring in part and dissenting in part); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

VI.    <u>Conclusion</u>

        Based on the foregoing reasons and authorities, and those in her Counter Motion, Defendant respectfully requests that this Court enter summary judgment in her favor and against the Plaintiffs.

//

//

//

//

2-ER-124

DATED:  Honolulu, Hawaii, June 14, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA, | CIVIL NO. 19-00578 JMS-RT |
| Plaintiffs, | CERTIFICATE OF SERVICE |
| vs. | |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, | |
| Defendant. | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below, a copy of the foregoing

document was filed electronically and served through CM/ECF on the following at

their last known addresses:

ALAN ALEXANDER BECK, ESQ.     Alan.alexander.beck@gmail.com
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123

STEPHEN D. STAMBOULIEH, ESQ.    stephen@sdslaw.us
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654

Attorneys for Plaintiffs
TODD YUKUTAKE and DAVID KIKUKAWA

DATED:  Honolulu, Hawaii, June 14, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 19-578 (JMS-RT) ) |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii | ) PLAINTIFFS' OPPOSITION TO ) DEFENDANT'S CONCISE STATEME- ) NT OF MATERIAL FACTS IN SUPPO- ) RT OF COUNTER MOTION FOR SUM- ) MARY JUDGMENT; CERTIFICATE OF |
| Defendant. | ) SERVICE [ECF 91-92] ) ) TRIAL: February 23, 2022 ) JUDGE: Hon. J. Michael Seabright _____) HEARING DATE: June 28, 2021 10AM |

**2-ER-128**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S SEPARATE CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56.1 of the Local Rules for the United States District Court for the District of Hawaii, Plaintiffs Todd Yukutake and David Kikukawa submit their Opposition to Defendant's Separate Concise Statement of Material Facts in Support of Counter Motion for Summary Judgment.

| FACTS IN DEFENDANT'S SEPARATE CONCISE STATEMENT | PLAINTIFFS' RESPONSES |
|---|---|
| 1. A basic firearm registration requirement was first adopted by the Territorial Legislature in 1907. | Plaintiffs admit the statute referenced was adopted in 1907. |
| 2. Act 85 required "any person, firm, corporation or copartnership" residing or doing business in Hawaii that has "any fire arm or fire arms or any ammunition in its possession to file a "description" of the firearm, firearms, or ammunition with the county clerk. | Plaintiffs admit the statute reads as Defendant stated. |
| 3. The description included the "class of fire arms," the "name of the maker[,] and the factory number." | Admitted. |
| 4. The name of the owner or possessor, the person's address, and the person's signature also had to be included on the description form. | Admitted. |
| 5. In 1919, the Territorial Legislature adopted a "permit to purchase" requirement for firearms. | Admitted. |
| 6. The Senate Committee on Military stated that the purpose of this provision was to "enable the police authorities to have a better supervision and check over the sale of firearms." | Admitted that this is what was stated. |

2

| 7. In 1923, the Territorial Legislature passed Act 156 which changed the language from a "permit to purchase" to a "permit to acquire." | Admitted. |
|---|---|
| 8. In 1927, the Territorial Legislature passed Act 206. | Admitted. |
| 9. Act 206 clarified that the "description" had to be in a "report" to the county sheriff (Section 18) and that the "permit to acquire" applied to a "sale, gift, loan or otherwise" (Section 9) and not just to disposition by dealers (Section 23). | Admitted that the statute was amended as stated. |
| 10. Act 206 also added a scheme by which firearms would be confined to a person's "dwelling house or business office" (Section 5), unless the person obtained a license to carry (Section 7). | Admitted. |
| 11. An exception was also made for transporting a firearm in a wrapper between a place of purchase or repair, a home, or a place of business (Section 6). | Admitted. |
| 12. Act 206 also prohibited the alteration of identifying marks: "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver" (Section 13). | Admitted. |
| 13. In passing Act 206, the Legislature indicated that its purpose was to make the firearms statutes more effective. | Admitted that the best reading of the statute is the direct quote from Exhibit "F", as highlighted, "It seeks to make effective the existing firearms statutes found in Chapter 128 of the Revised Laws of Hawaii 1925, those statutes having heretofore been of no practicable benefit to the people |

3

| | of this Territory because of inconsistencies and ambiguities." |
|---|---|
| 14. In the 1933-1934 Special Session, the firearms statutes were comprehensively revised when the Territorial Legislature passed Act 26. | Admitted the statutes were revised in the Special Session. |
| 15. The Legislature stated that "[t]he purpose of the Bill is to give law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition." | Admitted that this is quoted correctly. |
| 16. In 1968, the firearm registration provision was codified as HRS § 134-2, and the permit to acquire provision was codified as HRS § 134-3. | Admitted. |
| 17. The prohibition on alteration of identification marks was codified as HRS § 134-10. | Admitted. |
| 18. In 1988, HRS Chapter 134, Part I, was entirely recodified. | Admitted. |
| 19. The registration and permitting provisions were reversed, with the permit to acquire provision becoming HRS § 134-2 and the registration provision becoming HRS § 134-3. | Admitted. |
| 20. The current permit to acquire provision continues to be located in HRS § 134-2. | Admitted. |
| 21. The current registration provision continues to be located in HRS § 134-3. | Admitted. |
| 22. The prohibition against alteration of identification marks is still located in HRS § 134-10. | Admitted. |
| 23. In 1990, the Legislature considered amending the statutes to prohibit the possession of firearms near public and private schools. | Denied as Exhibit "N" does not appear to demonstrate this fact. In any event, this is irrelevant to the current case. |

4

| 24. | Ultimately, however, the Legislature decided to increase the penalties under the existing firearms laws. | Admitted that the penalties were increased. |
|---|---|---|
| 25. | The Senate Judiciary Committee explained: "While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that our entire community should be a safe place to live and learn and that everyone deserves to feel free from the threat of harm wherever they go." | Admitted that the quote is accurate. |
| 26. | As part of the Plaintiffs' settlement with the City and County in this case, the Honolulu Police Department Firearms Permit Unit agreed to extend their hours of operation. | Admitted that this was part of the settlement. Denied that the settlement has been fully implemented. *See* https://www.honolulupd.org/information/firearms/ |

Dated: June 7, 2021.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*\*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) |
| | ) Civil Action No. 19-578 (JMS-RT) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CERTIFICATE OF SERVICE |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii | ) ) ) |
| | ) TRIAL: February 23, 2022 |
| | ) JUDGE: Hon. J. Michael Seabright |
| Defendant. | ) HEARING DATE: June 28, 2021 10AM |
| _____ | ) |

1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below, a copy of

the foregoing document was filed electronically and served through CM/ECF to the

following counsel of record:

> CARON M. INAGAKI, ESQ.
> KENDALL MOSER, ESQ.
> RYAN M. AKAMINE, ESQ.
> Deputy Attorneys General
> Department of the Attorney
>    General, State of Hawaii
> 425 Queen Street
> Honolulu, HI  96813
> Email:    Caron.M.Inagaki@hawaii.gov
>              Ryan.M.Akamine@hawaii.gov
>              Kendall.J.Moser@hawaii.gov


Dated: June 7th, 2021


> */s/ Alan Alexander Beck*
> Alan Alexander Beck
>
> */s/ Stephen D. Stamboulieh*
> Stephen D. Stamboulieh
> *Admitted Pro Hac Vice*
>
> Attorneys for Plaintiffs

2

**2-ER-134**

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) <br> ) <br> ) Civil Action No. 19-578 (JMS-RT) |
| Plaintiffs, | ) |
| v. | ) REPLY AND OPPOSITION TO DEFEN- <br> ) DANT'S COUNTER MOTION FOR <br> ) SUMMARY JUDGMENT; MEMORAN- |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii | ) DUM IN OPPOSITION TO DEFENDAN- <br> ) T'S COUNTER MOTION FOR SUMMA- <br> ) RY JUDGMENT; CERTIFICATE OF <br> ) SERVICE [ECF No. 91] <br> ) |
| | )TRIAL: February 23, 2022 <br> )JUDGE: Hon. J. Michael Seabright |
| Defendant. | )HEARING DATE: June 28, 2021 10AM |
| _____ | ) |

## PLAINTIFFS' REPLY AND OPPOSITION TO DEFENDANT'S
## COUNTER MOTION FOR SUMMARY JUDGMENT

Plaintiffs Todd Yukutake and David Kikukawa, by and through counsel, file this, their Reply and Opposition to Defendant's Counter Motion for Summary Judgment.

Plaintiffs base this Reply and Opposition to Defendant's Counter Motion for Summary Judgment upon the attached Memorandum in Opposition of Defendant's Counter Motion for Summary Judgment, the Plaintiffs' Opposition to Defendant's Separate Concise Statement of Facts filed contemporaneously herewith, the record, and oral argument presented by counsel at the hearing.

Dated: June 7th, 2021.

/s/ Alan Alexander Beck
Alan Alexander Beck

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh

Attorneys for Plaintiffs

2-ER-136

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) |
| | ) |
| | ) Civil Action No. 19-578 (JMS-RT) |
| Plaintiffs, | ) |
| | ) REPLY AND OPPOSITION TO DEFEN- |
| v. | ) DANT'S COUNTER MOTION FOR |
| | ) SUMMARY JUDGMENT; MEMORAN- |
| CLARE E. CONNORS, in her | ) DUM IN OPPOSITION TO DEFENDAN- |
| Official Capacity as the Attorney | ) T'S COUNTER MOTION FOR SUMMA- |
| General of the State of Hawaii | ) RY JUDGMENT; CERTIFICATE OF |
| | ) SERVICE [ECF No. 91] |
| | ) |
| | )TRIAL: February 23, 2022 |
| | )JUDGE: Hon. J. Michael Seabright |
| Defendants. | )HEARING DATE: June 28, 2021 10AM |
| _____ | ) |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I. Introduction…………………………………………………………………1

II. Argument………………………………………….……...……………1

    a. Plaintiffs Make Both As-Applied And Facial Challenges………………1

    b. Defendant Does Not Support Its Argument With Evidence……………2

    c. The Laws at Issue Are Not Longstanding………………………….……….4

III. This Court Should Apply Strict Scrutiny……………………….…..……..6

IV. H.R.S. §§ 134-2 & 134-3 Fail Intermediate Scrutiny………..……………10

    a. H.R.S. § 134-2 Fails Intermediate Scrutiny……………….……….10

    b. H.R.S. § 134-3 Fails Intermediate Scrutiny……………………….14

V. Conclusion………………………………………………….…………15

2-ER-138

# TABLE OF AUTHORITIES

**Cases**

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) ......................................2

*Bd. of Trs. v. Fox*, 492 U.S. 469 (1989)....................................................................3

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ....................................11

*Citizens United v. FEC*, 558 U.S. 310 (2010)...........................................................1

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936
    (9th Cir. 2011)......................................................................................................10

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................... 3, 4, 9

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011) ....................................................9

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017)....................................................8

*Garcia v. Perez*, 601 F. App'x 562  (9th Cir. 2015) ................................................7

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015).............................15

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014).......................... 1, 8, 9

*McCutcheon v. FEC,* 572 U.S. 185 (2013)....................................................... 10, 11

*Miller v. Bonta*, 2021 U.S. Dist. LEXIS 105640 (S.D. Cal. June 4, 2021) .............2

*Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) .........................................11

*Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017)........................................15

*Perry v. Los Angeles Police Dep't*, 121 F.3d 1365 (9th Cir. 1997) .......................11

*Renna v. Becerra*, 2021 U.S. Dist. LEXIS 78634 (S.D. Cal. Apr. 23, 2021)...........6

*Scott v. Jackson Cty.*, 297 F. App'x 623 (9th Cir. 2008) .........................................7

*Silvester v. Harris*, 843 F.3d 816  (9th Cir. 2016) ................................................7, 8

*State v. Deciccio*, 315 Conn. 79, 105 A.3d 165 (2014) ..........................................14

*United Broth. of Carpenters and Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957
    (9th Cir. 2008)......................................................................................................10

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)..........................................8

*Young v. State of Hawaii*, 992 F.3d 765 (9th Cir. 2021) .................................. 2, 4, 5

**Statutes**

18 U.S.C. § 922(g) ...........................................................................13

18 U.S.C. § 922(g)(9)........................................................................8

18 U.S.C. § 922(k) ...........................................................................15

H.R.S. § 134-2................................................................................ passim

H.R.S. § 134-3................................................................................ 4, 10, 14

H.R.S. § 134-7(f)..............................................................................12

H.R.S. § 134-7(g).............................................................................12

H.R.S. § 134-7.3...............................................................................12

Mass. Ann. Laws ch. 140, § 129B (9) .......................................................6

Mich. Comp. Laws Serv. § 28.422(a)........................................................5

Mo. Rev. Stat. § 571.090 L. 2007 S.B. 62 & 41 § A.................................5

**Other Authorities**

Kopel, David B., Background Checks for Firearms Sales and Loans: Law, History, and Policy (April 8, 2016). Harvard Journal on Legislation, Vol. 53, 2016, pp. 303-367, U Denver Legal Studies Research Paper No. 15-54, Available at SSRN: https://ssrn.com/abstract=2665432 .......................................................5

**Rules**

Fed. R. Civ. P. 5.1 ............................................................................2

## I.  Introduction

The State of Hawaii is the only state left that requires in person inspections of firearms and the only state with such a short permit to acquire validity.  The State identified only four other states - Missouri, Arkansas, Massachusetts, and Michigan – which had validity limitations on permits to purchase or what is alleged to be in person registration.  As briefed below, the State's arguments are without merit, and summary judgment should be entered in the Plaintiffs' favor on all counts.

## II.  Argument

### a.  Plaintiffs Make Both As-Applied And Facial Challenges

Plaintiffs plead both an as-applied and a facial challenge in their complaint. The State's unstated suggestion that Plaintiffs waived their as-applied challenge by dismissing the County is meritless. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

In this circuit, as-applied challenges are specifically allowed in Second Amendment cases.  *See Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014) ("We begin by addressing Jackson's facial and as-applied challenge to the

constitutionality of section 4512".) The State does not cite to any case law which holds that the County is a required party in raising an as-applied challenge. And this is counterintuitive to the requirements of Fed. R. Civ. P. 5.1 which require notice to the *state* when challenging a state law and the state is not a party.

The State's one citation in support of their suggestion comes from *Young v. State of Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021), and is simply explaining that a successful facial challenge strikes a statute in its entirety and an as-applied challenge only strikes a statute in certain applications. *Young* does not hold that the municipality implementing a statute must be a party nor can Plaintiff identify any authority which holds that. The State's suggestion should be disregarded.

  b. <u>Defendant Does Not Support Its Argument With Evidence</u>

Defendant makes several factual arguments and statements that are unsupported by evidence. Even under intermediate scrutiny, "the defendant[] must show 'reasonable inferences based on *substantial* evidence' that the statute[] [is] substantially related to the governmental interest." *Avitabile v. Beach*, 368 F. Supp. 3d 404, 421 (N.D.N.Y. 2019) (citations omitted). As a recent case from the Southern District of California stated in striking down California's ban on AR15 riles, "the government must carry the burden of establishing that its regulations are reasonably tailored." *Miller v. Bonta*, 2021 U.S. Dist. LEXIS 105640, at *32 (S.D. Cal. June 4, 2021).

The State claims that handguns are more "dangerous" than long arms. Yet, the State does not support this with any evidence. Even if that were true, and there is no evidence that it is, handguns are the "the quintessential self-defense weapon". *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)). The State also claims that "[b]ackground information (such as one's name or address) can change, one's physical appearance can change over time, and one's mental health history can also change". However, it does not present any evidence that this is an actual issue that the law is tailored to serve. It also argues that Hawaii law "ensures that the registration information is accurate, it ensures that the firearm complies with Hawaii law, and it confirms the identity of the firearm so as to facilitate tracing by law enforcement." State Opp. at 23-24.

Again, the State has not presented evidence that this has ever been an issue. Under any level of heightened scrutiny, the burden is on the State to support its statements with evidence. "[S]ince the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require." *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989) (citation omitted). As it has failed to justify its restrictions, this Court should disregard the State's claims. Similarly, the State claims "it simply is not that hard to bring a firearm to the police station" but does not rebut Plaintiffs' evidence that it is difficult to complete handgun purchases under

3

Hawaii's scheme. Hawaii's scheme amounts to a substantial burden on Plaintiffs' core right to self-defense.

c. <u>The Laws at Issue Are Not Longstanding</u>

The State has failed to rebut any of the arguments Plaintiffs raised in their summary judgement motion. The bring your firearm to the station requirement certainly is not longstanding because the current iteration of H.R.S. § 134-3 is less than a year old. And the State took the position in the last round of summary judgement motions that the previous iteration of the law did not require Plaintiffs to bring their firearm to the station.

As for H.R.S. § 134-2, as argued in Plaintiffs' summary judgement motion, pursuant to circuit precedent, twentieth century laws are not old enough to qualify as longstanding. *See Young v. Hawaii*, 992 F.3d at 811 ("We are not inclined to review twentieth-century developments in detail, in part because they may be less reliable as evidence of the original meaning of the American right to keep and bear arms.") The challenged portion of H.R.S. § 134-2 is from 1933-1934. The only other evidence that the State presents is less than a handful of other state laws from around the same time period.[1]  Pursuant to circuit precedent, this is insufficient to qualify as

---

[1] *See District of Columbia v. Heller*, 554 U.S. 570, 632 (2008) ("…we would not stake our interpretation of the Second Amendment upon a single law, in effect in a single city, that contradicts the overwhelming weight of other evidence regarding the right to keep and bear arms for defense of the home.")  Given the paucity of similar laws cited to by the State, *Heller*'s proposition rings loudly.

longstanding. Even if it were not, five (total) states' laws are not enough to demonstrate a longstanding tradition. The court looks for "historical prevalence." *Young*, 992 F.3d at 783. In *Young*, the Ninth Circuit conducted a survey of all the colonies and found "restrictions on firearms in public were prevalent in colonial law" (*Young,* 992 F.3d at 796) and only then found public carry is longstanding restriction on the Second Amendment right. Five states' laws are not prevalent. All the State shows is the existence of five unconstitutional outliers.

Even so, if this Court were to look at those states identified by the Defendant, it would demonstrate a few things. First, currently Hawaii has the shortest permit to acquire validity. *See* Mich. Comp. Laws Serv. § 28.422(a) (30 days to use a permit; exempt from permit to acquire if licensed to carry concealed firearm). Secondly, Arkansas, identified in the State's Opp. (p.12) as having a registration requirement, repealed that statute two years later (in 1925) because "[a]ccording to the A.B.A. Journal, '[t]his law was found so impracticable in enforcement' that it was repealed in 1925."[2] Missouri's permit to acquire was repealed in 2007 (Mo. Rev. Stat. § 571.090 L. 2007 S.B. 62 & 41 § A). Massachusetts has a firearm identification card required for purchasing firearms, but it is good for six years and

---

[2] Kopel, David B., Background Checks for Firearms Sales and Loans: Law, History, and Policy (April 8, 2016). Harvard Journal on Legislation, Vol. 53, 2016, pp. 303-367, U Denver Legal Studies Research Paper No. 15-54, Available at SSRN: https://ssrn.com/abstract=2665432

can be issued to those persons as young as fifteen. *See* Mass. Ann. Laws ch. 140, § 129B (9).

Even if this Court finds H.R.S. § 134-2 presumptively lawful, this Court should find Plaintiffs' have rebutted that presumption. "The closer the regulations get to the 'core' of the Second Amendment, the less willing a court should be to deem them presumptively lawful." *Renna v. Becerra*, 2021 U.S. Dist. LEXIS 78634, at *15 (S.D. Cal. Apr. 23, 2021). Here, Plaintiffs have shown that the law at issue has more than a "de minimis" impact on their Second Amendment right and thus, have rebutted any presumption of constitutionality. *Id.* at *14. Therefore, this Court should subject the challenged laws to heightened scrutiny.

III. <u>This Court Should Apply Strict Scrutiny</u>

The State correctly argues that a law must both implicate the core of the Second Amendment right and be a substantial burden to require strict scrutiny. The State concedes that both laws at issue implicate the core of the Second Amendment. "[T]he core of the Second Amendment is presumably implicated since Plaintiffs state that they want to purchase handguns". *See* State Opp. at 13 & 22. The State disagrees that the laws at issue amount to a substantial burden on Plaintiffs' Second Amendment rights. But they provide no evidence to counter the Plaintiffs'

statements in their Verified Amended Complaint about the difficulties of purchasing handguns under Hawaii's scheme.[3]

Applying for a permit, purchasing, then registering a handgun in Hawaii requires taking time off work. Both Plaintiffs work full time and taking time off work is not an easy feat for either of them. The ten-day expiration date of a handgun permit forces Plaintiffs to take an additional day off in quick succession to use it or lose it. And the bring your gun to the station requirement adds an additional day to registration process. Both are substantial burdens on Plaintiffs Second Amendment rights. In *Silvester*, the Court found there was not a substantial burden because the "actual effect of the [waiting period laws] on Plaintiffs is very small. The contested … regulation … simply requires them to wait the incremental portion of the waiting period that extends beyond completion of the background check." *Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016).[4]

---

[3] Verified pleadings are evidence and are proper to view in the summary judgment context. *See Garcia v. Perez*, 601 F. App'x 562, 562 (9th Cir. 2015) (error to not consider verified complaint as opposing evidence). *See also Scott v. Jackson Cty.*, 297 F. App'x 623, 624 (9th Cir. 2008) (citation omitted) "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify."

[4] Hawaii's waiting period already exceeds California's. *See* H.R.S. § 134-2(e) (fourteen day waiting period).

In *Jackson*, while evaluating a requirement that handguns be secured when not being used, the Ninth Circuit applied intermediate scrutiny because "[t]he record indicates that a modern gun safe may be opened quickly. Thus, even when a handgun is secured, it may be readily accessed in case of an emergency. Further, section 4512 leaves open alternative channels for self-defense in the home, because San Franciscans are not required to secure their handguns while carrying them on their person." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 964 (9th Cir. 2014).

And in evaluating the challenge to San Francisco's ban on hollow point ammunition, the *Jackson* Court found the there was no substantial burden because "[a] ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense." *Jackson,* 746 F.3d at 968. And in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)*,* the Ninth Circuit "applied 'intermediate' rather than 'strict' judicial scrutiny in part because [18 U.S.C. §] 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by [various] mechanisms." *Fisher v. Kealoha*, 855 F.3d 1067,1071 (9th Cir. 2017).

Here, Plaintiffs' challenge is distinguishable from all three cases the State relies on. Rather than a minor delay like in *Silvester*, the laws at issue severely hamper Plaintiffs' ability to purchase handguns as evidenced by the fact Plaintiffs must take time off work to complete all the various requirements for purchases under

8

Hawaii's scheme. There are no open alternatives to Hawaii's scheme, unlike in *Jackson*. And there are no alternatives that lighten the burden, unlike *Chovan*.

Plaintiffs' challenge is more akin to *Ezell* which challenged the constitutionality of Chicago's ban on firing ranges. The 7th Circuit applies the same two step test as the Ninth Circuit. Despite the availability of firing ranges outside of Chicago, the 7th Circuit applied "not quite 'strict scrutiny.'" *Ezell v. City of Chi.*, 651 F.3d 684, 708 (7th Cir. 2011). In doing so, the 7th Circuit found that "the plaintiffs *are* the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*". *Ezell v. City of Chi.*, 651 F.3d 684, 708 (7th Cir. 2011). And that Chicago's law was a "serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Ezell,* 651 F.3d at 708. Thus, the court rejected intermediate in lieu of near strict scrutiny.

Here, Plaintiffs are similarly law-abiding citizens. The laws at issue substantially burden their core Second Amendment rights by making it very difficult to purchase a handgun. This Court should apply strict scrutiny and find that the laws at issue are unconstitutional. The State devotes no briefing to defending their laws if strict scrutiny applies and thus, implicitly concede that these laws cannot survive strict scrutiny. However, even under intermediate scrutiny the laws at issue are unconstitutional.

2-ER-149

## IV.   H.R.S. §§ 134-2 & 134-3 Fail Intermediate Scrutiny

The two Hawaii laws at issue in this litigation are the kind of "prophylaxis-upon-prophylaxis approach" to burdening constitutional rights that "requires [courts to] be particularly diligent in scrutinizing the law's fit." *McCutcheon v. FEC,* 572 U.S. 185, 221 (2013) (plurality opinion). As briefed in Plaintiffs' Motion for Summary Judgement, precisely because of its duplicative nature, the ten-day expiration period on firearm sales does little, if anything, to advance the State's offered interests. Individuals prohibited from possessing firearms own them only if they illegally procure it or illegally retain it after forfeiting their Second Amendment rights. Either way, there is a wide array of mechanisms apart from the laws at issue which enforces Hawaii's stated interest. Thus, the State "could have employed various less restrictive alternatives to achieve its goals," *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948 (9th Cir. 2011).

### a.   H.R.S. § 134-2 Fails Intermediate Scrutiny

Plaintiffs do not concede that the ten-day expiration period on permits to acquire handguns is constitutional even if Hawaii law did not already have numerous other ways to disallow prohibited people from owning firearms. What matters is that the availability of these "obvious and less-burdensome alternatives," *United Broth. of Carpenters and Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 968 (9th Cir. 2008) — regardless of their constitutionality—reinforces that the State's chosen

2-ER-150

means lack the "fit" that even intermediate scrutiny demands. *See, e.g., McCutcheon*, 572 U.S. at 221 ("We do not mean to opine on the validity of any particular proposal. The point is that there are numerous alternative approaches available to Congress to prevent circumvention of the base limits."); *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 692 (2014).

As the Supreme Court recently reaffirmed, "to survive intermediate scrutiny, 'a law must be 'narrowly tailored to serve a significant governmental interest.'" *Id.* (quoting *Packingham v. North Carolina*, 137 S.Ct. 1730, 1736 (2017)); *see also Perry v. Los Angeles Police Dep't*, 121 F.3d 1365, 1369 (9th Cir. 1997). Here, the law does not fulfill that standard for all the reasons raised in Plaintiffs' Motion for Summary Judgement. Additionally, the State has not made any attempt to rebut Plaintiffs' underinclusivity argument. The State's failure to respond to this constitutes a concession that H.R.S. § 134-2 is unconstitutionally underinclusive.

The State says "[t]en days is enough time within which to perform a single transaction, which is the only thing the permit is for."[5] State Opp. p. 14. Yet they cite to no evidence for this proposition and whatever "enough time" is has been left to the reader's imagination. It is known from the State's own data that just in 2020,

_____

[5] However, it still does not explain the State's differing treatments of handgun permits to acquire and long gun permits to acquire. If the State's argument that permit information needs to be updated and the timeframe is a consistent 10-day time period, then long gun permits wouldn't last a year. Because, at the end of the day, a firearm is a firearm.

375 permits were voided because the applicant did not pick it up in time. *See* Plaintiffs' Memo. at 16-17. The State admitted this in its Concise Statement of Facts. *See* ECF No. 92, Nos. 9-12, PageID# 731-732. It should be noted that this is not ten days from the date the person picks up the permit, but "ten days after the date of issue." *See* H.R.S. § 134-2(e). The clock starts ticking as soon as the permit issues and before it is even in the applicant's possession. So really it is ten days minus whatever time it takes to get to the applicant.

The State then makes the argument that its Rap Back service isn't a panacea. State Opp. at 16-17. This is because, the State alleges, other violations (which in Hawaii at least serve to strip an individual of his or her Second Amendment rights) do not "appear" to be subject to Rap Back. The State claims that "[p]ersons subject to civil protective orders or restraining orders are also disqualified from owning or possessing firearms" (*see* State Opp. at 17), however current State law carves out an exemption: "unless the order, for good cause shown, specifically permits the possession of a firearm and ammunition". *See* H.R.S. § 134-7(f). In any event, the police are involved in these orders, and are authorized under the same section to take custody of firearms of restrained individuals.

H.R.S. § 134-7(g) mandates prohibited individuals to "surrender or dispose" of their firearms and ammunition. The remainder of the State's arguments fall away upon review of H.R.S. § 134-7.3. The State's psychiatric arguments are already

addressed in subsection (c) and appear to have been addressed since at least 2016. This easily replaces the need to enforce a 1933-1934 law about the validity of a permit because of all these other things that maybe in 1933-1934 were more difficult to address, in 2021 and the digital age, pose no issues for the State. The 1933-34 statute is simply unnecessary, duplicative and not a good fit. In the State's Concise Statement of Fact, it references 1919 legislation for a "permit to purchase" requirement. *See* Docket No. 92, PageID# 733, No. 5. The next fact is that a committee stated the purpose was to "enable the police authorities to have a better supervision and check over the sale of firearms." *Id*. at No. 6. Maybe that made sense in 1919.

In 1919 there were no NICs background checks. Or the internet, or computers or any of the other modern day law enforcement tools (such as Rap Back or the Interstate Information Index/National Fingerprint File (of which Hawaii participates)[6]). And, in 1919, there was no federal law which now makes a lot of what Hawaii considers prohibiting factors, also prohibited at the federal level. *See* 18 U.S.C. § 922(g) (federal prohibitors). In 1919, there were no Federal Firearm Licensees or Form 4473s[7] which are required to be filled out when purchasing a

---

[6] https://www.fbi.gov/services/cjis/compact-council/interstate-identification-index-iii-national-fingerprint-file-nff.

[7] https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download

firearm from a licensed dealer. But in 2021, there are all of these tools, and more, which serve to "enable" the supervision of a constitutional right. In any event, assuming *arguendo* that a validity period for a permit is even constitutional, a ten-day validity is too extreme and unconstitutionally burdens protected conduct.

b. H.R.S. § 134-3 Fails Intermediate Scrutiny

The State frames its argument as a public service to the gun owning public, by claiming that "[s]ome people might innocently make mistakes in transcribing serial numbers or other identifying information. More importantly, some people might not be aware that their firearm violates Hawaii law until they bring it to the police station and the police firearms unit inspects it."

However, the State does not present any evidence whatsoever that this is an actual problem, and if it were, surely there would be evidence of it. As the Connecticut Supreme Court said in striking Connecticut's ban on the transport of dirks and baton under intermediate scrutiny "[t]he justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations . . . ." *State v. Deciccio*, 315 Conn. 79, 144-45, 105 A.3d 165, 206-07 (2014). Without evidence, the State's argument holds no weight.

Moreover, it strains credulity that both a firearms store and a buyer would both fail to properly transcribe numbers or realize a firearm is illegal.[8]

As already briefed, a ruling upholding the less-than-a-year-old in-person registration requirement would split with the D.C. Court of Appeals decision in *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015). The State fails to identify the kind of "compelling reason" the Ninth Circuit normally demands before it is willing to "create a circuit split." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017). There is no reason that rationale does not apply here.

V.    Conclusion

The Court should grant Plaintiffs' Motion for Summary Judgment and deny the State's Motion.

Dated: June 7th, 2021.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

---

[8] Federal law also criminalizes firearms with obliterated serial numbers. *See* 18 U.S.C. § 922(k).

15

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) |
| | ) Civil Action No. 19-578 (JMS-RT) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CERTIFICATE OF SERVICE |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii | ) ) ) |
| | ) TRIAL: February 23, 2022 |
| | ) JUDGE: Hon. J. Michael Seabright |
| Defendant. | ) HEARING DATE: June 28, 2021 10AM |
| _____ | ) |

**2-ER-156**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below, a copy of the foregoing document was filed electronically and served through CM/ECF to the following counsel of record:

CARON M. INAGAKI, ESQ.
KENDALL MOSER, ESQ.
RYAN M. AKAMINE, ESQ.
Deputy Attorneys General
Department of the Attorney
    General, State of Hawaii
425 Queen Street
Honolulu, HI  96813
Email:      Caron.M.Inagaki@hawaii.gov
              Ryan.M.Akamine@hawaii.gov
              Kendall.J.Moser@hawaii.gov


Dated: June 7th, 2021


/s/ Alan Alexander Beck
Alan Alexander Beck

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

2

**2-ER-157**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 46 of 268

CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI          3835
KENDALL J. MOSER          6515
Deputy Attorneys General
Department of the Attorney
  General, State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1494
Facsimile:  (808) 586-1369
E-Mail: Caron M. Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>                    Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S (1) OPPOSITION TO PLAINTIFFS' SEPARATE CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND (2) CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF COUNTER MOTION FOR SUMMARY |

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 47 of 268

JUDGMENT; DECLATION OF
KENDALL J. MOSER; EXHIBITS
"A"-"S"; CERTIFICATE OF
SERVICE

ECF No. 85

Hearing
Date:  June 28, 2021
Time:  10:00 a.m.
Chief Judge J. Michael Seabright

Trial Date:  February 23, 2022

DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY
AS  THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S
(1) OPPOSITION TO PLAINTIFFS' SEPARATE CONCISE STATEMENT
OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT, AND (2) CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT

Defendant Clare E. Connors, in her Official Capacity as the Attorney

General of the State of Hawaii ("Defendant"), by and through her attorneys, Caron

M. Inagaki and Kendall J. Moser, Deputy Attorneys General, pursuant to Local

Rule 56.1, hereby submits (1) her opposition to Plaintiffs' Separate Concise

Statement of Material Facts in Support of Motion for Summary Judgment [ECF

No. 86], and (2) her concise statement of material facts in support of her counter

motion for summary judgment.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 48 of 268

| # | FACTS IN PLAINTIFFS' SEPARATE CONCISE STATEMENT | DEFENDANT'S RESPONSES |
|---|---|---|
| 1. | H.R.S. § 134-2(e) invalidates a permit to acquire a handgun after ten days. | Admit |
| 2. | H.R.S. § 134-3 requires in person registration of handguns. | Admit |
| 3. | Plaintiff Todd Yukutake is unable to take personally owned firearms on federal property. | Unknown |
| 4. | Plaintiff Yukutake must take off work to register firearms. | Unknown |
| 5. | Plaintiff David Kikukawa must take time off work to register handguns. | Unknown |
| 6. | Plaintiff Kikukawa stated that it is often difficult for him to take off from work and when he does, he either has to use personal time or a vacation day to take off. | Unknown |
| 7. | HRS § 846-2.7(a) and HRS § 846-2.7(b)(43) mandates entry of firearm purchases in the FBI's rap back program. | Deny |
| 8. | Rap back is a "service of the [FBI] that provides continuous criminal record monitoring . . . and notifies them when an individual subject to a criminal history check is arrested for a criminal offense anywhere in the country." | Admit that Exhibit "G" to Plaintiffs' Concise Statement says what Plaintiffs say it does. |
| 9. | There were 357 permits to acquire handguns voided in 2020 because the applicant "failed to return for their permits within the specified time period." | Admit that in 2020, 357 (1.4%) of all firearm permit applications were voided because the applicants failed to return for their permits within the specified time period. |
| 10. | There were 370 permits to acquire handguns voided in 2019 because the applicant "failed to return for their permits within the specified time period." | Admit that in 2019, 370 (2.3%) of all firearm permit applications were voided because the applicants failed to return for their permits within the specified time |

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 49 of 268

|  |  | period. |
|----|----|----|
| 11. | There were 437 permits to acquire handguns voided in 2018 because the applicant "failed to return for their permits within the specified time period." | Admit that in 2018, 437 (2.4%) of all firearm permit applications were voided because the applicants failed to return for their permits within the specified time period. |
| 12. | There were 367 permits to acquire handguns voided in 2017 because the applicant "failed to return for their permits within the specified time period." | Admit that in 2017, 367 (2.2%) of all firearm permit applications were voided because the applicants failed to return for their permits within the specified time period. |
| 13. | An application for Permit to Acquire Firearms requires the caliber, make, model, type and serial number of the firearm to be purchased. | Admit |

| # | FACTS IN SUPPORT OF DEFENDANT'S COUNTER MOTION | EVIDENTIARY SUPPORT |
|----|----|----|
| 1. | A basic firearm registration requirement was first adopted by the Territorial Legislature in 1907. | See Exhibit "A" to the Declaration of Kendall J. Moser. |
| 2. | Act 85 required "any person, firm, corporation or copartnership" residing or doing business in Hawaii that has "any fire arm or fire arms or any ammunition in its possession to file a "description" of the firearm, firearms, or ammunition with the county clerk. | Id. |
| 3. | The description included the "class of fire arms," the "name of the maker[,] and the factory number." | Id. |
| 4. | The name of the owner or possessor, the person's address, and the person's signature also had to be included on the description form. | Id. |

3

**2-ER-161**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 50 of 268

| 5. | In 1919, the Territorial Legislature adopted a "permit to purchase" requirement for firearms. | See Exhibit "B" to the Declaration of Kendall J. Moser. |
|---|---|---|
| 6. | The Senate Committee on Military stated that the purpose of this provision was to "enable the police authorities to have a better supervision and check over the sale of firearms." | See Exhibit "C" to the Declaration of Kendall J. Moser. |
| 7. | In 1923, the Territorial Legislature passed Act 156 which changed the language from a "permit to purchase" to a "permit to acquire." | See Exhibit "D" to the Declaration of Kendall J. Moser. |
| 8. | In 1927, the Territorial Legislature passed Act 206. | See Exhibit "E" to the Declaration of Kendall J. Moser. |
| 9. | Act 206 clarified that the required "description" had to be in a "report" to the county sheriff (Section 18) and that the "permit to acquire" applied to a "sale, gift, loan or otherwise" (Section 9) and not just to disposition by dealers (Section 23). | Id. |
| 10. | Act 206 also added a scheme by which firearms would be confined to a person's "dwelling house or business office" (Section 5), unless the person obtained a license to carry (Section 7). | Id. |
| 11. | An exception was also made for transporting a firearm in a wrapper between a place of purchase or repair, a home, or a place of business (Section 6). | Id. |
| 12. | Act 206 also prohibited the alteration of identifying marks: "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver" (Section 13). | Id. |
| 13. | In passing Act 206, the Legislature indicated that its purpose was to make the firearms statutes more effective. | See Exhibit "F" to the Declaration of Kendall J. Moser. |
| 14. | In the 1933-1934 Special Session, the firearms statutes were comprehensively revised when | See Exhibit "G" to the Declaration of Kendall J. |

2-ER-162

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 51 of 268

| | | the Territorial Legislature passed Act 26. | Moser. |
|---|---|---|---|
| 15. | | The Legislature stated that "[t]he purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition." | See Exhibit "H" to the Declaration of Kendall J. Moser. |
| 16. | | In 1968, the firearm registration provision was codified as HRS § 134-2, and the permit to acquire provision was codified as HRS § 134-3. | See Exhibit "J" to the Declaration of Kendall J. Moser. |
| 17. | | The prohibition on alteration of identification marks was codified as HRS § 134-10. | Id. |
| 18. | | In 1988, HRS Chapter 134, Part I, was entirely recodified. | See Exhibit "K" to the Declaration of Kendall J. Moser. |
| 19. | | The registration and permitting provisions were reversed, with the permit to acquire provision becoming HRS § 134-2 and the registration provision becoming HRS § 134-3. | Id. |
| 20. | | The current permit to acquire provision continues to be located in HRS § 134-2. | See Exhibits "L" (2011) and "M" (2018) to the Declaration of Kendall J. Moser. |
| 21. | | The current registration provision continues to be located in HRS § 134-3. | Id. |
| 22. | | The prohibition against alteration of identification marks is still located in HRS § 134-10. | Id. |
| 23. | | In 1990, the Legislature considered amending the statutes to prohibit the possession of firearms near public and private schools. | See Exhibit "N" to the Declaration of Kendall J. Moser. |
| 24. | | Ultimately, however, the Legislature decided to instead increase the penalties under the existing firearms laws. | Id. |
| 25. | | The Senate Judiciary Committee explained: "While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that our entire community should be a safe place to live | See Exhibit "O" to the Declaration of Kendall J. Moser. |

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 52 of 268

| | | |
|---|---|---|
| | and learn and that everyone deserves to feel free from the threat of harm wherever they go." | |
| 26. | As part of the Plaintiffs' settlement with the City and County in this case, the Honolulu Police Department Firearms Permit Unit agreed to extend their hours of operation. | See the Declaration of Kendall J. Moser at ¶ 18. |

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

2-ER-164

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 53 of 268

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA, | CIVIL NO. 19-00578 JMS-RT |
| Plaintiffs, | DECLARATION OF KENDALL J. MOSER; EXHIBITS "A"-"S" |
| vs. | |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, | |
| Defendant. | |

DECLARATION OF KENDALL J. MOSER

KENDALL J. MOSER, pursuant to 28 U.S.C. § 1746, declares that:

1.    I am a deputy attorney general with the Department of the Attorney General, State of Hawaii, and I have been assigned to represent Defendant Clare E. Connors, in her Official Capacity as Attorney General of the State of Hawaii in the above-entitled matter.

2.    I have personal knowledge of the matters set forth herein and I am competent to so testify.

3.    Attached hereto as Exhibit "A" is a true and correct copy of 1907 Haw. Sess. Laws Act 85, §§ 1-8 at pp. 112-15.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 54 of 268

4.      Attached hereto as Exhibit "B" is a true and correct copy of 1919 Haw. Sess. Laws Act 124, §§ 1-2 at pp. 166-67.

5.      Attached hereto as Exhibit "C" is a true and correct copy of S. Stand. Com. Rep. No. 388, in 1919 Senate Journal, at p. 1420.

6.      Attached hereto as Exhibit "D" is a true and correct copy of 1923 Haw. Sess. Laws Act 156, §§ 1-2 at pp. 185-86.

7.      Attached hereto as Exhibit "E" is a true and correct copy of 1927 Haw. Sess. Laws Act 206, §§ 1-31 at pp. 209-17.

8.      Attached hereto as Exhibit "F" is a true and correct copy of S. Stand. Comm. Rep. No. 384, in 1927 Senate Journal, at pp. 1023-24.

9.      Attached hereto as Exhibit "G" is a true and correct copy of 1933 Haw. Sess. Laws (Special Sess.) Act 26, §§ 1-17 at pp. 35-40.

10.      Attached hereto as Exhibit "H" is a true and correct copy of H. Stand. Comm. Rep. No. 89, in 1933 House Journal, at pp. 427-28.

11.      Attached hereto as Exhibit "I" is a true and correct copy of Revised Laws of Hawaii ("RLH") §§ 2541 & 2542 (1935) at pp. 431-32.

12.      Attached hereto as Exhibit "J" is a true and correct copy of HRS §§ 134-2, 134-3, and 134-10 (1968) at pp. 581-88.

13.      Attached hereto as Exhibit "K" is a true and correct copy of 1988 Haw. Sess. Laws Act 275, §§ 1-6 at pp. 510-17.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 55 of 268

14.     Attached hereto as Exhibit "L" is a true and correct copy of HRS §§ 134-2, 134-3, and 134-10 (2011) at pp. 162-73.

15.     Attached hereto as Exhibit "M" is a true and correct copy of HRS §§ 134-2, 134-3, and 134-10 (Supp. 2018) at pp. 38-46.

16.     Attached hereto as Exhibit "N" is a true and correct copy of 1990 Haw. Sess. Laws Act 195, §§ 1-7 at pp. 422-24.

17.     Attached as Exhibit "O" is a true and correct copy of S. Stand. Comm. Rep. No. 3058, in 1990 Senate Journal, at pp. 1242-43.

18.     Based on my conversations with the deputy corporation counsel assigned to represent former Defendant City and County of Honolulu in this matter, it is my understanding that as part of the Plaintiffs' settlement with the City and County, the Honolulu Police Department Firearms Permit Unit agreed to extend their hours of operation.

19.     Attached as Exhibit "P" is a true and correct copy of 1921 Laws of Missouri, H. B. 168 at pp. 691-93 that was downloaded from the internet.

20.     Attached as Exhibit "Q" is a true and correct copy of 1923 General Acts of Arkansas, Act 430 at pp. 379-80 that was downloaded from the internet.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 56 of 268

21.     Attached as Exhibit "R" is a true and correct copy of 1926 Acts and Resolves of Massachusetts, Chapter 395 at pp. 485-86 that was downloaded from the internet.

22.     Attached as Exhibit "S" is a true and correct copy of 1927 Public Acts of the Legislature of the State of Michigan, Act 372 at pp. 887-93 that was downloaded from the internet.

I declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawaii, May 28, 2021.

/s/ Kendall J. Moser
KENDALL J. MOSER

4

**2-ER-168**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 57 of 268

# LAWS

OF THE

# Territory of Hawaii

PASSED BY THE

# LEGISLATURE

AT ITS

# REGULAR SESSION

## 1907

---

PUBLISHED BY AUTHORITY

---

HONOLULU:
THE BULLETIN PUBLISHING CO., LTD.
1907

**EXHIBIT "A"**

2-ER-169

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 58 of 268

112

## ACT 85.

### AN ACT

To Require the Furnishing of Information Regarding the Possession and Ownership of Fire Arms and Ammunition within the Territory of Hawaii.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

Section 1. From and after forty days after the passage of this Act, any person, firm, corporation or copartnership, resident or doing business within the Territory of Hawaii having in his, its or their possession any fire arm or fire arms or any ammunition capable of causing death or inflicting great personal injury, who shall fail to file a description of the same in the manner provided by this Act shall be deemed guilty of a misdemeanor and punished as this Act provides. Any person, firm, corporation or copartnership being in possession of such fire arm or fire arms and or ammunition, shall file with the County Clerk of the County in which he, they or it resides or does business, a description of the fire arm or fire arms or and ammunition owned by him, it or them, or in his, its or their possession, which description shall set forth the class of fire arm or fire arms or and ammunition so owned and possessed, together with the name of the maker and the factory number when such number appears on said fire arm or fire arms or ammunition. In all cases where the owner or possessor of said fire arm or fire arms or and ammunition is unable to furnish all of the information herein and hereby required, he shall furnish as much as may be possible and in such manner as may be required by said County Clerk.

Section 2. It shall be the duty of the County Clerk of such County to prepare and furnish to all persons applying therefor, proper blanks upon which such information shall be furnished, in the following form:

2-ER-170

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 59 of 268

113

### REPORT OF FIRE ARMS AND AMMUNITION IN POSSESSION.

By ........................ Residing at number ......

.................... Street (or locality) ..............

County of .......... Territory of Hawaii ........ 190..

| Name of Owner | Name of Possessor | No. | Description | Makers Name | Factory No. | Number Disposed of and Date |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| Total Number |  |  | Total Number |  |  |  |

I hereby certify that the above and foregoing list contains a full, true and correct statement and description of all the fire arms and ammunition owned by me or in my possession during the period from ....................... to ...................... 190..

.........................................
Signature of Owner or Possessor.

SECTION 3.  It shall be the further duty of the County Clerk to enter in a book to be provided for such purpose all informa-

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 60 of 268

114

tion thus furnished him relative to the ownership and possession of fire arms and ammunition, which book shall be an exact duplication of the descriptions furnished. And further to furnish to the Governor of the Territory of Hawaii not later than the 20th day of January and the 20th day of July of each and every year, an exact report and complete copy of the descriptions and information so furnished as aforesaid.

SECTION 4. It shall be the duty of every person, firm, corporation and copartnership dealing in fire arms or and ammunition, to furnish to the County Clerk of the County in which such person resides or wherein such business is carried on, on the first day of January and the first day of July of each and every year, a list of all fire arms and ammunition in his, their or its possession, and likewise at the times mentioned furnish to such County Clerk a list of all arms brought into the Territory, in transit or otherwise, by him, them or it during the six months next preceding such date upon which such list and description is required to be filed; the lists thus to be furnished by such dealers in fire arms and ammunition shall comply as nearly as possible with the requirements of Sections one and two of this Act, as may be determined by such County Clerk.

SECTION 5. The records provided by this Act to be kept shall not be treated as records subject to public inspection, and the facts therein set forth shall be made public by such County Clerk or Clerks only upon the request of the Governor of the Territory of Hawaii; or upon the order of a Court for the purposes of procuring and intoducing evidence showing or tending to show a violation of this Act.

SECTION 6. Any person found in the possession of any fire arm or fire arms or any ammunition without having complied with the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction therefor shall be fined by the Court of appropriate jurisdiction in a sum of not more than Five Hundred ($500.00) Dollars. Any person, firm, corporation or copartnership failing to file any information herein

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 61 of 268

115

required to be filed, shall be deemed guilty of a misdemeanor and upon conviction shall be fined by the court of appropriate jurisdiction not more than Five Hundred ($500.00) Dollars. Any County Clerk divulging any of the information contained in such records other than as herein permitted shall be deemed to be guilty of a misdemeanor and fined in a sum not exceeding Twenty-five ($25.00) Dollars.

SECTION 7. Nothing in this Act set forth shall be held to require any of the authorities of the United States of America carrying arms by virtue of their office, nor any of the authorities of the Territory of Hawaii, including the organized militia, carrying arms by virtue of their office, nor any of the authorities of any county or municipality so carrying arms, to furnish the description or information herein required.

SECTION 8. This Act shall take effect from and after the date of its approval.

Approved this 19th day of April, A. D. 1907.

G. R. CARTER,
Governor of the Territory of Hawaii.

———

## ACT 86.

### AN ACT

TO ENCOURAGE THE CONSTRUCTION OR DEVELOPMENT OF RAILROADS IN THE TERRITORY OF HAWAII.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. For the term of ten years from and after the first day of January 1908 all of the property both real and

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 62 of 268

# LAWS

·OF THE·

# TERRITORY OF HAWAII

PASSED BY THE

# LEGISLATURE

AT ITS

## TENTH REGULAR SESSION

1919

BEGUN ON WEDNESDAY, THE NINETEENTH DAY
OF FEBRUARY, AND ENDED ON WEDNESDAY,
THE THIRTIETH DAY OF APRIL

PUBLISHED BY AUTHORITY

Printed by
Honolulu Star-Bulletin, Ltd.,
Merchant Street,
1919.

**EXHIBIT "B"**

Case 1:19-cv-00578-JMS-RT   Document 92-3   Filed 05/28/21   Page 2 of 3   PageID #: 746

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 63 of 268

archives, or a majority of them. Two of such commissioners shall be persons well versed in the English and Hawaiian languages, and the other member thereof shall be a person well versed in the Hawaiian language.  The commissioners so appointed shall jointly and actively, and without delay, complete the compilation of said dictionary.   The members of said board shall receive such compensation for their services as the said commissioners of public archives, with the approval of the governor, shall determine.

SECTION 3.  This appropriation shall be expended by the board of commissioners of the public archives in accordance with the terms of Chapter 198 of the Revised Laws of Hawaii, 1915.

SECTION 4.  This Act shall take effect upon its approval.

Approved this 25th day of April, A. D. 1919.

C. J. McCARTHY,
. Governor of the Territory of Hawaii.

---

## ACT 124

[H. B. No. 304]

AN ACT TO AMEND CHAPTER 125 OF THE REVISED LAWS OF HAWAII, 1915, AS AMENDED BY ACT 122 OF THE SESSION LAWS OF 1915, RELATING TO FIREARMS AND AMMUNITION, BY ADDING THERETO TWO NEW SECTIONS TO BE KNOWN AS SECTIONS 2202B AND 2202C.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1.  Chapter 125 of the Revised Laws of Hawaii, 1915, as amended by Act 122 of the Session Laws of 1915, is hereby amended by adding thereto two new sections to be known as Section 2202B and Section 2202O and to read as follows:

Case 1:19-cv-00578-JMS-RT   Document 92-3   Filed 05/28/21   Page 3 of 3   PageID #: 747

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 64 of 268

"Section 2202B. Any person, firm, or corporation, dealing in or keeping for sale firearms, or any other person in possession of firearms, shall not make an individual or retail sale of any such firearms, unless the person desiring to purchase the same shall first have obtained from the sheriff or a deputy sheriff of the county or city and county a written permit for such purchase; the person desiring to purchase any such firearms shall deliver the said written permit to the proposed vendor, and if the sale is effected, the said vendor shall indorse on the back of said permit a full and complete description of the particular firearm sold under said permit, and immediately transmit the said permit by mail or otherwise to the office or officer issuing the same.

"Section 2202C. Any person, firm, or corporation who shall violate any of the provisions of Section 2202B shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00)."

SECTION 2. This Act shall take effect upon its approval.

Approved this 25th day of April, A. D. 1919.

O. J. McCARTHY,
Governor of the Territory of Hawaii.

## ACT 125

[H. B. No. 308]

AN ACT TO AMEND SECTIONS 2206 AND 2211 OF THE REVISED LAWS OF HAWAII, 1915, AS AMENDED, RELATING TO WEIGHTS AND MEASURES.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. Section 2206 of the Revised Laws of Hawaii,

2-ER-176

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 65 of 268

Standing: Hon. M. C. Pacheco, Hon. Jno. H. Wise, Hon. Chas. E. King, Hon. Robert Hind, Hon. C. A. Rice, Hon. H. W. Rice, Hon. S. L. Desha, Hon. S. P. Correa, Hon. G. P. Kamauoha, Hon. J. H. Coney. Seated: Hon. J. W. Russell, Hon. H. A. Baldwin, Hon. Chas. F. Chillingworth (President), Hon. R. W. Shingle, Hon. Geo. P. Cooke.

# SENATE JOURNAL

## TENTH LEGISLATURE OF THE TERRITORY OF HAWAII

## REGULAR SEASON, 1919

| | | |
|---|---|---|
| OPENING DAY | - - | WED., FEBRUARY 19, 1919 |
| CLOSING DAY | - - | WED., APRIL 30, 1919 |

Printed by
Honolulu Star-Bulletin, Ltd.,
Merchant Street,
1919.

**EXHIBIT "C"**

Case 1:19-cv-00578-JMS-RT   Document 92-4   Filed 05/28/21   Page 2 of 2   PageID #: 749

Upon motion by Senator Coney, seconded by Senator Kamauoha, the report was adopted.

The bill, as amended, thereupon passed its Final Reading on the following showing of ayes and noes:

Ayes: Senators Baldwin, Coney, Cooke, Correa, Desha, Hind, Kamauoha, King, C. A. Rice, H. W. Rice, Russell, Shingle, Wise, and Mr. President.  Total, 14.

Noes: Senator Pacheco.

Senator Coney, for the Committee on Military, presented a report (Stand. Com. Rep. No. 388) recommending the passage of House Bill No. 304, entitled: "An Act to amend Chapter 125 of the Revised Laws of Hawaii, 1915, as amended by Act 122 of the Session Laws of 1915, relating to firearms and ammunition, by adding thereto two new sections to be known as Sections 2202B and 2202C".  The report was read by the Clerk, as follows:

Honolulu, T. H., April 22, 1919.

Honorable Charles F. Chillingworth,
    President of the Senate.

Sir:—Your Committee on Military, to which was referred House Bill No. 304, entitled "An Act to amend Chapter 125 of the Revised Laws of Hawaii, 1915, as amended by Act 122 of the Session Laws of 1915, relating to firearms and ammunition, by adding thereto two new sections to be known as sections 2202B and 2202C", begs leave to report as follows:

The purpose of this amendment is to have the sheriff or deputy sheriff of the county or City and County issue a permit to any one desiring to purchase firearms or ammunition, said permit to be presented to the vendor of said article and to be endorsed on the back thereof by said vendor describing the article so purchased, said permit to be immediately transmitted to the officer issuing the same.

As this will enable the police authorities to have a better supervision and check over the sale of firearms, your Committee would recommend the passage of this bill.

Respectfully submitted,

J. H. CONEY, Chairman;
S. L. DESHA,
M. C. PACHECO.

Upon motion by Senator Coney, seconded by Senator Desha, the report was adopted.  The bill thereupon passed Second Reading.

Senator Coney, for the Committee on Military, presented a report (Stand. Com. Rep. No. 389) recommending the passage of House Bill No. 308, entitled: "An Act to amend Sections 2206 and 2211 of the Revised Laws of Hawaii, as amended, relating to weights and measures".  The report was read by the Clerk, as follows:

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 67 of 268

# LAWS

OF THE

# TERRITORY OF HAWAII

PASSED BY THE

# TWELFTH LEGISLATURE

———

## REGULAR SESSION 1923.

———

COMMENCED ON WEDNESDAY, THE TWENTY-FIRST
DAY OF FEBRUARY, AND ENDED ON THE
SECOND DAY OF MAY.

———

PUBLISHED BY AUTHORITY

———

HONOLULU
ADVERTISER PUBLISHING CO., LTD.
1923

**EXHIBIT "D"**

2-ER-179

Case 1:19-cv-00578-JMS-RT   Document 92-5   Filed 05/28/21   Page 2 of 3   PageID #: 751

of boundaries, or by decree of a court of competent jurisdiction of the territory".

Section 2.   Section 2, 3 and 4 of Act 208 of the Session Laws of 1919, are hereby amended by amending the date "July 1, 1923" wherever it appears in said sections to read "July 1, 1925".

Section 3.   This Act shall take effect upon its approval.

Approved this 2nd day of May, A. D. 1923.

W. R. FARRINGTON,
Governor of the Territory of Hawaii.

## ACT 156

[H. B. No. 428.]

AN ACT TO AMEND SECTION 2202B OF THE REVISED LAWS OF HAWAII, 1915, AS AMENDED, CONCERNING THE SALE OR TRANSFER AND THE ACQUISITION OF FIREARMS.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

Section 1.   Section 2202B of the Revised Laws of Hawaii, 1915, as enacted by Section 1 of Act 124 of the Session Laws of 1919, and as amended by Section 1 of Act 244 of the Session Laws of 1921, is hereby amended to read as follows:

"Section 2202B.   Any person dealing in firearms or pistol or revolver ammunition shall not make an individual or retail sale of any such article unless the person desiring to acquire such article shall have first obtained from the sheriff or deputy sheriff of the county or city and county in which he may be at the time a written permit to acquire such article.   The person desiring to acquire such article shall deliver said written permit to the dealer, and if the sale or transfer is affected, the said dealer shall make a written statement, in duplicate, of such sale or transfer, setting forth the name, address and nationality of the person acquiring such article and a full and complete description of such article.   The person acquiring such article shall personally sign such statement, in duplicate.   One copy of such statement shall, immediately after the delivery of such article be transmitted to the sheriff or deputy sheriff of such county or city and county, and one copy of such statement shall be retained by the said dealer.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 68 of 268

No such article shall be delivered to the person desiring to acquire the same on the day in which the transaction for the sale or transfer thereof is made.

Any person who shall violate any provision of this section and any person who shall acquire any of the articles from the aforesaid dealer without having first obtained the permit aforesaid, or without having personally signed the statement of sale or transfer aforesaid, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment for a term of not more than one year, or by both such fine and imprisonment.

Any person furnishing information leading to the conviction of any person violating any provision of this section shall be paid an amount equal to one-half of the fine that may be imposed against the person convicted."

SECTION 2.  This Act shall take effect upon its approval.

Approved this 2nd day of May, A. D. 1923.

W. R. FARRINGTON,
Governor of the Territory of Hawaii.

---

## ACT 157

### [H. B. No. 430.]

AN ACT REPEALING ACT 215 OF THE SESSION LAWS OF 1919, MAKING AN APPROPRIATION FOR THE BENEFIT OF JOHN JARDIN.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1.  Act 215 of the Session Laws of 1919, making an appropriation for the benefit of John Jardin, is hereby repealed.

SECTION 2.  This Act shall take effect on July 1, 1923.

Approved this 2nd day of May, A. D. 1923.

W. R. FARRINGTON,
Governor of the Territory of Hawaii.

# LAWS

OF THE

# TERRITORY OF HAWAII

PASSED BY THE

# FOURTEENTH LEGISLATURE

## REGULAR SESSION 1927

COMMENCED ON WEDNESDAY, THE SIXTEENTH
DAY OF FEBRUARY, AND ENDED ON TUES-
DAY, THE THIRD DAY OF MAY.

PUBLISHED BY AUTHORITY

HONOLULU, HAWAII
ADVERTISER PUBLISHING CO., LTD.
1927.

B

**EXHIBIT "E"**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 70 of 268

Case 1:19-cv-00578-JMS-RT   Document 92-6   Filed 05/28/21   Page 2 of 10   PageID #: 754

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 71 of 268

## ACT 206

[H. B. No. 322]

AN ACT REGULATING THE SALE, TRANSFER AND POSSESSION OF CERTAIN FIREARMS AND AMMUNITIONS, AND AMENDING SECTIONS 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2146 AND 2147 OF THE REVISED LAWS OF HAWAII 1925.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. Definitions. "Pistol" or "revolver" as used in this Act, means any firearm with barrel less than twelve inches in length.

"Crime of Violence", as used in this Act means any of the following crimes, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, larceny, burglary and house-breaking.

SECTION 2. Committing crime when armed. If any person, when armed with a pistol or revolver, shall commit or attempt to commit an act constituting a crime of violence, he may in addition to the punishment otherwise provided for the crime, be punished by imprisonment for not more than one year or by a fine of not more than one thousand dollars ($1,000.00) or by both; provided, that the act aforesaid be one which is capable of being committed or facilitated by means of a pistol or revolver.

SECTION 3. Being armed prima facie evidence of intent. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol or revolver and had no license to carry the same, shall be prima facie evidence of his intention to commit said crime of violence; provided, that the criminal act committed or attempted be one which is capable of being committed or facilitated by means of a pistol or revolver.

SECTION 4. Persons forbidden to possess small arms. No person who has been convicted in this territory, or elsewhere, of having committed or attempted a crime of violence, shall own or have in his possession or under his control, a pistol or revolver.

SECTION 5. Carrying or keeping small arms by unlicensed persons. Except as otherwise provided in Sections 7 and 11 hereof in respect of certain licenses, no person shall carry, keep, possess or have under his control a pistol or revolver; provided, how-

14

2-ER-183

ever, that any person who shall have lawfully acquired the owner-
ship or possession of a pistol or revolver may, for purposes of
protection and with or without a license, keep the same in the dwell-
ing house or business office personally occupied by him, and, in
case of an unlawful attack upon any person or property in said
house or office, said pistol or revolver may be carried in any law-
ful, hot pursuit of the assailant.

SECTION 6.   Exceptions.   The provisions of the preceding sec-
tion shall not apply to marshals, sheriffs, prison or jail wardens or
their deputies, policemen, mail carriers, or other duly appointed
law enforcement officers, or to members of the Army, Navy, or
Marine Corps of the United States, or of the National Guard, when
on duty, or of organizations by law authorized to purchase or re-
ceive such weapons from the United States or this territory, or to
officers or employees of the United States authorized by law to
carry a concealed pistol or revolver, or to duly authorized military
organizations when on duty, or to the members thereof when at
or going to or from their customary places of assembly, or to the
regular and ordinary transportation of pistols or revolvers as
merchandise; or to any person while carrying a pistol or revolver
unloaded in a wrapper from the place of purchase to his home or
place of business, or to a place of repair or back to his home or
place of business or in moving goods from one place of abode or
business to another.

SECTION 7.   Issue of licenses to carry.   The judge of a court
of record or the sheriff of a county, or city and county, shall, upon
the application of any person having a bona fide residence or place
of business within the jurisdiction of said licensing authority, or of
any person having a bona fide residence or place of business with-
in the United States and a license to carry a pistol or revolver con-
cealed upon his person or to carry one elsewhere than in his home
or office, said license being issued by the authorities of any state or
political subdivision of the United States, issue a license to such
person to carry a pistol or revolver within this territory elsewhere
than in his home or office, for not more than one year from date
of issue, if it appears that the applicant has good reason to fear an
injury to his person or property, or has any other proper reason
for carrying a pistol or revolver, and that he is a suitable person to
be so licensed.   The license shall be in triplicate, in form to be
prescribed by the treasurer of the territory, and shall bear the
name, address, description and signature of the licensee and the
reason given for desiring a license.   The original thereof shall be
delivered to the licensee; the duplicate shall, within seven days, be
sent by registered mail, to the treasurer of the territory and the

Act 206]                "Small Arms Act."                    211

triplicate shall be preserved for six years by the authority issuing said license.

Section 8.  Selling to minors.  No person shall sell, barter, hire, lend, or give any pistol or revolver to any person under the age of eighteen years.

Section 9.  Transfers regulated.  No person shall transfer by way of sale, gift, loan or otherwise, a pistol or revolver unless the prospective transferee, when he applies for the transfer, presents a permit duly granted under Section 2141 of the Revised Laws of Hawaii, 1925; nor shall he make such transfer unless the transferee be a person in respect of whom there is no reasonable cause, known to the transferor, for believing that such transferee has committed or attempted, or has been convicted of committing or attempting, a crime of violence.  No seller shall in any event deliver a pistol or revolver on the day when the application to purchase and the statement hereinafter mentioned shall be made.  When delivered, said pistol or revolver shall be securely wrapped and shall be unloaded.  Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, race, nationality, color, and place of birth, the date of sale, the caliber, make, model, and manufacturer's number of the weapon, and stating that he has never been convicted of a crime of violence.  The seller shall promptly sign and forward by registered mail one copy thereof to the treasurer of the territory, and one copy thereof to the sheriff of the county or city and county of which the seller is a resident, and shall retain the other copy for six years.  A statement shall be deemed promptly forwarded if it is forwarded within seven days, unless a shorter time is provided therefor in regulations established by the Governor.

Section 10.  Dealers to be licensed.  No retail dealer or selling agent shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol or revolver without being licensed as hereinafter provided.

Section 11.  Dealers' Licenses; by whom granted, and conditions thereof.  The duly constituted licensing authorities of any political subdivision of this territory may grant licenses in form prescribed by the treasurer of the territory, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

212          "SMALL ARMS ACT."                    [ACT 206

1.  The business shall be carried on only in the building designated in the license.

2.  The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3.  No pistol or revolver shall be delivered unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4.  The seller shall faithfully comply with the requirements of Section 9 hereof and with all other provisions of this Act and of Chapter 128, Revised Laws of Hawaii 1925.  A copy of the statement required by Section 9 hereof shall be entered by the seller in a book of record to be kept in his place of business and to be always open to the inspection of the officers and authorized representatives of the territorial government, including the police.  Said book shall be preserved for six years.

5.  No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

No license to sell at retail shall be granted to anyone except as provided in this section.

SECTION 12.  False information forbidden.  No person shall, in purchasing or otherwise securing delivery of a pistol or revolver, or in applying for a license to carry the same, give false information or offer false evidence of his identity.

SECTION 13.  Alteration of identifying marks prohibited.  No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver.  Possession of any pistol or revolver upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

SECTION 14.  Existing licenses revoked.  All licenses heretofore issued within this territory permitting the carrying of pistols or revolvers shall expire at midnight of the 30th day of June, 1927.

SECTION 15.  Exceptions.  This Act shall not apply to antique pistols or revolvers unsuitable for use as firearms.

SECTION 16.  Act supersedes local laws.  The provisions of this Act shall be effective and controlling throughout this territory, notwithstanding the provisions of any local law or ordinance.

2-ER-186

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 75 of 268

ACT 206]          "SMALL ARMS ACT."                213

SECTION 17.  Penalties.  Any violation of any provision of this Act shall constitute an offense punishable by a fine of not more than one thousand dollars ($1,000.00) or imprisonment for not more than one year, or both.

Section 18.  Section 2136 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2136.  Report upon acquiring title to or possession of firearms or ammunition.  Except as otherwise provided by law, any person, firm, corporation or copartnership, residing or doing business within the territory acquiring title or possession or importing into (by express or otherwise) or receiving within the territory any firearm or any ammunition, capable of causing death or inflicting great personal injury, who shall fail to file a description of the same in the manner provided by this chapter, shall be deemed guilty of a misdemeanor and punished as this chapter provides.  Except in so far as the acquisition of title to or possession of a firearm or of ammunition may be reported by the dealer or selling agent under the provisions of Section 2140 hereof, such person, firm, corporation or copartnership shall, within two weeks after such acquisition, importation or receipt, file a report with the sheriff of the county or city and county wherein his or its place of business, or if there be none within the territory, his or its residence, or if there be neither residence nor place of business therein, his place of sojourn therein, is located.  Said report shall include a description of the class of firearm or firearms or/and ammunition owned by him, it or them or in his, its or their possession, which description shall set forth the class of firearm or firearms or/and ammunition so owned and possessed, together with the name of the maker and the factory number, when such number appears on such firearm or firearms or ammunition.

The Governor may, in his discretion, require the filing in like manner, at a time or at times to be fixed by him, of like reports by all persons, firms, corporations or copartnerships owning or possessing, at a date or at dates to be announced by the Governor, any firearm or ammunition within this territory; provided, that at least one month shall expire between the publication or announcement of the Governor's said requirement and the time fixed for filing.  Where any person responsible for making a report hereunder is unable to furnish all of the information herein or hereby required, he shall furnish as much as may be possible and in such manner as may be required by the sheriff."

SECTION 19.  Section 2137 of the Revised Laws of Hawaii 1925, is hereby amended by inserting the words "acquired or" before the words "in possession," in the caption preceding the required form.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 76 of 268

214                    "SMALL ARMS ACT."                    [ACT 206

Strike out the words "owned by him or in my possession" appearing in the certificate in the required form, and insert in lieu thereof the words "acquired, imported or otherwise received by me." At the end of Section 2137, add the following: "Note: In case a special report is required by the Governor under the terms of this section, the person making the report should strike out the words "acquired, imported or otherwise received me" and insert in lieu thereof, the words "owned by me or in my possession.""

SECTION 20. Section 2138 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2138. Information required and furnished Governor. It shall be the further duty of the sheriff to enter in a book to be provided for such purpose, all information thus furnished him relative to the ownership, acquisition, importation, delivery and possession of firearms and ammunition, which book shall be an exact duplication of the descriptions furnished, and, further, to furnish to the Governor not later than the 20th day of January and the 20th day of July of each and every year, an exact report, a complete copy of the description and information so furnished as aforesaid and as required by Sections 2139 and 2140 hereof."

SECTION 21. Section 2139 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2139. Further information. It shall be the duty of every person, firm, corporation, copartnership, dealing in firearms or/and ammunition at wholesale or at retail, including commission merchants and selling agents, to furnish to the sheriff of the county or city and county in which such person resides, or where-in such business is carried on, on the first day of January and the first day of July of each and every year, a list of all firearms and ammunition in his, their or its possession, and likewise at the times mentioned, furnish to such sheriff a list of all arms brought into the territory, in transit or otherwise, by him, them or it during the six months next preceding such date upon which such list and description is required to be filed; the lists thus to be furnished by such dealers in firearms and ammunition shall comply as nearly as possible with the requirements of Sections 2136 and 2137, as may be determined by such sheriff.

It shall be the duty of the sheriff to inspect the shops, stores, warehouses and other business premises of such dealers, commission merchants and selling agents, to verify the accuracy of the reports made and to ascertain whether any required reports have been omitted."

SECTION 22. Section 2140 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2140. Sale of firearms or ammunition; report. Whenever any person, firm, corporation, copartnership, dealing in or keeping for sale firearms or ammunition, shall make a sale of any firearms or ammunition or shall in any manner dispose of the same to any person, it shall be the duty of such person, firm, corporation, copartnership, promptly to make an official written report of said transaction and to include therein such information as shall satisfy the requirements of this chapter. A report shall be deemed promptly made, if it is forwarded within seven days, unless a shorter time is provided therefor in regulations established by the Governor. As to a sale of firearms of any size or class whatever, said report shall conform, in respect of the manner of signing, of the information included, of the officials to whom it shall be forwarded and of all other particulars, with the requirements prescribed as to a sale of pistols or revolvers by Sections 9 and 11 of the Small Arms Act and a record of the facts contained in said report shall be made in the book required by Section 11 of the Small Arms Act or in a similar book of record, open to inspection by any proper officer or his representative. As to a sale of ammunition, said report shall be made to the sheriff of the county wherein the sale or disposition thereof takes place; it shall contain (1) the name of the owner; (2) in case of a sale, the names of vendor and vendee; (3) the name of the recipient of the ammunition, in the event that it be delivered to some one other than the vendee or his employee; (4) the date of the sale or disposition; and (5) a description of the character and quantity of such ammunition."

SECTION 23. Section 2141 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2141. No delivery without permit to acquire. No person owning, possessing or entitled to dispose of a firearm of any class, whether or not he be a dealer in firearms, shall deliver a firearm to another person, unless the latter present a permit, in duplicate, authorizing the acquisition by him of a firearm of the kind or class to be delivered and bearing date on a day during the preceding thirty days. Such permits shall be issued by the sheriff of the county or city and county wherein the applicant resides, or, in the case of non-residents, by the sheriff of the county of his sojourn; provided (1) that the applicant is found not to be a habitual criminal or a person who has been convicted in a court of the territory, or in any other court, of having committed or attempted a crime of violence, as that phrase is defined in the Small Arms Act; and (2) that the applicant is found not to be an

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 77 of 268

2-ER-189

Case 1:19-cv-00578-JMS-RT Document 92-6 Filed 05/28/21 Page 9 of 10 PageID #: 761

anarchist or a person who desires the overthrow of the government of the United States or the diminution of its territory or domain or a person who, if armed, would tend to imperil or weaken the government of the United States or of the territory. The person making delivery of any firearm, whether by virtue of a sale, a gift, a loan or otherwise, shall send to the proper sheriff, by registered mail, one copy of the permit, presented to him as aforesaid; such sheriff being the one by whom the permit was issued. The other copy of the permit shall, for sixty days, be retained by the person making delivery as aforesaid. Such permit shall be subject to inspection by any sheriff or officer of the law or his representative; and it shall be the duty of the person making delivery of the firearm to answer, to the best of his ability, orally, or in writing, (as may be required) any reasonable questions by a proper officer or his representative concerning the identity or description of the firearm so delivered."

SECTION 24. Section 2142 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2142. Penalties. Any person who shall deliver or receive a firearm without complying with the requirements of Section 2141, and any person who shall otherwise violate any provision of said section, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment for a term of not more than one year, or by both such fine and imprisonment.

Any person furnishing information leading to the conviction of any person violating any provision of Section 2141 shall be paid an amount equal to one-half of the fine that may be imposed against the person convicted."

SECTION 25. Section 2143 of the Revised Laws of Hawaii 1925, is hereby amended by inserting, after the first sentence in said section, the following: "The request aforesaid shall include (1) an expression of the belief of such citizens that the applicant has never committed or attempted a crime of violence, as that phrase is defined in the Small Arms Act; that he has never been convicted thereof anywhere and that he is not likely to commit or attempt any such crime and (2) a brief statement of the facts relating to the age, character, nativity and personal history of the applicant, insofar as these facts are within the personal knowledge of such responsible citizens. Such facts as are within the personal knowledge of one of them, only, shall be included in a supplemental written statement signed by the person having such knowledge."

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 78 of 268

Case 1:19-cv-00578-JMS-RT    Document 92-6    Filed 05/28/21    Page 10 of 10    PageID #: 762

SECTION 26.  Section 2146 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2146.  Penalties.  Any person who shall be found in the possession of any firearm or firearms or any ammunition without having complied with the provisions of this chapter, or who shall fail to give, file or forward required information, reports or statements, or who shall otherwise violate the provisions of this chapter in matters not covered by Section 2142 hereof, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined by the court of appropriate jurisdiction in a sum of not more than five hundred dollars ($500.00).  Any person, firm, corporation, copartnership, failing to file any information herein required to be filed, shall be deemed guilty of a misdemeanor and upon conviction shall be fined by the court of appropriate jurisdiction not more than five hundred dollars ($500.00).

The divulging of official information recorded or on file in a public office shall be punishable in like manner; provided, however, that where the information divulged has not tended, or been designed to encourage, or to render formidable armed resistance to the law, the fine shall not exceed twenty-five dollars ($25.00)."

SECTION 27.  Section 2147 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2147.  Exceptions.  The requirements and provisions of this Chapter shall not apply to those who, under Section 6 of the Small Arms Act, are excepted from the provisions of Section 5 of that Act."

SECTION 28.  Constitutionality.  If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

SECTION 29.  Short title.  The first seventeen sections of this Act are herein referred to as the "Small Arms Act," by which designation such sections may be cited.

SECTION 30.  Certain Acts repealed.  All laws or parts of laws inconsistent herewith are hereby repealed, but the provisions of Chapter 128, Revised Laws of Hawaii 1925, are not repealed hereby, except where plainly inconsistent herewith.

SECTION 31.  This Act shall take effect from and after July 1, 1927.

Approved this 27th day of April, A. D. 1927.

                        W. R. FARRINGTON,
                   Governor of the Territory of Hawaii.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 79 of 268

2-ER-191

Case 1:19-cv-00578-JMS-RT   Document 92-7   Filed 05/28/21   Page 1 of 3   PageID #: 763

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 80 of 268

# SENATE JOURNAL

---

## FOURTEENTH LEGISLATURE

### OF THE

### TERRITORY OF HAWAII

---

### REGULAR SESSION 1927

---

HONOLULU:
THE NEW FREEDOM PRESS
1927

**EXHIBIT "F"**

Back row—M. M. Judd, R. Hind, E. C. Moanauu, F. H. I. Brown, C. F. Chillingworth, W. Y. Kben, H. W. Rice, H. Ahi, W. H. McInerny, A. F. Tavares.
Front row—G. A. Rice, E. A. K. Akina, R. W. Shingle, J. W. Russell, S. L. Desha

2-ER-192

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 81 of 268

SENATE JOURNAL                                        1023

Upon motion by Senator Judd, seconded by Senator Mossman, the Bill passed First Reading by title, and was advanced one day on the calendar for Second Reading.

Senator Tavares moved for a reconsideration of the action taken by the Senate in deferring action on Governor's Message No. 25, vetoing Senate Bill No. 178. Seconded by Senator Mossman and carried.

Senator C. A. Rice moved that the Bill pass Final Reading, notwithstanding the veto of the Governor. Seconded by Senator Russell, and carried, and Senate Bill No. 178 passed Final Reading on the following showing of Ayes and Noes:

Ayes: Senators Aki, Akina, Brown, Chillingworth, Desha, Heen, Hind, McInerny, Mossman, C. A. Rice, H. W. Rice Russell, Tavares and Mr. President. Total, 14.

Noes: Senator Judd. Total, 1.

Senator Russell, for the Committee on Judiciary, presented a report (Stand. Com. Rep. No. 384) recommending the passage, with certain amendments, of House Bill No. 322, which was read by the Clerk, as follows:

Honolulu, T. H., April 21, 1927.

Hon. Robert W. Shingle,
President of the Senate.

Sir: Your Committee on Judiciary to which was referred House Bill No. 322, entitled: "An Act regulating the sale, transfer, and possession of certain firearms and ammunitions, and amending Sections 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2146 and 2147 of the Revised Laws of Hawaii, 1925," begs leave to report as follows: The Bill would accomplish two purposes:

1. It would enact for Hawaii the substance of the Uniform Firearms Act as recommended by the National Commission upon Uniform State Laws, which Act was adopted at its July 1926 conference, but subject to certain modifications applicable to conditions existing in this Territory;

2. It seeks to make effective the existing firearms statutes found in Chapter 128 of the Revised Laws of Hawaii 1925, those statutes having heretofore been of no practicable benefit to the people of this Territory because of inconsistencies and ambiguities.

Your Committee has given this Bill very careful consideration. We believe that the same is desirable and necessary and we, therefore, recommend the passage of the same with the following amendments:

1. In Section 7, delete the lines 7 and 10 inclusive and substitute in lieu thereof the following:

"carry a pistol or revolver concealed upon his person or to carry one elsewhere than in his home or office, said license being issued by the authorities of any state or political subdivision of the United States, issue a license to such person to carry a pistol or revolver within this Territory elsewhere than in his home or office"

2. Delete the last sentence of Section 8.

3. Delete the last two lines of Section 27 and substitute in lieu thereof the following:

"under Section 6 of the Small Arms Act, are excepted from the provisions of Section 5 of that Act."

4.   Delete Section 29 and substitute in lieu thereof, the following:
"SECTION 29.   Short title.   The first seventeen sections of this Act are herein referred to as the 'Small Arms Act', by which designation, such sections may be cited."

Respectfully submitted,

J. W. RUSSELL, Chairman
HENRY C. MOSSMAN
A. F. TAVARES
WM. H. HEEN
CHAS. F. CHILLINGWORTH

Upon motion by Senator Russell, seconded by Senator Tavares, the report of the Committee was adopted.   House Bill No. 322, as amended, passed Second Reading, and was advanced one day on the calendar for Third Reading.

A communication from the House (H. Com. No. 411) informing the Senate that the House had, upon reconsideration, passed Senate Bill No. 178 on Final Reading, the veto of the Governor to the contrary notwithstanding, was read by the Clerk, as follows:

Honolulu, T. H., April 21, 1927.

To the Honorable President and
    Members of the Senate of the
        Territory of Hawaii.

Gentlemen:   I have the honor to inform your Honorable Body that upon reconsideration of Senate Bill No. 178, the House this day passed the same on Final Reading, the veto of the Governor to the contrary notwithstanding.

Very respectfully,

JOSEPH ORDENSTEIN
Clerk, House of Representatives.

The communication was received and placed on file.

A communication from the House (H. Com. No. 412) informing the Senate that the amendment proposed by the Senate to House Bill No. 273 had been agreed to by the House of Representatives, was read by the Clerk, as follows:

Honolulu, T. H., April 21, 1927.

To the Honorable President and
    Members of the Senate of the
        Territory of Hawaii.

Gentlemen:   I have the honor to inform your Honorable Body

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 83 of 268

# LAWS

OF THE

# TERRITORY OF HAWAII

PASSED BY THE

## SEVENTEENTH LEGISLATURE

---

## SPECIAL SESSION
## 1933

---

Commenced on Monday, the Thirtieth Day of October, 1933, and
Ended on Thursday, the Eleventh Day of January, 1934.

---

PUBLISHED BY AUTHORITY

---

HONOLULU, HAWAII
HONOLULU STAR-BULLETIN, LTD.
1934

**EXHIBIT "G"**

## ACT 25

[H. B. No. 100]

AN ACT TO AMEND SECTION 3487 OF THE REVISED LAWS OF HAWAII 1925, RELATING TO TRUST COMPANIES.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. Section 3487 of the Revised Laws of Hawaii 1925, is hereby amended by adding thereto at the end thereof the following:

"Provided that the treasurer may, whether before or after making such application, permit such company to continue or resume business upon its effecting appropriate remedies within such time and upon such terms and in such manner as he shall approve, as by making good the impairment of its capital, or by reducing its capital to the extent of the impairment but not below the amount required by law or by selling all or any of its assets or capital stock to or merging with any trust company, whose capital has not been impaired, which will take over and assume its liabilities, or by making satisfactory arrangements with its creditors, or by reorganization or otherwise."

SECTION 2. This Act shall take effect upon its approval.

Approved this 2nd day of January, A. D. 1934.

LAWRENCE M. JUDD,
Governor of the Territory of Hawaii.

------

## ACT 26

[H. B. No. 70]

AN ACT REGULATING THE SALE, TRANSFER AND POSSESSION OF FIREARMS AND AMMUNITION AND REPEALING SECTIONS 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146 AND 2147, REVISED LAWS OF HAWAII 1925, ACT 206, SESSION LAWS OF HAWAII 1927, AND ACT 120, SESSION LAWS OF HAWAII 1933.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. Sections 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146 and 2147 of the Revised Laws of Hawaii 1925, Act 206, Session Laws of Hawaii 1927, and Act 120, Session

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 84 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 85 of 268

Laws of Hawaii 1933, and all other laws or parts of laws in conflict with the provisions of this Act, are hereby repealed.

SECTION 2. Definitions. "Firearm" as used in this Act means any weapon, the operating force of which is an explosive. This definition includes pistols, revolvers, rifles, shotguns, machine guns, automatic rifles, noxious gas projectors, mortars, bombs, cannon and sub-machine guns. The specific mention herein of certain weapons does not exclude from the definition other weapons operated by explosives.

"Crime of violence" as used in this Act means any of the following crimes, namely: murder, manslaughter, rape, kidnapping, robbery, burglary, and those certain crimes set forth in Sections 4130 and 4131 of said Revised Laws.

"Pistol" or "revolver" as used in this Act, means and includes any firearm of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas.

"Person" as used in this Act includes individuals, firms, corporations and copartnerships, and includes wholesale and retail dealers.

SECTION 3. Every person residing or doing business or temporarily sojourning within the Territory on the effective date of this Act who possesses a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already registered in the name of the present possessor, or who possesses ammunition of any kind or description, except shotgun ammunition, shall, within ten days of said effective date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

Every person arriving in the Territory after the effective date of this Act, who brings with him firearms or ammunition of the type and description set out in this section, shall register the same in similar manner within forty-eight hours after arrival.

The registration shall be on such forms as may be designated by the bureau of crime statistics and shall include a description of the class of firearm or firearms and ammunition owned by him, or in his possession, together with the name of the maker and the factory number, if known or ascertainable, and the source from which possession was obtained.

Within sixty days after the effective date of this Act, the chief of police of the city and county of Honolulu and the sheriffs of the several counties, other than the city and county of Honolulu,

Case 1:19-cv-00578-JMS-RT   Document 92-8   Filed 05/28/21   Page 4 of 7   PageID #: 769

shall furnish the bureau of crime statistics a record of all registra-
tions now on file in their respective offices. Within ten days after
the end of each month the chief of police of the city and county
of Honolulu and the sheriffs of the several counties, other than
the city and county of Honolulu, shall furnish to the bureau of
crime statistics duplicate copies of all registrations made during
the preceding month.

No fee shall be charged for such registration.

Any person who fails to comply with the provisions of this sec-
tion shall be punished by a fine of not more than two hundred and
fifty dollars ($250.00).

SECTION 4. No person residing or doing business or temporarily
sojourning within the Territory shall take possession of any fire-
arm of any description, whether usable or unusable, serviceable or
unserviceable, modern or antique, registered under prior Acts or
unregistered, or of any ammunition of any kind or description,
except shotgun ammunition, either through sale, gift, loan, bequest,
or otherwise, whether procured in the Territory or imported by
mail, express, freight, or otherwise, until he shall first have pro-
cured from the chief of police of the city and county of Honolulu
or the sheriff of the county, other than the city and county of
Honolulu, wherein is his place of business, or if there be no place
of business, his residence, or if there be neither place of business
nor residence, his place of sojourn, a permit to acquire as pre-
scribed herein. The chief of police of the city and county of Hono-
lulu or the sheriffs of the several counties, other than the city and
county of Honolulu, are hereby authorized, within their discretion,
to issue permits, within their respective jurisdictions, to acquire
rifles, pistols, and revolvers to citizens of the United States, of
the age of twenty years or more, and to duly accredited official
representatives of foreign nations. Permits to acquire ammunition
for rifles, pistols and revolvers acquired prior to the effective date
of this Act and registered in accordance with the provisions hereof,
may be granted persons of the age of twenty years or more irre-
spective of citizenship. Permits to acquire shotguns may be granted
to persons of the age of sixteen years or more, irrespective of citi-
zenship. Applications for such permits shall be signed by the
applicant upon forms to be specified by the bureau of crime sta-
tistics, and shall be signed by the issuing authority. One copy of
such permit shall be retained by the issuing authority, as a perma-
nent official record. Such permit shall be void unless used within
ten days after the date of issue. In all cases where possession is
acquired from another person in the Territory the permit shall be
signed in ink by the holder thereof and shall thereupon be delivered
to and taken up by the person selling, loaning, giving or delivering
the firearm or ammunition, who shall make entry thereon setting

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 86 of 268

Case 1:19-cv-00578-JMS-RT   Document 92-8   Filed 05/28/21   Page 5 of 7   PageID #: 770

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 87 of 268

forth in the space provided therefor the name of the person to
whom the firearm or ammunition was delivered, and the make,
style, caliber, and number, as applicable. He shall then sign it in
ink and cause it to be delivered or sent by registered mail to the
issuing authority within forty-eight hours. In case receipt of such
firearms or ammunition is had by mail, express, freight, or other-
wise, from sources outside the Territory, the person to whom such
permit has been issued, shall make the prescribed entries thereon,
sign in ink, and cause it to be delivered or sent by registered mail
to the issuing authority within forty-eight hours after taking pos-
session of the firearms or ammunition. No person shall sell, give,
loan, or deliver into the possession of another any firearm or am-
munition except in accordance with the provisions of this section.
Any person acquiring a firearm or ammunition under the pro-
visions of this section shall, within five days of acquisition, register
same in the manner prescribed by Section 3 of this Act.
No fee shall be charged for permits under this section.
Any person who violates any provision of this section shall be
punished by a fine of not more than five hundred dollars ($500.00)
or imprisonment for not more than one year, or by both.

SECTION 5. Any person who has procured a hunting license
under the provisions of Sections 2028-2032, inclusive, of the Re-
vised Laws of Hawaii 1925, as amended, shall, while actually
engaged in hunting or while going to or from the place of hunting,
be authorized to carry and use any lawfully acquired rifle or shot-
gun and suitable ammunition therefor.

SECTION 6. The possession of all firearms and ammunition
shall be confined to the possessor's place of business, residence, or
sojourn, or to carriage as merchandise in a wrapper from the place
of purchase to the purchaser's home, place of business or place of
sojourn, or between these places and a place of repair, or upon
change of place of business, abode, or sojourn, except as provided
in Sections 5 and 8; provided, however, that no person who has
been convicted in this Territory or elsewhere, of having com-
mitted or attempted a crime of violence, shall own or have in his
possession or under his control a pistol or revolver or ammunition
therefor. Any person violating any provision of this section shall
be punished by a fine of not more than one thousand dollars
($1,000.00) or by imprisonment for not more than one year, or
by both.

SECTION 7. The manufacture, possession, sale, barter, trade,
gift, transfer, or acquisition of any machine guns, sub-machine
guns, automatic rifles, cannon, mufflers, silencers or devices for
deadening or muffling the sound of discharged firearms, or any
bomb or bombshell is prohibited. Any person convicted of a viola-

Case 1:19-cv-00578-JMS-RT   Document 92-8   Filed 05/28/21   Page 6 of 7   PageID #: 771

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 88 of 268

tion of this section shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than one year, or by both.

SECTION 8. In an exceptional case, when the applicant shows good reason to fear injury to his person or property, the chief of police of the city and county of Honolulu or the sheriff of a county, other than the city and county of Honolulu, may grant a license to a citizen of the United States or a duly accredited official representative of a foreign nation, of the age of twenty years or more, to carry concealed on his person within the city and county or the county in which such license is granted, a pistol or revolver and ammunition therefor. Unless renewed, such license shall automatically become void at the expiration of one year from date of issue. No such license shall issue unless it appears that the applicant is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony, or adjudged insane, in the Territory or elsewhere. All licenses to carry concealed weapons heretofore issued shall expire at midnight on the effective date of this Act. No person shall carry concealed on his person a pistol or revolver or ammunition therefor without being licensed so to do under the provisions of this section.

For each such license there shall be charged a fee of ten dollars ($10.00), which shall be covered into the treasury of the city and county or the county in which such license is granted.

Any person violating this section shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than one year, or by both.

SECTION 9. No person shall wilfully alter, remove, or obliterate the name of the make, model, manufacturer's number or other mark of identity of any firearm or ammunition. Possession of such firearm or ammunition upon which any mark of identity shall have been altered, removed, or obliterated shall be presumptive evidence that such possessor has altered, removed or obliterated the same. Any person who violates the provisions of this section shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment for not more than one year, or by both.

SECTION 10. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was unlawfully armed with a firearm shall be prima facie evidence of his intent to commit said crime of violence.

SECTION 11. The provisions of Sections 6, 7 and 8 of this Act shall not apply to members of police departments, sheriffs, marshals, members of military and naval forces of the Territory and

Case 1:19-cv-00578-JMS-RT   Document 92-8   Filed 05/28/21   Page 7 of 7   PageID #: 772

of the United States, mail carriers, law enforcement officers, or persons employed by the Territory or subdivisions thereof or the United States whose duties require them to be armed, while such persons are in the performance of their respective duties, or while going to and from their respective places of duty, nor shall the provisions of Sections 3 and 4 of this Act apply to such firearms or ammunition as are a part of the official equipment of any Federal agency.

SECTION 12.   All firearms or ammunition carried or possessed contrary to this Act shall be forfeited to the Territory, and shall be destroyed by the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, in whose jurisdiction they are forfeited.

SECTION 13.   All permits and licenses provided for under this Act may be revoked, for good cause, by the issuing authority or by the judge of any court.

SECTION 14.   Within ten days after the last day of each month each of the authorities herein authorized to issue or revoke permits and licenses shall make a report to the bureau of crime statistics as of the last day of the preceding month of all permits and licenses issued or revoked by him. Said report shall be in such manner and in such form as the bureau of crime statistics shall prescribe.

SECTION 15.   If any person, in complying with any of the requirements of this Act, shall give false information, or offer false evidence of his identity, he shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than one year, or by both.

SECTION 16.   If any section, subsection, sentence, clause or phrase of this Act is, for any reason, held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Act. The Legislature hereby declares that it would have approved this Act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

SECTION 17.   This Act shall take effect upon its approval.

Approved this 9th day of January, A. D. 1934.

LAWRENCE M. JUDD,
Governor of the Territory of Hawaii.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 89 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 90 of 268

# JOURNAL

*of the*

## House of Representatives

*of the*

## Seventeenth Legislature

*of the*

## Territory of Hawaii

———♦———

*Special Session 1933*

———♦———

COMMENCED ON MONDAY, THE THIRTIETH
DAY OF OCTOBER, AND ENDED ON
THURSDAY, THE ELEVENTH
DAY OF JANUARY

———

*Printed by*
KUMALAE PUBLISHING COMPANY
*Honolulu, Hawaii*

**EXHIBIT "H"**

2-ER-202

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 91 of 268

HOUSE JOURNAL                    427

port of the majority of the Committee was adopted.  Senate Bill
No. 31 passed Second Reading, and was placed on the order of the
day for Thursday, January 4, 1934, for Third Reading.

Mr. Beebe, for the Committee on Judiciary, reported on
House Bill No. 70, recommending its passage with certain amend-
ments (Stand. Com. Rep. No. 89), as follows:

Honolulu, T. H., December 20, 1933.

Honorable Herbert N. Ahuna,
   Speaker, House of Representatives.

Sir:

Your Committee on Judiciary, to which was referred House
Bill No. 70, entitled "An Act regulating the sale, transfer and
possession of firearms and ammunition, and repealing Sections
2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146 and
2147, Revised Laws of Hawaii 1925, Act 206, Session Laws of Ha-
waii 1927, and Act 120, Session Laws of Hawaii 1933", begs leave
to report as follows:

The purpose of the Bill is to give the law enforcing agencies
of the Territory a better means of controlling the sale, transfer
and possession of firearms and ammunition.  It provides for the
registration of all firearms now possessed by persons living in the
Territory, prohibits the subsequent acquisition of firearms other
than shotguns by non-citizens and provides an effective method
of registration, etc.

Your Committee recommends passage of the Bill, subject to
the following amendments:

1. Section 3, line 9 of the printed Bill, insert after the
   word "county", the following: "other than the City
   and County of Honolulu";

2. Section 3, line 24 of the printed Bill, insert after the
   word "counties", the following: "other than the City
   and County of Honolulu";

3. Section 3, line 28 of the printed Bill, after the word
   "counties", insert the following: "other than the City
   and County of Honolulu";

4. Section 4, line 10 of the printed Bill, after the word
   "county", insert the following: "other than the City
   and County of Honolulu";

5. Section 4, line 14, after the word "county", insert the
   following: "other than the City and County of Hono-
   lulu";

6. Section 4, line 18 of the printed Bill, after the sen-

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 92 of 268

428                              HOUSE JOURNAL

tence ending with the words "foreign nations", insert the following: "permits to acquire ammunition for rifles, pistols and revolvers acquired prior to the effective date of this Act and registered in accordance with the provisions hereof, may be granted persons of the age of twenty years or more irrespective of citizenship";

7.  Section 4, line 22 of the printed Bill, delete the words "under oath";

8.  Section 4, line 46 of the printed Bill, delete the words "forty-eight hours", and insert in lieu thereof "five days";

9.  Section 8, line 4, after the word "county", insert the following: "other than the City and County of Honolulu";

10. Section 12, line 4, after the word "county", insert the the following: "other than the City and County of Honolulu".

Respectfully submitted,

E. H. BEEBE, Chairman;
W. H. ENGLE,
GEORGE H. HOLT, Jr.,
THOS. SAKAKIHARA,
O. P. SOARES.

On motion by Mr. Beebe, seconded by Mr. Borthwick, the report of the Committee was adopted. House Bill No. 70, as amended, passed Second Reading, and was placed on the order of the day for Thursday, January 4, 1934, for Third Reading.

Mr. Beebe, for the Committee on Judiciary, reported on Senate Bill No. 60, recommending its passage (Stand. Com. Rep. No. 90), as follows:

Honolulu, T. H., December 20, 1933.

Honorable Herbert N. Ahuna,
    Speaker, House of Representatives.

Sir:

Your Committee on Judiciary, to which was referred Senate Bill No. 60, entitled "An Act to amend Section 3463 of the Revised Laws of Hawaii 1925, as amended, relating to powers of the fire marshall", begs leave to report as follows:

The existing law now provides that the fire marshall "shall have the power to administer oaths and affirmations to any person appearing as a witness, and false swearing shall be prosecuted

# REVISED LAWS

OF

HAWAII

1935

Comprising the Statutes of the Territory,
consolidated, revised and annotated.



PUBLISHED BY AUTHORITY.

HONOLULU, T. H.
HONOLULU STAR-BULLETIN
1935.

**EXHIBIT "I"**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 93 of 268

Sec. 2530. **Number on vehicle; badge.** The owner of a licensed vehicle shall continuously exhibit in a conspicuous place on every such vehicle, the number of the license issued for such vehicle. Every licensed driver shall wear, while employed, a badge which shall be supplied by the treasurer at cost, showing his number. [L. 1896, c. 64, s. 100; R. L. 1925, s. 2107.]

Sec. 2531. **Number of passengers.** No licensed vehicle shall convey at any one time a greater number of passengers than the capacity enumerated in its license. [L. 1896, c. 64, s. 101; R. L. 1925, s. 2108.]

Sec. 2532. **Penalties.** Any person who shall convey any passenger or freight for hire in any unlicensed vehicle, or who shall allow an unlicensed vehicle owned by him to be used for such purposes, or who, having a license, shall use any vehicle, harness or animal which is not in good and serviceable condition, or who shall drive a licensed vehicle without a driver's license, or who shall knowingly allow a licensed vehicle owned by him to be driven for hire by an unlicensed person, or who shall violate or fail to observe any of the requirements of sections 2527 to 2532, inclusive, shall be fined not more than twenty-five dollars for each violation and the license of any licensed vehicle or driver may, in the discretion of the court, be canceled. [L. 1896, c. 64, s. 103; am. L. 1907, c. 13, s. 2; am. L. 1915, c. 70, s. 1; R. L. 1925, s. 2110; am. imp. L. 1932, 2d, c. 66, s. 15.]

## CHAPTER 81.   FIREARMS AND AMMUNITION.*

Sec. 2540. **Definitions.** As used in this chapter: "Firearm" means any weapon, the operating force of which is an explosive. This definition includes pistols, revolvers, rifles, shotguns, machine guns, automatic rifles, noxious gas projectors, mortars, bombs, cannon and sub-machine guns. The specific mention herein of certain weapons does not exclude from the definition other weapons operated by explosives.

"Crime of violence" means any of the following crimes, namely: murder, manslaughter, rape, kidnapping, robbery, burglary, and those certain crimes set forth in sections 5653 and 5654.

"Pistol" or "revolver" means any firearm of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas. [L. 1933-4, c. 26, s. 2.]

Sec. 2541. **Registration; mandatory.** Every person residing or doing business or temporarily sojourning within the Territory on January 9, 1934, who possessed a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already registered in the name of the present possessor, or who possessed ammunition of any kind or description, except shotgun ammunition, shall, within ten days of that date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

Every person arriving in the Territory, who brings with him firearms or ammunition of any type and description, shall register the same in similar manner within forty-eight hours after arrival.

The registration shall be on such forms as may be designated by the bureau of crime statistics and shall include a description of the class of firearm or firearms and ammunition owned by him, or in his possession, together with the name of the maker and the factory number, if known or ascertainable, and the source from which possession was obtained.

Within ten days after the end of each month the chief of police of the city and county of Honolulu and the sheriffs of the several counties, other than the city and county, shall furnish to the bureau of crime statistics duplicate copies of all registrations made during the preceding month.

No fee shall be charged for such registration.

---

* L. 1933-4, c. 26, s. 16, partial invalidity, omitted.
See s. 1307, re reports of wounds caused by firearms; see c. 193, homicide; c. 209, rape; c. 194, kidnapping; c. 208, robbery; c. 168, burglary; s. 5629, intent when crime committed while armed.

431

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 94 of 268

Any person who fails to comply with the provisions of this section shall be punished by a fine of not more than two hundred and fifty dollars. [L. 1933-4, c. 26, s. 3.]

See ss. 8463-8465, bureau of crime statistics.

**Sec. 2542. Registration by transfer; permits to acquire; penalty.** No person shall take possession of any firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or unregistered, or of any ammunition of any kind or description, except shotgun ammunition, either through sale, gift, loan, bequest, or otherwise, whether procured in the Territory or imported by mail, express, freight, or otherwise, until he shall first have procured from the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein. The chief of police of the city and county of Honolulu or the sheriffs of the several counties, other than the city and county, are authorized, within their discretion, to issue permits, within their respective jurisdictions, to acquire rifles, pistols, and revolvers to citizens of the United States, of the age of twenty years or more, and to duly accredited official representatives of foreign nations. Permits to acquire ammunition for rifles, pistols and revolvers acquired prior to January 9, 1934, and registered in accordance with the provisions of this chapter, may be granted persons of the age of twenty years or more irrespective of citizenship. Permits to acquire shotguns may be granted to persons of the age of sixteen years or more, irrespective of citizenship.

Applications for such permits shall be signed by the applicant upon forms to be specified by the bureau of crime statistics, and shall be signed by the issuing authority. One copy of such permit shall be retained by the issuing authority, as a permanent official record. Such permit shall be void unless used within ten days after the date of issue. In all cases where possession is acquired from another person in the Territory the permit shall be signed in ink by the holder thereof and shall thereupon be delivered to and taken up by the person selling, loaning, giving or delivering the firearm or ammunition, who shall make entry thereon setting forth in the space provided therefor the name of the person to whom the firearm or ammunition was delivered, and the make, style, caliber, and number, as applicable. He shall then sign it in ink and cause it to be delivered or sent by registered mail to the issuing authority within forty-eight hours. In case receipt of such firearms or ammunition is had by mail, express, freight, or otherwise, from sources without the Territory, the person to whom such permit has been issued, shall make the prescribed entries thereon, signed in ink, and cause it to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearms or ammunition. No person shall sell, give, loan, or deliver into the possession of another any firearm or ammunition except in accordance with the provisions of this section.

Any person acquiring a firearm or ammunition under the provisons of this section shall, within five days of acquisition, register same in the manner prescribed by section 2541.

No fee shall be charged for permits under this section.

Any person who violates any provision of this section shall be punished by a fine of not more than five hundred dollars or imprisonment for not more than one year, or by both. [L. 1933-4, c. 26, s. 4.]

Sec. 2543. Possession by licensed hunters. Any person who has procured a hunting license under the provisions of sections 2463-2468, inclusive, shall, while actually engaged in hunting or while going to and from the place of hunting, be authorized to carry and use any lawfully acquired rifle or shotgun and suitable ammunition therefor. [L. 1933-4, c. 26, s. 5.]

See ss. 2463-2468, fishing and hunting licenses.

2-ER-207

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 96 of 268

1968

**EXHIBIT "J"**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 97 of 268

# HAWAII REVISED STATUTES

### VOLUME 2

### TITLES 6-10, CHAPTERS 46-140



## PUBLISHED BY AUTHORITY

# FIREARMS AND AMMUNITION

**§133-4  Exceptions.** This chapter shall not apply to the armed forces of the United States, the national guard, or employees of the United States or of the State or its political subdivisions who are authorized by the United States or the State or its political subdivisions to handle explosives. [L 1941, c 326, pt of §1; RL 1945, §4954; RL 1955, §184-36]

**§133-5  Appeals.** An appeal may be taken from any action of the fire marshal or of any officer authorized to act hereunder to the circuit court of the first judicial circuit. [L 1941, c 326, pt of §1; RL 1945, §4955; am L 1953, c 138, §1 (3); RL 1955, §184-37]

**Cross References**

Appeal procedure, see chapter 91.

**Rules of Court**

Appeal, see HRCP rule 72.

**§133-6  Violations; penalty.** Any person who violates any provision of this chapter shall be fined not more than $500, or imprisoned not more than six months, or both. [L 1941, c 326, pt of §1; RL 1945, §4956; RL 1955, §184-38]

## CHAPTER 134
## FIREARMS AND AMMUNITION

PART I.  GENERAL REGULATIONS

SECTION
134-1   DEFINITIONS
134-2   REGISTRATION, MANDATORY
134-3   PERMITS TO ACQUIRE; REGISTRATION; PENALTY
134-4   TRANSFER OF RIFLES AND SHOTGUNS
134-5   POSSESSION BY LICENSED HUNTERS AND MINORS
134-6   PLACE TO KEEP FIREARMS; LOADED FIREARMS, WHEN PROHIBITED
134-7   OWNERSHIP OR POSSESSION BY FUGITIVE FROM JUSTICE OR BY PERSON CONVICTED OF CERTAIN CRIMES PROHIBITED; PENALTY
134-8   OWNERSHIP, ETC., OF MACHINE GUNS, AUTOMATIC RIFLES, SILENCERS, ETC., PROHIBITED; PENALTY
134-9   PERMITS TO CARRY; PENALTY
134-10  ALTERATION OF IDENTIFICATION MARKS PROHIBITED; PENALTY
134-11  EXEMPTIONS
134-12  FIREARMS FORFEITED WHEN
134-13  REVOCATION OF PERMITS
134-14  REPORT
134-15  PENALTY FOR FALSIFICATION

PART II.  FIREARMS, DEALERS' LICENSES
134-31  LICENSE TO SELL AND MANUFACTURE FIREARMS; FEE
134-32  LICENSE TO SELL AND MANUFACTURE FIREARMS; CONDITIONS
134-33  PUNISHMENT FOR VIOLATIONS OF SECTION 134-32
134-34  NATIONAL EMERGENCY, WHEN

581

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 98 of 268

Case 1:19-cv-00578-JMS-RT   Document 81-11   Filed 06/12/20   Page 4 of 10   PageID #:
Case 1:19-cv-00578-JMS-RT   Document 92-15   Filed 05/28/21   Page 4 of 10   PageID #:
782

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 99 of 268

Sec. 134-1   PUBLIC SAFETY AND INTERNAL SECURITY

PART I. GENERAL REGULATIONS

**§134-1   Definitions.** As used in this chapter:

"Firearm" means any weapon, the operating force of which is an explosive. This definition includes pistols, revolvers, rifles, shotguns, machine guns, automatic rifles, noxious gas projectors, mortars, bombs, cannon, and submachine guns. The specific mention of certain weapons does not exclude from the definition other weapons operated by explosives.

"Crime of violence" means any of the following crimes, namely: murder, manslaughter, rape, kidnapping, robbery, burglary, and those certain crimes set forth in sections 724-4, 724-5 and 724-6.

"Pistol" or "revolver" means any firearms of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas. [L Sp 1933, c 26, §2; RL 1935, §2540; RL 1945, §7181; am L 1955, c 54, §1; RL 1955, §157-1]

*Revision note*

Reference to HRS 724-6 added to reflect amendment to HRS 724-5 by L 1967, c 243.

**§134-2   Registration, mandatory.** Every person arriving in the State who brings with him firearms of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, or ammunition of any type and description, shall within forty-eight hours after arrival, register the same with the chief of police of the county of his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

The registration shall be on such forms as may be designated by the department of the attorney general and shall include a description of the class of firearms and ammunition owned by him, or in his possession, together with the name of the maker and the factory number, if known or ascertainable, and the source from which possession was obtained.

Within ten days after the end of each month the respective chiefs of police shall furnish to the department duplicate copies of all registrations made during the preceding month.

No fee shall be charged for the registration.

Any person who fails to comply with this section shall be fined not more than $250. [L Sp 1933, c 26, §3; RL 1935, §2541; am L 1939, c 104, § 7; am L Sp 1941, c 78, §1; am L 1943, c 62, §21 and c 64, § 22; RL 1945, §7182; RL 1955, §157-2; am L Sp 1959 2d, c 1, §13]

**§134-3   Permits to acquire; registration; penalty.** No person shall acquire the ownership of a firearm of any description (other than a rifle or shotgun having a barrel length of eighteen inches or over), whether usable or unusable, serviceable or unserviceable, modern or antique,

582

FIREARMS AND AMMUNITION        Sec. 134-3

registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight or otherwise, until he has first procured from the chief of police of the county of his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein; provided, when title to any such firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of same. Further, no person shall keep in his possession any such firearm which is owned by another, irrespective of whether or not the owner has consented to its possession, without a permit from the chief of police of the aforesaid county; provided, that any pistol or revolver, which is registered under, and in respect of which the owner has fully complied with, this chapter, may be loaned to another even though he be a minor, upon a target range, for a period not longer than to allow the other person to then and there use it for target shooting, without a permit.

Each chief of police may issue permits, within his jurisdiction, to acquire such firearms, to citizens of the United States, of the age of twenty years or more, and to duly accredited official representatives of foreign nations. Each chief of police may also issue permits to aliens of the age of twenty years or more for use of rifles and shotguns for a period not exceeding sixty days, after the alien had first procured a hunting license under sections 191-1 to 191-6.

Applications for the permits shall be signed by the applicant upon forms to be specified by the department of the attorney general and shall be signed by the issuing authority. One copy of the permit shall be retained by the issuing authority, as a permanent official record. The permit shall be void unless used within ten days after the date of issue. In all cases where possession is acquired from another person in the State the permit shall be signed in ink by the holder thereof and shall be delivered to and taken up by the person who is transferring title to the firearm, who shall make entry thereon setting forth in the space provided, the name of the person to whom the firearm was transferred, and the make, style, caliber, and number as applicable. He shall then sign it in ink and cause it to be delivered or sent by registered mail to the issuing authority within forty-eight hours. In case receipt of the firearm is had by mail, express, freight or otherwise, from sources without the State, the person to whom the permit has been issued shall make the prescribed entries thereon, sign it in ink, and cause it to be delivered, or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm. No person shall sell, give, loan, or deliver into the possession of another any firearm or ammunition except in accordance with this section.

Any person acquiring a firearm under this section shall, within five days of acquisition, register it in the manner prescribed by section 134-2.

No fee shall be charged for permits under this section.

583

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 101 of 268

## Sec. 134-3   PUBLIC SAFETY AND INTERNAL SECURITY

Any person who violates this section shall be fined not more than $500 or imprisoned not more than one year, or both. [L Sp 1933, c 26, §4; RL 1935, §2542; am L 1939, c 104, § 7; am L Sp 1941, c 78, §2; am L 1943, c 62, §21 and c 64, §22; RL 1945, §7183; am L 1949, c 192, §1; am L Sp 1949, c 24, § 1; am L 1951, c 304, §1; am L 1953, c 262, §1; RL 1955, § 157-3; am L Sp 1959 2d, c 1, §13; am L 1961, c 14, §2]

**§134-4  Transfer of rifles and shotguns.** No transfer of any rifle or shotgun having a barrel length of eighteen inches or over, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, shall be made in any event to any person under the age of twenty years, and no person under the age of twenty years shall possess any such rifle or shotgun, except as provided by section 134-5.

It shall be unlawful for any person to own or possess such rifle, unless he is a citizen of the United States, or an alien who has procured a hunting license under sections 191-1 to 191-6 and a firearms permit under section 134-3.

Any person who violates this section shall be fined not more than $500 or imprisoned not more than one year, or both. [L 1951, c 304, §2; am L 1955, c 68, §1; RL 1955, §157-4; am L 1961, c 14, §3]

**§134-5  Possession by licensed hunters and minors.** Any person of the age of sixteen years or over, and any person under the age of sixteen years while accompanied by an adult, who has procured a hunting license under sections 191-1 to 191-6, may, while actually engaged in hunting or while going to and from the place of hunting, or while actually engaged in target shooting upon a target range, carry and use any lawfully acquired rifle or shotgun and suitable ammunition therefor. [L Sp 1933, c 26, §5; RL 1935, §2543; RL 1945, §7184; am L 1951, c 304, §3; RL 1955, §157-5]

#### Cross References

Issuance of hunting licenses, see §191-2.

**§134-6  Place to keep firearms; loaded firearms, when prohibited.** Except as provided in sections 134-5 and 134-9, the possession of all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn, but it shall be lawful to carry firearms or ammunition, or both, in a wrapper or other suitable container from the place of purchase to the purchaser's home, place of business, or place of sojourn, or between these places upon change of place of business, abode, or sojourn, or between these places and a place of repair or a target range.

It shall be unlawful for any person to have in his possession or to carry on any public highway any firearm loaded with ammunition; provided that the provisions of this paragraph shall not apply to any person who has in his possession or carries a pistol or revolver and

584

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 102 of 268

FIREARMS AND AMMUNITION                Sec. 134-9

ammunition therefor in accordance with a license or permit issued, as provided in section 134-9. [L Sp 1933, c 26, pt of §6; RL 1935, §2544; RL 1945, § 7185; RL 1955, §157-6; am L 1957, c 300, §1]

§134-7  Ownership or possession by fugitive from justice or by person convicted of certain crimes prohibited; penalty. (a) No person who is a fugitive from justice shall own or have in his possession or under his control any firearm or ammunition therefor. As used in this section the term "fugitive from justice" means any person who has fled from any state, territory, the District of Columbia, or possession of the United States to avoid prosecution for a crime of violence or to avoid giving testimony in any criminal proceeding.

(b) No person who has been convicted in this State or elsewhere, of having committed or attempted a crime of violence, or of the illegal use, possession, or sale of narcotics, shall own, or have in his possession, or under his control any firearm or ammunition therefor.

(c) Any person violating this section or section 134-6 shall be fined not more than $1,000 or imprisoned not more than one year, or both. [L Sp 1933, c 26, pt of §6; RL 1935, §2545; RL 1945, § 7186; am L 1951, c 253, §1; RL 1955, §157-7; am L 1961, c 15, §1]

§134-8  Ownership, etc., of machine guns, automatic rifles, silencers, etc., prohibited; penalty. The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any machine guns, submachine guns, automatic rifles, cannon, mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms, or any bomb or bombshell is prohibited. Any person violating this section shall be fined not more than $1,000 or imprisoned not more than one year, or both. [L Sp 1933, c 26, §7; RL 1935, §2546; RL 1945, §7187; RL 1955, §1'57-8]

§134-9  Permits to carry; penalty. In an exceptional case, when the applicant shows reason to fear injury to his person or property, the respective chiefs of police may grant a license to a citizen of the United States or a duly accredited official representative of a foreign nation, of the age of twenty years or more, to carry concealed on his person within the county where the license is granted, a pistol or revolver and ammunition therefor; or where the urgency of the need has been sufficiently indicated to the respective chiefs of police, they may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty years or more, who is engaged in the protection of life and property and not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry unconcealed on his person within the county where the license is granted, a pistol or revolver. Unless renewed, the license shall automatically become void at the expiration of one year from date of issue. No license shall be issued unless it appears that the applicant is a suitable person to be so licensed, and in no event to a person who is prohibited under section 134-7 from the ownership or possession of a fire-

585

2-ER-214

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 103 of 268

Sec. 134- 9   PUBLIC SAFETY AND INTERNAL SECURITY

arm, or a person adjudged insane or appearing to be mentally deranged.
No person shall carry concealed or unconcealed on his person a pistol
or revolver without being licensed so to do under this section or in
compliance with section 134-6.

For each license there shall be charged a fee of $10, which shall
be deposited in the treasury of the county in which the license is
granted.

Any person violating this section shall be fined not more than
$1,000 or imprisoned not more than one year, or both [L Sp 1933, c
26, §8; RL 1935, §2547; RL 1945, §7188; RL 1955, §157-9; am L
1961, c 163, §1]

**§134-10   Alteration of identification marks prohibited; penalty.** No
person shall wilfully alter, remove, or obliterate the name of the make,
model, manufacturer's number, or other mark of identity of any firearm
or ammunition. Possession of a firearm or ammunition upon which any
mark of identity has been altered, removed, or obliterated shall be
presumptive evidence that the possessor has altered, removed, or obli-
terated the same. Any person who violates this section shall be fined
not more than $500 or imprisoned not more than one year, or both. [L
Sp 1933, c 26, §9; RL 1935, §2548; RL 1945, §7189; RL 1955,
§157-10]

**§134-11   Exemptions.** Sections 134-6 to 134-9 shall not apply:

(1) To members of police departments, sheriffs, members of mili-
tary and naval forces of the State and of the United States,
mail carriers, and law enforcement officers;

(2) To regularly enrolled members of any organization duly author-
ized to purchase or receive the weapons from the United
States or from the State, provided the members are at, or
going to or from their places of assembly, or target practice;

(3) To persons employed by the State or subdivisions thereof or
the United States whose duties require them to be armed,
while the persons are in the performance of their respective
duties, or while going to and from their respective places of
duty;

(4) To police officers on official assignment in Hawaii from any
state which by compact permits police officers from Hawaii
while on official assignment in that state to carry firearms
without registration. The governor of the State or his duly
authorized representative may enter into compacts with other
states to carry out this section.

Nor shall sections 134-2 and 134-3 apply to such firearms or
ammunition as are a part of the official equipment of any federal
agency. [L Sp 1933, c 26, §11; RL 1935, §2549; am L 1939, c 10, §
1; RL 1945, §7190; RL 1955, §157-11; am L 1961, c 65, §§ 1, 2; am
L 1963, c 85, §3]

**§134-12   Firearms forfeited when.** All firearms or ammunition car-

586

2-ER-215

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 104 of 268

FIREARMS AND AMMUNITION          Sec. 134-32

ried or possessed contrary to law shall be forfeited to the State and shall be destroyed or retained by the chief of police of any county, for use by and under the control of the police department in whose jurisdiction they are forfeited. [L Sp 1933, c 26, §12; RL 1935, §2550; am L 1939, c 104, § 7; am L Sp 1941, c 36, §1; am L 1943, c 62, §21 and c 64, § 22; RL 1945, §7191; RL 1955, §157-12]

§134-13  Revocation of permits. All permits and licenses provided for under this part may be revoked, for good cause, by the issuing authority or by the judge of any court. [L Sp 1933, c 26, §13; RL 1935, §2551; RL 1945, §7192; RL 1955, §157-13]

§134-14  Report. Within ten days after the last day of each month each of the authorities herein authorized to issue or revoke permits and licenses shall make a report to the department of the attorney general as of the last day of the preceding month of all permits and licenses issued or revoked by him. The report shall be in such manner and in such form as the department may prescribe. [L Sp 1933, c 26, §14; RL 1935, §2552; am L Sp 1941, c 78, §3; RL 1945, §7193; RL 1955, §157-14; am L Sp 1959 2d, c 1, §13]

§134-15  Penalty for falsification. If any person, in complying with any of the requirements of this part, gives false information, or offers false evidence of his identity, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. [L Sp 1933, c 26, §15; RL 1935, §2553; RL 1945, §7194; RL 1955, §157-15]

### PART II. FIREARMS, DEALERS' LICENSES

§134-31  License to sell and manufacture firearms; fee. The annual fee for a license to sell and manufacture firearms for sale in the State either at wholesale or retail, shall be $10. [L 1921, c 13, pt of §1; RL 1925, §2033; RL 1935, §2554; RL 1945, §7195; am L 1953, c 155, §1 (a); RL 1955, §157-30]

§134-32  License to sell and manufacture firearms; conditions. Every license issued pursuant to this part shall be issued and shall be regarded as having been accepted by the licensee subject to the following conditions:
  (1) That the licensee shall at all times comply with all provisions of law relative to the sale of firearms.
  (2) That the license may during any time of national emergency or crisis, as defined in section 134-34, be canceled or suspended.
  (3) That all firearms in the possession and control of any licensee may at any time of national emergency or crisis, as defined in section 134-34, be seized and held in possession or purchased by or on the order of the governor until such time as the national emergency or crisis has passed, or until such time as the licensee and the government of the United States or the

587

2-ER-216

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 105 of 268

Sec. 134-32   PUBLIC SAFETY AND INTERNAL SECURITY

government of the State may agree upon some other disposition of the same. [L 1921, c 13, pt of §1; RL 1925, §2034; RL 1935, §2555; RL 1945, §7196; am L 1953, c 155, §1 (b); RL 1955, §157-31]

§134-33  **Punishment for violations of section 134-32.** Any person who manufactures or sells any firearms within the State without having a valid license so to do, or who being a holder of a license violates any of the terms or conditions of the same, shall be fined not less than $100 nor more than $1,000 or imprisoned not less than three months nor more than one year. [L 1921, c 13, pt of §1; RL 1925, §2036; RL 1935, § 2557; RL 1945, §7198; am L 1953, c 155, §1 (c); am L 1955, c 54, §2; RL 1955, §157-33]

§134-34  **National emergency, when.** A national emergency or crisis shall be deemed to have arisen when the governor, the commanding general of the United States Army, Pacific, and the commandant of the 14th Naval District and Hawaiian Sea Frontier have, in the exercise of their discretion, so determined. [L 1921, c 13, pt of §1; RL 1925, §2035; RL 1935, §2556; RL 1945, §7197; RL 1955, §157-32]

2-ER-217

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 106 of 268

# SESSION LAWS

OF

# HAWAII

PASSED BY THE

## FOURTEENTH STATE LEGISLATURE

---

## REGULAR SESSION
### 1988

Convened on Wednesday, January 20
and
Adjourned sine die on Wednesday, April 27

---

## SPECIAL SESSION
## 1988

Convened on Friday, May 20
and
Adjourned sine die on Monday, May 23

---

Published by Authority of the
Revisor of Statutes
Honolulu, Hawaii

LIBRARY
ATTORNEY GENERAL

# EXHIBIT "K"

2-ER-218

ACT 275

(h) Upon the filing of the application in subsection (g), the department of health shall furnish the applicant with a copy of the completed forms and, if available, the abstract of pertinent information from the natural mother's medical records. The department is authorized to disclose the information under this subsection without prior court approval, notwithstanding section 338-20(e).

Nothing in this section shall be construed or applied in any manner to require any public agency or child placing organization to reveal the identities of the natural parents without their consents."

SECTION 2. Section 338-20, Hawaii Revised Statutes, is amended by amending subsection (e) to read as follows:

"(e) Such sealed documents, except for the information form provided for in section 578-___, may be opened by the department only by an order of a court of record. Upon receipt of a certified copy of a court order setting aside a decree of adoption, the department shall restore the original certificate to its original place in the files."

SECTION 3. New statutory material is underscored.[1]

SECTION 4. This Act shall take effect upon its approval.

(Approved June 13, 1988.)

Note

1. Edited pursuant to HRS §23G-16.5.

ACT 275                                                    S.B. NO. 2441

A Bill for an Act Relating to Firearms and Ammunition.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. The purpose of this Act is to clarify and improve the existing language of the Firearms, Ammunition and Dangerous Weapons Act, Chapter 134, part I, Hawaii Revised Statutes, General Regulations.

SECTION 2. Chapter 134, Hawaii Revised Statutes, is amended by adding a new part to read as follows:

## "PART I. GENERAL REGULATIONS

§134-1 **Definitions.** As used in this chapter, unless the context indicates otherwise:

"Acquire" means gain ownership of.

"Antique pistol or revolver" means any pistol or revolver manufactured before 1899 and any replica thereof if it either is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or is designed or redesigned to use rimfire or conventional centerfire fixed ammunition that is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

"Chief of police" means the chief of police of the counties of Hawaii, Maui, Kauai, or the city and county of Honolulu.

"Crime of violence" means any offense, as defined in Title 37, that involves injury or threat of injury to the person of another.

510

2-ER-219

ACT 275

"Electric gun" means any portable device that is electrically operated to project a missile or electromotive force. It does not include any electric livestock prod used in animal husbandry.

"Firearm" means any weapon, for which the operating force is an explosive, including, but not limited to, pistols, revolvers, rifles, shotguns, machine guns, automatic rifles, noxious gas projectors, mortars, bombs, cannon, and submachine guns.

"Fugitive from justice" means any person who has fled from any state, territory, the District of Columbia, or possession of the United States to avoid prosecution for a felony or to avoid giving testimony in any criminal proceeding.

"Pistol" or "revolver" means any firearm of any shape with a barrel less than sixteen inches in length and capable of discharging loaded ammunition or any noxious gas.

§134-2 Permits to acquire. (a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section; provided that when title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of the firearm.

(b) The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, social security number, and information regarding the applicant's mental health history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and photograph are already on file with the department, these may be waived.

(c) An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental-health of the applicant. The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State.

(d) The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of eighteen years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II.

(e) The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of the Treasury, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to a first time applicant earlier than ten calendar days after the date of application; provided that a permit shall be issued or the application denied before

511

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 108 of 268

Case 1:19-cv-00578-JMS-RT   Document 01-12   Filed 05/12/20   Page 4 of 9   PageID #:
Case 1:19-cv-00578-JMS-RT   Document 92-12   Filed 05/28/21   Page 4 of 9   PageID #:
792

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 109 of 268

ACT 275

the sixteenth day from the date of application. Persons who have previously obtained permits subject to the ten-day waiting period required by this subsection and who make a subsequent application within one year of the issue date of the first permit may be issued permits in less than ten days. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7.

(f) In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

(g) No person shall sell, give, lend, or deliver into the possession of another any firearm except in accordance with this chapter.

(h) No fee shall be charged for permits under this section.

§134-3 Registration, mandatory, exceptions. (a) Every person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within three days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, such person's residence or, if there is neither a place of business nor residence, the person's place of sojourn; provided that no alien shall be allowed to bring a firearm of any description into the State.

(b) Every person who acquires a pistol or revolver pursuant to section 134-2 shall register the pistol or revolver in the manner prescribed by this section within five days of acquisition. The registration shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant.

(c) Dealers licensed under section 134-31 or dealers licensed by the United States Department of the Treasury shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration.

(d) Registration shall not be required for:

(1)   Any device designed to fire loose black powder;

512

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 110 of 268

ACT 275

(2)  Any device not designed to fire or made incapable of being readily restored to a firing condition; or

(3)  All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, and Firearms of the U.S. Department of the Treasury pursuant to Title 27, Code of Federal Regulations.

(e) No fee shall be charged for the registration.

**§134-4 Transfer, possession of firearms.** (a) No transfer of any rifle having a barrel length of sixteen inches or over or any shotgun having a barrel length of eighteen inches or over, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner, or unregistered shall be made to any person under the age of eighteen years, except as provided by section 134-5.

(b) No person shall possess any firearm that is owned by another, regardless of whether the owner has consented to possession of the firearm, without a permit from the chief of police of the appropriate county, except as provided in subsection (c) and section 134-5.

(c) Any lawfully acquired rifle or shotgun may be lent to an adult for use within the State for a period not to exceed fifteen days without a permit; provided that where the rifle or shotgun is to be used outside of the State, the loan may be for a period not to exceed seventy-five days.

(d) No person shall knowingly lend a firearm to any person who is prohibited from ownership or possession of a firearm under section 134-7.

**§134-5 Possession by licensed hunters and minors; target shooting.** (a) Any person of the age of sixteen years or over or any person under the age of sixteen years while accompanied by an adult, may carry and use any lawfully acquired rifle or shotgun and suitable ammunition while actually engaged in hunting or target shooting or while going to and from the place of hunting or target shooting; provided that the person has procured a hunting license under chapter 183D, part II. A hunting license shall not be required for persons engaged in target shooting.

(b) A permit shall not be required when any lawfully acquired firearm is lent to a person, including a minor, upon a target range or similar facility for purposes of target shooting; provided that the period of the loan does not exceed the time in which the person actually engages in target shooting upon the premises.

**§134-6 Place to keep firearms; loaded firearms, when prohibited; penalty.** (a) Except as provided in sections 134-5 and 134-9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. ''Enclosed container'' means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

(b) It shall be unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition; provided that the provision of this paragraph shall not apply to any person who has in the person's possession or carries a pistol or revolver and ammunition therefor in accordance with a license issued as provided in section 134-9.

513

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 111 of 268

**ACT 275**

(c) Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class C felony. Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a misdemeanor.

**§134-7 Ownership or possession prohibited, when; penalty.** (a) No person who is a fugitive from justice shall own, possess, or control any firearm or ammunition therefor.

(b) No person who is under indictment for, or has waived indictment for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

(c) No person who:
(1) Is or has been under treatment for addiction to any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;
(2) Has been committed pursuant to sections 333F-9 or 333F-10;
(3) Has been acquitted of a crime on the grounds of mental disease, disorder, or defect pursuant to section 704-411;
(4) Is or has been under treatment for significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes; or
(5) Is less than 25 years old and has been adjudicated by the family court to have committed a crime of violence that constitutes a felony offense under Title 37, the Hawaii Penal Code;
shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to have been cured of the addiction, mental disease, disorder, or defect.

(d) No minor who:
(1) Is or has been under treatment for addiction to any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;
(2) Is a fugitive from justice;
(3) Has been adjudicated by the family court to have committed a crime of violence that constitutes a felony offense under Title 37, the Hawaii Penal Code; or
(4) Has been determined not to have been responsible for a criminal act or has been committed to any institution on account of a mental disease, disorder, or defect;
shall own, possess, or control any firearm or ammunition therefor, unless the minor has been medically documented to have been cured of the addiction, mental disease, disorder, or defect.

For the purposes of enforcing this section, and notwithstanding section 571-84 or any other law to the contrary, any agency within the State shall make its records relating to family court adjudications available to law enforcement officials.

(e) Any person disqualified from ownership, possession, or control of firearms and ammunition by this chapter shall dispose of all firearms and ammunition in compliance with this chapter.

(f) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), or (e) shall be guilty of a misdemeanor.

514

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 112 of 268

ACT 275

**§134-8 Ownership, etc., of machine guns, automatic rifles, silencers, etc., prohibited; penalty.** (a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: machine guns; submachine guns; automatic rifles; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannon; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshell, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating or designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

(b) Any person violating this section shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation.

**§134-9 Licenses to carry.** (a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty years or more or to a duly accredited official representative of a foreign nation of the age of twenty years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted. Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted. Unless renewed, the license shall expire one year from the date of issue.

(b) The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:
(1)  Be qualified to use the firearm in a safe manner;
(2)  Appear to be a suitable person to be so licensed;
(3)  Not be prohibited under section 134-7 from the ownership or possession of a firearm; and
(4)  Not have been adjudged insane or not appear to be mentally deranged.

(c) No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with section 134-6.

(d) A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.

**§134-10 Alteration of identification marks prohibited.** No person shall willfully alter, remove, or obliterate the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition. Possession of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be presumptive evidence that the possessor has altered, removed, or obliterated the mark of identity.

**§134-11 Exemptions.** (a) Sections 134-6 to 134-9 shall not apply:
(1)  To members of police departments, sheriffs, and law enforcement officers;

515

**ACT 275**

(2) To members of the armed forces of the State and of the United States and mail carriers while performing duties that require them to be armed;

(3) To regularly enrolled members of any organization duly authorized to purchase or receive weapons from the United States or from the State; provided the members are at or going to and from their places of assembly or target practice;

(4) To persons employed by the State, or subdivisions thereof, or the United States while in the performance of their respective duties or while going to and from their respective places of duty if their duties require them to be armed;

(5) To aliens employed by the State, or subdivisions thereof, or the United States while in the performance of their respective duties or while going to and from their respective places of duty if their duties require them to be armed;

(6) To police officers on official assignment in Hawaii from any state which by compact permits police officers from Hawaii while on official assignment in that state to carry firearms without registration. The governor of the State or the governor's duly authorized representative may enter into compacts with other states to carry out this section.

(b) Sections 134-2 and 134-3 shall not apply to such firearms or ammunition that are a part of the official equipment of any federal agency.

**§134-12 Firearms forfeited, when.** All firearms or ammunition carried or possessed contrary to law shall be forfeited to the State and shall be destroyed or, if not destroyed retained by the chief of police of any county for use by and under control of the police department in whose jurisdiction they are forfeited.

**§134-13 Revocation of permits.** All permits and licenses provided for under this part may be revoked, for good cause, by the issuing authority or by the judge of any court.

**§134-14 Report.** Within ten days after the last day of each month, each of the authorities authorized in this chapter to issue or revoke permits and licenses shall make a report to the department of the attorney general of all permits and licenses issued or revoked by the authority as of the last day of the preceding month. The report shall be in the manner and form as the attorney general may prescribe.

**§134-15 Restriction of materials for manufacture of pistols or revolvers.** (a) It shall be unlawful for any person, including a licensed manufacturer, licensed importer, or licensed dealer, to possess, sell, or deliver any pistol or revolver the frame or receiver of which is a die casting of zinc alloy which has a melting temperature of less than 800 degrees Fahrenheit.

(b) This section shall not apply to any pistol or revolver duly registered prior to July 1, 1975 pursuant to section 134-3 or to any antique pistol or revolver.

**§134-16 Restriction on possession, sale, gift, or delivery of electric guns.** (a) It shall be unlawful for any person, including a licensed manufacturer, licensed importer, or licensed dealer, to possess, offer for sale, hold for sale, sell, give, lend, or deliver any electric gun.

(b) Any electric gun in violation of subsection (a) shall be confiscated and disposed of by the chief of police.

**§134-17 Penalties.** (a) If any person gives false information or offers false evidence of the person's identity in complying with any of the requirements of this part, that person shall be guilty of a misdemeanor.

516

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 113 of 268

ACT 276

(b) Any person who violates section 134-3(a) shall be guilty of a petty misdemeanor.

(c) Any person who violates section 134-2, 134-3(b), 134-4, 134-10, 134-15, or 134-16(a) shall be guilty of a misdemeanor.

(d) Any person who violates section 134-9 shall be guilty of a class C felony.''

SECTION 3. Section 134-32, Hawaii Revised Statutes, is amended to read as follows:

''**§134-32 License to sell and manufacture firearms; conditions.** Every license issued pursuant to this part shall be issued and shall be regarded as having been accepted by the licensee subject to the following conditions:

(1) That the licensee shall at all times comply with all provisions of law relative to the sale of firearms.

(2) That the license may during any time of national emergency or crisis, as defined in section 134-34, be canceled or suspended.

(3) That all firearms in the possession and control of any licensee may at any time of national emergency or crisis, as defined in section 134-34, be seized and held in possession or purchased by or on the order of the governor until such time as the national emergency or crisis has passed, or until such time as the licensee and the government of the United States or the government of the State may agree upon some other disposition of the same.

(4) That all firearms in the possession and control of the licensee or registered pursuant to section 134-3(e) by the licensee shall be subject to physical inspection by the chief of police of each county during normal business hours at the licensee's place of business.''

SECTION 4. Chapter 134, part I, Hawaii Revised Statutes, is repealed.

SECTION 5. If any other Act passes during this Regular Session of 1988 amending part I of chapter 134, Hawaii Revised Statutes, the Act shall be appropriately placed in the recodification of chapter 134, Hawaii Revised Statutes, enacted by this Act.

SECTION 6. This Act shall take effect upon its approval.

(Approved June 13, 1988.)

## ACT 276

S.B. NO. 2462

A Bill for an Act Relating to Protection of Streams.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Section 174C-31, Hawaii Revised Statutes, is amended by amending subsection (c) to read as follows:

''(c) To prepare the water resources protection and quality plan, the commission shall:

(1) [study] Study and inventory the existing water resources of the State and the means and methods of conserving and augmenting such water resources;

517

2-ER-226

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 115 of 268

# HAWAII REVISED STATUTES

## COMPRISING THE STATUTES
## OF THE STATE OF HAWAII,
## CONSOLIDATED, REVISED, AND ANNOTATED

VOLUME 3

2011 REPLACEMENT

(Including Acts of the 2011 Regular Session)

TITLES 10-12, CHAPTERS 121-200D



PUBLISHED BY AUTHORITY

EXHIBIT "L"

2-ER-227

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 116 of 268

**134-1**     **PUBLIC SAFETY AND INTERNAL SECURITY**

"Semiautomatic" means the mode of operation by which a firearm uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of a trigger. [L 1988, c 275, pt of §2 and am c 271, §2; am L 1989, c 263, §§2, 3; am L 1990, c 195, §1; am L 1992, c 286, §1; am L 1994, c 204, §2; am L 2001, c 252, §2]

**§134-2   Permits to acquire.**   (a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of a firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequested firearm directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section.

(b)   The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and photograph are already on file with the department, these may be waived.

(c)   An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental health of the applicant. The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State.

(d)   The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any provision of the law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

162

2-ER-228

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 117 of 268

FIREARMS AND DANGEROUS WEAPONS          134-2

(e)   The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant who is a citizen of the United States by using the National Instant Criminal Background Check System before any determination to issue a permit or to deny an application is made. If the applicant is not a citizen of the United States and may be eligible to acquire a firearm under this chapter, the issuing authority shall perform an inquiry on the applicant, by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases, before any determination to issue a permit or to deny an application is made.

(f)   In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority which issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number as applicable.

(g)   Effective July 1, 1995, no person shall be issued a permit under this section for the acquisition of a pistol or revolver unless the person, at any time prior to the issuance of the permit, has completed:

163

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 118 of 268

134-2     PUBLIC SAFETY AND INTERNAL SECURITY

(1) An approved hunter education course as authorized under section 183D-28;

(2) A firearms safety or training course or class available to the general public offered by a law enforcement agency of the State or of any county;

(3) A firearms safety or training course offered to law enforcement officers, security guards, investigators, deputy sheriffs, or any division or subdivision of law enforcement or security enforcement by a state or county law enforcement agency; or

(4) A firearms training course or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least two hours of firing training at a firing range and a total of at least four hours of classroom instruction, which may include a video, that focuses on:

   (A) The safe use, handling, and storage of firearms and firearm safety in the home; and

   (B) Education on the firearm laws of the State.

An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph.

(h) No person shall sell, give, lend, or deliver into the possession of another any firearm except in accordance with this chapter.

(i) No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee actually charged by the Federal Bureau of Investigation to the issuing police department for a fingerprint check in connection with that application or permit. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued. [L 1988, c 275, pt of §2; am L 1992, c 287, §2; am L 1994, c 204, §3; am L 1995, c 11, §1; am L 1996, c 200, §§2, 3; am L 1997, c 53, §2 and c 278, §1; am L 2006, c 27, §1; am L 2007, c 9, §6]

**[§134-2.5 Permits for motion picture films or television program production.]** (a) Upon a finding that public safety is not endangered, the chief of police of the appropriate county may issue permits, initially valid for a period of one year and renewable annually thereafter, for the possession, transportation, or use, with blank cartridges, of firearms or explosives solely as props for motion picture films or television program production upon a showing that good cause exists for the issuance of a permit to the applicant and upon sufficient proof of a federal firearms license and a state film permit required under section 201-3. No permit shall be issued to a person who is under twenty years of age or who is disqualified under section 134-7.

(b) Applications for permits shall be in writing, signed by the individual applicant or by a member or officer qualified to sign if the applicant is a firm or corporation, and shall state the name, business in which engaged, business address, and a full description of the use to which the firearms or explosives are to be put, including the names of the persons who will actually use the props. The application shall also require the fingerprinting and photographing of the

164

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 119 of 268

FIREARMS AND DANGEROUS WEAPONS          134-3

applicant. Applications and permits shall be uniform throughout the State on forms prescribed by the attorney general.

(c)   The attorney general shall establish rules pursuant to chapter 91 concerning security requirements for storing and transporting firearms or explosives for which permits are issued. Permits shall be issued only upon a showing of the applicant's ability to meet these security requirements.

(d)   A fee of $50 should be charged for each permit issued under this section.

(e)   Every applicant to whom a permit is issued shall keep it on the applicant's person or at the place where the firearms or explosives are stored. The permit, firearms and explosives, shall be available for inspection by any law enforcement officer or any other person designated by the respective chief of police.

(f)   Every firearm or explosive for which a permit is issued shall bear a unique identifying number. If the firearm or explosive does not bear a unique identifying number, the chief of police of the appropriate county shall assign a number that shall be stamped or placed thereon.

(g)   The chief of police of the respective county shall revoke permits issued under this section any time it appears that the holder of the permit has used the firearms or explosives for purposes other than those allowed by the permit or that the holder of the permit has not exercised great care in retaining custody of any firearms or explosive possessed under the permit. [L 1988, c 272, §3]

**§134-3   Registration, mandatory, exceptions.**   (a)  Every person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within three days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:

(1)   A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve permit issued pursuant to section 183D-34;

(2)   A written document indicating the person has been invited to the State to shoot on private land; or

(3)   Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

(b)   Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has no serial number, the permit number shall be entered in the space provided for the serial number, and the permit number shall be engraved upon the receiver portion

165

2-ER-231

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 120 of 268

**134-3**     **PUBLIC SAFETY AND INTERNAL SECURITY**

of the firearm prior to registration. All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required for processing the registration or as may be required by a law enforcement agency for the lawful performance of its duties or as may be required by order of a court.

(c)   Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration.

(d)   Registration shall not be required for:

(1)   Any device that is designed to fire loose black powder or that is a firearm manufactured before 1899;

(2)   Any device not designed to fire or made incapable of being readily restored to a firing condition; or

(3)   All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, and Firearms of the United States Department of Justice pursuant to Title 27, Code of Federal Regulations.

(e)   No fee shall be charged for the registration. [L 1988, c 275, pt of §2; am L 1994, c 204, §4; am L 1999, c 217, §2; am L 2007, c 9, §7]

**[§134-3.5]  Disclosure for firearm permit and registration purposes.**  A health care provider or public health authority shall disclose health information, including protected health care information, relating to an individual's mental health history, to the appropriate county chief of police in response to a request for the information from the chief of police; provided that:

(1)   The information shall be used only for the purpose of evaluating the individual's fitness to acquire or own a firearm; and

(2)   The individual has signed a waiver permitting release of the health information for that purpose. [L 2001, c 252, §1]

**§134-4   Transfer, possession of firearms.**  (a)  No transfer of any rifle having a barrel length of sixteen inches or over or any shotgun having a barrel length of eighteen inches or over, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner, or unregistered shall be made to any person under the age of eighteen years, except as provided by section 134-5.

(b)   No person shall possess any firearm that is owned by another, regardless of whether the owner has consented to possession of the firearm, without a permit from the chief of police of the appropriate county, except as provided in subsection (c) and section 134-5.

(c)   Any lawfully acquired rifle or shotgun may be lent to an adult for use within the State for a period not to exceed fifteen days without a permit; provided that where the rifle or shotgun is to be used outside of the State, the loan may be for a period not to exceed seventy-five days.

(d)   No person shall knowingly lend a firearm to any person who is prohibited from ownership or possession of a firearm under section 134-7.

(e)   After July 1, 1992, no person shall bring or cause to be brought into the State an assault pistol. No assault pistol may be sold or transferred on or after July 1, 1992, to anyone within the State other than to a dealer licensed under section 134-32 or the chief of police of any county except that any person

166

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 121 of 268

who obtains title by bequest or intestate succession to an assault pistol registered within the State shall, within ninety days, render the weapon permanently inoperable, sell or transfer the weapon to a licensed dealer or the chief of police of any county, or remove the weapon from the State. [L 1988, c 275, pt of §2; am L 1992, c 286, §2]

Case Notes

Where defendant's conviction and sentence under §708-840 was an included offense under §134-6(a) and defendant's convictions under both §708-840 and subsection (a) violated §701-109(1)(a), defendant's conviction and sentence under §708-840 reversed. 91 H. 33, 979 P.2d 1059.

**§134-5  Possession by licensed hunters and minors; target shooting; game hunting.**  (a) Any person of the age of sixteen years, or over or any person under the age of sixteen years while accompanied by an adult, may carry and use any lawfully acquired rifle or shotgun and suitable ammunition while actually engaged in hunting or target shooting or while going to and from the place of hunting or target shooting; provided that the person has procured a hunting license under chapter 183D, part II. A hunting license shall not be required for persons engaged in target shooting.

(b)  A permit shall not be required when any lawfully acquired firearm is lent to a person, including a minor, upon a target range or similar facility for purposes of target shooting; provided that the period of the loan does not exceed the time in which the person actually engages in target shooting upon the premises.

(c)  A person may carry unconcealed and use a lawfully acquired pistol or revolver while actually engaged in hunting game mammals, if that pistol or revolver and its suitable ammunition are acceptable for hunting by rules adopted pursuant to section 183D-3 and if that person is licensed pursuant to part II of chapter 183D. The pistol or revolver may be transported in an enclosed container, as defined in section 134-25 in the course of going to and from the place of the hunt, notwithstanding section 134-26. [L 1988, c 275, pt of §2; am L 1997, c 254, §§1, 4; am L 2000, c 96, §1; am L 2002, c 79, §1; am L 2006, c 66, §2]

Case Notes

As question of whether defendant possessed a hunting license under this section posed a fact peculiarly within defendant's knowledge, and lack of a hunting license is not a material element of §134-6, prosecution was not required to prove that defendant did not have a hunting license pursuant to this section. 93 H. 87, 997 P.2d 13.

**§134-6  REPEALED.**  L 2006, c 66, §6.

**§134-7  Ownership or possession prohibited, when; penalty.**  (a) No person who is a fugitive from justice or is a person prohibited from possessing firearms or ammunition under federal law shall own, possess, or control any firearm or ammunition therefor.

(b)  No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

(c)  No person who:
(1)  Is or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug,

167

2-ER-233

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 122 of 268

134-7   PUBLIC SAFETY AND INTERNAL SECURITY

intoxicating compound as defined in section 712-1240, or intoxicating liquor;

(2)   Has been acquitted of a crime on the grounds of mental disease, disorder, or defect pursuant to section 704-411; or

(3)   Is or has been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes;

shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect.

(d)   No person who is less than twenty-five years old and has been adjudicated by the family court to have committed a felony, two or more crimes of violence, or an illegal sale of any drug shall own, possess or control any firearm or ammunition therefor.

(e)   No minor who:

(1)   Is or has been under treatment for addiction to any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;

(2)   Is a fugitive from justice; or

(3)   Has been determined not to have been responsible for a criminal act or has been committed to any institution on account of a mental disease, disorder, or defect;

shall own, possess, or control any firearm or ammunition therefor, unless the minor has been medically documented to be no longer adversely affected by the addiction, mental disease, disorder, or defect.

For the purposes of enforcing this section, and notwithstanding section 571-84 or any other law to the contrary, any agency within the State shall make its records relating to family court adjudications available to law enforcement officials.

(f)   No person who has been restrained pursuant to an order of any court, including an ex parte order as provided in this subsection, from contacting, threatening, or physically abusing any person, shall possess, control, or transfer ownership of any firearm or ammunition therefor, so long as the protective order, restraining order, or any extension is in effect, unless the order, for good cause shown, specifically permits the possession of a firearm and ammunition. The restraining order or order of protection shall specifically include a statement that possession, control, or transfer of ownership of a firearm or ammunition by the person named in the order is prohibited. Such person shall relinquish possession and control of any firearm and ammunition owned by that person to the police department of the appropriate county for safekeeping for the duration of the order or extension thereof. In the case of an ex parte order, the affidavit or statement under oath that forms the basis for the order shall contain a statement of the facts that support a finding that the person to be restrained owns, intends to obtain or to transfer ownership of, or possesses a firearm, and that the firearm may be used to threaten, injure, or abuse any person. The ex parte order shall be effective upon service pursuant to section 586-6. At the time of service of a restraining order involving firearms and ammunition issued by any court, the police officer may take custody of any and all firearms and ammunition in plain sight, those discovered pursuant to a consensual search, and those firearms surrendered by the person restrained. If the person restrained is the registered owner of a firearm and knows the location of the firearm, but refuses

168

to surrender the firearm or refuses to disclose the location of the firearm, the person restrained shall be guilty of a misdemeanor. In any case, when a police officer is unable to locate the firearms and ammunition either registered under this chapter or known to the person granted protection by the court, the police officer shall apply to the court for a search warrant pursuant to chapter 803 for the limited purpose of seizing the firearm and ammunition.

For the purposes of this subsection, good cause shall not be based solely upon the consideration that the person subject to restraint pursuant to an order of any court, including an ex parte order as provided for in this subsection, is required to possess or carry firearms or ammunition during the course of the person's employment. Good cause consideration may include but not be limited to the protection and safety of the person to whom a restraining order is granted.

(g)  Any person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3.

(h)  Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor. [L 1988, c 275, pt of §2; am L 1990, c 191, §1; am L 1993, c 215, §1; am L 1994, c 204, §§6, 7; am L 1995, c 189, §§2, 26; am L 1998, c 133, §5; am L 1999, c 297, §1; am L 2000, c 127, §2; am L 2004, c 4, §1; am L 2006, c 27, §2]

Law Journals and Reviews

Empowering Battered Women: Changes in Domestic Violence Laws in Hawai'i. 17 UH L. Rev. 575.

Case Notes

Felon convicted of possessing firearm properly sentenced under this section instead of §706-610. 68 H. 622, 725 P.2d 799.

Defendant exercised control when defendant sold gun. 70 H. 219, 768 P.2d 230.

Previously convicted felon must have intentionally, knowingly, or recklessly possessed or controlled the firearm. 70 H. 509, 778 P.2d 704.

Defendant may not assert the invalidity of the prior conviction as a defense under this section. 71 H. 101, 784 P.2d 872.

Convicted person may not assert the invalidity of the prior offense as a defense to this section. 71 H. 111, 784 P.2d 873.

Subsection (b) applies to felons who are convicted through a nolo contendere plea. 83 H. 507, 928 P.2d 1.

Where defendant's convictions were premised upon the use of "any firearm" and language of indictments and trial court's instructions "to wit, a semiautomatic pistol" did not alter the statutory elements of §§708-840, 134-6, or this section, trial court's error of not providing definition of "semiautomatic firearm" did not warrant reversal of convictions for first degree robbery, carrying or use of firearm in commission of separate felony, or felon in possession of firearm. 91 H. 33, 979 P.2d 1059.

For the purposes of subsection (b), "possession" must be analyzed under a two-pronged analysis: (1) the voluntary act of "possession" of an object "itself" is, by way of §702-202, satisfied where an individual acts knowingly with respect to his or her conduct; and (2) the requisite state of mind with respect to the attendant circumstances—i.e., the particular qualities of the object that make it illegal to possess it—is, by way of §702-204, satisfied by a reckless state of mind. 93 H. 87, 997 P.2d 13.

Where one bag containing a gun was found on truck seat next to defendant and another bag with two guns was found on truck floor where defendant had been sitting, jury could have inferred from totality of circumstances that defendant had the state of mind requisite to commit possession of a firearm and/or ammunition by a person convicted of certain crimes. 93 H. 87, 997 P.2d 13.

A person commits the offense of attempted prohibited possession of a firearm, pursuant to §705-500(1)(b) and (3), and subsection (b), if he or she intentionally engages in conduct that, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the offense of prohibited possession of a firearm. 93 H. 199, 998 P.2d 479.

As the offense of attempted prohibited possession of a firearm under this section does not include a result-of-conduct element and §705-500(2) does not therefore apply, trial court instruction erroneously defined the state of mind necessary to prove the offense of attempted prohibited possession of a firearm as something less than intentional, as required by §705-500(1)(b). 93 H. 199, 998 P.2d 479.

169

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 123 of 268

Case 1:19-cv-00578-JMS-RT   Document 92-13   Filed 05/28/20   Page 10 of 13   PageID #:

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 124 of 268

Pursuant to §§701-109(4)(b), 705-500(1)(b) and (3), and subsection (b), attempted prohibited possession of a firearm is an included offense of prohibited possession of a firearm. 93 H. 199, 998 P.2d 479.

Where defendant failed to carry defendant's burden of establishing that defendant's conduct —of possessing ammunition in violation of subsection (b), a class B felony involving conduct that had the potential for serious public safety consequences—was de minimis within the meaning of §702-236, appellate court's dismissal of trial court's granting of motion to dismiss charges as a de minimis infraction under §702-236 affirmed. 123 H. 329, 235 P.3d 325.

Requisite state of mind for a violation of subsection (b) is that of acting intentionally, knowingly, or recklessly; failure to instruct jury on state of mind element, as required by §701-114(1)(b), was prejudicial and not harmless error. 78 H. 422 (App.), 895 P.2d 173.

Where State failed to establish defendant's prior felony conviction and no lesser included offense of a felon in possession of a firearm or ammunition in chapter 134, defendant's convictions of being a felon in possession of a firearm and firearm ammunition under subsection (b) reversed. 82 H. 517 (App.), 923 P.2d 934.

Under subsection (b), multiple punishments are not authorized for violating the prohibition against possession of "any firearm or ammunition therefor"; thus, where defendant was already convicted of possessing a firearm, defendant could not be convicted for possession of ammunition loaded into that firearm. 89 H. 59 (App.), 968 P.2d 1070.

Although evidence that defendant had previously been convicted of a felony was relevant for purposes of this section, evidence that defendant may have received ineffective assistance of counsel during that prior felony trial would not have any bearing on the validity of that felony conviction; thus, trial court did not err in precluding evidence that defendant may have received ineffective assistance during prior trial. 90 H. 489 (App.), 979 P.2d 85.

Unless expressly permitted by the court, subsection (f) unqualifiedly prohibits a person subject to a chapter 586 order from possession and control of a firearm during the pendency of that order; this prohibition is effective irrespective of whether the respondent owned the firearms involved. 91 H. 438 (App.), 984 P.2d 1264.

Trial court erred in sentencing defendant to ten years of incarceration with a mandatory minimum term of ten years under §706-660.1(3)(c) as convicting defendant of being a felon in possession of a firearm pursuant to subsection (b) and sentencing defendant to a mandatory minimum term of imprisonment pursuant to §706-660.1(3)(c) essentially punished defendant twice for a single possession of a firearm; a rational interpretation of §706-660.1 is that the legislature did not intend its application for felonies where the entirety of the felonious conduct is the use or possession of a firearm. 107 H. 273 (App.), 112 P.3d 759.

In a prosecution of a felon under subsection (b) for possession of firearm ammunition, the State must prove, whether by direct or circumstantial evidence, that the ammunition was "actually loaded"; given detective's authoritative identification of the bullets as ammunition, and in the absence of evidence that the ammunition was not loaded or otherwise incapable of being fired, was substantial evidence that the ammunition was actually loaded. 108 H. 124 (App.), 117 P.3d 856.

Mentioned: 9 H. App. 333, 839 P.2d 1186.

**[§134-7.2]  Prohibition against seizure of firearms or ammunition during emergency or disaster; suspension of permit or license.**   (a) Notwithstanding any provision of chapter 128 or any other law to the contrary, no person or government entity shall seize or confiscate, under any civil defense, emergency, or disaster relief powers or functions conferred, or during any civil defense emergency period, as defined in section 128-2, or during any time of national emergency or crisis, as defined in section 134-34, any firearm or ammunition from any individual who is lawfully permitted to carry or possess the firearm or ammunition under part I of this chapter and who carries, possesses, or uses the firearm or ammunition in a lawful manner and in accordance with the criminal laws of this State.

(b)   Notwithstanding any provision of chapter 128 or any other law to the contrary, no person or government entity shall suspend, revoke, or limit, under any civil defense, emergency, or disaster relief powers or functions conferred, any lawfully acquired and maintained permit or license obtained under and in accordance with part I of this chapter.

(c)   For purposes of this section, "government entity" means any unit of government in this State, including the State and any county or combination of counties, department, agency, institution, board, commission, district, council, bureau, office, governing authority, or other instrumentality of state or county government, or corporation or other establishment owned, operated, or managed by or on behalf of this State or any county. [L 2010, c 96, §1]

170

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 125 of 268

**§134-7.3   Seizure of firearms upon disqualification.**  (a) If any applicant is denied a permit, the chiefs of police of the respective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition. If an applicant fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date notice was mailed, the chief of police may seize all firearms and ammunition.

(b)   Any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7 shall voluntarily surrender all firearms and ammunition to the chief of police where the person resides or dispose of all firearms and ammunition. If any person fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date of disqualification, the chief of police may seize all firearms and ammunition.

(c)   For the purposes of this section, "dispose" means selling the firearms to a gun dealer licensed under section 134-31, transferring ownership of the firearms to any person who meets the requirements of section 134-2, or surrendering all firearms to the chief of police where the person resides for storage or disposal; provided, for a person subject to section 134-7(f), "dispose" shall not include transferring ownership of the firearms to any person who meets the requirements of section 134-2.

(d)   The chief of police of the respective counties shall adopt procedures to implement and administer the provisions of this section by December 31, 2001. [L 2000, c 127, §1; am L 2004, c 4, §2]

**[§134-7.5]   Seizure of firearms in domestic abuse situations; requirements; return of.**  (a) Any police officer who has reasonable grounds to believe that a person has recently assaulted or threatened to assault a family or household member may seize all firearms and ammunition that the police officer has reasonable grounds to believe were used or threatened to be used in the commission of the offense. The police officer may seize any firearms or ammunition that are in plain view of the officer or were discovered pursuant to a consensual search, as necessary for the protection of the officer or any family or household member. Firearms seized under this section shall be taken to the appropriate county police department for safekeeping or as evidence.

(b)   Upon taking possession of a firearm or ammunition, the officer shall give the owner or person who was in lawful possession of the firearm or ammunition a receipt identifying the firearm or ammunition and indicating where the firearm or ammunition can be recovered.

(c)   The officer taking possession of the firearm or ammunition shall notify the person against whom the alleged assault or threatened assault was inflicted of remedies and services available to victims of domestic violence, including the right to apply for a domestic abuse restraining order.

(d)   The firearm or ammunition shall be made available to the owner or person who was in lawful possession of the firearm or ammunition within seven working days after the seizure when:

(1)   The firearm or ammunition are not retained for use as evidence;

(2)   The firearm or ammunition are not retained because they are possessed illegally;

(3)   The owner or person who has lawful possession of the firearm or ammunition is not restrained by an order of any court from possessing a firearm or ammunition; and

171

(4)   No criminal charges are pending against the owner or person who has lawful possession of the firearm or ammunition when a restraining order has already issued. [L 1996, c 201, §1]

**§134-8   Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties.** (a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

(b)   Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

(c)   The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

(d)   Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony. [L 1988, c 275, pt of §2; am L 1989, c 261, §6 and c 263, §4; am L 1992, c 286, §§3, 4]

Case Notes

Trial court is mandated to sentence defendant to a term of imprisonment without any suspension of the sentence. 69 H. 458, 746 P.2d 976.

Section not unconstitutionally vague or overbroad on its face or as applied to defendant for "possession of a bomb". 87 H. 71, 951 P.2d 934.

**§134-9   Licenses to carry.** (a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted. Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted. The chief of police of the appropriate county, or the chief's designated

172

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 126 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 127 of 268

FIREARMS AND DANGEROUS WEAPONS          134-10.5

representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made. Unless renewed, the license shall expire one year from the date of issue.

(b)   The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:

(1)   Be qualified to use the firearm in a safe manner;
(2)   Appear to be a suitable person to be so licensed;
(3)   Not be prohibited under section 134-7 from the ownership or possession of a firearm; and
(4)   Not have been adjudged insane or not appear to be mentally deranged.

(c)   No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.

(d)   A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted. [L 1988, c 275, pt of §2; am L 1994, c 204, §8; am L 1997, c 254, §§2, 4; am L 2000, c 96, §1; am L 2002, c 79, §1; am L 2006, c 27, §3 and c 66, §3; am L 2007, c 9, §8]

### Case Notes

Where plaintiff asserted that §§134-6 and 134-9 violated rights guaranteed by Article I and the Second, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution, defendants' motions to dismiss plaintiff's complaint granted; among other things, plaintiff did not have standing to challenge this chapter on the basis of an alleged deprivation of Second Amendment or Ninth Amendment rights, this chapter is not an impermissible bill of attainder with respect to plaintiff, and this chapter imposes no impairment of a contractual right possessed by plaintiff. 548 F. Supp. 2d 1151. Mentioned: 74 H. 197, 840 P.2d 374.

**§134-10   Alteration of identification marks prohibited.   No person shall wilfully alter, remove, or obliterate the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition. Possession of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be presumptive evidence that the possessor has altered, removed, or obliterated the mark of identity [L 1988, c 275, pt of §2]**

[§134-10.5]   Storage of firearm; responsibility with respect to minors.   No person shall store or keep any firearm on any premises under the person's control if the person knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor, unless the person:

(1)   Keeps the firearm in a securely locked box or other container or in a location that a reasonable person would believe to be secure; or
(2)   Carries the firearm on the person or within such close proximity thereto that the person readily can retrieve and use it as if it were carried on the person.

For purposes of this section, "minor" means any person under the age of sixteen years. [L 1992, c 288, §1]

### Cross References

Criminally negligent storage of firearm, see §707-714.5.

173

2-ER-239

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 128 of 268

# HAWAII REVISED STATUTES

## 2018 CUMULATIVE SUPPLEMENT

VOLUME 3

TITLES 10 – 12, CHAPTERS 121 – 200D

FOR USE WITH THE 2011 REPLACEMENT VOLUME

AND

VOLUME 4

TITLES 13 – 14, CHAPTERS 201 – 257

FOR USE WITH THE 2017 REPLACEMENT VOLUME



PUBLISHED BY AUTHORITY

**EXHIBIT "M"**

2-ER-240

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-2

photographing of the applicant by the police department of the county of registration, provided that where fingerprints and a photograph are already on file with the department, these may be waived.

***

(d)   The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

(e)   The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to issue a permit or to deny an application is made.

(f)   In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to

39

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 129 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 130 of 268

**134-2**      PUBLIC SAFETY AND INTERNAL SECURITY

whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority that issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable.

\*\*\*

(i)   No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued.

(j)   In all cases where a permit application under this section is denied because an applicant is prohibited from owning, possessing, receiving, or controlling firearms under federal or state law, the chief of police of the applicable county shall, within ten business days from the date of denial, send written notice of the denial including the identity of the applicant and the reasons for the denial to the:

(1)   Prosecuting attorney in the county where the permit was denied;
(2)   Attorney general;
(3)   United States Attorney for the District of Hawaii; and
(4)   Director of public safety.

If the permit to acquire was denied because the applicant is subject to an order described in section 134-7(f), the chief of police shall, within three business days from the date of denial, send written notice of the denial to the court that issued the order.

When the director of public safety receives notice that an applicant has been denied a permit because of a prior criminal conviction, the director of public safety shall determine whether the applicant is currently serving a term of probation or parole, and if the applicant is serving such a term, send written notice of the denial to the applicant's probation or parole officer. [am L 2016, c 108, §2; am L 2017, c 63, §1]

**Revision Note**

Only the subsections amended or added are compiled in this Supplement.

**Case Notes**

Plaintiff firearm permit applicant's allegations that: (1) plaintiff was deprived of plaintiff's fundamental constitutional right to bear operational firearms and ammunition as guaranteed by the Second Amendment; and (2) plaintiff was wrongfully denied a permit under this section without

40

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 131 of 268

**§134-3  Registration, mandatory, exceptions.** (a) Every resident or other person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within five days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:

  (1) A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve permit issued pursuant to section 183D-34;

  (2) A written document indicating the person has been invited to the State to shoot on private land; or

  (3) Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

Every person registering a firearm under this subsection shall be fingerprinted and photographed by the police department of the county of registration; provided that this requirement shall be waived where fingerprints and photographs are already on file with the police department. The police department shall perform an inquiry on the person by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to register a firearm is made. Any person attempting to register a firearm, a firearm receiver, or the parts used to assemble a firearm, and who is found to be disqualified from ownership, possession, or control of firearms or ammunition under section 134-7, shall surrender or dispose of all firearms and ammunition pursuant to section 134-7.3.

(b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration of all firearms shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has been

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 132 of 268

assembled from separate parts and an unfinished firearm receiver, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "assembled from parts" shall be recorded in the space provided for model.  If the firearm has been assembled from parts created using a three-dimensional printer, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "3-D printer" shall be recorded in the space provided for model.  If the firearm has no serial number, the registration number shall be entered in the space provided for the serial number, and the registration number shall be engraved upon the receiver portion of the firearm before registration.  On firearms assembled from parts created using a three-dimensional printer, the serial number shall be engraved on stainless steel and permanently embedded to the firearm receiver during fabrication or construction.  All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required:

    (1)   For processing the registration;

    (2)   For database management by the Hawaii criminal justice data center;

    (3)   By a law enforcement agency for the lawful performance of its duties; or

    (4)   By order of a court.

    (c)   Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration.  An authorized dealer, as provided in section 134-31, or a dealer licensed by the United States Department of Justice, who brings, assembles, or causes to be brought into the State by any other means, separate parts and an unfinished firearm receiver that when assembled create a firearm, or parts created by a three-dimensional printer that when assembled create a firearm, shall register the unfinished firearm receiver and receive a serial number before the assembly of the firearm or the sale or transfer of unassembled firearm parts or a receiver to a third party in accordance with subsection (b).  Any sale or transfer of unfinished firearm receivers by an authorized dealer to a third party shall be conducted as if they were fully assembled firearms with a serial number engraved on the firearm receiver and in accordance with the firearms permitting process in section 134-2.  All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration.

    (d)   Registration shall not be required for:

(1)  Any device that is designed to fire loose black powder or that is a firearm manufactured before 1899;

(2)  Any device not designed to fire or made incapable of being readily restored to a firing condition; or

(3)  All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice pursuant to Title 27, Code of Federal Regulations.

(e)  Every person who permanently moves firearms out of the State shall contact and notify the county police department in the county where the firearms are registered about the removal of the firearms within five days of the removal from the State.  Any person who fails to timely notify the appropriate police department shall be subject to a civil penalty of $100 per firearm.

(f)  No fee shall be charged for the registration of a firearm under this section, except for a fee chargeable by and payable to the registering county for persons registering a firearm under subsection (a), in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7.  In the case of a joint registration, the fee provided for in this section may be charged to each person.

(g)  No person less than twenty-one years of age shall bring or cause to be brought into the State any firearm. [L 1988, c 275, pt of §2; am L 1994, c 204, §4; am L 1999, c 217, §2; am L 2007, c 9, §7; am L 2013, c 254, §2; am L 2016, c 108, §3; am L 2019, c 257, §2; am L 2020, c 68, §2 and c 74, §5]

Previous                    Vol03_Ch0121-0200D                    Next

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 134 of 268



**[§134-6.5]  Relief from federal firearms mental health prohibitor.**  (a) Any person who is prohibited from shipping, transporting, possessing, or receiving any firearm or ammunition, pursuant to title 18 United States Code section 922(d)(4) or (g)(4), having been adjudicated as a mental defective or having been committed to a mental institution under the laws of this State, may petition the circuit court in the circuit where the adjudication or commitment was made, in a civil proceeding, for relief from the federal firearm prohibitor based on the adjudication or commitment. The attorney general shall represent the State; provided that the attorney general, with the prosecuting agency's consent, may designate the prosecuting attorney for the county in which the petitioner seeks relief to represent the State.

(b)  In the civil proceeding, the court shall consider:

(1)  The circumstances regarding the adjudication or commitment from which relief is sought, including the court files of the adjudication or commitment;

(2)  The petitioner's mental health and criminal history records, if any;

(3)  The petitioner's reputation in the community, developed at a minimum through character witness statements, testimony, or other character evidence; and

(4)  Changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought, including medical documentation that the petitioner is no longer adversely affected by the condition that resulted in the petitioner's adjudication or commitment and is not likely to act in a manner dangerous to public safety.

(c)  The court shall grant the petition for relief if the petitioner proves, by clear and convincing evidence, that the petitioner will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. The court shall make written findings of facts and conclusions of law on the issues before it and issue a final order.

(d)  When a court issues an order granting or denying a petition for relief, the court shall forward this information to the Hawaii criminal justice data center, which in turn shall forward this information to the Federal Bureau of Investigation, or its successor agency, for inclusion in the National Instant Criminal Background Check System database. The information shall also be maintained by the Hawaii criminal justice data center for disclosure to and use by law enforcement officials for the purpose of firearms permitting or registration pursuant to chapter 134.

42

**2-ER-246**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 135 of 268

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-7.2

(e)   A person may file a petition for relief under this section no less than two years after the adjudication or commitment from which the relief is sought, and no more frequently than once every three years thereafter.

(f)   For purposes of this section, the terms "adjudicated as a mental defective", "committed to a mental institution", and "mental institution" shall be construed in accordance with title 18 United States Code section 922, title 27 Code of Federal Regulations section 478.11, and judicial interpretations of those provisions.

(g)   Any relief granted pursuant to this section shall not constitute relief from any other federal prohibitors or from any state prohibition pursuant to chapter 134. The State, its officers, and its employees shall not be liable for any damages, attorneys' fees, or costs related to this relief process.

(h)   The petitioner may appeal a denial of relief, and the standard of review on appeal shall be de novo. [L 2014, c 87, §2]

§134-7   Ownership or possession prohibited; when; penalty.

### Case Notes

Summary judgment granted to defendants where plaintiff's 1997 harassment conviction constituted a conviction for a "misdemeanor crime of domestic violence" and, as a matter of statutory construction, the unavailability of a procedure for either expungement, set-aside, pardon, or civil rights restoration did not remove plaintiff from the ambit of federal prohibition or by extension, this section. 855 F.3d 1067 (2017).

Defendant police chief was entitled to qualified immunity from plaintiff firearm permit applicant's 42 U.S.C. §1983 claims for monetary damages for alleged violations of plaintiff's Second Amendment right to bear arms and Fourteenth Amendment procedural due process right because a reasonable official in defendant's circumstances would not have understood that defendant's conduct violated a right that was clearly established at the time of the denial of plaintiff's permit; this section, on which the denial was based, had not been invalidated by case or legislative action. 869 F. Supp. 2d 1203 (2012).

Plaintiff firearm permit applicant's allegations that plaintiff was denied a permit and ordered to surrender plaintiff's weapons due to a conviction of harassment under §711-1106 more than ten years before and that the conviction was not a crime of violence under subsection (b) or federal law for the purposes of prohibiting ownership or possession of firearms were sufficient to state a 42 U.S.C. §1983 claim for a violation of plaintiff's Second Amendment rights. 869 F. Supp. 2d 1203 (2012).

Genuine issue of material fact existed regarding: (1) whether plaintiff had been under counseling for addiction to, abuse of, or dependence upon a drug or intoxicating liquor; and (2) whether plaintiff had been "medically documented to be no longer adversely affected" by drugs or intoxicating liquor. As a result, plaintiff had not established a Second Amendment right to possess firearms. 976 F. Supp. 2d 1200 (2013).

Subsection (b) did not disqualify plaintiff

from exercising plaintiff's Second Amendment rights because the court could not conclude that plaintiff's convictions for harassment constituted a crime of violence. 976 F. Supp. 2d 1200 (2013).

Where defendants argued that plaintiff was prohibited from possessing firearms under federal law because of the federal Lautenberg Amendment, which prohibits firearm ownership by any person who "has been convicted in any court of a misdemeanor crime of domestic violence", plaintiff's convictions for harassment did not qualify as a misdemeanor crime of domestic violence under federal law. 976 F. Supp. 2d 1200 (2013).

Where defendants asserted that plaintiff lacked standing to bring a lawsuit because plaintiff was precluded from obtaining firearms under this section, and, therefore, could not establish a violation of plaintiff's Second Amendment rights, police department's denial of plaintiff's application for a firearms permit, order to surrender firearms plaintiff possessed, and letter affirming the denial of the application constituted an "injury-in-fact" sufficient to meet the minimum requirements of Article III standing. 49 F. Supp. 3d 727 (2014).

Where plaintiff was disqualified from possessing firearms under 18 U.S.C. §922(g)(9) and applying subsection (a) would not have an impermissible retroactive effect, subsection (a) precluded plaintiff from acquiring a firearms permit. 49 F. Supp. 3d 727 (2014).

Where the State's evidence only went so far as to show defendant's ownership and presence in the vehicle and defendant's proximity to the firearm and ammunition, absent evidence of intent, the circuit court correctly granted defendant's renewed motion of judgment of acquittal; the appeals court thus erred in vacating circuit court's judgment by concluding that there was sufficient evidence of intent for jury to infer that defendant constructively possessed the subject rifle and ammunition in violation of subsection (b). 128 H. 18, 282 P.3d 560 (2012).

§134-7.2   Prohibition against seizure of firearms or ammunition during emergency or disaster; suspension of permit or license.   (a) Notwithstanding any

43

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 136 of 268

**134-7.2**          PUBLIC SAFETY AND INTERNAL SECURITY

provision of chapter 127A or any other law to the contrary, no person or government entity shall seize or confiscate, under any emergency or disaster relief powers or functions conferred, or during any emergency period, as defined in section 127A-2, or during any time of national emergency or crisis, as defined in section 134-34, any firearm or ammunition from any individual who is lawfully permitted to carry or possess the firearm or ammunition under part I of this chapter and who carries, possesses, or uses the firearm or ammunition in a lawful manner and in accordance with the criminal laws of this State.

(b)    Notwithstanding any provision of chapter 127A or any other law to the contrary, no person or government entity shall suspend, revoke, or limit, under any emergency or disaster relief powers or functions conferred, any lawfully acquired and maintained permit or license obtained under and in accordance with part I of this chapter.

***

[am L 2014, c 111, §7]

Revision Note

Only the subsections amended are compiled in this Supplement.

**§134-7.3   Seizure of firearms upon disqualification.**    (a) If any applicant is denied a permit, the chiefs of police of the respective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition. If an applicant fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date notice was mailed, the chief of police may seize all firearms and ammunition.

(b)    Any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7, within seven days of disqualification, shall voluntarily surrender all firearms and ammunition to the chief of police where the person resides or dispose of all firearms and ammunition. If any person fails to voluntarily surrender or dispose of all firearms and ammunition within seven days from the date of disqualification, the chief of police may seize all firearms and ammunition.

(c)    For any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7(c), or because the person has been admitted to a psychiatric facility, whether for emergency or involuntary hospitalization, pursuant to part IV of chapter 334, once the chief of police is notified that the person is disqualified, the chief of police shall promptly issue a notice to the disqualified person to immediately surrender all firearms and ammunition. The notice shall be in writing, shall set forth the reasons for the disqualification, and shall state the requirement that the person immediately surrender all firearms and ammunition to the chief of police. If any person fails to voluntarily surrender all firearms and ammunition upon receiving notice, the chief of police may seize all firearms and ammunition. The firearms and ammunition shall be held in police custody until the person has been medically documented to be no longer adversely affected as provided in section 134-7 or until transferred or sold by the owner. Nothing in this subsection shall be construed to limit the duties imposed by subsection (b).

(d)    For the purposes of this section, "dispose" means selling the firearms to a gun dealer licensed under section 134-31, transferring ownership of the firearms to any person who meets the requirements of section 134-2, or surrender-

44

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 137 of 268

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS   134-16

ing all firearms to the chief of police where the person resides for storage or disposal; provided, for a person subject to section 134-7(f), "dispose" shall not include transferring ownership of the firearms to any person who meets the requirements of section 134-2.

(e)   The chief of police of the respective counties shall adopt procedures to implement and administer the provisions of this section by December 31, 2001. [L 2000, c 127, §1; am L 2004, c 4, §2; am L 2016, c 110, §2; am L 2018, c 158, §1]

**[§134-8.5]   Bump fire stock, multiburst trigger activator, or trigger crank; prohibition.**   (a) Any person in this State who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any bump fire stock, multiburst trigger activator, or trigger crank shall be guilty of a class C felony.

(b)   As used in this section:

"Bump fire stock" means a butt stock designed to be attached to a semiautomatic firearm and designed, made, or altered to increase the rate of fire achievable with such firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

"Multiburst trigger activator" means:

(1)   A device that simulates automatic gunfire by allowing standard function of a semiautomatic firearm with a static positioned trigger finger or a device that fires multiple shots with the pull and release of the trigger; or

(2)   A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it simulates automatic gunfire.

"Trigger crank" means any device to be attached to a semiautomatic firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion, but does not include any firearm initially designed and manufactured to fire through the use of a crank or lever. [L 2018, c 157, §1]

§134-9   Licenses to carry.

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

§134-16   Restriction on possession, sale, gift, or delivery of electric guns.
***

(b)   Any electric gun possessed, offered for sale, held for sale, sold, given, lent, or delivered in violation of subsection (a) shall be confiscated and disposed of by the chief of police.

(c)   This section shall not apply to:

(1)   Law enforcement officers of county police departments;

(2)   Law enforcement officers of the department of public safety;

(3)   Conservation and resources enforcement officers of the department of land and natural resources;

(4)   Members of the Army or Air National Guard when assisting civil authorities in disaster relief, emergency management, or law enforcement functions, subject to the requirements of section 121-34.5; and

45

Case 1:19-cv-00578-JMS-RT   Document 01-14   Filed 05/12/20   Page 10 of 10   PageID #:
Case 1:19-cv-00578-JMS-RT   Document 92-14   Filed 05/28/21   Page 11 of 11   PageID #:
821

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 138 of 268

134-16        PUBLIC SAFETY AND INTERNAL SECURITY

    (5)  Vendors providing electric guns to the individuals described in paragraphs (1) through (4);

provided that electric guns shall at all times remain in the custody and control of the law enforcement officers of the county police departments, the law enforcement officers of the department of public safety, the conservation and resources enforcement officers of the department of land and natural resources, or the members of the Army or Air National Guard.

    \*\*\*

    (e)  The department of land and natural resources and the department of public safety shall ensure that each of its conservation and resources enforcement officers and law enforcement officers who is authorized to use an electric gun and related equipment shall first receive training from the manufacturer or from a manufacturer-approved training program, as well as by manufacturer-certified or approved instructors in the use of electric guns prior to deployment of the electric guns and related equipment in public. Training for conservation and resources enforcement officers of the department of land and natural resources and law enforcement officers of the department of public safety may be done concurrently to ensure cost savings.

    (f)  No later than June 30, 2018, the conservation and resources enforcement program of the department of land and natural resources shall meet the law enforcement accreditation or recognition standards of the Commission on Accreditation for Law Enforcement Agencies, Inc., in the use of electric guns. [am L 2012, c 148, §1; am L 2014, c 111, §28]

Revision Note

Only the subsections amended are compiled in this Supplement.

    **[§134-23]  Place to keep loaded firearms other than pistols and revolvers; penalty.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

    **[§134-24]  Place to keep unloaded firearms other than pistols and revolvers; penalty.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

    **[§134-25]  Place to keep pistol or revolver; penalty.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

    **[§134-26]  Carrying or possessing a loaded firearm on a public highway; penalty.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

    **[§134-27]  Place to keep ammunition; penalty.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

Case 1:19-cv-00578-JMS-RT   Document 91-13   Filed 08/12/20   Page 1 of 4   PageID #:
Case 1:19-cv-00578-JMS-RT   Document 92-15   Filed 05/28/21   Page 1 of 4   PageID #:
822

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 139 of 268

# SESSION LAWS

OF

# HAWAII

PASSED BY THE

## FIFTEENTH STATE LEGISLATURE

———

## REGULAR SESSION
### 1990

Convened on Wednesday, January 17
and
Adjourned sine die on Friday, May 4

———

Published by Authority of the
Revisor of Statutes
Honolulu, Hawaii

## EXHIBIT "N"

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 140 of 268

ACT 195

ACT 195                                                    H.B. NO. 2191

A Bill for an Act Relating to Weapons.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Section 134-1, Hawaii Revised Statutes, is amended by amending the definition of "automatic firearm" to read as follows:

" "Automatic firearm" means any firearm that shoots, is designed to shoot, or can be readily [restored] modified to shoot automatically more than one shot, without a manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such firearm, any part designed and intended solely and exclusively, or any combination of parts designed and intended, for use in converting a firearm into an automatic firearm, and any combination of parts from which an automatic firearm can be assembled if the parts are in the possession or under the control of a single person."

SECTION 2. Section 134-6, Hawaii Revised Statutes, is amended to read as follows:

"§134-6 Possession or use of firearm in the commission of a felony; [Place] place to keep firearms; loaded firearms[; penalty. (a) It shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not.

[(a)] (b) Except as provided in sections 134-5 and 134-9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence or sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

[(b)] (c) It shall be unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition; provided that the provision of this paragraph shall not apply to any person who has in the person's possession or carries a pistol or revolver and ammunition therefor in accordance with a license issued as provided in section 134-9.

[(c)] (d) Any person violating this section by possessing, using or threatening to use a firearm while engaged in the commission of a felony shall be guilty of a class A felony. Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class [C] B felony. Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a [misdemeanor] class C felony.'"

SECTION 3. Section 134-51, Hawaii Revised Statutes, is amended to read as follows:

422

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 141 of 268

ACT 195

"§134-51 [Carrying deadly] Deadly weapons; prohibitions penalty. (a) Any person not authorized by law, who carries concealed upon one's person or within any vehicle used or occupied by the person, or who is found armed with any dirk, dagger, blackjack, slug shot, billy, metal knuckles, pistol, or other deadly or dangerous weapon, shall be [fined a minimum of $500, and] more than $1,000 or imprisoned not more than one year, or both] guilty of a misdemeanor. Any such person may be immediately arrested without warrant by any sheriff, police officer, or other officer or person. Any weapon, above enumerated, shall, upon conviction of the one carrying or possessing same under this section, be summarily destroyed by the chief of police or sheriff.

(b) Whoever knowingly possesses or intentionally uses or threatens to use a deadly or dangerous weapon while engaged in the commission of a crime shall be guilty of a class C felony."

SECTION 4. Section 134-52, Hawaii Revised Statutes, is amended to read as follows:

"[|]§134-52 Switchblade knives; prohibitions; penalty.[|] (a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any switchblade knife, being any knife having a blade which opens automatically (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) by operation of inertia, gravity, or both, shall be [fined not more than $1,000 or imprisoned not more than one year, or both] guilty of a misdemeanor.

(b) Whoever knowingly possesses or intentionally uses or threatens to use a switchblade knife while engaged in the commission of a crime shall be guilty of a class C felony."

SECTION 5. Section 706-660.1, Hawaii Revised Statutes, is amended to read as follows:

"§706-660.1 Sentence of imprisonment for use of a firearm,[1] semi-automatic firearm, or automatic firearm in a felony. (a) A person convicted of a felony, where the person had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense[s] be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

(1)  For murder in the second degree and attempted murder in the second degree  - up to [15] fifteen years;
(2)  For a class A felony  - up to [10] ten years;
(3)  For a class B felony  - up to [5] five years; and
(4)  For a class C felony  - up to [3] three years.

The sentence of imprisonment for a felony involving the use of a firearm as provided in the subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706-699,[1] provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706-670 only upon the expiration of the term of mandatory imprisonment fixed under (a)(1), (2), (3), or (4), herein.

(b) A person convicted of a second firearm felony offense as provided in subsection (a), herein, where the person had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the

423

Case 1:19-cv-00578-JMS-RT   Document 01-13   Filed 05/12/20   Page 4 of 4   PageID #:
Case 1:19-cv-00578-JMS-RT   Document 92-15   Filed 05/28/21   Page 4 of 4   PageID #:
825

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 142 of 268

## ACT 195

felony, whether the firearm was loaded or not, and whether operable or not, shall in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

(1)  For murder in the second degree and[1] attempted murder in the second degree   - twenty years;
(2)  For a class A felony   - thirteen years, four months;
(3)  For a class B felony   - six years, eight months; and
(4)  For a class C felony   - three years, four months.

The sentence of imprisonment for a second felony offense involving the use of a firearm as provided in this subsection shall not be [exempted from] subject to the procedure for determining a[1] minimum term of imprisonment prescribed under section 706-669, provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706-670 only upon the expiration of the term of mandatory imprisonment fixed under (a)(1),[1] (2), (3), or (4), herein.

(c)  A person convicted of a felony, where the person had a semi-automatic firearm or automatic firearm in his possession or used or threatened its use while engaged in the commission of the felony, whether the semi-automatic firearm or automatic firearm was loaded or not, and whether operable or not, shall in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

(1)  For murder in the second degree and attempted murder in the second degree   - twenty years;
(2)  For a class A felony   - fifteen years;
(3)  For a class B felony   - ten years; and
(4)  For a class C felony   - five years.

The sentence of imprisonment for a felony involving the use of a semi-automatic firearm or automatic firearm as provided in this subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706-669, provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706-670 only upon the expiration of the term of mandatory imprisonment fixed under (c)(1), (2), (3), or (4), herein.

[As used in this section, "firearm" has the meaning defined in section 134-1.]

(d)  In this section:
(1)  "Firearm" has the same meaning defined in section 134-1 except that it does not include "semi-automatic firearm" or "automatic firearm."
(2)  "Automatic firearm" has the same meaning defined in section 134-1.
(3)  "Semi-automatic firearm" means any firearm that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of a trigger."

SECTION 6. Statutory material to be repealed is bracketed. New statutory material is underscored.

SECTION 7. This Act shall take effect upon its approval.

(Approved June 19, 1990.)

424

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 143 of 268

# JOURNAL

of the

## SENATE OF THE

## FIFTEENTH LEGISLATURE

of the

## STATE OF HAWAII

---

## Regular Session of 1990

**Convened Wednesday, January 17, 1990**
**Adjourned Friday, May 4, 1990**

EXHIBIT "O"

Case: 21-16256, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 144 of 268

although the language indicates that a natural parent may request access to adoption records, the procedure set out only covers situations where an adopted individual or adoptive parents request access.

(9)   A provision has been added for adoptions occurring prior to January 1, 1991, to permit a natural parent or an adoptee to file an affidavit consenting to the inspection of records by the natural parent.

(10)   A new provision has been added to allow a natural parent to obtain a copy of the original birth certificate.

(11)   Technical, nonsubstantive amendments were made for purposes of clarity and style.

Your Committee recognizes that there are compelling arguments for fully opening up adoption records; and that this bill as amended by your Committee, while it is a major step, may be just the first step to more liberal access to adoption records in the future.

Your Committee on Judiciary is in accord with the intent and purpose of H.B. No. 2089, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2089, H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

**SCRep. 3057   Judiciary on H.B. No. 2184**

The purpose of this bill is to outlaw gambling aboard ships whether it takes place on ships operated solely for that purpose or on ones which offer gambling incidental to other legitimate activities.

Your Committee received testimony in support of the bill from the Attorney General and the Department of Transportation.  The Attorney General noted that the State has long taken a stand against gambling because of its traditional association with organized crime and because it tends to diminish the State's reputation as the premier tourist destination, especially for families, with a corresponding economic impact.  He indicated that this bill would prevent a recent proposal to begin inter-island operation of one of these ships from becoming a reality.

The Department of Transportation expressed its support for the bill but indicated concern that the language of the bill was not sufficiently specific to exclude ships travelling to and from foreign ports and the continental United States from being placed within its ambit.  These ships close down and lock their gambling equipment when they sail in State waters and, therefore, do not present the cause for concern represented by gambling ships operated locally.  Accordingly, your Committee has amended the bill to make it clear that these ships are not in violation of the proposed law if they conduct gambling activity when travelling to or from foreign ports or the continental United States.

Your Committee has also amended the bill to make it clear that operators of legitimate tour ships, on which gambling is being conducted without their consent or knowledge, will not be subjected to criminal liability for gambling conducted by employees or passengers.  Your Committee further amends the bill so that persons transporting passengers to and from ships on which gambling is taking place would not be covered under this new section.  The final amendment made by your Committee deletes the provision which subjects persons soliciting, enticing, inducing, persuading or procuring persons from visiting gambling ships to criminal liability.  Your Committee is of the opinion that these provisions raise questions of equal protection, as persons are permitted to make identical solicitations and promotions for gambling operations conducted outside of the State.

Your Committee on Judiciary is in accord with the intent and purpose of H.B. No. 2184, H.D. 1, as amended, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2184, H.D. 1, S.D. 1 and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

**SCRep. 3058   Judiciary on H.B. No. 2191**

The purpose of this bill is to prohibit the possession of firearms, ammunition, and certain weapons in, on or within 750 feet of the real property comprising a public or private elementary or secondary school.

Testimony  in support of this bill was offered by the Attorney General, the Department of Education and the Hawaii State Teachers Association.  They all testified in favor of the bill, which was originally drafted to create a "weapon free zone" within 750 feet of the real property comprising a public or private school.  The Attorney General recounted a series of recent events in which a teacher was shot while conducting class, students were shot in drive-by shootings, and a student was methodically stalked, shot and killed in a high school parking lot.  This statement was echoed by the Department of Education which reported that in the last school year, seven firearms and 61 other weapons were taken from public school students.

Testimony in opposition to the bill was offered by the Public Defender and a number of firearm enthusiasts.  The Public Defender submitted that a mandatory sentence of 20 years was too severe, particularly when compared to other serious offenses.  The firearm enthusiasts were concerned by the fact that numerous legitimate firearm activities take place on school campuses, such as ROTC training, hunter safety courses and rifle matches.

While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that our entire community should be a safe place to live and learn and that everyone deserves to feel free from the threat of harm wherever they go.  To achieve this goal, your Committee has undertaken substantial amendments to the bill.  First, weapons offenses have been reclassified to reflect their severity.  For example, a new subsection has been added to section 134-6, Hawaii Revised Statutes, which makes it a class A felony to possess, use or threaten to use a

Case 1:19-cv-00578-JMS-RT   Document 92-16   Filed 05/28/21   Page 3 of 3   PageID #:
828
Case 1:19-cv-00578-JMS-RT   Document 91-16   Filed 06/12/20   Page 3 of 3   PageID #:

S E N A T E   J O U R N A L - STANDING COMM... TEE REPORTS

firearm in the commission of a felony.  A person who violates the requirement that firearms be confined to the person's place of business, residence or sojourn or that they be transported between these and certain other destinations in a specified manner or that handguns not be carried on the person without a permit would be guilty of a class B instead of a class C felony.  Those who violate the requirement that firearms other than handguns not be carried on the person would be guilty of a class C felony instead of a misdemeanor.  Consistent therewith, a person who uses a switchblade or other deadly weapon  in the commission of a crime would be guilty of a class C felony.

Your Committee has addressed the very real concern within the community regarding the use by criminals of semi-automatic "assault" weapons.  To that end, your Committee has amended the bill by adding a new subsection to Section 706-660.1, Hawaii Revised Statutes, to provide for severe mandatory minimum sentences for the use of these weapons in the commission of a felony.  Under current law a first "firearm felony" offender may be sentenced to a minimum term of up to 15 years while a second "firearm felony" offender must be sentenced to a mandatory minimum term of up to 20 years.  This bill would require that a first semi-automatic or automatic "firearm felony" offender be sentenced to a mandatory minimum term of up to 20 years.  Your Committee believes that these harsh sentences are necessary to keep these weapons out of the hands of criminals.

Your Committee has also amended the definition of "automatic firearm" to include the parts that are currently available to convert a firearm to automatic operation.

Your Committee is in accord with the intent and purpose of H.B. No. 2191, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2191 H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

SCRep. 3059     Judiciary on H.B. No. 2398

The purpose of this bill is to ensure that mental health treatment is offered to convicted sex offenders and to create  new offenses relating to "peeping tom" behavior and sexually harassing telephone calls.

Your Committee received testimony from the Attorney General, the Honolulu Prosecutor, the Honolulu Police Department, the Public Defender, and  a number of private citizens.  The Attorney General expressed strong support for the bill, particularly the provision that would require that treatment be offered to sex offenders.  The Honolulu Prosecutor also expressed strong support for the treatment provision, noting that the compulsive, repetitive behavior of sex offenders can be changed only by specialized therapy.

Support was also expressed for the provision of the bill that would address the "peeping tom" type of offenses which are not currently covered by the Penal Code.

Your Committee found the testimony provided by the private citizens regarding these offenses to be particularly compelling.  One person recounted a series of incidents over a period of four years during which a male intruder stole undergarments from a clothesline, began knocking at the door during the early morning hours and hounded her to the point of a nervous breakdown.  Ultimately, she was forced to move.

Another person testified about similar conduct occurring over a two year period.  An unknown man stole lingerie, prowled outside the bedroom window at night and was caught twice looking in.  This person was so disturbed by this conduct that she spoke to other women and found that many in her neighborhood had experienced repeated visits from men who masturbate outside and into their windows.  She even interviewed one offender by arrangement with his therapist.  The man reported that he had a twenty year career as a peeping tom and public masturbator and that, while he had been arrested seven or eight times, he had spent only three days in jail and that was imposed on the mainland.  He also stated that he was not required to undergo treatment.  Another person testified about a peeping tom lurking in her yard who was later identified as a rapist being sought by the police.

These people also expressed frustration about the ability of the courts to deal with these offenders.  These offenders are often not recognized or treated as sex offenders.  As a result, they are routinely processed along with the rest of the large case load handled by the District Court and frequently receive only a fine with little, if any, counseling.  As a further result, the opportunity to examine the offender and provide treatment that will prevent escalation in the severity of these offenses is often lost.

Your Committee finds that the need for early intervention and treatment of sexual offenders is imperative.  While "peeping toms" and "exhibitionists" may seem harmless, these offenses are typically perceived by the victims as potential burglaries or sexual assaults.  The criminal records of these individuals justify this concern because the rate of recidivism amongst this class of offenders is extremely high and many go on to commit more serious, violent crimes.  Treatment must be afforded to these offenders and they must be monitored closely.  At the same time, however, the seriousness of these offenses must be recognized and appropriate sanctions, in addition to treatment, must be imposed.

Accordingly, your Committee has amended the bill to require that all convicted sex offenders undergo presentence mental and medical examinations.  If the resulting report indicates that it is appropriate, the Court would be required to offer specialized  mental health treatment to these offenders while they are under sentence of the court.  This would mandate that treatment be offered to offenders placed on probation whereas currently such treatment is offered only discretionarily under Section 706-624(2)(k), Hawaii Revised Statutes.  Treatment would also be offered to incarcerated offenders and the Hawaii Paroling Authority would be required to consider the offender's willingness to undergo treatment and their progress, if any, when considering whether to grant parole.  The authority would also be required to condition parole on continued treatment if recommended by the offender's therapist.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 145 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 146 of 268

# LAWS OF MISSOURI

PASSED AT THE SESSION OF THE

## Fifty-First General Assembly

WHICH CONVENED AT THE

## City of Jefferson

WEDNESDAY, JANUARY 5, 1921



MDCCCXX

*(By Authority)*

COMPILED BY

## CHARLES U. BECKER,

SECRETARY OF STATE

*In compliance with section 7068*
*Revised Statutes, 1919.*

**EXHIBIT "P"**

**2-ER-258**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 147 of 268

REGULATION OF SALE AND POSSESSION.                    691

supervision of such training and appoint such assistants as may be necessary to administer said act, and fix their compensation; (4) to direct the disbursement and administer the use of all funds provided by the federal government and allotted for the vocational rehabilitation of such persons.

Sec. 4.   **Shall formulate plan of co-operation.**—It shall be the duty of the state board for vocational education to formulate a plan of co-operation in carrying out the provisions of this act and of said act of congress, with Missouri workmen's compensation commission.

Sec. 5.   **Authorized and empowered to receive gifts and donations—to be reported to the general assembly.**—The state board for vocational education is hereby authorized and empowered to receive such gifts and donations, either from public or private sources, as may be offered unconditionally or under such conditions related to the vocational rehabilitation of persons disabled in industry or otherwise and consistent with the provisions of this act.   All moneys received as gifts or donations shall be deposited in the state treasury and shall constitute a permanent fund to be called the special fund for the vocational rehabilitation of disabled persons, to be used by the said board to defray the expenses of vocational rehabilitation in special cases, including the payment of necessary expenses of persons undergoing training.   A full report of all gifts and donations offered and accepted, together with the names of the donors and the respective amounts contributed by each, and all disbursements therefrom shall be submitted biennially to the general assembly.

Sec. 6.   **Emergency.**—On account of there being many persons in the state needing vocational rehabilitation, and that there are now federal funds available for this purpose an emergency exists within the meaning of the Constitution; therefore this act shall take effect and be in force from and after its passage and approval.

Approved April 7, 1921.

[H. B. 168.]

## WEAPONS, FIREARMS:  Regulation of Sale and Possession.

AN ACT to provide for the public safety by requiring each pistol, revolver or other firearm of a size which may be concealed upon the person, to be stamped with the description of the same, and a record of all sales thereof to be kept by all dealers therein, and regulating the buying, selling, borrowing, loaning, giving away, trading, bartering, delivering or receiving of such weapons, and prescribing punishments for the violation thereof, and with an emergency clause.

| SECTION | SECTION |
|---|---|
| 1. Pistol, revolver or firearms to be plainly marked. | 5. Punishment for violation. |
| 2. Shall secure permit to acquire weapon. | 6. Validity of remaining sections not affected. |
| 3. Weapons must be stamped. | 7. Emergency clause. |
| 4. Manufacture not prohibited. | |

692                          WEAPONS, FIREARMS.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

**Section 1.    Pistol, revolver or firearms to be plainly marked.**
No wholesaler or dealer therein shall have in his possession for
the purpose of sale, or shall sell, any pistol, revolver, or other
firearm of a size which may be concealed upon the person, which
does not have plainly and permanently stamped upon the
metallic portion thereof, the trademark or name of the maker,
the model and the serial factory number thereof, which number
shall not be the same as that of any other such weapon of the
same model made by the same maker, and the maker, and no
wholesale or retail dealer therein shall have in his possession for
the purpose of sale, or shall sell, any such weapon unless he keep
a full and complete record of such description of such weapon,
the name and address of the person from whom purchased and
to whom sold, the date of such purchase or sale, and in the case of
retailers the date of the permit and the name of the circuit clerk
granting the same, which record shall be open to inspection at
all times by any police officer or other peace officer of this state.

**Sec. 2.    Shall secure permit to acquire weapon.**—No person,
other than a manufacturer or wholesaler thereof to or from a
wholesale or retail dealer therein, for the purposes of commerce,
shall directly or indirectly buy, sell, borrow, loan, give away,
trade, barter, deliver or receive, in this state, any pistol, revolver
or other firearm of a size which may be concealed upon the person,
unless the buyer, borrower or person receiving such weapon
shall first obtain and deliver to, and the same be demanded and
received by, the seller, loaner, or person delivering such weapon,
within thirty days after the issuance thereof, a permit authorizing
such person to acquire such weapon.    Such permit shall be
issued by the circuit clerk of the county in which the applicant
for a permit resides in this state, if the sheriff be satisfied that the
person applying for the same is of good moral character and of
lawful age, and that the granting of the same will not endanger
the public safety.    The permit shall recite the date of the issuance
thereof and that the same is invalid after thirty days after the
said date, the name and address of the person to whom granted
and of the person from whom such weapon is to be acquired, the
nature of the transaction, and a full description of such weapon,
and shall be countersigned by the person to whom granted in the
presence of the circuit clerk.    The circuit clerk shall receive there-
for a fee of $0.50.    If the permit be used, the person receiving the
same shall return it to the circuit clerk within thirty days after
its expiration, with a notation thereon showing the date and
manner of the disposition of such weapon.    The circuit clerk shall
keep a record of all applications for such permits and his action
thereon, and shall preserve all returned permits.    No person shall
in any manner transfer, alter or change any such permit or make
a false notation thereon or obtain the same upon any false repre-
sentation to the circuit clerk granting the same, or use or attempt
to use a permit granted to another.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 148 of 268

**2-ER-260**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 149 of 268

**Sec. 3.   Weapons must be stamped.**—No person within this state shall lease, buy or in anywise procure the possession from any person, firm or corporation within or without the state, of any pistol, revolver or other firearm of a size which may be concealed upon the person, that is not stamped as required by section 1 of this act; and no person shall buy or otherwise acquire the possession of any such article unless he shall have first procured a written permit so to do from the circuit clerk of the county in which such person resides, in the manner as provided in section 2 of this act.

**Sec. 4.   Manufacture not prohibited.**—Nothing herein contained shall be considered or construed as forbidding or making it unlawful for a dealer in or manufacturer of pistols, revolvers or other firearms of a size which may be concealed upon the person, located in this state, to ship into other states or foreign countries, any such articles whether stamped as required by this act or not so stamped.

**Sec. 5.   Punishment for violation.**—Any person, its or his directors, officers, agents or servants, convicted of violating any of the provisions of this act, shall be punished by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail not less than six months, or by a fine not less than fifty dollars nor more than five thousand dollars, or by both fine and imprisonment in the county jail.

**Sec. 6.   Validity of remaining sections not affected.**—If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act.   The general assembly hereby declared that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more of the same shall be declared unconstitutional.

**Sec. 7.   Emergency clause.**—There being no adequate law governing the stamping, recording, sale and other disposition of weapons as described herein, creates an emergency within the meaning of the Constitution; therefore this act shall take effect and be in force from and after its approval.

Approved April 7, 1921.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 150 of 268

# GENERAL

# ACTS

AND

## JOINT AND CONCURRENT RESOLUTIONS AND MEMORIALS

AND

## PROPOSED CONSTITUTIONAL AMENDMENTS

OF THE

# Forty-fourth General Assembly

OF THE

# STATE OF ARKANSAS

Passed at the Session held at the Capitol, in the City of Little Rock, Arkansas, Commencing on the 8th day of January, 1923, and Ending on the 8th day of March, 1923.

BY AUTHORITY

DEMOCRAT PRINTING & LITHOGRAPHING CO
LITTLE ROCK

**EXHIBIT "Q"**

2-ER-262

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 151 of 268

Act 430]        Acts of Arkansas.        379

## ACT 430.

AN ACT to regulate the Ownership of Pistols and Revolvers.

Section

1. Unlawful to carry pistol, except it be recorded.

2. License, fee, goes to district school fund.

3. Applies to pistols as acquired in future. Penalty for violation.

4. Conflicting laws repealed, emergency, in force from passage.

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

From and after the passage of this Act, it shall be unlawful for any person to own or have in his custody or possession any pistol or revolver, except as herein provided:

Section 1. Any person having in his possession or custody any pistol or revolver, shall within 60 days from the approval of this Act, present such firearm to the county clerk of the county, where he resides, and it shall be the duty of the said county clerk to enter upon a separate record provided for that purpose, the name, age, place of residence, and color of the party, together with the make, calibre and number of said pistol or revolver.

Section 2. Any person so registering as provided in section 1 of this Act, shall then make application for

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 152 of 268

380          ACTS OF ARKANSAS.          [ACT 430

a license or permit, which said application shall be passed upon by a board consisting of the sheriff, county judge and county clerk of said county whose duty it shall be to consider the application and if the applicant be a person of good moral character, whose conduct, past record and occupation is such as to prove to said board that he is a person of good character, then the county clerk shall issue to the applicant a permit, upon a printed form provided for that purpose, and bearing the seal of the county, granting permission to own and possess the pistol or revolver described in the application, for a period of one year from the date thereof, for which permit the applicant shall pay a fee of one ($1.00) dollar which shall go to the common school fund of the district where the applicant resides.

SECTION 3. Any person who shall purchase or acquire possession of any pistol or revolver shall make application and secure a permit to possess same as provided by section 2 of this Act, and any person having in his custody and control any pistol or revolver, and who has not secured the permit as herein provided shall be guilty of a misdemeanor and upon conviction shall be fined in any sum not less than fifty and not more than one hundred dollars, and said fire arm shall be taken by the sheriff, and publicity destroyed.

SECTION 4. All laws and parts of laws in conflict herewith are hereby repealed, and this Act being necessary for the preservation of the public peace, health and safety, an emergency is declared, and this Act takes effect from and after its passage.

Approved March 19, 1923.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 153 of 268

# ACTS AND RESOLVES

OF

## MASSACHUSETTS

## 1926

**EXHIBIT "R"**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 154 of 268

☞ The General Court, which was chosen November 4, 1924, assembled on Wednesday, the sixth day of January, 1926, for its second annual session.

His Excellency ALVAN T. FULLER and His Honor FRANK G. ALLEN continued to serve as Governor and Lieutenant Governor, respectively, for the political year of 1926.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 155 of 268

ACTS, 1926. — CHAP. 395.                    485

be credited by the state treasurer to the cities and towns of the metropolitan parks district in the proportions in which they annually pay money into the state treasury to meet one half of the cost of maintenance of boulevards under said section fifty-six, and the other half shall be credited by him to the Highway Fund.        *Approved May 29, 1926.*

---

AN ACT REGULATING THE SALE, RENTAL AND LEASING OF CERTAIN FIREARMS AND PROHIBITING LOANS OF MONEY THEREON.                    *Chap.*395

*Be it enacted, etc., as follows:*

SECTION 1.   Chapter one hundred and forty of the General Laws, as amended in section one hundred and twenty-three by section four of chapter four hundred and eighty-five of the acts of nineteen hundred and twenty-two and by section one of chapter two hundred and eighty-four of the acts of nineteen hundred and twenty-five, is hereby further amended by striking out said section one hundred and twenty-three and inserting in place thereof the following: —   *Section 123.*   The license shall be expressed to be and shall be subject to the following conditions: First, That the provisions in regard to the nature of the license and the building in which the business may be carried on under it shall be strictly adhered to.   Second, That every licensee shall before delivery of a firearm make or cause to be made a true entry in a sales record book to be furnished by the licensing authorities and to be kept for that purpose, specifying the description of the firearm, the make, number, whether single barrel, magazine, revolver, pin, rim or central fire, whether sold, rented or leased, the date and hour of such delivery, and shall, before delivery as aforesaid, require the purchaser, renter or lessee personally to write in said sales record book his full name, sex, residence and occupation. The said book shall be open at all times to the inspection of the licensing authorities and of the police.   Third, That the license or a copy thereof, certified by the recording officer of the licensing authorities or by the clerk of the town by which it is issued, shall be displayed on the premises in a position where it can easily be read.   Fourth, That no firearms shall be displayed in any outer window of said premises or in any other place where they can readily be seen from the outside. Fifth, That the licensee shall, once a week, send a copy of the record of sales, rentals and leases made by him for the preceding seven days to the licensing authorities and to the commissioner of public safety.   Sixth, That every firearm shall be delivered securely wrapped and fastened and shall be unloaded when delivered.   Seventh, That no delivery of a firearm shall be made on the day of application for the purchase, rental or lease thereof, except to a person having a license to carry a pistol or revolver issued under section one hundred and thirty-one.   Eighth, That no firearm shall be sold, rented or leased to a person who has not a permit,

*Marginal notes:*
G. L. 140, § 123, etc., amended.

Conditions of licenses to sell, rent or lease certain firearms.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 156 of 268

486                ACTS, 1926. — CHAP. 395.

Conditions of licensee to sell, rent or lease certain firearms.

then in force, to purchase, rent or lease a pistol or revolver issued under section one hundred and thirty-one A. Ninth, That upon a sale, rental or lease of a firearm, the licensee under section one hundred and twenty-two shall take up such permit and shall endorse upon it the time and place of said sale, rental or lease, and shall forthwith transmit the same to the commissioner of public safety. Tenth, That the license shall be subject to forfeiture as provided in section one hundred and twenty-five for breach of any of its conditions, and that, if the licensee is convicted of a violation of any such condition, his license shall thereupon become void.

G. L. 140, § 128, etc., amended.

SECTION 2. Section one hundred and twenty-eight of said chapter one hundred and forty, as amended by section two of said chapter two hundred and eighty-four, is hereby further amended by striking out, in the fourth line, the words "or sixth" and inserting in place thereof the words: —, sixth, seventh, eighth or ninth, — so as to read as follows: — Section 128. Any licensee under a license described in section one hundred and twenty-three, and any employee or agent of such a licensee, who violates any provision of said section required to be expressed in the second, fourth, sixth, seventh, eighth or ninth condition of said license, and any person who, without being licensed as hereinbefore provided, sells, rents or leases, or exposes for sale, rental or lease, or has in his possession with intent to sell, rent or lease, a firearm, shall be punished by imprisonment for not less than six months nor more than two years.

Penalty for violations of conditions of licenses by licensees and for selling, etc., firearms without a license.

G. L. 140, two new sections after § 131. Permits to purchase, rent or lease certain firearms, granting to certain persons.

SECTION 3. Said chapter one hundred and forty is hereby further amended by inserting after section one hundred and thirty-one the two following new sections: — Section 131A. A licensing authority under the preceding section, upon the application of a person qualified to be granted a license thereunder by such authority, may grant to such a person, other than a minor, a permit to purchase, rent or lease a pistol or revolver if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will. Such permits shall be issued on forms furnished by the commissioner of public safety, shall be valid for not more than ten days after issue, and a copy of every such permit so issued shall within one week thereafter be sent to the said commissioner. Whoever issues a permit in violation of this section shall be punished by imprisonment for not less than six months nor more than two years in a jail or house of correction.

Forms, duration, etc.

Copy to commissioner of public safety. Penalty.

Loans of money on certain firearms prohibited.

Section 131B. Whoever loans money secured by mortgage, deposit or pledge of a pistol or revolver shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year, or by both.

*Approved May 29, 1926.*

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 157 of 268

# PUBLIC ACTS

OF

# THE LEGISLATURE

OF THE

## STATE OF MICHIGAN

PASSED AT THE

## REGULAR SESSION OF 1927

CONTAINING JOINT RESOLUTIONS AND AMENDMENTS
TO THE CONSTITUTION



COMPILED BY
### JOHN S. HAGGERTY
SECRETARY OF STATE

LANSING, MICHIGAN.
ROBERT SMITH CO., STATE PRINTERS,
1927.

## EXHIBIT "S"

other purpose. Such persons shall hold office during the term of their employment by the state highway department but the authority herein vested shall cease upon the termination of such employment. The persons so appointed shall by reason of such appointment be members of the department of public safety during the terms of such appointment but shall serve without pay as members thereof.

Approved June 2, 1927.

———

[No. 372.]

AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession of certain weapons and attachments; to prohibit the pawning of certain firearms; to prohibit the sale, offering for sale, or possession for the purpose of sale of written or printed matter containing any offer to sell or deliver certain firearms or devices within this state; to provide penalties for the violations of this act, and to repeal act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen.

*The People of the State of Michigan enact:*

SECTION 1. The word "pistol" as used in this act shall mean any firearm, loaded or unloaded, thirty inches or less in length. The word "purchaser" shall mean any person who receives a pistol from another by purchase, gift or loan. The word "seller" shall mean any person who sells, furnishes, loans or gives a pistol to another.   Words defined.

SEC. 2. No person shall purchase a pistol as defined in this act without first having obtained a license therefor as   License before purchase.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 158 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 159 of 268

888                    PUBLIC ACTS, 1927—No. 372.

prescribed herein.  The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue licenses to purchase pistols to applicants residing within the respective territories herein mentioned.  No such license shall be granted to any person except he be nineteen years of age or over, and has resided in this state six months or more, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere.  Applications for such licenses shall be signed by the applicant under oath upon forms provided by the commissioner of public safety.  Licenses to purchase pistols shall be executed in duplicate upon forms provided by the commissioner of public safety and shall be signed by the licensing authority.  One copy of such license shall be delivered to the applicant and the duplicate of such license shall be retained by such licensing authority as a permanent official record for a period of six years.  Such license shall be void unless used within ten days after the date of its issue.  Any person who shall sell to another any pistol as defined in this act without complying with the requirements of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail not more than ninety days, or both such fine and imprisonment in the discretion of the court.  Such license shall be signed in ink by the holder thereof in the presence of the person selling, loaning or giving a pistol to such licensee and shall thereupon be taken up by such person, signed by him in ink and shall be delivered or sent by registered mail within forty-eight hours to the commissioner of public safety.  The seller shall certify upon said license in the space provided therefor the name of the person to whom such pistol was delivered, the make, style, calibre and number of such pistol, and shall further certify that such purchaser signed his name on said license in the presence of the seller.  The provisions of this section shall not apply to the purchase of pistols from wholesalers by dealers regularly engaged in the business of selling pistols at retail, nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

**To whom granted.**

**Executed in duplicate.**

**Misdemeanor; penalty.**

SEC. 3.  It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon.  Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand

**Unlawful to manufacture, etc., certain firearms, etc.**

**Penalty for violation.**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 160 of 268

dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. The provisions of this section shall not apply, however, to any person, firm or corporation manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof.

SEC. 4.   Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over three inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Felony, what deemed.* *Penalty.*

SEC. 5.   No person shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him.  No person shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license therefor as herein provided.  Any person violating the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Unlawful to carry, etc., dagger, etc.*

SEC. 6.   The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issue licenses to carry pistols concealed on the person to applicants residing within the respective territories herein mentioned.  The county clerk of each county shall be clerk of such licensing boards, which boards shall be known in law as "The Concealed Weapon Licensing Board."  No such license to carry a pistol concealed on the person shall be granted to any person except he be nineteen years of age or over and has resided in this state six months or over, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has *Concealed weapon licensing board.* *To whom license granted.*

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 161 of 268

890                         PUBLIC ACTS, 1927—No. 372.

other proper reasons, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere.

**Chairman of board.** The prosecuting attorney shall be the chairman of the said board, which shall convene at least once in each calendar month and at such other times as they shall be called to convene by the chairman. Such licenses shall be issued only upon written application signed by the applicant and on his oath and upon forms provided by the commissioner of public safety. Such licenses shall issue only with the approval of a majority of said board and shall be executed in triplicate upon forms provided by the commissioner of public safety and shall be signed in the name of the concealed weapon licensing board by the county clerk and the seal of the circuit court affixed thereto. One copy of such license shall be delivered to the applicant, the duplicate of said license shall be retained by the county clerk as a permanent official record for a period of six years, and the triplicate of such license shall be forwarded to the commissioner of public safety who shall file and index licenses so received by him and keep the same as a permanent official record for a period

**Duration of license.** of six years. Each license shall be issued for a definite period of not more than one year, to be stated in the license, and no renewal of such license shall be granted except upon the filing of a new application. Every license issued hereunder shall bear the imprint of the right thumb of the licensee, or, if that be not possible, of the left thumb or some other finger of such licensee. Such licensee shall carry such license upon his person at all times when he may be carrying a pistol concealed upon his person and shall display such license upon the request of any peace officer.

**When license to expire.** SEC. 7. All licenses heretofore issued in this state permitting a person to carry a pistol concealed upon his person shall expire at midnight, December thirty-one, nineteen hundred twenty-seven.

**When license revoked.** SEC. 8. The licensing board herein created by section six may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing.

SEC. 9.  On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county.  Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section.  A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and filed and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police, as the case may be.  The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five.  Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

SEC. 10.  No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail for not more than ninety days or by both such fine and imprisonment in the discretion of the court.

SEC. 11.  No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol.  Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same.  Any person convicted under this section shall be punished by a fine not to exceed five hundred dollars or by imprisonment

*Marginal notes:*

Safety inspection of weapons.

Certificate issued.

Pistol not accepted in pawn.

Alteration of pistol unlawful.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 162 of 268

Case 1:19-cv-00578-JMS-RT   Document 92-20   Filed 05/28/21   Page 7 of 8   PageID #: 846

in the state prison not to exceed two years or by both such fine and imprisonment in the discretion of the court.

**Exceptions to act.**

SEC. 12.   The provisions of section two, three, five and nine shall not apply to any peace officer of the state or any subdivision thereof who is regularly employed and paid by the state or such subdivision, or to any member of the army, navy or marine corps of the United States, or of organizations authorized by law to purchase or receive weapons from the United States or from this state, nor to the national guard or other duly authorized military organizations when on duty or drill, nor to the members thereof in going to or returning from their customary places of assembly or practice, nor to a person licensed to carry a pistol concealed upon his person issued by another state, nor to the regular and ordinary transportation of pistols as merchandise, or to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

**When unlawfully possessed.**

SEC. 13.   When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that any pistol or other weapon or device mentioned in this act is unlawfully possessed or carried by any person, such magistrate shall, if he be satisfied that there is reasonable cause to believe the matters in said complaint be true, issue his warrant directed to any peace officer, commanding him to search the person or place described in such complaint, and if such pistol, weapon or device be there found, to seize and hold the same as evidence of a violation of this act.

**Forfeited to state.**

SEC. 14.   All pistols, weapons or devices carried or possessed contrary to this act are hereby declared forfeited to the state.

**Certain books, etc., unlawful to sell, etc.**

SEC. 15.   It shall be unlawful to sell or deliver within this state, or to offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, magazine, newspaper or other form of written or printed matter offering to sell or deliver, or containing an offer to sell or deliver to any person within this state from any place without this state any pistol or any weapon or device mentioned in section three hereof.   The provisions of this section shall not apply to sales of or offers to sell pistols at wholesale to persons regularly engaged in the business of selling such pistols at wholesale or retail, nor to sales or offers to sell such pistols made or authorized by the United States government or any department or agency thereof.

**Penalty for violation.**

SEC. 16.   Any person violating the provisions of section fifteen of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one hundred dollars, or by imprisonment in the county jail not to exceed ninety days, or by both such fine and imprisonment in the discretion of the court.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 163 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 164 of 268

SEC. 17.  Act number two hundred seventy-four of the **Acts repealed.** public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen, are hereby repealed:  *Provided, however,* That any **Proviso.** proceedings pending under any of said sections herein repealed shall not be affected hereby but shall be concluded in accordance with the law of such repealed section or sections.

SEC. 18.  This act is declared to be severable, and should **Saving clause.** any section hereof be hereafter declared unconstitutional or otherwise invalid, the remainder of the act shall not be affected thereby.

Approved June 2, 1927.

---

## [No. 373.]

AN ACT to amend section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen hundred fifteen, entitled "An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms of civil actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act," being section thirteen thousand two hundred fifty-three of the compiled laws of nineteen hundred fifteen, as amended by act number two hundred forty-three of the public acts of nineteen hundred seventeen, and to add a new section thereto to stand as section thirty-one.

*The People of the State of Michigan enact:*

SECTION 1.  Section twenty-five of chapter thirty of act **Section amended.** number three hundred fourteen of the public acts of nineteen

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 165 of 268

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>          Plaintiffs,<br><br>   vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>       Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, a copy of the foregoing

document was filed electronically and served through CM/ECF on the following at

their last known addresses:

ALAN ALEXANDER BECK, ESQ.     Alan.alexander.beck@gmail.com
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123

STEPHEN D. STAMBOULIEH, ESQ.   stephen@sdslaw.us
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654

Attorneys for Plaintiffs
TODD YUKUTAKE and DAVID KIKUKAWA

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 166 of 268

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

2-ER-278

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 167 of 268

CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI         3835
KENDALL J. MOSER         6515
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1494
Facsimile:  (808) 586-1369
E-Mail: Caron.M.Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>               Plaintiffs,<br><br>   vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>               Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S (1) COUNTER MOTION FOR SUMMARY JUDGMENT, AND (2) MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>ECF No. 85 |

2-ER-279

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 168 of 268

<u>Hearing</u>
Date:  June 28, 2021
Time:  10:00 a.m.
Chief Judge J. Michael Seabright

Trial Date:  February 23, 2022

## DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S (1) COUNTER MOTION FOR SUMMARY JUDGMENT, AND (2) OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY <u>JUDGMENT</u>

Defendant Clare E. Connors, in her Official Capacity as the Attorney General of the State of Hawaii ("Defendant"), by and through her attorneys, Caron M. Inagaki and Kendall J. Moser, Deputy Attorneys General, hereby (1) counter moves this Court for an order granting summary judgment in her favor as to all of Plaintiffs' claims asserted against her in the First Amended Verified Complaint for Declaratory and Injunctive Relief, and (2) submits her opposition to Plaintiffs' Motion for Summary Judgment [ECF No. 85].

This counter motion and opposition is made pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure and Rule 7.7 of the Local Rules of Practice for the United States District Court for the District of Hawaii, and is based on the memorandum in support of motion, the records and files herein, and the arguments at the hearing of this motion.

2-ER-280

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 169 of 268

This counter motion is made following the status conference with the Court held on April 6, 2021.  A conference of counsel pursuant to Local Rule 7.8 was held previously.

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Caron M. Inagaki
CARON M. INAGAKI
Deputy Attorney General

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

2-ER-281

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 170 of 268

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

I.    INTRODUCTION ................................................................................. 1

II.   THE HISTORY OF HAWAII'S FIREARM PERMITTING
      AND REGISTRATION LAWS ............................................................ 2

III.  STANDARD OF REVIEW ................................................................... 8

IV.   ARGUMENT ......................................................................................... 8

      A.    Ninth Circuit Law on the Second Amendment ..................... 8

      B.    Plaintiffs' Claim That the Ten-Day Statutory Expiration
            Date on the Validity of Permits to Acquire Handguns
            Violates Their Second Amendment Rights is Meritless,
            and Summary Judgment Should Enter in Favor of Defendant..........11

      C.    Plaintiffs' Claim That Their Second Amendment Rights
            are Being Violated by Requiring In-Person Inspection of
            Firearms is Likewise Meritless, and Summary Judgment
            Should Enter in Favor of Defendant.....................................18

V.    CONCLUSION ..................................................................................... 25

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 171 of 268

## TABLE OF AUTHORITIES

### CASES

*Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988) .................... 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................ 8, 9, 12, 15, 21

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) .................................................. 13

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .................... 13, 22

*Heller v. District of Columbia*, 45 F. Supp. 3d 35 (D.D.C. Cir. 2014) ................. 21

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ....................... 18-19

*Jackson v. City and County of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) .................... 8, 9, 10, 11, 12, 14, 15, 21, 22, 24

*National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco,*
    *Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012) ........................... 13

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ......................... 10, 12, 14, 21, 23

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ................................. 10, 21

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ............................ 20, 24

*United States v. Mobley*, 956 F.2d 450 (3rd Cir. 1992) ......................................... 21

*Young v. State of Hawaii*, 992 F.3d 765 (9th Cir. 2021) ....................................... 11

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 172 of 268

## STATUTES

1907 Haw. Sess. Laws Act 85 .................................................................... 2

1919 Haw. Sess. Laws Act 124 .................................................................. 3

1923 Haw. Sess. Laws Act 156 .................................................................. 3

1927 Haw. Sess. Laws Act 206 ......................................................... 3, 4, 25

1933 Haw. Sess. Laws Act 26 .......................................................... 4, 5, 12

Revised Laws of Hawaii §§ 2541 and 2542 (1935) .................................... 6

Hawaii Revised Statutes §§ 134-2, 134-3, and 134-10 (1968) .................. 6

1988 Haw. Sess. Laws Act 275 ................................................................ 6-7

1990 Haw. Sess. Laws Act 195 .................................................................. 7

Hawaii Revised Statutes §§ 134-2, 134-3, and 134-10
      (2011 and Supp. 2018) .............................. 6-7, 14, 18, 19, 20, 22, 24

Hawaii Revised Statutes § 134-7(c)(1) and (3), 134-7(f) ....................... 17

Hawaii Revised Statutes § 134-8 ............................................................ 19

Hawaii Revised Statutes § 134-8.5 ......................................................... 19

Hawaii Revised Statutes §§ 134-23(a)(6), 134-24(a)(6),
      and 134-25(a)(6) .......................................................... 20, 22

1923 Ark. Acts 430 ............................................................................... 12

1926 Mass. Acts 395 ............................................................................. 12

1927 Mich. Pub. Acts 372 ..................................................................... 13

1921 Mo. Law  H. B. 168........................................................................ 12

**2-ER-284**

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 173 of 268

## COMMITTEE REPORTS

S. Stand. Comm. Rep. No. 388 in 1919 Senate Journal ............................... 3, 14, 23

S. Stand. Comm. Rep. No. 384 in 1927 Senate Journal ........................................... 4

H. Stand. Comm. Rep. No. 89 in 1933 House Journal ............................................ 4

S. Stand. Comm. Rep. No. 3058 in 1990 Senate Journal ........................................ 7

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 174 of 268

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>          Plaintiffs,<br><br>   vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>          Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

This is a Second Amendment case in which the Plaintiffs ask this Court to find provisions in two statutes, Hawaii Revised Statutes ("HRS") §§ 134-2 and 134-3, unconstitutional.  Plaintiffs complain that pursuant to those statutes (1) a permit to acquire a handgun is only valid for ten days after the date of issuance, and (2) they must bring their newly acquired handguns to the Honolulu Police Department for registration.  Plaintiffs argue that their Second Amendment right to acquire handguns is substantially burdened by these provisions.

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 175 of 268

For the reasons and authorities discussed below, Defendant respectfully requests that summary judgment be entered in her favor and against the Plaintiffs.[1]

## II. THE HISTORY OF HAWAII'S FIREARM PERMITTING AND REGISTRATION LAWS.

Hawaii's firearm permitting and registration laws date back well before Hawaii became a state.  A basic registration requirement was first adopted by the Territorial Legislature in 1907.  *See* Defendant's (1) Opposition to Plaintiffs' Separate Concise Statement of Material Facts in Support of Motion for Summary Judgment, and (2) Concise Statement of Material Facts in Support of Counter Motion for Summary Judgment ("Concise Statement") at #1.  Act 85 required "any person, firm, corporation or copartnership" residing or doing business in Hawaii that has "any fire arm or fire arms or any ammunition" in its possession to file a "description" of the firearm, firearms, or ammunition with the county clerk.  *Id. at #2.*  The description included the "class of fire arms," the "name of the maker[,] and the factory number."  *Id. at #3.*  The name of the owner or possessor, the person's address, and the person's signature also had to be included on the description form.  *Id. at #4.*

---

[1] Plaintiffs settled their as-applied claims against the City and County of Honolulu. Only Plaintiffs' claims against Defendant Connors in her official capacity remain in this action.

2-ER-287

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 176 of 268

In 1919, the Territorial Legislature adopted a "permit to purchase"

requirement for firearms. *Id. at #5.* Act 124 provided that:

> Any person, firm, or corporation, dealing in or keeping
> for sale firearms, or any other person in possession of
> firearms, shall not make an individual or retail sale of
> any such firearms, unless the person desiring to purchase
> the same shall first have obtained from the sheriff or a
> deputy sheriff of the county or city and county a written
> permit for such purchase[.]

*Id.* The Senate Committee on Military stated the purpose of this provision in its

report:

> The purpose of this amendment is to have the sheriff or
> deputy sheriff of the county or City and County issue a
> permit to any one desiring to purchase firearms or
> ammunition, said permit to be presented to the vendor
> of said article and to be endorsed on the back thereof by
> said vendor describing the article so purchased, said
> permit to be immediately transmitted to the officer
> issuing the same. As this will enable the police authorities
> to have a better supervision and check over the sale of
> firearms, your Committee would recommend the passage
> of this bill.

*Id. at #6.*

In 1923, the Territorial Legislature passed Act 156 which changed the

language from a "permit to purchase" to a "permit to acquire." *Id. at #7.*

In 1927, the Territorial Legislature passed Act 206. *Id. at #8.* Act 206

clarified that the required "description" had to be in a "report" to the county sheriff

(Section 18) and that the "permit to acquire" applied to a "sale, gift, loan or

2-ER-288

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 177 of 268

otherwise" (Section 9) and not just to disposition by dealers (Section 23). *Id. at #9.* Act 206 also added a scheme by which firearms would be confined to a person's "dwelling house or business office" (Section 5), unless the person obtained a license to carry (Section 7). *Id. at #10.* An exception was also made for transporting a firearm in a wrapper between a place of purchase or repair, a home, or a place of business (Section 6). *Id. at #11.* Act 206 also prohibited the alteration of identifying marks: "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver" (Section 13). *Id. at #12.*

In passing Act 206, the Legislature indicated that its purpose was to make the firearms statutes more effective. *Id. at #13.* The bill "seeks to make effective the existing firearms statutes found in Chapter 128 of the Revised Laws of Hawaii 1925, those statutes having heretofore been of no practicable benefit to the people of this Territory because of inconsistencies and ambiguities." *Id.*

In the 1933-1934 Special Session, the firearms statutes were comprehensively revised when the Territorial Legislature passed Act 26. *Id. at #14.* The Legislature stated that "[t]he purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition." *Id. at #15.* Act 26 provided in relevant part:

4

SECTION 3:  Every person residing or doing business or temporarily sojourning within the Territory on the effective date of this Act who possesses a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already registered in the name of the present possessor, or who possesses ammunition of any kind or description, except shotgun ammunition, shall, **within ten days** of said effective date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

Every person arriving in the Territory after the effective date of this Act, who brings with him firearms or ammunition of the type and description set out in this section, shall register the same in a similar manner within forty-eight hours after arrival.

. . . .

SECTION 4:  No person residing or doing business or temporarily sojourning within the Territory shall take possession of any firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior Acts or unregistered, or of any ammunition of any kind or description, except shotgun ammunition, either through sale, gift, loan, bequest, or otherwise, whether procured in the Territory or imported by mail, express, freight, or otherwise, until he shall first have procured from the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein. . . . Such permit shall be void unless used **within ten days** after the date of issue. . . .

Any person acquiring a firearm or ammunition under the provisions of this section shall, **within five days** of acquisition, register same in the manner prescribed by Section 3 of this Act.

. . . .

2-ER-290

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 179 of 268

*See* Exhibit "G" to Defendant's Concise Statement (emphases added). *See also*
Revised Laws of Hawaii ("RLH") §§ 2541 and 2542 (1935) regarding registration
and permits to acquire, attached to Defendant's Concise Statement as Exhibit "I".

Thus, by 1933-1934, Hawaii's permitting and registration laws were taking
their modern form. The modern terminology, "registration" and "permit to
acquire," had replaced the previous language. The ten-day deadline to use a permit
to acquire was adopted. And the five-day deadline to register a firearm after
acquiring it was also adopted. The place to keep provision also took on its more
modern language, requiring persons to confine their firearms to the "possessor's
place of business, residence, or sojourn," except if it is carried in a wrapper
between a place of purchase or repair, a home, a place of business, or a place of
sojourn, or except if a concealed carry permit is granted.

In 1968, the Hawaii Revised Statutes ("HRS") replaced the Revised Laws of
Hawaii. The firearm registration provision was codified as HRS § 134-2, and the
permit to acquire provision was codified as HRS § 134-3. *Id. at #16.* The
prohibition on alteration of identification marks was codified as HRS § 134-10. *Id.
at #17.*

In 1988, HRS Chapter 134, Part I, was entirely recodified. *Id. at #18.* The
registration and permitting provisions were reversed, with the permit to acquire

6

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 180 of 268

provision becoming HRS § 134-2 and the registration provision becoming HRS § 134-3. *Id. at #19.*

Amendments have since been made to these statutes; however, they remain fundamentally the same. The current permit to acquire provision continues to be located in HRS § 134-2, *Id. at #20*, and the current registration provision continues to be located in HRS § 134-3. *Id. at #21.* The prohibition against alteration of identification marks is still located in HRS § 134-10. *Id. at #22.*

Hawaii's firearm registration and permitting statutes date back more than 100 years to 1907 and 1919, respectively, and took what is essentially their modern form in 1933-1934. As recently as 1990, the Legislature reasserted the public safety purpose underlying these statutes.

In 1990, the Legislature considered amending the statutes to prohibit the possession of firearms near public and private schools. *Id. at #23.* Ultimately, however, the Legislature decided to instead increase the penalties under the existing firearms laws. *Id. at #24.* The Senate Judiciary Committee explained: "While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that *our entire community* should be a *safe place* to live and learn and that *everyone* deserves to feel free from the *threat of harm wherever they go*." (emphases added). *Id. at #25.* Consequently,

2-ER-292

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 181 of 268

the purpose behind Hawaii's firearm registration and permitting statutes is to make the entire community safer by reducing the threat of gun violence.

III.    STANDARD OF REVIEW

Defendant Connors agrees with the legal standards applicable to motions for summary judgment set out in the Plaintiffs' motion.  There are no genuine issues of material fact that would preclude the entry of summary judgment in this case.

IV.    ARGUMENT

A.    Ninth Circuit Law on the Second Amendment.

Following the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), most courts of appeals, including the Ninth Circuit, have adopted a two-step analysis for Second Amendment cases. "The two-step inquiry . . . '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.'" *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

In the first step, the question is "'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations and brackets

2-ER-293

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 182 of 268

omitted).  In *Heller I*, the Supreme Court set forth non-exhaustive categories of

"presumptively lawful regulatory measures" that are presumed to be consistent

with the historical scope of the Second Amendment:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on ***longstanding*** prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or ***laws imposing conditions and qualifications on the commercial sale of arms***.

*Heller I*, 554 U.S. at 626–27 & n.26 (emphases added).  The Court, however, did

not define the contours of these "presumptively lawful" categories.  *See id.* at 635

("[T]here will be time enough to expound upon the historical justifications for the

exceptions we have mentioned if and when these exceptions come before us.").

"If a prohibition falls within the historical scope of the Second Amendment,

[the court] must then proceed to the second step of the Second Amendment inquiry

to determine the appropriate level of scrutiny." *Jackson*, 746 F.3d at 960.  When

ascertaining the appropriate level of scrutiny, courts consider: "(1) how close the

law comes to the core of the Second Amendment right and (2) the severity of the

law's burden on the right." *Id.* at 960-61 (internal quotation marks omitted).  "A

law that implicates the core of the Second Amendment right ***and*** severely burdens

that right warrants strict scrutiny.  Otherwise, intermediate scrutiny is appropriate.

'[I]f a challenged law does not implicate a core Second Amendment right, *or* does not place a substantial burden on the Second Amendment right,' the court may apply intermediate scrutiny." *Silvester v. Harris*, 843 F.3d 816, 822 (9th Cir. 2016) (emphases added) (citations omitted).

"[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). And in determining whether a burden is substantial, the Ninth Circuit has held that "laws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Jackson*, 746 F.3d at 961 (emphasis in original). Furthermore, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Id.*

If a challenged law does not implicate a core Second Amendment right or does not place a substantial burden on the Second Amendment right, then intermediate scrutiny may be applied. *Id.* at 961. Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective. *Id.* at 965. "[I]ntermediate scrutiny does not require the least restrictive means of furthering a

2-ER-295

given end." *Id.* at 969. Even if there are "less burdensome means," a law can

survive intermediate scrutiny. *Id.*

In a recent Second Amendment decision, *Young v. State of Hawaii*, 992 F.3d

765 (9th Cir. 2021), the Ninth Circuit explained that "[a] facial challenge is a claim

that the legislature has violated the Constitution, while an as-applied challenge is a

claim directed at the execution of the law," and that "[b]ecause a facial challenge is

directed to the legislature, the plaintiff must show that 'no set of circumstances

exists under which the [statute] would be valid.'" Id. at 779 (citations omitted).

B.     Plaintiffs' Claim That the Ten-Day Statutory Expiration
       Date on the Validity of Permits to Acquire Handguns
       Violates Their Second Amendment Rights is Meritless,
       and Summary Judgment Should Enter in Favor of Defendant.

Plaintiffs argue that their Second Amendment rights are being violated

because permits to acquire handguns are valid for only ten days. This claim lacks

merit because (1) this statutory provision is longstanding, (2) it does not impose a

substantial burden on the Plaintiffs, and (3) it furthers the governmental objective

of public safety.

The first step in the Ninth Circuit's Second Amendment analysis is

determining "whether the challenged law burdens conduct protected by the Second

Amendment[.]" *Jackson*, 746 F.3d at 960. The first step includes considering

whether there are "presumptively lawful" "longstanding" exceptions that are

applicable. *Heller I* listed "laws imposing ***conditions and qualifications on the***

11

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 184 of 268

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 185 of 268

*commercial sale of arms*" as one of those exceptions.  *See Heller I*, 554 U.S. at 626-27 & n.26 (emphasis added).  *See also Silvester*, 843 F.3d at 829-32 (Thomas, C.J., concurring) (applying this exception to waiting periods).  Registration and permitting requirements are conditions and qualifications attached to the sale (or other transfer) of firearms.  In Hawaii, registration and permitting requirements, in general, date back to 1907 and 1919, respectively.  Therefore, a ten-day expiration date, as part of the permitting process, should be included in the exception.

More specifically, in Hawaii, the ten-day expiration date for permits to acquire dates back to 1933-1934.  *See* Act 26, § 4 at p. 37, Exhibit "G" to Defendant's Concise Statement.  Other states passed similar laws during that era.  For example, the state of Missouri's 1921 statute regulating the sale and possession of firearms included a provision that permits for pistols, revolvers or firearms of comparable size were valid for only thirty days after issuance.  *See* Exhibit "P" to the Declaration of Kendall J. Moser at Section 2.  In 1923, Arkansas required that any person who possessed a pistol or revolver "present" their firearm to the county clerk for recordation.  *See* Exhibit "Q" to the Declaration of Kendall J. Moser at Section 1.  Massachusetts amended its firearms statutes in 1926 to read that permits to purchase pistols and revolvers were valid for no more than ten days, as in Hawaii.  *See* Exhibit "R" to the Declaration of Kendall J. Moser at Section 3.

2-ER-297

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 186 of 268

In 1927, Michigan too had a ten-day expiration date on licenses to purchase pistols, and required a safety inspection by the police. *See* Exhibit "S" to the Declaration of Kendall J. Moser at Sections 2, 9.

Numerous federal cases hold that firearm regulations dating back to the early 20th century are sufficiently "longstanding" so as to qualify for the exception. *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (mentioning "early twentieth century" laws); *National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012) ("By 1923, therefore, twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1254-55 (D.C. Cir. 2011) ("*Heller II*") ("The Court in *Heller [I]* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century."). Therefore, the ten-day expiration date for permits to acquire, which dates back to 1933-34, is a presumptively lawful longstanding exception to the Second Amendment and that should be the end of the analysis.

If the Court proceeds to the second step of the *Jackson* analysis, the core of the Second Amendment is presumably implicated since Plaintiffs state that they want to purchase handguns. But the requirement of using a permit to acquire within ten days is not a substantial burden. It affects only ***the manner*** in which a

13

2-ER-298

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 187 of 268

person purchases or obtains his or her firearm and is not a ban. *See Jackson*, 746 F.3d at 961. Moreover, ten days is not unreasonably burdensome. For pistols and revolvers, a separate application and permit is required for each transaction. HRS § 134-2(e). Consequently, each permit is good for only one thing. Ten days is enough time within which to perform a single transaction, which is the only thing the permit is for. In contrast, permits to acquire rifles and shotguns are good for subsequent purchases. *Id.* Therefore, they are valid for a longer period -- one year. *Id.* For these reasons, the ten-day expiration date for pistols and revolvers is not a substantial burden. Although the core of the Second Amendment may be implicated, there must ***also*** be a substantial burden in order for strict scrutiny to be applied. *See Silvester*, 843 F.3d at 822. Plaintiffs' argument that strict scrutiny applies is clearly incorrect. *See* Memorandum, ECF 85-1 at p. 17 of 30. Because there is no substantial burden, intermediate scrutiny should be applied. *See Silvester*, 843 F.3d at 822.

In general, the "significant, substantial, or important" government objective in requiring people to comply with permitting requirements is public safety in that such requirements provide more effective supervision and control over the sale, transfer, and possession of firearms. *See* S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at p. 1420, Exhibit "C" to Defendant's Concise Statement. More specifically, a ten-day expiration date ensures that the information in the permit is

14

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 188 of 268

current and it minimizes the risk of an unauthorized person using it if it is lost or stolen. Plaintiffs' objection to the ten-day expiration date for permits to acquire is more a matter of the "reasonable fit" between the challenged law and the asserted objective. *See Jackson*, 746 F.3d at 965. Plaintiffs argue that ten days is too short and the fact that rifles and shotguns have a one-year expiration date means that it is possible to lessen the burden. However, intermediate scrutiny does not require the least restrictive means of furthering a given end. *Id.* at 969. Therefore, even if permits for pistols and revolvers could have a longer expiration date, there is no constitutional imperative that requires it.

There are in fact strong reasons for distinguishing between pistols and revolvers on one hand and rifles and shotguns on the other. Pistols and revolvers are more concealable and therefore more dangerous. This is the reason why sawed-off shotguns and switchblades are considered dangerous and unusual weapons. *See Heller I*, 554 U.S. at 625; *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988). Therefore, it makes sense to impose stricter permitting requirements on pistols and revolvers than on rifles and shotguns.

Plaintiffs further argue that there is no need to require current information in a permit to acquire because information on applicants is continuously updated as a result of Hawaii's participation in the "Rap Back" Service. *See* Memorandum,

15

2-ER-300

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 189 of 268

ECF 85-1 at pp. 25-27 of 30.  The Rap Back Service is a service operated by the

Federal Bureau of Investigation:

> The Rap Back service allows authorized agencies to receive
> notification of activity on individuals who hold positions of
> trust (e.g. school teachers, daycare workers) or who are under
> criminal justice supervision or investigation, thus eliminating
> the need for repeated background checks on a person from the
> same applicant agency. Prior to the deployment of Rap Back,
> the national criminal history background check system provided
> a onetime snapshot view of an individual's criminal history
> status. With Rap Back, authorized agencies can receive on-
> going status notifications of any criminal history reported to
> the FBI after the initial processing and retention of criminal or
> civil transactions.  By using fingerprint identification to identify
> persons arrested and prosecuted for crimes, Rap Back provides
> a nationwide notice to both criminal justice and noncriminal
> justice authorities regarding subsequent actions.

Federal Bureau of Investigation, *Next Generation Identification (NGI):  Rap Back*,

https://www.fbi.gov/services/cjis/fingerprints-and-other-biometrics/ngi (last visited

May 22, 2021)  However, what Plaintiffs fail to understand is that under Rap

Back, Hawaii authorities will only receive notifications of further "criminal

history," such as arrests and prosecutions.  There are people other than criminals

who are also prohibited from owning or possessing a firearm, such as those "under

treatment or counseling for addiction to, abuse of, or dependence upon any

dangerous, harmful, or detrimental drug, intoxicating compound . . . or intoxicating

liquor" and those "diagnosed as having a significant behavioral, emotional, or

mental disorders as defined by the most current diagnostic manual of the American

16

2-ER-301

Psychiatric Association or for treatment for organic brain syndromes[.]" *See* HRS § 134-7(c)(1) and (3), Exhibit "L" to Defendant's Concise Statement. The Rap Back Service will not provide notifications regarding such persons. Persons subject to civil protective orders or restraining orders are also disqualified from owning or possessing firearms, but they do not appear to be subject to the Rap Back Service since the initial granting of those orders is civil rather than criminal in nature. *See* HRS § 134-7(f). They would only be subject to the Rap Back Service if they subsequently violated those orders, which would then constitute crimes. Further, even regarding persons who commit crimes, the Rap Back Service is not infallible, and there is no reason why the information required in a permit to acquire should not supplement the Rap Back Service in case individuals fall through the cracks.

Plaintiffs further argue that there is no need to require current information in a permit to acquire because qualifications such as the completion of firearms safety and education programs do not expire. *See* Memorandum, ECF 85-1 at pp. 26-27 of 30. However, Plaintiffs ignore other information in permits to acquire that can go out of date. Background information (such as one's name or address) can change, one's physical appearance can change over time, and one's mental health history can also change. Applicants for permits to acquire are required to provide this information, in the application form or an attached photograph, when they

17

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 191 of 268

apply. *See* HRS § 134-2(b). A relatively short expiration date will ensure that the information remains accurate when the person acquires his or her firearm.

For these reasons, Plaintiffs' claim concerning the ten-day statutory expiration date for permits to acquire handguns is meritless. Summary judgment should therefore enter in favor of Defendant.

> C.   Plaintiffs' Claim That Their Second Amendment Rights are Being Violated by Requiring In-Person Inspection of Firearms at Registration is Likewise Meritless, and Summary Judgment Should Enter in Favor of Defendant.

Plaintiffs rely on the majority opinion in *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller IV*"), for their argument that requiring inspection of firearms at registration is improper. *See* Memorandum, at ECF 85-1 at pp. 29-30 of 30. In *Heller IV*, the majority struck down the District of Columbia's requirement that the person bring the firearm with him or her to be registered. *Heller IV*, 801 F.3d at 277. The majority did so based on the idea that a person would not go to the trouble of registering a weapon other than the weapon in his or her possession. *Id.* The majority also stated that bringing a firearm in to the police would more likely be a threat to public safety because of the risk that the gun might be stolen en route or that the would-be registrant might be arrested or even shot by police seeing a "man with a gun" or a gun case. *Id.*

The majority's reasoning is deeply flawed and this Court should not follow it. As the concurring and dissenting opinion in *Heller IV* pointed out, inspection of

2-ER-303

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 192 of 268

the firearm would not just address deliberate falsehoods but also innocent mistakes. *Id.* at 285-86 (Henderson, J., concurring in part and dissenting in part). Some people might innocently make mistakes in transcribing serial numbers or other identifying information. More importantly, some people might not be aware that their firearm violates Hawaii law until they bring it to the police station and the police firearms unit inspects it. *See id.* at 286.

HRS § 134-10 prohibits "alter[ing], remov[ing], or obliterat[ing] the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition." HRS § 134-8 (2011) prohibits, among other things, "assault pistols . . . ; automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms . . . ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol[.]" HRS § 134-8.5 (Supp. 2018) prohibits bump fire stocks, multiburst trigger activators, and trigger cranks. Some people might not be aware that their identifying marks have been altered, that their weapon constitutes an "assault pistol," that the barrel length of their rifle or shotgun is problematic, or that their accessories are prohibited.

The majority's argument in *Heller IV* that bringing the firearm to the police station itself threatens public safety is similarly weak. The risk that a firearm will

2-ER-304

be stolen exists whenever it is taken out in public, not just when taken to a police station for inspection. However, no one would argue that such a risk justifies banning the use of firearms for hunting or target shooting. That is because the utility of lawful uses (like hunting and target shooting) outweighs the minimal risk of the firearm being stolen. Similarly, the utility of bringing the firearm to the police station for inspection outweighs the minimal risk of it being stolen. And Hawaii's place to keep laws expressly permit people to take firearms from their "place of business, residence, or sojourn" to "[a] police station" in an enclosed container. HRS §§ 134-23(a)(6), 134-24(a)(6), and 134-25(a)(6) (2011). Therefore, the police should be expecting people to bring their guns and gun containers to the police station, especially since registration is required by HRS § 134-3.

Further, the *Heller IV* majority overlooked the fact that the ability to trace firearms and identify their owners is critical to law enforcement. *See United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) ("[P]reserving the ability of law enforcement to conduct serial number tracing . . . constitutes a substantial government interest."). However, in order to trace a weapon, one needs to be sure of the identity of the owner, the link from the owner to the weapon, and the identity of the weapon. But without verifying the identifying marks on a weapon, like the serial number, the identity of the weapon remains uncertain. That is why

20

2-ER-305

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 194 of 268

the District Court in *Heller III* said that bringing the gun in to verify the characteristics of the weapon is similar to the requirement of in-person identification of the registrant. *See Heller v. District of Columbia*, 45 F. Supp. 3d 35, 59 (D.D.C. 2014) ("*Heller III*"), *aff'd in part and rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller IV*"). The *Heller IV* majority ignored this critical link in the chain. *See United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992) ("It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible.").

Regardless of whether *Heller IV* is or is not followed, under the ordinary Ninth Circuit analysis, which is required under Ninth Circuit law, *see Silvester*, 843 F.3d at 820-22; *Jackson*, 746 F.3d at 960-61; *Chovan*, 735 F.3d 1136-37 (describing the Ninth Circuit's two-step inquiry), a requirement of bringing the firearm to the registration is constitutional. In the first step of the analysis, the requirement qualifies under the "presumptively lawful" "longstanding" exception for "laws imposing ***conditions and qualifications on the commercial sale of arms***[.]" *See Heller I*, 554 U.S. at 626-27 & n.26 (emphasis added); *Silvester*, 843 F.3d at 829-32 (Thomas, C.J., concurring). Registration and permitting requirements are conditions and qualifications attached to the sale (or other transfer) of firearms. In Hawaii, registration and permitting requirements, in

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 195 of 268

general, date back to 1907 and 1919, respectively.  Therefore, in-person

inspections, as part of the registration process, should be included in the exception.

Basic registration requirements are "longstanding in American law, accepted for a

century in diverse states and cities and now applicable to more than one fourth of

the Nation by population" and should be "presume[d] . . . not [to] impinge upon

the right protected by the Second Amendment."  *See Heller II*, 670 F.3d at 1254.

    If the analysis proceeds to the second step, the core of the Second

Amendment is presumably implicated since Plaintiffs state that they want to

purchase handguns.  But the requirement of bringing the firearm to the registration

does not impose a substantial burden.  It affects only ***the manner*** in which a person

registers his or her firearm; it is not a ban.  *See Jackson*, 746 F.3d at 961.

Moreover, it simply is not that hard to bring a firearm to the police station.  To a

certain extent, the police are already expecting it.  *See* HRS §§ 134-23(a)(6), 134-

24(a)(6), and 134-25(a)(6) (place to keep laws expressly permit taking firearms to

police stations); HRS § 134-3 (registration required within five days of

acquisition).  Plaintiffs' complaint that they have to take off time from work is just

a common and minor inconvenience, not a substantial burden.  *See* Memorandum,

ECF 85-1 at pp. 1-3, 14, 24 of 30.  And convenience is not the standard.  Although

the core of the Second Amendment may be implicated, there must ***also*** be a

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 196 of 268

substantial burden in order for strict scrutiny to be applied. *See Silvester*, 843 F.3d at 822.

In any event, as part of the Plaintiffs' settlement with the City and County of Honolulu in this case, the Honolulu Police Department Firearms Permit Unit agreed to extend their hours of operation. *See* the Declaration of Kendall J. Moser attached to Defendant's Concise Statement at ¶ 18. Presumably, the Plaintiffs, in coming to this agreement and choosing to dismiss with prejudice their claims against the City and County, deemed HPD's extended hours to be satisfactory and not in conflict with their work schedules.

Plaintiffs' argument that strict scrutiny applies is clearly incorrect. *See* Memorandum, ECF 85-1 at p. 17 of 30. Since there is no substantial burden, intermediate scrutiny should be applied. *See Silvester*, 843 F.3d at 822.

In general, the "significant, substantial, or important" government objective in requiring people to comply with registration requirements is public safety in that such requirements provide more effective supervision and control over the sale, transfer, and possession of firearms. *See* S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at 1420, Exhibit "C" to Defendant's Concise Statement. More specifically, the "significant, substantial, or important" government objective in requiring people to bring the firearm to the registration is that it ensures that the registration information is accurate, it ensures that the firearm complies with

2-ER-308

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 197 of 268

Hawaii law, and it confirms the identity of the firearm so as to facilitate tracing by law enforcement. *See Marzzarella*, 614 F.3d at 98. A "reasonable fit" between the challenged law and the asserted objective exists because ensuring that the registration information is accurate, ensuring that the firearm complies with Hawaii law, and confirming the identity of the firearm can easily be accomplished simply by bringing the firearm to the registration for inspection. *See Jackson*, 746 F.3d at 965.

It should also be noted that inspecting a firearm at the time of registration provides a significant benefit to the new owner of the firearm. HRS § 134-10 prohibits wilful alteration, removal, or obliteration of identifying marks on a firearm. However, it also states that "***[p]ossession*** of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be ***presumptive evidence*** that the possessor has altered, removed, or obliterated the mark of identity." *Id.* (emphasis added). Nevertheless, if a person voluntarily brings the firearm to a police station for registration soon after acquiring it (HRS § 134-3(b) requires registration within five days), and the alteration is discovered then, that is strong evidence ***rebutting the presumption*** that the possessor wilfully altered the identifying marks. Under those circumstances, it is much more likely that the prior owner was responsible for the alteration rather than the new owner. Therefore, in-person inspection at registration sets a "base line" that protects the

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 198 of 268

new owner.  Without this base line, the new owner could be accused of the alteration at some point in the distant future when the alteration is finally discovered.  At that point, the new owner would be left with little evidence other than his or her own word.  It should also be noted that the prohibition against altering identifying marks dates back to 1927.  *See* Act 206, § 13 at p. 212, Exhibit "E" to Defendant's Concise Statement.

Consequently, the requirement of bringing the firearm to the registration survives intermediate scrutiny.  Accordingly, summary judgment should likewise enter in favor of Defendant as to Plaintiffs' in-person inspection claim.

V.   <u>CONCLUSION</u>

Based on the foregoing reasons and authorities, Defendant respectfully requests that this Court enter summary judgment in her favor and against the Plaintiffs.

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS

2-ER-310

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 199 of 268

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA, | CIVIL NO. 19-00578 JMS-RT |
| Plaintiffs, | CERTIFICATE OF SERVICE |
| vs. | |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii, | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, a copy of the foregoing

document was filed electronically and served through CM/ECF on the following at

their last known addresses:

ALAN ALEXANDER BECK, ESQ.    Alan.alexander.beck@gmail.com
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123

STEPHEN D. STAMBOULIEH, ESQ.    stephen@sdslaw.us
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654

Attorneys for Plaintiffs
TODD YUKUTAKE and DAVID KIKUKAWA

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 200 of 268

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

2-ER-312

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 19-578 (JMS-RT) ) |
| | ) PLAINTIFFS' SEPARATE CONCISE |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU | ) STATEMENT OF FACTS IN SUPPORT ) OF MOTION FOR SUMMARY JUDGM- ) ENT; DECLARATION OF COUNSEL; ) CERTIFICATE OF SERVICE ) ) |
| | ) TRIAL: Not Scheduled |
| Defendants. | ) JUDGE: Hon. J. Michael Seabright |
| _____ | ) HEARING DATE: N/A |

**2-ER-313**

## PLAINTIFFS' SEPARATE CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56.1 of the Local Rules for the United States District Court for the District of Hawaii, Plaintiffs Todd Yukutake and David Kikukawa submit their concise statement of undisputed facts in support of their concurrently-filed Motion for Summary Judgment.

| FACT | EVIDENTIARY SUPPORT |
|---|---|
| 1. H.R.S. § 134-2(e) invalidates a permit to acquire a handgun after ten days. | *See* H.R.S. § 134-2(e). |
| 2. H.R.S. § 134-3(c) requires in person registration of handguns. | *See* H.R.S. § 134-3(c). |
| 3. Plaintiff Todd Yukutake is unable to take personally owned firearms on federal property. | *See* Verified Amended Complaint ("VAC"), ¶ 55. |
| 4. Plaintiff Yukutake must take off work to register firearms. | *See* VAC, ¶ 55; ¶59 |
| 5. Plaintiff David Kikukawa must take time off work to register handguns. | *See* VAC, ¶ 70. |
| 6. Plaintiff Kikukawa stated that it is often difficult for him to take off from work and when he does, he either has to use personal time or a vacation day to take off. | *See* VAC, ¶ 71. |
| 7. HRS § 846-2.7(a) and HRS § 846-2.7(b)(43) mandates entry of firearm purchasers in the FBI's rap back program. | *See* HRS § 846-2.7(a) and HRS § 846-2.7(b)(43). |
| 8. Rap back is a "service of the [FBI] that provides continuous criminal record monitoring … and notifies them when an | *See* Exhibit "G", p. 1 (SB 2954, signed into law on 6/22/2016). |

2

| | |
|---|---|
| individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country." | |
| 9. There were 357 permits to acquire handguns voided in 2020 because the applicant "failed to return for their permits within the specified time period". | *See* Exhibit B; Firearm Registrations in Hawaii, 2020. |
| 10. There were 370 permits to acquire handguns voided in 2019 because the applicant "failed to return for their permits within the specified time period". | *See* Exhibit C; Firearm Registrations in Hawaii, 2019. |
| 11. There were 437 permits to acquire handguns voided in 2018 because the applicant "failed to return for their permits within the specified time period". | *See* Exhibit "D"; Firearm Registrations in Hawaii, 2018. |
| 12. There were 367 permits to acquire handguns voided in 2017 because the applicant "failed to return for their permits within the specified time period". | *See* Exhibit "E"; Firearm Registrations in Hawaii, 2017. |
| 13. An application for Permit to Acquire Firearms requires the caliber, make, model, type and serial number of the firearm to be purchased. | *See* Exhibit "F". |

Dated: April 28th, 2021.


*/s/ Alan Alexander Beck*
Alan Alexander Beck


*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

3

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-578 (JMS-RT) |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU | ) ) ) ) ) ) ) | DECLARATION OF COUNSEL |
| | ) ) | TRIAL: Not Scheduled JUDGE: Hon. J. Michael Seabright HEARING DATE: N/A |
| Defendants. | ) ) | |

## DECLARATION OF STEPHEN D. STAMBOULIEH

I, Stephen D. Stamboulieh, declare as follows:

1. I am an attorney with the law firm of Stamboulieh Law, PLLC, counsel for Plaintiffs in the above-captioned action. I am admitted *pro hac vice* in this matter.

2. I am authorized and competent to testify to the matters contained in this declaration, and unless otherwise indicated, I make this declaration based upon personal knowledge.

3. I am an attorney licensed to practice in all state and federal courts in Mississippi; the Northern District of Texas; Southern District of Texas; Washington, D.C. District Court; Second, Third, Fourth, Fifth, Sixth, Ninth, Federal & District of Columbia Circuit Courts of Appeals; United States Court of Federal Claims; Northern District of New York; and the United States Supreme Court. I am a member in good standing of all the aforementioned courts.

4. Attached hereto as Exhibit "A" is a true and accurate copy of selected portions of Defendant's Responses to Plaintiffs' Interrogatories.

5. Attached hereto as Exhibit "B" is a true and accurate copy of Firearms Registrations in Hawaii, 2020.

6. Attached hereto as Exhibit "C" is a true and accurate copy of Firearms Registrations in Hawaii, 2019.

7. Attached hereto as Exhibit "D" is a true and accurate copy of Firearms Registrations in Hawaii, 2018.

8. Attached hereto as Exhibit "E" is a true and accurate copy of Firearms Registrations in Hawaii, 2017.

9. Attached hereto as Exhibit "F" is a true and accurate copy of permit to acquire firearms in the State of Hawaii and the County of Honolulu.

10. Attached hereto as Exhibit "H" is a true and accurate copy of selected portions of Defendant's Responses to Plaintiffs' Request for Production of Documents.

11. Attached hereto as Exhibit "G" is a true and accurate copy of selected portions of SB2954.

12. Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 28, 2021.

Respectfully submitted,

Counsel for Plaintiffs

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
*Admitted Pro Hac Vice*

**2-ER-318**

CLARE E. CONNORS        7936
Attorney General of Hawaii

CARON M. INAGAKI       3835
KENDALL J. MOSER        6515
RYAN M. AKAMINE        4358
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: (808) 586-1494
Facsimile: (808) 586-1369
E-Mail: Caron M. Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov
        Ryan.M.Akamine@hawaii.gov
Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA, <br><br> Plaintiffs, <br><br> vs. <br><br> CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU, <br><br> Defendants. | CIVIL NO. 19-00578 JMS-RT <br><br> DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT CLARE E. CONNORS <br><br> Trial Date: January 12, 2021 |

795099_1

*Exhibit "A"*

**2-ER-319**

DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL
CAPACITY AS THE ATTORNEY GENERAL OF THE
STATE OF HAWAII'S RESPONSE TO PLAINTIFFS' FIRST
SET OF INTERROGATORIES DEFENDANT CLARE E. CONNORS

Defendant Clare E. Connors, in her Official Capacity as the Attorney

General of the State of Hawaii ("Defendant"), by and through her attorneys,

Caron M. Inagaki, Kendall J. Moser, and Ryan M. Akamine, Deputy

Attorneys General, hereby responds to Plaintiffs' First Set of Interrogatories

to Defendant Clare E. Connors ("Discovery Request") as follows:

## GENERAL RESPONSES AND OBJECTIONS

1.     Defendant objects to the interrogatories in the Discovery

Requests to the extent that it asks for the disclosure of privileged

communications, information that is protected work product, and

information concerning documents and tangible things prepared in

anticipation of litigation or trial.

2.     Discovery, investigation, and trial preparation have not been

completed. Any and all answers to the Discovery Requests are based only

on information and documents available to Defendant at the time that his

responses and objections were prepared.

3.     All specific responses and objections are made without waiving

any of the general responses and objections.

2

DATED:  Honolulu, Hawaii, February 21, 2020.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

CARON M. INAGAKI
KENDALL J. MOSER
RYAN M. AKAMINE
Deputy Attorneys General

Attorney for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

795099_1                                    3

**2-ER-321**

## DEFENDANT'S ANSWER TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT CLARE E. CONNORS

1.    Identify all documents you plan to introduce as evidence at the trial of this matter.

RESPONSE:

Defendant objects to this request as vague, ambiguous, premature, and calls for speculation, as at this early stage of litigation, Defendant cannot determine all the documents that she intends to use at trial. In addition, the documents responsive to this request are potentially as easily available to the Plaintiffs as they are to Defendant, and the required good cause or substantial need, as dictated by applicable statutes, court rules, and case law, has not been shown in support of the request.

CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows: At this time, Defendant anticipates relying on the statutory law and its prior iterations and legislative history, comments and conference committee reports and/or requesting that the court take judicial notice. All of these are as readily available to Plaintiffs as they are to Defendant. Discovery is continuing and Defendant will supplement her response to this interrogatory in accordance with applicable court rules.

2.    Identify all persons or entities whom you or your representatives know or believe have knowledge of any discoverable matter.

RESPONSE:

Defendant objects to this request as vague, ambiguous, and calling for speculation. The phrase "discoverable matter" is overly broad and lacking context. Defendant further objects that this request may call for attorney work product, attorney-client communication, or other privileged or confidential information.

CARON M. INAGAKI

795099_1

**2-ER-322**

Without waiving the above objections, Defendant responds as follows:
Discovery is continuing and Defendant will supplement her response as
appropriate in accordance with applicable court rules.

     3.     Identify all individuals with whom you have spoken or
communicated orally or in writing, about the subject matter of this lawsuit,
or about the conduct, actions, behavior, or statements of Plaintiffs and for
each individual identified, describe the person(s) with whom you were
speaking, the substance of the communication, the place, time and date of
the communication, any witnesses to the communication, and identify by
giving a description and location of any documents that may relate in any
way to the communications.

     RESPONSE:

Defendant objects to this request as it may call for attorney work product,
attorney-client communications, or other privileged and confidential
information.

_____
CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows:
To the extent that there is any information responsive to this request that is
not privileged or confidential, Defendant will supplement her response as
appropriate in accordance with applicable court rules.

     4.     For each person you expect to call as an expert witness at trial,
including physicians or generally employed expert(s) whose information
was not acquired in preparation for this particular trial, state the following:

     (1)     The name, address and qualifications of each expert;

     (2)     The subject matter on which the expert is expected to testify;

     (3)     The substance of the facts and opinions to which the expert is
              expected to testify;

(4)    A summary of the grounds for each such opinion; and

(5)    The expert's resume or *Curriculum Vitae*.

RESPONSE:

Defendant objects to this request as vague and ambiguous, overly broad, and seeks information that is not calculated to lead to the discovery of admissible evidence. This request also may call for attorney work product, attorney-client communications, or other privileged and confidential information.

CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows: Defendant will disclose any expert or experts in accordance with the applicable court rules.

5.    If you contend that Hawaii law does not require in-person handgun registration, please explain in detail this contention.

RESPONSE:

Defendant objects to this request as vague, ambiguous, overly broad, and lacking in context.

CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows: Defendant does not make this contention.

6.    If you contend that an in-person handgun registration requirement further [sic] an important governmental interest, please explain in detail how it further [sic] that interest.

RESPONSE:

2-ER-324

Defendant objects to this request as vague, ambiguous, and lacking in context.

CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows: In-person handgun registrations can prevent fraud and reduce or eliminate discrepancies.

7.    Have you communicated to any counties, including Defendant City and County of Honolulu, any interpretation of Hawaii state law regarding the registration of handguns?

RESPONSE:

Defendant objects to this request as overly broad, burdensome, vague, ambiguous, lacking in context, and is not calculated to lead to the discovery of admissible evidence.

CARON M. INAGAKI

Without waiving the above objection, Defendant responds as follows: Defendant will supplement her response as appropriate under the applicable court rules.

8.    Does the State of Hawaii fund any portion of the budget for the City and County of Honolulu's Firearm Permit Unit?

RESPONSE:

Defendant objects to this request as overly broad, burdensome, vague, ambiguous, lacking in context, and is not calculated to lead to the discovery of admissible evidence.

CARON M. INAGAKI

Without waiving the above objection, Defendant responds as follows:
Not to our current knowledge, but Defendant will supplement her response if necessary under the applicable court rules.

9.    Please explain in detail how mandating that a permit to acquire a handgun becomes void if not "used within ten days after the date of issue" further [sic] a governmental interest. (*See* HRS 134-2(e)).

RESPONSE:
Defendant objects to this request as vague and ambiguous and lacking in context.

CARON M. INAGAKI

Without waiving the above objection, this ensures that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale.  An example is if someone gets a permit but does not use it, and a month later commits a felony and is charged. Without an expiration date, that person could let a registered firearm be seized and then use the permit to purchase another firearm.

10.    Have you instructed the City and County of Honolulu in the hours that its Firearms Permit Unit may be open?  If so, please explain in detail this communication to Defendant City and County of Honolulu.

RESPONSE:

No.

11.    Do you believe that the City and County of Honolulu could open its Firearms Permit Unit on the weekend or for longer hours during the weekdays?  If yes, please explain.

RESPONSE:

Defendant objects to this request as irrelevant and not calculated to lead to the discovery of admissible evidence.

CARON M. INAGAKI

Without waiving the above objection, Defendant responds as follows: Defendant holds no belief as to, and has no knowledge of, what the City and County of Honolulu's Firearms Permit Unit could or could not do.

12. Do you communicate with Federal Firearms Licensees (FFLs) in Hawaii by electronic mail? If not, please explain in detail how the State maintains contact with FFLs in Hawaii.

RESPONSE:

Defendant objects to this request as vague, ambiguous, lacking in context, assumes facts that have not been established, and is not calculated to lead to the discovery of admissible evidence.

CARON M. INAGAKI

Without waiving the above objection, Defendant responds as follows: Defendant does not communicate with FFLS.

13. Please describe the difference in permits to acquire long guns and handguns, and in this response, please explain why permits to acquire long guns are valid for one year and multiple long guns, but permits to acquire handguns are valid for ten days and one handgun.

RESPONSE:

Defendant objects to this request as vague, ambiguous, lacking in context and is not calculated to lead to the discovery of admissible evidence.

CARON M. INAGAKI

# VERIFICATION

STATE OF HAWAII                     )
                                    ) SS:
CITY & COUNTY OF HONOLULU )

_Dana O Viola_____, being first duly sworn on oath, deposes and

says that he/she has read the foregoing answers to interrogatories and that

the same are true to the best of his/her knowledge and belief.

_____

Subscribed and sworn to before me
this _21st_ day of _February_____, 2020.

_Lavonne M Makaawaawa_____

Notary Public, State of _Hawaii'_____

Print Name: _Lavone M makaawaawa_____

My commission expires: _4/1/2020_____


NOTARY PUBLIC CERTIFICATION

_Lavonne M makaawaawa_    _First_    Judicial Circuit

Name of Notary Public

Doc. Description: _D of Clare E. Connors, In_
_Her Official Capacity As the Attorney_
_General of the State of Hawaii's Response_
_to Plaintiffs First Set of Interrogatories to Dfd Clare E. Connors_

No. of Pages: ___11___    Date of Doc. _____

_Lavonne M Makaawaawa_    _2/21/20_

Notary Signature                     Date

795099_1

**2-ER-328**

# Firearm Registrations in Hawaii, 2020

| Department of the Attorney General • Crime Prevention & Justice Assistance Division • ag.hawaii.gov/cpja |

Clare E. Connors, Attorney General

Julie Ebato, Administrator
March 2021

*Prepared by*
*Paul Perrone, Chief of Research and Statistics*

Hawaii Revised Statutes (HRS) § 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2020. This is the twenty-first annual publication of *Firearm Registrations in Hawaii*.

**Permit Applications Processed, Issued, Voided, and Denied**

A record high total of 26,122 personal/private firearm permit applications were processed statewide during 2020, marking a 62.3% increase from 16,098 applications processed in 2019. Of the applications processed in 2020, 95.8% were approved and resulted in issued permits; 1.4% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and a record high of 2.8% were denied due to one or more disqualifying factors. Figure 1 provides additional information. Denials are described in greater detail throughout this report.

**Figure 1: Firearm Permit Application Outcomes, State of Hawaii, 2020**

26,122 Applications Processed



Applications Approved/
Permits Issued
25,024 (95.8%)

Applications Denied
741 (2.8%)

Applications Approved/
Permits Voided
357 (1.4%)

*Exhibit "B"*

## Registrations and Importations

The 25,024 permits issued statewide in 2020 cover a total of 53,481 firearms registered throughout the year, resulting in a 35.5% increase from the 39,467 firearms registered during 2019. Just under half (26,708, or 49.9%) of the firearms registered during 2020 were imported from out-of-state, with the balance accounted for by transfers of firearms that were previously registered in Hawaii. Independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department conservatively placed the number of privately owned firearms in Hawaii at "at least one million." Adding to that rough tally during the 2000 through 2020 period, a total of 697,238 firearms were registered (including some more than once, by different owners) and 365,112 were imported, while an unknown number of firearms permanently left the state.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 50.7% (12,694) of the permits issued during 2020 were to acquire longarms, while 49.3% (12,330) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per HRS § 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 55.7% (29,799) of all firearms registered during 2020 (39,467). Broken out further, rifles and shotguns comprised 45.1% (24,126) and 10.6% (5,673) of total registrations, respectively. The remaining 44.3% (23,682) of firearms registered throughout 2020 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2020 across the four counties and for the State of Hawaii overall.

### Table 1:  Firearm Registration Activity, State of Hawaii and Counties, 2020

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 16,259 | 5,347 | 2,874 | 1,642 | **26,122** |
| Applications Approved/ Permits Issued | 15,694 | 5,004 | 2,722 | 1,604 | **25,024** |
| Applications Approved/ Permits Voided | 278 | 9 | 53 | 17 | **357** |
| Applications Denied | 287 | 334 | 99 | 21 | **741** |
| Denial Rate* | 1.8% | 6.3% | 3.4% | 1.3% | **2.8%** |
| Firearms Registered | 30,496 | 11,075 | 7,464 | 4,446 | **53,481** |
| Firearms Imported | 15,466 | 5,240 | 3,628 | 2,394 | **26,708** |

* The most comparable national figure is a 5.6% average denial rate in 2017 for the five states in which local law enforcement agencies conduct background checks for firearm purchases (Bureau of Justice Statistics, 2021).

2-ER-330

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2020 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal value.)

**Figure 2: County Distribution of Permit Applications Processed and Denied versus Resident Population Distribution, 2020**



Figure 3 (next page) presents historical data on permit application denial rates for the State of Hawaii and each of the four counties. Record high denial rates were reported for 2020 for the state as a whole (2.8%), the City & County of Honolulu (1.8%), and Hawaii County, for which the 6.3% denial rate in 2020 was the highest on record among the state and all individual counties.

3

**2-ER-331**



**Figure 3: Firearm Permit Application Denial Rates, State of Hawaii and Counties, 2000-2020**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City & County of Honolulu | 1.4 | 1.3 | 0.6 | 1.0 | 0.3 | 0.2 | 0.4 | 0.4 | 0.6 | 0.6 | 0.5 | 0.6 | 0.4 | 0.4 | 0.2 | 0.3 | 0.8 | 1.5 | 1.5 | 1.1 | 1.8 |
| Hawaii County | 2.4 | 2.3 | 2.9 | 2.5 | 4.9 | 4.0 | 2.4 | 2.1 | 1.8 | 1.1 | 1.7 | 3.8 | 3.0 | 1.9 | 1.4 | 2.2 | 3.2 | 2.9 | 2.6 | 3.2 | 6.3 |
| Maui County | 3.7 | 5.6 | 4.4 | 4.2 | 2.9 | 4.5 | 2.3 | 2.0 | 2.9 | 3.8 | 2.6 | 2.5 | 1.7 | 2.0 | 1.9 | 2.3 | 1.7 | 1.4 | 1.2 | 2.0 | 3.4 |
| Kauai County | 1.5 | 0.3 | 0.7 | 1.3 | 0.4 | 0.2 | 0.1 | 0.6 | 0.2 | 0.1 | 1.1 | 0.3 | 0.9 | 1.4 | 1.4 | 1.7 | 1.2 | 0.8 | 1.5 | 1.7 | 1.3 |
| State of Hawaii (Total) | 1.8 | 2.0 | 1.5 | 1.7 | 1.5 | 1.3 | 1.0 | 0.9 | 1.1 | 1.1 | 1.0 | 1.5 | 1.0 | 1.0 | 0.8 | 1.1 | 1.5 | 1.7 | 1.7 | 1.6 | 2.8 |

Firearm registration activity increased dramatically over the course of the 21 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2020, the number of statewide permit applications annually processed increased by 302.5%, the number of firearms annually registered climbed 292.8%, and the number of firearms annually imported rose 269.5%. The tally of 26,122 applications processed in 2020 is the highest on record for the state.



**Figure 4: Firearm Registration Trends, State of Hawaii, 2000-2020**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 | 21,408 | 16,443 | 18,070 | 16,098 | 26,122 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 | 53,400 | 40,635 | 43,033 | 39,467 | 53,481 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 | 26,616 | 21,142 | 21,960 | 20,037 | 26,708 |

4

2-ER-332

Figure 5 shows that, between 2000 and 2020 in the City & County of Honolulu, the annual tally of permits processed increased 300.0%, the number of firearms annually registered rose 270.2%, and the number of firearms annually imported climbed 214.1%. A record high tally of permits processed was reported for 2020.

**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2020**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 | 12,599 | 10,326 | 11,237 | 10,474 | 16,259 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 | 31,613 | 25,299 | 26,282 | 24,879 | 30,496 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 | 16,856 | 13,751 | 14,124 | 13,087 | 15,446 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2020 period surged 366.6%, the number of firearms annually registered increased 281.5%, and the number of firearms annually imported leaped 322.2%.

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2020**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 | 4,669 | 3,223 | 3,544 | 3,013 | 5,347 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 | 11,585 | 8,328 | 8,537 | 7,003 | 11,075 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 | 5,545 | 4,151 | 4,184 | 3,506 | 5,240 |

Figure 7 reveals that, between 2000 and 2020 in Maui County, the annual number of permits processed increased 261.4%, the number of firearms annually registered soared 409.1%, and the tally of firearms annually imported skyrocketed 466.0%. Record high tallies of firearms registered and imported were reported for 2020.

**Figure 7: Firearm Registration Trends,
Maui County, 2000-2020**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 | 2,178 | 2,980 | 1,662 | 2,014 | 1,600 | 2,874 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 | 5,660 | 4,121 | 5,316 | 4,667 | 7,464 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 | 2,403 | 1,888 | 2,269 | 1,849 | 3,628 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2020 increased 240.0%, the number of firearms registered leaped 339.8%, and the number of firearms imported surged 458.0%. A record high tally of firearms imported was reported for 2020.

**Figure 8: Firearm Registration Trends,
Kauai County, 2000-2020**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 | 1,889 | 1,232 | 1,275 | 1,011 | 1,642 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,694 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 | 4,542 | 2,887 | 2,898 | 2,918 | 4,446 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 | 1,812 | 1,352 | 1,383 | 1,595 | 2,394 |

6

## Permit Application Denials

As noted earlier, a record high of 2.8% (741) permit applications were denied statewide in 2020. The majority of the denials were for longarm (546, or 73.7%) rather than handgun (195, or 26.3%) permit applications.  Following a trend since this annual report was first published, longarm permit applications in 2020 were denied at a rate (1.6%) that is less than half the denial rate for handgun permit applications (4.0%).

Roughly one-quarter (172, or 23.2%) of the denials in 2020 were due to the applicants' prior criminal convictions, while 3.8% (28) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (HRS § 134-17).  In 2020, falsified criminal or mental health information, or both, were provided in 41.7% (309) of the 741 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 8.6% (64) of the cases; falsified criminal/mental health information in addition to other falsified information was provided in 1.2% (9) of the cases, and no falsified information was provided in 48.4% (359) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

### Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2020

|  | # | %* |
|---|---|---|
| Mental Health-Related Issue** | 274 | 37.0 |
| "Other" Criminal Offense | 207 | 27.9 |
| Medical Marijuana Patient*** | 187 | 25.2 |
| Domestic Violence**** | 49 | 6.6 |
| Drug Offense | 37 | 5.0 |
| Restraining/Protective Order | 19 | 2.6 |
| Disqualifying Juvenile Offense | 5 | 0.7 |
| Other (e.g., not a U.S. citizen) | 11 | 1.5 |

\* Figures do not total 100% due to multiple reasons for some denials.

\*\* Includes adverse mental health diagnoses and treatment, and drug or alcohol abuse/addiction and treatment. Denials for such reasons can be satisfactorily cleared with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. At least one of the state's major healthcare providers recommends denial for virtually any sort of mental health issue or treatment noted in their clients' historical medical records, and does not provide a means to obtain a clearance, leaving such applicants to seek clearance from outside doctors and then reapply for their firearm permits.

\*\*\* Former medical marijuana patients may successfully apply for firearm permits at least one year after the expiration of their medical marijuana card.

\*\*\*\* Includes domestic violence-related offenses and counseling/treatment.

2-ER-335

Table 3 provides a breakdown of information entered into a description field for each denial.

**Table 3: Descriptions of Firearm Permit Application Denials, State of Hawaii, 2020**

| 741 Total Denials | # | %* |
|---|---|---|
| (unspecified) | 1 | 0.1 |
| "alternatives to violence" counseling | 1 | 0.1 |
| absent without leave (military) | 3 | 0.4 |
| abuse of family/household member | 29 | 3.9 |
| abuse of family/household member + anger mgmt treatment | 1 | 0.1 |
| abuse of family/household member + assault on police officer | 1 | 0.1 |
| abuse of family/household member + mental health issue | 1 | 0.1 |
| alcohol & substance abuse treatment + mental health issue | 2 | 0.3 |
| alcohol abuse treatment | 31 | 4.2 |
| alcohol abuse treatment + medical marijuana patient | 1 | 0.1 |
| anger management & alcohol abuse treatment | 2 | 0.3 |
| anger management & substance abuse treatment | 1 | 0.1 |
| anger management treatment | 11 | 1.5 |
| assault | 48 | 6.5 |
| assault + abuse of family/household member + DV & anger mgmt treatment + mental health issue | 1 | 0.1 |
| assault + abuse of family/household member + mental health issue | 1 | 0.1 |
| assault + disqualifying juvenile offense + mental health issue | 1 | 0.1 |
| assault + medical marijuana patient | 1 | 0.1 |
| assault + mental health issue | 4 | 0.5 |
| assault + terroristic threatening + burglary + drug offense | 2 | 0.3 |
| assault + warrant in Wisconsin | 1 | 0.1 |
| battery | 11 | 1.5 |
| battery + drug offense + medical marijuana patient | 1 | 0.1 |
| battery + substance abuse treatment | 2 | 0.3 |
| battery on police officer | 2 | 0.3 |
| burglary | 4 | 0.5 |
| burglary + motor vehicle theft | 1 | 0.1 |
| convictions in California (unspecified) | 1 | 0.1 |
| crime of violence (unspecified) | 33 | 4.5 |
| crime of violence (unspecified) + criminal property damage | 1 | 0.1 |
| criminal property damage | 4 | 0.5 |
| desertion | 1 | 0.1 |
| disorderly conduct | 13 | 1.8 |
| disorderly conduct + mental health issue | 1 | 0.1 |
| disposition needed re Florida probation violation | 4 | 0.5 |
| disqualifying juvenile offense | 3 | 0.4 |
| domestic battery | 5 | 0.7 |
| domestic battery + drug offense | 2 | 0.3 |
| domestic violence conviction in Nevada | 2 | 0.3 |
| drug offense | 19 | 2.6 |
| drug offense + alcohol abuse treatment | 1 | 0.1 |
| drug offense + conspiracy + mental health issue + didn't provide physical address | 1 | 0.1 |
| drug offense + disorderly conduct | 3 | 0.4 |
| drug offense + medical marijuana patient | 2 | 0.3 |
| drug offense + substance abuse treatment | 1 | 0.1 |
| drug offense + substance abuse treatment + medical marijuana patient | 1 | 0.1 |
| DUI (felony) | 1 | 0.1 |
| felonies (unspecified) in Washington + Oregon | 1 | 0.1 |
| felony (unspecified) | 10 | 1.3 |
| fleeing/eluding police in Florida | 1 | 0.1 |
| forgery | 2 | 0.3 |

| | | |
|---|---|---|
| forgery + theft | 2 | 0.3 |
| fraud + mental health issue | 2 | 0.3 |
| harassment | 9 | 1.2 |
| inflicting corporal punishment on spouse (California) | 1 | 0.1 |
| kidnapping | 1 | 0.1 |
| marijuana user | 2 | 0.3 |
| medical marijuana patient | 174 | 23.5 |
| medical marijuana patient + needs medical clearance letter | 1 | 0.1 |
| mental health issue | 174 | 23.5 |
| mental health issue + medical marijuana patient | 2 | 0.3 |
| mental health issue + substance abuse | 1 | 0.1 |
| mental health issue + substance abuse treatment | 2 | 0.3 |
| mental health issue + substance abuse treatment + medical marijuana patient | 1 | 0.1 |
| motor vehicle theft | 3 | 0.4 |
| motor vehicle theft + burglary + weapons & drug offenses | 1 | 0.1 |
| motor vehicle theft + medical marijuana patient | 1 | 0.1 |
| no response from California re charge disposition | 1 | 0.1 |
| no response from Colorado re charge disposition | 2 | 0.3 |
| no response from Georgia re charge disposition | 1 | 0.1 |
| not a U.S. citizen | 2 | 0.3 |
| reckless endangering + domestic violence counseling | 1 | 0.1 |
| resisting arrest + disorderly conduct | 1 | 0.1 |
| restraining order | 16 | 2.2 |
| restraining order + mental health issue + substance abuse treatment | 1 | 0.1 |
| restraining orders + substance abuse treatment | 1 | 0.1 |
| robbery | 3 | 0.4 |
| sexual assault | 5 | 0.7 |
| substance abuse + mental health issue | 1 | 0.1 |
| substance abuse treatment | 20 | 2.7 |
| substance abuse treatment + "alternatives to violence" counseling | 1 | 0.1 |
| substance abuse treatment + medical marijuana patient | 2 | 0.3 |
| substance abuse treatment + mental health issue | 1 | 0.1 |
| suicide attempt + alcohol abuse treatment | 1 | 0.1 |
| suicide attempt + mental health issue | 1 | 0.1 |
| terroristic threatening | 6 | 0.8 |
| theft | 6 | 0.8 |
| theft + drug offense | 1 | 0.1 |
| theft + fraud | 1 | 0.1 |
| unauthorized entry into a dwelling | 1 | 0.1 |
| unspecified disqualifying factor (mainland) | 1 | 0.1 |
| vandalism | 1 | 0.1 |
| warrant | 1 | 0.1 |
| warrant in Florida for probation violation | 1 | 0.1 |
| warrant in Kansas | 1 | 0.1 |
| warrant in Ohio + terroristic threatening + drug offense | 1 | 0.1 |
| warrants in Kansas and Oklahoma for DV assault & battery | 3 | 0.4 |
| weapons offense | 1 | 0.1 |

\* Due to rounding, figures do not total 100%.

2-ER-337

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the carrying of firearms in public. Statewide in 2020, 123 employees of private security firms applied for and were issued carry licenses, and one (0.8%) was denied. A total of 23 private citizens applied for a carry license in 2020, including seven in the City & County of Honolulu, 11 in Hawaii County, one in Maui County, and four in Kauai County; all applicants were denied by the respective county's chief of police.

## Confiscations

Two "assault pistols" as defined and prohibited by state law were confiscated by the City & County of Honolulu Police Department's firearm registration personnel in 2020.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

Hawaii County Police Department

**Arlene Young**, Senior Police Records Clerk
**Lori Enomoto**, Firearms Registration Clerk
**Michelle Kaaukai-Perreira**, Firearms Registration Clerk

City and County of Honolulu Police Department

The entire Firearms Registration Section, in particular:
**Suzy Yamasaki**, Firearms Registration Clerk

Kauai County Police Department

**Scott Yamaguchi**, Weapons Registration Clerk

Maui County Police Department

**Melanie Wong**, Firearms Registration Clerk

## Reference

Bureau of Justice Statistics (February 2021). *Background checks for firearms transfers, 2016-2017.* U.S. Department of Justice: Office of Justice Programs. NCJ 254757.

**2-ER-338**

# Firearm Registrations in Hawaii, 2019

**Department of the Attorney General** • **Crime Prevention & Justice Assistance Division** • **ag.hawaii.gov/cpja**

Clare E. Connors, Attorney General

Julie Ebato, Administrator
March 2020

*Prepared by*
*Paul Perrone, Chief of Research and Statistics*

Hawaii Revised Statutes (HRS) § 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2019. This is the twentieth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 16,098 personal/private firearm permit applications were processed statewide during 2019, marking a 10.9% decrease from 18,070 applications processed in 2018. Of the applications processed in 2019, 96.1% were approved and resulted in issued permits; 2.3% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.6% were denied due to one or more disqualifying factors. Figure 1 provides additional information. Denials are described in greater detail throughout this report.

### Figure 1: Firearm Permit Application Outcomes, State of Hawaii, 2019

16,098 Applications Processed



Applications Approved/
Permits Issued
15,472 (96.1%)

Applications Denied
256 (1.6%)

Applications Approved/
Permits Voided
370 (2.3%)

## Registrations and Importations

The 15,472 permits issued statewide in 2019 cover a total of 39,467 firearms registered throughout the year, resulting in an 8.3% decrease from the 43,033 firearms registered during 2018. Just over half (20,037, or 50.8%) of the firearms registered during 2019 were imported from out-of-state, with the balance accounted for by transfers of firearms that were previously registered in Hawaii. Independent estimates made during the late-1990s by the Department of the Attorney General and the City and County of Honolulu Police Department conservatively placed the number of privately owned firearms in Hawaii at "at least one million." Adding to that rough tally during the 2000 through 2019 period, a total of 643,757 firearms were registered (including some more than once, by different owners) and 338,404 were imported, while an unknown number of firearms permanently left the state.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 50.3% (7,789) of the permits issued during 2019 were to acquire handguns, while 49.7% (7,683) were longarm permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per HRS § 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 55.6% (21,947) of all firearms registered during 2019 (39,467). Broken out further, rifles and shotguns comprised 45.5% (17,969) and 10.1% (3,978) of total registrations, respectively. The remaining 44.4% (17,520) of firearms registered throughout 2019 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2019 across the four counties and for the State of Hawaii overall.

**Table 1: Firearm Registration Activity,
State of Hawaii and Counties, 2019**

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 10,474 | 3,013 | 1,600 | 1,011 | **16,098** |
| Applications Approved/ Permits Issued | 10,079 | 2,899 | 1,530 | 964 | **15,472** |
| Applications Approved/ Permits Voided | 284 | 18 | 38 | 30 | **370** |
| Applications Denied | 111 | 96 | 32 | 17 | **256** |
| Denial Rate* | 1.1% | 3.2% | 2.0% | 1.7% | **1.6%** |
| Firearms Registered | 24,879 | 7,003 | 4,667 | 2,918 | **39,467** |
| Firearms Imported | 13,087 | 3,506 | 1,849 | 1,595 | **20,037** |

* The most comparable national figure is a 4.2% estimated average denial rate in 2015 for jurisdictions that require a buyer to obtain, after a local agency-conducted background check, a government-issued document that must be presented to a seller before the buyer can receive a firearm (Bureau of Justice Statistics, 2017).

2-ER-340

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2019 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal value.)

**Figure 2: County Distribution of Permit Applications Processed and Denied versus Resident Population Distribution, 2019**



Figure 3 (next page) presents historical data on permit application denial rates for the State of Hawaii and each of the four counties.

**2-ER-341**

### Figure 3: Firearm Permit Application Denial Rates, State of Hawaii and Counties, 2000-2019

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City & County of Honolulu | 1.4 | 1.3 | 0.6 | 1.0 | 0.3 | 0.2 | 0.4 | 0.4 | 0.6 | 0.6 | 0.5 | 0.6 | 0.4 | 0.4 | 0.2 | 0.8 | 0.8 | 1.5 | 1.5 | 1.1 |
| Hawaii County | 2.4 | 2.3 | 2.9 | 2.5 | 4.9 | 4.0 | 2.4 | 2.1 | 1.8 | 1.1 | 1.7 | 3.8 | 3.0 | 1.9 | 1.4 | 2.2 | 3.2 | 2.9 | 2.6 | 3.2 |
| Maui County | 3.7 | 5.6 | 4.4 | 4.2 | 2.9 | 4.5 | 2.3 | 2.0 | 2.9 | 3.8 | 2.6 | 2.5 | 1.7 | 2.0 | 1.9 | 2.3 | 1.7 | 1.4 | 1.2 | 2.0 |
| Kauai County | 1.5 | 0.3 | 0.7 | 1.3 | 0.4 | 0.2 | 0.1 | 0.6 | 0.2 | 0.1 | 0.1 | 1.3 | 0.9 | 1.4 | 1.4 | 1.7 | 1.2 | 0.8 | 1.5 | 1.7 |
| State of Hawaii (Total) | 1.8 | 2.0 | 1.5 | 1.7 | 1.5 | 1.3 | 1.0 | 0.9 | 1.1 | 1.1 | 1.0 | 1.5 | 1.0 | 1.0 | 0.8 | 1.1 | 1.5 | 1.7 | 1.7 | 1.6 |

Firearm registration activity increased dramatically over the course of the 20 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2019, the number of statewide permit applications annually processed increased by 148.1%, the number of firearms annually registered leaped 189.8%, and the number of firearms annually imported rose 177.2%.

### Figure 4: Firearm Registration Trends, State of Hawaii, 2000-2019



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 | 21,408 | 16,443 | 18,070 | 16,098 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 | 53,400 | 40,635 | 43,033 | 39,467 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 | 26,616 | 21,142 | 21,960 | 20,037 |

Figure 5 shows that, between 2000 and 2019 in the City and County of Honolulu, the annual tally of permits processed increased 157.7%, the number of firearms annually registered surged 202.0%, and the number of firearms annually imported climbed 166.2%.



**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2019**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 | 12,599 | 10,326 | 11,237 | 10,474 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 | 31,613 | 25,299 | 26,282 | 24,879 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 | 16,856 | 13,751 | 14,124 | 13,087 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2019 period rose 162.9%, the number of firearms annually registered increased 141.2%, and the number of firearms annually imported leaped 182.5%.



**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2019**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 | 4,669 | 3,223 | 3,544 | 3,013 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 | 11,585 | 8,328 | 8,537 | 7,003 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 | 5,545 | 4,151 | 4,184 | 3,506 |

2-ER-343

Figure 7 reveals that, between 2000 and 2019 in Maui County, the annual number of permits processed increased 101.3%, the number of firearms annually registered soared 218.0%, and the tally of firearms annually imported climbed 188.5%.

**Figure 7: Firearm Registration Trends,
Maui County, 2000-2019**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 | 2,178 | 2,980 | 1,662 | 2,014 | 1,600 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 | 5,660 | 4,121 | 5,316 | 4,667 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 | 2,403 | 1,888 | 2,269 | 1,849 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2019 increased 109.3%, the number of firearms registered surged 188.6%, and the number of firearms imported skyrocketed 271.8%.

**Figure 8: Firearm Registration Trends,
Kauai County, 2000-2019**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 | 1,889 | 1,232 | 1,275 | 1,011 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 | 4,542 | 2,887 | 2,898 | 2,918 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 | 1,812 | 1,352 | 1,383 | 1,595 |

## Permit Application Denials

As noted earlier, 1.6% (256) of all permit applications in Hawaii during 2019 were denied for cause. The majority of the denials were for longarm (189, or 73.8%) rather than handgun (67, or 26.2%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2019 were denied at a rate (2.3%) that is roughly triple the denial rate for handgun permit applications (0.8%).

More than one-fifth (57, or 22.3%) of the denials in 2019 were due to the applicants' prior criminal convictions, while 1.6% (4) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (HRS § 134-17).  In 2019, falsified criminal or mental health information, or both, were provided in 43.4% (111) of the 256 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 5.9% (15) of the cases; and no falsified information was provided in 50.4% (129) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2019**

|  | # | %* |
|---|---|---|
| Mental Health-Related Issue** | 154 | 60.2 |
| "Other" Criminal Offense | 49 | 19.1 |
| Medical Marijuana Patient*** | 28 | 10.9 |
| Domestic Violence**** | 22 | 8.6 |
| Drug Offense | 11 | 4.3 |
| Restraining/Protective Order | 11 | 4.3 |
| Disqualifying Juvenile Offense | 1 | 0.4 |
| Not a U.S. citizen | 1 | 0.4 |

   *  Figures do not total 100% due to multiple reasons for some denials.

  **  Includes adverse mental health diagnoses and treatment, and drug or alcohol abuse/addiction and treatment. Denials for such reasons can be satisfactorily cleared with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. At least one of the state's major healthcare providers recommends denial for virtually any sort of mental health issue or treatment noted in their clients' historical medical records, and does not provide a means to obtain a clearance, leaving such applicants to seek clearance from outside doctors.

  ***  Former medical marijuana patients may successfully apply one year after the expiration of their medical marijuana card.

  ****  Includes domestic violence-related offenses and counseling/treatment.

2-ER-345

Table 3 provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2019**

| 256 Total Denials | # | %* |
|---|---|---|
| abuse of family/household member | 7 | 2.7 |
| abuse of family/household member + domestic violence counseling | 1 | 0.4 |
| abuse of family/household member + mental health issue | 1 | 0.4 |
| alcohol abuse + depression | 1 | 0.4 |
| alcohol abuse treatment | 13 | 5.1 |
| alcohol and substance abuse treatment | 2 | 0.8 |
| alcohol dependency | 2 | 0.8 |
| anger management counseling | 8 | 3.1 |
| anger management counseling + medical marijuana patient | 1 | 0.4 |
| assault | 15 | 5.9 |
| assault (domestic violence) + theft + forgery + burglary | 1 | 0.4 |
| assault + abuse of family/household member | 3 | 1.2 |
| assault + mental health issue | 1 | 0.4 |
| assault + restraining order | 1 | 0.4 |
| assault + robbery | 1 | 0.4 |
| assault + theft + substance abuse treatment | 1 | 0.4 |
| battery + abuse of family/household member | 1 | 0.4 |
| convicted felon (unspecified) | 2 | 0.8 |
| crime of violence (unspecified) | 5 | 2.0 |
| disorderly conduct | 1 | 0.4 |
| disqualifying juvenile offenses + substance abuse treatment | 1 | 0.4 |
| domestic violence counseling | 1 | 0.4 |
| domestic violence counseling + former marijuana user | 1 | 0.4 |
| drug offense | 1 | 0.4 |
| harassment | 8 | 3.1 |
| harassment + mental health issue | 1 | 0.4 |
| legal guardian of minor who has restraining order | 2 | 0.8 |
| manslaughter/reckless homicide | 2 | 0.8 |
| medical marijuana patient | 27 | 10.5 |
| mental health issue | 105 | 41.0 |
| mental health issue + alcohol and drug addiction | 1 | 0.4 |
| mental health issue + former marijuana user | 1 | 0.4 |
| mentally unstable (based on prior law enforcement contact) | 1 | 0.4 |
| no response from California re battery and disorderly conduct incidents | 1 | 0.4 |
| no response from California re theft charge | 1 | 0.4 |
| no response from court re felony disposition | 5 | 2.0 |
| no response re 1997 mainland drug arrest | 1 | 0.4 |
| not a U.S. citizen | 1 | 0.4 |
| positive field test for illicit drug use | 1 | 0.4 |
| reckless endangering | 1 | 0.4 |
| reckless endangering (domestic violence-related) | 1 | 0.4 |
| resisting arrest + harassment | 1 | 0.4 |
| restraining order | 8 | 3.1 |
| robbery | 1 | 0.4 |
| statutory rape | 1 | 0.4 |
| substance abuse treatment | 10 | 3.9 |
| warrant (cruelty to animals + gambling) | 1 | 0.4 |
| warrant (unspecified) | 1 | 0.4 |
| warrant (unspecified) + burglary + drug offenses | 1 | 0.4 |

* Due to rounding, figures do not total 100%.

2-ER-346

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the carrying of firearms in public.  Statewide in 2019, 162 employees of private security firms applied for and were issued carry licenses, and three (1.8%) were denied.  A total of nine private citizens applied for a carry license in 2019, including four in the City and County of Honolulu, three in Hawaii County, and one each in Maui County and Kauai County; all nine applicants were denied by the respective county's chief of police.

## Confiscations

Four "assault pistols," three "short-barrel rifles," and one "short-barrel shotgun," as defined and prohibited by state law, were confiscated by the firearm registration personnel statewide in 2019.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel.  As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

<u>Hawaii County Police Department</u>

**Arlene Young**, Senior Police Records Clerk
**Lori Enomoto**, Firearms Registration Clerk
**Michelle Kaaukai-Perreira**, Firearms Registration Clerk

<u>City and County of Honolulu Police Department</u>

The entire Firearms Registration Section, in particular:
**Suzy Yamasaki**, Firearms Registration Clerk

<u>Kauai County Police Department</u>

**Scott Yamaguchi**, Weapons Registration Clerk

<u>Maui County Police Department</u>

**Melanie Wong**, Firearms Registration Clerk

## Reference

Bureau of Justice Statistics (November 2017).  *Background checks for firearms transfers, 2015: Statistical Tables.*  U.S. Department of Justice: Office of Justice Programs.  NCJ 250978.

2-ER-347

# Firearm Registrations in Hawaii, 2018

**Department of the Attorney General    •    Crime Prevention & Justice Assistance Division    •    ag.hawaii.gov/cpja**

Clare E. Connors, Attorney General

Julie Ebato, Administrator
May 2019

*Prepared by*
*Paul Perrone, Chief of Research and Statistics*

Hawaii Revised Statutes (HRS) § 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2018. This is the nineteenth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 18,070 personal/private firearm permit applications were processed statewide during 2018, marking a 9.9% increase from 16,443 applications processed in 2017. Of the applications processed in 2018, 95.9% were approved and resulted in issued permits; 2.4% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.7% were denied due to one or more disqualifying factors. Figure 1 provides additional information. Denials are described in greater detail throughout this report.

### Figure 1: Firearm Permit Application Outcomes, State of Hawaii, 2018

18,070 Applications Processed



Applications Approved/
Permits Issued
17,332 (95.9%)

Applications Denied
301 (1.7%)

Applications Approved/
Permits Voided
437 (2.4%)

## Registrations and Importations

The 17,332 permits issued statewide in 2018 cover a total of 43,033 firearms registered throughout the year, resulting in a 5.9% increase from the 40,635 firearms registered during 2017. Just over half (21,960, or 51.0%) of the firearms registered during 2018 were imported from out-of-state, with the balance accounted for by transfers of firearms that were previously registered in Hawaii. Independent estimates made during the late-1990s by the Department of the Attorney General and the City and County of Honolulu Police Department conservatively placed the number of privately owned firearms in Hawaii at "at least one million." Adding to that rough tally during the 2000 through 2018 period, a total of 604,290 firearms were registered (including some more than once, by different owners) and 298,937 were imported, but there is no way to track the number of firearms that permanently leave the state.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 51.6% (8,939) of the permits issued during 2018 were to acquire handguns, while 48.4% (8,393) were longarm permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per HRS § 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 53.5% (23,029) of all firearms registered during 2018 (43,033). Broken out further, rifles and shotguns comprised 43.8% (18,840) and 9.7% (4,189) of total registrations, respectively. The remaining 46.5% (20,004) of firearms registered throughout 2018 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2018 across the four counties and for the State of Hawaii overall.

**Table 1: Firearm Registration Activity,
State of Hawaii and Counties, 2018**

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 11,237 | 3,544 | 2,014 | 1,275 | **18,070** |
| Applications Approved/ Permits Issued | 10,802 | 3,433 | 1,936 | 1,161 | **17,332** |
| Applications Approved/ Permits Voided | 269 | 19 | 54 | 95 | **437** |
| Applications Denied | 166 | 92 | 24 | 19 | **301** |
| Denial Rate* | 1.5% | 2.6% | 1.2% | 1.5% | **1.7%** |
| Firearms Registered | 26,282 | 8,537 | 5,316 | 2,898 | **43,033** |
| Firearms Imported | 14,124 | 4,184 | 2,269 | 1,383 | **21,960** |

* The most comparable national figure is a 4.2% estimated average denial rate in 2015 for jurisdictions that require a buyer to obtain, after a local agency-conducted background check, a government-issued document that must be presented to a seller before the buyer can receive a firearm (Bureau of Justice Statistics, 2017).

2

**2-ER-349**

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2018 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal value.)

**Figure 2: County Distribution of Permit Applications Processed and Denied versus Resident Population Distribution, 2018**



Figure 3 (next page) presents historical data on permit application denial rates for the State of Hawaii and each of the four counties.

3



**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2018**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City & County of Honolulu | 1.4 | 1.3 | 0.6 | 1.0 | 0.3 | 0.2 | 0.4 | 0.4 | 0.6 | 0.6 | 0.5 | 0.6 | 0.4 | 0.4 | 0.2 | 0.3 | 0.8 | 1.5 | 1.5 |
| Hawaii County | 2.4 | 2.3 | 2.9 | 2.5 | 4.9 | 4.0 | 2.4 | 2.1 | 1.8 | 1.1 | 1.7 | 3.8 | 3.0 | 1.9 | 1.4 | 2.2 | 3.2 | 2.9 | 2.6 |
| Maui County | 3.7 | 5.6 | 4.4 | 4.2 | 2.9 | 4.5 | 2.3 | 2.0 | 2.9 | 3.8 | 2.6 | 2.5 | 1.7 | 2.0 | 1.9 | 2.3 | 1.7 | 1.4 | 1.2 |
| Kauai County | 1.5 | 0.3 | 0.7 | 1.3 | 0.4 | 0.2 | 0.1 | 0.6 | 0.2 | 0.1 | 0.1 | 1.3 | 0.9 | 1.4 | 1.4 | 1.7 | 1.2 | 0.8 | 1.5 |
| State of Hawaii (Total) | 1.8 | 2.0 | 1.5 | 1.7 | 1.5 | 1.3 | 1.0 | 0.9 | 1.1 | 1.1 | 1.0 | 1.5 | 1.0 | 1.0 | 0.8 | 1.1 | 1.5 | 1.7 | 1.7 |

Firearm registration activity increased dramatically over the course of the 19 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2018, the number of statewide permit applications annually processed increased by 178.5%, the number of firearms annually registered leaped 216.0%, and the number of firearms annually imported rose 203.8%.



**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2018**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 | 21,408 | 16,443 | 18,070 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 | 53,400 | 40,635 | 43,033 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 | 26,616 | 21,142 | 21,960 |

4

Figure 5 shows that, between 2000 and 2018 in the City and County of Honolulu, the annual tally of permits processed increased 176.4%, the number of firearms annually registered jumped 219.1%, and the number of firearms annually imported climbed 187.2%.

**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2018**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 | 12,599 | 10,326 | 11,237 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 | 31,613 | 25,299 | 26,282 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 | 16,856 | 13,751 | 14,124 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2018 period rose 209.2%, the number of firearms annually registered increased 194.1%, and the number of firearms annually imported surged 237.1%.

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2018**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 | 4,669 | 3,223 | 3,544 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 | 11,585 | 8,328 | 8,537 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 | 5,545 | 4,151 | 4,184 |

5

Figure 7 reveals that, between 2000 and 2018 in Maui County, the annual number of permits processed increased 153.3%, the number of firearms annually registered skyrocketed 262.6%, and the tally of firearms annually imported soared 254.0%.

**Figure 7: Firearm Registration Trends,
Maui County, 2000-2018**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,277 | 2,794 | 2,086 | 2,178 | 2,980 | 1,662 | 2,014 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 | 5,660 | 4,121 | 5,316 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 | 2,403 | 1,888 | 2,269 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2018 increased 164.0%, the number of firearms registered climbed 186.6%, and the number of firearms imported surged 222.4%.

**Figure 8: Firearm Registration Trends,
Kauai County, 2000-2018**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 | 1,889 | 1,232 | 1,275 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 | 4,542 | 2,887 | 2,898 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 | 1,812 | 1,352 | 1,383 |

6

**Permit Application Denials**

As noted earlier, 1.7% (301) of all permit applications in Hawaii during 2018 were denied for cause. The majority of the denials were for longarm (227, or 75.4%) rather than handgun (74, or 24.6%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2018 were denied at a rate (2.6%) that is more than triple the denial rate for handgun permit applications (0.8%).

Roughly one-quarter (68, or 22.6%) of the denials in 2017 were due to the applicants' prior criminal convictions, while 4.7% (14) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (HRS § 134-17).  In 2018, falsified criminal or mental health information, or both, were provided in 39.2% (118) of the 301 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 4.0% (12) of the cases; and no falsified information was provided in 56.8% (171) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2018**

|  | # | %* |
|---|---|---|
| Mental Health-Related Issue** | 163 | 54.2 |
| "Other" Criminal Offense | 89 | 29.6 |
| Medical Marijuana Patient*** | 27 | 9.0 |
| Domestic Violence**** | 17 | 5.6 |
| Restraining/Protective Order | 12 | 4.0 |
| Drug Offense | 10 | 3.3 |
| Disqualifying Juvenile Offense | 2 | 0.7 |

   * Figures do not total 100% due to multiple reasons for some denials.

  ** Includes adverse mental health diagnoses and treatment, and drug or alcohol abuse/addiction and treatment. Denials for such reasons can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued.

 *** Former medical marijuana patients may successfully apply one year after the expiration of their medical marijuana card.

**** Includes domestic violence-related offenses and counseling/treatment.

Table 3 provides a breakdown of information entered into a description field for each denial.

**Table 3: Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2018**

| 301 Total Denials | # | %* |
|---|---|---|
| abuse of family/household member | 4 | 1.3 |
| abuse of family/household member + alcohol & substance abuse treatment | 1 | 0.3 |
| abuse of family/household member + harassment | 1 | 0.3 |
| abuse of family/household member + mental health treatment | 1 | 0.3 |
| alcohol abuse treatment | 3 | 1.0 |
| alcohol abuse treatment + mental health issue/treatment | 1 | 0.3 |
| alcohol abuse/addiction | 1 | 0.3 |
| alcohol and substance abuse treatment | 1 | 0.3 |
| anger management treatment | 1 | 0.3 |
| assault | 24 | 8.0 |
| assault + abuse of family/household member | 2 | 0.7 |
| assault + drug offense | 1 | 0.3 |
| assault + mental health issue/treatment | 1 | 0.3 |
| battery | 2 | 0.7 |
| battery + mental health issue/treatment | 1 | 0.3 |
| battery + terroristic threatening | 1 | 0.3 |
| breach of peace | 1 | 0.3 |
| contributing to the delinquency of a minor | 1 | 0.3 |
| disorderly conduct | 8 | 2.7 |
| disqualifying juvenile offense | 2 | 0.7 |
| domestic assault (mainland) + burglary | 2 | 0.7 |
| domestic violence intervention + mental health issue/treatment + substance abuse/addiction | 1 | 0.3 |
| drug offense | 2 | 0.7 |
| drug offense + mental health issue/treatment | 2 | 0.7 |
| drug possession | 2 | 0.7 |
| endangerment | 1 | 0.3 |
| false official statements (disqualifying federal offense) | 2 | 0.7 |
| felonies (unspecified) | 1 | 0.3 |
| felony (unspecified) | 7 | 2.3 |
| felony probation violation | 1 | 0.3 |
| harassment | 12 | 4.0 |
| harassment + medical marijuana patient | 1 | 0.3 |
| medical marijuana patient | 26 | 8.6 |
| mental health issue/treatment | 135 | 44.9 |
| mental health issue/treatment + disorderly conduct | 3 | 1.0 |
| mutual affray | 1 | 0.3 |
| negligent injury + alcohol abuse treatment | 1 | 0.3 |
| no response from California re domestic violence arrest | 1 | 0.3 |
| no response from Florida re trespass arrests | 1 | 0.3 |
| obstruction of justice | 1 | 0.3 |
| positive field test for drugs | 2 | 0.7 |
| prior law enforcement contact/observations | 1 | 0.3 |
| receiving stolen property | 1 | 0.3 |
| resisting arrest | 1 | 0.3 |
| restraining order | 12 | 4.0 |
| robbery | 1 | 0.3 |
| sex offense | 2 | 0.7 |
| stolen goods + burglary tools | 2 | 0.7 |
| substance abuse | 2 | 0.7 |
| substance abuse treatment | 3 | 1.0 |
| substance abuse treatment + mental health issue/treatment | 1 | 0.3 |
| substance abuse/addiction | 4 | 1.3 |
| terroristic threatening | 2 | 0.7 |
| theft | 1 | 0.3 |
| weapons offense | 4 | 1.3 |
| weapons offense + on probation | 1 | 0.3 |

* Due to rounding, figures do not total 100%.

2-ER-355

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the carrying of firearms in public. Statewide in 2018, 167 employees of private security firms applied for and were issued carry licenses, and nine (5.1%) were denied. A total of 31 private citizens applied for a carry license in 2018, including 12 in the City and County of Honolulu, 10 in Hawaii County, eight in Kauai County, and one in Maui County; all applicants were denied by the respective county's police chief.

## Confiscations

Four "assault pistols," one "short barrel shotgun," and one "short barrel rifle," as defined and prohibited by state law, were confiscated by the firearm registration personnel statewide in 2018.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

Hawaii County Police Department

**Arlene Young**, Senior Police Records Clerk
**Lori Enomoto**, Firearms Registration Clerk
**Michelle Kaaukai-Perreira**, Firearms Registration Clerk

City and County of Honolulu Police Department

The entire Firearms Registration Section, in particular:
**Suzy Yamasaki**, Firearms Registration Clerk

Kauai County Police Department

**Scott Yamaguchi**, Weapons Registration Clerk

Maui County Police Department

**Melanie Wong**, Firearms Registration Clerk

## Reference

Bureau of Justice Statistics (November 2017). *Background checks for firearms transfers, 2015: Statistical Tables.* U.S. Department of Justice: Office of Justice Programs. NCJ 250978.

2-ER-356

# Firearm Registrations in Hawaii, 2017

**Department of the Attorney General** • **Crime Prevention & Justice Assistance Division** • **ag.hawaii.gov/cpja**

Russell A. Suzuki, Attorney General

Julie Ebato, Administrator
May 2018

*Prepared by*
*Paul Perrone, Chief of Research and Statistics*

Hawaii Revised Statutes (HRS) § 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2017. This is the eighteenth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 16,443 personal/private firearm permit applications were processed statewide during 2017, marking a 23.2% decrease from 21,408 applications processed in 2016. Of the applications processed in 2017, 96.0% were approved and resulted in issued permits; 2.2% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.7% were denied due to one or more disqualifying factors. Figure 1 provides additional information. Denials are described in greater detail throughout this report.

### Figure 1: Firearm Permit Application Outcomes, State of Hawaii, 2017

16,443 Applications Processed



Applications Approved/
Permits Issued
15,793 (96.0%)

Applications Denied
283 (1.7%)

Applications Approved/
Permits Voided
367 (2.2%)

## Registrations and Importations

The 15,793 permits issued statewide in 2017 cover a total of 40,635 firearms registered throughout the year, resulting in a 23.9% decrease from the 53,400 firearms registered during 2016. Over half (21,142, or 52.0%) of the firearms registered during 2017 were imported from out-of-state, with the balance accounted for by transfers of firearms that were previously registered in Hawaii. Independent estimates made during the late-1990s by the Department of the Attorney General and the City and County of Honolulu Police Department conservatively placed the number of privately owned firearms in Hawaii at "at least one million." Adding to that rough tally during the 2000 through 2017 period, a total of 561,257 firearms were registered (including some more than once, by different owners) and 276,977 were imported, but there is no way to track the number of firearms that permanently leave the state.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 50.7% (8,002) of the permits issued during 2017 were to acquire longarms, while 49.3% (7,791) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per HRS § 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 55.1% (22,394) of all firearms registered during 2017 (40,635). Broken out further, rifles and shotguns comprised 45.0% (18,304) and 10.1% (4,090) of total registrations, respectively. The remaining 44.9% (18,241) of firearms registered throughout 2017 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2017 across the four counties and for the State of Hawaii overall.

**Table 1:  Firearm Registration Activity,
State of Hawaii and Counties, 2017**

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 10,326 | 3,223 | 1,662 | 1,232 | **16,443** |
| Applications Approved/ Permits Issued | 9,978 | 3,094 | 1,600 | 1,121 | **15,793** |
| Applications Approved/ Permits Voided | 192 | 35 | 39 | 101 | **367** |
| Applications Denied | 156 | 94 | 23 | 10 | **283** |
| Denial Rate* | 1.5% | 2.9% | 1.4% | 0.8% | **1.7%** |
| Firearms Registered | 25,299 | 8,328 | 4,121 | 2,887 | **40,635** |
| Firearms Imported | 13,751 | 4,151 | 1,888 | 1,352 | **21,142** |

* The most comparable national figure is a 4.2% estimated average denial rate in 2015 for jurisdictions that require a buyer to obtain, after a local agency-conducted background check, a government-issued document that must be presented to a seller before the buyer can receive a firearm (Bureau of Justice Statistics, 2017).

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2017 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

**Figure 2: County Distribution of Permit Applications Processed and Denied versus Resident Population Distribution, 2017**



Figure 3 (next page) presents historical data on permit application denial rates for the State of Hawaii and each of the four counties.



**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2017**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City & County of Honolulu | 1.4 | 1.3 | 0.6 | 1.0 | 0.3 | 0.2 | 0.4 | 0.4 | 0.6 | 0.6 | 0.5 | 0.6 | 0.4 | 0.4 | 0.2 | 0.3 | 0.8 | 1.5 |
| Hawaii County | 2.4 | 2.3 | 2.9 | 2.5 | 4.9 | 4.0 | 2.4 | 2.1 | 1.8 | 1.1 | 1.7 | 3.8 | 3.0 | 1.9 | 1.4 | 2.2 | 3.2 | 2.9 |
| Maui County | 3.7 | 5.6 | 4.4 | 4.2 | 2.9 | 4.5 | 2.3 | 2.0 | 2.9 | 3.8 | 2.6 | 2.5 | 1.7 | 2.0 | 1.9 | 2.3 | 1.7 | 1.4 |
| Kauai County | 1.5 | 0.3 | 0.7 | 1.3 | 0.4 | 0.2 | 0.1 | 0.6 | 0.2 | 0.1 | 0.1 | 1.3 | 0.9 | 1.4 | 1.4 | 1.7 | 1.2 | 0.8 |
| State of Hawaii (Total) | 1.8 | 2.0 | 1.5 | 1.7 | 1.5 | 1.3 | 1.0 | 0.9 | 1.1 | 1.1 | 1.0 | 1.5 | 1.0 | 1.0 | 0.8 | 1.1 | 1.5 | 1.7 |

Firearm registration activity increased dramatically over the course of the 18 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2017, the number of statewide permit applications annually processed increased by 153.4%, the number of firearms annually registered leaped 198.4%, and the number of firearms annually imported rose 192.5%.



**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2017**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 | 21,408 | 16,443 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 | 53,400 | 40,635 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 | 26,616 | 21,142 |

4

2-ER-360

Figure 5 shows that, between 2000 and 2017 in the City and County of Honolulu, the annual tally of permits processed increased 154.0%, the number of firearms annually registered surged 207.1%, and the number of firearms annually imported climbed 179.7%.

**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2017**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 | 12,599 | 10,326 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 | 31,613 | 25,299 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 | 16,856 | 13,751 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2017 period rose 181.2%, the number of firearms annually registered jumped 186.9%, and the number of firearms annually imported skyrocketed 234.5%.

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2017**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,972 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 | 4,669 | 3,223 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 | 11,585 | 8,328 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 | 5,545 | 4,151 |

2-ER-361

Figure 7 reveals that, between 2000 and 2017 in Maui County, the number of permits processed annually increased 109.1%, the number of firearms annually registered rose 181.1%, and the tally of firearms annually imported jumped 194.5%.

**Figure 7: Firearm Registration Trends,
Maui County, 2000-2017**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 | 2,178 | 2,980 | 1,662 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 | 5,660 | 4,121 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 | 2,403 | 1,888 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2017 increased 155.1%, the number of firearms registered climbed 185.6%, and the number of firearms imported soared 215.2%.

**Figure 8: Firearm Registration Trends,
Kauai County, 2000-2017**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 | 1,889 | 1,232 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 | 4,542 | 2,887 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 | 1,812 | 1,352 |

2-ER-362

**Permit Application Denials**

As noted earlier, 1.7% (283) of all permit applications in Hawaii during 2017 were denied for cause. The majority of the denials were for longarm (195, or 68.9%) rather than handgun (88, or 31.1%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2017 were denied at a rate (2.3%) that is more than double the denial rate for handgun permit applications (1.1%).

Roughly one-quarter (67, or 23.7%) of the denials in 2017 were due to the applicants' prior criminal convictions, while 4.2% (12) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (HRS § 134-17). In 2017, falsified criminal or mental health information, or both, were provided in 41.7% (118) of the 283 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 1.4% (4) of the cases; and no falsified information was provided in 56.9% (161) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2: Reasons for Denied Firearm Permit Applications, State of Hawaii, 2017**

|  | # | %* |
|---|---|---|
| Mental Health-Related Issue** | 139 | 49.1 |
| "Other" Criminal Offense | 69 | 24.4 |
| Medical Marijuana Patient*** | 47 | 16.6 |
| Other Reason (e.g., non-U.S. citizen, dishonorable discharge) | 20 | 7.1 |
| Domestic Violence**** | 16 | 5.7 |
| Drug Offense | 15 | 5.3 |
| Restraining/Protective Order | 5 | 1.8 |
| Disqualifying Juvenile Offense | 2 | 0.7 |

   * Figures do not total 100% due to multiple reasons for some denials.

   ** Includes adverse mental health diagnoses and treatment, and drug or alcohol abuse/addiction and treatment. Denials for such reasons can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected. While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued.

   *** Former medical marijuana patients may successfully apply one year after the expiration of their medical marijuana card.

   **** Includes domestic violence-related offenses and counseling/treatment.

**2-ER-363**

Table 3 provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2017**

| 283 Total Denials | # | %* |
|---|---|---|
| 9 felonies + abuse of family/household member | 1 | 0.4 |
| abuse of family/household member | 8 | 2.8 |
| abuse of family/household member - acquitted by reason of insanity | 1 | 0.4 |
| alcohol abuse treatment | 7 | 2.5 |
| assault | 15 | 5.3 |
| assault (domestic-related) | 2 | 0.7 |
| assault + abuse of family/household member + mental health issue/treatment | 3 | 1.1 |
| assault + burglary | 1 | 0.4 |
| assault + mental health issue/treatment | 1 | 0.4 |
| assault + restraining order | 2 | 0.7 |
| assault + restraining order + on felony probation | 1 | 0.4 |
| assault + terroristic threatening | 1 | 0.4 |
| assault x 2 | 1 | 0.4 |
| battery (mainland) | 4 | 1.4 |
| burglary | 1 | 0.4 |
| disorderly conduct | 4 | 1.4 |
| disqualifying juvenile offense(s) | 2 | 0.7 |
| drug addiction + medical marijuana card | 1 | 0.4 |
| drug offense | 6 | 2.1 |
| drug offense + sex abuse treatment | 1 | 0.4 |
| DUI (felony-level) | 1 | 0.4 |
| felonies (unspecified) | 1 | 0.4 |
| felony (unspecified) | 6 | 2.1 |
| harassment | 6 | 2.1 |
| harassment + mental health issue/treatment | 1 | 0.4 |
| indecency/sexual contact with child (mainland) | 1 | 0.4 |
| medical marijuana card | 46 | 16.3 |
| mental health issue/treatment | 106 | 37.5 |
| mental health issue/treatment + alcohol abuse treatment | 1 | 0.4 |
| mental health issue/treatment + alcohol and drug dependence | 1 | 0.4 |
| mental health issue/treatment + false info (unspecified) on application | 1 | 0.4 |
| mental health issue/treatment + substance abuse treatment | 3 | 1.1 |
| motor vehicle theft + alcohol abuse treatment | 1 | 0.4 |
| motor vehicle theft + harassment + substance abuse treatment | 1 | 0.4 |
| no response from California re motor vehicle theft arrest | 1 | 0.4 |
| no response from Georgia and Illinois re prior arrests | 1 | 0.4 |
| not a U.S. citizen | 1 | 0.4 |
| positive field test for drug use | 3 | 1.1 |
| resisting arrest | 1 | 0.4 |
| restraining order | 2 | 0.7 |
| sexual assault | 6 | 2.1 |
| spousal battery (mainland) | 1 | 0.4 |
| substance abuse treatment | 7 | 2.5 |
| terroristic threatening | 2 | 0.7 |
| theft | 1 | 0.4 |
| theft + mental health issue/treatment | 3 | 1.1 |
| unknown disposition for unspecified felony arrest | 1 | 0.4 |
| warrant | 14 | 4.9 |

\* Due to rounding, figures do not total 100%.

2-ER-364

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public. Statewide in 2017, 225 employees of private security firms applied for and were issued carry licenses, and there were no denials. A total of 14 private citizens applied for a concealed carry license in 2017, including seven in the City and County of Honolulu, three in Maui County, two in Hawaii County, and two in Kauai County; all applicants were denied by the respective county's police chief.

## Confiscations

One "assault pistol," as defined and prohibited by state law, was confiscated by the City and County of Honolulu Police Department in 2017. This was the only confiscation reported by firearm registration personnel statewide for the year.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel.  As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

Hawaii County Police Department

**Arlene Young**, Senior Police Records Clerk
**Lori Enomoto**, Firearms Registration Clerk
**Michelle Kaaukai-Perreira**, Firearms Registration Clerk

City and County of Honolulu Police Department

The entire Firearms Registration Section, in particular:
**Suzy Yamasaki**, Firearms Registration Clerk

Kauai County Police Department

**Scott Yamaguchi**, Weapons Registration Clerk

Maui County Police Department

**Debra Agena**, Statistics Clerk
**Melanie Wong**, Firearms Registration Clerk

## Reference

Bureau of Justice Statistics (November 2017).  *Background checks for firearms transfers, 2015: Statistical Tables.*  U.S. Department of Justice: Office of Justice Programs.  NCJ 250978.

2-ER-365

# STATE OF HAWAI'I PERMIT TO ACQUIRE FIREARMS APPLICATION

**Permit Application Number:** [_____]

☐ Long Gun Permit to Acquire  ☐ Pistol/Revolver Permit to Acquire  ☐ Imported Firearm(s)  ☐ Use Only Permit

Name: _____
LAST     FIRST     MIDDLE

Alias/Nickname/Maiden name(List ALL): _____

Social Security Number: _____ Height: ____ Weight: ____ Eyes: ____ Hair: _____

Sex: _____ Date of Birth: _____ Place of Birth (City, State): _____

U.S. Citizen: ☑ YES ☐ NO  If NO, Country of Citizenship: _____

Alien or I-94 Admission number: _____

Residence Address: _____
STREET    CITY    STATE  ZIP

Hawai'i Address: _____ Address Type: ☐ Residence
                   ☐ Business
Email Address: _____ (optional)     ☐ Sojourn

Phone (Home/Cell/Other): _____ Phone (Business): _____

Occupation: _____ Employer: _____ Bus. Address: _____

If firearms are imported,        Date firearms or applicant arrived
city and state imported from: _____  in Hawai'i (whichever is latest): _____

> ☐ Permit for motion picture films or television program production ONLY (HRS §134-2.5(b))
>
> Applicant name or officer of firm/corporation Business name  Type of business engaged
>
> Business Address           Phone
>
> Full description of the use of firearms or explosives
>
> Name of person(s) using props

\*\*\*An application for a permit to acquire firearms shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and photograph are already on file with the department, these may be waived. [HRS §134-2(b)]\*\*\*

## CONTINUE TO FIREARM APPLICATION QUESTIONNAIRE



COR

24-CR-0366

# FIREARM APPLICATION QUESTIONNAIRE

Please answer the questions below by <u>WRITING YOUR INITIALS</u> on the line under "yes" or "no."

|  |  | YES | NO |
|---|---|---|---|
| 1. | Are you a fugitive from justice? [HRS §134-7(a) and 18 U.S.C. §922(g)(2)] | ___ | ___ |
| 2. | Are you under indictment or information, or have waived indictment, or bound over to the circuit court, in this State or elsewhere, for a crime punishable by imprisonment for a term exceeding one year? [HRS § 134-7(b) and 18 U.S.C. §922(n)] | ___ | ___ |
| 3. | Have you been convicted, in this State or elsewhere, of a crime punishable by imprisonment for a term exceeding one year? [HRS §134-7(b) and 18 U.S.C. §922(g)(1)] | | ___ |
| 4. | Are you under indictment or information, or have waived indictment, or bound over to the circuit court, in this State or elsewhere, for any crime of violence or for the illegal sale of any drug? [HRS §134-7(b)] | | ___ |
| 5. | Have you been convicted, in this State or elsewhere, for any crime of violence or for the illegal sale of any drug? [HRS §134-7(b)] | | ___ |
| 6. | Are you or have you been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound, or intoxicating liquor, or controlled substance? [HRS §134-7(c)(1)]<br><br>If yes, Include name of treating physician: _____ | ___ | ___ |
| 7. | Are you an unlawful user of or addicted to any controlled substance? [18 U.S.C. §922(g)(3)]<br><br>If yes, Include name of treating physician: _____ | | |
| 8. | Are you authorized to utilize marijuana for medical purposes? [18 U.S.C. §9 (g)(3)]<br><br>If yes, please provide expiration date of authorization: _____<br><br>and the state which issued authorization: _____ | | |
| 9. | Have you been acquitted of a crime on the grounds of mental disease, disorder or defect? [HRS §134-7(c)(2)]<br><br>If yes, Include name of treating physician: _____ | | |
| 10. | Have you been adjudicated as a mental defective or have been committed to any mental institution? [18 U.S.C. §922(g)(4)]<br><br>If yes, Include name of treating physician: _____ | | |
| 11. | Have you been diagnosed as having a behavioral, emotional, or mental disorder(s)? [HRS §134-7(c)(3)]<br><br>If yes, Include name of treating physician: _____ | ___ | ___ |
| 12. | Are you or have you been under treatment for organic brain syndrome(s)? [HRS §134-7(c)(3)]<br><br>If yes, Include name of treating physician: _____ | ___ | ___ |


COR
24-00362

Please answer the questions below by <u>WRITING YOUR INITIALS</u> on the line under "yes" or "no."    YES    NO

13.  Are you an illegal alien or unlawfully in the United States? [18 U.S.C. §922(g)(5)(A)]    ___ ___

14.  Have you been admitted to the United States under a nonimmigrant visa? [18 U.S.C. §922(g)(5)(B)]    ___ ___

15.  Are you less than 25 years old and have been adjudicated by the family court to have committed a felony, two or more crimes of violence, or an illegal sale of any drug? [HRS §134-7(d)]    ___ ___

16.  Have you been discharged from the Armed Forces under dishonorable conditions? [18 U.S.C. §922(g)(6)]    ___ ___

17.  Have you renounced your United States citizenship? [18 U.S.C. §922(g)(7)]    ___ ___

18.  Are you restrained pursuant to an order of any court, including ex parte order, from contacting, threatening, or physically abusing (to also include harassing and stalking) any person? [HRS §134-7(f) and 18 U.S.C. §922(g)(8)(A-B)]    ___ ___

19.  Have you been convicted of a misdemeanor crime of domestic violence? [18 U.S.C. §922(g)(9)]    ___ ___

20.  EXPLANATION FOR ANY 'YES' ANSWERS:

|  |
|  |
|  |
|  |
|  |
|  |

**HRS §134-17 Penalties,** (a) If any person gives false information or offers false evidence of the person's identity in complying with any of the requirements of this part, that person shall be guilty of a misdemeanor; provided, however that if any person intentionally gives false information or offers false evidence concerning their psychiatric or criminal history in complying with any of the requirements of this part, that person shall be guilty of a class C felony.

*** Do NOT sign until instructed to do so. ***

*I declare under penalty of law that the forgoing is true and correct.*

_____          _____
SIGNATURE OF APPLICANT                 DATE

_____     _____     _____
SIGNATURE OF ISSUING AUTHORITY     BADGE/ID NO.     COUNTY OF ISSUING AUTHORITY

Revised 10/2017

COR
2-COR-0368

**G** 267551

# APPLICATION FOR PERMIT TO ACQUIRE FIREARMS
### Sections 134-2 and 134-3, Hawaii Revised Statutes

Applicant _____
              LAST                           FIRST                  MIDDLE

Alias(es)/nickname(s)/maiden name _____

Residence address/sojourn _____ Phone _____

Occupation _____ Name of business _____ Phone _____

Rank/grade (military) _____ Business address _____

Place of birth _____ Racial extraction _____ U.S. citizen YES ☐ NO ☐

U.S. passport/naturalization No. _____ Social Security No. _____

Date of birth _____ Height _____ Weight _____ Hair _____ Eyes _____ Sex ____

Acquired from: Name _____ Phone _____

            Address _____ Deceased YES ☐ NO ☐

Request permit to acquire the following described handgun(s):

| Caliber | Make | Model | Type | Barrel length | Serial No. |
|---------|------|-------|------|---------------|------------|
| | | | | | |
| | | | | | |
| | | | | | |

As a condition to obtaining a permit to acquire firearm(s), I hereby grant to the Chief of Police of this County access to my medical records which may have a bearing on my mental health relative to conditions listed in the Firearm Application Questionnaire.

Date _____ Signature of Applicant _____

---

### *Office of the Chief of Police, City and County of Honolulu*
## PERMIT TO ACQUIRE FIREARMS

Permission is hereby granted to the above named applicant to acquire the firearm(s) listed in the foregoing application.

                                        Chief of Police, C & C Honolulu

Date: _____ Authorized by: _____

Type of ID used: _____ Investigated by: _____

Person accepting document: _____ Issued by: _____

PHOTO

1st x ☐  2nd x w/i yr. _____ renewal _____
                    DATE              DATE

Photograph/Fingerprint taken on _____

**THIS PERMIT IS VOID AFTER**

_____

Upon expiration of this permit, please return it to the Firearms Unit of the Honolulu Police Department

RIGHT THUMB PRINT

HPD-131 (R-12/96)

COR
2-FOR0069

PERMIT NO. _____
OUT OF STATE      YES ☐      NO ☐

# MEDICAL INFORMATION WAIVER
## Chapter 134, Hawaii Revised Statutes

I, _____, do freely and in compliance with sections 134-2 and 134-7
(PLEASE PRINT NAME)

of the Hawaii Revised Statutes, authorize the Chief of Police in the City and County of Honolulu access
to any and all records which have a bearing on my mental health for the strict purpose of determining
my qualification to acquire, own, possess, or have under my control, a firearm.

Name of physician/facility: _____

_____            _____
DOCTOR'S ADDRESS                                        DOCTOR'S TELEPHONE NO.

_____            _____
DATE                                                              SIGNATURE OF APPLICANT

_____            _____        _____
WITNESS                                                  DATE                           TIME

HPD-89 (R-05/13)



# KAISER PERMANENTE® *HAWAII REGION*
**Authorization for Release of**
**Protected Health Information**

| | |
|---|---|
| MR # | UC Loc |
| Name | |
| Sex/BD. | |

Original: 7/1/98   Revised: 5/8/03   Reviewed:

**1.** *I hereby authorize:* ❶                    *Date Format: MM / DD / YYYY*
KAISER PERMANENTE DEPARTMENT OF BEHAVIORAL HEALTH SERVICES
1441 KAPIOLANI BOULEVARD, SUITE 1600
HONOLULU, HAWAII 96814

**2.** *Release to:* ❶
A. ☐ Patient or Authorized Representative
B. ☐ Kaiser Permanente Medical Center:   3288 Moanalua Road, Honolulu, Hawaii 96819:
   Attention Outpatient Medical Records for: _____
   ➲ Upon receipt, forward to requester          *Physician • Department • Location*
C. ■ Physician, receiving person, agency or institution:   CITY AND COUNTY OF HONOLULU, HPD
   Address:  801 SOUTH BERETANIA STREET
   City:  HONOLULU _____          State:  HI ___    Zip Code:  96813
   Attention:   FIREARMS SECTION _____          Dept: _____

**3.** *Pertaining to the care of:*
Name:  Last _____          First _____          M.I. _____
MR #: _____          and   SS # _____
Also known as: _____          Birthdate ___ / ___ / _____

**4.** *For the purpose of:*  DETERMINING AUTHORIZATION FOR ME TO ACQUIRE, OWN, OR POSSESS A FIREARM

**5.** *Description of Information:*
Disclosure is authorized for any and all information about medical history, mental and physical condition, including HIV infection, AIDs, or ARC, drug and alcohol use, and other personal information unless otherwise specified.
_____
_____

**6.** *Fees:*
A reasonable fee will be charged for duplication of records. An estimate of those charges will be provided upon request prior to duplication.

**7.** *Duration of validity:*
This authorization is valid for six (6) months from the date of signing unless revoked in writing by the undersigned prior to six (6) months. The undersigned may revoke this by submitting a letter to Health Information Management Department at 3288 Moanalua Road, Honolulu, Hawaii 96819. I understand that the revocation will not apply to any action taken in reliance on this authorization.

**8.** *Re-disclosure:*
The information used and/or disclosed pursuant to the authorization may be subject to re-disclosure by the recipient and no longer be protected by 45 CFR Subtitle A, Subchapter C, Section 164.508.

**9.** *Signature:*
I understand that Kaiser Permanente may not condition treatment, payment, enrollment in the health plan, or eligibility for benefits on my execution of this authorization, except when Kaiser Permanente seeks authorization (1) because it is providing research-related treatment; (2) for purposes of determining health plan eligibility, enrollment underwriting, or risk rating, so long as the authorization is not for use or disclosure of HIPAA psychotherapy notes; or (3) because it is providing treatment solely for the purpose of creating protected health information for disclosure to a third party.

Date ___ / ___ / _____   Signature _____          Ph # _____ - _____
                              *Patient • Authorized Representative*
If signed by other than patient or parent of minor child, please print name and indicate relationship. Submit documents to show authority to request information on the patient.

Print: _____          _____
   *Authorized representative's name*          *Relationship to patient*

**Please return a copy of this authorization form with your report.  Thank You!**

4800 3566  7/03          **White** - OMR/Permits Correspondence          **Canary** - Requester Copy

| Office use only: | ID Check: _____ | MRN: _____ |
| | Source: _____ | Released By: _____ Date _____ |

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby authorize this provider/facility **Straub Clinic and Hospital**

located at the following address   888 South King Street Honolulu Hawaii 96813

to use or disclose my individually identifiable health information as described below. I understand that this authorization is voluntary and that this facility will not withhold treatment if I refuse to sign this authorization.

Patient Name: x_____   Date of Birth: x_____   SSN: x_____

Other names I may be known by: _____

Address: x_____

Telephone:   Work: x_____   Home: x_____   Other: _____

This authorization covers the services provided during the period of **ALL DATES TO PRESENT**

_/_/_ to _/_/_   Requested format
(mm/dd/yy)   (mm/dd/yy)   ☐ Electronic Mail

**I would like to** ■ Review ☐ Copy ☐ Request a release of **the following information: (check as many as apply)** ☐ CD ☐ Paper

☐ History and Physical Examination (clinic)   ☐ Progress Notes   ☐ X-ray reports results
☐ History and Physical Report (hospital)   ☐ Discharge Summary   ☐ X-ray Films
☐ Laboratory tests results   ☐ Pathology reports   ☐ Consultation Reports
☐ AIDS or HIV infection/HIV Testing   ☐ ER Records   ☐ Surgery reports
■ Treatment for alcohol or drug abuse   ☐ Clinic Visit Notes   ☐ Billing Records
■ Mental health or psychiatric services (*excluding psychotherapy notes*)   ☐ Photographs, videotapes, digital or other images
■ Other (please specify)   **COMPLETE RECORDS**

**Note:  Release of Psychotherapy Notes, as defined by HIPAA Regulations, requires a separate authorization**

1. My initials specifically authorize the release of any of the following kinds of information that are or may be in my record
   **(Note: we will not release your records if they contain any of the following unless initialed by you):**

   _____ AIDS or HIV infection or venereal disease X_____ Treatment of alcohol or drug abuse X_____ Mental health(including medications)/psychiatric services

2. This information is to be disclosed for the purpose of: ☐Continuing Health Care ☐Insurance ☐Legal Purposes
   ■ Other (specify):  **APPLICATION TO ACQUIRE FIREARMS**

3. Information to be released or sent to:   Fax: _____
   Name: **HONOLULU POLICE DEPARTMENT**   Telephone: **723-3190**
   Address: **801 SOUTH BERETANIA STREET**   City **HONOLULU**   State **HI**   Zip **96813**

4. I understand that if the organization authorized to receive the information is not a health plan or health care provider; the released information may no longer be protected by federal privacy regulations.

5. This facility, its employees, officers, and physicians are released from any legal responsibility or liability for releasing the requested information as authorized.

6. My initials indicate I have read and agree to the following:

   a. **Initials:** X_____ I understand that this authorization will expire 1 year from the date signed below or upon the following event or condition _____ unless revoked earlier.

   b. **Initials:** X_____ I understand that I may revoke this authorization at any time by notifying this facility in writing. I also understand that revoking this authorization will not apply to any information released by this facility before they received the revocation. (See our *Notice of Privacy Practices* for instructions)

   c. **Initials:** X_____ I understand that the provider/facility reserves the right to collect reasonable fees for the copies I have requested.

   **(Form MUST be completed before signing)**

Signature: X_____   Print Name: X_____   Date: X_____

If signed by someone other than the patient, please describe your authority to act on behalf of the Patient: _____

MAIL OR FAX TO: STRAUB CLINIC AND HOSPITAL, MEDICAL REPORTS DEPARTMENT,
888 So. King St., Honolulu, Hawaii 96813   FAX#: 808/522-3207

# Straub
## CLINIC & HOSPITAL
*An affiliate of Hawaii Pacific Health*

888 South King Street Honolulu, Hawaii  96813
Tel: 808-522-4285  Fax:  808-522-3207

Form# 91562   rev date 5/2004

*Mail/Fax/E-mail consent form with a clear copy of your ID
(ex.  Driver's License, State ID, or passport)

*Please allow up to 30 days minimum for completion of your request

Email: _____

## Authorization for Use or Disclosure of Protected Health Information (PHI)

| Organization Disclosing PHI | Name of Individual/Organization (other than AMHD) Disclosing PHI |
|---|---|
| Name: State of Hawaii<br>Adult Mental Health Division (AMHD)<br>PO Box 3378<br>Honolulu, HI 96801-3378 | Name: |

**Organization That Will Receive the Individual's PHI**

Honolulu Police Department
801 South Beretania Street
Honolulu, HI 96813

**Client/Patient Whose PHI is Being Requested**

| First Name: | Last name: |
|---|---|
| Address: | Birth date: |
| | Social Security Number: |

I Authorize that the Following Protected Health Information be Used/Disclosed: (PLEASE INITIAL)

_____ Mental Health        _____ Substance Abuse Treatment and/or Counseling

The Protected Health Information is Being Used or Disclosed for the Following Purposes (*At the request of the Individual* is an acceptable purpose if the request is made by the individual and the individual does not want to state a specific purpose.):

To determine my qualification to own, possess, or control any firearm or ammunition.

Authorization Duration (This authorization will be in force and effect until the event specified below. At that time, this authorization to use or disclose this protected health information expires).

Expiration of Authorization Event That Relates to the Purpose of the Use or Disclosure:

My disqualification from owning, possessing, or controlling any firearm or ammunition.

I understand that I have the right to revoke this authorization, in writing, at any time by sending such written notification to the above stated county police department. I understand that a revocation is not effective to the extent that the county police department has relied on the use or disclosure of the protected health information.

I understand that information used or disclosed pursuant to this authorization may be disclosed by the recipient and may no longer be protected by federal or state law. However, I understand that information related to education (FERPA, 34 CFR Part 99), alcohol or drug treatment services (42 CFR Part 2) may not be redisclosed without my authorization.

| Signature: | Date: |
|---|---|
| Print Name: | |

AG Firearms Waiver Honolulu 9/2013


COR
2-COR0308

PAID

PERMIT NO. _____

# FIREARMS INFORMATION FORM

☐ **Rifle/Shotgun Acquisition**     ☐ **Out-of-State Firearm Acquisition**     ☐ **Return of Firearm from Evidence**

Name _____
　　　　　LAST　　　　　　　　　　　　FIRST　　　　　　MIDDLE　　　　　(MAIDEN NAME)

Address _____　Phone _____

Employer _____　SSN _____

Business address _____　Phone _____

Occupation _____　Rank/grade (military) _____

Date of birth _____ Sex _____ Place of birth _____

U.S. passport/naturalization No. _____　U.S. citizen　YES ☐　NO ☐

Racial extraction _____ Height ____'____" Weight _____ Hair _____ Eyes _____

Acquired from: Name _____　Phone _____

　　　　　　Address _____　Deceased　YES ☐　NO ☐

Brought in from: _____
　　　　　　　　　　　CITY AND STATE (OR CITY AND COUNTRY)

| Caliber | Make | Model (Hand/Rifle/Shotgun) indicate action | Type | Barrel length | Serial No. |
|---------|------|--------------------------------------------|------|---------------|------------|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |

_____　_____　_____
SIGNATURE OF APPLICANT　　　　　　　　DATE/TIME　　　　　　　　　　TYPE OF IDENTIFICATION

PHOTO

_____
WITNESS

_____
PERFORMED COMPUTER CHECKS

RIGHT THUMB PRINT

HPD-84 (R-05/13)

COR

2-COR-0304


PAID

Payment Method:   Cash ☐   Credit Card Ref. # _____

# HONOLULU POLICE DEPARTMENT FIREARMS SECTION

### State and National Criminal History Record Check
### Consent & Notification

Department: _____ HONOLULU POLICE DEPARTMENT _____

Division: _____ RECORDS AND IDENTIFICATION DIVISION _____

Applicant Type: _____ FIREARM APPLICANT _____

Name: (Last, First, Middle) _____

Alias(es): _____

SSN: _____     Sex: _____     Race: _____

Height: _____     Weight: _____     Eye: _____     Hair Color: _____

Place of Birth: _____     Date of Birth: _____

Citizenship: _____

☐ I have not been convicted of a crime.
☐ I have been convicted of the following crime(s):

Describe the crime(s) and the particulars, such as dates, offense, and disposition (attach additional sheets as necessary):

I, the undersigned, hereby authorize the Department/Division listed above to submit a set of my fingerprints to the Hawaii Criminal Justice Data Center (HCJDC) and the Federal Bureau of Investigation (FBI) for the purposes of accessing and reviewing state and national criminal history records that may pertain to me. I understand that my fingerprints will be retained by the HCJDC and the FBI for all purposes and uses authorized for fingerprint submissions, which may include participation in the state and national rap back program.

I understand that I have the right to challenge the accuracy and completeness of the results of my fingerprint-based criminal history record check. Should the Department/Division policy not allow a copy of the results to be given to me, I may obtain a copy of my criminal history record by submitting fingerprints and fees directly to the HCJDC and/or FBI. I understand that the procedures for obtaining a change, correction, or updating of my criminal history record are set forth in Title 28, Code of Federal Regulations, Section 16.34.

I acknowledge that I have read, understand, and agree to the FBI Privacy Act Statement.

Signature: _____     Date: _____

OTN: _____

THE SENATE
TWENTY-EIGHTH LEGISLATURE, 2016
STATE OF HAWAII

# S.B. NO.
2954
S.D. 2
H.D. 1

---

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1    SECTION 1.  The legislature finds that criminal background

2  checks on firearms applicants are critical to ensure the safety

3  of the community.

4    The rap back system is a service of the Federal Bureau of

5  Investigation that provides continuous criminal record

6  monitoring for authorized government agencies, including law

7  enforcement agencies, and notifies them when an individual

8  subject to a criminal history record check is arrested for a

9  criminal offense anywhere in the country.  This notification

10  will allow county police departments in Hawaii to evaluate if

11  the owner of a firearm may continue to legally possess and own

12  firearms.

13    The purpose of this Act is to authorize county police

14  departments in Hawaii to enroll firearms applicants and

15  individuals who are registering their firearms into the rap back

16  system.

*Exhibit "G"*


2-ER-376

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 265 of 268

CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI          3835
KENDALL J. MOSER          6515
RYAN M. AKAMINE           4358
Deputy Attorneys General
Department of the Attorney
  General, State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1494
Facsimile:   (808) 586-1369
E-Mail: Caron.M.Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov
        Ryan.M.Akamine@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU,<br><br>                    Defendants. | CIVIL NO. 19-00578 JMS-RT<br><br>DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CLARE .E CONNORS |

795248_1

*Exhibit "H"*

2-ER-377

Case: 21-16756, 02/22/2022, ID: 12376602, DktEntry: 17-3, Page 266 of 268

Defendant has no documents responsive to this request.  Discovery is ongoing. Defendant will supplement her responses as appropriate in accordance with applicable court rules.

9.    Produce all documents regarding the State of Hawaii's budget for the City and County of Honolulu's Firearms Permit Unit, if any, including budget requests from the City and County of Honolulu and all correspondence regarding same.

RESPONSE:

Defendant has no documents responsive to this request.

10.    Produce all documents that support Hawaii's interest in maintaining an in-person registration of handguns.

RESPONSE:

Defendant objects to this request as vague, ambiguous, and assumes facts that have not been established.

CARON M. INAGAKI

Without waiving the above objections, Defendant responds as follows:

Discovery is ongoing. Defendant will supplement her responses as appropriate in accordance with applicable court rules.

795248_1

4

2-ER-378

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 19-578 (JMS-RT) |
| v. | ) ) | CERTIFICATE OF SERVICE |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU | ) ) ) ) ) | |
| Defendants. _____ | ) ) ) | TRIAL: Not Scheduled JUDGE: Hon. J. Michael Seabright HEARING DATE: N/A |

1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below, a copy of the foregoing document was filed electronically and served through CM/ECF to the following counsel of record:

CARON M. INAGAKI, ESQ.
KENDALL MOSER, ESQ.
RYAN M. AKAMINE, ESQ.
Deputy Attorneys General
Department of the Attorney
    General, State of Hawaii
425 Queen Street
Honolulu, HI  96813
Email:        Caron.M.Inagaki@hawaii.gov
              Ryan.M.Akamine@hawaii.gov
              Kendall.J.Moser@hawaii.gov


Dated: April 28th, 2021


                    /s/ Alan Alexander Beck
                    Alan Alexander Beck

                    /s/ Stephen D. Stamboulieh
                    Stephen D. Stamboulieh
                    *Admitted Pro Hac Vice

                    Attorneys for Plaintiffs