No. 21-16756

# In the United States Court of Appeals
## for the Ninth Circuit

TODD YUKUTAKE AND DAVID KIKUKAWA

*Plaintiffs-Appellees*,

v.

HOLLY T. SHIKADA, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAI'I,

*Defendant-Appellant*,

AND

CITY AND COUNTY OF HONOLULU[1]

*Defendant*

**Appeal from a Judgment of United States District Court
For the District of Hawaii; Civ. No. 1:19-cv-00578-JMS-RT
Honorable Chief District Court Judge J. Michael Seabright**

## Appellees' Answering Brief

ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellees Todd Yukutake and David Kikukawa*

---

[1] The City and County of Honolulu was dismissed by stipulation in the lower court.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE ...............................................................1

REVIEWABILITY AND STANDARD OF REVIEW ...............................1

STATEMENT OF JURISDICTION ........................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................2

SUMMARY OF ARGUMENT ..............................................................3

ARGUMENT .....................................................................................4

I.   THE CHALLENGED LAWS ARE NOT LONGSTANDING .....................4

     A.   "Longstanding" Refers To The Founding .............................5

     B.   H.R.S. § 134-2 Is Not Longstanding .................................10

II.  NEITHER LAW QUALIFIES AS A PRESUMPTIVELY LAWFUL "CONDITIONS AND QUALIFICATIONS" ON THE COMMERCIAL SALE OF ARMS ......................................................................15

     A.   Limitations On Acquisition Fall Within The Second Amendment ....15

     B.   If There is a Presumption, Plaintiffs Have Rebutted It .......................17

III. The State is Required to Produce Substantial Evidence to Survive Heightened Scrutiny .....................................................................19

     A.   The Appropriate Standard Of Review Is Text, History And Tradition, Not Tiers Of Scrutiny .......................................................19

     B.   Tiers of Scrutiny Require That The State Produce Evidence .............20

i

C.    Tiers of Scrutiny Requires Consideration of Less Restrictive Alternatives ........................................................26

D.    Prophylaxis-Upon-Prophylaxis Restrictions Are Impermissible ........27

E.    Strict Scrutiny Should Apply ................................................29

F.    Hawaii's Laws Are Not Narrowly Tailored ........................................30

IV.   HAWAII'S    IN-PERSON    INSPECTION    OF    FIREARMS REQUIREMENT IS UNCONSTITUTIONAL ...........................................31

A.    Honolulu County Has Already Replaced In Person Firearm Registration ..............................................................33

B.    *Heller IV* Is Directly On Point..............................................34

C.    In-Person Registration Fails Heightened Scrutiny ............................39

V.    THE TEN-DAY EXPIRATION OF THE PERMIT TO ACQUIRE HANDGUNS IS UNCONSTITUTIONAL....................................................43

A.    The 10-Day Requirement Cannot Promote Public Safety .................44

B.    Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Also Underinclusive..................................................51

C.    The Ten-Day Expiration Date is Not Supported By Substantial Evidence ........................................................53

VI.   PLAINTIFFS    HAVE    PROPERLY    BROUGHT    A    FACIAL CHALLENGE ..................................................................56

CONCLUSION .................................................................59

STATEMENT OF RELATED CASES .............................................60

CERTIFICATE OF COMPLIANCE..............................................61

CERTIFICATE OF SERVICE ..................................................62

# TABLE OF AUTHORITIES

## Cases

*Ams. for Prosperity Found. v. Bonta*,
  141 S. Ct. 2373 (2021) ...................................................................... 30

*Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*,
  910 F.3d 106 (3d Cir. 2018) ............................................................. 11

*Bannon v. U.S.*,
  156 U.S. 464 (1895) .......................................................................... 7

*Binderup v. AG of United States*,
  836 F.3d 336 (3d Cir. 2016) ............................................................. 17

*Board of Trustees v. Fox*,
  492 U.S. 469 (1989) .......................................................................... 31

*Burson v. Freeman*,
  504 U.S. 191 (1992) .......................................................................... 23

*Citizens United v. FEC*,
  558 U.S. 310 (2010) .......................................................................... 56

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410, 113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993) ............................ 26, 51

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) ............................................................. 2

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .................................................................. *passim*

*Duncan v. Bonta*,
  19 F.4th 1087 (9th Cir. 2021) (en banc) .......................................... 6, 25

*Edenfield v. Fane*,
  507 U.S. 761 (1993) .......................................................................... 31

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ...................................................................21, 22, 26

*Fasset v. Smith*,
    23 N.Y. 257 (1891) ..............................................................................................7

*Fla. Bar v. Went for It*,
    515 U.S. 618 (1995)............................................................................................24

*Fotoudis v. City & Cty. of Honolulu*,
    54 F. Supp. 3d 1136 (D. Haw. 2014)..................................................................54

*Free & Fair Election Fund v. Mo. Ethics Comm'n*,
    903 F.3d 759 (8th Cir. 2018) .......................................................................27, 29

*Friedman v. City of Highland Park*,
    784 F.3d 406 (7th Cir. 2015) ...............................................................................9

*Fyock v. City of Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) .........................................................................5, 12

*Greater New Orleans Broad. Ass'n v. United States*,
    527 U.S. 173 (1999).............................................................................................26

*Gross v. United States*,
    771 F.3d 10 (D.C. Cir. 2014), *cert. denied*, 575 U.S. 951 (2015)......................57

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011)................................................................. *passim*

*Heller v. District of Columbia*,
    45 F. Supp. 3d 35 (D.D.C. 2014).......................................................................15

*Heller v. District of Columbia*,
    801 F.3d 264 (D.C. Cir. 2015)................................................................... *passim*

*Ill. Ass'n of Firearms Retailers v. City of Chi.*,
    961 F. Supp. 2d 928 (N.D. Ill. 2014)................................................................16

*In re Professional Investment Properties of America*,
  955 F.2d 623 (9th Cir.), *cert. denied*, 506 U.S. 1015 (1992) ........................35, 36

*Jackson v. City and County of San Francisco*,
  746 F.3d 953 (9th Cir. 2014), *cert. denied*,
  576 U.S. 1013 (2015) ................................................................................ *passim*

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020) ................................................................................24, 25

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) .............................................................................20

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) (en banc) .......................................................49, 50

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ...........................................................................................51

*Mahoney v. Sessions*,
  871 F.3d 873 (9th Cir. 2017) .............................................................................13

*Mai v. United States*,
  974 F.3d 1082 (9th Cir. 2020) ...........................................................................26

*Maloney v. Singas*,
  351 F. Supp. 3d 222 (E.D.N.Y. 2018) ..................................................................9

*Mance v. Sessions*,
  896 F.3d 699 (5th Cir. 2018) ...............................................................7, 8, 11, 14

*McCullen v. Coakley*,
  573 U.S. 464 (2014) ...............................................................................30, 31, 46

*McCutcheon v. Fed. Election Comm'n*,
  572 U.S. 185 (2014) ......................................................................................27, 30

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ......................................................................................4, 20

*Miranda v. Anchondo*,
   684 F.3d 844 (9th Cir. 2012) ...............................................................55

*Moore v. Madigan*,
   702 F.3d 933 (7th Cir. 2012) ..................................................................5

*NRA v. BATF*,
   700 F.3d 185 (5th Cir. 2012) ...............................................................8, 9

*NYSRPA v. Bruen*,
   No. 20-843, *cert. granted*, 141 S. Ct. 2566 (2021)......................................19, 39

*NY State Rifle & Pistol Ass'n, Inc. v. City of New York*,
   140 S. Ct. 1525 (2020) .........................................................................19

*NYSRPA, Inc., v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ................................................................23

*Nev. ex rel. DOT v. United States*,
   925 F. Supp. 691 (D. Nev. 1996)..........................................................55

*Nordyke v. King*,
   681 F.3d 1044 (9th Cir. 2012) .............................................................58

*O'Neil v. Neronha*,
   No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475
   (D.R.I. Mar. 15, 2022) ...........................................................14, 22, 56

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2017).........................................................26, 43, 46

*Pena v. Lindley*,
   898 F.3d 969 (9th Cir. 2018) ...............................................16, 18, 51

*Renna v. Becerra*,
   535 F.Supp. 3d 931 (S.D. Cal. 2021)...................................................18

*Rogers v. Grewal*,
   140 S. Ct.1865 (2020) .........................................................................19

*Shew v. Malloy*,
  579 U.S. 917 (2016)............................................................................23

*Silvester v. Harris*,
  843 F.3d 816 (9th Cir. 2016) ................................................... passim

*Six Star Holdings, LLC v. City of Milwaukee*,
  821 F.3d 795 (7th Cir. 2016) ..............................................................57

*State v. Deciccio*,
  315 Conn. 79 (2014) ..........................................................................43

*Teixeira v. Cty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) (en banc) .............................5, 6, 15, 44

*Turner Broad. Sys. v. FCC*,
  512 U.S. 622 (1994)........................................... 22, 31, 49, 55, 56

*Tyler v. Hillsdale Cnty. Sheriff's Dep't*,
  837 F.3d 678 (6th Cir. 2016) .............................................................17

*United States v. Barton*,
  633 F.3d 168 (3d Cir. 2011) ..............................................................17

*United States v. Carlson*,
  900 F.2d 1346 (9th Cir. 1990) ...........................................................34

*United States v. Carter*,
  669 F.3d 411 (4th Cir. 2012) .............................................................23

*United States v. Carter*,
  750 F.3d 462 (4th Cir. 2014) .............................................................23

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) ......................................1, 20, 21, 45, 46

*United States v. Elias*,
  921 F.2d 870 (9th Cir. 1990) ......................................................34, 35

*United States v. Marzzarella,*
614 F.3d 85 (3d Cir. 2010) ...................................................9, 15, 17

*United States v. One (1) Palmetto State Armory PA-15 Machinegun*
*Receiver/Frame, Unknown Caliber Serial No.:LW001804,*
822 F.3d 136 (3d Cir. 2016) ...................................................50

*United States v. Otherson,*
637 F.2d 1276 (9th Cir. 1980) .................................................55

*United States v. Skoien,*
614 F.3d 638 (7th Cir. 2010) ...................................................17

*United States v. Williams,*
616 F.3d 685 (7th Cir. 2010) ...............................................17, 18

*Wrenn v. District of Columbia,*
864 F.3d 650 (D.C. Cir. 2017)...................................................6

*Young v. Hawaii,*
992 F.3d 765 (9th Cir. 2021) .............................................5, 6, 10, 12

*Zimmerman v. Oregon Dept. of J.,*
170 F.3d 1169 (9th Cir. 1999) .................................................43

