No. 21-16756

# In the United States Court of Appeals
## for the Ninth Circuit

TODD YUKUTAKE AND DAVID KIKUKAWA,
*Plaintiffs-Appellees*,

v.

HOLLY T. SHIKADA, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII,
*Defendant-Appellant*,

Appeal from a Judgment of United States District Court
For the District of Hawaii; Civ. No. 1:19-cv-00578-JMS-RT
Honorable Chief District Court Judge Michael J. Seabright

**BRIEF AMICI CURIAE: THE SECOND AMENDMENT FOUNDATION & THE MADISON SOCIETY FOUNDATION, INC., IN SUPPORT APPELLEES SUPPORTING AFFIRMANCE**

Donald E.J. Kilmer, Jr. (SBN: 179986)
Law Offices of Donald Kilmer, P.C.
14085 Silver Ridge Road
Caldwell, Idaho. 83607
Voice: (408) 264-8489
Email: Don@DKLawOffice.com

*Counsel for Amici Curiae*

May 2, 2022

# CORPORATE DISCLOSURE STATEMENTS

Amicus SECOND AMENDMENT FOUNDATION states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Amicus MADISON SOCIETY FOUNDATION, INC., states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Respectfully submitted this 2nd Day of May 2022.

/s/ Donald Kilmer

Donald E. J. Kilmer, Jr.
ID State Bar No.: 11429
CA State Bar No.: 179986
WA State Bar No.: 56598
14085 Silver Ridge Road
Caldwell, Idaho. 83607
Ph. (408) 264-8489
Don@DKLawOffice.com

## Table of Contents

CORPORATE DISCLOSURE STATEMENTS ............................................. ii

TABLE OF AUTHORITIES ................................................................... iv

Interests of Amici ................................................................................ 1

Amici Relationship to Parties ............................................................. 2

Consent to File .................................................................................... 2

Introduction ........................................................................................ 3

Jurisdiction | Standard of Review | Issues Presented ......................... 3

Statement of the Case ......................................................................... 3

Argument ............................................................................................ 6

Conclusion ......................................................................................... 11

CERTIFICATE OF COMPLIANCE ..................................................... 14

CERTIFICATE OF SERVICE ............................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Caron v. United States,* 524 U.S. 308, 316 (1998) .................................... 7

*Cedar Point Nursery v. Hassid,* __ U.S. __, 141 S. Ct. 2063 (2021) ......... 7

*Church of the Lukumi Babalu Aye v. City of Hialeah,*
 508 U.S. 520 (1993) ................................................................................ 6

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ........................... 6, 11

*DuPont v. Nashua Police Dep't,* 167 N.H. 429 (Sup. Ct. of N.H. 2015) ... 7

*Grosjean v. American Press Co.,* 297 U.S. 233 (1936) .............................. 6

*Harman v. Forssenius,* 380 U.S. 528 (1965) .................................... 8, 9, 10

*Logan v. United States,* 552 U.S. 23, 28 (2007) ........................................ 7

*Loving v. Virginia,* 388 U.S. 1 (1967) ....................................................... 7

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) ............................ 6, 11

*Obergefell v. Hodges,* 576 U.S. 644, 663 (2015) ..................................... 12

*United States v. Brailey,* 408 F.3d 609 (9th Cir. 2005) ............................. 7

*Whole Woman's Health v. Hellerstedt,* 579 U.S. 582 (2016) .................... 7

*Yukutake v. Conners,* 554 F. Supp. 3d 1074 ............................................. 6

*Yukutake v. Connors,* 2021 U.S. Dist. LEXIS 181883 .............................. 6

## Statutes

Haw. Rev. Stat. § 134-2(e) ................................................................. 3, 4, 5

Haw. Rev. Stat. § 134-3(c) ................................................................. 3, 4, 5

## Interests of Amici

Amicus Second Amendment Foundation (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Hawaii. The purposes of SAF include education, research, publishing, and legal action focusing on the constitutional right to possess and carry firearms, as well as the consequences of gun control. SAF tenders this amicus brief on behalf of itself and its members to limit irrational gun control that is repugnant to the right of self-defense, wherever such transgressions arise. SAF is not a publicly traded corporation.

