**No. 21-16756**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

TODD YUKUTAKE, and DAVID KIKUKAWA,

*Plaintiff-Appellees*,

v.

HOLLY T. SHIKADA, in her Official Capacity as the Attorney
General of the State of Hawaii,

*Defendant-Appellant*

And

CITY AND COUNTY OF HONOLULU,

*Defendant*.

On Appeal from the United States District Court
for the District of Hawaii
No. 1-19-cv-0058 (Hon. J. Michael Seabright)

---

**THE NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.'S
AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF-APPELLEES**

---

Michael T. Jean
National Rifle Association of America –
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, Virginia 22030
Tel: (703) 267-1158

*Attorney for Amicus Curiae National Rifle
Association of America*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Amicus Curiae, the National Rifle Association of America, Inc., ("NRA") submits the following corporate disclosure statement:

The NRA is a 501(c)(4) non-profit membership organization, incorporated in the state of New York, with its principal place of business in Fairfax, Virginia. NRA is not publicly traded and has no parent corporation. There is no publicly held corporation that owns 10 percent or more of its stock.

Date: May 02, 2022             Respectfully submitted:


*/s/ Michael T. Jean*
Michael T. Jean

*Attorney for Amicus Curiae National Rifle Association of America*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES .................................................................................. iv

INTEREST OF AMICUS .......................................................................................1

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................2

    I.     THE STATUTES BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT AND REQUIRE AN APPLICATION OF HEIGHTENED SCRUTINY. ........................................................................2

          A.     Hawaii has created a complicated process for acquiring firearms. .................................................................................................2

          B.     Hawaii's statutes burden conduct protected by the Second Amendment and are subjected to heightened scrutiny. ..............4

    II.    THE 10-DAY EXPIRATION DATE IS UNCONSTITUTIONAL. ....9

         A. The 10-day expiration date's purpose is to burden gun owners, not to promote public safety ...............................................................9

         B. The 10-day expiration fails under any level of scrutiny .................12

    III.   THE IN-PERSON REGISTRATION REQUIREMENT IS UNCONSTITUTIONAL. ..................................................................18

CONCLUSION ......................................................................................................22

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ............................24

CERTIFICATE OF SERVICE .............................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Burson v. Freeman*,
504 U.S. 191 (1992)..................................................................... 16, 17

*C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) ........................................................15

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)........................................................................9

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986)..........................................................................9

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) .....................................................11

*District of Columbia v. Heller (Heller I)*,
554 U.S. 570 (2008)...................................................................9, 18

*Drummond v. Robinson Township*,
9 F.4th 217 (3d Cir. 2021) .................................................... passim

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021).................................................8, 18

*Est. of Saunders v. C.I.R.*,
745 F.3d 953 (9th Cir. 2014) .......................................................14

*Ezell v. City of Chicago (Ezell I)*,
651 F.3d 684 (7th Cir. 2011) ........................................... 7, 13, 14

*Ezell v. City of Chicago (Ezell II)*,
846 F.3d 888 (7th Cir. 2017) ........................................... 8, 17, 18

*F.C.C. v. Beach Commun., Inc.*,
508 U.S. 307 (1993)......................................................................17

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) .......................................... 5, 8, 15

*Heller v. District of Columbia (Heller II)*,
670 F.3d 1244 (D.C. Cir. 2011)..................................................5, 6

*Heller v. District of Columbia (Heller III)*,
45 F. Supp. 3d 35, 59 (D.D.C. 2014).........................................19

*Heller v. District of Columbia (Heller IV)*,
   801 F.3d 264 (D.C. Cir. 2015).......................................................... 17, 19, 20

*Hilao v. Est. of Marcos*,
   393 F.3d 987 (9th Cir. 2004) ............................................................5

*Jackson v. City & Cty. of San Francisco*,
   746 F.3d 953 (9th Cir. 2014) ........................................................ 8, 9, 13, 14

*Kennedy v. Louisiana*,
   554 U.S. 407 (2008)..........................................................................7

*Lippi v. City Bank,*
   955 F.2d 599 (9th Cir. 1992) ............................................................16

*Mahoney v. Sessions*,
   871 F.3d 873 (9th Cir. 2017) .............................................................8

*Mai v. United States*,
   952 F.3d 1106 (9th Cir. 2020) ........................................................8, 14

*McCullen v. Coakley*,
   573 U.S. 464 (2014).........................................................................9

*McDonald v. City of Chicago, Ill.*,
   561 U.S. 742 (2010).......................................................................13

*Metro Lights, L.L.C. v. City of Los Angeles*,
   551 F.3d 898 (9th Cir. 2009) ...........................................................12

