No. 21-16756

In the
United States Court of Appeals for the Ninth Circuit

TODD YUKUTAKE AND DAVID KIKUKAWA,
*Plaintiffs-Appellees*,
v.
HOLLY T. SHIKADA, in her Official Capacity
as the Attorney General of the State of Hawai'i,
*Defendant-Appellant,*
and
CITY AND COUNTY OF HONOLULU,
*Defendant*.

On Appeal from the
United States District Court for
the District of Hawaii

**Supplemental Brief *Amicus Curiae* of Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Heller Foundation, Oregon Firearms Federation, Tennessee Firearms Association, Virginia Citizens Defense League, Grass Roots North Carolina, America's Future, Inc., Conservative Legal Defense and Education Fund, and Restoring Liberty Action Committee in Support of Plaintiffs-Appellees and Affirmance**

JOHN I. HARRIS
  SCHULMAN, LEROY &
BENNETT, P.C.
  3310 West End Avenue, Ste. 460
  Nashville, TN 37203

JOSEPH W. MILLER
  LAW OFFICES OF JOSEPH
  MILLER, LLC
  P.O. Box 83440
  Fairbanks, AK  99708

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356- 5070
  wjo@mindspring.com
*Attorneys for Amici Curiae*
*Attorney of Record
September 19, 2022

## DISCLOSURE STATEMENT

The *amici curiae* herein, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Heller Foundation, Oregon Firearms Federation, Tennessee Firearms Association, Virginia Citizens Defense League, Grass Roots North Carolina, America's Future, Inc., Conservative Legal Defense and Education Fund, and Restoring Liberty Action Committee, through their undersigned counsel, submit this Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A).  These *amici curiae* are non-stock, nonprofit corporations, except for Restoring Liberty Action Committee, which is an educational organization, none of which has any parent company, and no person or entity owns them or any part of them.

The *amici curiae* are represented herein by Jeremiah L. Morgan, who is counsel of record; William J. Olson and Robert J. Olson, of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia  22180-5615.  These *amici* are also represented herein by:  John I. Harris of Schulman, Leroy & Bennett, P.C., 3310 West End Avenue, Nashville, Tennessee  37203; and Joseph W. Miller of Law Offices of Joseph Miller LLC, Fairbanks, Alaska  99708.

____s/Jeremiah L. Morgan____
Jeremiah L. Morgan

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

I.    THE ORIGIN OF THE JUDGE-EMPOWERING, INTEREST BALANCING
      TWO-STEP TEST IN THE NINTH CIRCUIT . . . . . . . . . . . . . . . . 4

II.   THE FAITHFUL APPLICATION OF *BRUEN* TO *YUKUTAKE* COULD NOT
      BE MORE SIMPLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  THE DISTRICT COURT RULINGS ON THE ABSENCE OF HISTORICAL
      ANALOGUES FOR THE CHALLENGED STATUTES ARE FULLY
      CONSISTENT WITH *BRUEN* . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   PUTTING *YUKUTAKE* INTO THE CONTEXT OF NINTH CIRCUIT
      REMANDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    BEFORE *BRUEN*, THE SUPREME COURT WARNED LOWER COURTS
      NOT TO DEFY THE *HELLER* AND *MCDONALD* DECISIONS . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

Page

**UNITED STATES CONSTITUTION**
Amendment II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, *passim*

**STATUTES**
18 U.S.C. § 922(g)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Hawaii Revised Statutes § 134-2. . . . . . . . . . . . . . . . . . . . . . . 1, 9
Hawaii Revised Statutes § 134-3. . . . . . . . . . . . . . . . . . . . . . 2, 10

