No. 21-16756

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TODD YUKUTAKE, and DAVID KIKUKAWA,
*Plaintiffs-Appellees,*

v.

ANNE E. LOPEZ, in her Official Capacity
as the Attorney General of the State of Hawai'i,
*Defendant-Appellant,*[1]

and

CITY AND COUNTY OF HONOLULU,
*Defendant*.[2]

On Appeal from the United States District Court for the District of Hawai'i
Honorable J. Michael Seabright, United States District Judge
(Civil No. 1:19-cv-00578 JMS-RT)

## DEFENDANT-APPELLANT'S MOTION TO DISMISS FOR MOOTNESS

## DECLARATION OF ROBERT T. NAKATSUJI

## EXHIBITS "A"-"C"

## CERTIFICATE OF SERVICE

---

[1] ANNE E. LOPEZ succeeded HOLLY T. SHIKADA as Attorney General of the State of Hawai'i and is automatically substituted as a party pursuant to Fed. R. App. P. 43(c)(2).

[2] Defendant CITY AND COUNTY OF HONOLULU was dismissed with prejudice by stipulation in the District Court on June 12, 2020. 3-ER-440-444 (ECF 53).

ANNE E. LOPEZ                    7609
  Attorney General of the State of
  Hawai'i

ROBERT T. NAKATSUJI            6743
  First Deputy Solicitor General
CARON M. INAGAKI               3835
KENDALL J. MOSER               6515
  Deputy Attorneys General
Dept. of the Attorney General
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1360
E-mail:  Robert.T.Nakatsuji@hawaii.gov
         Caron.M.Inagaki@hawaii.gov
         Kendall.J.Moser@hawaii.gov

Counsel for Defendant-Appellant ANNE E. LOPEZ, in her
Official Capacity as the Attorney General of the State of Hawai'i

## <u>DEFENDANT-APPELLANT'S MOTION TO DISMISS FOR MOOTNESS</u>

Defendant-Appellant ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawai'i ("Defendant"), respectfully requests that this Court dismiss the instant appeal on mootness grounds, vacate the District Court's judgment, and remand the case to the District Court to dismiss the complaint. The Hawai'i Legislature has passed a bill that repeals the provisions of Hawai'i law at issue in this case. When signed by the Governor, this bill will moot the controversy in this case. Consequently, upon this Court receiving confirmation of the Governor's signature, this appeal and this case should be dismissed as moot.

## I.     BACKGROUND

In this case, Plaintiffs-Appellees TODD YUKUTAKE and DAVID KIKUKAWA ("Plaintiffs") challenged portions of two Hawai'i firearm statutes: (1) a provision in Hawai'i Revised Statutes § 134-2(e) that established a ten-day expiration date for permits to acquire handguns; and (2) a provision in Section 134-3(c) that required the in-person inspection of all firearms (except those held by licensed dealers) at the time of registration. On August 16, 2021, the District Court issued its Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Counter Motion for Summary Judgment. August 16, 2021 Order, 1-ER-041-073. The District Court declared the challenged portions of Sections 134-2(e) and 134-3(c) unconstitutional and enjoined Defendant's officers, agents,

servants, employees, and all persons in active concert with Defendant from enforcing them. *Id.* Judgment was entered on September 23, 2021. Judgment, 1-ER-003.

Defendant filed a Notice of Appeal on October 14, 2021. Notice of Appeal, 3-ER-469-475. On February 22, 2022, Defendant filed her Opening Brief. Opening Brief, DktEntry 16. On April 25, 2022, Plaintiffs filed their Answering Brief. Answering Brief, DktEntry 23. On May 13, 2022, Defendant filed her Reply Brief. Reply Brief, DktEntry 40.

On June 23, 2022, the U.S. Supreme Court issued its decision in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142, S. Ct. 2111 (2022).

On August 18, 2022, the Ninth Circuit issued its Order denying Defendant's request for remand and ordering the parties to submit supplemental briefs addressing *Bruen*, not to exceed 10,000 words and within 30 days. DktEntry 49. On September 16, 2022, Plaintiffs filed their Supplemental Brief. DktEntry 50. On September 19, 2022, Defendant filed her Supplemental Brief. DktEntry 52. On February 14, 2023, the Ninth Circuit held oral argument in this case.

On May 2, 2023, the Hawai'i Legislature passed Senate Bill ("SB") 1230, 32nd Leg., Reg. Sess. (2023). *See* SB 1230 (Exhibit "A"). *See also* Measure Status for SB 1230 (Exhibit "B"). Among other things, SB 1230 amends Section 134-2(e) to change the expiration date for permits to acquire handguns from ten

days to thirty days.  *See* SB 1230, § 4 at 25-26.  SB 1230 also amends Act 30, Session Laws of Hawaiʻi 2022.  *See* SB 1230, § 13 at 75.  Act 30 repealed the provision in Section 134-3(c) that required the in-person inspection of all firearms (except those held by licensed dealers) at the time of registration and replaced it with inspections in only three limited circumstances.[3]  *See* Act 30, § 2 at 9-14 (Exhibit "C").  As originally enacted, Act 30, contained a "sunset" provision that would have automatically repealed the amendments after three years and reinstated the prior law.[4]  *See* Act 30, § 5 at 15.  SB 1230, however, repeals the "sunset" provision and makes the amendments in Act 30 permanent.  *See* SB 1230, § 13 at 75.  Consequently, the provisions of Hawaiʻi law challenged by Plaintiffs are now being permanently repealed by SB 1230.

SB 1230 still must be signed by the Governor.  However, it has been passed by both houses of the Legislature and has been transmitted to the Governor for signature.  *See* Measure Status for SB 1230.  The Governor has until July 11, 2023 to sign it.  *See* Haw. Const. art. III, § 16.  Defendant can and will file confirmation that the Governor has signed SB 1230 when it occurs.

---

[3] Instead of inspections being required for all firearms held by non-dealers, Act 30 required inspections only for "ghost guns," firearms being brought from out of state, and firearms being transferred in private transactions.  Act 30, § 2 at 9-14.

[4] Act 30 was originally intended only to reinstate limited in-person inspection on a temporary basis while the instant lawsuit was pending.  The three-year "sunset" provision was included for that reason.  *See* Act 30, § 1 at 5.

## II.    ARGUMENT

### A.    This Case is Moot Because SB 1230 is Repealing the Challenged Provisions of Hawai'i Law.

"A federal court's jurisdiction is limited to cases or controversies." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). These requirements ensure that federal courts exercise jurisdiction only over "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

"If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016-17 (9th Cir. 2012). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012).

"[T]he Supreme Court and [the Ninth Circuit] have repeatedly held that a case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language.  Where there is nothing left of a challenged law to enjoin or declare illegal, further judicial action would necessarily be advisory and in violation of the limitations of Article III."  *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019) (citation omitted).  "[I]n determining whether a case is moot, we . . . presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it."  *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).  "[A] determination that such a reasonable expectation exists must be founded in the record, as it was in *City of Mesquite [v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)], rather than on speculation alone."  In *City of Mesquite*, the "city had revised a challenged ordinance but was reasonably expected to reenact offending provisions because it had announced its intention to do so."  *Board of Trustees*, 941 F.3d at 1198 (citing *City of Mesquite*, 455 U.S. at 289 & n.11).

"To test whether subsequent developments have mooted a suit, we ask whether the claim could have been brought 'in light of the . . . statute as it now stands.'"  *Rocky Mountain Farmers Union*, 913 F.3d at 949.  If a case becomes

5

moot on appeal, the appellate court should "dismiss this appeal as moot and remand to the district court with instructions to . . . dismiss the complaint[.]" *Board of Trustees*, 941 F.3d at 1200.

In the instant case, Plaintiffs challenged the provision in Section 134-2(e) that imposed a ten-day expiration date for permits to acquire handguns. Specifically, Plaintiffs challenged the language stating: "[p]ermits issued to acquire any pistol or revolver [i.e., handguns] shall be void unless used within ten days after the date of issue." *See* 1-ER-043. SB 1230 amends that provision so as to change it from a ten-day deadline to a thirty-day deadline. *See* SB 1230, § 4 at 25-26. SB 1230 amends the language in the statute as follows: "Permits issued to acquire any pistol or revolver shall be void unless used within [ten] thirty days after the date of issue." *See* SB 1230, § 4 at 25-26. Consequently, the challenged ten-day deadline is being repealed and there will be nothing left of it.

Plaintiffs also challenged the provision in Section 134-3(c) that required the in-person inspection of all firearms (except those held by licensed dealers) at the time of registration. Specifically, Plaintiffs challenged the language stating that all non-dealer firearms "shall be physically inspected by the respective county chief of police or the chief's representative at the time or registration." *See* 1-ER-043. In 2022, Act 30 temporarily repealed that provision for three years, but it also provided for the prior law to be reinstated at the end of that period. *See* Act 30, § 5

at 15.  Act 30 amended Section 134-3(c) as follows:  "[All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration.]"  *See* Act 30, § 2 at 14.  But Act 30 also provided:  "This Act shall take effect upon its approval; provided that on June 30, 2025, section 2 of this Act shall be repealed and section 134-3, Hawaii Revised Statutes, shall be reenacted in the form in which it read on the day before the effective date of this Act."  *See* Act 30, § 5 at 15.  For this reason, Act 30 did not immediately moot the instant case. Because there was "a reasonable expectation that the legislative body will reenact the challenged provision[,]" *Board of Trustees*, 941 F.3d at 1199, as originally written, Act 30 did not moot this appeal.

However, the enactment of SB 1230 has significantly changed the situation. SB 1230 repeals the "sunset" provision in Act 30.  *See* SB 1230, § 13 at 75.  SB 1230 provides in relevant part:

> Act 30, Session Laws of Hawaii 2022, is amended by amending section 5 to read as follows:
> "SECTION 5.  This Act shall take effect upon its approval[, provided that on June 30, 2025, section 2 of this Act shall be repealed and section 134-3, Hawaii Revised Statutes, shall be reenacted in the form in which it read on the day before the effective date of this Act]."

SB 1230, § 13 at 75.  Consequently, by repealing the "sunset" provision in Act 30, SB 1230 makes the repeal of the challenged provision in Section 134-3(c)

permanent.  Therefore, there will now be nothing left of the original requirement to inspect all firearms being registered by non-dealers.

The U.S. Supreme Court has previously dismissed cases that have become moot on appeal due to legislative enactments, including firearms cases.  In *New York State Rifle and Pistol Association, Inc. v. City of New York*, 140 S. Ct. 1525 (2020), the Supreme Court vacated and remanded a case because the State of New York and the City of New York amended their firearms statutes and rules, which mooted the case.  *Id.* at 1526.

Because the challenged provisions of Hawai'i law will now be permanently repealed, this case is moot.  Plaintiffs' "claim could [not] have been brought 'in light of the . . . statute as it now stands.'"  *Rocky Mountain Farmers Union*, 913 F.3d at 949.

## B.    Plaintiffs Have No Claim for Injunctive Relief or Damages Remaining.

It is well-settled that "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  Furthermore, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Specifically, "State officers sued for

8

damages in their official capacity are not 'persons' for purposes of [§ 1983] because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  And because "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted," *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002), when a "federal claim against the State arises under 42 U.S.C. § 1983" and "that claim seeks only monetary damages," the "case does not present a valid federal claim against the State." *Id.*  The Defendant—Attorney General LOPEZ—is a state official sued in her official capacity.  Therefore, the only claim in this case would be a claim for prospective injunctive relief against Defendants under the *Ex parte Young* exception.  *See Ex parte Young*, 209 U.S. 123, 126 (1908).

The prospective injunctive relief claim in this case is becoming moot because the provisions challenged by Plaintiff are being repealed by SB 1230. Going forward, those provisions will not be enforced because they will have been repealed.  The statutes will have been "amended to remove the challenged language." *Rocky Mountain Farmers Union*, 913 F.3d at 949.

There is no indication that Plaintiffs will be harmed in any way by the new, amended provisions.  The only harm alleged by Plaintiffs under the prior provisions was that they had to take time off from work to complete the purchase of their firearms. 1-ER-055; 1-ER-066; 3-ER-403.  Plaintiffs' challenge was

specifically to the ten-day expiration date for permits to acquire. There is no indication that they will suffer the same kind of harm, or any harm at all, with a thirty-day expiration date. As for the inspection requirement, Plaintiffs' challenge was against a statute that applied to all firearms being registered by non-dealers. There is no indication that the new, narrower inspection requirement harms Plaintiffs in any way. The new, narrower inspection requirement does not apply to all firearms held by non-dealers but instead is limited to "ghost guns," firearms being brought from out of state, and firearms being transferred in private transactions. *See* Act 30, § 2 at 9-14. Nothing in the record indicates that Plaintiffs fall within these new, narrower categories. Furthermore, because the new provisions are narrower than the prior provisions, they represent the kind of "**narrow**, objective, and definite standards[,]" which are expressly permissible under *Bruen*. *See Bruen*, 142 S. Ct. at 2138 n.9 (emphasis added).

### C. The District Court's Judgment Should be Vacated.

This Court has held that:

> When a case becomes moot on appeal, the "established practice" is to reverse or vacate the decision below with a direction to dismiss. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 71, 117 S. Ct. 1055, 137 L.Ed.2d 170 (1997) (citing *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S. Ct. 104, 95 L.Ed. 36 (1950)). Vacatur in such a situation "eliminat[es] a judgment the loser was stopped from opposing on direct review." *Arizonans for Official English,* 520 U.S. at 71, 117 S. Ct. 1055. Without vacatur, the lower court's judgment, "which in the statutory scheme was only preliminary," would escape meaningful appellate review thanks to the "happenstance" of

mootness. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S. Ct. 104, 95 L.Ed. 36 (1950).  Under the "*Munsingwear* rule," vacatur is generally "automatic" in the Ninth Circuit when a case becomes moot on appeal. *Publ. Util. Comm'n v. FERC,* 100 F.3d 1451, 1461 (9th Cir.1996).

*NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1068 (9th

Cir. 2007).  Defendant also cannot be held responsible for this case becoming

moot.  The Defendant in this case is Hawaii's Attorney General.  The Hawaiʻi

Legislature is enacting SB 1230, not the Attorney General.  Therefore, the District

Court's judgment should be vacated.  Moreover, because the District Court's

decision was decided under the law prior to *Bruen*, its reasoning is obsolete and

has no value as precedent, further underscoring why vacatur is warranted.  *See id.*

at 1069 (considering the interest of the public in protecting district court

precedents).

## III.    CONCLUSION

For these reasons, Defendant respectfully requests that this Court dismiss the

instant appeal on mootness grounds, vacate the District Court's judgment, and

remand the case to the District Court to dismiss the complaint.  When signed by

the Governor, SB 1230 will moot this case.  Upon this Court receiving

confirmation of the Governor's signature, this appeal and this case should be

dismissed as moot.

