No. 21-16756

# In the United States Court of Appeals
## for the Ninth Circuit

TODD YUKUTAKE AND DAVID KIKUKAWA
*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAI'I,[1]
*Defendant-Appellant*,

AND

CITY AND COUNTY OF HONOLULU[2]
*Defendant*

**Appeal from a Judgment of United States District Court
For the District of Hawaii; Civ. No. 1:19-cv-00578-JMS-RT
Honorable Chief District Court Judge J. Michael Seabright**

**Appellees' Opposition to Defendant's Motion To Dismiss**

| | |
|---|---|
| ALAN ALEXANDER BECK | STEPHEN D. STAMBOULIEH |
| 2692 Harcourt Drive | STAMBOULIEH LAW, PLLC |
| San Diego, CA 92123 | P.O. Box 428 |
| Telephone: (619) 905-9105 | Olive Branch, MS 38654 |
| alan.alexander.beck@gmail.com | Telephone: (601) 852-3440 |
| | stephen@sdslaw.us |

*Attorneys for Appellees Todd Yukutake and David Kikukawa*

---

[1] ANNE E. LOPEZ is automatically substituted as Attorney General pursuant to Fed. R. App. P. 42(c)(2).

[2] The City and County of Honolulu was dismissed by stipulation in the lower court.

Introduction

The Attorney General's ("Hawaii") most recent filing is simply a transparent attempt to vacate an unfavorable trial court ruling. There are no grounds for this Court to find this appeal moot. The Supreme Court has made clear that it views "post-certiorari maneuvers designed to insulate" decisions "from review by this Court" with considerable skepticism. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). This Court should be likewise skeptical on post-appeal maneuvers.

Hawaii's proposed new law has not even been enacted into law as yet. Even if the Governor signs Senate Bill 1230, 32nd Leg., Reg. Sess. (2023) ("SB 1230"), this will not give Plaintiffs all the relief sought. As shown below, Plaintiffs will still be burdened by an Hawaii law which would **still** be unconstitutional under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and Plaintiffs will thus suffer ongoing harm that is redressable by this Court. Even if this were not the case, voluntary cessation principles underscore the propriety of preserving the prospect of such relief. Furthermore, even if this Court finds Plaintiffs' claims moot, Hawaii's claim that the trial court's judgment should be vacated is frivolous. Precedent is clear, when a party causes a case to be mooted, it cannot then have a lower court judgement vacated. For the reasons laid out below, Hawaii's motion should be denied.

# ARGUMENT

## I. SB 1230 Violates the Second Amendment

### A. *Bruen*

As the Supreme Court has now reiterated in *Bruen*, the Second and Fourteenth Amendments together guarantee individual Americans not only the right to "keep" firearms in their homes, but also the right to "bear arms," meaning "to carry a handgun for self-defense outside the home," free from infringement by either federal or state governments. *Bruen*, at 2122. In *Bruen*, the Supreme Court first "decline[d] to adopt that two-part approach" used in this and other circuits, and reiterated that, "[i]n keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126. Second, the Supreme Court held that:

> [t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' [Bruen, at 2126 (citation omitted).]

Third, in reviewing the historical evidence, because "not all history is created equal," the *Bruen* Court cabined review of relevant history to a narrow time period, focusing on the period around the ratification of the Second Amendment, and perhaps the Fourteenth Amendment (but noted that "post-ratification"

3

interpretations "cannot overcome or alter that text," and "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). *See Bruen*, at 2137 (discussing the lack of relevant historical prohibitions on concealed carry in public).

