# ⓢ Stamboulieh Law, PLLC

P.O. Box 428, Olive Branch, MS 38654 | (601) 852-3440 | stephen@sdslaw.us

December 18, 2023

Ms. Molly C. Dwyer, Clerk
U.S. Court of Appeals for the Ninth Circuit
95 7th Street
San Francisco, CA 94103

**Re:** *Yukutake, et al. v. Lopez*; No. 21-16756

Dear Ms. Dwyer:

Defendants rely on *Antonyuk v. Chiumento*, 2023 U.S. App. LEXIS 32492 (2d Cir. Dec. 8, 2023) to repudiate *Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023) ("*MSI*"). *Antonyuk*'s disagreement with *MSI* was contained in a footnote without any serious analysis.

*Antonyuk* also downplayed binding Supreme Court precedent and relied on a statute that by all accounts did not exist. For instance, *Antonyuk* relied on a "a 1792 North Carolina statute replicating the 1328 British statute…" but "[t]he … source was a 1792 book by a lawyer … compiling the English statutes in force in North Carolina." Halbrook, Stephen P., Faux Histoire of the Right to Bear Arms: *Young v. Hawaii* (9th Cir. 2021) (July 13, 2021); https://ssrn.com/abstract=3885910 at p21. *See State v. Huntly*, 25 N.C. 418, 420 (1843) (the statute "certainly has not been [in effect] since the first of January, 1838, at which day it is declared in the Revised Statutes … that the statutes of England or Great Britain shall cease to be of force and effect here.").

*Antonyuk* also utilized late 19th century laws and regulations, even when there was no 1791 analogue, directly contradicting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)[1] and relied on as few as three laws to find a historical tradition. *Antonyuk* at 129 (district court questioned "whether laws from three states could constitute an established tradition… We do not share [that] skepticism[]"). *Cf. Bruen* at 2142 ("we

---

[1] The rights in the Bill of Rights "have the same scope as against the Federal Government" and the Supreme Court has "generally assumed" that the understanding is "pegged to the public understanding" in 1791. *Bruen* at 2138.

doubt that *three* colonial regulations could suffice to show a tradition of public-carry regulation"). The Supreme Court previously held that "more than 30 States" creating a statute or analogue in the mid-to-late 19th century "cannot by itself establish an early American tradition." *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246, 2258-59 (2020). Simply put, late-coming statutes should be ignored.

Yours very truly,

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

cc: All counsel of record (CM/ECF)