No. 21-16756

IN THE

# United States Court of Appeals
# for the Ninth Circuit

TODD YUKUTAKE and DAVID KIKUKAWA,

Plaintiffs-Appellees,

v.

ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawai'i,

Defendant-Appellant,

and

CITY AND COUNTY OF HONOLULU,

Defendant.

On Appeal from the United States District Court for the District of Hawai'i
Honorable J. Michael Seabright, United States District Judge
(Civil No. 1:19-cv-00578-JMS-RT)

**BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS *AMICI CURIAE* IN SUPPORT OF PETITION FOR REHEARING EN BANC**

IAN SIMMONS
DAVID K. ROBERTS
ARJUN A. SHENOY
DANIELLE N. SIEGEL
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
isimmons@omm.com

*Attorneys for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Brady Center to Prevent Gun Violence, Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund), and Giffords Law Center to Prevent Gun Violence each has no parent corporation.  They have no stock; hence, no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICI CURIAE* ............................................................1

INTRODUCTION ...........................................................................2

REASONS FOR GRANTING REHEARING ........................................................3

    I.    The Panel Majority's Conclusion That Any Regulation on Acquiring Firearms Triggers Full Second Amendment Review Conflicts with Controlling Precedent and Threatens to Upend Second Amendment Jurisprudence. ......................................................3

    II.    The Panel Majority's Conclusion that Hawai'i's Regulations Are "Abusive" Contradicts *Bruen* and Provides No Clear Guidance for Future Cases. ...............................................................7

        A.    The Panel Majority's Conclusion Is Contrary to *Bruen* Because Hawai'i's Regulations Do Not Effectively Deny Ordinary Citizens Their Right to Keep and Bear Arms. ...........8

        B.    The Panel Majority's Reasoning Lacks Any Logical Limit, Inviting Baseless Challenges to Presumptively Lawful Regulations and Requiring Judicial Micromanagement of Legislatures. ........................................12

CONCLUSION ............................................................................17

CERTIFICATE OF COMPLIANCE .............................................................18

CERTIFICATE OF SERVICE ................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*B&L Prods., Inc. v. Newsom*,
  104 F.4th 108 (2024)..........................................................................................3

*Doe v. Bonta*,
  650 F. Supp. 3d 1062 (S.D. Cal. 2023),
  *aff'd*, 101 F.4th 633 (9th Cir. 2024)............................................................ 10, 11

*Gazzola v. Hochul*,
  88 F.4th 186 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024).......................4

*McRorey v. Garland*,
  99 F.4th 831 (5th Cir. 2024) ...................................................................9-12, 15

*Md. Shall Issue, Inc. v. Moore*,
  116 F.4th 211 (4th Cir. 2024), *cert. denied*, 2025 WL 76446 (U.S.
  Jan. 13, 2025) .......................................................................................... 9, 10, 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022)............................................................. 2, 5, 7, 9-11, 15

*Oakland Tactical Supply, LLC v. Howell Twp.*,
  103 F.4th 1186 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 603 (2024) ...................4

*Rocky Mountain Gun Owners v. Polis*,
  121 F.4th 96 (10th Cir. 2024) .............................................................. 10, 11, 15

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017)...................................................................................3

*United States v. Manney*,
  114 F.4th 1048 (9th Cir. 2024) ...............................................................................3

*United States v. Rahimi*,
  602 U.S. 680 (2024)................................................................................. 13, 14

**Statutes**

Mich. Comp. Laws  § 28.422...................................................................................15

Mich. Comp. Laws  § 28.422a.................................................................................15

N.J. Rev Stat § 2C:58-3 ..........................................................................................16

iii

**Page(s)**

**Regulations**

27 C.F.R. § 478.102(c)..............................................................................14

**Other Authorities**

John Gramlich,
*What the data says about gun deaths in the U.S.*, Pew Rsch. Ctr. (Mar. 5,
2025), https://www.pewresearch.org/short-reads/2025/03/05/what-the-
data-says-about-gun-deaths-in-the-us/..............................................15

TK Logan & Robert Walker,
*Civil Protective Order Outcomes: Violations and Perceptions of
Effectiveness*, 24 J. of Interpersonal Violence 675 (2008) ..................15

# INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are three non-profit organizations dedicated to ending gun violence through education, research, and advocacy. *Amici* have a substantial interest in ensuring that the Constitution is construed properly to allow democratically elected officials to address the nation's gun violence crisis, and to safeguard the interests of everyone—whether they are gun owners or not—in living safe and secure lives in their communities. Numerous courts, including the Supreme Court, have cited the briefs of *amici* on issues involving firearms regulations and constitutional principles affecting gun policy.

