No. 21-16756

# In the United States Court of Appeals
## for the Ninth Circuit

---

TODD YUKUTAKE AND DAVID KIKUKAWA
*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE
STATE OF HAWAI'I,
*Defendant-Appellant*,

AND

CITY AND COUNTY OF HONOLULU
*Defendant*

---

**Appeal from a Judgment of United States District Court
For the District of Hawaii; Civ. No. 1:19-cv-00578-JMS-RT
Honorable Chief District Court Judge J. Michael Seabright**

---

## Appellees' Opposition to Appellant's Petition for En Banc Rehearing

ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellees Todd Yukutake and David Kikukawa*

## <u>TABLE OF CONTENTS</u>

Introduction……………...……………………………………………………….1

I.    THE PANEL OPINION DOES NOT PRESENT A MATTER OF
      EXCEPTIONAL IMPORTANCE BECAUSE IT IS LARGELY NOT
      PRECEDENTIAL…………………………………………………………...2

            A. The Panel Opinion Does Not Conflict With Supreme Court
               Precedent…………………………………………………………...2

            B. The Panel Opinion Does Not Conflict With This Circuit's
               Precedent…………………………………………………………...4

            C. The Panel Opinion Was Correct In Framing The Issue……….…8

II.   THE PANEL DECISION DOES NOT CREATE A SPLIT WITH OTHER
      CIRCUITS………………………………………………………………...9

III.  THE SUPREME COURT HAS ALREADY REACHED A "CONSENSUS"
      ON THE RATIONALE FOR INVALIDATING A STATE LAW………….…14

Conclusion………...……………………………………………………….....15

# TABLE OF AUTHORITIES

## Cases

*Andrews v. State*, 50 Tenn. 165 (1871)..............................................................6

*B&L Prods., Inc. v. Newsom,* 104 F.4th 108 (9th Cir. 2024) ................................4, 5

*Bartlett ex rel. Neuman v. Bowen,* 824 F.2d 1240 (D.C. Cir. 1987) .....................1, 2

*Beckwith v. Frey*, --- F.Supp.3d ----, 2025 WL 486830 (D.Me Feb. 13, 2025) ........5

*Bezet v. United States*, 714 F. App'x 336 (5th Cir. 2017)........................................8

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) .......................................................9

*District of Columbia v. Heller*, 554 U.S. 570 (2008)......................................3, 9, 11

*Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2021) ..................................7, 14

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................................7

*Frein v. Penn. State Police*, 47 F.4th 247 (3d Cir. 2022) .........................................6

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023) ......................................................7

*Heller v. Dist. of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ............................ 13, 14

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011)............................14

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot,* 14 F4th 322 (4th Cir. 2021) ....................................4

*Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) ....................................................................................................................................8

*Kachalsky v. Cnty. of Westchester,* 701 F.3d 81 (2d Cir. 2012)................................3

*Luis v. United States*, 578 U.S. 5 (2016)...................................................................6

*Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024), *cert. denied*, 145 S.Ct. 1049 (2025)..........................................................................................13

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..............................................................3

*McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024) ...............................9, 10, 11, 12

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .................. passim

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ......................................................14

*Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) .......................4

*Reese v. ATF,* 127 F.4th 583 (5th Cir. 2025).....................................................11, 12

*Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024) ............. 12, 13

*Sedita v. United States*, --- F.Supp.3d ----, 2025 WL 387962 (D.D.C. Feb. 4, 2025) ...............................................................................................................................8, 12

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) ...........................5, 14

*Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) (en banc)...........................................1

*United States v. Martinez*, 2025 WL 1101517 (E.D. Texas April 14, 2025)..............9

*United States v. Nixon,* 827 F.2d 1019 (5th Cir. 1987) ..............................................2

*United States v. Rahimi*, 602 U.S. 680 (2024) ......................................................6, 7

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc) *vacated and remanded*, 142 S. Ct. 2895 (2022)............................................................................................1

*Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169 (9th Cir. 1999) ..........................14

**Rules**

Fed. R. App. P. 40....................................................................................................1

# INTRODUCTION

Appellant asks this Court to reverse a three-judge panel upholding the Second Amendment.[1] The State argues that en banc review should be granted because the panel opinion does not provide enough "authoritative guidance" because members of the majority did not agree on the analysis. But that is not a reason to grant en banc rehearing. That disagreement merely means that the panel's decision is not binding circuit precedent on the issues on which the majority disagreed. The State also argues that the panel majority holding conflicts with Supreme Court and Circuit precedent. Those arguments fail for the reasons the panel majority detailed and detailed below.