## CONSTITUTION AND STATUTES

U.S. Const. amend. II ...................................................... *passim*

18 U.S.C. § 242 ....................................................................55

18 U.S.C. § 922(a)(1).............................................................16

18 U.S.C. § 922(a)(6).............................................................49

18 U.S.C. § 922(g) ............................................................23, 42

18 U.S.C. § 922(t)(1)(C).........................................................49

18 U.S.C. § 924(a)(2).............................................................49

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1343 ................................................................................2

28 U.S.C. § 2201 ................................................................................2

28 U.S.C. § 2202 ................................................................................2

42 U.S.C. § 1983 ................................................................................2

42 U.S.C. § 1988 ................................................................................2

42 U.S.C. § 9607 ..............................................................................55

D.C. Code § 7-2502.04(c) ...............................................................41

D.C. Code § 22-4504.02 ..................................................................36

H.R.S. § 134-d(f) .............................................................................34

H.R.S. § 134-2 ......................................................................... *passim*

H.R.S. § 134-2(e) ...........................................................2, 47, 51, 53

H.R.S. § 134-2(f) ...............................................................31, 39, 42

H.R.S. § 134-2(g) .............................................................................52

H.R.S. § 134-3 ......................................................................... *passim*

H.R.S. § 134-3(c) .........................................................................2, 39

H.R.S. § 134-7 ..................................................................................42

H.R.S. § 134-7.3 ..............................................................................45

H.R.S. § 134-7(3)(f) ........................................................................45

H.R.S. § 134-7(g) ..................................................................................45

H.R.S. § 846-2.7(a) ...............................................................................28

H.R.S. § 846-2.7(b)(43) .........................................................................28

Mass. Ann. Laws ch. 140, § 121 ...........................................................12

Mass. Ann. Laws ch. 140, § 129B .........................................................12

Mass. Ann. Laws ch. 140, § 131 ...........................................................12

Mass. Ann. Laws ch. 140, § 131(i) ........................................................12

Mass. Ann. Laws ch. 140, § 131E .........................................................12

Mich. Comp. Laws § 28.429 ..................................................................39

2008 Mich. Pub. Acts No. 195 (2008) ....................................................39

## Regulations

27 CFR § 478.73 ....................................................................................41

27 CFR § 478.124 ..................................................................................41

27 CFR § 478.128 ..................................................................................41

## Other Authorities

4. Bl. Comm. 94 .......................................................................................7

William Lawrence Clark, William Lawrence Marshal New York, Fred B Rothman
& Co., A Treatise on the Law of Crime (1905)....................................7

Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of
Judges Reign? 36 OKLA. L.REV. 65 (1983) .......................................8

HB 2744 H.D. 1, S.D. 2 .........................................................................39

**INTRODUCTION**

In this case, the District Court correctly invalidated portions of two Hawaii statutes: (1) a provision that established a ten-day expiration date for permits to acquire handguns; and (2) a provision that required the in-person inspection of firearms at the time of registration. The challenged laws are largely redundant parts of a larger statutory scheme and fail any applicable level of scrutiny. *See* 1-ER-043 to 1-ER-044 (detailing the five-step process firearm buyers need to follow to purchase a firearm). In the trial court, Defendant-Appellant Holly T. Shikada ("Hawaii") failed to produce any evidence to justify its laws which it is required to survive any applicable level of scrutiny. The trial court correctly ruled in favor of Plaintiffs-Appellees Todd Yukutake and David Kikukawa ("Plaintiffs"). For the reasons below, Plaintiffs respectfully request that this Court uphold the District Court's well-reasoned decision.

**STATEMENT OF THE CASE**

The Plaintiffs agree with Hawaii's statement of the case.

**REVIEWABILITY AND STANDARD OF REVIEW**

This court reviews *de novo* the constitutionality of a statute. *See United States v. Chovan*, 735 F.3d 1127, 1131 (9th Cir. 2013). An appellate court also reviews a

district court's grant of summary judgment *de novo*. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

## STATEMENT OF JURISDICTION

This case is a challenge to the constitutionality of portions of H.R.S. § 134-2 and H.R.S. § 134-3 based on the Second Amendment to the U.S. Constitution. The District Court had jurisdiction pursuant to 42 U.S.C. § 1983 and § 1988, 28 U.S.C. §§ 1331, 1343, 2201, and 2202. 3-ER-447. Hawaii filed its Notice of Appeal on October 14, 2021. 3-ER-469 to 3-ER-475. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court correctly held that Hawaii's ten-day expiration date for permits to acquire handguns under H.R.S. § 134-2(e) violates the Second Amendment to the U.S. Constitution?

2. Whether the District Court correctly held that the in-person inspection requirement of firearms at the time of registration under H.R.S. § 134-3(c) violates the Second Amendment to the U.S. Constitution?

## SUMMARY OF ARGUMENT

Hawaii produced no evidence to the justify laws at issue in this litigation. Instead, contrary to precedent, it attempted to justify its laws as presumptively lawful because they were longstanding and impacted commercial activity. However, this Court's precedent holds that early twentieth century laws without a Colonial analog are not old enough to be longstanding. And simply because the laws at issue tangentially impact commercial activity does not insulate them from constitutional scrutiny. Both laws fail any applicable level of scrutiny. This is especially true, since Hawaii was unable to produce any evidence to justify these laws, which was its burden. Even if "common sense" was sufficient, it is not common sense that the laws at issue protect public safety, especially considering the other multitude of laws Hawaii already has in place. While Plaintiffs maintain that strict scrutiny should apply, these laws fail even intermediate scrutiny, as the district court held.

After the trial court's Order issued, Honolulu, where Plaintiffs live, successfully implemented an online system for firearm registration, thus creating a less onerous system that is no less effective. Hawaii's ten-day expiration for a handgun permit to acquire is also unconstitutional as it is likewise utterly untailored to any legitimate State interest. This Court should uphold the trial court's well-reasoned opinion.

3

**ARGUMENT**

## I.   THE CHALLENGED LAWS ARE NOT LONGSTANDING

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that citizens have the right to possess operative handguns for self-defense. *Heller* also made clear that the right belongs to every "law-abiding, responsible citizen[]"). *Heller,* 554 U.S. at 635. The rights guaranteed by the Second Amendment are fundamental and are, therefore, applicable to the States by incorporation under the Due Process Clause of the 14th Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010) ("[c]itizens must be permitted to use handguns for the core lawful purpose of self-defense.").

In striking down a law burdening that core right, the Supreme Court recognized "the handgun to be the quintessential self-defense weapon." *Heller*, 554 U.S. at 629. In so holding, the Court noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (554 U.S. at 626-27). Hawaii argues that these qualifications on the scope of the right apply here. That argument fails.

### A.    "Longstanding" Refers To The Founding

The trial court correctly held that the Hawaii laws at issue are not longstanding. The record does not include persuasive historical evidence establishing that the challenged laws impose prohibitions that fall outside the Second Amendment's historical scope. *See Jackson v. City and County of San Francisco,* 746 F.3d 953, 968 (9th Cir. 2014), *cert. denied*, 576 U.S. 1013 (2015); *see also Teixeira v. Cty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc) ("[d]etermining the scope of the Second Amendment's protections requires a textual and historical analysis of the amendment"). A law from the early 20th century is not longstanding.[2] In this Circuit, longstanding laws refer to laws in existence from the ratification of the Second Amendment:[3]

> Laws restricting conduct that can be traced to the founding era and are historically understood to fall outside of the Second Amendment's scope may be upheld without further analysis.

---

[2] Appellants' citation to *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (Opening Br. at 22) is dicta and, in any event, has been superseded by the en banc decision in *Young*.

[3] *See also Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) ("…1791, the year the Second Amendment was ratified—the critical year for determining the amendment's historical meaning…")

*Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (en banc) (quoting *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). *Accord Teixeira,* 873 F.3d at 682. In *Duncan v. Bonta,* this Court declined to find the magazine ban at issue longstanding. "[D]etermining whether sufficiently longstanding regulations have governed large-capacity magazines likely would require an extensive historical inquiry." *Duncan v. Bonta*, 19 F.4th 1087, 1103 (9th Cir. 2021) (en banc). This historical analysis requires this Court to look to Colonial history and earlier to find the original meaning of the Second Amendment. Laws like the 1932 law from *Duncan* cited by Hawaii for support are insufficient because this Court is "not inclined to review twentieth-century developments in detail, in part because they may be less reliable as evidence of the original meaning of the American right to keep and bear arms." *Young*, 992 F.3d at 811. That is a faithful reading of *Heller*.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35. Thus, "the Supreme Court has taught in *Heller I* that legal regulations of possession or carrying that are 'longstanding'…reflect limits to the preexisting right protected by the Amendment." *Wrenn v. District of Columbia,* 864 F.3d 650, 659 (D.C. Cir. 2017). That means that the Court should look to the "historical background of the Second Amendment." *Heller*, 554 U.S. at 592. For example, *Heller* cites to prohibitions on

"felons and the mentally ill" as instances of longstanding prohibitions because colonial and early English societies prohibited those individuals from owning firearms. *Id.* at 626. Contrary to Hawaii's arguments, this refers to laws from the Colonial Period. "[T]here are indications that in the founding era, it was generally thought that felons and the mentally ill should and could be prohibited from bearing arms." *Mance v. Sessions*, 896 F.3d 699, 714 (5th Cir. 2018) (Owens, J., concurring).

At common law, there were there were three classes of crime: treason, felony and misdemeanor. Felonies were those offenses which occasioned forfeiture of the lands and goods of the offender, and to which might be added death or other punishment according to the degree of guilt. 4. Bl. Comm. 94; *Fasset v. Smith*, 23 N.Y. 257(1891); *Bannon v. U.S.*, 156 U.S. 464 (1895). The felonies were murder, manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and arguably mayhem. *See* William Lawrence Clark, William Lawrence Marshal New York, Fred B Rothman & Co., A Treatise on the Law of Crime (1905) at 12. All other crimes, excepting treason, were misdemeanors.

"[A]t the time of the founding, 'the right to arms was inextricably and multifariously linked to that of civic virtu (i.e., the virtuous citizenry),' and that '[o]ne implication of this emphasis on the virtuous citizen is that the right to arms does not preclude laws disarming the unvirtuous citizens (i.e., criminals) or those who, like children or the mentally imbalanced, are deemed incapable of virtue.'"