The Madison Society Foundation, Inc., (MSF) is a not-for-profit 501(c)(3) corporation based in California. It promotes and preserves the purposes of the Constitution of the United States, in particular the right to keep and bear arms. MSF provides the general public and its members with education and training on this important right. MSF contends that this right includes the right to acquire firearms without onerous and objectively unreasonable obstacles for the purpose of self-

defense. MSF and its members are highly motivated in their efforts to seek limitations on constitutionally invalid forms of regulation in other states – in part – because such unlawful regulations plague Hawaii residents, and the effects are detrimental to Hawaiians, and the nation. MSF is not a publicly traded corporation.

## Amici Relationship to Parties

No counsel for any party in this matter has authored this brief in whole or in part. No party or counsel for any party has contributed money intended to fund the preparation of this brief. No person(s), other than amici curiae and its members have funded the preparation of the brief.

This *Amici Curiae* Brief is filed in support of Appellees, urging this Court to affirm the decision of the District Court.

## Consent to File

All parties have consented to the filing of this brief.

May 2, 2022    /s/ *Donald Kilmer*
               Donald Kilmer
               Counsel for Amici

## Introduction

This is a case where a state-actor purports to comply with the Constitution's text and Supreme Court caselaw, while intentionally undermining the fundamental right at issue. In fact, Hawaii is only engaged in a kind of malicious compliance.

Hawaii has erected nonsensical hoops for gun-buyers to jump through to exercise a fundamental right. The passive-aggressive regulations at issue in this case are mirrored by remarkably similar barriers to voting that were struck down by the Supreme Court more than 50 years ago.

## Jurisdiction | Standard of Review | Issues Presented

Amici herein relies upon the parties' statements relating to jurisdiction, standard of review, and issues presented.

## Statement of the Case

Plaintiffs are residents of the City and County of Honolulu. Both legally own multiple firearms and wish to legally acquire additional guns, including handguns. They alleged and proved that provisions of two State of Hawaii firearm laws, HRS §§ 134-2(e) and 134-3(c), violate their Second Amendment right to keep and bear arms.

3

HRS § 134-2(e) provides, in relevant part, that "[p]ermits issued to acquire any pistol or revolver [i.e., handguns] shall be void unless used within ten days after the date of issue." And HRS § 134-3(c) provides, in relevant part, that firearms "shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration."

Plaintiffs challenged both laws on Second Amendment grounds because "people who wish to own a firearm, including the litigants in this matter, must take time off work to complete the lengthy application process." To legally possess a firearm, applicants must complete an application process, which consists of the following steps[1]:

(1) In the case of handguns, acquire all necessary identifying information about the firearm from the seller, including its make, model, and serial number;

(2) Physically visit the police station to apply for a permit to acquire that particular firearm, including by providing personal identifying

---

[1] Before undertaking the listed steps, first-time applicants for a firearm are required to take a safety course. Individuals applying for additional guns need not take the safety course again. HRS § 134-2(g). Plaintiff-Appellees have not challenged this mandatory safety course provision for first-time gun buyers.

information, including name, address, and physical appearance; and, in the case of handguns, the gun's make, model, and serial number;

(3) Wait 14 days while the police department reviews the application, conducts a background check to ensure that the individual is qualified to possess a gun, and issues the permit;

(4) Return to the seller to present the permit and finalize the purchase of the firearm. Applicants must purchase the firearm within 10 days of permit issuance in the case of a handgun and within a year of permit issuance in the case of a long gun[2]. HRS § 134-2(e); and

(5) Within five days of acquiring the firearm, bring the firearm back to the police station for a physical inspection and registration, including by providing the firearm's make, model, and serial number. HRS § 134-3(c).

The trial court entered judgment against Hawaii after finding that the state had failed to meet its burden to produce any evidence of a legitimate government interest – and/or – an appropriately tailored regulation to address even its inchoate rationalizations.

---

[2] Appellees did not challenge the one-year period for long guns.