*Miller v. Glenn Miller Productions, Inc.*,
   454 F.3d 975 (9th Cir. 2006) ...........................................................15

*Natl. Steel Corp. v. Golden Eagle Ins. Co.*,
   121 F.3d 496 (9th Cir. 1997) ...........................................................15

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ............................................................17

*Pena v. Lindley*,
   898 F.3d 969 (9th Cir. 2018) ........................................................8, 14

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) ........................................................ 5, 8, 16

*State v. Slavik*,
   501 P.3d 312 (Haw. App. 2021)......................................................2, 4

*Teixeira v. County of Alameda*,
   873 F.3d 670 (9th Cir. 2017) .............................................................9

*Texas v. Johnson*,
    491 U.S. 397 (1989)....................................................................9

*United States v. Albertini*,
    472 U.S. 675 (1985)..................................................................10

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ...............................................8, 16

*United States v. O'Brien*,
    391 U.S. 367 (1968)....................................................................9

*United States v. Playboy Ent. Group, Inc*.,
    529 U.S. 813 (2000)............................................................ 12, 14

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ..................................................16

*United States v. Torres*,
    911 F.3d 1253 (9th Cir. 2019) ..................................................8

*Valle Del Sol Inc. v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) ....................................................9

*Wilson v. Lynch*,
    835 F.3d 1083 (9th Cir. 2016) ..................................................8

*World Wide Rush, LLC v. City of Los Angeles*,
    606 F.3d 676 (9th Cir. 2010) ............................................ 12, 13

*Young v. Hawaii*,
    896 F.3d 1044 (9th Cir. 2018) ................................................14

*Young v. Hawaii*,
    992 F.3d 765 (9th Cir. 2021) ........................................... passim

*Yukutake v. Conners*,
    554 F. Supp. 3d 1074 (D. Haw. 2021).............................. passim

**Statutes**

18 U.S.C. § 922(t) ...........................................................................11

D.C. Code § 7-2502.02 ...................................................................20

D.C. Code § 7-2502.04(c)...............................................................19

Haw. Rev. Code § 134-9(c) ............................................................14

Haw. Rev. Stat. § 134-13 ................................................................10

Haw. Rev. Stat. § 134-17(c)....................................................................4

Haw. Rev. Stat. § 134-2(a)......................................................................2

Haw. Rev. Stat. § 134-2(b)-(e)................................................................3

Haw. Rev. Stat. § 134-2(e)...............................................................3, 13

Haw. Rev. Stat. § 134-2(f)...............................................................4, 20

Haw. Rev. Stat. § 134-3(b)...............................................................4, 20

Haw. Rev. Stat. § 134-3(c)......................................................................4

Mich. Comp. Laws § 28.422a(1).........................................................11

Michigan, Act of June 2, 1927, No. 372, § 9, 1927 Mich. Laws 887, 891 ..............6

## Other Authorities

27 C.F.R. § 478.102(a)..........................................................................11

27 C.F.R. § 478.102(d)..........................................................................11

27 C.F.R. § 478.125(e)..........................................................................21

Fed. R. Civ. P. 56(e)..............................................................................15

## INTEREST OF AMICUS[1]

The National Rifle Association of America, Inc. ("NRA") is America's oldest civil-rights organization and is widely recognized as America's foremost defender of Second Amendment rights. It was founded in 1871, by Union generals who, based on their experiences in the Civil War, sought to promote firearms marksmanship and expertise amongst the citizenry. Today, the NRA has approximately five million members, and its programs reach millions more. The NRA is America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA has a significant interest in this case. Many NRA members reside in Hawaii and wish to purchase firearms there. But their ability to do so is hindered by Hawaii's regulatory scheme.

## INTRODUCTION

Acquiring a firearm in the Aloha State is an unnecessarily complicated process. Hawaii laws impose many repetitive steps and short deadlines on those who wish to exercise their Second Amendment rights. Two of those laws are challenged here. The first is a provision of Hawaii's permit-to-purchase-a-firearm stat-

---

[1] All parties consented to the filing of this brief. No counsel for a party authored this brief in any way. No party or party's counsel made contributions to fund the preparation or submission of this brief. No person, other than the NRA, its members or its counsel, made contributions to fund the preparation or submission of this brief.

ute that puts a 10-day expiration date on all permits to purchase handguns, and the second is a provision of the registration statute that requires the firearm be brought to the police station within five days of acquisition for inspection. These provisions were not passed to redress any problem. Instead, they were passed solely to "control" how people exercise their Second Amendment rights.