**CASES**
*Caetano v. Massachusetts*, 577 U.S. 411 (2016) . . . . . . . . . . . . . . 16, 17
*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . 4, 11, 17
*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) . . . . . . . . . . . . . . . . . 12
*Duncan v. Bonta*, 2022 U.S. LEXIS 3233 (June 30, 2022) . . . . . . . . . . . . 12
*McDonald v. Chicago*, 561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . 4, 11
*New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111
 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, *passim*
*United States v. Chapman,* 666 F.3d 220 (4th Cir. 2012) . . . . . . . . . . . . 7
*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . 4, 5, 6
*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) . . . . . . . . . . . . . . . 2, *passim*
*Young v. Hawaii*, 2022 U.S. LEXIS 3235 (June 30, 2022) . . . . . . . . . . . . 12
*Young v. Hawaii*, 2022 U.S. App. LEXIS 23140 (9th Cir. 2022) . . . . . . . . 13

## INTEREST OF *AMICI CURIAE*[1]

Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Heller Foundation, Oregon Firearms Federation, Tennessee Firearms Association, Virginia Citizens Defense League, Grass Roots North Carolina, America's Future, Inc., and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code. Restoring Liberty Action Committee is an educational organization. Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of law.

These *amici* also filed an *amicus* brief in this case on the merits on May 2, 2022.

## STATEMENT OF THE CASE

On October 24, 2019, Plaintiffs Todd Yukutake and David Kikukawa filed suit challenging two Hawaii restrictions on firearm ownership. In Hawaii, permits to acquire handguns are valid only for one purchase and expire in 10 days. *See* Hawaii Revised Statutes (H.R.S.) § 134-2(e). Additionally, Hawaii

---

[1] All parties have consented to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

requires owners to personally bring newly acquired firearms to the police station for registration. *See* H.R.S. § 134-3(c). Plaintiffs alleged that both restrictions were unconstitutional. Hawaii defended the constitutionality of both provisions, arguing that intermediate scrutiny should be applied by the court.

On August 16, 2021, the district court granted summary judgment for Plaintiffs, while denying summary judgment to Defendants. *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1079, 1080-91 (D. Haw. 2021). Drawing from this Court's test in *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), the district court determined that the 10-day permit use period was not "longstanding," and thus not "presumptively valid." *Yukutake* at 1083. The court determined that intermediate scrutiny applied, but determined that the provision failed to survive intermediate scrutiny. *Id*. at 1083-84.

The district court also found the in-person registration requirement not to be longstanding, applied intermediate scrutiny, and struck it down, finding that Hawaii failed to provide "'*reasonable* inferences based on *substantial* evidence' that the statute[] [was] substantially related to the governmental interest" of public safety. *Id*. at 1088 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015)).

On September 23, 2021, the Court granted Hawaii's request for a stay pending appeal of the order striking down the 10-day permit use provision, but denied a stay of the order striking down the in-person registration requirement. *See* Opening Brief of Defendant-Appellant Holly T. Shikada at 5.

Following the completion of briefing in this Court, but before oral argument, the Supreme Court decided *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), which expressly rejected the Second Amendment two-step test that had been adopted by this Court and other federal courts following *Heller* and *McDonald*. This Court denied appellant's request to have this case remanded to the district court, and instead ordered simultaneously filed supplemental briefs addressing the *Bruen* decision.

## STATEMENT

These *amici* filed a brief in this court on May 2, 2022. The thrust of that brief was that although the district court had reached the correct result applying this Court's decision in *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), the Second Amendment should not be subjected to this Court's convoluted, two-step balancing test. As Justice Scalia has explained, "the people" did the balancing when they ratified the Second Amendment, which bars all government

3

infringements.  *See District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008).

Accordingly, these *amici* urged this Court to discard its flawed, multi-tiered

balancing approach and faithfully apply the Supreme Court's *Heller* and

*McDonald v. Chicago*, 561 U.S. 742 (2010) decisions, which also would result

in the two laws being enjoined.

With its *Bruen* decision, the Supreme Court rejected the two-step balancing

test and has mandated the type of review that these *amici* had recommended.

## ARGUMENT

### I.   THE ORIGIN OF THE JUDGE-EMPOWERING, INTEREST BALANCING TWO-STEP TEST IN THE NINTH CIRCUIT.

There are many lessons that the lower courts must take from the *Bruen*

decision — but the most fundamental is its unequivocal prohibition on use of the

two-step test: "Today, we decline to adopt that two-part approach….  Despite the

popularity of this two-step approach, it is one step too many…."  *Bruen* at 2126-

27.  Another look should be given to the history of this test to ensure no aspect

of that test creeps back into this Court's jurisprudence.