DATED:  Honolulu, Hawai'i, May 4, 2023.

 s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendant-Appellant ANNE E.
LOPEZ, in her Official Capacity as the
Attorney General of the State of Hawai'i

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 27 because it contains 2,795 words and was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally-spaced typeface.

DATED:  Honolulu, Hawai'i, May 4, 2023.

 s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendant-Appellant ANNE E.
LOPEZ, in her Official Capacity as the
Attorney General of the State of Hawai'i

## DECLARATION OF ROBERT T. NAKATSUJI

Pursuant to 28 U.S.C. § 1746, I, ROBERT T. NAKATSUJI hereby declare that:

1.      I am the First Deputy Solicitor General for the State of Hawaiʻi and one of the attorneys representing Defendant-Appellant ANNE E. LOPEZ, in her Official Capacity as Attorney General of the State of Hawaiʻi ("Defendant"), in the above-entitled case.

2.      Attached as Exhibit "A" is a true and correct copy of SB 1230, 32nd Leg., Reg. Sess. (2023), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.capitol.hawaii.gov/sessions/session2023/bills/SB1230_CD1_.PDF.

3.      Attached as Exhibit "B" is a true and correct copy of the Measure Status for SB 1230, https://www.capitol.hawaii.gov/session/measure_indiv.aspx?billtype=SB&billnumber=1230&year=2023.

4.      Attached as Exhibit "C" is a true and correct copy of Act 30, Session Laws of Hawaiʻi 2022, https://www.capitol.hawaii.gov/session2022/bills/GM1130_.PDF.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Honolulu, Hawaiʻi, on May 4, 2023.

s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI

THE SENATE
THIRTY-SECOND LEGISLATURE, 2023
STATE OF HAWAII

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1    SECTION 1.  The legislature finds that there are compelling

2  interests in protecting public health, safety, and welfare from

3  the serious hazards associated with firearms and gun violence.

4  Although the United States Supreme Court has held that the

5  Second Amendment provides for an individual right to keep and

6  bear arms for lawful purposes, the Second Amendment is not "a

7  regulatory straightjacket".  *New York State Rifle & Pistol*

8  *Ass'n, Inc*. *v. Bruen*, 142 S.Ct. 2111, 2133 (2022).  States

9  retain authority to enact "a 'variety' of gun regulations", *id*.

10  at 2162 (Kavanaugh, J., concurring), such as prohibitions

11  against the carrying of firearms in sensitive locations and laws

12  and regulations designed to ensure that those who carry firearms

13  are "'law-abiding, responsible citizens'", *id*. at 2131, 2156

14  (internal citation omitted).

15    The purpose of this Act is to clarify, revise, and update

16  Hawaii's firearms laws to mitigate the serious hazards to public

17  health, safety, and welfare associated with firearms and gun

18  violence, while respecting and protecting the lawful exercise of

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   individual rights.  To accomplish this purpose, this Act amends

2   and enacts requirements and processes for obtaining a license to

3   carry a firearm, updates criteria governing when firearm

4   ownership, possession, or control is prohibited, defines

5   locations and premises within the State where carrying or

6   possessing a firearm is prohibited, prohibits leaving an

7   unsecured firearm in a vehicle unattended, and enacts, amends,

8   and clarifies other provisions relating to firearms.

9        In prohibiting carrying or possessing firearms in certain

10  locations and premises within the State, this Act is intended to

11  protect areas in which carrying or possessing dangerous weapons

12  has traditionally been restricted, such as schools and other

13  places frequented by children, government buildings, polling

14  places, and other analogous locations.

15       This Act also respects the right of private individuals and

16  entities to choose for themselves whether to allow or restrict

17  the carrying of firearms on their property by providing that

18  firearms shall not be carried on private property of another

19  person without the express authorization of the owner, lessee,

20  operator, or manager of the property.  Recognizing the risks to

21  public health, safety, and welfare associated with firearms and



EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   gun violence, and based on the legislature's assessment of

2   public sentiment and broadly shared preferences within the

3   State, this Act establishes a default rule with respect to

4   carrying firearms on private property of another person that

5   provides for private entities to "opt-in" to authorize the

6   public carry of firearms on their property.

7      This Act also adjusts certain regulatory fees relating to

8   firearms.  These adjustments are warranted because prior fee

9   amounts were established by statute decades ago and have not

10   been adjusted to reflect inflation and increased costs

11   associated with background checks and investigations.

12      SECTION 2.  Chapter 134, Hawaii Revised Statutes, is

13   amended by adding seven new sections to part I to be

14   appropriately designated and to read as follows:

15   **"§134-A  Carrying or possessing a firearm in certain**

16   **locations and premises prohibited; penalty.**  (a)  A person with

17   a license issued under section 134-9, or authorized to carry a

18   firearm in accordance with title 18 United States Code section

19   926B or 926C, shall not intentionally, knowingly, or recklessly

20   carry or possess a loaded or unloaded firearm, whether the

21   firearm is operable or not, and whether the firearm is concealed



EXHIBIT "A"

S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1  or unconcealed, while in any of the following locations and

2  premises within the State:

3     (1)  Any building or office owned, leased, or used by the

4          State or a county, and adjacent grounds and parking

5          areas, including any portion of a building or office

6          used for court proceedings, legislative business,

7          contested case hearings, agency rulemaking, or other

8          activities of state or county government;

9     (2)  Any public or private hospital, mental health

10         facility, nursing home, clinic, medical office, urgent

11         care facility, or other place at which medical or

12         health services are customarily provided, including

13         adjacent parking areas;

14     (3)  Any adult or juvenile detention or correctional

15         facility, prison, or jail, including adjacent parking

16         areas;

17     (4)  Any bar or restaurant serving alcohol or intoxicating

18         liquor as defined in section 281-1 for consumption on

19         the premises, including adjacent parking areas;

20     (5)  Any stadium, movie theater, or concert hall, or any

21         place at which a professional, collegiate, high

EXHIBIT "A"

1        school, amateur, or student sporting event is being

2        held, including adjacent parking areas;

3    (6)  All public library property, including buildings,

4        facilities, meeting rooms, spaces used for community

5        programming, adjacent grounds, and parking areas;

6    (7)  The campus or premises of any public or private

7        community college, college, or university, and

8        adjacent parking areas, including buildings,

9        classrooms, laboratories, research facilities,

10       artistic venues, and athletic fields or venues;

11   (8)  The campus or premises of any public school, charter

12       school, private school, preschool, summer camp, or

13       child care facility as defined in section 346-151,

14       including adjacent parking areas, but not including:

15       (A)  A private residence at which education is

16           provided for children who are all related to one

17           another by blood, marriage, or adoption; or

18       (B)  A dwelling when not used as a child care

19           facility;

20   (9)  Any beach, playground, park, or adjacent parking area,

21       including any state park, state monument, county park,

EXHIBIT "A"

# S.B. NO. 1230
### S.D. 2
### H.D. 1
### C.D. 1

1   tennis court, golf course, swimming pool, or other

2   recreation area or facility under control,

3   maintenance, and management of the State or a county,

4   but not including an authorized target range or

5   shooting complex;

6   (10) Any shelter, residential, or programmatic facility or

7   adjacent parking area operated by a government entity

8   or charitable organization serving unhoused persons,

9   victims of domestic violence, or children, including

10  children involved in the juvenile justice system;

11  (11) Any voter service center as defined in section 11-1 or

12  other polling place, including adjacent parking areas;

13  (12) The premises of any bank or financial institution as

14  defined in section 211D-1, including adjacent parking

15  areas;

16  (13) Any place, facility, or vehicle used for public

17  transportation or public transit, and adjacent parking

18  areas, including buses, paratransit vans, bus shelters

19  and terminals (but not including bus stops located on

20  public sidewalks), trains, rail stations, and

21  airports;

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1     (14)   Any amusement park, aquarium, carnival, circus, fair,

2           museum, water park, or zoo, including adjacent parking

3           areas; or

4     (15)   Any public gathering, public assembly, or special

5           event conducted on property open to the public,

6           including any demonstration, march, rally, vigil,

7           protest, picketing, or other public assembly, for

8           which a permit is obtained from the federal

9           government, the State, or a county, and the sidewalk

10          or street immediately adjacent to the public

11          gathering, public assembly, or special event; provided

12          that there are signs clearly and conspicuously posted

13          at visible places along the perimeter of the public

14          gathering, public assembly, or special event.

15    (b)   This section shall not apply to a person in an exempt

16 category identified in section 134-11(a).  It shall be an

17 affirmative defense to any prosecution under this section that a

18 person is:

19     (1)   Carrying or possessing an unloaded firearm in a police

20          station in accordance with section 134-23(a)(6), 134-

21          24(a)(6), or 134-25(a)(6);

EXHIBIT "A"

1     (2)  Carrying or possessing an unloaded firearm at an

2         organized, scheduled firearms show or exhibit;

3     (3)  Lawfully carrying or possessing a firearm for hunting

4         in compliance with section 134-5;

5     (4)  A private security officer expressly authorized to

6         carry or possess a weapon in a location or premises

7         listed in subsection (a) by the owner, lessee,

8         operator, or manager of the location or premises;

9         provided that the private security officer is acting

10        within the private security officer's scope of

11        employment;

12    (5)  Carrying or possessing an unloaded firearm in a

13        courthouse for evidentiary purposes with the prior

14        express authorization of the court;

15    (6)  Lawfully present within the person's own home, other

16        than a college or university dormitory or shelter or

17        residential facility serving unhoused persons or

18        victims of domestic violence;

19    (7)  Carrying a firearm pursuant to a license issued under

20        section 134-9 or in accordance with title 18 United

21        States Code section 926B or 926C in the immediate area

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1         surrounding the person's vehicle within a parking area

2         for the limited purpose of storing or retrieving the

3         firearm;

4   (8)  Possessing a firearm in an airport or any place,

5         facility, or vehicle used for public transportation or

6         public transit; provided that the firearm is unloaded

7         and in a locked hard-sided container for the purpose

8         of transporting the firearm;

9   (9)  Walking through a public gathering, public assembly,

10       or special event if necessary to access the person's

11       residence, place of business, or vehicle; provided

12       that the person does not loiter or remain longer than

13       necessary to complete their travel or business; or

14  (10)  Carrying a concealed firearm in accordance with title

15       18 United States Code section 926B or 926C in a

16       location or premises within the State that is not a

17       State or county property, installation, building,

18       base, or park, and not a location or premises where a

19       private person or entity has prohibited or restricted

20       the possession of concealed firearms on their

21       property.

EXHIBIT "A"

1    (c)  The presence of a person in any location or premises

2  listed in subsection (a) shall be prima facie evidence that the

3  person knew it was a location or premises listed in subsection

4  (a).

5    (d)  Where only a portion of a building or office is owned,

6  leased, or used by the State or a county, this section shall not

7  apply to the portion of the building or office that is not

8  owned, leased, or used by the State or a county, unless carrying

9  or possessing a firearm within that portion is otherwise

10  prohibited by this section.

11    (e)  As used in this section, "private security officer"

12  means any person employed and duly licensed to engage in the

13  private detective or guard business pursuant to chapter 463.

14    (f)  Any person who violates this section shall be guilty

15  of a misdemeanor.

16    (g)  If any ordinance of any county of the State

17  establishing locations where the carrying of firearms is

18  prohibited is inconsistent with this section or with section

19  134-E, the ordinance shall be void to the extent of the

20  inconsistency.

EXHIBIT "A"

1     §134-B   **Duty to maintain possession of license while**

2 **carrying a firearm; duty to disclose; penalty.** (a) A person

3 carrying a firearm pursuant to a license issued under section

4 134-9 or in accordance with title 18 United States Code section

5 926B or 926C shall have in the person's immediate possession:

6     (1)   The license issued under section 134-9 or

7         documentation regarding the person's qualifications

8         under title 18 United States Code section 926B or

9         926C;

10     (2)   Government-issued photo identification; and

11     (3)   Except with respect to firearms that are a part of the

12         official equipment of any federal agency as provided

13         under section 134-11(b), documentary evidence that the

14         firearm being carried is registered under this

15         chapter,

16 and shall, upon request from a law enforcement officer, present

17 government-issued photo identification and the license or

18 credentials and evidence of registration.

19     (b)   When a person carrying a firearm, including a person

20 carrying a firearm pursuant to a license issued under section

21 134-9 or in accordance with title 18 United States Code section

EXHIBIT "A"

# S.B. NO. <small>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</small>

1   926B or 926C, is stopped by a law enforcement officer or is a

2   driver or passenger in a vehicle stopped by a law enforcement

3   officer, the person carrying a firearm shall immediately

4   disclose to the law enforcement officer that the person is

5   carrying a firearm, and shall, upon request:

6       (1)  Identify the specific location of the firearm; and

7       (2)  Present to the law enforcement officer a license to

8           carry a firearm issued under section 134-9 or

9           documentation regarding the person's qualifications

10          under title 18 United States Code section 926B or

11          926C.

12      (c)  Any person who violates this section shall be guilty

13  of a petty misdemeanor.

14      **§134-C  Leaving unsecured firearm in vehicle unattended;**

15  **penalty.**  (a)  No person shall intentionally, knowingly, or

16  recklessly store or otherwise leave a loaded or unloaded firearm

17  out of the person's immediate possession or control inside a

18  vehicle without first securely locking the firearm in a safe

19  storage depository that is out of sight from outside of the

20  vehicle.

EXHIBIT "A"

1     (b)  For purposes of this section, "safe storage

2  depository" means a safe or other secure impact- and

3  tamper-resistant container that, when locked, is incapable of

4  being opened without a key, keypad, combination, or other

5  unlocking mechanism and is capable of preventing an unauthorized

6  person from obtaining access to or possession of the firearm

7  contained therein.  A vehicle's trunk or glove box alone, even

8  if locked, is not a safe storage depository.

9     (c)  This section shall not apply to a person in an exempt

10  category identified in section 134-11(a).

11     (d)  Any person who violates subsection (a) shall be guilty

12  of a petty misdemeanor.

13     **§134-D  Unlawful conduct while carrying a firearm; penalty.**

14  (a)  A person carrying a firearm shall not:

15     (1)  Consume alcohol or intoxicating liquor;

16     (2)  Consume a controlled substance;

17     (3)  Be under the influence of alcohol or intoxicating

18          liquor; or

19     (4)  Be under the influence of a controlled substance.

20     (b)  As used in this section:

EXHIBIT "A"

S.B. NO.

1    "Alcohol" and "intoxicating liquor" shall have the same

2    meaning as in section 281-1.

3    "Controlled substance" means a drug, substance, or

4    immediate precursor in schedules I through III of part II of

5    chapter 329.