Under the *Bruen* test, then, it does not matter whether a government restriction "minimally" or "severely" burdens (infringes) the Second Amendment. There are no relevant statistical studies to be consulted. There are no sociological arguments to be considered. There is no balancing of the right against any state interest. The ubiquitous problems of crime or the density of population do not affect the equation. The only appropriate inquiry, according to *Bruen*, is what the "public understanding of the right to keep and bear arms" was during ratification of the Second Amendment in 1791. Post-Civil War statutes may be looked to as confirmation of the original understanding during the Founding, but cannot contravene the text or serve to contradict Founding era traditions.. *Bruen*, at 2137.[3]

---

[3] With respect to whether post-founding historical sources have any role at all to play in the analysis, the Supreme Court technically left the question open, finding it unnecessary to its decision in *Bruen*. 142 S. Ct. at 2138. Nevertheless, as the Court has repeatedly made clear even prior to *Bruen*, Reconstruction-era historical sources are to be used (at most) only *as confirmation* of a historical tradition that was already in existence during the founding. For example, in *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), the Court rejected the fact that "more than 30 States" had enacted a certain type of legislation in the mid-to-late 19th century, explaining that even such a pattern "cannot by itself establish an early American

In striking down New York's discretionary "proper cause" requirement, the Supreme Court found no Founding era historical tradition that permits a state to condition the right to carry arms in public on subjective requirements within the discretion of licensing officials. In doing so, the Court pointed to the entirely different "shall-issue" licensing schemes that a supermajority of states have implemented, so long as they "contain only 'narrow, objective, and definite standards' guiding licensing officials, rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion.'" *Id*. at 2138 n.9 (citation omitted).

### B. This Court Can Still Grant Relief on Plaintiffs' Claims

Here, Hawaii suggests this case is moot because the legislature has passed a package of firearm restrictions submitted by the Governor. But, a case becomes moot only if intervening events mean that a court can no longer "grant any effectual relief" to the plaintiff. *Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 139 S. Ct. 1652,

---

tradition." *Id.* at 2258-59; *see also Bruen*, 142 S. Ct. at 2137 (using 1800s sources only "as mere confirmation of what the Court thought already had been established"); *id.* at 2163 (Barrett, J., concurring) ("[T]oday's decision should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights. On the contrary, the Court is careful to caution 'against giving postenactment history more weight than it can rightly bear.'"); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020). Since there certainly was no *founding-era* tradition of the sorts of enactments the law amends, Hawaii cannot attempt to create one by reliance on statutes from after ratification of the Second Amendment.

1660 (2019), quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted).[4] That standard is "demanding." *Id.* This Court can still grant relief to Plaintiffs because, even with SB 1230's proposed amendments in place, the amended laws still unconstitutionally infringe on Plaintiffs' Second Amendment rights. As amended, both challenged laws still infringe on Plaintiffs' Second Amendment rights, albeit arguably to a slightly lesser degree, but an infringement is still an infringement and *Bruen* has explicitly disclaimed interest balancing.

Plaintiffs challenged two discrete portions of Hawaii law: (1) a provision in Hawai'i Revised Statutes § 134-2(e) that established a ten-day expiration date for permits to acquire handguns; and (2) a provision in Section 134-3(c) that required the in-person inspection of firearms (except those held by licensed dealers) at the time of registration. SB 1230's amendments to Hawaii do not stop the harm that either of these laws cause to Plaintiffs' Second Amendment rights. If amended, Hawaii law will still require those who wish to acquire a firearm from a private party, from the mainland, and what Hawaii calls ghost guns to engage in in-person registration at the police station. Plaintiffs challenged the in-person registration requirement in its entirety. *See e.g.* 3-ER-424 at ¶ 32 & 3-ER-432-433 (Prayer for

---

[4] *See also Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party."), quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

Relief). Therefore, even if SB1230 is signed, Plaintiffs will still suffer an injury in fact. The revised statute is no more constitutional than the statute invalidated by the district court.

That is because to avoid bringing their firearms to the station to register them, Plaintiffs will be forced to purchase their firearms only at gun stores located in Hawaii. They cannot purchase them from a private party or on the continental United States. And they cannot purchase what Hawaii pejoratively styles "ghost guns" which are simply homemade firearms. This also decreases the selection of firearms from which Plaintiffs can choose from because the selection in Hawaii is limited. Both plaintiffs have purchased firearms on the mainland and from private parties. *See* Declarations of Todd Yukutake and David Kikukawa (attached). And both intend to do so again in the future. And both attested to their intent to purchase additional handguns in their Verified Amended Complaint. *See* 3-ER-429 at ¶61; E-ER-420 at ¶73. Even if SB1230 is signed, Hawaii's in-person registration system will still "disadvantage[] them in the same fundamental way." *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 662. Thus, Plaintiffs claims are not moot.