Brady Center to Prevent Gun Violence is the nation's most longstanding non-partisan, non-profit organization dedicated to reducing gun violence through education, research, legal advocacy, and political action. Everytown for Gun Safety is the nation's largest gun violence prevention organization, with millions of supporters across all fifty states. Giffords Law Center to Prevent Gun Violence is a national organization, founded more than 30 years ago, dedicated to promoting and defending the laws and policies proven to reduce gun violence.

---

[1] *Amici curiae* submit this brief under Federal Rule of Appellate Procedure 29(b) and Circuit Rule 29-2(a). All parties consent to the filing of this brief. Undersigned counsel for *amici curiae* certify that this brief was not authored in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amici curiae* has contributed money for this brief.

# INTRODUCTION

The panel majority's conclusion—fractured though it was—has the potential to upend a variety of reasonable and important firearm regulations that are permissible under any fair reading of Supreme Court and Ninth Circuit precedent. The majority's conclusion conflicts with binding Circuit authority and inverts the burdens of proof the Supreme Court has laid out for adjudicating Second Amendment challenges, thereby casting doubt over the legality of regulations that the Supreme Court has already determined to be presumptively constitutional. And it breaks new ground as the first appellate decision to hold that this kind of firearm regulation is "abusive" under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). The panel majority's conclusion is as novel—and standardless—as it is wrong. And if its decision stands and these challengers' arguments are accepted, the validity of numerous other common-sense gun safety laws may wrongly be called into question, too.

*Amici* agree with Hawai'i that en banc review is necessary to bring the Court's decision in this case in line with *Bruen* and binding Circuit precedent and prevent the panel majority's conclusion from upending other longstanding, accepted regulations on firearms. *Amici* write to underscore the fundamental methodological errors that drove the panel majority's analysis and the mischief that the decision is already sowing.

## REASONS FOR GRANTING REHEARING

**I.    The Panel Majority's Conclusion That Any Regulation on Acquiring Firearms Triggers Full Second Amendment Review Conflicts with Controlling Precedent and Threatens to Upend Second Amendment Jurisprudence.**

In *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc), this Court noted the distinction between the Second Amendment's "core right to possess a firearm for self-defense" and "ancillary rights necessary to the realization" of that right. *Id.* at 677. In *B&L Productions, Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024), the Court confirmed the continued validity of that distinction post-*Bruen* and explained that the "right to acquire firearms" is an ancillary right not presumptively protected by the plain text of the Second Amendment. *Id.* at 118. Citing *Bruen* and *Heller*, the *B&L* Court further explained that laws regulating the acquisition of firearms are "presumptively lawful" and "only implicate[] the Second Amendment in limited circumstances"—*i.e.*, when the regulations "'meaningfully constrain[]' the right to keep and bear arms for the purpose of self-defense." *Id.* at 118–19 (quoting *Teixeira*, 873 F.3d at 680). Only after a plaintiff carries the initial burden of sufficiently demonstrating this type of constraint does the burden then shift to the government to justify the law as consistent with a historical tradition of firearm regulation. *Id.*; *see also United States v. Manney*, 114 F.4th 1048, 1052 (9th Cir. 2024) ("Nor has the Court

held that every requirement making it slightly more difficult to possess a firearm demands a full historical inquiry into its origin.").

Rather than faithfully apply that framework, the panel majority imposed its own approach to reviewing firearm-acquisition regulations. It held that because "acquisition of a firearm by an individual, through purchase or otherwise" is conduct "covered by the plain text of the Second Amendment," the "burden ... falls on the State" to justify regulation of that conduct by "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Slip Op. at 33. In effect, the panel majority erased a plaintiff's threshold burden to demonstrate that the acquisition regulation "meaningfully constrained" the core Second Amendment right to keep and bear arms. Instead, both the lead opinion and concurrence treated the regulation as presumptively *un*constitutional and demanded that the government demonstrate otherwise. Because that methodology is manifestly inconsistent with the framework established in *Teixeira* and *B&L*, en banc review is necessary to bring this case back in line with the law of the Circuit.[2]

Moreover, unlike the *Teixeira/B&L* framework, the panel majority's approach conflicts with *Bruen* itself. As Judge Bea correctly emphasized in his