Just as importantly, this case is simply not "exceptionally" important within the meaning of Fed. R. App. P. 40. At issue in this case are two extreme outlier requirements imposed by Hawaii. Those restrictions are applicable to people who, under Hawaii's statutory scheme, have already passed a background check conducted by Hawaii and who have been determined to be eligible to acquire a handgun. Rule 40(2)(d) cautions that en banc proceeding should "involve[] one or more questions of exceptional importance" and an en banc determination "should be made only in the most compelling circumstances." *Bartlett ex rel. Neuman v. Bowen,*

---

[1] This marks the *third* time that Hawaii has sought en banc rehearing after losing before a three-judge panel in a Second Amendment case. *See Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc) *vacated and remanded*, 142 S. Ct. 2895 (2022); *see also Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) (en banc) (holding that the case was moot).

1

824 F.2d 1240, 1242 (D.C. Cir. 1987). *See also United States v. Nixon,* 827 F.2d 1019, 1023 (5th Cir. 1987) (per curiam). The constitutionality of Hawaii's two outlier requirements does not meet that test.

## I. THE PANEL OPINION DOES NOT PRESENT A MATTER OF EXCEPTIONAL IMPORTANCE BECAUSE IT IS LARGELY NOT PRECEDENTIAL

The panel opinion does not present this court with a matter of exceptional importance because it is non-precedential in important respects. As the petition acknowledges, the majority disagreed as to the methodology by which Plaintiffs' claims should be resolved and thus the methodology used is not binding on subsequent panels of this Court. The issue the majority agreed on is that the Second Amendment right is implicated when a regulation burdens the acquisition of firearms for all purchasers where that regulation does not involve any background check. That holding neither conflicts with Supreme Court precedent, any other circuit precedent, or this Court's precedent. Thus, this case does not present a matter of exceptional importance that warrants this Court's en banc review.

### A. The Panel Opinion Does Not Conflict With Supreme Court Precedent

The State claims that the panel opinion conflicts with the Supreme Court's ruling in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) because panel decision supposedly conflicts with dicta in footnote 9. *Bruen*, 597 U.S. at 38

n.9. But that overstates the holding in *Bruen*. Footnote 9 expressly and exclusively deals with shall issue permits systems for "public carry" in "43 States." *Id*.

In contrast, the two laws at issue here deal with permits to acquire and possess firearms in the home, "where the need for defense of self, family, and property is most acute."[2] *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008). Indeed, unlike the 43 State laws noted in footnote 9, the Hawaii laws at issue here are outliers; the in-person registration law is unique in the country.[3] Moreover, while "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms," *Bruen*, 597 U.S. at 32, the historical traditions associated with public carry are far different than those associated with possession in the home. *Id.* at 47-48. The scope of the right to acquire for the home must take into account those differences.

The State commits the same error with respect to *Heller*'s dicta that remarked that conditions and qualifications on the commercial sale of arms are presumptively constitutional. *See Heller*, 554 U.S. at 626−627, and n.26. Hawaii's restrictions do not apply to any "commercial sale" at all. More fundamentally, "[a] condition or

---

[2] Second Amendment rights are at "their zenith within the home." *Kachalsky v. Cnty. of Westchester,* 701 F.3d 81, 89 (2d Cir. 2012). Thus, there were fewer historical restrictions on firearm possession than on firearm carry.