*NRA v. BATF*, 700 F.3d 185, 201 (5th Cir. 2012) (citation omitted). Historically, the State disarmed non-virtuous citizens and those like children or the mentally unbalanced, who were deemed incapable of virtue. *See, e.g.* Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of Judges Reign? 36 OKLA. L.REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing firearms]."). *Heller* cites to these colonial prohibitions on felons and the mentally ill as part of its historical analysis to explain the scope of the Second Amendment right in 1791. Similarly, this Circuit's precedent commands that we look at the scope of the right in 1791.

Other circuits are in accord. The Fifth Circuit "extensively considered founding-era '[a]ttitudes' regarding gun laws and regulations" to uphold a restriction on young adults purchasing firearms. *Mance v. Sessions*, 896 F.3d 699, 713 (5th Cir. 2018) (Owens, J., concurring). The Fifth Circuit's extensive historical analysis of the founding era determined "the term 'minor' or 'infant'—as those terms were historically understood—applied to persons under the age of 21." *NRA*, 700 F.3d at 201. It concluded that if "a representative citizen of the founding era conceived of a 'minor' as an individual who was unworthy of the Second Amendment guarantee, and conceived of 18-to-20-year-olds as 'minors,' then it stands to reason that the citizen would have supported restricting an 18-to-20-year-old's right to keep and

8

bear arms." *Id.* at 202. Even then, "in an abundance of caution", the Fifth Circuit applied intermediate scrutiny to the restriction before upholding it. *Id*. at 204.

Similarly, in *Heller II*, the D.C. Circuit "presume[d]" that "the District's basic registration requirement…does not impinge upon the right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) ("*Heller II*"). It only upheld that presumption because it "[found] no basis in either the historical record or the record of this case to rebut that presumption" and because the "basic registration requirements are self-evidently *de minimis*." *Heller II*, 670 F.3d at 1255. Either a law is constitutional as understood by the Founders or it is not. "[T]he D.C. Circuit held that a number of the District's firearm registration requirements, which were passed in the mid-1970s, were 'novel' and 'not longstanding' for the purposes of the Second Amendment." *Maloney v. Singas*, 351 F. Supp. 3d 222, 234 n.19 (E.D.N.Y. 2018) (citing *Heller II*).

"A law's existence can't be the source of its own constitutional validity." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015). *See also United States v. Marzzarella*, 614 F.3d 85, 93 (3d Cir. 2010) ("[P]rudence counsels caution when extending the[] recognized ['longstanding prohibition'] exceptions to novel regulations unmentioned by *Heller*."). *See also Maloney v. Singas*, 351 F. Supp. 3d 222, 234 n.19 (E.D.N.Y. 2018) ("The nunchaku prohibition at issue here, signed into law in 1974, is likewise 'novel' and thus is not exempted from Second

Amendment scrutiny under the 'longstanding prohibitions' exception"). Both challenged laws are likewise novel modern laws and not subject to the longstanding exception.

### B.     H.R.S. § 134-2 Is Not Longstanding

H.R.S. § 134-2 was created in 1934. That is too new to be longstanding. "*Young* clarified the test for whether a law is 'longstanding and presumptively lawful,' explaining that the *purpose* of conducting the historical analysis is to determine whether the challenged law falls within the scope of the right as it was understood during the founding era. *Id*. That is, '[l]aws restricting conduct that can be traced to the founding era and are historically understood to fall outside of the Second Amendment's scope may be upheld without further analysis.[]' Evidence of similar restrictions found in ancient English law, founding era laws, and early post-ratification laws provide persuasive evidence of the historical understanding of the scope of the right. *Id.* By contrast, "twentieth-century developments . . . may be less reliable as evidence of the original meaning of the American right to keep and bear arms." 1-ER-052. A law from 1934 simply is too new to be longstanding on its own.

Even if this Court were to find that laws from 1934 without any colonial antecedent could be longstanding, this Court should not find so here because Hawaii's laws were not prevalent. This is in line with the Third Circuit's analysis

that "LCMs were not regulated until the 1920s, but most of those laws were invalidated by the 1970s…the lack of such a history deprives us of reliance on *Heller*'s presumption that such regulation is lawful." *Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*, 910 F.3d 106, 117 n.18 (3d Cir. 2018). However, even if it is appropriate to consider only 20th century laws, an in-state sales requirement was not a "historical tradition" or commonly found in the laws of the United States in that era. *Mance v. Sessions*, 896 F.3d 699, 714 (5th Cir. 2018) (Owen, J., concurring) (footnote omitted).

> As the district court stated,
>
> [t]he sparse handful of laws Defendant puts forth does not demonstrate the requisite 'historical prevalence.' *Young*, 992 F.3d at 783 ("We are looking for 'historical prevalence'") (quoting *Fyock*, 779 F.3d at 997)). Moreover, there is no evidence in the record suggesting that these laws are tethered—in any way—to the "original meaning of the American right to keep and bear arms." *Id.* at 811. Indeed, Defendant does not provide *any* historical context for these laws. Instead, Defendant asserts that their mere existence is evidence that the State of Hawaii's 10-day permit expiry period is presumptively valid. This meager showing is not enough.

1-ER-053. Both the Supreme Court in *Heller* and this Circuit have already rejected the proposition that one jurisdiction can be the basis for a law to be longstanding. "*Heller* also concluded that the Massachusetts law was an outlier that contradicted 'the overwhelming weight of other evidence regarding the right to keep and bear arms for defense of the home.'" *Jackson*, 746 F.3d at 963. The same should apply to three early twentieth century ten-day expiration periods for permits to acquire.

*Young*, 992 F.3d at 783 ("We are looking for 'historical prevalence.'") (quoting *Fyock*, 779 F.3d at 997). Three states do not equal "historical prevalence." Hawaii is currently the only State that has a ten-day expiration date on a mandatory permit to acquire.

While Hawaii references Massachusetts, Massachusetts' law is quite different than Hawaii's. Massachusetts residents need a firearms identification card in order to purchase a rifle or shotgun. "[R]ifles, shotguns and feeding devices therefor may be so purchased only upon presentment of: (i) a valid firearm identification card issued under section 129B; or (ii) a valid Class A or Class B license to carry firearms issued under section 131." Mass. Ann. Laws ch. 140, § 131E. Handguns are separately classified as "firearms" within its statutory scheme. Mass. Ann. Laws ch. 140, § 121. In order to purchase a handgun/firearm, one needs a different license called a license to possess or carry: "(a) A license shall entitle a holder thereof of a license to purchase, rent, lease, borrow, possess and carry: (i) firearms … for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority considers proper." Mass. Ann. Laws ch. 140, § 131.

This license also allows people to purchase rifles and shotguns. Both licenses are valid for up to six years from the time of issuance. *See* Mass. Ann. Laws ch. 140, § 129B & Mass. Ann. Laws ch. 140, § 131(i). There is no need to obtain the permit

to purchase Hawaii references in addition to the above. Hawaii's claim that "much like Hawai'i, Massachusetts still maintains a 'permit to purchase' requirement for handguns, the permits are valid for ten days, and it was enacted in the early 20th century." Opening Brief at 34. This statement is not accurate because it is not a ***requirement*** that all firearm purchasers acquire a permit to purchase. Instead, one can obtain a license which is valid up to six years in lieu of the permit to purchase.[4] The permit to purchase exists within the Massachusetts code as a vestige of the prior statutory scheme. Hawaii is the only state in the union which has a ***mandatory*** permit to acquire which expires ten days after issuance. H.R.S. § 134-2 is a modern outlier law that is not longstanding.

Hawaii appears to concede that its 2020 law is not longstanding on its own. *Mahoney v. Sessions*, 871 F.3d 873, 878 (9th Cir. 2017). However, it attempts to argue that its 2020 law is longstanding by bootstrapping its current law to a Hawaii law from 1907 which Hawaii alleges required basic registration of handguns. Hawaii does not dispute that long arm registration did not become required until 1994.[5] As a preliminary matter, for all the reasons raised above, a law from 1907 is not old

---

[4] It is more difficult to obtain the license to carry and there are stricter requirements. Therefore, it can make sense for purchasers who only wish to make rifle and shotgun purchases to get the firearms identification card.

[5] https://bit.ly/3rJKnAk  (last accessed 4/7/2022).

enough to be longstanding. "In the present case, the Government has offered no evidence that" its laws "[have] a founding-era analogue or was historically understood to be within the ambit of the permissible regulation of commercial sales of firearms at the time the Bill of Rights was ratified." *Mance,* 896 F.3d at 714 (Owen, J., concurring).

Even if it was, this type of attenuated longstanding analysis has already been rejected in this circuit:

> The fact that states historically imposed modest restrictions on the storage of gunpowder, a dangerous and highly flammable substance, does not raise the inference that the Second Amendment is inapplicable to regulations imposing restrictions on the storage of handguns.

*Jackson*, 746 F.3d at 963. *See also O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475, at *21 (D.R.I. Mar. 15, 2022) ("This Court will not extend such a Second Amendment limitation solely based on the addition of the stun gun to a list of arm prohibitions dating back to 1896").

In this Circuit, precedent dictates that a law must have a Colonial analog directly on point. Here, Hawaii cites to a twentieth century law that requires firearm owners to provide serial numbers and asks this Court to find its 2020 law which requires applicants to physically bring their firearm to the police is longstanding. That type of reasoning has already been rejected by this Court and it should be rejected here as well.

Perhaps most remarkable is Hawaii's primary support for this position. Hawaii cites to *Heller v. District of Columbia*, 45 F. Supp. 3d 35, 59 (D.D.C. 2014) *aff'd in part and rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015). Opening Brief at 43. Yet, that holding was specifically *reversed* on appeal by the D.C. Circuit, which found that there was "no evidence—let alone substantial evidence—from which it can be inferred that verification will promote public safety." *Heller IV*, 801 F.3d at 277. Remarkably, Hawaii never acknowledges this reversal on appeal. In sum, Hawaii's contention that its laws are "longstanding" is utterly without support.

## II.  NEITHER LAW QUALIFIES AS A PRESUMPTIVELY LAWFUL "CONDITIONS AND QUALIFICATIONS" ON THE COMMERCIAL SALE OF ARMS

### A.  Limitations On Acquisition Fall Within The Second Amendment

*Heller* stated that "nothing in our opinion should be taken to cast doubt on * * * laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. No court has read that statement to mean that commercial limitations are outside the Second Amendment. As this Court recognized in *Teixeira* "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense." *Teixeira*, 873 F.3d at 682. *See also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) ("If there were somehow a categorical exception for [commercial] restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*."). Rather, the Court's dicta

15

concerning commercial sale of firearms must be read in conjunction with *Heller*'s holding that "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634. Therefore, *Heller*'s reference to "conditions and qualifications" concerning commercial sales should be read to refer to such matters as laws restricting sales to minors, or laws, such as 18 U.S.C. § 922(a)(1), that require persons in the business of selling, manufacturing or importing firearms to obtain a license to do so.