The court made these findings even after giving Hawaii the benefit of the doubt by applying intermediate scrutiny to their regulations.[3] *Yukutake v. Conners,* 554 F. Supp. 3d 1074 (U.S. Dist. Hawaii, 2021). Clarified by, Stay granted by, in part, Stay denied by, in part *Yukutake v. Connors*, 2021 U.S. Dist. LEXIS 181883 (D. Haw., Sept. 23, 2021)

## Argument

Whether by affected design, or designed for effect, the imposition of onerous (and often obtuse) regulations that burden fundamental rights has drawn rebukes from the U.S. Supreme Court in many contexts. In First Amendment cases *see e.g., Grosjean v. American Press Co.,* 297 U.S. 233 (1936) (freedom of the press); *Church of the Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993) (freedom of religion). For Second Amendment cases *see e.g., District of Columbia v. Heller,* 554 U.S. 570 (2008) (regulating handguns); *McDonald v. City of Chicago,* 561 U.S. 742 (2010) (regulating handguns). In Fifth Amendment cases *see e.g., Bolling v. Sharpe,* 347 U.S. 497 (1954) (substantive due process

---

[3] Arguably, a standard closer to strict scrutiny should have been applied since these manifestly unconstitutional barriers to acquiring a firearm severely interfere with the core right of self-defense. *See generally, Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011).

6

– equal protection); *Cedar Point Nursery v. Hassid,* __ U.S. __, 141 S. Ct. 2063 (2021) (access to private property). And rounding out, but by no means exhausting the list, in Fourteenth Amendment cases *see e.g., Loving v. Virginia,* 388 U.S. 1 (1967) (marriage); *Whole Woman's Health v. Hellerstedt,* 579 U.S. 582 (2016) (substantive due process – abortion).

The civil rights of voting, holding public office, jury-service, and the "right to keep and bear arms" are spoken of in one breadth in the context of statutes and regulations that burden these rights. *See generally: Logan v. United States,* 552 U.S. 23, 28 (2007); *cf. Caron v. United States,* 524 U.S. 308, 316 (1998). *See also: United States v. Brailey,* 408 F.3d 609 (9th Cir. 2005); *cf. DuPont v. Nashua Police Dep't,* 167 N.H. 429 (Sup. Ct. of N.H. 2015).

It therefore stands to reason that when a court examines any barrier to exercising any one of these rights (voting, jury service, holding public office, and the right to keep and bear arms), that court should engage in the same mode of analysis as it does when it examines a state regulation trenching on a parallel core civil right.

Hawaii's onerous (and obtuse) regulations for buying a handgun most closely resembles the obstacle courses and bureaucratic hoops

erected against voting rights over the past 150+ years, including the latest rounds of litigation addressing complicated Voter I.D. laws.

One year after ratification of the Twenty-fourth Amendment (forbidding a poll tax in federal elections), the U.S. Supreme Court spoke directly to this issue of recalcitrant states undermining constitutional rights under the pretext of mere regulation and/or administrative efficiency.

> It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583. "Constitutional rights would be of little value if they could be . . . indirectly denied," *Smith v. Allwright*, 321 U.S. 649, 664, or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345. Significantly, the Twenty-fourth Amendment does not merely insure that the franchise shall not be "denied" by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be "denied or abridged" for that reason. Thus, like the Fifteenth Amendment, the Twenty-fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275. "It hits onerous procedural requirements which effectively handicap exercise of the franchise" by those claiming the constitutional immunity. *Ibid.; cf. Gray v. Johnson*, 234 F.Supp. 743 (D. C. S. D. Miss.).
>
> *Harman v. Forssenius*, 380 U.S. 528, 540-41 (1965)

In *Harman* the state of Virginia failed to justify its burden on voting by making a mere showing of some "remote administrative benefits" that compelled voters to either pay a poll tax or produce a certificate of residency on pain of losing the right to vote. The *Harman* Court noted:

> [T]he requirement for those who wish to participate in federal elections without paying the poll tax is that they file in each election year, within a stated interval ending six months before the election, a notarized or witnessed certificate attesting that they have been continuous residents of the State since the date of registration (which might have been many years before under Virginia's system of permanent registration) and that they do not presently intend to leave the city or county in which they reside prior to the forthcoming election. Unlike the poll tax bill which is sent to the voter's residence, it is not entirely clear how one obtains the necessary certificate. The statutes merely provide for the distribution of the forms to city and county court clerks, and for further distribution to local registrars and election officials. Va. Code Ann. § 24-28.1 (1964 Supp.). Construing the statutes in the manner least burdensome to the voter, it would seem that the voter could either obtain the certificate of residence from local election officials or prepare personally "a certificate in form substantially" as set forth in the statute. The certificate must then be filed "in person, or otherwise" with the city or county treasurer. This is plainly a cumbersome procedure. In effect, it amounts to annual re-registration which Virginia officials have sharply contrasted with the "simple" poll tax system.