Even worse, Hawaii submitted no evidence supporting either of these provisions. Instead, it argues that the provisions should be upheld by "common sense" alone. Common sense—not to mention Supreme Court precedent—says that when the people declared that the right to keep and bear arms "shall not be infringed," they gave the government a heavier burden. Hawaii did not meet its burden. The district court correctly found the two statutes to be unconstitutional, and this Court should affirm.

## ARGUMENT

### I. THE STATUTES BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT AND REQUIRE AN APPLICATION OF HEIGHTENED SCRUTINY.

#### A. Hawaii has created a complicated process for acquiring firearms.

To obtain a firearm in Hawaii, one must first obtain a permit to purchase it. Haw. Rev. Stat. § 134-2(a); *State v. Slavik*, 501 P.3d 312, 327–28 (Haw. App. 2021), *as corrected* (Apr. 8, 2022). An individual obtains a permit by completing a state-issued form and submitting it to the issuing agency, which is the county

police department. Haw. Rev. Stat. § 134-2(b)-(e).[2] When acquiring a handgun, the individual must also provide specific information about that handgun.[3] After receiving the application, the issuing agency conducts a background check. Haw. Rev. Stat. § 134-2(e). The agency must then either issue or deny the permit between 14 and 20 days after receiving the application. *Id*.

A separate permit is required for acquiring each handgun. *Id*. And each handgun permit expires after 10 days. *Id*. But "[p]ermits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition." *Id.* Moreover, with handgun permits, the transferor takes the permit at the transaction, inputs the "names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable" onto the permit, and then signs and returns the permit to the issuing agency

---

[2]That form is available at https://www.honolulupd.org/wp-content/uploads/2020/09/SOHFirearmsApplicationQues10_2017-1.pdf (last visited May 1, 2022).

[3] "You will need the Make, Model, Caliber, Type/Revolver/ Semiautomatic etc, Barrel Length, and Serial Number (Handguns Only)." https://www.kauai.gov/Government/Departments-Agencies/Police-Department/Firearms-Section (last visited May 1, 2022). *See also* https://www.honolulupd.org/police-services/firearms/ (Using identical language under the "Apply for a Permit" tab) (last visited May 1, 2022); Hawaii Opening Br. at 54.

within 48 hours. Haw. Rev. Stat. § 134-2(f). With long-gun transactions, however, the transferor must submit that same information to the issuing agency in writing, but does not sign and return the actual permit, within 48 hours. *Id*. Violating § 134-2 is a misdemeanor offense. Haw. Rev. Stat. § 134-17(c).

That is not the end of the process. The applicant must then register the firearm within five days of acquiring it. Haw. Rev. Stat. § 134-3(b); *Slavik*, 501 P.3d at 32. The individual registering the firearm must provide the issuing agency with the "name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant." Haw. Rev. Stat. § 134-3(b). (As indicated above, all of this information is already submitted by the transferor under Haw. Rev. Stat. § 134-2(f), and also by the purchaser if he or she is acquiring a handgun.) The statute further requires that the firearm be brought into the police station for a physical inspection when it is registered. Haw. Rev. Stat. § 134-3(c). Violating § 134-3(b) is a petty misdemeanor offense. Haw. Rev. Stat. § 134-17(c).

### B. Hawaii's statutes burden conduct protected by the Second Amendment and are subjected to heightened scrutiny.

Although the NRA believes that Second Amendment claims should be evaluated by text, history, and tradition, this Court currently applies a "two-step framework to review Second Amendment challenges." *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (collecting authorities). "First, we ask if the challenged

law affects conduct that is protected by the Second Amendment." *Id.* (citing *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016)). The Court "base[s] that determination on the historical understanding of the scope of the right." *Id.* (citations and quotations omitted). There must be evidence in the record showing that the regulation is both longstanding and accepted. *Id*. (citing *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015)). Outlier regulations are not sufficient. Instead, the Court requires a "'historical prevalence.'" *Id*. (quoting *Fyock*, 779 F.3d at 997); *Drummond v. Robinson Township*, 9 F.4th 217, 222 (3d Cir. 2021) ("In identifying which rules invade the Second Amendment, we hunt for historical outliers—laws that lack traditional counterparts."); *see also Heller v. District of Columbia (Heller II),* 670 F.3d 1244, 1292 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). Second, if the regulation burdens conduct protected by the Second Amendment, the court then applies the appropriate level of scrutiny. *Young*, 992 F.3d at 784 (citation omitted).