The two-step test was not invented in the Ninth Circuit, but it has been

used in this Circuit since 2013.  In *United States v. Chovan*, 735 F.3d 1127 (9th

Cir. 2013), the Court considered a Second Amendment challenge to 18 U.S.C.

4

§ 922(g)(9), prohibiting firearm possession by those convicted of misdemeanor crimes of domestic violence ("MCDV").  The two-step test appears to have been adopted in this criminal case by default, perhaps in part because the defendant was represented not by any organization focused on winning Second Amendment cases based on the correct analysis, but rather by Federal Defenders less focused on the test employed.  In *Chovan*, the "appellant d[id] not argue [against] the familiar 'scrutiny' tests … of our sister circuits … but [rather] accepts it." *Id.* at 1142-3 (Bea, J., concurring).  The *Chovan* panel did not conduct any analysis of the propriety of the two-step interest balancing test or consider other approaches before adopting "the two-step Second Amendment inquiry undertaken by the Third Circuit in *Marzzarella* … and the Fourth Circuit in *Chester*." *Id.* at 1136 (Bea, J., concurring).

Its adoption was questioned at the time, however.  Judge Bea, concurring, noted that the majority treated the framework issue not so much decided as "waived" — "accept[ing] the application of the tiers of scrutiny," but pointing out competing frameworks for Second Amendment analysis, such as by then-Judge Kavanaugh ("'text, history, and tradition'") and commentators who note that interest balancing tests "'don't make sense here' in the Second Amendment

context because the language of *Heller* seems to foreclose scrutiny analysis." *Id.* at 1143 (Bea, J., concurring).

Applying the two-step test, the *Chovan* Court concluded that the right of a person convicted of an MCDV to have a firearm "'is not within the core right identified in *Heller* — the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense....'" *Id.* at 1138. Nevertheless, the Court concluded that "[t]he burden ... is quite substantial," because it "amounts to a 'total prohibition'" of his right to keep and bear arms. Applying intermediate scrutiny to this non-core-but-severe-burden statute, the Court recited the "important ... government interest of preventing domestic gun violence," and concluded that prohibiting those convicted of an MCDV from having firearms could further that interest. *Id.* at 1139-1141.

This two-step test has been applied to literally dozens of Second Amendment challenges during the intervening years, but, unlike *Yukutake*, almost always resulted in the challenged law being upheld.

## II.    THE FAITHFUL APPLICATION OF *BRUEN* TO *YUKUTAKE* COULD NOT BE MORE SIMPLE.

In *Bruen*, the U.S. Supreme Court made clear that the two-step test used by this Court in *Yukutake* was no longer permitted: "Despite the popularity of

this two-step approach, it is one step too many...." *Bruen* at 2127. The Court set out the test to be used by reviewing courts:

> In the years since, the Courts of Appeals have coalesced around a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.
> Today, **we decline to adopt that two-part approach**. In keeping with *Heller*, we hold that when the Second Amendment's **plain text covers an individual's conduct**, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, **the government must demonstrate** that the regulation is **consistent with this Nation's historical tradition** of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961). [*Bruen* at 2125-26 (emphasis added).]

Although step one of the discredited two-part test allowed courts to claim that many firearms restrictions fell "outside the scope of the right as originally understood" — if there was any historical antecedent to the restrictions — that often led to a finding that the right did not even implicate the Second Amendment, or that the court would casually "assume" without determining that it did.[2] *Bruen*, correctly, elevates the Constitution's text to first place, so that lower courts may not continue to allow infringements on gun rights.

---

[2] *See, e.g., United States v. Chapman,* 666 F.3d 220, 226 (4th Cir. 2012).