6    (c)  Any person who violates this section shall be guilty

7    of a misdemeanor; provided that any person who violates this

8    section by consuming or being under the influence of alcohol or

9    an intoxicating liquor shall be guilty of a petty misdemeanor.

10   **§134-E  Carrying or possessing a firearm on private**

11   **property of another person without authorization; penalty.**  (a)

12   A person carrying a firearm pursuant to a license issued under

13   section 134-9 shall not intentionally, knowingly, or recklessly

14   enter or remain on private property of another person while

15   carrying a loaded or unloaded firearm, whether the firearm is

16   operable or not, and whether the firearm is concealed or

17   unconcealed, unless the person has been given express

18   authorization to carry a firearm on the property by the owner,

19   lessee, operator, or manager of the property.

EXHIBIT "A"

S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1      (b)  For purposes of this section, express authorization to

2  carry or possess a firearm on private property shall be

3  signified by:

4      (1)  Unambiguous written or verbal authorization; or

5      (2)  The posting of clear and conspicuous signage at the

6            entrance of the building or on the premises,

7  by the owner, lessee, operator, or manager of the property, or

8  agent thereof, indicating that carrying or possessing a firearm

9  is authorized.

10     (c)  For purposes of this section:

11   "Private entity" means any homeowners' association,

12  community association, planned community association,

13  condominium association, cooperative, or any other

14  nongovernmental entity with covenants, bylaws, or administrative

15  rules, regulations, or provisions governing the use of private

16  property.

17   "Private property" does not include property that is owned

18  or leased by any governmental entity.

19   "Private property of another person" means residential,

20  commercial, industrial, agricultural, institutional, or

21  undeveloped property that is privately owned or leased, unless

EXHIBIT "A"

S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1   the person carrying a firearm is an owner, lessee, operator, or

2   manager of the property, including an ownership interest in a

3   common element or limited common element of the property;

4   provided that nothing in this chapter shall be construed to

5   limit the enforceability of a provision in any private rental

6   agreement restricting a tenant's possession or use of firearms,

7   the enforceability of a restrictive covenant restricting the

8   possession or use of firearms, or the authority of any private

9   entity to restrict the possession or use of firearms on private

10  property.

11      (d)  This section shall not apply to a person in an exempt

12  category identified in section 134-11(a).

13      (e)  Any person who violates this section shall be guilty

14  of a misdemeanor."

15      **§134-F  Annual report on licenses to carry.**  (a)  No later

16  than April 1, 2024, and April 1 of each year thereafter, the

17  department of the attorney general shall publish a report on its

18  publicly available website that includes, if available:

19      (1)  The number of licenses to carry applied for, issued,

20           revoked, and denied, further categorized by the age,

EXHIBIT "A"

1        gender, race, and county of residence of each

2        applicant or licensee;

3    (2)  The specific reasons for each revocation and denial;

4    (3)  Analysis of denials based on applicants' failure to

5        meet the standards of section 134-9(d), and

6        recommendations to remedy any disparities in denial

7        rates by age, gender, or race;

8    (4)  The number of appeals and appeals granted; and

9    (5)  The number of violations of section 134-A.

10    (b)  No later than February 1 of each year, the chief of

11  police of each county shall supply the department of the

12  attorney general with the data the department requires to

13  complete the report under subsection (a).

14    §134-G  Failure to conceal a firearm by a concealed carry

15  licensee; penalty.  (a)  A person commits the offense of failure

16  to conceal a firearm by a concealed carry licensee if a person

17  is carrying a firearm pursuant to a license issued under section

18  134-9(a) and intentionally, knowingly, or recklessly causes

19  alarm to another person by failing to conceal the firearm, even

20  briefly, whether the firearm was loaded or not, and whether

21  operable or not.

EXHIBIT "A"

1  (b)  It shall be a defense to any prosecution under this

2  section if the person:

3  (1)  Was within the person's private residence; or

4  (2)  Caused the firearm to be unconcealed for the purpose

5  of self-defense in accordance with section 703-304 or

6  defense of another person in accordance with section

7  703-305.

8  (c)  Failure to conceal a firearm by a concealed carry

9  licensee shall be a petty misdemeanor."

10  SECTION 3.  Section 134-1, Hawaii Revised Statutes, is

11  amended as follows:

12  1.  By adding three new definitions to be appropriately

13  inserted and to read:

14  ""Concealed" means, in relation to a firearm, that the

15  firearm is entirely hidden from view of the public and not

16  discernible by ordinary observation, in a manner that a

17  reasonable person without law enforcement training would be

18  unable to detect the presence of the firearm.

19  "Criminal offense relating to firearms" means:

20  (1)  Any criminal offense under this chapter punishable as

21  a misdemeanor;

EXHIBIT "A"

Case: 21-16756, 05/04/2023, ID: 12709453, DktEntry: 80, Page 35 of 115

Page 19

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       (2)   Criminally negligent storage of a firearm under

2              section 707-714.5; and

3       (3)   Any other criminal offense punishable as a misdemeanor

4              under federal or state law or the law of another

5              state, a United States territory, or the District of

6              Columbia that has as an element of the offense the

7              use, attempted use, threatened use, or possession of a

8              firearm.

9      "Unconcealed" means not concealed."

10     2.  By amending the definition of "crime of violence" to

11  read:

12     ""Crime of violence" means [any]:

13       (1)   Any offense[, as defined in title 37,] under federal

14              or state law or the law of another state, a United

15              States territory, or the District of Columbia that

16              [involves injury] has as an element of the offense

17              the:

18       (A)   Injury or threat of injury to the person of

19              another[, including sexual]; or

20       (B)   Use, attempted use, or threatened use of physical

21              force against the person or property of another

EXHIBIT "A"

S.B. NO.

1    or the creation of a substantial risk of causing

2    bodily injury;

3    (2)  Reckless endangering in the second degree under

4    section 707-714;

5    (3)  Terroristic threatening in the second degree under

6    section 707-717;

7    (4)  Sexual assault in the fourth degree under section 707-

8    733 [and harassment];

9    (5)  Endangering the welfare of a minor in the second

10   degree under section 709-904;

11   (6)  Endangering the welfare of an incompetent person under

12   section 709-905;

13   (7)  Harassment under section 711-1106(1)(a);

14   (8)  Harassment by stalking under section 711-1106.5[.];

15   (9)  Criminal solicitation under section 705-510; provided

16   that the solicitation was for a crime described or

17   listed in paragraphs (1) to (8);

18   (10) Criminal conspiracy under section 705-520; provided

19   that the conspiracy was for a crime described or

20   listed in paragraphs (1) to (8); and

EXHIBIT "A"

1    (11)    Offenses under federal law, or the law of another

2            state, a United States territory, or the District of

3            Columbia, that are comparable to the offenses

4            described or listed in paragraphs (1) to (10)."

5    SECTION 4.  Section 134-2, Hawaii Revised Statutes, is

6    amended to read as follows:

7    "§134-2  **Permits to acquire.**  (a)  No person shall acquire

8    the ownership of a firearm, whether usable or unusable,

9    serviceable or unserviceable, modern or antique, registered

10   under prior law or by a prior owner or unregistered, either by

11   purchase, gift, inheritance, bequest, or in any other manner,

12   whether procured in the State or imported by mail, express,

13   freight, or otherwise, until the person has first procured from

14   the chief of police of the county of the person's place of

15   business or, if there is no place of business, the person's

16   residence or, if there is neither place of business nor

17   residence, the person's place of sojourn, a permit to acquire

18   the ownership of a firearm as prescribed in this section.  When

19   title to any firearm is acquired by inheritance or bequest, the

20   foregoing permit shall be obtained before taking possession of

21   [a] the firearm; provided that upon presentation of a copy of

EXHIBIT "A"

# S.B. NO.

1  the death certificate of the owner making the bequest, any heir

2  or legatee may transfer the inherited or bequested firearm

3  directly to a dealer licensed under section 134-31 or licensed

4  by the United States Department of Justice without complying

5  with the requirements of this section.

6      (b)  The permit application form shall [~~include the~~]:

7      (1)  Include:

8          (A)  The applicant's name, address, [~~sex,~~] gender,

9              height, weight, date of birth, place of birth,

10             country of citizenship, social security number,

11             alien or admission number[~~, and information~~];

12          (B)  Information regarding the applicant's mental

13             health history;

14          (C)  Any aliases or other names previously used by the

15             applicant;

16          (D)  Information that is or may be relevant in

17             determining whether the applicant is disqualified

18             under section 134-7 from the ownership,

19             possession, or control of a firearm; and

20          (E)  Information that is or may be relevant in

21             determining whether the applicant lacks the

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1          essential character or temperament necessary to

2          be entrusted with a firearm as set forth in

3          subsection (e); and [shall require]

4   (2)   Require the fingerprinting and photographing of the

5          applicant by the police department of the county of

6          registration; provided that where fingerprints and a

7          photograph are already on file with the department,

8          these may be waived.

9   (c)   An applicant for a permit shall [sign]:

10   (1)   Sign a waiver at the time of application, allowing the

11          chief of police of the county issuing the permit or a

12          designee of the chief of police access to [any] all

13          records that have a bearing on the mental health of

14          the applicant[. The permit application form and the

15          waiver form shall be prescribed by the attorney

16          general and shall be uniform throughout the State.];

17          and

18   (2)   Identify any health care providers who possess or may

19          possess the records described in paragraph (1).

20   (d)   The chief of police of the respective counties [may]

21 shall issue permits to acquire firearms to [citizens]:

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

    (1)  Citizens, nationals, or lawful permanent residents of the United States of the age of twenty-one years or more[, or duly];

    (2)  Duly accredited official representatives of foreign nations[, or duly];

    (3)  Duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency[. The chief of police of each county may issue permits to aliens];

    (4)  Aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II[. The chief of police of each county may issue permits to aliens]; and

    (5)  Aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a

EXHIBIT "A"

# S.B. NO.  1230
S.D. 2
H.D. 1
C.D. 1

1     specific organized sport-shooting contest to be held

2     within the permit period.

3     The attorney general [shall] may adopt rules, pursuant to

4     chapter 91, as to what constitutes sufficient evidence that an

5     alien is in training for a sport-shooting contest.

6     Notwithstanding any law to the contrary and upon joint

7     application, the chief of police may, upon request, issue

8     permits to acquire firearms jointly to spouses who otherwise

9     qualify to obtain permits under this section.

10     (e)  The permit application form shall be signed by the

11     applicant and [by the] issuing authority.  One copy of the

12     permit shall be retained by the issuing authority as a permanent

13     official record.  Except for sales to dealers licensed under

14     section 134-31, [or] dealers licensed by the United States

15     Department of Justice, [or] law enforcement officers, [or where

16     a license is granted under section 134-9,] or where any firearm

17     is registered pursuant to section 134-3(a), no permit shall be

18     issued to an applicant earlier than fourteen calendar days after

19     the date of the application; provided that a permit shall be

20     issued or the application denied before the [twentieth] fortieth

21     day from the date of application.  Permits issued to acquire any

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   pistol or revolver shall be void unless used within [ten] thirty

2   days after the date of issue.  Permits to acquire a pistol or

3   revolver shall require a separate application and permit for

4   each transaction.  Permits issued to acquire any rifle or

5   shotgun shall entitle the permittee to make subsequent purchases

6   of rifles or shotguns for a period of one year from the date of

7   issue without a separate application and permit for each

8   acquisition, subject to the disqualifications under section 134-

9   7 and [subject to] revocation under section 134-13; provided

10  that if a permittee is arrested for committing a felony [or

11  any], a crime of violence, a criminal offense relating to

12  firearms, or for the illegal sale or distribution of any drug,

13  the permit shall be impounded and [shall be] surrendered to the

14  issuing authority.  The issuing authority shall perform an

15  inquiry on an applicant by using the International Justice and

16  Public Safety Network, including the United States Immigration

17  and Customs Enforcement query, [the] National Crime Information

18  Center, and [the] National Instant Criminal Background Check

19  System, pursuant to section 846-2.7 before any determination to

20  issue a permit or to deny an application is made.  The issuing

21  authority shall not issue a permit to acquire the ownership of a



EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    firearm if an applicant is disqualified under section 134-7 from

2    the ownership, possession, or control of a firearm, or if the

3    issuing authority determines that issuance would not be in the

4    interest of public health, safety, or welfare because the person

5    lacks the essential character or temperament necessary to be

6    entrusted with a firearm.  In determining whether a person lacks

7    the essential character or temperament necessary to be entrusted

8    with a firearm, the issuing authority shall consider whether the

9    person poses a danger of causing a self-inflicted bodily injury

10   or unlawful injury to another person, as evidenced by:

11       (1)  Information from a health care provider indicating

12            that the person has had suicidal or homicidal thoughts

13            or tendencies within the preceding five years;

14       (2)  Statements or actions by the person indicating any

15            dangerous propensity or violent animus toward one or

16            more individuals or groups, including groups based on

17            race, color, national origin, ancestry, sex, gender

18            identity, gender expression, sexual orientation, age,

19            disability, religion, or any other characteristic, and

20            the propensity or animus is of a nature or to an

21            extent that would objectively indicate to a reasonable

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1             observer that it would not be in the interest of the

2             public health, safety, or welfare for the person to

3             own, possess, or control a firearm or ammunition; or

4    (3)  Other information that would lead a reasonable,

5             objective observer to conclude that the person

6             presents or would present a danger to the community as

7             a result of acquiring or possessing a firearm or

8             intends or is likely to use a firearm for an unlawful

9             purpose or in an unlawful manner.

10   (f)  In all cases where a pistol or revolver is acquired

11  from another person within the State, the permit shall be signed

12  in ink by the person to whom title to the pistol or revolver is

13  transferred and shall be delivered to the person who is

14  transferring title to the firearm, who shall verify that the

15  person to whom the firearm is to be transferred is the person

16  named in the permit and enter on the permit in the space

17  provided the following information:  name, address, and

18  telephone number of the person who transferred the firearm;

19  name, address, and telephone number of the person to whom the

20  title to the firearm was transferred;  names of the manufacturer

21  and importer; model; type of action; caliber or gauge; and

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   serial number, as applicable.  The person who is transferring

2   title to the firearm shall sign the permit in ink and cause the

3   permit to be delivered or sent by registered mail to the issuing

4   authority within forty-eight hours after transferring the

5   firearm.

6   In all cases where receipt of a firearm is had by mail,

7   express, freight, or otherwise from sources [~~without~~] <u>outside</u>

8   the State, the person to whom the permit has been issued shall

9   make the prescribed entries on the permit, sign the permit in

10  ink, and cause the permit to be delivered or sent by registered

11  mail to the issuing authority within forty-eight hours after

12  taking possession of the firearm.