Similarly, Plaintiffs' challenged Hawaii's the 10-day permit to purchase a handgun requirement and nothing in proposed legislation cited by Hawaii eliminates that requirement. SB 1230 merely changes the expiration period from 10 days to 30 days. Plaintiffs will still be burdened by a short expiration period on their handgun

7

purchase permits. Additionally, the permits will still only be valid for one handgun per permit. These recast requirements, like the original requirements simply have no Founding era analogues, as required by *Bruen*. So, going from 10 days expiration to 30 days expiration does not cure the laws' constitutional defect.

In holding the 10-day expiration date unconstitutional, the district court stated that "[t]he Defendant asserted that the 10-day permit use period promotes public safety, but the Defendant provided no evidence and gave no meaningful explanation in support of that assertion." 1-ER-008. In fact, the district court correctly understood that Hawaii was relying on "common sense" for its law:

> THE COURT: And help me understand. First of all, it's true, you present no evidence, right? You don't present legislative history, you don't present an expert witness, anything, you don't present declaration from a chief of police, you don't present -- I mean it's -- you're asking me to rely on common sense essentially; is that fair?
>
> MR. MOSER: We do cite some statutory history, but, but yes, you're right, we don't have the other categories of evidence.
>
> 1-ER-090.

In other words, Hawaii produced nothing showing that 10 days is constitutional under *Bruen*. It has likewise produced nothing showing that 30 days is constitutional. The issues remain the same. These are legal issues, not factual

8

questions. As the Supreme Court made clear in *Bruen*, "[c]ourts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S.Ct. at 2030 n.6. Hawaii has not proffered some additional historical justification that would apply to its new legislation. Taken to its extreme, Hawaii's argument would, for example, allow it to moot this case by implementing an 11-day expiration period. Once that period was invalidated, Hawaii could claim mootness by enacting a 12-day period. And so on, *ad nauseum*. That clearly would be an absurd and unjust result. Even if SB 1230's amendments to Hawaii law are enacted, Hawaii law still disadvantages Plaintiffs in the same fundamental way. Thus, Plaintiffs' claims are not moot, and this Court should affirm the district court's judgment.

## II. The Voluntary Cessation Doctrine Applies

The general rule is that "voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). The party claiming such mootness bears a "heavy burden" of proof under this test. *Id*.

Here, the analysis is simple. Hawaii did not just repeal the challenged provisions, and thus voluntarily cease the challenged practice. Nor did Hawaii

amend these provisions in some way that would accord the plaintiffs all the relief sought. Rather, Hawaii modified the challenged provisions with slightly different, slightly less burdensome requirements which are unconstitutional for the same reasons the unmodified versions were unconstitutional. Such tactics do not moot an appeal.

In very similar circumstances, the Supreme Court in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 662-63 (1993), refused to dismiss an appeal as moot after a city had entirely repealed and replaced a challenged ordinance, noting that "[t]he new ordinance may disadvantage [the challengers] to a lesser degree than the old one, but ... it disadvantages them in the same fundamental way." This Court has followed suit. *See, e.g.*, *Montana Green Party v. Jacobsen,* 17 F.4th 919, 922 (9th Cir. 2021) (holding that appeal was not mooted by amendments where "[t]he amendments do not fundamentally change either the challenged provisions or the applicable legal analysis") (collecting case law); *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019) (same, applying *Northeastern Florida*).

Thus, this Court has explained that a case is never moot if there is a "reasonable expectation that the legislative body will reenact the challenged provision *or one similar to it*." *Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (emphasis added). *See also City of*

*Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (holding that the case was not moot, because the defendant's "repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.). As explained, there is more than a "reasonable expectation" of reenactment of "similar" provisions; Hawaii legislature has **already passed** legislation that replace the challenged provisions with very "similar" provisions that suffer from the same fundamental flaws that afflicted the replaced provisions. *See Northeastern Florida*, 508 U.S. at 662 ("There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one.").