---

[2] The *B&L/Teixeira* framework is consistent with other circuits. *See* Pet. at 13–14; *see also, e.g.*, *Gazzola v. Hochul*, 88 F.4th 186, 196–97 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024); *Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1196 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 603 (2024).

dissent, *Bruen* specified that "a plaintiff challenging a state licensing regulation should bear the burden of alleging and proving that the regulation at issue is 'put toward abusive ends,' such that the regulation effectively or in practice 'den[ies] ordinary citizens their' rights to keep and carry." Slip Op. at 67 (quoting *Bruen*, 597 U.S. at 38 n.9). The panel majority flipped the presumption of lawfulness to which firearms-acquisition regulations are entitled on its head—a fundamental error that requires immediate correction.

Indeed, other individuals and entities have already pointed to the panel decision in support of challenges to several common-sense firearm regulations in this Circuit and beyond, including:

- California's requirements for ammunition sales, including background checks, in-person transactions, and vendor recordkeeping and reporting, *see* Appellees' Notice of Suppl. Auth., *Rhode v. Bonta*, No. 24-542 (9th Cir. Mar. 18, 2025), ECF No. 74;

- The chamber load indicator, magazine disconnect mechanism, and microstamping capability requirements of California's Unsafe Handgun Act, *see* Appellees' Suppl. Brief, *Boland v. Bonta*, No. 23-55276 (9th Cir. Apr. 17, 2025), ECF No. 83; Appellees' Suppl. Brief, *Renna v. Bonta*, No. 23-55367 (9th Cir. Apr. 17, 2025), ECF No. 53 (same);

- California's almost century-long prohibition on the possession of firearm silencers, *see* Brief of Plaintiff-Appellant, *Sanchez v. Bonta*, No. 24-5566 (9th Cir. Mar. 28, 2025), ECF No. 34;

- New York City's prohibition on an individual's ability to purchase more than one handgun every 90 days, *see* Brief for Amicus Curiae Nat'l Shooting Sports Found., Inc., *Mills v. New York City*, No. 24-3308 (2d Cir. Mar. 31, 2025), ECF No. 34;

- New Mexico's and Maine's waiting periods on the sale of firearms, *see* Pls.' Notice of Suppl. Auth., *Ortega v. Grisham*, No. 24-2121 (10th Cir. Mar. 17, 2025), ECF No. 73; Appellees' Opp'n to Appellant's Mot. for Stay Pending Appeal, *Beckwith v. Frey*, No. 25-1160 (1st Cir. Mar. 24, 2025), Doc. No. 00118263056; and

- The federal restriction on possession of a machinegun, *see* Brief of Amici Curiae Cal. Rifle & Pistol Ass'n, et al., *United States v. Morgan*, No. 24-3141 (10th Cir. Mar. 21, 2025), ECF No. 43.

Furthermore, district courts within this Circuit are looking to this case for guidance. For example, in litigation over California's waiting-period law, the district court recently denied motions for summary judgment without prejudice so the parties could resubmit briefs addressing the effect of the panel majority's decision, and has since vacated briefing deadlines pending the outcome of

Hawaiʻi's en banc petition.  *See* Order, *Richards v. Bonta*, No. 3:23-cv-00793

(S.D. Cal. Mar. 15, 2025), ECF No. 31; Order, *Richards*, No. 3:23-cv-00793 (S.D.

Cal. Apr. 4, 2025), ECF No. 33.

If the panel decision is allowed to stand, challengers in this Court and across

the country will continue to rely on its erroneous view that *any* generally

applicable burden on an individual's ability to acquire a firearm is presumptively

unlawful unless the government comes forward with sufficient justification.  And

if other courts adopt that mistaken view, the decision could leave numerous

longstanding, widely accepted firearm regulations at risk and threaten an increase

in gun violence.  Rehearing en banc is necessary to avoid those results.

## II.     The Panel Majority's Conclusion that Hawaiʻi's Regulations Are "Abusive" Contradicts *Bruen* and Provides No Clear Guidance for Future Cases.