[3] As the Supreme Court has noted, the more "exceptional" the system is the more likely it is to be unconstitutional. *McCullen v. Coakley*, 573 U.S. 464, 490 (2014).

qualification on the sale of arms is a hoop someone must jump through to *sell* a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer records." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021), *vacated as moot,* 14 F4th 322 (4th Cir. 2021) (emphasis the court's). The presumption does not apply to restrictions "on buying a gun." *Id.* Hawaii's restrictions restrict the buyer, not the seller and only apply to non-commercial acquisitions. In short, importing dicta as to public carry into Hawaii's senseless restrictions on home possession "overreads" both the *Bruen* dicta and the *Heller* dicta. *See Range v. Attorney General*, 124 F.4th 218, 226 (3d Cir. 2024) (en banc) (cautioning against overreading dicta). The "conflicts" with *Heller* and *Bruen* posited by the State do not exist.

**B. The Panel Opinion Does Not Conflict With This Circuit's Precedent**

The panel's opinion does not conflict with *B&L Prods., Inc. v. Newsom,* 104 F.4th 108 (9th Cir. 2024) or any other opinion of this Court. *B&L* dealt with a law which "prevents vendors and gun show attendees from consummating a contract to purchase firearms or ammunition while at the Del Mar Fairgrounds." *B&L Prods.* 104 F.4th at 111. For those types of laws, *B&L* holds that the threshold inquiry is whether the "challenged regulation meaningfully impairs an individual's ability to access firearms." *Id*., quoting *B&L*, 104 F.4th at 119. *B&L* thus merely held that the Second Amendment does not cover "contracting for the sale of firearms and

ammunition on state property." *Id.* at 117. As is apparent, *B&L* involved restrictions on *sellers* of firearms, not restrictions on the *buyers,* such as those imposed by Hawaii here. As the Court noted in *B&L*, "we acknowledged that unless the right to acquire firearms receives some Second Amendment protection, the right to keep and bear firearms would be meaningless." 104 F.4th at 118, quoting *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc).

The dissent agrees with the panel opinion that *B&L* and *Teixeira* both hold that the Second Amendment protects the right to acquire firearms, noting that "the right to keep and bear arms would be rather hollow were the government able to ban the purchase or acquisition of firearms nonetheless." Slip op. at 69. The dissent nonetheless argues that that this right is only "implied by the text" and thus applies "only to the extent necessary to preserve the explicitly granted rights to keep and bear arms." *Id.* at 70 and n.2. The dissent then takes that point to the extreme, arguing that the State may impose any regulation of the right to acquire unless the regulation "denies the right to possess and carry." *Id.* at 70 n.2.

The dissent's interpretation of the Second Amendment is illiterate of the Founding. At the time of Founding the verb "acquire" was understood to be an aspect of the verb "keep." As stated recently in *Beckwith v. Frey*, --- F.Supp.3d ----, 2025 WL 486830 at *4 n.5 (D.Me Feb. 13, 2025), "the word 'keep' was used by our English-speaking forebears to mean taking or acquiring, though the grammar and

5

diction of those forebears would be incomprehensible to a modern English speaker." *See also Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, *necessarily involves* the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair.") (emphasis added). The dissent's interpretation is also inconsistent with "infringe" as used at the Founding. *See Frein v. Penn. State Police*, 47 F.4th 247, 254 (3d Cir. 2022) ("the government may not prevent citizens from buying and owning guns" and the Second Amendment "forbids lesser violations that hinder a person's ability to hold on to his guns").

These understandings at the Founding are controlling. *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (looking to the understanding of the right "at the founding"). As the panel recognized, the right to acquire arms is a necessary part of the right to keep and bear arms because "one cannot ordinarily 'possess' an item— particularly something as complex as a firearm—if he or she cannot acquire it." Slip op. at 28. Thus, a regulation of the right to acquire **is** a regulation of the right to keep and bear arms. Full stop. *See Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring) ("Constitutional rights ... implicitly protect those closely related acts necessary to their exercise.").