No such considerations are posed by the Hawaii laws challenged here. *See Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928, 946-47 (N.D. Ill. 2014) (striking down a City ordinance that banned "virtually all sales and transfers of firearms inside the City's limits"); *Heller IV*, 801 F.3d. at 300-303 (invalidating D.C. laws that required an applicant to bring the purchased handgun, that required re-registration every three years, that required that a purchaser receive legal instruction in D.C. laws, that limited registration to one pistol a month). This Court's cases are in accord. For example, in *Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), the Court assumed without deciding that intermediate scrutiny applied in evaluating a challenge to a ban on the sale, but not ownership of, certain types of handguns.

Similarly, in *Silvester*, this Court "assume[d], without deciding, that the regulation is within the scope of the Amendment and is not the type of regulation that must be considered presumptively valid" in evaluating a challenge to

California's ten-day waiting period. 843 F.3d at 826-827. And in *Jackson*, this Court held that a prohibition on the sale of certain types of ammunition burdened the core Second Amendment right and so was subject to heightened scrutiny." 746 F.3d at 968. If a law regulating the commercial sale of ammunition is not presumptively lawful, then the regulations at issue in Plaintiffs' challenge are not either.

## B.     If There is a Presumption, Plaintiffs Have Rebutted It

 "Unless flagged as irrebuttable, presumptions are rebuttable." *Binderup v. AG of United States*, 836 F.3d 336, 350 (3d Cir. 2016) (citations omitted) (citing *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011) (subsequent history omitted). *See also Marzzarella¸* 614 F.3d at 92 n.8 (reasoning that treating *Heller*'s presumptions as irrebuttable would allow complete bans on those listed longstanding regulatory measures—which is "untenable under *Heller*").

This is in accord with the Sixth Circuit's reasoning in *Tyler v. Hillsdale Cnty. Sheriff's Dep't,* 837 F.3d 678, 690 (6th Cir. 2016), which found some people who have been involuntarily committed may have Second Amendment rights. "As the Seventh Circuit has recognized, the *Heller* Court's observation regarding the presumptive lawfulness of longstanding bans is precautionary, not conclusive…[*United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010)] (emphasis added)." *Tyler*, 837 F.3d at 687. *See also United States v. Williams*, 616 F.3d 685,

692 (7th Cir. 2010)) ("*Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge.").

"*Heller* tells us 'longstanding' regulations are 'presumptively lawful,' [] that is, they are presumed not to burden conduct within the scope of the Second Amendment…A plaintiff may rebut this presumption by showing the regulation does have more than a de minimis effect upon his right." *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). Judge Bybee adopted this analysis in his partial concurrence and dissent in *Pena.* "We should apply the presumption of lawfulness to a longstanding regulation of commercial sales of arms. The plaintiff would be able to 'rebut this presumption by showing the regulation does have more than a de minimis effect upon his [Second Amendment] right.' *Heller II*, 670 F.3d at 1253." *Pena v. Lindley*, 898 F.3d 969, 1010 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part). *See also Renna v. Becerra*, 535 F.Supp. 3d 931, 940 (S.D. Cal. 2021) (following Judge Bybee's approach).  If this Court finds Hawaii laws presumptively lawful, it should also find this presumption has been rebutted because Plaintiffs have shown the restrictions are a considerable burden on their Second Amendment rights.

**III. The State is Required to Produce Substantial Evidence to Survive Heightened Scrutiny**

    **A. The Appropriate Standard Of Review Is Text, History And Tradition, Not Tiers Of Scrutiny**

We acknowledge, of course, that this Court has traditionally employed a "tiers of scrutiny" approach to Second Amendment issues. However, we wish to preserve the point that "tiers of scrutiny" is the wrong approach to the Second Amendment. The appropriate standard of review is an issue presented for review in *NYSRPA v. Bruen*, No. 20-843, *cert. granted*, 141 S. Ct. 2566 (2021), a case involving a challenge to New York's "good cause" requirement for carry permits. That case was orally argued before the Court on November 3, 2021 and awaits a decision by the Court. We believe that it is highly likely that the Supreme Court will, in *Bruen*, strike down the New York statute there at issue.

In so holding, the *Bruen* Court also may well make clear that the "text, history and tradition" test is controlling in determining the constitutionality of gun control legislation – not tiers of scrutiny. That issue was briefed by the parties and came up several times during oral argument. Four members of the Supreme Court recently relied on this text, history and tradition approach in *NY State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525 (2020). *See id.* at 1526 (Kavanaugh, J.) (concurring in judgment of mootness, but agreeing with Justice Alito's discussion of the merits); *Id.* at 1540-41 (Alito, J., dissenting). Justice Thomas made the same point very recently in *Rogers v. Grewal*, 140 S. Ct. 1865, 1868 (2020) (Thomas, J.,

19

dissenting from denial of certiorari). *See also Heller II,* 670 F.3d at 1269 (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny."). With Justice Barrett now joining the Court, we believe that a solid majority of the Court will adhere to these principles. *See Kanter v. Barr*, 919 F.3d 437, 452-53 (7th Cir. 2019) (Barrett, J., dissenting). If the Court were to so rule, affirmance is required in this case, as Hawaii has made no serious attempt to justify its laws by reference to the "text, history and tradition" of the Second Amendment.

### B. Tiers of Scrutiny Require That The State Produce Evidence

This Court "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected[.]'" *See Jackson,* 746 F.3d at

20

960. If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny. "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self-defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 961. That is what was involved in *District of Columbia v. Heller*, 554 U.S. 570, 628-629 (2008). A law that implicates the core of the Second Amendment right, and severely burdens that right, warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. *Silvester*, 843 F.3d at 821.

Under the tiers of scrutiny approach, the burden is on the State to justify its gun laws and regulations with actual evidence, a requirement applied by the district court here in holding that Hawaii failed in that task.[6] Evidence is mandatory. *Ezell*

---

[6] The Court gave the Defendant multiple opportunities to say it could produce evidence and the Defendant simply had nothing to provide. "THE COURT: I mean the problem I'm having, Mr. Moser, you know, you didn't present anything from the chief of police, for instance, just even a declaration saying here's the problem. Right? You're just asking us, me, to draw sort of a common sense conclusion *without actual evidence*. MR. MOSER: Yes, Your Honor, that's correct." 1-ER-102. (emphasis added). *See also* 1-ER-107 where Defendant states "[w]hat we have is what we've given to the Court," admitting that it simply has no evidence.

*v. City of Chi.*, 651 F.3d 684, 709 (7th Cir. 2011) ("the City produced no empirical evidence whatsoever and rested its entire defense of the range ban on speculation"); *See also O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475, at *28-29 (D.R.I. Mar. 15, 2022) ("Although defendants suggest that the ability to disguise stun guns as other household items poses a challenge for state regulation or particular danger to children, the record is devoid of evidence demonstrating the real-world existence of this problem.")

Instead, Hawaii essentially wishes this Court to adopt a rule of law that allows a government to defend its laws by making conclusory statements and then asserting "common sense" supports its conclusions. This is contrary to what is required under *Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994), and the laws previously upheld by this Court. *See, e.g., Jackson*, 746 F.3d at 965 (discussing evidence related to the particular dangers associated with gun ownership in support of the city's gun regulation). Even under the lowest possible scrutiny available, intermediate scrutiny, "[t]o meet its burden, the Government must 'present some meaningful evidence, not mere assertions, to justify its predictive judgments.' *Heller II*, 670 F.3d at 1259 (striking down a gun registration law where the government failed "to present any data or other evidence to substantiate its claim that these requirements can reasonably be expected to promote . . . the important governmental interests it has invoked"). 1-ER-069. This is in line with every case cited by Hawaii.

Hawaii relies on *Burson v. Freeman*, 504 U.S. 191 (1992), to support its invocation of "common sense." But in *Burson* the Court did not rely on common sense alone. In upholding a restricted zone around polling places, the Court emphasized the "ample evidence that political candidates have used campaign workers to commit voter intimidation or electoral fraud." *Burson*, 504 U.S. at 207. The other cases Hawaii relies on are of the same vein. *United States v. Carter*, 669 F.3d 411, 413 (4th Cir. 2012), vacated a lower court decision in case challenging federal law that criminalized "possessing a firearm while being an unlawful user of marijuana, in violation of 18 U.S.C. § 922(g)(3)." The Court found intermediate scrutiny applied and stated, "we nonetheless find that the government failed to make the record to substantiate the fit between its objective and the means of serving that objective". *Id.* "Without pointing to any study, empirical data, or legislative findings, it merely argued to the district court that the fit was a matter of common sense." *Id.* at 419. Common sense alone is insufficient for government conduct to survive intermediate scrutiny.[7] *See also NYSRPA, Inc., v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015), *cert. denied, sub. nom. Shew v. Malloy,* 579 U.S. 917 (2016) (striking down

---

[7] In a subsequent appeal, the Fourth Circuit upheld the Defendant's conviction but only after the government produced evidence that there was a reasonable fit. *United States v. Carter* (*Carter II*), 750 F.3d 462, 470 (4th Cir. 2014) ("**[E]mpirical evidence** and common sense support the government's contention that drug use, including marijuana use, frequently coincides with violence.") (emphasis added). Thus, *Carter II* teaches that common sense *alone* isn't enough, and instead must be supported by actual evidence.

New York's requirement that only seven rounds may be loaded in a 10-round magazine, noting "we cannot conclude that New York has presented sufficient evidence that a seven-round load limit would best protect public safety").

Next, Hawaii relies on *Fla. Bar v. Went for It*, 515 U.S. 618, 620 (1995), which dealt with whether "[r]ules of the Florida Bar [which] prohibit personal injury lawyers from sending targeted direct-mail solicitations to victims and their relatives for 30 days following an accident or disaster" were constitutional. "The Florida Bar submitted a 106-page summary of its 2-year study of lawyer advertising and solicitation to the District Court." *Went for It*, 515 U.S. at 626. The only time the Court employs common sense is when there was no basis to dispute it. *Id.* at 634. ("Finding no basis to question the commonsense conclusion that the many alternative channels for communicating necessary information about attorneys are sufficient, we see no defect in Florida's regulation."). The legal rule to be derived from *Went for It* is that common sense is only sufficient if there is no basis to dispute it <u>and</u> it is supported by evidence.