*Harman at* 541-42

The parallels to this case are vivid. While the *Harman* Court acknowledged that election integrity was a valid government interest, it rejected Virginia's regulations when there was a less burdensome device for addressing that interest. The Court equated (while rejecting) the annual "re-registration" process imposed on voters (or having to pay the poll tax) as tantamount to a forfeiture of the right to vote.

"We are thus constrained to hold that the requirement imposed upon the voter who refuses to pay the poll tax constitutes an abridgment of his right to vote by reason of failure to pay the poll tax." *Id., at* 542. In other words, the rote requirement of compelled annual re-registration and proof of residency violated a fundamental right.

Hawaii's gun-buyer I.D. regulation presents a similar Hobson's (take it or leave it) Choice and is thus similarly flawed. Paradoxically a person seeking to exercise a fundamental right to acquire a <u>long gun</u> in Hawaii must comply with the same regulation that was struck down in *Harman* – annual re-registration to exercise a fundamental right. The regulation addressed to long guns is not at issue in this appeal.

The question amici urge this Court to consider is this: If annual re-registration to vote is too onerous under *Harman,* then how much more

burdensome is Hawaii's ad hoc, redundant, and convoluted scheme for constant re-registration and inspection when purchasing a handgun? After all, parallel rights should be accorded parallel scrutiny. There is only one conclusion: Hawaii's regulatory hoops for exercising a fundamental right are illusory and fail to meet any standard of review.

This was the essential holding of the District Court when it found that Hawaii had failed to produce any evidence to justify its scheme under any standard of review. Thus, when the trial court struck down the byzantine ritual recounted in its decision as an infringement on the Second Amendment, it wasn't even being controversial. The U.S. Supreme Court had already specifically addressed the right to acquire and keep handguns in the home for self-defense as a right that cannot be infringed. *See: District of Columbia v. Heller,* 554 U.S. 570 (2008); and *McDonald v. City of Chicago,* 561 U.S. 742 (2010).

## Conclusion

Fundamental rights, like those bundled in the Second Amendment's "right to keep and bear arms" are a mere subset of the pre-existing human rights protected by our Constitution.

> [..T]he identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, "has not been reduced to any formula." *Poe v. Ullman*, 367 U.S. 497, 542, [...] (1961) (Harlan, J., dissenting). Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. See *ibid.* That process is guided by many of the same considerations relevant to analysis of other constitutional provisions that set forth broad principles rather than specific requirements. History and tradition guide and discipline this inquiry but do not set its outer boundaries. See *Lawrence [v. Texas*, 530 U.S. 530], *supra*, at 572, [...]. That method respects our history and learns from it without allowing the past alone to rule the present.
>
> *Obergefell v. Hodges,* 576 U.S. 644, 663 (2015)

Hawaii has failed to accord Appellees (and other Hawaiians) the respect due their right to "keep and bear arms." The District Court exercised reasoned judgment when it found that "[t]he Government has failed to show that the in-person inspection and registration requirement is reasonably tailored to a significant, substantial, or important government interest. [And that] HRS § 134- 3(c)'s in-person inspection and registration requirement does not survive intermediate scrutiny." *Yukutake,* 554 F. Supp. 3d 1074, 1090.

13

The judgment below should be affirmed.

Respectfully submitted this 2nd Day of May 2022.

/s/ Donald Kilmer

Donald Kilmer
Counsel for Amici

## CERTIFICATE OF COMPLIANCE

    This brief complies with the type-volume limitation of this Circuit because it consists of 2432 words and because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated: May 2, 2022

                                             /s/ Donald Kilmer
                                             Attorney for Amici Curiae

## CERTIFICATE OF SERVICE

    On May 2, 2022, I served the foregoing BRIEF AMICUS CURIAE OF THE SECOND AMENDMENT FOUNDATION and THE MADISON SOCIETY FOUNDATION, INC., IN SUPPORT OF AFFIRMANCE by electronically filing it with the Court's ECF/CM system, which generated a Notice of Filing and effects service upon counsel for all parties in the case. I declare under penalty of perjury that the foregoing is true and correct.

Executed May 2, 2022

                                             /s/ Donald Kilmer
                                             Attorney for Amici Curiae