1. Hawaii conceded below that the provisions at issue burden conduct protected by the Second Amendment, *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1083 (D. Haw. 2021). It is bound by that concession. *Hilao v. Est. of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) (citation omitted). It also argues in its opening brief that intermediate scrutiny should apply to both statutory provisions at issue, Hawaii Opening Br. at 26, 44 ("Hawaii Br."), which is another concession that the

5

statutes burden conduct protected by the Second Amendment. There would be no need to apply intermediate scrutiny if the statutes did not burden conduct protected by the Second Amendment.

Hawaii, nevertheless, spilled a lot of ink in its brief about the history of its firearms laws in an attempt to show that they are longstanding. *Id*. at 13-22. Hawaii, however, notes that its early laws had "'no practicable benefit to the people of this Territory because of inconsistencies and ambiguities.'" *Id*. at 15 (citation omitted). Inconsistent and ambiguous laws cannot be the foundation of a prevalent historically-accepted practice to limit a fundamental constitutional right. But even if such laws could limit the scope of a constitutional right, Hawaiian law on its own is insufficient to establish a prevalence. And Hawaii could only identify three other states, Massachusetts, Michigan, and Missouri, that also had time limits on their permits to purchase. *Id*. at 23–24. Hawaii also attempts to show that its in-person-registration requirement is longstanding by citing *Heller II*. *Id*. at 42. But *Heller II* does not go that far. It merely holds that "basic" registration requirements are longstanding. *Heller II*, 670 F.3d at 1254. Indeed, the court only cited one statute requiring in-person registration. *Id*. (citing Michigan, Act of June 2, 1927, No. 372, § 9, 1927 Mich. Laws 887, 891). But "the presence of ordinary restrictions in some places cannot excuse extraordinary restrictions in others." *Drummond*, 9 F.4th at 228. A regulatory "scheme that combines conventional [regulations] with

6

unconventional rules will, by definition, lack traditional counterparts" and is not longstanding under the Second Amendment. *Id.* at 229. And even if unconventional regulations could be sufficient to satisfy the "longstanding" requirement, Hawaii has not shown that there are enough of those regulations to establish a historical prevalence for either the 10-day expiration date or the in-person registration requirements. *Cf. Kennedy v. Louisiana,* 554 U.S. 407, 426 (2008) (The fact that only six states permitted the death penalty for convicted child rapists shows national consensus "***against*** it.") (emphasis added). Moreover, those twentieth-century restrictions are "less reliable as evidence of the original meaning of the American right to keep and bear arms." *Young*, 992 F.3d at 811. The Court, therefore, has to proceed to step two and apply heightened scrutiny. *Ezell v. City of Chicago (Ezell I)*, 651 F.3d 684, 702–03 (7th Cir. 2011) ("[I]f the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.").

2. At the second prong of the analysis, the Court must choose the appropriate level of scrutiny. "If a regulation 'amounts to a destruction of the Second Amendment right,' it is unconstitutional under any level of scrutiny; a law that 'implicates the core of the Second Amendment right and severely burdens that right' receives

7

strict scrutiny; and in other cases in which Second Amendment rights are affected in some lesser way, we apply intermediate scrutiny." *Young*, 992 F.3d at 784 (quoting *Sylvester*, 843 F.3d at 821). Although the NRA believes that strict scrutiny should apply in many cases—including this one—this Court uniformly picks intermediate scrutiny.[4]

"To satisfy intermediate scrutiny, the government's statutory objective must be significant, substantial, or important, and there must be a reasonable fit between the challenged law and that objective." *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020) (citation and quotation marks omitted). The tailoring requirement is essential; the defendant cannot prevail without showing that the regulation is tailored. *See Ezell v. City of Chicago (Ezell II)*, 846 F.3d 888, 895 (7th Cir. 2017) ("[T]he City continues to assume … that it can invoke these interests as a general matter and call it a day."); *Drummond*, 9 F.4th at 233 (The government cannot "immunize its own [regulations] from review merely by mentioning public safety."). Moreover, the restriction "must 'directly advance' the state's substantial in-

---

[4] *See United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013); *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014); *Fyock*, 779 F.3d at 999–1000; *Wilson v. Lynch*, 835 F.3d 1083, 1093 (9th Cir. 2016); *Mahoney v. Sessions*, 871 F.3d 873, 881 (9th Cir. 2017); *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018); *United States v. Torres*, 911 F.3d 1253, 1263 (9th Cir. 2019); *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020); *Duncan v. Bonta*, 19 F.4th 1087, 1104 (9th Cir. 2021).

terest." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 823–24 (9th Cir. 2013) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980)); *Jackson v. City and County of San Francisco*, 746 F.3d 953, 969 (9th Cir. 2014) (The "government interest" must be "***served by***" the restriction.) (emphasis added). And finally, there must be a "close fit between [the] ends and means." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014).