7

There is to be no means-end scrutiny, nothing gained from endless recitations of the dangers and risks of firearms. *Bruen* at 2125-26. There is no deference to the legislative branch whatsoever, because "while that judicial deference to legislative interest balancing is understandable — and, elsewhere, appropriate — it is not deference that the Constitution demands here. The Second Amendment 'is the very *product* of an interest balancing by the people….'" *Bruen* at 2131 (citing *Heller* at 635).

The only issue to decide is whether Hawaii has acted consistent with the text "shall not be infringed," and "demonstrate[d] that the regulation is **consistent with this Nation's historical tradition** of firearm regulation." *Id*. at 2126 (emphasis added).

## III. THE DISTRICT COURT RULINGS ON THE ABSENCE OF HISTORICAL ANALOGUES FOR THE CHALLENGED STATUTES ARE FULLY CONSISTENT WITH *BRUEN*.

Under this Circuit's two-step test under *Young*, the historical pedigree of a law is considered at step one, and this is where the district court below considered it. The district court identified the question to be addressed as:

whether the law 'is **[i]** one of the presumptively lawful … measures identified in *Heller*, **or [ii]** whether the record includes persuasive historical evidence establishing that the [law] at issue imposes prohibitions that fall outside the historical scope of the Second

8

Amendment.' [*Yukutake* at 1081 (citations omitted) (emphasis added).]

There was no serious claim that the Hawaii registration requirements were "presumptively lawful" restrictions, such as "'bans on possession by felons and the mentally ill; bans on possession in sensitive places; and regulations on the commercial sale of firearms.'" *Id.* at 1081 (citation omitted). Thus, the district court focused on the historical pedigree of the two challenged laws, reviewing defendant's claims that both statutes were longstanding and thus presumptively valid.

With respect to H.R.S. § 134-2(e) — the 10-Day Permit Use Period — Hawaii asserted that this was a "'condition[] and qualification[] on the commercial sale of arms' that 'dates back to 1933-1934'" and there were "'similar laws' that were passed in four other states…" during the same period. *Id.* at 1082. The district court concluded "a handful of similar laws from the 1930s, without more, is insufficient to establish … a 'longstanding' historical tradition of 'presumptively lawful' firearm prohibitions." *Id.* (citing *Young*). The analytical approach applied by the district court (*id.* at 1082-83) will not be repeated here.

9

As to the other statute being challenged — H.R.S. § 134-3(c) — the In-Person Inspection and Registration Requirement — Hawaii and its *amici* similarly argued that this law was longstanding as part of the "registration process" dating back to 1907 and 1919. *Id*. at 1086. The district court concluded that "the Government has provided absolutely no evidence suggesting that in-person inspection and registration was historically understood as an appropriate regulation on the right to bear arms." *Id*. The district court likewise brushed aside tenuous claims about militia laws providing a historical analogue offered by an anti-gun *amicus* seeking to supplement Hawaii's deficient showing. *Id*. at 1087.

The question posed by this Court for supplemental briefing comes down to whether the *Bruen* decision changed the way that historical analogues were to be viewed that was different from the approach under *Young*, and applied by the district court below. It did not. Actually, *Bruen* has made it even more clear that the district court got it right.

The *Bruen* Court explained the manner in which courts are to review the historical analogue of a statute, as follows:

10

1. The *Bruen* Court first established that it was following the *Heller* and *McDonald* decisions, and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

2. The *Bruen* Court categorized five different types of historical evidence: "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." *Id*. at 2135-36. Here, Hawaii has offered evidence that only fits into the fifth category.

3. With respect to that fifth category of historical evidence, *Bruen* indicates that it is the least significant, because "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154.

Although *Bruen* was of profound importance in that it prohibited continued use of the two-step test, it only serves to demonstrate that the approach taken by the district court on both statutes was correct. Since the approach taken by the district court in determining historical analogues is consistent with *Bruen*, and there is no reason to reconsider those findings, there is every reason for this

11

court to simply affirm the district court opinion — albeit without use of the two-step test.