13  In all cases where a rifle or shotgun is acquired from

14  another person within the State, the person who is transferring

15  title to the rifle or shotgun shall submit, within forty-eight

16  hours after transferring the firearm, to the authority that

17  issued the permit to acquire, the following information, in

18  writing:  <u>name, address, and telephone number</u> of the person who

19  transferred the firearm[~~.~~]<u>; name, address, and telephone number</u>

20  of the person to whom the title to the firearm was transferred;

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1 names of the manufacturer and importer; model; type of action;

2 caliber or gauge; and serial number, as applicable.

3    (g)    [Effective July 1, 1995, no] No person shall be issued

4 a permit under this section for the acquisition of a [pistol or

5 revolver] firearm unless the person, [at any time prior to]

6 within the four years before the issuance of the permit, has

7 completed:

8    (1)    An approved hunter education course as authorized

9           under section 183D-28[.], unless the applicant seeks

10          to acquire a pistol or revolver, in which case the

11          applicant shall complete a training satisfying the

12          requirements of paragraph (2), (3), or (4);

13   (2)    A firearms safety or training course or class

14          available to the general public offered by a law

15          enforcement agency of the State or of any county;

16   (3)    A firearms safety or training course offered to law

17          enforcement officers, security guards, investigators,

18          deputy sheriffs, or any division or subdivision of law

19          enforcement or security enforcement by a state or

20          county law enforcement agency; or

EXHIBIT "A"

S.B. NO.

1   (4) A firearms training or safety course or class

2      conducted by a [state certified or National Rifle

3      Association certified firearms instructor] firearms

4      instructor certified or verified by the chief of

5      police of the respective county or a designee of the

6      chief of police or certified by a nongovernmental

7      organization approved for such purposes by the chief

8      of police of the respective county or a designee of

9      the chief of police, or conducted by a certified

10     military firearms instructor; provided that the

11     firearms training or safety course or class provides,

12     at a minimum, a total of at least two hours of firing

13     training at a firing range and a total of at least

14     four hours of classroom instruction, which may include

15     a video, that focuses on:

16     (A) The safe use, handling, and storage of firearms

17       and firearm safety in the home[,], as well as a

18       component on mental health, suicide prevention,

19       and domestic violence issues associated with

20       firearms and firearm violence; and

21     (B) Education on the firearm laws of the State.

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1           An affidavit signed by the certified or verified

2           firearms instructor who conducted or taught the

3           course, providing the name, address, and phone number

4           of the instructor and attesting to the successful

5           completion of the course by the applicant shall

6           constitute evidence of certified successful completion

7           under this paragraph[.]; provided that an instructor

8           shall not submit an affidavit signed by the instructor

9           for the instructor's own permit application.

10    (h)  No person shall sell, give, lend, or deliver into the

11  possession of another any firearm except in accordance with this

12  chapter.

13    (i)  No fee shall be charged for permits, or applications

14  for permits, under this section, except for a single fee

15  chargeable by and payable to the issuing county[, for

16  individuals applying for their first permit,] in an amount equal

17  to the fee charged by the Hawaii criminal justice data center

18  pursuant to section 846-2.7.  In the case of a joint

19  application, the fee provided for in this section may be charged

20  to each person [to whom no previous permit has been issued].  If

21  an application under this section is denied, the chief of police

EXHIBIT "A"

S.B. NO. <sup></sup> 1230
S.D. 2
H.D. 1
C.D. 1

1 or a designee of the chief of police shall notify the applicant

2 of the denial in writing, stating the ground or grounds for the

3 denial and informing the applicant of the right to seek review

4 of the denial through a hearing pursuant to subsection (k).

5     (j)  In all cases where a permit application under this

6 section is denied because an applicant is prohibited from

7 owning, possessing, receiving, or controlling firearms under

8 federal or state law, the chief of police of the applicable

9 county shall, within ten business days from the date of denial,

10 send written notice of the denial, including the identity of the

11 applicant and the reasons for the denial, to the:

12     (1)  Prosecuting attorney in the county where the permit

13          was denied;

14     (2)  Attorney general;

15     (3)  United States Attorney for the District of Hawaii; and

16     (4)  Director of public safety.

17     If the permit to acquire was denied because the applicant

18 is subject to an order described in section 134-7(f), the chief

19 of police shall, within three business days from the date of

20 denial, send written notice of the denial to the court that

21 issued the order.



EXHIBIT "A"

1     When the director of public safety receives notice that an

2    applicant has been denied a permit because of a prior criminal

3    conviction, the director of public safety shall determine

4    whether the applicant is currently serving a term of probation

5    or parole, and if the applicant is serving such a term, send

6    written notice of the denial to the applicant's probation or

7    parole officer.

8    (k)  If an application under this section is denied, a

9    person or entity aggrieved by the denial shall be entitled to a

10    hearing before the chief of police of the appropriate county or

11    a designee of the chief of police.  A person or entity aggrieved

12    by the denial shall submit a request for a hearing in writing to

13    the chief of police of the appropriate county no later than

14    thirty days following the date of the decision or determination

15    notice.  The hearing shall constitute a contested case hearing

16    for purposes of chapter 91.  Following the hearing and final

17    decision, an aggrieved party shall be entitled to a judicial

18    review proceeding in state circuit court in accordance with

19    section 91-14.

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  (l)  The permit application form and the waiver form

2  required under this section shall be prescribed by the issuing

3  authority."

4  SECTION 5.  Section 134-4, Hawaii Revised Statutes, is

5  amended by amending subsection (d) to read as follows:

6  "(d)  No person shall intentionally, knowingly, or

7  recklessly lend a firearm to any person who is prohibited from

8  ownership [or], possession, or control of a firearm under

9  section 134-7."

10  SECTION 6.  Section 134-7, Hawaii Revised Statutes, is

11  amended to read as follows:

12  "§134-7  Ownership [or], possession, or control prohibited,

13  when; penalty.  (a)  No person who is a fugitive from justice or

14  [is a person] prohibited from possessing [firearms] a firearm or

15  ammunition under title 18 United States Code section 922 or any

16  other provision of federal law shall own, possess, or control

17  any firearm or ammunition [therefor].

18  (b)  No person who [is under indictment for, or has waived

19  indictment for, or has been bound over to the circuit court

20  for,] is being prosecuted for one or more charges for a felony,

21  a crime of violence, a criminal offense relating to firearms, or

EXHIBIT "A"

1    an illegal sale or distribution of any drug in a court in this

2    State or elsewhere, or who has been convicted in this State or

3    elsewhere of having committed a felony, [or any] a crime of

4    violence, a criminal offense relating to firearms, or an illegal

5    sale or distribution of any drug shall own, possess, or control

6    any firearm or ammunition [therefor].

7         (c)   No person [who:] shall own, possess, or control any

8    firearm or ammunition if the person:

9         (1)   Is or has been under treatment or counseling for

10               addiction to, abuse of, or dependence upon any

11               dangerous, harmful, or detrimental drug, intoxicating

12               compound as defined in section 712-1240, or

13               intoxicating liquor;

14        (2)   Has been acquitted of a crime on the grounds of mental

15               disease, disorder, or defect pursuant to section 704-

16               411[.] or any similar provision under federal law, or

17               the law of another state, a United States territory,

18               or the District of Columbia;

19        (3)   Is or has been diagnosed [as having a significant

20               behavioral, emotional, or mental disorders as defined

21               by the most current diagnostic manual of the American

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1          ~~Psychiatric Association or for treatment for organic~~

2          ~~brain syndromes;~~] with or treated for a medical,

3          behavioral, psychological, emotional, or mental

4          condition or disorder that causes or is likely to

5          cause impairment in judgment, perception, or impulse

6          control to an extent that presents an unreasonable

7          risk to public health, safety, or welfare if the

8          person were in possession or control of a firearm; or

9     (4)  Has been adjudged to:

10         (A)  Meet the criteria for involuntary hospitalization

11              under section 334-60.2; or

12         (B)  Be an "incapacitated person", as defined in

13              section 560:5-102,

14  [~~shall own, possess, or control any firearm or ammunition~~

15  ~~therefor,~~] unless the person [~~has been medically documented to~~

16  ~~be~~] establishes, with appropriate medical documentation, that

17  the person is no longer adversely affected by [~~the addiction,~~

18  ~~abuse, dependence, mental disease, disorder, or defect.~~] the

19  criteria or statuses identified in this subsection.

20     (d)  No person who is less than twenty-five years old and

21  has been adjudicated by the family court to have committed a

EXHIBIT "A"

1 felony, [two or more crimes] a crime of violence, a criminal

2 offense relating to firearms, or an illegal sale or distribution

3 of any drug shall own, possess, or control any firearm or

4 ammunition [therefor].

5      (e)  No minor [who.] shall own, possess, or control any

6 firearm or ammunition if the minor:

7      (1)  Is or has been under treatment for addiction to any

8           dangerous, harmful, or detrimental drug, intoxicating

9           compound as defined in section 712-1240, or

10           intoxicating liquor;

11      (2)  Is a fugitive from justice; or

12      (3)  Has been determined not to have been responsible for a

13           criminal act or has been committed to any institution

14           on account of a mental disease, disorder, or

15           defect[.].

16 [shall own, possess, or control any firearm or ammunition

17 therefor,] unless the minor [has been medically documented to

18 be] establishes, with appropriate medical documentation, that

19 the minor is no longer adversely affected by the addiction,

20 mental disease, disorder, or defect.

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     For the purposes of enforcing this section, and

2 notwithstanding section 571-84 or any other law to the contrary,

3 any agency within the State shall make its records relating to

4 family court adjudications available to law enforcement

5 officials.

6     (f)  No person who has been restrained pursuant to an order

7 of any court, including a gun violence protective order issued

8 pursuant to part IV, from contacting, threatening, or physically

9 abusing any person, shall possess, control, or transfer

10 ownership of any firearm or ammunition [~~therefor~~], so long as

11 the protective order, restraining order, or any extension is in

12 effect[~~, unless the order, for good cause shown, specifically~~

13 ~~permits the possession of a firearm and ammunition~~].  The

14 protective order or restraining order shall specifically include

15 a statement that possession, control, or transfer of ownership

16 of a firearm or ammunition by the person named in the order is

17 prohibited.  The person shall relinquish possession and control

18 of any firearm and ammunition owned by that person to the police

19 department of the appropriate county for safekeeping for the

20 duration of the order or extension thereof.  At the time of

21 service of a protective order or restraining order involving

EXHIBIT "A"

# S.B. NO. <span>1230 S.D. 2 H.D. 1 C.D. 1</span>

1   firearms and ammunition issued by any court, a police officer

2   may take custody of any and all firearms and ammunition in plain

3   sight, those discovered pursuant to a consensual search, and

4   those firearms surrendered by the person restrained.  If the

5   person restrained is the registered owner of a firearm and knows

6   the location of the firearm, but refuses to surrender the

7   firearm or [~~refuses to~~] disclose the location of the firearm,

8   the person restrained shall be guilty of a misdemeanor.  In any

9   case, when a police officer is unable to locate the firearms and

10  ammunition either registered under this chapter or known to the

11  person granted protection by the court, the police officer shall

12  apply to the court for a search warrant pursuant to chapter 803

13  for the limited purpose of seizing the firearm and ammunition.

14       [~~For the purposes of this subsection, good cause shall not~~

15  ~~be based solely upon the consideration that the person subject~~

16  ~~to restraint pursuant to an order of any court is required to~~

17  ~~possess or carry firearms or ammunition during the course of the~~

18  ~~person's employment.  Good cause consideration may include but~~

19  ~~not be limited to the protection and safety of the person to~~

20  ~~whom a restraining order is granted.~~]

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   (g)  Any person disqualified from ownership, possession,

2   control, or the right to transfer ownership of firearms and

3   ammunition under this section shall surrender or dispose of all

4   firearms and ammunition in compliance with section 134-7.3.

5   (h)  Any person who otherwise would be prohibited under

6   subsection (b) from owning, possessing, or controlling a firearm

7   and ammunition solely as a result of a conviction for a crime

8   that is not a felony, and who is not prohibited from owning,

9   possessing, or controlling a firearm or ammunition for any

10  reason under any other provision of this chapter or under title

11  18 United States Code section 922 or another provision of

12  federal law, shall not be prohibited under this section from

13  owning, possessing, or controlling a firearm and ammunition if

14  twenty years have elapsed from the date of the conviction.

15  [(h)] (i)  Any person violating subsection (a) or (b) shall

16  be guilty of a class C felony; provided that any felon violating

17  subsection (b) shall be guilty of a class B felony.  Any person

18  violating subsection (c), (d), (e), (f), or (g) shall be guilty

19  of a misdemeanor."

20  SECTION 7.  Section 134-9, Hawaii Revised Statutes, is

21  amended to read as follows:



EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       "**§134-9  Licenses to carry.**  (a)  [~~In an exceptional case,~~

2 ~~when an applicant shows reason to fear injury to the applicant's~~

3 ~~person or property, the~~] The chief of police of [~~the~~

4 ~~appropriate~~] <u>a</u> county [~~may~~] <u>shall</u> grant a license to an

5 applicant [~~who is a citizen of the United States of the age of~~

6 ~~twenty-one years or more or to a duly accredited official~~

7 ~~representative of a foreign nation of the age of twenty-one~~

8 ~~years or more~~] to carry a pistol or revolver and ammunition

9 [~~therefor~~] concealed on the <u>licensee's</u> person within [~~the county~~

10 ~~where the license is granted.  Where the urgency or the need has~~

11 ~~been sufficiently indicated, the respective~~] <u>the State, if the</u>

12 <u>applicant</u>:

13     (1)  <u>Satisfies each of the criteria established by or</u>

14             <u>pursuant to subsection (d);</u>

15     (2)  <u>Is not prohibited under section 134-7 from the</u>

16             <u>ownership, possession, or control of a firearm and</u>

17             <u>ammunition;</u>

18     (3)  <u>Is not found to be lacking the essential character or</u>

19             <u>temperament necessary to be entrusted with a firearm</u>

20             <u>as set forth in subsection (h);</u>

EXHIBIT "A"

S.B. NO.

    (4)  Is a citizen, national, or lawful permanent resident of the United States or a duly accredited official representative of a foreign nation;

    (5)  Is a resident of the State; and

    (6)  Is of the age of twenty-one years or more.

    (b)  The chief of police of a county may grant to an applicant [of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm,] a license to carry a pistol or revolver and ammunition [therefor] unconcealed on the licensee's person within the county where the license is granted[.], if the applicant:

    (1)  Sufficiently establishes the urgency or need to carry a firearm unconcealed;

    (2)  Is engaged in the protection of life and property;

    (3)  Satisfies each of the criteria established by or pursuant to subsection (d);

    (4)  Is not prohibited under section 134-7 from the ownership, possession, or control of a firearm and ammunition;

EXHIBIT "A"

1   (5) Is not found to be lacking the essential character or

2     temperament necessary to be entrusted with a firearm

3     as set forth in subsection (h);

4   (6) Is a citizen, national, or lawful permanent resident

5     of the United States; and

6   (7) Is of the age of twenty-one years or more.