Indeed, Hawaii included a "sunset" provision that would revert the law to its previous state should Hawaii be unsuccessful on appeal, which it readily admits to in its Motion, page 3, at footnote 4: "Act 30 was originally intended only to reinstate limited in-person inspection on a temporary basis while the instant lawsuit was pending. The three-year 'sunset' provision was included for that reason..." There is no question Hawaii will resume its unconstitutional practice and will amend its laws again to the shortest time period it believes that it can get away with. *See Bd. of Trs. of the Glazing Health*, at 1199 (noting that "mootness is less appropriate when repeal [of legislation] occurred due to the 'prodding effect' of litigation").

### III. This Court Should Not Vacate the Trial Court's Judgment

11

Even if this Court finds Plaintiffs' case is moot, it should not vacate the judgement of the trial court. "When a case has been mooted by the appellant's own actions, the Supreme Court has directed that appellate courts should vacate the district court order only in 'exceptional circumstances.'" *ACLU v. Masto*, 670 F.3d 1046, 1066 (9th Cir. 2012) (citation omitted). "The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994). "It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive…" *U.S. Bancorp,* 513 U.S. at 26.

Ninth Circuit precedent is clear on this issue. In *Cammermeyer v. Perry*, 97 F.3d 1235, 1239 (9th Cir. 1996), it was the "defendants who rendered this case moot by conceding that Cammermeyer should be reinstated and by replacing the challenged regulation." *Id.* This Court found "[u]nder similar circumstances, we have refused to vacate the lower court's judgment, even when the appellant did not intend to moot the appeal." *Id.*, citing *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982) (appellant did so intend), citing *Blair v. Shanahan*, 38 F.3d 1514, 1521 (9th Cir. 1994), *cert. denied*, 514 U.S.

12

1066 (1995). Here, Hawaii has replaced the challenged regulations and is directly responsible for any potential mootness. Pursuant to *Cammermeyer,* this Court should deny vacatur.

Moreover, there is nothing fair or equitable about the vacatur sought by Hawaii here. "*U.S. Bancorp* makes clear that the touchstone of vacatur is equity." *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995). "[T]he equitable principles weighing in favor of vacatur in these situations cut the other direction where the appellant by his own act prevents appellate review of the adverse judgment." *Dilley v. Gunn*, 64 F.3d at 1370. Thus, in *Dilley*, this Court noted that "[b]oth the Supreme Court and this court have recognized exceptions to this practice if the party seeking appellate relief fails to protect itself *or is the cause of subsequent mootness*." *Id*. at 1370-71 (emphasis added).

Here, the State of Hawaii lost in the trial court. It then affirmatively passed legislation designed to drag out litigation while appealing the trial court's decision to this court. *See* Act 30, Session Laws of Hawaiʻi 2022. Now, presumably because it is concerned it will lose in this Court as well, it is in the process of passing yet another bill, SB 1230. The intent to evade judicial review is apparent. Both equity and precedent dictate this Court should not vacate the trial court's judgment.

Finally, Hawaii appears to argue that the trial court's decision should be vacated because the Attorney General is the one being sued and she cannot be held

13

responsible for the Hawaii Legislature's passage of SB 1230. However, the Attorney General is being sued in her official capacity. "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon* v. *Holt*, 469 U.S. 464, 471 (1985). As a rule, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and thus "it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Attorney General and the Hawaii Legislature are both part of the same entity: the State of Hawaii. The equitable relief sought is an injunction barring enforcement and that relief effectively runs "against the State itself." *Will*, 491 U.S. at 71.

## Conclusion

For all the foregoing reasons, Hawaii's mootness motion should be denied. The Court should affirm the well-reasoned judgment of the district court.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
Email: stephen@sdslaw.us

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 27 because it contains 3195 words and was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: May 12, 2023.

                                       */s/ Alan Alexander Beck*
                                       Alan Alexander Beck

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Alan Alexander Beck*
Alan Alexander Beck