The panel majority's conclusion that Hawaiʻi's regulations are "abusive"

under *Bruen* requires en banc intervention for two related reasons.  *First*, its

conclusion contradicts the very authority it relies on.  *Bruen* recognized that a

regulation "can be put toward [an] abusive end[]" if its application effectively

"den[ies] ordinary citizens their right to public carry."  597 U.S. at 38 n.9.  By

invalidating Hawaiʻi's regulations even though they undisputedly do not have this

effect, the majority improperly risks placing the constitutionality of a wide variety

of firearm restrictions in doubt.  *Second*, the majority provides no logical limit or

meaningful guidance for courts to determine when a regulation is "abusive." Its conclusory labeling of Hawai'i's 30-day license expiration date as "very short" and therefore "abusive" offers no guidance to state legislatures or lower courts about which temporal limitations on the sale and acquisition of firearms are permissible. Worse, in reaching this conclusion, the majority pointed to the fact that Hawai'i has chosen to regulate purchases of rifles and shotguns less strictly than handgun purchases. In doing so, the majority committed two fundamental analytical errors in applying *Bruen*: first, by holding against the State its exercise of permissible legislative discretion; and second, by adopting the "use it or lose it" view of legislative authority that Justice Barrett has specifically warned against.

The upshot is that, if left intact, the majority's conclusion will invite baseless challenges to laws that are clearly constitutional under a proper application of *Bruen*—requiring judicial micromanagement of a variety of state licensing regimes and other regulations that the Supreme Court has already deemed presumptively lawful. En banc review is necessary to prevent this outcome.

**A. The Panel Majority's Conclusion Is Contrary to *Bruen* Because Hawai'i's Regulations Do Not Effectively Deny Ordinary Citizens Their Right to Keep and Bear Arms.**

The lead opinion and concurrence each concludes that Hawai'i's 30-day license period and in-person inspection requirement for certain firearms are "abusive" under *Bruen* and thus unconstitutional. *See* Slip Op. at 43, 46; *id.* at 56,

64 (Lee, J., concurring). They seek support for their conclusion in a footnote to *Bruen* that was aimed at *narrowing* the Court's decision by reinforcing that it did not call into question the general constitutionality of shall-issue regimes. 597 U.S. at 38 n.9; *see McRorey v. Garland*, 99 F.4th 831, 836–37 (5th Cir. 2024) (holding that nothing in *Bruen*'s footnote 9 disturbs the part of *Heller* that "described conditions and qualifications on the commercial sale of arms as presumptively lawful" (internal quotation marks omitted)). Both the lead opinion and concurrence misinterpret and misapply this footnote.

As an initial matter, neither opinion grapples with the fact that Hawaiʻi's regulations bear all of the indicia of a shall-issue regime, and thus are presumptively lawful. The 30-day license period and in-person inspection requirement are "objective" and "definite" standards. *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted). A person seeking to purchase a handgun must obtain it within the statutory period and, if the gun is subject to the in-person inspection requirement, present it for inspection. *See id.*; *see also Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 225 (4th Cir. 2024) (en banc), *cert. denied*, 2025 WL 76446 (U.S. Jan. 13, 2025) (licensing regime presumptively constitutional where challenged regulation "allows any law-abiding person who seeks to obtain a handgun qualification license to do so by completing the objective criteria outlined in the statute"); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 122–23 (10th

9

Cir. 2024) (Colorado's minimum age requirement for firearm purchases is presumptively constitutional because it is a nondiscretionary condition or qualification on the commercial sale of arms aimed at ensuring guns are held by law-abiding, responsible persons").

The panel skips straight to concluding that Hawaiʻi's regulations are "abusive" under *Bruen*'s footnote 9. This is the first federal appellate decision to strike down a firearms regulation on this basis. Indeed, several circuits have considered—and expressly rejected—arguments that other firearms restrictions are "abusive." As these courts have confirmed, footnote 9 simply clarified that *Bruen* did not foreclose the possibility of constitutional challenges to shall-issue regimes that were "be[ing] put to abusive ends." *Bruen*, 597 U.S. at 38 n.9; *see Md. Shall Issue*, 116 F.4th at 222–23 (interpreting *Bruen*'s footnote 9 to confirm that "non-discretionary 'shall-issue' licensing laws are presumptively constitutional" unless a challenger can show the regime is being put toward "abusive" ends); *accord McRorey*, 99 F.4th at 836–37; *Rocky Mountain Gun Owners*, 121 F.4th at 122; *Doe v. Bonta*, 650 F. Supp. 3d 1062, 1070 (S.D. Cal. 2023), *aff'd*, 101 F.4th 633 (9th Cir. 2024).