Fundamentally, the dissent's test is a thinly disguised resurrection of means-ends scrutiny abrogated in *Bruen* because it makes the constitutional analysis

dependent on "'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right.'" *Bruen,* 597 U.S. at 18. Under the dissent's view, the right to acquire is not at the "core" because it is supposedly not the same as "keep and bear" and thus is subject to a different test that relieves the government of its duty to justify its regulation. That premise is wrong, as explained above. But even as the dissent is forced to admit, the right to acquire is protected by the Second Amendment *to some extent*. Slip op. at 66. The rule remains: "when the Government regulates" "constitutional rights" "it bears the burden 'to justify its regulation.'" *Rahimi*, 602 U.S. at 692, quoting *Bruen,* 597 U.S. at 24. *See also Bruen* at 19 ("the *government* must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms") (emphasis added).

The dissent's approach is not only ahistorical it has also been uniformly rejected by other courts. None of these courts require "a *de facto* prohibition" on the right to acquire. *See, e.g., Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) ("'restrictions that limit the ability of firearms owners to acquire and maintain proficiency in the use of their weapons" may violate the Second Amendment under certain circumstances."); *Drummond v. Robinson Twp*., 9 F.4th 217, 227-28 (3d Cir. 2021) (similar); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("[t]he right to possess firearms for protection implies a corresponding right to acquire and

maintain proficiency in their use"); *Bezet v. United States*, 714 F. App'x 336, 341 (5th Cir. 2017) ("Because those subsections regulate only the importation of firearms, they do not substantially burden the core Second Amendment guarantee of acquiring firearms to protect one's hearth and home."); *Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("This right must also include the right to *acquire* a firearm…"); *Sedita v. United States*, --- F.Supp.3d ----, 2025 WL 387962 at *8 (D.D.C. Feb. 4, 2025) ("buying a firearm falls within the plain text of the Second Amendment").

Thus, the burden is on the government to show a historical tradition of firearms regulation which is "relevantly similar" to Hawaii's laws. And because Hawaii could not produce a historical restriction "relevantly similar" to its modern-day regulations, those laws are unconstitutional. Indeed, the dissent agreed with Judge Lee's concurrence on that very point. *See* slip op. 90 ("had I agreed with my colleagues that the regulations before us covered conduct protected by the plain text of the Second Amendment, I would agree with Judge Lee's application of *Bruen*'s historical test.").

## C. The Panel Opinion Was Correct In Framing The Issue

Parroting the dissent, Hawaii asserts that the controlling inquiry is not simply whether there is a Second Amendment right to acquire but rather is whether the right covers "purchasing a firearm more than thirty days after a permit is issued." Petition

8

at 12, quoting dissent, slip op. at 77 n.6. But that mode of analysis is far too granular and leads to absurd results. For instance, in *Bruen*, the Supreme Court framed the proposed course of conduct as "carrying handguns publicly for self-defense," not carrying without a permit that may be issued only upon a showing of a "proper cause." *Bruen*, 597 U.S. at 32.

Similarly, in *Caetano*, the Supreme Court framed the issue simply as "possession of stun guns[]." *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016). And in *Heller*, the Supreme Court framed the issue as "possession of usable handguns in the home[]." 554 U.S. at 573. *See United States v. Martinez*, 2025 WL 1101517 (E.D. Texas April 14, 2025) (rejecting the government's argument that conduct covered by the text "should be defined narrowly to fit the precise conduct" subject to regulation). The issue here is whether the Second Amendment protects acquiring a firearm. The panel correctly held that it does.

## II.  THE PANEL DECISION DOES NOT CREATE A SPLIT WITH OTHER CIRCUITS

The State argues (Petition at 13) that the panel decision creates a circuit split with *McRorey v. Garland*, 99 F.4th 831, 838-39 n.18 (5th Cir. 2024), but that is incorrect. *McRorey* merely sustained a federal law that imposed enhanced background checks for firearms acquisitions by 18-20-year-olds. Relying on footnote 9 of *Bruen*, the court held the requirement was lawful "because such checks 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact,

'law-abiding, responsible citizens.'" 99 F.4th at 837, quoting *Bruen*, 597 U.S. at 38 n.9. Nothing like that restriction is at issue here.