*Kansas v. Glover*, 140 S. Ct. 1183, 1186 (2020) is similarly inapposite. *Kansas* deals with what constitutes reasonable suspicion sufficient to initiate a traffic stop under the Fourth Amendment. What is permissible under the Fourth Amendment's reasonable suspicion standard has nothing with satisfying heightened scrutiny requirements. Even then the Supreme Court emphasized that "a mere

24

'hunch' does not create reasonable suspicion." *Id.* at 1187. And what Hawaii dresses up as common sense doesn't even qualify as a hunch. They are instead just post-hoc rationalizations for unconstitutional laws.

In *Silvester*, this Court upheld California's ten-day waiting period to purchase a firearm because California provided "studies showing that a cooling-off period may prevent or reduce impulsive acts of gun violence or self-harm." *Silvester v. Harris*, 843 F.3d 816, 828 (9th Cir. 2016). These studies provided the evidence necessary to uphold the law. In *Duncan v. Bonta*, the Court found California's magazine ban was supported by ***both data*** and common sense." *Duncan,* 19 F.4th at 1111 (emphasis added). Precedent requires evidence to uphold laws under heightened scrutiny. "Here, the Government has provided no evidence whatsoever in support of its position." 1-ER-067 to 1-ER-068.

Even if this Court were to allow Hawaii to rely on common sense alone, Hawaii's arguments do not qualify. They are bald assertions, transparently created *post-hoc*. The kind of reflexive deference to legislative judgments Hawaii asks for is not in line with any form of scrutiny. It barely even entails balancing, which is exactly what *Heller* rejected precisely because it would make it too easy for courts to balance away rights the framers enshrined in our founding document. Moreover, wholly missing from that approach is the hallmark of any heightened scrutiny worthy of the name: meaningful analysis of whether a law is "narrowly tailored to serve a

significant governmental interest." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017).

### C.    Tiers of Scrutiny Requires Consideration of Less Restrictive Alternatives

To survive any heightened scrutiny, the government must provide evidence that it considered less restrictive alternatives. Even "when applying intermediate scrutiny, courts must consider 'less-burdensome alternatives,' *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13, 113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993); and evaluate 'exemptions and inconsistencies' that undercut the reasonableness of the purported fit." *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999). While *City of Cincinnati,* and *Greater New Orleans Broadcasting Association, Inc*. address First Amendment challenges, First Amendment principles inform the application of intermediate scrutiny in the context of the Second Amendment. *See Mai v. United States,* 974 F.3d 1082, 1103 (9th Cir. 2020) (VanDyke, J., dissenting from the denial of rehearing en banc) (describing the history of the Ninth Circuit's Second Amendment intermediate scrutiny test). Moreover, other circuits have considered less burdensome alternatives as relevant to a proper analysis of restraints imposed on Second Amendment rights. *See, e.g., Heller II*, 801 F.3d at 277-78; *Ezell v. City of Chicago*, 651 F.3d 684, 709 (7th Cir. 2011).

Here, Hawaii failed to produce evidence that it considered less restrictive alternatives despite alternatives being available. As shown below, the in-person registration requirement has been replaced with an online system and Hawaii already has a one year expiration of permits in place for long arms. To survive any applicable scrutiny, Hawaii needed to produce evidence that it considered less restrictive alternatives and it failed to do so. Therefore, under any level of heightened scrutiny, both laws are unconstitutional because they are not a reasonable fit to the stated government interest.

### D.   Prophylaxis-Upon-Prophylaxis Restrictions Are Impermissible

Both challenged laws "amounts to the sort of 'prophylaxis-upon-prophylaxis' that requires a court to be 'particularly diligent in scrutinizing the law's fit.'" *Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759, 765 (8th Cir. 2018) (striking down State-imposed limits on campaign contributions). As to H.R.S. § 134-3 in person registration requirement, Hawaii law already has prophylactic measures to register handguns. Both the seller and the buyer are required to send the firearms information to the police department. These laws are analogous to the base campaign contribution limits discussed in *McCutcheon.* "It is worth keeping in mind that the *base limits* themselves are a prophylactic measure." *McCutcheon v. FEC*, 572 U.S. 185, 221 (2014). H.R.S. § 134-3's bring–your-gun-to-the station requirement is similar to the aggregate limits in *McCutcheon* because of the aforementioned

safeguards. "The aggregate limits are then layered on top, ostensibly to prevent circumvention of the base limits. This 'prophylaxis-upon-prophylaxis approach' requires that we be particularly diligent in scrutinizing the law's fit." Therefore, under any level of scrutiny, this Court should be extra diligent in scrutinizing H.R.S. § 134-3's fit.

Similarly, State law requires purchasers of firearms to be entered into an FBI database for "*constant criminal record monitoring*." H.R.S. § 846-2.7(b)(43) provides authority for "[t]he county police departments on applicants for permits to acquire firearms pursuant to section 134-2 and on individuals registering their firearms pursuant to section 134-3…" to enter firearm purchasers in the FBI "Rap Back" program.[8] Rap back is a "service of the [FBI] that provides continuous criminal record monitoring … and notifies [law enforcement] when an individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country. This notification will allow county police departments in Hawaii to evaluate if the owner of a firearm may continue to legally possess and own firearms." 2-ER-376.[9]

---

[8] H.R.S. § 846-2.7(a) explicitly mandates that these individuals participate in the "rap back program".

[9] https://bit.ly/3xTXcfg (last accessed 4/1/2022).

In other words, H.R.S. § 134-2's ten-day expiration date for handgun permits is a "prophylaxis-upon-prophylaxis." "Rap back" constantly monitors the criminal records of the gun owner and notifies the proper authorities if the owner became prohibited. Therefore H.R.S. § 134-3 "amounts to the sort of 'prophylaxis-upon-prophylaxis' that requires a court to be 'particularly diligent in scrutinizing the law's fit'" because Hawaii gun owners are already in a national database and have "constant criminal record monitoring." *Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759, 765 (8th Cir. 2018). As such, the challenged laws should be subject to the highest scrutiny.

## E.    Strict Scrutiny Should Apply

Here, strict scrutiny should apply to both laws because they both implicate a core Second Amendment right and impose a substantial burden on Plaintiffs' Second Amendment rights. In analyzing the first prong of the second step, the extent to which the law burdens the core of the Second Amendment right, we rely on *Heller*'s holding that the Second Amendment has "the core lawful purpose of self-defense," *Jackson,* 746 F.3d at 961. Here, both laws implicate the core right because Plaintiffs cannot own a firearm even within their homes for any purpose including self-defense unless they comply with both of the challenged laws.

Both laws also place a substantial burden on that core right. What in-person registration also does, as alleged in the Verified Amended Complaint, is cause a

29

hardship on plaintiffs by mandating that he takes off work on an additional day to get the firearm registered, and if he misses that day, or if it were to fall on a day the police department is closed for registration, then he could be in violation of the law by not registering the firearm in person. 3-ER-456 to 3-ER-459. The ten-day expiration period effectively means that Plaintiffs must take the time to purchase (and register) a handgun shortly after spending the time to apply for it. As to the registration law, they also face the threat of their firearms being stolen and hostile police interactions while transporting their firearms. These are substantial burdens on Plaintiffs' ability to own a firearm. Therefore, strict scrutiny should apply.

### F.      Hawaii's Laws Are Not Narrowly Tailored

Regardless of what level of heightened scrutiny is employed, these laws are unconstitutional. As the Supreme Court has stated, heightened scrutiny requires narrow tailoring even when strict scrutiny does not apply. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021); *see also, e.g.*, *McCullen v. Coakley*, 573 U.S. 464, 486 (2014); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 218 (2014) (plurality op.). As the Supreme Court has made abundantly clear, the real question is not simply whether it was "reasonable" for the legislature to think that its chosen means might advance its interests. It is whether the government can carry its burden of demonstrating that its chosen means are narrowly tailored to avoid "burden[ing] substantially more [protected conduct] than is necessary to further [its]

legitimate interests." *McCullen*, 573 U.S. at 486. Hawaii doesn't even come close to trying.

And afterwards, even under intermediate scrutiny the government "must affirmatively establish the reasonable fit we require." *See Board of Trustees v. Fox*, 492 U.S. 469, 480 (1989). "This burden is not satisfied by mere speculation or conjecture," *Edenfield v. Fane*, 507 U.S. 761, 770 (1993), but by "substantial evidence" that the challenged restrictions will alleviate the harm. *Turner*, 512 U.S. at 666. Hawaii has wholly failed to produce any evidence, instead relying on "common sense", or in other words "mere speculation and conjecture."

## IV.   HAWAII'S IN-PERSON INSPECTION OF FIREARMS REQUIREMENT IS UNCONSTITUTIONAL

Hawaii's in person inspection of firearms requirement cannot be viewed in a vacuum. H.R.S. § 134-2(f) requires for all handgun transfers that **both** the seller/transferor and the buyer/transferee submit a firearm's manufacturer name and importer; model; type of action; caliber or gauge; and serial number, as applicable. *See* H.R.S. § 134-2(f).[10] Therefore, Hawaii would have us believe that there is a

---

[10] There is a similar requirement for long arms. "In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

realistic possibility that a seller, which is a typically a federally licensed firearms dealer, **and** the new owners will mis-transcribe a handgun's information. And the police are supposedly required to inspect firearms because of this hypothetical possibility. This, despite Hawaii being unable to produce any evidence that this is an actual issue. Certainly, the State points to no evidence that the District of Columbia experienced any difficulties after the D.C. Circuit invalided this same requirement. *See Heller IV*, 801 F.3d at 300-01. No other State imposes such a scheme. This alone would be enough to demonstrate that Hawaii law fails any applicable level of heightened scrutiny. However, the most glaring evidence that H.R.S. § 134-3 is unconstitutional is that Honolulu has already removed this in person firearm inspection without incident.

---

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority that issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. *See* H.R.S. § 134-2(f).

### A. Honolulu County Has Already Replaced In Person Firearm Registration

Perhaps most striking about Hawaii's brief is that it does not mention Honolulu County (which accounts for roughly 69% of Hawaii's population)[11],[12] where Plaintiffs live, has already transitioned to an online system where firearms owners transmit their firearm's information over the Internet. After the bring-your-gun-to-the station requirement was struck by the trial court and the motion to stay denied, Honolulu transitioned to an online system to register firearms. "Now it takes one trip to the police station to apply for a permit. After purchasing a firearm, the gun can be registered on HPD's new online website." [13] Applicants visit HPD's website for instructions[14] and are directed to an online portal to submit their firearm information to complete registration. That information is cross-referenced with the firearm information provided when an applicant applies for a firearm permit[15] and

---

[11] https://bit.ly/3EDOROk  (last accessed 2/23/2022) (Honolulu's population).