## II.     THE 10-DAY EXPIRATION DATE IS UNCONSTITUTIONAL.

### A. The 10-day expiration date's purpose is to burden gun owners, not to promote public safety.

Hawaii notes that the "general purpose of" § 134-2 is to "'control[] the sale, transfer and possession of firearms.'" Hawaii Br. at 28, 29 (citation omitted). The Second Amendment, however, "conferred an individual right to keep and bear arms," *District of Columbia v. Heller (Heller I)*, 554 U.S. 570, 595 (2008), which includes "the ability to acquire arms." *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (citation omitted). The state's interest cannot be to "control" what the Constitution protects. *Cf. Texas v. Johnson*, 491 U.S. 397, 403 (1989) (The Government's interest cannot be suppressing free speech without triggering a "more demanding standard" of scrutiny.) (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47 (1986) (Content-based restrictions "presumptively violate the First Amendment.") (citation omitted). Hawaii, nevertheless, attempts to have

9

its cake and eat it, too: it advocates for the lower *O'Brien* form of review, Hawaii Br. at 26,[5] despite the concession that the purpose of the statute is to control constitutionally protected transactions. Hawaii cannot have it both ways.

Hawaii also claims that § 134-2's 10-day expiration is necessary to prevent people who subsequently become disqualified from owning a firearm from acquiring one. Hawaii Br. at 37. But this is flawed. The problem here, if it even is a problem, is one of Hawaii's own making. Hawaii presents the Court with a false dilemma: it can either have a permit to purchase with "a short expiration date … or a long expiration date with a revocation mechanism." Hawaii Br. at 39. That dilemma is false for two reasons.

The first is that Hawaii already has a mechanism for revoking permits: "All permits and licenses provided for under this part may be revoked, for good cause, by the issuing authority or by the judge of any court." Haw. Rev. Stat. § 134-13. Hawaii has been revoking long-gun permits and does not appear to have any trouble with that process. *See* Hawaii Br. at 39 n.15. There is no reason why it cannot

---

[5]"[A]n incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien,* so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985) (citation omitted).

do that with handgun permits.[6]

The second reason is the bigger problem for Hawaii. There is another option. Background checks are ordinarily conducted at the point of sale. 18 U.S.C. § 922(t)(1); 27 C.F.R. § 478.102(a). Indeed, the Michigan statute requiring a permit to purchase a firearm that Hawaii champions, Hawaii Br. at 32, has an exception for transfers conducted through "a federally licensed firearms dealer in compliance with 18 USC 922(t)." Mich. Comp. Laws § 28.422a(1)(c). Hawaii, however, chose to implement a multi-step permit to purchase and forgo the point-of-sale background check. 18 U.S.C. § 922(t)(3); 27 C.F.R. § 478.102(d)(1); *see also* https://www.atf.gov/rules-and-regulations/permanent-brady-permit-chart (last visited April 28, 2022). In doing so, it created the problem that it now claims that it has to solve with 10-day expiration date.

Moreover, it is not clear that there is an actual problem with people waiting a long period of time, such that they may become disqualified, before purchasing their handgun. It is highly unlikely that one would go through the trouble of applying for the permit, which requires providing the handgun's identifying information, paying an application fee up front, and granting the agency access to one's mental-

---

[6] The only potential argument that Hawaii offers is that this process is costlier. *Id*. But cost savings are not a sufficient reason to overcome rational-basis review. *E.g., Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011).

health records, and then wait a substantial amount of time to complete the transaction. The seller (or transferor) is also unlikely to hold the firearm for a long period of time. Remember that the handgun's specific information, including its serial number, must be included in the application, s*ee* n.3 *supra*, which effectively puts the specific firearm on hold until the transaction is completed. The seller will presumably find another buyer. The only reason to put a 10-day expiration date on the permit is to make acquiring a firearm more difficult under the deadline—which demonstrates that the statute's purpose is to control firearm transactions.

### B. The 10-day expiration fails under any level of scrutiny.

Because the state's purpose behind the 10-day expiration date is to control and burden constitutionally protected conduct, which is akin to a content-based speech restriction, it should be subjected to strict scrutiny. *United States v. Playboy Ent. Group, Inc*., 529 U.S. 803, 813 (2000) (citations omitted). But it ultimately fails under any level of scrutiny because the 10-day expiration date is underinclusive and Hawaii did not present any evidence supporting it.