## IV. PUTTING *YUKUTAKE* INTO THE CONTEXT OF NINTH CIRCUIT REMANDS.

When *NYSRPA v. Bruen* was decided on June 23, 2022, not just one case, but two of this Court's *en banc* Second Amendment decisions then were pending before the U.S. Supreme Court on petitions for writ of certiorari. *See Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) *(en banc)*, and *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (*en banc*). Shortly after the Supreme Court issued its decision in *Bruen*, it granted, vacated, and remanded those two petitions for writ of certiorari back to this Court. *See Duncan v. Bonta*, 2022 U.S. LEXIS 3233 (June 30, 2022) and *Young v. Hawaii*, 142 S. Ct. 2895 (June 30, 2022).

*Duncan v. Bonta* **(No. 19-55376).** Following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen* on June 23, 2022, it granted the petition for writ of certiorari, vacated this Court's *en banc* decision, and remanded to this Court. That remand led to the *en banc* panel's request on August 2, 2022 for supplemental briefing about "the effect of *Bruen* on this appeal, including whether the en banc panel should remand this case to

12

the district court for further proceedings in the first instance." The *en banc* panel has not issued a decision following the submission of supplemental briefs.

*Young v. Hawaii* **(No. 12-17808).** The *en banc* court which heard the *Young* case has already remanded the case to the district court in Hawaii. Dissenting from the remand, Judge O'Scannlain stated that the Court failed to answer the simple question before it. Instead, the Court's choice "delays the resolution of this case, wastes judicial resources, and fails to provide guidance to the lower courts of our Circuit." *Young v. Hawaii*, 2022 U.S. App. LEXIS 23140, *8 (9th Cir. 2022) (O'Scannlain, J., dissenting). Judge O'Scannlain, joined by three other judges from the *en banc* panel, explained application of the Second Amendment and *Bruen* to that case and concluded that "We are bound, now, by *Bruen*, so there is no good reason why we could not issue a narrow, unanimous opinion in this case. The traditional justifications for remand are absent here. The issue before us is purely legal, and not one that requires further factual development." *Id*. at *16-17.

There are other cases in similar postures.

*Rhode v. Bonta* **(No. 20-55437).** In *Rhode*, the three-judge panel heard oral argument on November 9, 2020, after which the case was held in abeyance

13

pending the resolution of *Duncan*. Following the Supreme Court's remand of *Duncan*, this court vacated its abeyance and directed supplemental briefing in light of *Bruen*. *See Rhode v. Bonta*, No. 20-55437, order of June 24, 2022. There, the three-judge panel did not remand it to the district court to consider application of *Bruen*. Appellees' supplemental brief is now due on September 22, 2022.

**Miller v. Bonta (No. 21-55608).** Last year, the three-judge panel considering *Miller* stayed the briefing schedule in that case pending resolution of the appeal in *Rupp v. Bonta*, a case which involved a challenge to the same law at issue in *Miller*. Following the *Bruen* decision, the panel granted California's motion to remand to the Southern District of California, which has ordered supplemental briefing in light of *Bruen*. *See Miller v. Bonta*, No. 21-55608, order of August 1, 2022.

**Jones v. Bonta (No. 20-56174).** Earlier this year, a three-judge panel struck down California's ban on possession of firearms by adults aged 18 to 20 years. California filed a petition for rehearing *en banc* after the *Bruen* decision, and on September 7, 2022, this Court granted rehearing and summarily reversed

and remanded to "the district court for further proceedings consistent with" *Bruen*.

**Rupp v. Bonta (No. 19-56004).** The appeal in *Rupp* had been held in abeyance by a panel pending a decision in *Bruen*, and following that decision, the panel vacated the district court opinion and remanded to the Central District of California for consideration consistent with *Bruen*. *See Rupp v. Bonta*, No. 19-56004, order of June 28, 2022.

**Flanagan v. Becerra (No. 18-55717).** On July 30, 2019, this Court stayed proceedings in *Flanagan* pending resolution of *Young v. Hawaii*. As of the date of the filing of this brief, the Court has not lifted the stay.