7   (c) The chief of police of the appropriate county, or [the

8 chief's] a designated representative[,] of the chief of police,

9 shall perform an inquiry on an applicant by using the National

10 Instant Criminal Background Check System, to include a check of

11 the Immigration and Customs Enforcement databases [where] if the

12 applicant is not a citizen of the United States, before any

13 determination to grant a concealed or unconcealed license is

14 made. [Unless renewed, the license shall expire one year from

15 the date of issue.

16   (b) The chief of police of each county shall adopt

17 procedures to require that any person granted a license to carry

18 a concealed weapon on the person shall:]

19   (d) To be eligible to receive a license to carry a

20 concealed or unconcealed pistol or revolver on the licensee's

21 person, the applicant shall:



EXHIBIT "A"

S.B. NO. <sub>1230</sub>

1230
S.D. 2
H.D. 1
C.D. 1

1    (1)   [Be qualified to use the firearm in a safe manner;]

2          Submit the appropriate carry license application, in

3          person, to the chief of police of the appropriate

4          county, with:

5          (A)  All fields on the application form completed and

6              all questions answered truthfully, under penalty

7              of law;

8          (B)  All required signatures present on the

9              application;

10         (C)  Any required documents attached to the

11             application; and

12         (D)  Payment of the nonrefundable license application

13             fee required under this section;

14   (2)   [Appear to be a suitable person to be so licensed;] Be

15         the registered owner of the firearm or firearms for

16         which the license to carry will be issued; provided

17         that this paragraph shall not apply to detectives,

18         private detectives, investigators, and guards with an

19         active license issued pursuant to chapter 463;

EXHIBIT "A"

1    (3)  Not be prohibited under section 134-7 from the

2         ownership [~~or~~], possession, or control of a firearm;

3         [~~and~~]

4    (4)  [~~Not have been adjudged insane or not appear to be~~

5         ~~mentally deranged.~~] Have completed a course of

6         training as described in subsection (e) and be

7         certified as qualified to use the firearm or firearms

8         for which the license to carry will be issued in a

9         safe manner; and

10   (5)  Sign an affidavit expressly acknowledging that:

11       (A)  The applicant has read and is responsible for

12            understanding and complying with the federal,

13            state, and county laws governing the permissible

14            use of firearms and associated requirements,

15            including:

16          (i)  The prohibition on carrying or possessing a

17               firearm in certain locations and premises;

18         (ii)  The prohibition on carrying more than one

19               firearm on the licensee's person at one

20              time;

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1         (iii)   The prohibition on carrying a firearm on

2                private property of another person without

3                the express authorization of the owner,

4                lessee, operator, or manager of the private

5                property;

6         (iv)   The requirement to maintain possession of

7                the license on the licensee's person while

8                carrying a firearm;

9         (v)   The requirement to disclose information

10                regarding the carrying of a firearm when

11                stopped by law enforcement;

12         (vi)   The provision for absolute liability for

13                injury or property damage proximately caused

14                by a legally unjustified discharge of a

15                firearm under section 663-9.5; and

16         (vii)   Laws regarding the use of deadly force for

17                self-defense or the defense of another;

18     (B)   A license to carry issued under this section

19           shall be void if a licensee becomes disqualified

20           from the ownership, possession, or control of a

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

firearm pursuant to section 134-7(a), (b), (d), or (f);

 (C) The license shall be subject to revocation under section 134-13 if a licensee for any other reason becomes disqualified under section 134-7 from the ownership, possession, or control of a firearm; and

 (D) A license that is revoked or that becomes void shall be returned to the chief of police of the appropriate county within forty-eight hours after the license is revoked or becomes void.

[(c) ~~No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.~~

 ~~(d) A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.~~]

 (e) The course of training for issuance of a license under this section may be any course acceptable to the licensing authority that meets all of the following criteria:

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (1)   The course shall include in-person instruction on

2            firearm safety; firearm handling; shooting technique;

3            safe storage; legal methods to transport firearms and

4            secure firearms in vehicles; laws governing places in

5            which persons are prohibited from carrying a firearm;

6            firearm usage in low-light situations; situational

7            awareness and conflict management; and laws governing

8            firearms, including information regarding the

9            circumstances in which deadly force may be used for

10           self-defense or the defense of another;

11     (2)   The course shall include a component on mental health

12           and mental health resources;

13     (3)   Except for the component on mental health and mental

14           health resources, the course shall be conducted by one

15           or more firearms instructors certified or verified by

16           the chief of police of the respective county or a

17           designee of the chief of police or certified by a

18           nongovernmental organization approved for those

19           purposes by the chief of police of the respective

20           county or a designee of the chief of police, or

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1        conducted by one or more certified military firearms

2        instructors;

3    (4)  The course shall require participants to demonstrate

4        their understanding of the covered topics by achieving

5        a score of at least seventy per cent on a written

6        examination; and

7    (5)  The course shall include live-fire shooting exercises

8        on a firing range and shall include a demonstration by

9        the applicant of safe handling of, and shooting

10       proficiency with, each firearm that the applicant is

11       applying to be licensed to carry.

12  (f)  Upon passing the course of training identified in

13 subsection (e), the applicant shall obtain from the instructor,

14 and include as part of the applicant's application package, a

15 certification as to the following:

16    (1)  The applicant's name, as confirmed by reviewing the

17       applicant's government-issued photo identification;

18    (2)  The date and location of the firearm proficiency test;

19    (3)  The firearm or firearms that the applicant used in the

20       firearm proficiency test;

EXHIBIT "A"

    (4)   The applicant's score; provided that an indication that the applicant passed or failed, without the score itself, shall be insufficient information for the purposes of the application; and

    (5)   The instructor's qualifications to administer the firearm proficiency test.

The certification of the above information, signed by the firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor, shall constitute evidence of successful completion of the course; provided that the instructor shall not submit a certification signed by the instructor for the instructor's own license application.  The course of training for issuance of a license under this section shall be undertaken at the licensee's expense.

    (g)   An applicant for a license under this section shall:

    (1)   Sign a waiver at the time of application, allowing the chief of police of the county issuing the license or a designee of the chief of police access to any records that have a bearing on the mental health of the applicant; and

EXHIBIT "A"

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1      (2)   Identify any health care providers who possess or may

2            possess the records described in paragraph (1).

3      (h)   In determining whether a person lacks the essential

4  character or temperament necessary to be entrusted with a

5  firearm, the licensing authority shall consider whether the

6  person poses a danger of causing a self-inflicted bodily injury

7  or unlawful injury to another person, as evidenced by:

8      (1)   Information from a health care provider indicating

9            that the person has had suicidal or homicidal thoughts

10           or tendencies within the preceding five years;

11      (2)   Statements or actions by the person indicating any

12            dangerous propensity or violent animus toward one or

13           more individuals or groups, including groups based on

14           race, color, national origin, ancestry, sex, gender

15           identity, gender expression, sexual orientation, age,

16           disability, religion, or any other characteristic, and

17           the propensity or animus is of a nature or to an

18           extent that would objectively indicate to a reasonable

19           observer that it would not be in the interest of the

20           public health, safety, or welfare for the person to

21           own, possess, or control a firearm or ammunition; or

EXHIBIT "A"

   (3)   Other information that would lead a reasonable, objective observer to conclude that the person presents or would present a danger to the community as a result of carrying a firearm in public or intends or is likely to use a firearm for an unlawful purpose or in an unlawful manner.

   (i)   A nonrefundable fee of $150 shall be charged for each license application submitted under this section.  The fee shall be chargeable by and payable to the appropriate county and shall be used for expenses related to police services.  The issuing authority shall waive the fee required by this subsection upon a showing of financial hardship by the applicant.

   (j)   If the applicant satisfies each of the requirements for a concealed carry license, an application for a concealed carry license submitted to the chief of police of the appropriate county under this section shall be approved within a reasonable time after receipt of all required application materials.  If the applicant does not satisfy one or more of the requirements for a concealed carry license, the license shall be denied within a reasonable time after receipt of the application materials.  If an application is denied, the chief of police or

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  a designee of the chief of police shall notify the applicant of

2  the denial in writing, stating the ground or grounds for the

3  denial and informing the applicant of the right to seek review

4  of the denial through a hearing pursuant to subsection (k).  If

5  the chief of police does not grant or deny a submitted

6  application for a concealed carry license within one hundred

7  twenty days following the date of the application, the

8  application shall be deemed denied as of that date for purposes

9  of subsection (k).

10       (k)  If an application under this section is denied, a

11  person or entity aggrieved by the denial shall be entitled to a

12  hearing before the chief of police of the appropriate county or

13  a designee of the chief of police.  A person or entity aggrieved

14  by the denial shall submit a request for a hearing in writing to

15  the chief of police of the appropriate county no later than

16  thirty days following the date of the decision or determination

17  notice.  The hearing shall constitute a contested case hearing

18  for purposes of chapter 91.  Following the hearing and final

19  decision, an aggrieved party shall be entitled to a judicial

20  review proceeding in state circuit court in accordance with

21  section 91-14.

EXHIBIT "A"

1      (l)  If an application pursuant to this section is

2  approved, the chief of police shall issue the applicant a

3  license that contains, at minimum:

4      (1)  The licensee's name;

5      (2)  The licensee's address;

6      (3)  A photograph of the licensee taken within ninety days

7            before issuance of the license;

8      (4)  The county of issuance;

9      (5)  A notation as to whether the license permits concealed

10           or unconcealed carry;

11      (6)  The serial number of each registered firearm that the

12           licensee may carry pursuant to the license; and

13      (7)  The license expiration date.

14  The license issued under this subsection shall not constitute a

15  government-issued photo identification document under federal or

16  state law.

17      (m)  Unless renewed, a concealed or unconcealed license

18  shall expire four years from the date of issue.

19      (n)  A license to carry issued under this section shall be

20  void if a licensee becomes disqualified from the ownership,

21  possession, or control of a firearm pursuant to section 134-

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    7(a), (b), (d), or (f).  If a licensee for any other reason

2    becomes disqualified under section 134-7 from the ownership,

3    possession, or control of a firearm, the license shall be

4    subject to revocation under section 134-13.  A license that is

5    void or revoked shall be returned to the chief of police of the

6    appropriate county within forty-eight hours after the license

7    becomes void or is revoked.

8        (o)  The chief of police of each county shall adopt

9    procedures to implement this section.

10       (p)  The chief of police of each county shall establish

11   procedures and criteria for the renewal of licenses issued under

12   this section.  No license renewal shall be granted if an

13   applicant for a renewed license does not satisfy, or no longer

14   satisfies, the eligibility criteria for a new license set forth

15   in subsections (a) through (d).  As a precondition for the

16   renewal of licenses issued under this section, the chief of

17   police of each county may establish reasonable continuing

18   education, training, and certification requirements, including

19   requirements pertaining to the safe handling of firearms and

20   shooting proficiency.  A nonrefundable fee of $50 shall be

21   charged for each license renewal application submitted under



EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1 this section. The fee shall be chargeable by and payable to the

2 appropriate county and shall be used for expenses related to

3 police services. The issuing authority shall waive the fee

4 required by this subsection upon a showing of financial hardship

5 by the applicant.

6 (q) No person carrying a firearm pursuant to a license

7 issued under this section shall intentionally, knowingly, or

8 recklessly carry more than one firearm on the licensee's person

9 at one time.

10 (r) A license issued by the chief of police of a county

11 within the State under subsection (a) to carry a pistol or

12 revolver and ammunition concealed on the licensee's person shall

13 be valid for use in each county within the State."

14 SECTION 8. Section 134-13, Hawaii Revised Statutes, is

15 amended to read as follows:

16 "§134-13 Revocation of permits[.] and licenses. (a) All

17 permits and licenses provided for under this part [may] shall be

18 revoked[, for good cause,] by the issuing authority [or], and

19 may be revoked by [the judge of] any court[.], if the issuing

20 authority or court determines that the permit or license is

21 subject to revocation because the permit or license holder does



EXHIBIT "A"

S.B. NO. 

1   not satisfy, or no longer satisfies, the applicable

2   qualifications or requirements associated with the permit or

3   license.

4        (b)  If the issuing authority determines that a permit or

5   license is subject to revocation, the issuing authority shall

6   notify the permit or license holder of the determination in

7   writing, stating the grounds for the determination and informing

8   the permit or license holder of the right to seek a hearing

9   before the issuing authority regarding the determination before

10  revocation.  Unless the permit or license holder submits a

11  request for a hearing in writing to the issuing authority no

12  later than thirty days following the date of the written notice

13  that the permit or license is subject to revocation, the permit

14  or license shall be immediately revoked by the issuing

15  authority.  Any hearing regarding a determination on whether a

16  permit or license is subject to revocation shall constitute a

17  contested case hearing for purposes of chapter 91.  A person or

18  entity aggrieved by a revocation under this section may apply

19  for judicial review in state circuit court in accordance with

20  section 91-14.

EXHIBIT "A"

S.B. NO.

1  (c) If a permit or license is revoked pursuant to this

2 section, the former permit or license holder shall return the

3 permit or license to the issuing authority within forty-eight

4 hours following receipt of the notice of revocation."

5  SECTION 9. Section 134-17, Hawaii Revised Statutes, is

6 amended to read as follows:

7  "**§134-17 Penalties.** (a) If any person [~~gives false~~

8 ~~information or offers false evidence of the person's identity in~~

9 ~~complying with any of the requirements of this part, that person~~

10 ~~shall be guilty of a misdemeanor, provided, however that if any~~

11 ~~person intentionally gives false information or offers false~~

12 ~~evidence concerning their~~] intentionally, knowingly, or

13 recklessly makes any materially false, fictitious, or fraudulent

14 statement or representation in connection with any of the

15 requirements of this part, that person shall be guilty of a

16 misdemeanor; provided that if any person intentionally,

17 knowingly, or recklessly makes any materially false, fictitious,

18 or fraudulent statement or representation regarding the person's

19 psychiatric or criminal history in [~~complying~~] connection with

20 any of the requirements of this part, that person shall be

21 guilty of a class C felony.

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    [(b)  Any person who violates section 134-3(a) shall be

2    guilty of a petty misdemeanor.