Notably, footnote 9 itself provided the basic test for assessing whether a shall-issue regime is "being put toward abusive ends": whether its application effectively "den[ies] ordinary citizens their right to public carry." *Bruen*, 597 U.S.

at 38 n.9; *see also Md. Shall Issue*, 116 F.4th at 223 (challenger can rebut presumptive constitutionality of shall-issue regime only if the regulation "effectively den[ies] the right to keep and bear arms" (internal quotation marks omitted)); *accord McRorey*, 99 F.4th at 839; *Rocky Mountain Gun Owners*, 121 F.4th at 122; *see also Doe*, 650 F. Supp. 3d at 1069–70 ("there is a difference between prohibiting a right and regulating the right; so long as the regulation of the right to keep and bear arms doesn't amount to a prohibition of the right, the regulation is permissible").

Neither the lead opinion nor the concurrence contends that Hawaiʻi's regulations effectively "deny ordinary citizens" their Second Amendment right to keep and bear arms. Indeed, Hawaiʻi's regulations do not have an effect anything like the examples called out in *Bruen*'s footnote: "lengthy wait times in processing license applications" or "exorbitant fees." 597 U.S. at 38 n.9. An ordinary, law-abiding person who somehow could not complete a handgun purchase in the 30-day window can simply seek a new license. Even if an applicant does not obtain a handgun within the statutory period and must re-apply, delaying the ultimate acquisition of the weapon, delay alone does not constitute a deprivation of the Second Amendment right. *Md. Shall Issue*, 116 F.4th at 226–27 (rejecting challengers' argument that "any delay resulting from compliance" with a shall-issue regime qualifies as "infringement"); *McRorey*, 99 F.4th at 839–40 (rejecting

challengers' argument that the Second Amendment confers a right to "*immediate access to firearms*"). And because the in-person inspection requirement applies only to a specific subset of firearm purchases, it too in no way effectively denies an individual the right to carry a firearm.

The panel majority stands alone in its interpretation and application of *Bruen*'s footnote 9. En banc review is necessary to bring Circuit precedent back in line with *Bruen*.

### B. The Panel Majority's Reasoning Lacks Any Logical Limit, Inviting Baseless Challenges to Presumptively Lawful Regulations and Requiring Judicial Micromanagement of Legislatures.

En banc review is also necessary because the panel majority's decision sets no clear logical limit on how far it sweeps, providing no guidance to lawmakers as they craft regulations on the sale and acquisition of firearms or to courts as they review challenges to those regulations. It is clear (and the panel majority did not deny) that Hawai'i could set *a* finite time limit on the validity of a license to buy a handgun. *Cf. McRorey*, 99 F.4th at 839 ("Our law is plain as can be that some amount of time for background checks is permissible"). The majority implicitly recognized as much when it offered the conclusory assertion that Hawai'i's 30-day license expiration period was "very short" and therefore "abusive" under *Bruen*. Slip Op. at 46. But neither the lead opinion nor the concurrence provides any guidance on what period would be permissible.

The only period the majority cited as a point of reference is Hawaiʻi's one-year license expiration period for rifles and shotguns. *See* Slip Op. at 45–46. The majority pointed to this regulation as evidence that the 30-day license expiration period for handguns is not permissible. *See id.* But pointing to a regulation on one class of weapon to conclude that another regulation on a different class of weapon is unconstitutional is analytically unsound—and incongruous with *Bruen*—for a number of reasons.

To start, this reasoning improperly uses the exercise of permissible legislative discretion against the State. *See United States v. Rahimi*, 602 U.S. 680, 691 (2024) (admonishing lower courts for interpreting *Bruen* and *Heller* to needlessly constrain modern legislatures, emphasizing that "[t]hese precedents were not meant to suggest a law trapped in amber"). It is also illogical: had Hawaiʻi initially enacted a 30-day timeframe for *all* firearm licenses, would that law then be constitutional under the panel majority's approach?

Relatedly, there is no warrant for the majority's apparent assumption that Hawaiʻi's one-year license period for rifles and shotguns even approaches the constitutional maximum degree of regulation. Justice Barrett's *Rahimi* concurrence, in which she warned against drawing too many inferences from the absence of historical regulations, makes the same point. As she explained, "assum[ing] that founding-era legislatures maximally exercised their power to

13

regulate" is "flawed" because that approach "adopt[s] a 'use it or lose it' view of legislative authority." 602 U.S. at 739–40. The same is true here.