In this case, both challenged laws deal with restrictions imposed **after** a person *has passed* a background check and has thus been found to be law abiding and otherwise entitled to own and possess a firearm. Neither the result nor reasoning of *McRorey* has any application to these kinds of restrictions. Indeed, *McRorey* ruled that "the Second Amendment extends protection to acquisition" and thus recognized that any system of background checks that "act as de facto prohibitions would be subject to constitutional challenge." *Id*. at 838 n.18. Contrary to the State's suggestion (Pet. at 13), nothing in that statement holds that **only** "de facto prohibitions" are covered by the text of the Second Amendment. Nothing in *McRorey* would impose any such test on restrictions that are unrelated to background checks.

All *McRorey* holds is that background checks are presumptively lawful unless they are abused to impose a "de facto prohibition." The panel majority agreed with that basic proposition. *See* slip op. at 35-36 ("we think it noteworthy that the Court [in *Bruen*] anchored the validity of such regimes in background checks' role in "ensur[ing] only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"). As the panel explained, such background checks relate directly to the "historically based" bans on possession by "'felons and the mentally

ill.'" *Id*. at 37, quoting *Heller*, 554 U.S. at 626, 635. That reasoning is both sound and fully consistent with *McRorey*.

That *McRorey* cannot be extended to restrictions that do not involve background checks is made clear by the Fifth Circuit's **subsequent** decision in *Reese v. ATF*, 127 F.4th 583 (5th Cir. 2025), a decision that the State conveniently fails to mention in its Petition. *Reese* distinguished *McRorey* and held that the federal law that prohibited sales of handguns to 18–20-year-olds violated the Second Amendment. The court noted that *McRorey* had recognized that "the right to 'keep and bear" can 'implicate the right to purchase,'" and reasoned that unlike the background check law at issue in *McRorey*, the law at issue in that case was a ban. 127 F.4th at 590 n.2. As the court stated, "[w]e fail to see how a purchase ban unknown at the time of the founding can evade *Bruen* analysis." *Id*. In short, both *McRorey* and *Reese* recognize that acquisitions are covered by the Second Amendment. *Reese* holds that bans on acquisitions are subject to challenge and nothing in *McRorey* purports to hold that *only* bans are covered by the text of the Second Amendment.

Such a holding would also be wildly inconsistent with *Bruen*. The "proper cause" restriction for permits at issue in *Bruen* did not impose "a *de facto* prohibition" on public carry. *See Bruen*, 597 U.S. at 92 (petitioners "have obtained restricted licenses that permit them to carry a concealed handgun for certain purposes

and at certain times and places."). Permitting authorities in New York had *in fact* issued *tens of thousands* restricted and *unrestricted* permits under New York's "proper cause" requirement. *See* Brief of Respondents in *Bruen* at 13-14 n.10 (filed Sept. 14, 2021).[4] Thus, if a "de facto prohibition" on the conduct was *required*, then *Bruen* would have been decided the other way. *See Sedita v. United States*, --- F.Supp.3d ----, 2025 WL 387962 at *9 (D.D.C. Feb. 4, 2025) ("a careful reading of the Second Amendment supports a finding that the right to acquire arms is protected" and thus "no freewheeling inquiry into the degree of intrusion is necessary at *Bruen* Step One.").

The State also asserts (Pet. at 13) that the panel decision is in conflict with *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024). But that decision merely held that a state law restriction on the "commercial sale or purchase of arms" to 18–20-year-olds were not within the scope of the Second Amendment right. Unlike the Hawaii restrictions, nothing in the state law at issue there regulated all acquisitions, even by people in that age group. *See* 121 F.4th at 122 (the state law "neither prohibits anyone from possessing a gun nor prohibits certain non-purchase gun transfers of ownership"). *Rocky Mountain Gun Owners* may well conflict with *Reese*, but like *Reese* (and *McRorey*) it does not purport to hold that the right to

---

[4] Available at https://www.supremecourt.gov/DocketPDF/20/20-843/192555/20210915203840523_20-843%20Brief%20for%20Resps.pdf.

acquire, as such, is outside the text of the Second Amendment or is subject to some lesser standard. *See* 121 F.4th at 117-18 ("we need not decide in this case the full scope of concomitant rights, if any, to 'keep and bear'").