[12] https://bit.ly/3s7pIqr (last accessed 2/23/2022) (Hawaii's population).

[13] https://bit.ly/3Mqhh0Q (last accessed 4/22/2022).

[14] https://bit.ly/3EL8cgz (last accessed 4/22/2022).

[15] *Id*. ("Permit to acquire application. You will need the Make, Model, Caliber, Type/Revolver/Semiautomatic etc, and Serial Number. (Handguns only)").

the information sent to the police by the seller to ensure accuracy.[16] Since the implementation of this less onerous system, there is no evidence Honolulu has had any issues. There can be no government interest in maintaining burdensome in-person registration of **firearms** when it has been abolished with no issues.[17] This fact supports Plaintiffs' position that a less onerous registration such as the one currently in place can achieve the same objective. H.R.S. § 134-3 is unconstitutional under any applicable level of scrutiny.

### B.    *Heller IV* Is Directly On Point

Hawaii creatively suggests that H.R.S. § 134-3's bring-your-gun-to-the-station requirement, as drafted in 2020, was to target "ghost guns." As a preliminary matter, this argument should be deemed waived. At no point did the State present evidence that the in-person registration requirement was created due to "ghost guns." Failure to raise this argument in the trial court waives it on appeal. *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990); *United States v. Elias*, 921 F.2d 870,

---

[16] H.R.S. § 134-d(f).

[17] Maui County has also removed in person registration. https://bit.ly/3k5rh3I (last accessed 4/8/2022). ("If you choose to register your firearm(s) without in-person inspection, please be aware that the 5-day deadline for firearm registration remains the same. To expedite the process and assure that all information required by statute is included, please use the following fillable In-State Firearm Information Sheet when submitting firearm registration information to the Maui Police Department.") *See also* https://bit.ly/3kld1UF. (Maui's in-state registration form).

874 (9th Cir. 1990); *In re Professional Investment Properties of America*, 955 F.2d 623, 625 (9th Cir.), *cert. denied*, 506 U.S. 1015 (1992).

Even if this Court considers that argument, it should reject it. Hawaii has pointed to absolutely nothing in the legislative history to indicate that this is the reason in person inspection of firearms was introduced. And the trial court could not "locate any additional legislative history—whether from 2020 or previous sessions—addressing the purpose of this requirement." 1-ER-068.

Hawaii's only argument is that the issue was "physically located adjacent to" other legislation dealing with "ghost guns". Opening Brief at 47. This is not a serious argument. By that logic, an agriculture bill is related to a defense bill if it is physically located adjacent to the defense bill. And the State can use the justification for the defense bill to justify agricultural issues. This is balderdash and Hawaii has cited to no authority suggesting otherwise.

Even if the legislative history supported Hawaii's position, this Court should be guided by *Heller IV*. Hawaii makes the remarkable claim that "the present case is distinguishable from *Heller IV*" because "*Heller IV* was decided several years ago (2015) and did not consider the more recent problem of ghost guns." Opening Brief at 53. Hawaii also suggests Hawaii residents do not face the same fears as D.C. residents and insinuates that firearms were illegal to bring to police stations for

registration in D.C. despite the law struck down in *Heller IV* requiring it. *Id.* at 53. ("In addition, fear of the police shooting a gun owner who brings a gun to the police station, which was relied upon in *Heller IV*, 801 F.3d at 277, does not apply to Hawaii's circumstances. Hawaii's place to keep laws specifically authorize people to bring guns to police stations.").

As a preliminary matter, the D.C. law invalidated in *Heller IV* also allowed residents to bring guns to the station for registration. D.C. Code § 22-4504.02. Hawaii is being disingenuous to insinuate otherwise. Opening Brief at 53. Hawaii residents suffer from the same risks as those in the District of Columbia. This concern was echoed by the trial court which is intimately familiar with Hawaii and its laws. As the district court stated, "[s]econd, as the D.C. Circuit pointed out in *[Heller IV]*, requiring individuals to bring firearms into the police station for in-person inspection and registration may 'more likely be a threat to public safety [because] there is a risk that the gun may be stolen en route or that the would-be registrant may be arrested or even shot by a police officer seeing a 'man with a gun.'" 1-ER-070.

Hawaii residents' risk of being shot by police or others who mistake their firearm carry for something other than lawfully required behavior is just as high as faced by D.C. residents prior to *Heller IV*. An even larger concern is the risk that firearms may be stolen while "would-be registrants" are waiting to register their

firearms. Below is a photo of the registration line at the Honolulu Police Department prior to in-person registration being held unconstitutional. Hawaii residents are required to wait in line outside of the police station with unloaded firearms. A criminal knows these firearms are unloaded and the registrants are otherwise unarmed since they are about to enter a police station. A criminal could easily track and rob such individuals after leaving the station.[18]


[19]

---

[18] And yes, crime happens outside police stations, see https://bit.ly/3rJb5sQ: "Woman, 48, dies after attack outside Kapolei police station" (last accessed 4/8/2022).

[19] *See* Declaration of Jon Abbott, attached to Plaintiffs' Opposition to Stay, 1:19-cv-00578-JMS-RT, Docket 114-3, PageID#1090.

As shown above, due to the long wait times, registrants are unable to comfortably carry their firearms for the entire wait time. Hawaii claims that *Heller IV* is distinguishable because the government was not aware of ghost guns at the time it was decided. Of course, Hawaii offers no proof of its assertion. But Hawaii was specifically asked about the change to in-person registration in 2020 during oral argument and couldn't even provide evidence it now claims is a distinguishing factor:

> THE COURT: Mr. Moser, are you aware of any legislative history as to this 2020 change, have you looked?
>
> MR. MOSER: I have looked and I'm not aware of the history, any legislative history on that. It seems, but I don't want to speculate, that this issue came up in connection with ghost guns, as they're called. And that the legislature seemed to feel that it was necessary to, since the invention, if you will, of ghost guns that those need to be inspected. So the language did change. It was amended in 2020.
>
> THE COURT: Okay. All right. But you don't think there's legislative history that says, you know, we have a problem with ghost guns?
>
> MR. MOSER: Not that we found, no, Your Honor.

1-ER-098. This is *obviously* blatant speculation on behalf of Hawaii because Hawaii couldn't provide any evidence that "ghost guns" were an issue relevant to the change in the law. Hawaii's invocation of "ghost guns" in this Court should thus be seen for what it is; a desperate post-hoc rationalization in a vain attempt to save this requirement.

38

### C. In-Person Registration Fails Heightened Scrutiny

The in-person registration requirement is found in H.R.S. § 134-3(c), effective September 15, 2020, as amended by HB 2744 H.D. 1, S.D. 2, and requires that "All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration." The in-person registration requirement is not sufficiently tailored to survive either strict or intermediate scrutiny, much less any text, history and tradition test that the Supreme Court may adopt in *Bruen*. The permit to acquire requires the make, model, serial number, and other identifying marks on the firearm. *See* H.R.S. § 134-2(f). A registrant would provide that information correctly to ensure the accuracy of the registration certificate, which protects the person from arrest for an unregistered firearm. Hawaii is an outlier state as it is the only state left with this ***requirement*** as Michigan repealed a similar requirement for handguns, and that law aimed only to allow for "safety inspections" rather than crime control. 2008 Mich. Pub. Acts No. 195 (2008) (repealing Mich. Comp. Laws § 28.429).[20]

The Defendant has not provided any evidence that in-person registration is required to promote any real government interest. As the trial court held,

> the Government has provided no evidence whatsoever in support of its
> position. The Government has provided no legislative history speaking

---

[20] As explained above, Massachusetts has a permit to acquire but it is not required to purchase a firearm if the person has a license which is valid for up to 6 years.

to the legislature's reasons for amending the statute. It has not shown that inaccurate registration was a problem affecting public safety (or even a problem at all) prior to enactment of the 2020 in-person inspection and registration requirement, nor has it provided any studies, examples from other jurisdictions, or any other type of evidence suggesting that an in-person inspection and registration requirement would ameliorate such a problem.

1-ER-067, 1-ER-068.

The Defendant's only justification is that "[i]n-person handgun registrations can prevent fraud and reduce or eliminate discrepancies."[21] 2-ER-325. The Defendant was specifically asked in Plaintiffs' Request for Production of Documents to "Produce all documents that support Hawaii's interest in maintaining an in-person registration of handguns." The State responded as follows: "Discovery is ongoing. Defendant will supplement her responses as appropriate in accordance with applicable court rules." 2-ER-378. What in-person registration does, as alleged in the Verified Amended Complaint, is cause a hardship by mandating that registrants take off work on an additional day to get the firearm registered, and if he misses that day, or if it were to fall on a day the police department is closed for registration, then he could be in violation of the law by not registering the firearm in person.

The District of Columbia also offered no real justification for the in-person requirement, which created the "risk that the gun may be stolen en route or that the

---

[21] The response does not say that it "does" prevent fraud and reduce discrepancies, only that it "can."

person may be arrested or even shot by a police officer seeing a man with a gun (or a gun case)." *Heller IV,* 801 F.3d at 277. In the District of Columbia's former code, it stated that "[t]he Metropolitan Police Department (MPD) can require a potential registrant to present his firearm for inspection. D.C. Code § 7-2502.04(c)." *Heller IV*, at 285. The MPD wanted to conduct a physical inspection to "verify that the application information is correct and that the firearm has not been altered." *Id.* The D.C. Circuit struck this requirement as violative of the Second Amendment.

The State frames its argument as a public service to the gun-owning public, by claiming that it is some people might innocently make mistakes in transcribing serial numbers or other identifying information. Opening Brief at 52-53. However, the State does not present any evidence whatsoever that this is an actual problem. It is not common sense that multiple people would make such an error. Especially when one of the parties is typically a federally licensed firearms dealer that would suffer major penalties for making such errors. *See* 27 CFR § 478.124 (recordkeeping); 27 CFR § 478.73 (license revocation/fines); 27 CFR § 478.128 (false statements).

There also can be no argument that in-person registration is needed to verify "identifying marks on a weapon, like the serial number…" for tracing purposes. In order to apply for a handgun permit to acquire, one needs the "Make, Model, Caliber,

Type/Revolver/Semiautomatic etc, Barrel Length, and Serial Number."[22] If a Federal Firearms Licensee (FFL) is selling the firearm to a prospective purchaser, the FFL is required by federal law to complete a Firearms Transaction Record (ATF Form 4473)[23] which includes the make, model, serial number and caliber or gauge of the firearm being sold. It also requires the duplicative information required by Hawaii state law.[24] One may ask, what if someone purchases a handgun from a non-FFL? H.R.S. § 134-2(f) contains the requirements for that scenario.[25]

Common sense dictates that the person selling the firearm will want to verify that all the permit information is 100% correct so that IF the firearm is used in a crime, the person selling can prove the sale. And, the "registering authority", which would already be in possession of the initial registration document, could simply cross-reference the initial registration against the mailed-in permit. In-person registration is unnecessary because it is duplicative of what is already required. Even

---

[22] https://bit.ly/3K5dowH. *See also* VAC, ¶ 16 (3-ER-421).