1. An underinclusive statute is not tailored to fit to the government's interest. *Drummond*, 9 F.4th at 233 ("These glaring instances of under-inclusion exacerbate our already significant concerns about fit."); *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 685 (9th Cir. 2010) (quoting *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009)). An underinclusive statute has

"'exceptions that undermine and counteract the interest the government claims it adopted the law to further; such a regulation cannot directly and materially advance its aim,' and is, therefore, unconstitutionally underinclusive." *Id*. at 685 (citation omitted).[7]

Here, the regulatory regime is underinclusive because a person may acquire an unlimited number of long guns using a single permit, provided the transactions occur within one year. Haw. Rev. Stat. § 134-2(e). The inescapable take-away is that Hawaii is not so much concerned with subsequently disqualified individuals acquiring firearms as it is (as Hawaii states in its brief) with controlling and burdening constitutionally-protected conduct. *E.g.*, *Drummond*, 9 F.4th at 233.

Hawaii only offers a single argument in support of the distinction between handguns and long guns—in a footnote, it asserts that handguns are more dangerous because they are concealable. Hawaii Br. at 39 n.15. That argument is not

---

[7] Admittedly, these Ninth Circuit precedents are commercial-speech cases, but this Court is "guided by First Amendment principles" when analyzing Second Amendment challenges. *Jackson*, 746 F.3d at 961 (citing *Ezell I*, 651 F.3d at 706–07), *but see Young*, 992 F.3d at 828 (declining to apply First Amendment prior-restraint jurisprudence to the Second Amendment). Failing to apply commercial-speech precedent, which generally receives lower protections than other forms of speech, to the Second Amendment would reduce the Second Amendment to "a second-class right, subject to an entirely different body of rules than the other Bill of Rights." *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 780 (2010) (plurality); *see also Drummond*, 9 F.4th at 233 (applying the underinclusive doctrine to the Second Amendment.)

properly before the Court. *Est. of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (citations omitted) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived."). Even assuming this argument has been properly raised, it is without merit for two related reasons. First, regulating concealability is clearly beyond the scope of the statute. Hawaii has other statutes generally banning carrying a firearm concealed without a separately issued license to carry, Haw. Rev. Code § 134-9(c), and those licenses are almost never issued, *Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018), *on reh'g en banc*, 992 F.3d 765 (Only four were issued in 18 years.). And second, the 10-day expiration requirement does nothing to redress concealability. *Jackson*, 746 F.3d at 969. The under-inclusiveness of the statute leaves no doubt that its sole purpose is to control firearms transactions, not to prevent disqualified people from acquiring a firearm.

2. This Court's Second Amendment precedent requires the government to provide "evidence [that] 'fairly supports'" the legislature's conclusion. *Mai*, 952 F.3d at 1118 (quoting *Pena v. Lindley*, 898 F.3d 969, 979–80 (9th Cir. 2018)); *Ezell I,* 651 F.3d at 709 ("In the district court, the City presented no data or expert opinion to support the range ban, so we have no way to evaluate the seriousness of its claimed public-safety concerns. Indeed, on this record those concerns are entirely speculative."); *Playboy Ent. Group, Inc.*, 529 U.S. at 822 ("[T]he Government must present more than anecdote and supposition.").

14

Moreover, the case was resolved on cross motions for summary judgment. A party moving for summary judgement "'must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted). And the non-moving party cannot "'rest upon … mere allegations or denials'" but instead "'must set forth specific facts showing that there is a genuine issue for trial.'" *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). "Summary judgment will be entered against the non-moving party if" it "does not present such facts," i.e., "admissible evidence." *Id*. at 987–88 (citations omitted).

Hawaii did not submit any evidence in the record below. Instead, it chose to make its case solely on "common sense." *Yukutake*, 554 F. Supp. 3d at 1084–85. Perhaps realizing that strategy was a mistake, it now cites a single study in its brief. Hawaii Br. at 30. But that is too little, too late. "When reviewing the reasonable fit between the government's stated objective and the regulation at issue, the court may consider 'the legislative history of the enactment as well as ***studies in the record*** or cited in pertinent case law.'" *Fyock*, 779 F.3d at 1000 (emphasis added) (internal citations omitted); *Natl. Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 500 (9th Cir. 1997) ("Ninth Circuit appellate review is limited to the record pre-

sented to the district court at the time of summary judgment.") (citing *Lippi v. City Bank,* 955 F.2d 599, 604 (9th Cir. 1992)). That study is not in the record and is not properly before the Court. And even if that study were properly before the court, it only addresses permits to acquire in general. It does not address permit expiration dates.