These *amici* agree with this Court's decision for supplemental briefing in light of *Bruen* and its indication that it will rule on the challenge without remand to the district court. With facts not in dispute, it is a purely legal matter to consider whether Hawaii's statutes at issue here are consistent with the Second Amendment applying the test laid out in *Bruen*. Deciding this case now will promote judicial efficiency and provide guidance to the lower courts and other panels of this Court in handling the cases identified above, as well as others that

15

will come, especially if the *en banc* panel in *Duncan* decides to remand before applying *Bruen*.

## V. BEFORE *BRUEN*, THE SUPREME COURT WARNED LOWER COURTS NOT TO DEFY THE *HELLER* AND *MCDONALD* DECISIONS.

The one significant Supreme Court Second Amendment case decided since *Heller* and *McDonald* was the Court's unanimous *per curiam* decision in *Caetano v. Massachusetts*, 577 U.S. 411 (2016). There the Court ruled that a stun gun was a Second Amendment-protected arm. *Caetano* reiterated many of the important principles of *Heller* and *McDonald* as it rejected in summary fashion the three reasons given by the Massachusetts courts for upholding the ban. First, it rejected the rationale that stun guns "'were not in common use at the time of the Second Amendment's enactment,'" as being "inconsistent with *Heller*'s clear statement that the Second Amendment 'extends … to … arms … that were not in existence at the time of the founding.'" *Caetano* at 411-12. Second, it rejected the claim that stun guns were "'dangerous'" and were "'unusual weapons'" because they are "'a thoroughly modern invention.'" *Id*. at 412. The Court found unpersuasive the lower court's equating "'unusual'" with "'not in common use at the time of the Second Amendment's enactment.'" *Id*. Third, the

16

Supreme Court found that the Massachusetts rationale that stun guns were not "'readily adaptable to use in the military'" violated *Heller*, which rejected the proposition "'that only those weapons useful in warfare are protected.'" *Id*.

A concurrence by Justice Alito, joined by Justice Thomas, stated the obvious — that the Massachusetts court's "reasoning **defies** our decision in *Heller*, which rejected as 'bordering on the frivolous' the argument 'that only those arms in existence in the 18th century are protected by the Second Amendment.' … Although the Supreme Judicial Court **professed to apply** *Heller*, each step of its analysis **defied *Heller*'s** reasoning…. The lower court's ill treatment of *Heller* cannot stand. The reasoning of the Massachusetts court poses a grave threat to the fundamental right of self-defense." *Id*. at 414-15, 421 (emphasis added). Accusing a lower court of intentional **defiance** of Supreme Court precedent is strong stuff, and hopefully it will never again be needed in the aftermath of *Bruen*.

## CONCLUSION

For the foregoing reasons, based on *Bruen* and the findings made by the district court as to the absence of any historical analogue, the decision of the district court should be affirmed.

17

Respectfully submitted,

 /s/ Jeremiah L. Morgan

JOHN I. HARRIS                          JEREMIAH L. MORGAN*
 SCHULMAN, LEROY & BENNETT, P.C.        WILLIAM J. OLSON
 3310 West End Avenue                   ROBERT J. OLSON
 Suite 460                               WILLIAM J. OLSON, P.C.
 Nashville, TN 37203                     370 Maple Avenue W., Suite 4
                                         Vienna, VA 22180-5615
JOSEPH W. MILLER                         (703) 356-5070
 LAW OFFICES of JOSEPH MILLER, LLC
 P.O. Box 83440                         *Attorney of Record
 Fairbanks, AK 99708                    *Attorneys for Amici Curiae*
                                        September 19, 2022

18

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Supplemental

Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.*, in Support of

Plaintiffs-Appellees and Affirmance, was made, this 19th day of September 2022,

by the Court's Case Management/ Electronic Case Files system upon the

attorneys for the parties.

  /s/Jeremiah L. Morgan    
Jeremiah L. Morgan
Attorney for *Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-16756

I am the attorney or self-represented party.

**This brief contains** | 3,471 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | Aug 18, 2022 | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jeremiah L. Morgan | **Date** | Sep 19, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/2018*