3    (c)] (b)  Any person who violates [section]:

4    (1)  Section 134-2, 134-4, 134-10, [or] 134-13(c), or 134-

5          15 shall be guilty of a misdemeanor[.  Any person who

6          violates section];

7    (2)  Section 134-3(a) or 134-9(g) shall be guilty of a

8          petty misdemeanor; or

9    (3)  Section 134-3(b) shall be guilty of a petty

10          misdemeanor and the firearm shall be confiscated as

11          contraband and disposed of, if the firearm is not

12          registered within five days of the person receiving

13          notice of the violation."

14    SECTION 10.  Section 134-18, Hawaii Revised Statutes, is

15    amended to read as follows:

16    "§134-18  Qualified immunity for physicians, psychologists,

17    [or] psychiatrists, physician assistants, or advanced practice

18    registered nurses who provide information on permit or license

19    applicants.  There shall be no civil liability for any

20    physician, psychologist, [or] psychiatrist, physician assistant,

21    or advanced practice registered nurse who provides information

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  or renders an opinion in response to an inquiry made for

2  purposes of issuing a firearm permit under section 134-2<u>,</u>

3  <u>issuing or renewing a license under section 134-9,</u> or [<del>for</del>

4  <del>purposes of</del>] investigating the continuing mental health of the

5  holder of a valid firearm permit <u>or license;</u> provided that the

6  physician, psychologist, [<del>or</del>] psychiatrist<u>, physician assistant,</u>

7  <u>or advanced practice registered nurse</u> acted without malice."

8      SECTION 11.  Section 707-716, Hawaii Revised Statutes, is

9  amended by amending subsection (2) to read as follows:

10     "(2)  Terroristic threatening in the first degree is a

11  class C <u>felony</u>[<del>.</del>]<u>; provided that terroristic threatening in the</u>

12  <u>first degree is a class B felony if committed with a firearm as</u>

13  <u>defined in section 134-1, whether the firearm was loaded or not,</u>

14  <u>and whether operable or not, or a simulated firearm, while in</u>

15  <u>one of the locations or premises listed in section 134-A(a)</u>."

16      SECTION 12.  Section 846-2.7, Hawaii Revised Statutes, is

17  amended by amending subsection (b) to read as follows:

18     "(b)  Criminal history record checks may be conducted by:

19     (1)   The department of health or its designee on operators

20           of adult foster homes for individuals with

21           developmental disabilities or developmental

EXHIBIT "A"

# S.B. NO.

1  disabilities domiciliary homes and their employees, as

2  provided by section 321-15.2;

3  (2)  The department of health or its designee on

4  prospective employees, persons seeking to serve as

5  providers, or subcontractors in positions that place

6  them in direct contact with clients when providing

7  non-witnessed direct mental health or health care

8  services as provided by section 321-171.5;

9  (3)  The department of health or its designee on all

10  applicants for licensure or certification for,

11  operators for, prospective employees, adult

12  volunteers, and all adults, except adults in care, at

13  healthcare facilities as defined in section 321-15.2;

14  (4)  The department of education on employees, prospective

15  employees, and teacher trainees in any public school

16  in positions that necessitate close proximity to

17  children as provided by section 302A-601.5;

18  (5)  The counties on employees and prospective employees

19  who may be in positions that place them in close

20  proximity to children in recreation or child care

21  programs and services;

EXHIBIT "A"

# S.B. NO.

1  (6)  The county liquor commissions on applicants for liquor

2       licenses as provided by section 281-53.5;

3  (7)  The county liquor commissions on employees and

4       prospective employees involved in liquor

5       administration, law enforcement, and liquor control

6       investigations;

7  (8)  The department of human services on operators and

8       employees of child caring institutions, child placing

9       organizations, and foster boarding homes as provided

10       by section 346-17;

11  (9)  The department of human services on prospective

12       adoptive parents as established under section

13       346-19.7;

14 (10)  The department of human services or its designee on

15       applicants to operate child care facilities, household

16       members of the applicant, prospective employees of the

17       applicant, and new employees and household members of

18       the provider after registration or licensure as

19       provided by section 346-154, and persons subject to

20       section 346-152.5;

EXHIBIT "A"

# S.B. NO. <small>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</small>

1    (11)   The department of human services on persons exempt

2          pursuant to section 346-152 to be eligible to provide

3          child care and receive child care subsidies as

4          provided by section 346-152.5;

5    (12)   The department of health on operators and employees of

6          home and community-based case management agencies and

7          operators and other adults, except for adults in care,

8          residing in community care foster family homes as

9          provided by section 321-15.2;

10   (13)   The department of human services on staff members of

11         the Hawaii youth correctional facility as provided by

12         section 352-5.5;

13   (14)   The department of human services on employees,

14         prospective employees, and volunteers of contracted

15         providers and subcontractors in positions that place

16         them in close proximity to youth when providing

17         services on behalf of the office or the Hawaii youth

18         correctional facility as provided by section 352D-4.3;

19   (15)   The judiciary on employees and applicants at detention

20         and shelter facilities as provided by section 571-34;

EXHIBIT "A"

# S.B. NO.

1    (16)   The department of public safety on employees and

2            prospective employees who are directly involved with

3            the treatment and care of persons committed to a

4            correctional facility or who possess police powers

5            including the power of arrest as provided by section

6            353C-5;

7    (17)   The board of private detectives and guards on

8            applicants for private detective or private guard

9            licensure as provided by section 463-9;

10   (18)   Private schools and designated organizations on

11           employees and prospective employees who may be in

12           positions that necessitate close proximity to

13           children; provided that private schools and designated

14           organizations receive only indications of the states

15           from which the national criminal history record

16           information was provided pursuant to section 302C-1;

17   (19)   The public library system on employees and prospective

18           employees whose positions place them in close

19           proximity to children as provided by section

20           302A-601.5;

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (20)   The State or any of its branches, political
2           subdivisions, or agencies on applicants and employees
3           holding a position that has the same type of contact
4           with children, vulnerable adults, or persons committed
5           to a correctional facility as other public employees
6           who hold positions that are authorized by law to
7           require criminal history record checks as a condition
8           of employment as provided by section 78-2.7;
9    (21)   The department of health on licensed adult day care
10          center operators, employees, new employees,
11          subcontracted service providers and their employees,
12          and adult volunteers as provided by section 321-15.2;
13   (22)   The department of human services on purchase of
14          service contracted and subcontracted service providers
15          and their employees serving clients of the adult
16          protective and community services branch, as provided
17          by section 346-97;
18   (23)   The department of human services on foster grandparent
19          program, senior companion program, and respite
20          companion program participants as provided by section
21          346-97;

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (24)   The department of human services on contracted and

2            subcontracted service providers and their current and

3            prospective employees that provide home and community-

4            based services under section 1915(c) of the Social

5            Security Act, title 42 United States Code section

6            1396n(c), or under any other applicable section or

7            sections of the Social Security Act for the purposes

8            of providing home and community-based services, as

9            provided by section 346-97;

10    (25)   The department of commerce and consumer affairs on

11            proposed directors and executive officers of a bank,

12            savings bank, savings and loan association, trust

13            company, and depository financial services loan

14            company as provided by section 412:3-201;

15    (26)   The department of commerce and consumer affairs on

16            proposed directors and executive officers of a

17            nondepository financial services loan company as

18            provided by section 412:3-301;

19    (27)   The department of commerce and consumer affairs on the

20            original chartering applicants and proposed executive

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

officers of a credit union as provided by section

412:10-103;

(28) The department of commerce and consumer affairs on:

    (A) Each principal of every non-corporate applicant

        for a money transmitter license;

    (B) Each person who upon approval of an application

        by a corporate applicant for a money transmitter

        license will be a principal of the licensee; and

    (C) Each person who upon approval of an application

        requesting approval of a proposed change in

        control of licensee will be a principal of the

        licensee,

as provided by sections 489D-9 and 489D-15;

(29) The department of commerce and consumer affairs on

applicants for licensure and persons licensed under

title 24;

(30) The Hawaii health systems corporation on:

    (A) Employees;

    (B) Applicants seeking employment;

    (C) Current or prospective members of the corporation

        board or regional system board; or

EXHIBIT "A"

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        (D)   Current or prospective volunteers, providers, or

2               contractors,

3      in any of the corporation's health facilities as

4      provided by section 323F-5.5;

5   (31)  The department of commerce and consumer affairs on:

6        (A)   An applicant for a mortgage loan originator

7               license, or license renewal; and

8        (B)   Each control person, executive officer, director,

9               general partner, and managing member of an

10              applicant for a mortgage loan originator company

11              license or license renewal,

12      as provided by chapter 454F;

13   (32)  The state public charter school commission or public

14      charter schools on employees, teacher trainees,

15      prospective employees, and prospective teacher

16      trainees in any public charter school for any position

17      that places them in close proximity to children, as

18      provided in section 302D-33;

19   (33)  The counties on prospective employees who work with

20      children, vulnerable adults, or senior citizens in

21      community-based programs;

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (34)   The counties on prospective employees for fire

2            department positions that involve contact with

3            children or vulnerable adults;

4     (35)   The counties on prospective employees for emergency

5            medical services positions that involve contact with

6            children or vulnerable adults;

7     (36)   The counties on prospective employees for emergency

8            management positions and community volunteers whose

9            responsibilities involve planning and executing

10           homeland security measures including viewing,

11           handling, and engaging in law enforcement or

12           classified meetings and assisting vulnerable citizens

13           during emergencies or crises;

14    (37)   The State and counties on employees, prospective

15           employees, volunteers, and contractors whose position

16           responsibilities require unescorted access to secured

17           areas and equipment related to a traffic management

18           center;

19    (38)   The State and counties on employees and prospective

20           employees whose positions involve the handling or use

21           of firearms for other than law enforcement purposes;

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1  (39)  The State and counties on current and prospective

2  systems analysts and others involved in an agency's

3  information technology operation whose position

4  responsibilities provide them with access to

5  proprietary, confidential, or sensitive information;

6  (40)  The department of commerce and consumer affairs on:

7  (A)  Applicants for real estate appraiser licensure or

8  certification as provided by chapter 466K;

9  (B)  Each person who owns more than ten per cent of an

10  appraisal management company who is applying for

11  registration as an appraisal management company,

12  as provided by section 466L-7; and

13  (C)  Each of the controlling persons of an applicant

14  for registration as an appraisal management

15  company, as provided by section 466L-7;

16  (41)  The department of health or its designee on all

17  license applicants, licensees, employees, contractors,

18  and prospective employees of medical cannabis

19  dispensaries, and individuals permitted to enter and

20  remain in medical cannabis dispensary facilities as

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1           provided under sections 329D-15(a)(4) and

2           329D-16(a)(3);

3   (42)  The department of commerce and consumer affairs on

4           applicants for nurse licensure or license renewal,

5           reactivation, or restoration as provided by sections

6           457-7, 457-8, 457-8.5, and 457-9;

7   (43)  The county police departments on applicants for

8           permits to acquire firearms pursuant to section 134-2

9           [and], on individuals registering their firearms

10          pursuant to section 134-3[.], and on applicants for

11          new or renewed licenses to carry a pistol or revolver

12          and ammunition pursuant to section 134-9;

13  (44)  The department of commerce and consumer affairs on:

14       (A)  Each of the controlling persons of the applicant

15            for licensure as an escrow depository, and each

16            of the officers, directors, and principals who

17            will be in charge of the escrow depository's

18            activities upon licensure; and

19       (B)  Each of the controlling persons of an applicant

20            for proposed change in control of an escrow

21            depository licensee, and each of the officers,

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1               directors, and principals who will be in charge

2               of the licensee's activities upon approval of the

3               application,

4     as provided by chapter 449;

5    (45)  The department of taxation on current or prospective

6               employees or contractors who have access to federal

7               tax information in order to comply with requirements

8               of federal law, regulation, or procedure, as provided

9               by section 231-1.6;

10    (46)  The department of labor and industrial relations on

11               current or prospective employees or contractors who

12               have access to federal tax information in order to

13               comply with requirements of federal law, regulation,

14               or procedure, as provided by section 383-110;

15    (47)  The department of human services on current or

16               prospective employees or contractors who have access

17               to federal tax information in order to comply with

18               requirements of federal law, regulation, or procedure,

19               as provided by section 346-2.5;

20    (48)  The child support enforcement agency on current or

21               prospective employees, or contractors who have access

EXHIBIT "A"

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        to federal tax information in order to comply with

2        federal law, regulation, or procedure, as provided by

3        section 576D-11.5;

4    (49)  The department of the attorney general on current or

5        prospective employees or employees or agents of

6        contractors who have access to federal tax information

7        to comply with requirements of federal law,

8        regulation, or procedure, as provided by section 28-

9        17;

10  [+] (50) [+] The department of commerce and consumer affairs on

11        each control person, executive officer, director,

12        general partner, and managing member of an installment

13        loan licensee, or an applicant for an installment loan

14        license, as provided in chapter 480J;

15  [+] (51) [+] The University of Hawaii on current and prospective

16        employees and contractors whose duties include

17        ensuring the security of campus facilities and

18        persons; and

19  [+] (52) [+] Any other organization, entity, or the State, its

20        branches, political subdivisions, or agencies as may

21        be authorized by state law."

EXHIBIT "A"

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    SECTION 13.  Act 30, Session Laws of Hawaii 2022, is

2    amended by amending section 5 to read as follows:

3    "SECTION 5.  This Act shall take effect upon its approval[~

4    ~~provided that on June 30, 2025, section 2 of this Act shall be~~

5    ~~repealed and section 134-3, Hawaii Revised Statutes, shall be~~

6    ~~reenacted in the form in which it read on the day before the~~

7    ~~effective date of this Act~~]."

8    SECTION 14.  Every provision in this Act and every

9    application of each provision in this Act is severable from each

10    other.  If any application of any provision in this Act to any

11    person or group of persons or circumstances is determined by any

12    court to be invalid, the remainder of this Act and the

13    application of the Act's provisions to all other persons and

14    circumstances shall not be affected.  All constitutionally valid

15    applications of this Act shall be severed from any applications

16    that a court determines to be invalid or unenforceable, leaving

17    the valid applications in force, because it is the legislature's

18    intent that all valid applications shall remain in force.

19    SECTION 15.  This Act shall be construed to be enforceable

20    up to but no further than the maximum possible extent consistent

21    with federal law and constitutional requirements.

EXHIBIT "A"

# S.B. NO. <small>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</small>

1      SECTION 16.  In codifying the new sections added by section

2  2 of this Act, the revisor of statutes shall substitute

3  appropriate section numbers for the letters used in designating

4  the new sections in this Act.

5      SECTION 17.  Statutory material to be repealed is bracketed

6  and stricken.  New statutory material is underscored.

7      SECTION 18.  This Act shall take effect on July 1, 2023;

8  provided that:

9     (1)   Sections 4 and 7 shall take effect on January 1, 2024;

10         and

11    (2)   The amendments made to section 846-2.7(b), Hawaii

12         Revised Statutes, by section 12 of this Act shall not

13         be repealed when section 28 of Act 278, Session Laws

14         of Hawaii 2022, takes effect on January 1, 2024.