The majority's twin analytical errors—each of which holds against the State its decision not to regulate to its constitutional maximum—warrant en banc intervention.

Separately, and in any event, the majority overlooked that Hawaiʻi had ample basis to set a 30-day period for the validity of handgun licenses. After all, the federal government has similarly decided that 30 days is an acceptable period for a background check to remain valid. *See* 27 C.F.R. § 478.102(c) (NICS background check to acquire any firearm type is valid for 30 days; if the person returns after 30 days to obtain the firearm, the dealer must initiate a new check). Further, the State could reasonably choose a shorter timeframe for handguns than for other firearms given that the former may be easily concealed and transported.[3]

---

[3] Indeed, *Rahimi* recognized that the Second Amendment does not bar the government from keeping deadly arms out of the hands of people determined to be dangerous. *See* 602 U.S. at 698–700. Even the panel majority here conceded that Hawaiʻi "has a valid interest in ensuring that the background-check results are not stale." Slip Op. at 45. Of course, all manner of things can happen in 30 days that might disqualify someone from possessing a firearm: a domestic-violence restraining order (as in *Rahimi*) or a felony charge, to name just two. And it is precisely in the immediate aftermath of disqualifying events like these that a state may wish to preclude someone from acquiring a deadly arm. *See, e.g.*, TK Logan & Robert Walker, *Civil Protective Order Outcomes: Violations and Perceptions of Effectiveness*, 24 J. of Interpersonal Violence 675, 675–76 (2008) (thirty percent of domestic violence survivors report stalking in immediate aftermath of the issuance

The Hawaiʻi legislature's decision to implement a longer license expiration period for rifles and shotguns thus has no bearing on the constitutionally permissible expiration period for handguns.

Legislatures must choose somewhere to draw a line when regulating firearms to ensure that only "law-abiding, responsible citizens" have access to weapons.  *See McRorey*, 99 F.4th at 837 ("[r]ead against the backdrop provided by *Heller*, *Bruen*'s footnote 9 plainly" permits shall-issue regimes to impose restrictions that are "'designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens'" (quoting *Bruen*, 597 U.S. at 38 n.9)); *see also Rocky Mountain Gun Owners*, 121 F.4th at 122 (similar). States across the country impose a variety of temporal limitations on the sale and acquisition of firearms to advance that goal.  *See, e.g.*, Mich. Comp. Laws §§ 28.422, 28.422a (30-day license expiration period for permit to purchase firearms); N.J. Rev Stat § 2C:58-3 (90-day expiration period for permit to purchase handgun).  The panel majority's reasoning lacks any clear limiting principle to guide legislatures in making those determinations—or to courts in reviewing them.

---

of a protective order).  Hawaiʻi had ample reason to impose a shorter licensing period on handgun purchases, given that they are frequently used in firearm-related violent crimes.  *See* John Gramlich, *What the data says about gun deaths in the U.S.*, Pew Rsch. Ctr. (Mar. 5, 2025), https://www.pewresearch.org/short-reads/2025/03/05/what-the-data-says-about-gun-deaths-in-the-us/.

As a consequence, the opinion wrongly invites challenges to all manner of longstanding, common-sense firearm regulations that the Supreme Court has already deemed presumptively constitutional. A challenger could attempt to characterize *any* aspect of a shall-issue licensing regime as "abusive" and subject to judicial micromanagement under the majority's conclusion—no matter how minor the alleged intrusion on the Second Amendment right. Indeed, the opinion is already sowing mischief in this fashion. *Supra* at 5-7. As Judge Bea warned in his dissent, "the implication of [the majority's] holding is that federal courts will become a kind of bureaucratic police, scrutinizing and invalidating even the most mundane details of state licensing regimes." Slip Op. at 88. Rehearing en banc is needed here to ensure that this Court does not help bring about that result.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

April 21, 2025

*/s/ Ian Simmons*
IAN SIMMONS
DAVID K. ROBERTS
ARJUN A. SHENOY
DANIELLE N. SIEGEL
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
isimmons@omm.com

*Attorneys for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This brief complies with the type-volume limitation of Circuit Rule 29-2(c)(2), because it contains 3,672 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the format, typeface, and type-style requirements of Fed. R. App. P. 32(a)(4)-(6).

*/s/ Ian Simmons*
Ian Simmons

## CERTIFICATE OF SERVICE

I certify that on April 21, 2025, I filed the foregoing Amicus Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

*/s/ Ian Simmons*
Ian Simmons