Similarly, in *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216 (4th Cir. 2024), *cert. denied*, 145 S.Ct. 1049 (2025), the court found Maryland's handgun qualification license requirement was not within the scope of the Second Amendment right. But that license was part of Maryland's unique background check system and the court found "this type of licensing law is presumptively constitutional because it operates merely to ensure that individuals seeking to exercise their Second Amendment rights are 'law-abiding' persons." *Id.* at 216. Hawaii's restrictions have nothing to do with ensuring that a person is law-abiding. Hawaii's law also runs afoul of the D.C. Circuit's **directly on point** holding in *Heller v. Dist. of Columbia*, 801 F.3d 264, 277 (D.C. Cir. 2015), a decision the State likewise never mentions in the Petition. In that case, the court struck down a District of Columbia law functionally identical to Hawaii's inspection requirement. Like Hawaii, the District offered no real justification for the in-person requirement, which created the "risk that the gun may be stolen en route or that the person may be arrested or even shot by a police officer seeing a man with a gun (or a gun case)." *Id.*

In so holding, the D.C. Circuit relied on its prior decision that the inspection requirement was covered by the text of the Second Amendment because it was "not

de minimis"—that is, they "ma[d]e it considerably more difficult for a person lawfully to acquire and keep a firearm ... for the purpose of self-defense in the home." 801 F.3d at 274, quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1255 (D.C. Cir. 2011). In other words, only "*de minimis*" restrictions on the right fall outside the text of the Second Amendment. *Id*. *See also Drummond*, 9 F.4th at 231 (same); *Teixeira*, 873 F.3d at 672 (Tallman, J., concurring) (same); *Pena v. Lindley*, 898 F.3d 969, 1010 (9th Cir. 2018) (Bybee, J., concurring in part dissenting in part) (same). That analysis comports with Step One of the *Bruen* analysis. See *Bruen*, 597 U.S. at 19 ("Step one of the predominant framework is broadly consistent with *Heller,* which demands a test rooted in the Second Amendment's text, as informed by history."). The panel decision in this case relied on and is consistent with that D.C. Circuit decision. Slip op. at 53. A reversal of the panel opinion would create a direct circuit split with the D.C. Circuit. This Court is "hesitant to create such a split." *Zimmerman v. Oregon Dept. of J*., 170 F.3d 1169, 1184 (9th Cir. 1999). The petition should be denied so that this Court does not create a circuit split.

### III. THE SUPREME COURT HAS ALREADY REACHED A "CONSENSUS" ON THE RATIONALE FOR INVALIDATING A STATE LAW

The State claims that the en banc court needs to weigh in on how to analyze this Second Amendment challenge. Pet. at 14. But the Supreme Court has already explained how to conduct that analysis, and said, in so many words, that "the

government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. *See also id*. at 24 ("government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."). The dissent places the burden on Plaintiffs to show a regulation "meaningfully constrains" rights covered by the Second Amendment. Slip op. at 83. That test screams of interest balancing, which is an anathema to the Second Amendment. *See Bruen,* 597 U.S. at 18 (discussing the "core" of the Second Amendment and interest balancing). Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. The State does not dispute in its Petition that it failed to carry that burden here. That ends the inquiry.

## CONCLUSION

The petition should be denied.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2025, I filed the foregoing Appellees' Response in Opposition to Appellant's Petition for En Banc Rehearing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 21-16756

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** _____ .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◉   In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Alan Alexander Beck | **Date** | May 5, 2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**        *Rev. 12/01/24*