[23] https://bit.ly/3OuL0Yi.

[24] *See* H.R.S. § 134-7 for list of disqualifications for firearm applicants, much of which mirrors the federal disqualifiers. *See generally* 18 U.S.C. § 922(g). Also, during discovery, the City provided its forms and applications for the permit to acquire firearms. *See* 2-ER-366 to 2-ER-375.

[25] Requirements for transferring a firearm include (among other requirements), verifying the person buying is the person named on the permit, make, model and serial number of the firearm, and to send "by registered mail to the issuing authority within forty-eight hours after transferring the firearm."

under intermediate scrutiny "a law must be 'narrowly tailored to serve a significant governmental interest." *Packingham*, 137 S. Ct. at 1736. "The justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations . . . ." *State v. Deciccio*, 315 Conn. 79, 144-45, 105 A.3d 165, 206-07 (2014). The in-person registration requirement is not a reasonable fit to any government interest and is thus unconstitutional.

This Court should also rule in favor of Plaintiffs because to do otherwise would mean a lack of uniformity in the case law of the nation. In the past, the Ninth Circuit has warned against creating circuit splits and is "hesitant to create such a split, and we do so only after the most painstaking inquiry…" *Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169, 1184 (9th Cir. 1999). If this Court overturns the trial court, it would be creating an express circuit split with the D.C. Circuit's holding in *Heller IV*.

## V. THE TEN-DAY EXPIRATION OF THE PERMIT TO ACQUIRE HANDGUNS IS UNCONSTITUTIONAL

Hawaii's ten-day expiration date for its handgun permit to acquire fails any heightened scrutiny. It is important to note that the issue here is the Permit to Acquire a handgun. As the Supreme Court stated, "… the American people have considered the handgun to be the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

While not a ban on the possession inside the home as in *Heller*, Hawaii's law imposes substantial burdens on the core right secured by the Second Amendment.

This Court has already held that law-abiding, responsible citizens have a Second Amendment right to purchase firearms. *Teixeira,* 873 F.3d at 677 ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms"). Law-abiding responsible citizens likewise have a Second Amendment right to purchase ammunition. *Jackson*, 746 F.3d at 967 ("without bullets, the right to bear arms would be meaningless"). Restraints on the acquisition of a firearms must thus pass scrutiny under the Second Amendment.

### A.    The 10-Day Requirement Cannot Promote Public Safety

In *Silvester v. Harris,* the Court reviewed and ultimately upheld, California's ten-day waiting period to purchase a firearm and assumed intermediate scrutiny applied. The Court found that the waiting period provided a "cooling-off period to deter violence resulting from impulsive purchases of firearms" and was sufficiently tailored to the government's interest of public safety. *Silvester*, 843 F.3d at 829. The instant case is distinguishable. Plaintiffs *already* must undergo a 14-day waiting period pursuant to Hawaii law. *See* H.R.S. § 134-2. Unlike the waiting period in *Silvester*, the ten-day requirement to use a permit to acquire does not further any public safety interest because the applicants have already been vetted and have had an opportunity to "cool off" during the 14-day waiting period/background check.

The State believes the requirements are needed to find out whether applicants have become addicted to drugs, diagnosed with mental disorders, and/or had a

44

restraining order issued against them. However, H.R.S. § 134-7(g) already requires "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3." And for protective orders, H.R.S. § 134-7(3)(f) requires that the police seize firearms owned by anyone that has had a protective order issued against them.

Strict scrutiny applies when a law causes a "substantial burden" on a litigant's Second Amendment rights. *See Silvester,* 843 F.3d at 827. Here, the law is a substantial burden on Plaintiffs' Second Amendment rights as Plaintiffs are required to take time off work to make their firearms purchase in quick succession after they have already taken several other days off work to obtain the permit to acquire and after they have already waited 14 days for the waiting period/background check and then to return to the police department for an in-person registration of their newly purchased firearm. This Court should affirm the district court because Hawaii's challenged law do not survive strict scrutiny.

But even under intermediate scrutiny, the law is unconstitutional. The intermediate scrutiny test under the Second Amendment requires that "(1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22 (quoting *United States v. Chovan*, 735 F.3d

45

at 1139). "In order to survive intermediate scrutiny, a law must be narrowly tailored to serve a significant governmental interest." *Packingham*, 137 S. Ct. at 1736 (punctuation and citation omitted). Under this test, Hawaii cannot "carry its burden of demonstrating that its chosen means are narrowly tailored to avoid burden[ing] substantially more [protected conduct] than is necessary to further [its] legitimate interests." *McCullen*, 573 U.S. at 486 (punctuation omitted).

Here, the stated government interest is to "ensure[] that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale."[26] 2-ER-326. Yet, if this were the case, as described more fully below, then permits to acquire long guns would expire in 10 days as well. Even if the Court were to accept a generalized public safety interest, the law is not a reasonable fit to achieving that goal s shown below. The ten-day handgun permit to acquire substantially burdens Plaintiffs' Second Amendment rights and is not a reasonable fit to achieving any government interest. Therefore, it fails any heightened scrutiny.

---

[26] While Plaintiffs disagree this is a valid interest, "the assertion of a valid governmental interest cannot, in every context, be insulated from all constitutional protections." *Packingham*, 137 S. Ct. at 1736 (citation and punctuation omitted).

Hawaii's "Firearm Registrations in Hawaii, 2020"[27] ("2020 Report") further belies the Defendant's differing treatment of long guns and handguns. The 2020 Report states that there were "25,024 permits issued statewide in 2020 [for] a total of 53,481 firearms registered through the year…" *Id.* at p. 2. Further, "[l]ongarms accounted for 55.7% (29,799) of all firearms registered during 2020 …[and] [t]he remaining 44.3% (23,682) of firearms registered throughout 2020 were handguns." *Id.* Of these firearm permits issued for both long guns and handguns (the state does not appear to differentiate between the two), 357 applications were initially approved and then the permit was voided because the individual did not pick up the permit in time.[28] *Id.* at pp. 1-2. On its face, that number is significant, as it means that 357 persons were arguably stripped of their Second Amendment right to acquire a firearm by the mere passage of time.

Tellingly, the report says nothing about revocations of existing permits to acquire, either for handguns or long guns. One would think, if the stated interest that a person does not receive a permit to acquire and then commit a felony and just go

---

[27] 2-ER-329 to 2-ER-338.

[28] While the 2020 Report does not differentiate, there does not appear to be a requirement to physically pick up the long gun permit to acquire and use it within ten days because it lasts for one year and multiple purchases, as such, it can be assumed the voided permits are all handgun permits to acquire. *See* H.R.S. § 134-2(e).

back and purchase another handgun is a legitimate concern, then the State would have evidence to support this contention. Or because long gun permits to acquire last for a year, then some evidence would be shown that some long gun permits were revoked due to criminal offenses after the permits issued.[29] But the 2020 Report shows no revocation of permits to acquire, even for a long gun permit. This demonstrates proffered justification is illusionary.

Hawaii claims that the trial court "argues that having a short expiration date for the permit to acquire actually harms public safety because it increases the likelihood that a person will already have acquired his or her firearm when a disqualifying event occurs." Opening Brief at 37-38. That is not what the trial court held. The trial court found "in the absence of any *evidence* addressing the effect of the law on public safety, this is mere conjecture. Nevertheless, this conjecture demonstrates that it is not a simple matter of common sense that the 10-day permit use period promotes public safety." 1-ER-061. In short, the district court merely was highlighting that Hawaii's arguments were not supported by evidence. Furthermore, with "Rap Back" and Hawaii's other laws in place, its other concerns are not availing. Hawaii's police departments, which issue the permits, know immediately when a person becomes prohibited.

---

[29] Nothing is demonstrated for 2019 either: 2-ER-339 to 2-ER-347; in 2018: 2-ER-348 to 2-ER-356; or in 2017: 2-ER-357 to 2-ER-365.

Hawaii claims that "the District Court also discounts the risk of a permit with a long expiration date being used if lost or stolen. 1-ER-060 n.11." Opening Brief at 40 n.16. This is complete and utter conjecture. If this was an issue, there would be some evidence that long arm permits were being fraudulently used. Hawaii's own records indicate that this is not a problem. And why would it be? It is not reasonable to believe that criminals steal permits to acquire in order to make illegal firearm purchases from firearm sellers. Federally licensed dealers are required by federal law to verify the identity of purchasers "by examining a valid identification document" containing a photo and run a background check, 18 U.S.C. § 922(t)(1)(C), and federal law makes it a felony punishable with 10 years of imprisonment to knowingly provide false identification in this process. *See* 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(2). Misuse of a stolen permit to purchase a firearm is thus extremely unlikely to be successful and could easily land the thief in federal prison for 10 years. It is common sense that anyone willing to go to this much trouble would just buy a firearm on the black market or just steal one.

Finally, Hawaii claims it chose to have a short expiration date for handguns because they are more dangerous than long guns. Hawaii has made no attempt to prove this fact with "substantial evidence." *Turner,* 512 U.S. at 666. It also runs contrary to positions that Hawaii has taken in other litigation. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) (en banc), Hawaii argued as *amici* for prohibitions on

certain types of rifles due to "the significant public-safety concerns posed by possession of assault rifles*." See* Docket in *Kolbe v. Hogan,* No. 14-1945 Doc. No. [57] at 3. And it argued these rifles are more dangerous than handguns because they are more powerful. "[B]ullets that miss their intended target—particularly high-powered rounds fired by some assault weapons—may pass through windows or even walls, causing harm to the shooter's family or to bystanders." *Id.* at 23. And in *Teter v. Connors,* Hawaii argued that "handguns, which are the "quintessential self-defense weapon"" are entitled to greater Second Amendment protection than other arms." *Teter v. Connors,* 20-15948 Doc. No. 28 at 4. Here, Hawaii contradicts the position that it took previously and now argues stricter regulation on handguns is permissible because they are more dangerous than rifles.