3. Hawaii's theory that it can rely solely on "common sense" also fails. Courts have never relied solely on common sense to uphold restraints on constitutional rights. It has only been considered with other factors: "A long history, a substantial consensus, ***and*** simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right." *Burson v. Freeman*, 504 U.S. 191, 211 (1992) (emphasis added).[8] Indeed, this Court has required more in its Second Amendment jurisprudence. *Chovan*, 735 F.3d at 1135 ("In light of ***'[b]oth logic and data'*** … keeping guns from domestic violence misdemeanants is substantially related to the government interest of preventing gun violence.") (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)) (emphasis added); *Silvester*, 843 F.3d at 828 (noting that the empirical studies "confirm the common sense understanding" behind the waiting period at issue).

That is consistent with other circuits' Second Amendment jurisprudence.

---

[8] As mentioned above, the 10-day expiration lacks the long historical consensus that this test would require.

16

The Third and Seventh Circuits have held that the government "must support [their] position not with 'lawyers' talk,' but with actual 'evidence.'" *Drummond*, 9 F.4th at 233 (quoting *Ezell II*, 846 F.3d at 896). The Second Circuit held that "on intermediate scrutiny review, the state cannot 'get away with shoddy data or reasoning.' To survive intermediate scrutiny, the defendants must show 'reasonable inferences based on substantial evidence' that the statutes are substantially related to the governmental interest." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015) (citation omitted). And the D.C. Circuit held that "it is our remit to determine only whether the District 'has drawn reasonable inferences based on substantial evidence.'") *Heller v. District of Columbia (Heller IV)*, 801 F.3d 264, 273 (D.C. Cir. 2015) (citation omitted).

At best, Hawaii's "common-sense" argument is nothing more than rational-basis review by another name. Hawaii claims that as long as there is a "'logical connection'" between the policy chosen and the problem that the state is trying to solve, then the policy must be upheld. Hawaii Br. at 52 (quoting *Burson*, 504 U.S. at 208 n.10). But that *Burson* footnote uses "logical connection" and "rational connection" interchangeably. 504 U.S. at 208 n.10. And under rational-basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commun., Inc.*, 508 U.S. 307, 315 (1993) (citations omitted). Both this

17

Court and the Supreme Court made it unequivocally clear that "'[l]aws burdening Second Amendment rights must withstand more searching scrutiny than rational basis review.'" *Duncan v. Bonta*, 19 F.4th 1087, 1103 (9th Cir. 2021) (citation omitted); *Heller I*, 554 U.S. at 629 n.27. A logical connection, however, is nothing more than "[a] theory[] unsupported by evidence," which is insufficient to withstand intermediate scrutiny under the Second Amendment. *Drummond*, 9 F.4th at 232 (citing *Ezell II*, 846 F.3d at 896). Moreover, even if Hawaii could rely on common sense or a rational basis alone, the district court refuted its argument that the 10-day expiration is served by common sense. *Yukutake*, 554 F. Supp. 3d at 1085–86.

Hawaii made its bed when it decided to proceed solely on common sense. Now Hawaii has to lay in it. Hawaii's arguments and the 10-day expiration deadline both fail. This Court should affirm.

## III.   THE IN-PERSON REGISTRATION REQUIREMENT IS UN-CONSTITUTIONAL.

The in-person registration requirement suffers from the same flaws that the 10-day expiration does. Hawaii chose to rely solely on common sense, i.e., rational-basis review, and supplied no supporting evidence. Those arguments fail for the same reasons described in detail above. But even worse for Hawaii here, courts have already invalidated in-person registration requirements under the Second Amendment.

1. The D.C. Circuit struck a similar in-person registration requirement and, in doing so, rejected identical arguments that Hawaii is making. District of Columbia law required firearm registrants to "appear in person at a time and place prescribed by the Chief [of police], and may be required to bring with him the firearm for which a registration certificate is sought." D.C. Code § 7-2502.04(c). That was challenged under the Second Amendment. There, just like Hawaii does here, the District of Columbia "offered no evidence—let alone substantial evidence—from which it can be inferred that [in-person] verification will promote public safety." *Heller IV*, 801 F.3d at 277. The district court accepted the same common-sense argument that Hawaii makes here: there is a "'common-sense inference' that 'if in-person appearance is necessary to verify the identity of the registrant, then physically bringing the gun is similarly necessary to verify the character of the registered weapon.'" *Id.* (quoting *Heller v. District of Columbia (Heller III)*, 45 F. Supp. 3d 35, 59 (D.D.C. 2014)); *see also* Hawaii Br. at 42 ("Inspection of the firearm is analogous to requiring the in-person appearance of the registrant.") (citing *Heller IV*, 801 F.3d at, 277.).[9] The D.C. Circuit, however, expressly rejected that argument and struck the in-person registration requirement:

---

[9] In citing *Heller IV* and then citing the same passage from *Heller III* on the following page of its brief, Hawaii misleadingly gives the impression that the D.C. Circuit found that argument persuasive. It did not.

>Yet common sense suggests a person would not go to the trouble of obtaining a registration certificate for a weapon other than a weapon in his possession. ***On the contrary, common sense suggests that bringing firearms to the [police station] would more likely be a threat to public safety***; as Heller maintains, there is a "risk that the gun may be stolen en route or that the [would-be registrant] may be arrested or even shot by a police officer seeing a 'man with a gun' (or a gun case)."

*Heller IV*, 801 F.3d at, 277 (emphasis added) (second alteration in original).

2. Hawaii's attempts to distinguish *Heller IV* miss the mark. It first says that Hawaii "law prohibits certain types of firearms and accessories," and therefore in-person registration is necessary to ensure that the firearm can be lawfully owned. Hawaii Br. at 48–50. District of Columbia law also outlaws certain types of firearms. D.C. Code § 7-2502.02. So this cannot be a meaningful distinction between the cases. But even worse for Hawaii, state law requires the transferor to provide the issuing agency with the firearms information within 48 hours of the transfer. Haw. Rev. Stat. § 134-2(f). And the purchaser must also provide the issuing agency with this same information when registering the firearm, Haw. Rev. Stat. § 134-3(b), and when applying for a handgun permit. *See* n.3 *supra*. The agency therefore has this data already from two separate inputs and can readily identify whether the registrant is trying to acquire or register an illegal firearm.

Hawaii next claims that the in-person registration requirement is necessary to regulate "ghost guns," which it claims were not a problem in 2015, when *Heller IV* was decided. Hawaii Br. at 53. That argument does not hold up. The in-person

registration requirement was not implemented as a tool to regulate "ghost guns." The district court correctly noted that "while the legislature made two amendments specifically related to "ghost guns," the amendment to require in-person inspection and registration appears unrelated." *Yukutake*, 554 F. Supp. 3d at 1089 n.15. Because the in-person registration requirement is unrelated to "ghost guns," it must be related to the general purpose of the statute: "to '[a]mend certain requirements relating to firearms registration.'" *Id.* (citation omitted) (alteration in original). Thus, the true motive of the legislature here is to continue to control how people exercise their rights.

The final argument Hawaii makes is that this in-person registration and inspection is necessary because people may mistakenly transcribe the serial number incorrectly. Hawaii Br. at 54. But, as mentioned above, the serial number is transcribed at multiple points throughout the process: (1) for handguns, the purchaser supplies it when applying for the permit; (2) all transactions require the transferor to submit the serial number in writing within 48 hours of the transfer; and (3) the purchaser must supply the serial number when registering the firearm. Furthermore, if the purchase is made from a federally licensed firearms dealer, the serial number must also be recorded one more time in their acquisition and disposition book. 27 C.F.R. § 478.125(e). With all these separate eyes looking over the transcription of the serial number at different stages, it is no wonder that Hawaii could

not show "that inaccurate registration was a problem affecting public safety (**_or even a problem at all_**)." *Yukutake*, 554 F. Supp. 3d at 1089 (emphasis added).

Because there is no problem, there can be no important government interest to be served here. Nor is there any evidence, let alone substantial evidence, showing that the in-person registration requirement addresses the non-problem. Hawaii again failed to satisfy its burden.

*   *   *

The common theme with the challenged provisions is that they were not enacted to solve a problem. Instead, they create problems. They were enacted to make acquiring a firearm—a fundamental constitutional right—more difficult. And Hawaii provided no evidence justifying these restrictions, thereby failing to meet its burden under any form of heightened scrutiny. The provisions cannot stand.

## CONCLUSION

For the forgoing reasons, the decision below should be affirmed.

Date: May 2, 2022                  Respectfully submitted:

*/s/ Michael T. Jean*
Michael T. Jean, MI Bar No. p76010
National Rifle Association of America –
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA, 22030
703-267-1158
MJean@nrahq.org

22

*Attorney for Amicus Curiae National Rifle Association of America*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-1675

I am the attorney or self-represented party.

**This brief contains** | 5,318 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated          .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Michael T. Jean    **Date** | 5-2-22

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**             *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on May 02, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Date: May 02, 2022                    */s/ Michael T. Jean*
                                      Michael T. Jean

                                      *Attorney for Amicus Curiae the*
                                      *National Rifle Association of America*