EXHIBIT "A"

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

**Report Title:**
Firearms; Permits; Licenses; Enforcement

**Description:**
Prohibits firearms in certain locations and premises. Requires
possession and disclosure of a license to carry. Prohibits
leaving an unsecured firearm in a vehicle unattended. Prohibits
consuming or being under the influence of alcohol, an
intoxicating liquor, or a controlled substance when carrying a
firearm. Prohibits carrying or possessing firearms on certain
private property without express authorization. Requires annual
reports from the department of the attorney general on carry
licenses. Amends the requirements for, and revocation of,
firearms permits and licenses. Amends the disqualification of
persons from owning, possessing, or controlling a firearm.
Expands the qualified immunity for health care providers who
provide information on firearms applicants to include physician
assistants and advanced practice registered nurses. (CD1)

*The summary description of legislation appearing on this page is for informational purposes only and is
not legislation or evidence of legislative intent.*

2023-2744 SB1230 CD1 SMA-2.docx

EXHIBIT "A"

# SB1230 SD2 HD1 CD1



| | |
|---|---|
| **Measure Title:** | RELATING TO FIREARMS. |
| **Report Title:** | Firearms; Permits; Licenses; Enforcement |
| **Description:** | Prohibits firearms in certain locations and premises. Requires possession and disclosure of a license to carry. Prohibits leaving an unsecured firearm in a vehicle unattended. Prohibits consuming or being under the influence of alcohol, an intoxicating liquor, or a controlled substance when carrying a firearm. Prohibits carrying or possessing firearms on certain private property without express authorization. Requires annual reports from the department of the attorney general on carry licenses. Amends the requirements for, and revocation of, firearms permits and licenses. Amends the disqualification of persons from owning, possessing, or controlling a firearm. Expands the qualified immunity for health care providers who provide information on firearms applicants to include physician assistants and advanced practice registered nurses. (CD1) |
| **Companion:** | |
| **Package:** | None |
| **Current Referral:** | JHA, FIN |
| **Introducer(s):** | WAKAI, CHANG, RHOADS, SHIMABUKURO, Keohokalole, Moriwaki |

| Sort by Date | | Status Text |
|---|---|---|
| 5/4/2023 | S | Enrolled to Governor. |
| 5/4/2023 | S | Received notice of passage on Final Reading in House (Hse. Com. No. 900). |
| 5/2/2023 | H | Received notice of Final Reading (Sen. Com. No. 993). |
| 5/2/2023 | H | Passed Final Reading as amended in CD 1 with none voting aye with reservations; Representative(s) Alcos, Garcia, Gates, Kila, Kong, Matsumoto, Pierick, Souza, Ward voting no (9) and Representative(s) Quinlan excused (1). |
| 5/2/2023 | S | Passed Final Reading, as amended (CD 1). Ayes, 22; Aye(s) with reservations: Senator(s) DeCoite. Noes, 3 (Senator(s) Awa, Fevella, Gabbard). Excused, 0 (none). |
| 4/28/2023 | H | Forty-eight (48) hours notice Tuesday, 05-02-23. |
| 4/28/2023 | H | Reported from Conference Committee (Conf Com. Rep. No. 128) as amended in (CD 1). |
| 4/28/2023 | S | 48 Hrs. Notice (as amended CD 1) 05-02-23. |
| 4/28/2023 | S | Reported from Conference Committee as amended CD 1 (Conf. Com. Rep. No. 128). |
| 4/28/2023 | H | The Conference Committee recommends that the measure be Passed, with Amendments. The votes were as follows: 4 Ayes: Representative(s) Tarnas, Yamashita, Kitagawa, Takayama; Ayes with reservations: none; 0 Noes: none; and 0 Excused: none. |
| 4/28/2023 | S | The Conference committee recommends that the measure be PASSED, WITH AMENDMENTS. The votes of the Senate Conference Managers were as follows: 3 Aye(s): Senator(s) Wakai, Rhoads, Elefante; Aye(s) with reservations: none ; 0 No(es): none; and 0 Excused: none. |

EXHIBIT "B"

| 4/27/2023 | S | Conference committee meeting to reconvene on 04-28-23 3:45PM; Conference Room 016. |
|---|---|---|
| 4/26/2023 | S | Conference committee meeting to reconvene on 04-27-23 4:30PM; Conference Room 016. |
| 4/25/2023 | S | Conference committee meeting scheduled for 04-26-23 4:45PM; Conference Room 016. |
| 4/24/2023 | H | Received notice of Senate conferees (Sen. Com. No. 976). |
| 4/24/2023 | S | Senate Conferees Appointed: Wakai Chair; Rhoads Co-Chair; Elefante. |
| 4/24/2023 | S | Received notice of appointment of House conferees (Hse. Com. No. 840). |
| 4/21/2023 | H | House Conferees Appointed: Tarnas, Yamashita Co-Chairs; Kitagawa, Takayama. |
| 4/13/2023 | H | Received notice of disagreement (Sen. Com. No. 888). |
| 4/13/2023 | S | Senate disagrees with House amendments. |
| 4/13/2023 | S | Received from House (Hse. Com. No. 775). |
| 4/11/2023 | H | Passed Third Reading with none voting aye with reservations; Representative(s) Alcos, Garcia, Gates, Kila, Kong, Matsumoto, Pierick, Souza, Ward voting no (9) and Representative(s) Todd excused (1). Transmitted to Senate. |
| 4/6/2023 | H | Reported from FIN (Stand. Com. Rep. No. 2154), recommending passage on Third Reading. |
| 4/5/2023 | H | The committee on FIN recommend that the measure be PASSED, UNAMENDED. The votes were as follows: 14 Ayes: Representative(s) Yamashita, Kitagawa, Aiu, Chun, Cochran, Garrett, Kahaloa, Kobayashi, Morikawa, Poepoe, Takenouchi; Ayes with reservations: Representative(s) Lamosao, Alcos, Ward; 1 Noes: Representative(s) Kila; and 1 Excused: Representative(s) Nishimoto. |
| 4/3/2023 | H | Bill scheduled to be heard by FIN on Wednesday, 04-05-23 2:00PM in House conference room 308 VIA VIDEOCONFERENCE. |
| 3/24/2023 | H | Passed Second Reading as amended in HD 1 and referred to the committee(s) on FIN with none voting aye with reservations; Representative(s) Alcos, Garcia, Kila, Kong, Matsumoto, Pierick, Souza, Ward voting no (8) and Representative(s) Ilagan excused (1). |
| 3/24/2023 | H | Reported from JHA (Stand. Com. Rep. No. 1575) as amended in HD 1, recommending passage on Second Reading and referral to FIN. |
| 3/21/2023 | H | The committee on JHA recommend that the measure be PASSED, WITH AMENDMENTS. The votes were as follows: 8 Ayes: Representative(s) Tarnas, Takayama, Ganaden, Holt, Hashimoto, Ichiyama, Ilagan, Mizuno; Ayes with reservations: none; 2 Noes: Representative(s) Kong, Souza; and Excused: none. |
| 3/17/2023 | H | Bill scheduled to be heard by JHA on Tuesday, 03-21-23 2:00PM in House conference room 325 VIA VIDEOCONFERENCE. |
| 3/9/2023 | H | Referred to JHA, FIN, referral sheet 17 |
| 3/9/2023 | H | Pass First Reading |
| 3/7/2023 | H | Received from Senate (Sen. Com. No. 391) in amended form (SD 2). |
| 3/7/2023 | S | Report Adopted; Passed Third Reading, as amended (SD 2). Ayes, 22; Aye(s) with reservations: none. Noes, 3 (Senator(s) Awa, Fevella, Gabbard). Excused, 0 (none). Transmitted to House. |
| 3/3/2023 | S | 48 Hrs. Notice 03-07-23. |
| 3/3/2023 | S | Reported from JDC (Stand. Com. Rep. No. 1082) with recommendation of passage on Third Reading, as amended (SD 2). |

EXHIBIT "B"

| 3/1/2023 | S | The committee(s) on JDC recommend(s) that the measure be PASSED, WITH AMENDMENTS. The votes in JDC were as follows: 4 Aye(s): Senator(s) Rhoads, Elefante, San Buenaventura; Aye(s) with reservations: Senator(s) Gabbard ; 0 No(es): none; and 1 Excused: Senator(s) Awa. |
| 2/24/2023 | S | The committee(s) on JDC will hold a public decision making on 03-01-23 9:30AM; Conference Room 016 & Videoconference. |
| 2/14/2023 | S | Report adopted; Passed Second Reading, as amended (SD 1) and referred to JDC. |
| 2/14/2023 | S | Reported from PSM (Stand. Com. Rep. No. 257) with recommendation of passage on Second Reading, as amended (SD 1) and referral to JDC. |
| 2/6/2023 | S | The committee(s) on PSM recommend(s) that the measure be PASSED, WITH AMENDMENTS. The votes in PSM were as follows: 4 Aye(s): Senator(s) Wakai, Elefante, Fukunaga, McKelvey; Aye(s) with reservations: none ; 1 No(es): Senator(s) Awa; and 0 Excused: none. |
| 2/3/2023 | S | The committee(s) on PSM has scheduled a public hearing on 02-06-23 3:00PM; Conference Room 225 & Videoconference. |
| 1/30/2023 | S | Referred to PSM, JDC. |
| 1/25/2023 | S | Passed First Reading. |
| 1/25/2023 | S | Introduced. |

S = Senate | H = House | D = Data Systems | $ = Appropriation measure | ConAm = Constitutional Amendment

Some of the above items require Adobe Acrobat Reader. Please visit Adobe's download page for detailed instructions.

## SB1230 SD2 HD1 CD1



**GOV. MSG. NO. 1130**

EXECUTIVE CHAMBERS
HONOLULU

DAVID Y. IGE
GOVERNOR

June 3, 2022

The Honorable Ronald D. Kouchi,
    President
    and Members of the Senate
Thirty-First State Legislature
State Capitol, Room 409
Honolulu, Hawaiʻi 96813

The Honorable Scott K. Saiki,
    Speaker and Members of the
    House of Representatives
Thirty-First State Legislature
State Capitol, Room 431
Honolulu, Hawaiʻi 96813

Dear President Kouchi, Speaker Saiki, and Members of the Legislature:

This is to inform you that on June 3, 2022, the following bill was signed into law:

HB2075 HD1 SD1 CD1          RELATING TO FIREARMS.
                            **ACT 030**

Sincerely,

DAVID Y. IGE
Governor, State of Hawaiʻi

EXHIBIT "C"

Case: 24-6795, 05/04/2023, ID: 12713160, DktEntry: 80, Page 98 of 115

Approved by the Governor

on _____ JUN 0 3 2022

**ACT 030**

HOUSE OF REPRESENTATIVES
THIRTY-FIRST LEGISLATURE, 2022
STATE OF HAWAII

**H.B. NO.** 2075
H.D. 1
S.D. 1
C.D. 1

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1    SECTION 1. The legislature finds that the public safety of

2    its residents is of paramount concern. Indeed, the

3    responsibility to "provide for the safety of the people from

4    crimes against persons and property" is specified in the State

5    Constitution. Addressing gun violence is a key part of this

6    responsibility and consequently the State has enacted

7    comprehensive and robust gun protection laws.

8    The legislature further finds that Hawaiʻi's laws have led

9    to Hawaiʻi being a national leader in low rates of gun violence

10    incidents. Whereas nationwide there are annually more than

11    thirty thousand deaths related to gun violence, in Hawaiʻi there

12    are less than fifty gun violence deaths per year at a rate of

13    less than five gun deaths per every one hundred thousand people.

14    Hawaiʻi cumulatively ranks number one as the state with the

15    lowest number of deaths and the lowest rate of deaths due to gun

16    violence. According to the Centers for Disease Control and

17    Prevention annual statistics, Hawaiʻi had the lowest number of

EXHIBIT "C"

# H.B. NO. 2075
H.D. 1
S.D. 1
C.D. 1

1   deaths and lowest death rate attributed to gun violence in 2020.

2   In 2019, Hawaiʻi had the second lowest number of deaths and the

3   fourth lowest death rate.  In 2018, it had the second lowest

4   deaths and third lowest death rate; in 2017, the lowest deaths

5   and lowest death rate; in 2016, the second lowest deaths and

6   fourth lowest death rate; in 2015, the second lowest deaths and

7   second lowest death rate; and in 2014, the second lowest deaths

8   and lowest death rate.

9       The legislature recognizes that the ruling by the United

10   States District Court for the District of Hawaiʻi in *Yukutake v.*

11   *Connors*, 554 F.Supp.3d 1074 (D. Haw. 2021), invalidated the

12   State's ten-day expiration period for a permit to acquire a

13   pistol or revolver and the requirement that all firearms be

14   physically inspected at the time of registration.  While the

15   State's appeal is pending, the law related to the ten-day permit

16   expiration period continues to be in effect as the court stayed

17   its holding, whereas the physical inspection requirement was not

18   stayed and thus its enforcement is suspended.

19       The legislature finds that the laws discussed in *Yukutake*

20   furthered the important government interest of public safety and

21   in a manner that is substantially related to that interest.  The

EXHIBIT "C"

# H.B. NO. 2075
H.D. 1
S.D. 1
C.D. 1

1    legislature supports efforts to appeal the decision to the Ninth

2    Circuit Court of Appeals.  In the meantime, the legislature

3    cannot allow for all firearms to be registered without

4    inspection.  Even if the *Yukutake* ruling is upheld, Hawaiʻi's

5    important interest in protecting public safety justifies the

6    physical inspection of certain narrow categories of firearms at

7    the time of registration.  This interest is also based on the

8    extensive knowledge and experience of the Hawaiʻi law enforcement

9    community and legislature regarding registration requirements,

10   including serial numbers, from the time these requirements were

11   originally adopted in Hawaiʻi in the early twentieth century,

12   e.g., via Act 85, Session Laws of the Territory of Hawaii 1907.

13       The legislature also finds that around the time of the

14   Second Amendment's ratification in 1791, and in the decades

15   preceding, laws requiring inspection of personal weapons existed

16   at the federal level and throughout the original states.  These

17   laws were part of militia requirements, which mandated that

18   individuals subject to militia duty -- typically white men in a

19   specified age range -- must acquire their own arms and

20   ammunition.  The laws described the weapons required and

21   provided for regular inspection by militia officers.  *Yukutake*,

EXHIBIT "C"

# H.B. NO. 2075
H.D. 1
S.D. 1
C.D. 1

1  554 F.Supp.3d at 1087.  The historical tradition of requiring

2  in-person inspection of firearms provides a robust historical

3  basis for Hawaiʻi's law.  Just as militia officers would inspect

4  (and frequently record) members' personal weapons to ensure that

5  they comported with militia weaponry requirements, Hawaiʻi's law

6  requires police officers to inspect and register guns in person

7  to verify that they comport with the information provided in the

8  registration form.  In fact, by mandating regular and repeated

9  in-person firearm inspections, these historical laws imposed a

10  much greater burden on militia-eligible gun owners than would

11  such a comparatively modest one-time check.  *Id.* at 1087.

12     The legislature finds moreover that a central function of

13  Hawaiʻi's law and the historical laws is the same: to ensure that

14  the firearm an individual possesses matches the applicable

15  specifications of, in Hawaiʻi's situation, the registration

16  requirements, and in the historical cases of the militia laws.

17  Requiring people to bring the firearm to be registered for

18  physical inspection ensures that the registration information is

19  accurate, ensures that the firearm complies with Hawaiʻi law, and

20  confirms the identity of the firearm so as to facilitate tracing

21  by law enforcement.  The physical inspection requirement has

# H.B. NO. 2075
### H.D. 1
### S.D. 1
### C.D. 1

1  existed in Hawaiʻi law and practice for many years.  Section

2  134-3, Hawaii Revised Statutes, specifically exempts firearms

3  dealers from being "required to have the firearms physically

4  inspected by the chief of police at the time of registration",

5  and non-dealer registrants are not exempted.  It was understood

6  that non-dealer registrants needed to bring their firearms for

7  physical inspection at time of registration.  *Yukutake*, however,

8  focused on new language added to the statute by Act 74, Session

9  Laws of Hawaii 2020, that went into effect on September 15,

10  2020, that explicitly codified the requirement that "[a]ll other

11  firearms and firearm receivers registered" be physically

12  inspected at the time of registration.

13      In this Act, the legislature is requiring physical

14  inspection of certain firearms over a three-year period while

15  the *Yukutake* appeal proceeds.  The temporary inspection

16  requirements are narrowly tailored and limited to specific

17  situations that necessitate inspection:  firearms that were not

18  manufactured with serial numbers, or "ghost guns"; firearms

19  transported into the State from another jurisdiction; and

20  firearms obtained in private sales and transfers.  The

21  legislature further finds that an in-person inspection when

EXHIBIT "C"

# H.B. NO.
2075
H.D. 1
S.D. 1
C.D. 1

1  registering a firearm serves an additional significant,

2  substantial, and important government interest by minimizing the

3  risk of prosecution to firearms owners who are not aware of the

4  illegality of their firearms.

5       Regarding the first category to be inspected under this

6  Act, firearms and firearm receivers that are assembled without

7  serial numbers or other identification markings, these weapons

8  circumvent the State's otherwise strict firearm permitting and

9  registration laws and pose a danger to public safety inasmuch as

10  they are untraceable by law enforcement.  The lack of

11  identification on the firearms and firearm receivers led to the

12  label "ghost guns".  Ghost guns are the fastest-growing gun

13  safety problem facing our country and becoming a weapon of

14  choice for violent criminals, gun traffickers, and other legally

15  prohibited persons.  In 2020, Hawaiʻi enacted Act 74 that

16  requires the permanent engraving or embedding of a registration

17  number on the firearm receiver by the person registering the

18  firearm, to ensure public safety.  The legislature finds that it

19  is necessary for police departments to inspect the engraving or

20  embedding, even when done by a licensed dealer, to ensure that

21  it is done legibly, permanently, and accurately.  Due to human



EXHIBIT "C"

Page 7

# H.B. NO. <small>2075<br>H.D. 1<br>S.D. 1<br>C.D. 1</small>

1   error, it is not enough to simply assume that the registration

2   number is properly engraved or embedded and also properly

3   recorded in registration records, and it is the experience of

4   Hawaiʻi firearm officials that mistakes can and have been made in

5   the recording of serial numbers.  Thus, a physical inspection of

6   the firearm is necessary to address that risk.

7       The second category to be inspected under this Act,

8   firearms brought into the State from other jurisdictions, will

9   safeguard against persons possessing firearms that are illegal

10  under Hawaiʻi law.  The legislature finds that firearms laws in

11  other states are often very different from the firearms laws in

12  Hawaiʻi and there is an important public safety interest in

13  discovering illegal firearms brought into Hawaiʻi, as well as an

14  important government interest in doing so in a manner that

15  minimizes unnecessary prosecution of those who unknowingly do

16  so.  For example, pursuant to sections 134-8 and 134-8.5, Hawaii

17  Revised Statutes, assault pistols, automatic firearms, rifles

18  and shotguns with certain barrel lengths, certain large capacity

19  magazines, and bump fire stocks, among other things, are not

20  allowed in Hawaiʻi.  A person who is not a licensed dealer may

21  not be aware that the features, modifications, or accessories of



EXHIBIT "C"

# H.B. NO.

2075
H.D. 1
S.D. 1
C.D. 1

1  their firearms are illegal in Hawaiʻi and may attempt to bring

2  these firearms into the State.

3      Similarly, for the third category that will be required to

4  submit to inspection under this Act, firearms transferred or

5  obtained in private sales, people participating in private sales

6  or transfers of firearms may not be aware that the firearms are

7  illegal.  Unlike licensed firearm dealers who are required to

8  keep detailed, audited records and are familiar with Hawaiʻi's

9  firearm laws, private sellers can be unfamiliar with the

10  technical details of the firearms and with the requirements of

11  Hawaiʻi law.  They may not know which features, modifications, or

12  accessories are illegal under Hawaiʻi law.

13      Therefore, the legislature finds that an in-person

14  inspection at the time of registration is supported by the

15  significant, substantial, and important government interest in

16  protecting public safety.  The legislature further finds that

17  the requirement reasonably fits that objective, and is in fact

18  narrowly tailored, because it is limited to certain specific

19  situations that have an exceptional need for inspection, e.g.,

20  ghost guns, firearms coming from out of state, and firearms in

21  private sales and transfers.  The legislature further finds that



EXHIBIT "C"

# H.B. NO. 2075
H.D. 1
S.D. 1
C.D. 1

1    in-person inspection at registration serves an additional

2    significant, substantial, and important government interest in

3    minimizing the risk that gun owners who are not aware of the

4    illegality of their firearms will be prosecuted.

5        The purpose of this Act is to enact a three-year physical

6    inspection requirement at the time of registration for firearms

7    that were not manufactured with serial numbers, or ghost guns,

8    firearms transported into the State from another jurisdiction,

9    and firearms obtained in private sales and transfers.

10       SECTION 2.  Section 134-3, Hawaii Revised Statutes, is

11   amended by amending subsections (a) to (c) to read as follows:

12       "(a)  Every resident or other person arriving in the State

13   who brings or by any other manner causes to be brought into the

14   State a firearm of any description, whether usable or unusable,

15   serviceable or unserviceable, modern or antique, shall register

16   and submit to physical inspection the firearm within five days

17   after arrival of the person or of the firearm, whichever arrives

18   later, with the chief of police of the county of the person's

19   place of business or, if there is no place of business, the

20   person's residence or, if there is neither a place of business

21   nor residence, the person's place of sojourn.  A nonresident



# H.B. NO. <span>2075<br>H.D. 1<br>S.D. 1<br>C.D. 1</span>

1 alien may bring firearms not otherwise prohibited by law into

2 the State for a continuous period not to exceed ninety days;

3 provided that the person meets the registration requirement of

4 this section and the person possesses:

5     (1)   A valid Hawaii hunting license procured under chapter

6         183D, part II, or a commercial or private shooting

7         preserve permit issued pursuant to section 183D-34;

8     (2)   A written document indicating the person has been

9         invited to the State to shoot on private land; or

10     (3)   Written notification from a firing range or target

11         shooting business indicating that the person will

12         actually engage in target shooting.

13 The nonresident alien shall be limited to a nontransferable

14 registration of [~~not~~] no more than ten firearms for the purpose

15 of the above activities.

16     Every person registering a firearm under this subsection

17 shall be fingerprinted and photographed by the police department

18 of the county of registration; provided that this requirement

19 shall be waived where fingerprints and photographs are already

20 on file with the police department. The police department shall

21 perform an inquiry on the person by using the International



EXHIBIT "C"

Page 11

# H.B. NO. <span>2075<br>H.D. 1<br>S.D. 1<br>C.D. 1</span>

1   Justice and Public Safety Network, including the United States

2   Immigration and Customs Enforcement query, the National Crime

3   Information Center, and the National Instant Criminal Background

4   Check System, pursuant to section 846-2.7 before any

5   determination to register a firearm is made.  Any person

6   attempting to register a firearm, a firearm receiver, or the

7   parts used to assemble a firearm, and who is found to be

8   disqualified from ownership, possession, or control of firearms

9   or ammunition under section 134-7, shall surrender or dispose of

10  all firearms and ammunition pursuant to section 134-7.3.

11      (b)  Every person who acquires a firearm pursuant to

12  section 134-2 shall register the firearm in the manner

13  prescribed by this section within five days of acquisition.  <u>If

14  the firearm is acquired from a person who is not a dealer

15  licensed under section 134-31 or a dealer licensed by the United

16  States Department of Justice, the firearm shall be physically

17  inspected by the chief of police of the appropriate county or

18  designee at the time of registration.</u>  The registration of all

19  firearms shall be on forms prescribed by the attorney general,

20  which shall be uniform throughout the State, and shall include

21  the following information:  name of the manufacturer and

2022-3210 HB2075 CD1 HMSO-1                                      11



EXHIBIT "C"

# H.B. NO. 2075
### H.D. 1
### S.D. 1
### C.D. 1

1  importer; model; type of action; caliber or gauge; serial

2  number; and source from which receipt was obtained, including

3  the name and address of the prior registrant.  If the firearm

4  has been assembled from separate parts and an unfinished firearm

5  receiver, the entity that registered the firearm receiver shall

6  be recorded in the space provided for the name of the

7  manufacturer and importer, and the phrase "assembled from parts"

8  shall be recorded in the space provided for model.  If the

9  firearm has been assembled from parts created using a three-

10  dimensional printer, the entity that registered the firearm

11  receiver shall be recorded in the space provided for the name of

12  the manufacturer and importer, and the phrase "3-D printer"

13  shall be recorded in the space provided for model.  If the

14  firearm has no serial number, the registration number shall be

15  entered in the space provided for the serial number, and the

16  registration number shall be engraved upon the receiver portion

17  of the firearm before registration.  On firearms assembled from

18  parts created using a three-dimensional printer, the [serial]

19  registration number shall be engraved on stainless steel [and],

20  permanently embedded to the firearm receiver during fabrication

21  or construction[.], and visible when the firearm is assembled.



EXHIBIT "C"

# H.B. NO.

2075
H.D. 1
S.D. 1
C.D. 1

1  Firearms and firearm receivers with engraved or embedded

2  registration numbers, even if done by a dealer licensed under

3  section 134-31 or a dealer licensed by the United States

4  Department of Justice, shall be physically inspected by the

5  chief of police of the appropriate county or designee at the

6  time of registration.  All registration data that would identify

7  the individual registering the firearm by name or address shall

8  be confidential and shall not be disclosed to anyone, except as

9  may be required:

10      (1)  For processing the registration;

11      (2)  For database management by the Hawaii criminal justice

12           data center;

13      (3)  By a law enforcement agency for the lawful performance

14           of its duties; or

15      (4)  By order of a court.

16      (c)  Dealers licensed under section 134-31 or dealers

17  licensed by the United States Department of Justice shall

18  register firearms pursuant to this section on registration forms

19  prescribed by the attorney general and shall not be required to

20  have the firearms physically inspected by the chief of police at

21  the time of registration[.], except as provided in subsection

# H.B. NO.
2075
H.D. 1
S.D. 1
C.D. 1

1  (b). An authorized dealer, as provided in section 134-31, or a

2  dealer licensed by the United States Department of Justice, who

3  brings, assembles, or causes to be brought into the State by any

4  other means, separate parts and an unfinished firearm receiver

5  that when assembled create a firearm, or parts created by a

6  three-dimensional printer that when assembled create a firearm,

7  shall register the unfinished firearm receiver and receive a

8  serial number before the assembly of the firearm or the sale or

9  transfer of unassembled firearm parts or a receiver to a third

10  party in accordance with subsection (b). Any sale or transfer

11  of unfinished firearm receivers by an authorized dealer to a

12  third party shall be conducted as if they were fully assembled

13  firearms with a serial number engraved on the firearm receiver

14  and in accordance with the firearms permitting process in

15  section 134-2. [All other firearms and firearm receivers

16  registered under this section shall be physically inspected by

17  the respective county chief of police or the chief's

18  representative at the time of registration.]"

19      SECTION 3. If any provision of this Act, or the

20  application thereof to any person or circumstance, is held

21  invalid, the invalidity does not affect other provisions or

EXHIBIT "C"

# H.B. NO. 2075
H.D. 1
S.D. 1
C.D. 1

1  applications of the Act that can be given effect without the

2  invalid provision or application, and to this end the provisions

3  of this Act are severable.

4  　　　SECTION 4.  Statutory material to be repealed is bracketed

5  and stricken.  New statutory material is underscored.

6  　　　SECTION 5.  This Act shall take effect upon its approval;

7  provided that on June 30, 2025, section 2 of this Act shall be

8  repealed and section 134-3, Hawaii Revised Statutes, shall be

9  reenacted in the form in which it read on the day before the

10  effective date of this Act.

11  　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　.

APPROVED this　　03 day of　　　JUNE　　, 2022

GOVERNOR OF THE STATE OF HAWAII

EXHIBIT "C"

HB No. 2075, HD 1, SD 1, CD 1

THE HOUSE OF REPRESENTATIVES OF THE STATE OF HAWAII

Date: May 3, 2022
Honolulu, Hawaii

We hereby certify that the above-referenced Bill on this day passed Final Reading in the

House of Representatives of the Thirty-First Legislature of the State of Hawaii, Regular Session

of 2022.

Scott K. Saiki
Speaker
House of Representatives

Brian L. Takeshita
Chief Clerk
House of Representatives

EXHIBIT "C"

H.B. No. 2075, H.D. 1, S.D. 1, C.D. 1

# THE SENATE OF THE STATE OF HAWAI'I

Date: May 3, 2022
Honolulu, Hawaii 96813

We hereby certify that the foregoing Bill this day passed Final Reading in the Senate

of the Thirty-First Legislature of the State of Hawai'i, Regular Session of 2022.


President of the Senate

Clerk of the Senate

53-22

EXHIBIT "C"

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED:  Honolulu, Hawai'i, May 4, 2023.

      s/ Robert T. Nakatsuji

ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendant-Appellant ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawai'i