Moreover, as Hawaii acknowledged in *Teter*, courts give special consideration to handguns. *Id.* at 26*. See United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 144 (3d Cir. 2016). Handguns are "not merely 'an entire class of 'arms'' but [are also] 'an entire class of arms **that is overwhelmingly chosen by American society for [self-defense]**.'" *Kolbe*, 849 F.3d at 138 (emphasis in original) (quoting *Heller*, 554 U.S. at 628. This Court should find that Hawaii's registration laws at issue are not a reasonable fit to any public safety interest and are thus, unconstitutional.

**B.      Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Also Underinclusive**

Underinclusivity is a doctrine that can be used to determine whether a law is properly tailored. In constitutional law, underinclusivity follows necessarily from the evaluation of a fit between means and ends. S*ee Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001). Under this standard, what matters is not whether a regulation is specifically overinclusive, but rather by how much it is either over- or underinclusive. *See, e.g., City of Cincinnati v. Discovery Network*, *Inc*., 507 U.S. 410, 428 (1993) (holding a city ordinance intended to advance safety and aesthetic interests unconstitutional because it unjustifiably affected only a small fraction of operating news racks, thus constituting an unreasonable fit between ends and means). In this Circuit, when applying intermediate scrutiny, if the exceptions to the law are "so pervasive or without basis as to make the fit unreasonable" it is unconstitutionally underinclusive. *Pena*, 898 F.3d at 981.

Here, the law is underinclusive because permits to acquire long guns (rifles and shotguns, *see* H.R.S. § 134-2(e)) are valid for one year but permits to acquire handguns are valid only for ten days. There is no legitimate reason or basis in making a long gun permit to acquire one year and a handgun permit to acquire for ten days. Whatever government interest there might be in one is the same as for the other. The State's response to an interrogatory demonstrates the ill-fit of this requirement. Plaintiffs asked the State to "explain in detail how mandating a permit to acquire a

51

handgun becomes void if 'not used within ten days after the date of issue' further[s] a governmental interest." The Defendant's response was that it "ensures that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale. An example is if someone gets a permit but does not use it, and a month later commits a felony and is charged. Without an expiration date, that person could let a registered firearm be seized and then use the permit to purchase another firearm." 2-ER-326.

But the Defendant completely ignores the differing treatment of long guns and handguns. Plaintiffs sought out this information in another interrogatory, asking the Defendant to "describe the difference in permits to acquire long guns and handguns" and to explain "why permits to acquire long guns are valid for one year and multiple long guns, but permits to acquire handguns are valid for ten days and one handgun." Defendant merely objected to the interrogatory and claimed that it would not "lead to the discovery of admissible evidence." 2-ER-327. In short, there is no real difference and they should not be treated differently. The ten-day expiration of handgun permits to acquire is an arbitrary number and unsupported by evidence. The person's "qualifications" is that he or she isn't a prohibited person and that he or she has completed (at any time prior to the issuance of the permit) various safety and educational programs on firearms. *See* H.R.S. § 134-2(g). Nowhere in this section does it state these qualifications expire.

As already stated, if Hawaii is worried about a permit being used to acquire a firearm after the person becomes prohibited, then the FBI's Rap Back program already covers that. And in any event, it completely ignores how long gun permits are treated as they are valid for one year and can be used multiple times to purchase multiple long guns. Further, H.R.S. § 134-2(e) mandates that "if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority." There is simply no fit here for the purported interest. Most telling is Hawaii's argument that "the shorter the expiration date, the better" unless it is impossible to complete a firearms purchase. Opening Brief at 37; *See also Id.* at 37 n.27. By Hawaii's reasoning, a one-day expiration date is entirely constitutional because people still could purchase a firearm despite there being no evidence is of benefit.

### C.    The Ten-Day Expiration Date is Not Supported By Substantial Evidence

Hawaii did not produce any evidence in the trial court to justify this law. It did not produce one expert or study to support its law. As the trial court found, "the Government does not show that the legislature considered *any* evidence—let alone substantial evidence—prior to enacting the law." 1-ER-058. "Upon independent

review, the court was unable to find any legislative history addressing the purpose behind this particular statutory provision." 1-ER-058.

On appeal, Hawaii repeats its generalized public safety interest: "[l]ike the rest of the bill, it had a public safety purpose in helping "law enforcing agencies" "control[] the sale, transfer and possession of firearms[.]" And it was intended to provide a "better means" of doing so by adding a short expiration date to permits to acquire, which previously did not have an expiration date." Opening Brief at 29. This is insufficient to demonstrate substantial evidence for this individual law for a wealth of reasons.

For arguments sake, let's accept Hawaii's position as true to show that it would create irrational outcomes. Hawaii argues that "[s]ince the general purpose of the entire bill was to help 'law enforcing agencies' in 'controlling the sale, transfer and possession of firearms[,]' that general purpose should also apply to the specific provisions within that bill." Opening Brief at 28. In 2014, the trial court reviewed Hawaii's ban on resident alien green card holders owning firearms. *Fotoudis v. City & Cty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014). Relying upon a universal consensus among the courts, the trial court found the ban violated the Second and Fourteenth Amendment. *Id.* at 1141-1144. If Hawaii's position was the law, then the trial court would have had to uphold this obviously unconstitutional law because the

54

overall statutory scheme has a "general purpose." Hawaii's approach would allow for irrational outcomes where discriminatory laws would have to be upheld.

It also contradicts the case law Hawaii relies upon. In *United States v. Otherson*, this Court reviewed a case dealing with two United States Border Patrol Agents sued for "by depriving aliens of federal rights, and of conspiring to effect such a deprivation in violation of 18 U.S.C. §§ 371 and 242." *United States v. Otherson*, 637 F.2d 1276, 1277 (9th Cir. 1980). The cited to section defines the term "'any inhabitant of any State, Territory, or District,' as used in 18 U.S.C. § 242.". *Otherson*, 637 F.2d at 1279. In *Otherson,* this Court came to the unsurprising conclusion that one should look to the surrounding language in a statute to help define a term that is vague. This is related to the doctrine of *in pari materia* and other aspects of statutory construction, but has nothing to do with constitutional law. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). Similarly, *Nev. ex rel. DOT v. United States*, 925 F. Supp. 691, 692 (D. Nev. 1996), has nothing to do with the matter before this Court, instead it dealt with "the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. 9607, to recover costs."

Hawaii cites to *Turner Broadcasting* and argues that it is entitled to deference to its "reasonable inferences" and "predictive judgement." However, Hawaii but fails to grapple with *Turner*'s requirement that these inferences and judgments must

55

be based on "substantial evidence." *Turner,* 512 U.S. at 666. And deference "should not be confused with blind allegiance." *O'Neil*, 2022 U.S. Dist. LEXIS 45475, at *27-28 (quoting *Turner*). Here, Hawaii has no evidence. It merely has conclusory statements, speculation, and conjecture which it packages up and presents to the court as "common sense." That is insufficient under *Turner* or any of the other precedents to which Hawaii cites.

Finally, Hawaii claims that this Court should rule in its favor because with "respect to grants of summary judgment, evidence and inferences must be construed in the light most favorable to the nonmoving party." Opening Brief at 30. That deals with contested facts in the record and that statement is not applicable here, and of course construing "no evidence" in "the light most favorable to" the State still means that the State has "no evidence." The challenged Hawaii laws cannot survive any type of heightened scrutiny where the government bears some burden.

## VI.   PLAINTIFFS HAVE PROPERLY BROUGHT A FACIAL CHALLENGE

Plaintiffs here have challenged these laws both facially and as-applied. First, the State makes too much out of this distinction between facial and as-applied claims. As the Supreme Court has explained, "[t]he distinction . . . goes to the breadth of the remedy employed by the Court, *not what must be pleaded in a complaint*." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (emphasis added).

56

See *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) ("Because the distinction between facial and as-applied challenges informs only the choice of remedy, 'not what must be pleaded in the complaint,' a court may construe a challenge as applied or facially, as appropriate."); *Gross v. United States*, 771 F.3d 10, 15 (D.C. Cir. 2014), *cert. denied*, 575 U.S. 951 (2015) (""[t]he substantive rule of law is the same for both challenges'") (citation omitted).

Hawaii argued Plaintiffs cannot bring a facial challenge because not all applicants need to take time off work, there "because at least some applicants will not be harmed by the challenged statutes and Plaintiffs' harm would be de minimis in any event, there is insufficient standing and the facial challenge should have failed." *Id.* at 56. Arguments identical to Hawaii's have already been rejected by this Court in *Jackson*. "San Francisco argues that Jackson may not bring a facial challenge to section 4512…San Francisco's argument reflects a misunderstanding of the Supreme Court's jurisprudence…constitutionality of section 4512 does not turn on how San Francisco chooses to enforce it. The statute constitutes a flat prohibition on keeping unsecured handguns in the home." *Jackson*, 746 F.3d at 962. The challenged laws are no different.

While it is true in Plaintiffs' situation, they are required to take time off work, the ultimate burden is universal. Everyone in Hawaii who wishes to purchase a firearm must bring their firearm to their local police station to register it. And

everyone who wishes to purchase a handgun must do so within ten days of their permit to acquire being issued. H.R.S. § 134-2 and H.R.S. § 134-3 are "not an example of 'complex and comprehensive legislation' which may be constitutional in a broad swath of cases. Either it is a permissible burden on the Second Amendment right to 'keep and bear arms' or it is not." *Jackson*, 746 F.3d at 962.

Hawaii also claims that Plaintiffs may not bring a facial challenge because the regulations "self-evidently de minimis[.]". Opening Brief at 55. Hawaii takes this language from *Heller II*, 670 F.3d at 1254-55 and *Nordyke v. King*, 681 F.3d 1044 (9th Cir. 2012). The cited to language has absolutely nothing to do with whether a litigant can bring a facial challenge or not. *Heller II* discusses the notion that the presumption of constitutionality that a longstanding law enjoys can be rebutted if the burden is not *de minimis*. And the cited passage in *Nordyke* dealt with whether Alameda County's regulations passed constitutional scrutiny. This Court found that it did because the burden on the litigants was "minimal." Neither of these citations are relevant to determining whether Plaintiffs can bring a facial challenge. *Jackson* controls and Plaintiffs may plainly bring a facial challenge to the challenged laws.

## CONCLUSION

This Court should endorse the trial court's well-reasoned opinion and find that

H.R.S. § 134-2 and H.R.S. § 134-3 are unconstitutional.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
Email: stephen@sdslaw.us

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, counsel for Plaintiffs-Appellees state that the following cases in the Ninth Circuit may raise closely related issues concerning similar claims:

None to our knowledge

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 13,951 words and complies with the word limit of Cir. R. 32-1.

2.    This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: April 25, 2022.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2022, I filed the foregoing Appellees' Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck