No. 21-16756

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

TODD YUKUTAKE AND DAVID KIKUKAWA,
*Plaintiffs-Appellees*,

v.

ANNE LOPEZ,
IN HER OFFICIAL CAPACITY AS THE
ATTORNEY GENERAL OF THE STATE OF HAWAII,
*Defendant-Appellant.*

_____

On Appeal from the
United States District Court for the District of Hawaii
Case No. 1:19-cv-00578 JMS-RT
Honorable J. Michael Seabright

_____

**BRIEF OF AMICI CURIAE SECOND AMENDMENT FOUNDATION,
CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, AND
SECOND AMENDMENT LAW CENTER, INC. IN SUPPORT OF
PLAINTIFFS-APPELLEES**

_____

Konstadinos T. Moros
SECOND AMENDMENT FOUNDATION
12500 NE 10TH Pl.
Bellevue, WA 98005
(425) 454-7012
kmoros@saf.org
*Counsel for Amici Curiae*

August 25, 2025

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, counsel for amici curiae certify that Second Amendment Foundation, California Rifle & Pistol Association, Incorporated, and Second Amendment Law Center, Inc., are nonprofit organizations and thus have no parent corporations and no stock.

Date: August 25, 2025                    SECOND AMENDMENT FOUNDATION

/s/ Konstadinos T. Moros
Konstadinos T. Moros
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES ...............................................................iii

INTEREST OF AMICI CURIAE...........................................................1

INTRODUCTION ..........................................................................2

ARGUMENT .................................................................................3

I.  THIS COURT'S PRACTICE OF CONSTANTLY GRANTING EN BANC
    REHEARING WHENEVER SECOND AMENDMENT LITIGANTS PREVAIL
    IS DETRIMENTAL TO INSTITUTIONAL TRUST ............................................3

II. THIS COURT SHOULD USE THIS AS AN OPPORTUNITY TO REVERSE THE
    ERRONEOUS INTEREST-BALANCING STANDARD SET FORTH IN *B&L
    PRODUCTIONS, INC. V. NEWSOM* ...................................................13

    A. HOW B&L PRODUCTIONS WRONGLY REVIVED INTEREST-
       BALANCING IN THE NINTH CIRCUIT .................................................13

    B. B&L PRODUCTIONS MISUNDERSTOOD THE PLAIN TEXT ANALYSIS
       OF BRUEN .........................................................................16

    C. HAWAII REVISED STATUTES §§ 134-2(E) AND 134-3 IMPLICATE
       THE PLAIN TEXT OF THE SECOND AMENDMENT AND LACK ANY
       DISTINCTLY SIMILAR SUPPORTING HISTORICAL TRADITION ..........................19

CONCLUSION ................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Anderson v. Neven*, 974 F.3d 1119 (9th Cir. 2020) .................................................12

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ...................................................8

*B&L Productions, Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) ... 3, 11, 13, 14, 16, 19, 21

*Boland v. Bonta*, 662 F. Supp. 3d 1077 (C.D. Cal. 2023) ......................................18

*Cassirer v. Thyssen-Bornemisza Collection Found.,* 107 F.4th 882 (9th Cir. 2024) ...........................................................................................................4

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................5, 7, 14, 19

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) ...............................................5, 7

*Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023) .....................................................11

*Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) ...........................................7, 9, 12

*Duncan v. Bonta*, No. 23-55805, 2023 U.S. App. LEXIS 25723 (9th Cir. Sep. 28, 2023) ................................................................................................... 9, 12

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) .........................................18

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) .............................18

*Luis v. United States*, 578 U.S. 5 (2016) ..............................................................18

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) .............................................. 14, 21

*McDougall v. Cty. of Ventura*, 23 F.4th 1095 (9th Cir. 2022) .......................... 6, 7, 14

*McDougall v. Cty. of Ventura*, 26 F.4th 1016 (9th Cir. 2022) ...................................6

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ..............5, 6, 8, 9, 13, 14, 16-20

*Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025) ...........................7, 10, 11, 19, 20

*Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) ....................................................7

*Ortega v. Grisham*, No. 24-2121, slip op. (10th Cir. Aug. 19, 2025) ........................... 15, 18

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ........................................................13

*Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) ................................... 5-7

*Rhode v. Bonta*, No. 24-542, 2025 U.S. App. LEXIS 18474 (9th Cir. July 24, 2025) ..............................................................................................10

*Rigby v. Jennings*, 630 F. Supp. 3d 602 (D. Del. Sept. 23, 2022) ........................18

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) .................................................. 5

*Snope v. Brown*, 145 S. Ct. 1534 (2025) ...............................................................17

*Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) ......................................................7

*Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ...............................7 14

*United States v. Duarte*, 108 F.4th 786 (9th Cir. 2024) ........................................11

*United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) ........................................7

*United States v. Fort*, 478 F.3d 1099 (9th Cir. 2007) ............................................4

*United States v. Rahimi*, 602 U.S. 680 (2024) .............................................5, 17, 19

*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) ...................................................8

*Wolford v. Lopez*, 125 F.4th 1230 (9th Cir. 2025) .................................................9

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) ................................................. 5-7

*Yukutake v. Lopez*, 130 F.4th 1077 (9th Cir. 2025) ...................................3, 4, 14-16, 18, 20

## CONSTITUTION

U.S. Const. amend. I ............................................................................................15

U.S. Const. amend. II ................................................................................... 1-7, 9-21

U.S. Const. amend. XIV ......................................................................................21

## STATUTES

Ha. Rev. Stat. § 134-2(e) ............................................................................... 2-4, 19

Ha. Rev. Stat. § 134-3 .................................................................................. 2-4, 19

## RULES

Fed. R. App. P. 40(b)(2) (2024) ....................................................................... 9, 11

## COURT FILINGS

Fifth Suppl. Decl. of Mayra G. Morales, *Rhode v. Bonta*, No. 3:18-cv-
00802-BEN-JLB (S.D. Cal. Aug. 16, 2023) (ECF No. 92-11) ............................ 10

Petition for a Writ of Certiorari, *Duncan v. Bonta*, No. 25-198 (U.S. Aug.
15, 2025) ........................................................................................................ 9

Petition for Rehearing En Banc*, May v. Bonta*, No. 23-4356 (9th Cir. filed
Sept. 19, 2024) .............................................................................................. 8

## OTHER AUTHORITIES

Henry Clay Warmoth, *War, Politics, and Reconstruction: Stormy Days in
Louisiana* (2nd ed., Univ. of S. Carolina Press 2006) ................................. 8

U.S. Cts. for the Ninth Cir., *2023 Annual Report* (2023) ..................................... 7

## INTEREST OF AMICI CURIAE[1]

Second Amendment Foundation ("SAF") is a non-profit membership organization founded in 1974 with over 720,000 members and supporters in every state of the union. Its purposes include education, research, publishing, and legal action focusing on the constitutional right to keep and bear arms. Currently, SAF is involved in several Second Amendment-related lawsuits proceeding in the Ninth Circuit and thus has great interest in the outcome of this case.

Founded in 1875, California Rifle & Pistol Association, Incorporated, is a nonprofit organization that seeks to defend the Second Amendment and advance laws that protect the rights of individual citizens. In service of its mission to preserve the constitutional and statutory rights of gun ownership, California Rifle & Pistol Association regularly participates as a party or amicus in firearm-related litigation.

Second Amendment Law Center, Inc. is a nonprofit corporation headquartered in Henderson, Nevada. Second Amendment Law Center is dedicated to promoting and defending the individual rights to keep and bear arms as envisioned by the Founding Fathers. Its purpose is to defend these rights in state and federal courts across the United States. It also seeks to educate the public about the social utility of firearm ownership and to provide accurate historical, criminological, and technical information about firearms to policymakers, judges, and the public.

---

[1] The parties have given their consent to the filing of this brief. No counsel for a party authored the brief in whole or in part. No party, counsel for a party, or any person other than amici and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

## INTRODUCTION

The vacated three-judge panel ruling reached the correct result because there is simply no historical tradition of requiring gun purchasers to endure both an arbitrary time limit to complete a purchase, nor to force them to bring their new firearm in for police inspection, as Hawaii Revised Statutes §§ 134-2(e) and 134-3 respectively require. Were that all Amici had to say on the matter, this brief would be unnecessary, as Plaintiffs-Appellees' briefing makes their arguments well, and Amici join them in full.

But Amici are compelled to make their voice heard because, as they are frequent litigants in this Court, they too have had hard-won and costly Second Amendment victories stripped away from them upon en banc rehearing. For most other types of litigants in the Ninth Circuit, en banc rehearing is statistically almost as rare as a Supreme Court cert grant, and prevailing parties after a three-judge panel almost always keep their victories. But rehearing is practically a matter of course in this Court whenever litigants challenging gun laws prevail on final judgment before a three-judge panel. With only one very recent exception in which en banc did not occur because the state of California did not petition for rehearing,[2] *every* appellate victory for the Second Amendment has been reversed en banc.

This added extra step for Second Amendment plaintiffs not only erodes confidence in the fundamental fairness of this Court, but it also taxes the already-limited resources of nonprofit advocacy groups that must go up against taxpayer-funded state governments with seemingly unlimited litigation resources. S*ee, e.g.,*

---

[2] Mandate, *Nguyen v. Bonta*, No. 24-2036 (9th Cir. Aug. 14, 2025).

Plaintiffs-Appellees' Opposition to Defendant's Motion for Supplemental Briefing at 2, *Yukutake v. Lopez*, No. 21-16756 (9th Cir. filed Aug. 11, 2025) (noting that "Plaintiffs are not a state with a seemingly unlimited financial litigation budget" and that even just printing and delivering additional briefs for the en banc process costs $2,643.10).

In this brief, Amici will review this Court's habit of granting en banc rehearing in Second Amendment cases, demonstrating why it is so damaging to both plaintiffs turning to the courts for redress of their grievances, as well as to the reputation of this Court itself. Amici believe this rehearing should be withdrawn and the panel ruling reinstated. Failing that, however, Amici also argue that this Court should use this as an opportunity to reverse the damaging standard in Second Amendment cases set in *B&L Productions, Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024), and clarify what is required in the plain text analysis of such cases. With the correct standard in place, Hawaii Revised Statutes §§ 134-2(e) and 134-3 clearly implicate the plain text of the Second Amendment, and because they lack any supporting historical tradition, they should be struck down.

## ARGUMENT

### I.   THIS COURT'S PRACTICE OF CONSTANTLY GRANTING EN BANC REHEARING WHENEVER SECOND AMENDMENT LITIGANTS PREVAIL IS DETRIMENTAL TO INSTITUTIONAL TRUST.

This case involves issues particular to Hawaii, which imposes a time limit under Hawaii Revised Statutes § 134-2(e) to buy a firearm after receiving a permit to do so. *Yukutake v. Lopez*, 130 F.4th 1077, 1081 (9th Cir. 2025). This 30-day time limit seems solely designed to harass law-abiding prospective handgun purchasers. Perhaps even

more burdensome, however, is the intrusive requirement that purchasers then have to bring in their legally purchased firearms for inspection within five days, under Hawaii Revised Statutes § 134-3, which like § 134-2(e), does not exist in any other state that Amici are aware of. As there is no historical tradition to support these restrictions that go well beyond the background checks seen in other states, the three-judge panel correctly struck them down. Even the dissent did not attempt to point to any history justifying the bans, instead arguing they do not fall within the plain text of the Second Amendment (a point that is rebutted in section II.B., *infra*). *Id.* at 1120 (Bea, J., dissenting).

In a vacuum, it would be unclear why a panel of this Court striking down such an idiosyncratic pair of laws that are unique to one state would warrant the extraordinary measure of en banc rehearing. *See Cassirer v. Thyssen-Bornemisza Collection Found.,* 107 F.4th 882, 883 (9th Cir. 2024) (Graber, J., dissenting from the denial of rehearing en banc) (rehearing en banc is reserved for "extraordinary" cases.) Even if some may disagree with the three-judge panel's ruling or aspects of its analysis, "we do not rehear en banc every appeal where the panel gets it wrong." *United States v. Fort*, 478 F.3d 1099, 1104 (9th Cir. 2007) (Wardlaw, J., Pregerson, J., Reinhardt, J., W. Fletcher, J., Fisher, J., and Paez, J., dissenting from the denial of rehearing en banc).

But news of rehearing being granted in this case was not surprising to those who have closely followed or participated in Second Amendment litigation in the Ninth Circuit. If a gun owner living in Hawaii or the West Coast desires to challenge a particular gun law they believe violates the Second Amendment, this Court's track record serves as the ultimate chilling effect to dissuade them from bothering to turn

to the court system. Even before *Bruen*, it had an astonishing "undefeated, 50-0 record" in rejecting Second Amendment challenges–a record that even caught the notice of a Supreme Court Justice. *United States v. Rahimi*, 602 U.S. 680, 712 (2024) (Gorsuch, J., concurring) (quoting *Duncan v. Bonta*, 19 F.4th 1087, 1167 n.8 (9th Cir. 2021) (VanDyke, J., dissenting)). More distressingly, some of these decisions were demonstrably *wrong*, and the challengers' unsuccessful arguments were later vindicated by subsequent Supreme Court decisions. Such belated vindication is cold comfort for private plaintiffs or advocacy organizations like Amici who cannot recover the tremendous amount of resources, including money, they expend during the litigation process.

This flawed jurisprudence is not limited only to marginal issues but strikes at the core of the Second Amendment. Two decades ago, this Court ruled that there was no individual right to own or possess arms in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002)—a decision that would be corrected by *Heller* six years later. As another example, one of Amici's sister organizations was an associational plaintiff in *Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016), where this Court ruled that there was no right to carry a concealed firearm in public. *Id.* at 929. To be sure, that ruling left open the possibility that openly carrying arms may be protected by the Second Amendment. *Id.* at 942. But it slammed that door shut a couple of years later in *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), where it held that the "and bear" part of the Second Amendment meant nothing at all, and there was no right to publicly bear arms either openly or concealed. That obviously erroneous ruling was, of course, in direct conflict with *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (Finding the natural

meaning of "bear arms" to be captured by Justice Ginsburg's prior writings stating "[s]urely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.") (internal citations omitted) and ultimately undone by *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

Besides wrongly rejecting the existence of a right to carry, *Peruta* and *Young* had something else in common, too: both were en banc rulings that vacated earlier rulings by three-judge panels of this Court that had ruled in the plaintiffs' favor. That is an all-too-common trend in this Circuit that leaves Second Amendment litigants feeling hopeless, with any panel victories for them seemingly destined for vacatur. "Trend" is perhaps putting it much too lightly, because when a panel of this Court actually strikes down a law for violating the Second Amendment, the ruling "will almost certainly face an en banc challenge. This prediction follows from the fact that this is *always* what happens when a three-judge panel upholds the Second Amendment in this circuit." *McDougall v. Cty. of Ventura*, 23 F.4th 1095, 1119 (9th Cir. 2022) (VanDyke, J., concurring).[3] It's nearly as certain to occur as tomorrow's sunrise.

The statistics on this Court's en banc petition grants bear this out. Normally, a case receiving en banc review is exceedingly rare. For context, in 2022 and 2023, there

---

[3] Judge VanDyke was exactly right. The *McDougall* panel ruling was indeed vacated following a vote to take the case en banc, though it was never heard en banc because it was instead remanded after *Bruen*. *See McDougall v. Cty. of Ventura*, 26 F.4th 1016, 1016 (9th Cir. 2022). But this demonstrates that even in an extreme case about the forcible closure of gun shops that blocked the ability of plaintiffs to acquire firearms for 48 days, this Court would not allow a panel ruling vindicating the Second Amendment to stand.

were a combined 16,343 new appeals filed in this Court. *See* U.S. Cts. for the Ninth Cir., *2023 Annual Report* 59 (2023). In that same two-year period, 1,351 en banc petitions were filed, of which just *26* were granted rehearing. *Id.* at 61. In other words, only about 2% of en banc petitions are granted, and only about 0.16% of all filed appeals ever get en banc review. Yet despite how rare en banc rehearing is overall, somehow every single case in a final judgment posture in which plaintiffs prevail on Second Amendment challenges has received en banc review, with only one very recent exception in which California did not seek en banc review and this Court did not take *sua sponte.*[4]

By Amici's count, since *Heller*, there have been at least nine instances of this Court vacating Second Amendment rulings and granting en banc review. Besides the instant case, and *Peruta*, *Young,* and *McDougall* which were already mentioned, this Court also granted en banc review and vacated Second Amendment victories in *Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017), *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025), *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025), and *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025).

This would perhaps be more understandable if it reflected a general interest by this Court in developing Second Amendment jurisprudence. Were that the case, however, one would expect the Court to have reheard a panel decision *upholding* a gun law *at least once*. But with one exception over a decade ago,[5] that has not happened

---

[4] *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025). With the mandate having recently issued, *Nguyen* becomes the first ever lasting Second Amendment victory in Ninth Circuit history, 17 years after *Heller*. Of course, one token victory being allowed to stand does not undo the much longer history of en banc reversals.

[5] *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012). And even in that case, the

even when rehearing was plainly merited. As an example, Amici recently requested en banc review in one of their own cases about expansive new bans on public carry by California and Hawaii. *See* Petition for Rehearing En Banc*, May v. Bonta*, No. 23-4356 (9th Cir. filed Sept. 19, 2024).[6] While there were many errors in the panel's ruling, the most disheartening was the panel's (hopefully mistaken) reliance on a racist "Black Code" as one of just two historical laws it used to justify Hawaii's modern ban[7] on carrying a firearm on any private property open to the public unless the owner gives permission. *Wolford v. Lopez*, 116 F.4th 959, 995 (9th Cir. 2024). The other was a colonial hunting regulation entitled "An Act for the Preservation of Deer." *Id.* The ruling ignored *Bruen*'s clear instruction that a mere two outlier laws are not enough to create a historical tradition--even if you could set aside the repugnant provenance of racist laws like the one the *Wolford* panel relied on. *Bruen*, 597 U.S. at 65 ("the Texas statute, and the rationales set forth in *English* and *Duke*, are outliers. In fact, only one other State, West Virginia, adopted a similar public-carry statute before 1900."). Finally, in this aspect of the ruling, the panel also created a circuit split with the Second Circuit's ruling in *Antonyuk v. James*, 120 F.4th 941, 1048 (2d Cir. 2024). That alone justified en banc review, but rehearing was even more appropriate considering

---

government still ultimately won.

[6] *May v. Bonta* was consolidated on appeal with *Wolford v. Lopez*, which was the title of the eventual ruling.

[7] The former Governor of Louisiana, who served from 1868-72 later confirmed in his memoir that the law "of course, was aimed at the freedman." Henry Clay Warmoth, *War, Politics, and Reconstruction: Stormy Days in Louisiana* 278 (2nd ed., Univ. of S. Carolina Press 2006). It is also important to note that Louisiana was not even a state at this time, but a defeated former state in rebellion and now under federal rule, so it should have not been included in any consideration of historical tradition of state regulation of firearms.

the exceptional importance of the question of limiting public carry on almost all private property held open to the public. *See* Fed. R. App. P. 40(b)(2) (2024).

Despite all of these factors that clearly merited en banc review, this Court denied the petition, even over the dissent of eight judges who would have granted the petition and reheard the case. *Wolford v. Lopez*, 125 F.4th 1230, 1231 (9th Cir. 2025) (Collins, J., and Bress, J., dissenting); *Id.* (VanDyke, J., Callahan, J., Ikuta, J., R. Nelson, J., Lee, J., and Bumatay, J., dissenting).

But there's more. Indeed, it appears this Court will even bend its own internal rules to ensure that Second Amendment litigants lose. *Duncan v. Bonta*, No. 23-55805, 2023 U.S. App. LEXIS 25723, at *7 (9th Cir. Sep. 28, 2023) (VanDyke, J., dissenting) (explaining how after missing a deadline to call for en banc review, "a discrete collection of judges—again, not the entire court—struck a 'compromise,' circumvented our own rules, and allowed the en banc call to move forward. But only in this one case."). One of the Amici is an associational plaintiff in *Duncan* and, suffice it to say, this revelation shook its confidence in ever being treated fairly in a Court that "disregard[s] [its] own rules and make[s] questionable decisions like this behind closed doors." *Id.* at *9. That this Court reached exactly the same 7-4 ultimate result in upholding California's ban on common magazines, even after the Supreme Court vacated and remanded the case following *Bruen* for a new analysis to be completed, only exacerbated these concerns. *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025). It seems the *Duncan* plaintiffs never had any real chance of prevailing, barring the Supreme Court intervention they now seek. *See* Petition for a Writ of Certiorari, *Duncan v. Bonta*, No. 25-198 (U.S. Aug. 15, 2025).

Another pending case that may also get en banc review is *Rhode v. Bonta*, wherein California's first-of-its-kind ammunition background check regime was rightfully ruled unconstitutional both by the district court and by a panel of this Court. No. 24-542, 2025 U.S. App. LEXIS 18474 (9th Cir. July 24, 2025). Even if some hypothetical ammunition background check system is constitutional, California's is not because, *by the state's own admission*, it erroneously denies 11% of everyone who uses it. *See* Fifth Suppl. Decl. of Mayra G. Morales at 3, *Rhode v. Bonta*, No. 3:18-cv-00802-BEN-JLB (S.D. Cal. Aug. 16, 2023) (ECF No. 92-11). Nor is this the "growing pains" of a new system. Four years after it was implemented it still rejects over 400 law-abiding people for every one actual prohibited person it correctly denies, as the state confirmed that in the first half of 2023 over 58,000 people were rejected due to records mismatches, compared to just 141 who were denied due to actually being prohibited people. *Id.* If a voter registration system wrongfully rejected hundreds of applicants for each single unqualified person it stopped from committing voter fraud, this Court would never stand for it and would rule it facially unconstitutional even if most people could successfully navigate it. But this being the Second Amendment, Amici worry that the State's petition for en banc review will be granted, and even a background check system that wrongfully denies over 1 in 10 ammunition purchasers will somehow be upheld as not violating the Second Amendment. It would be only the latest in a very dispiriting pattern.

It's as indefensible as it is clear: the Second Amendment is (save for the recent exception of *Nguyen*) not allowed to prevail in the Ninth Circuit. Of course, if a panel reaches the "correct" result by holding the challenge law to be constitutional, then en

banc rehearing will not occur.

It's hard not to fall into despair at this worsening situation and lose confidence in the system itself. This is not a "win some, lose some" scenario for Second Amendment litigants like Amici. Instead, aside from *Nguyen*, they always lose in the Ninth Circuit, and even if they do win, this Court consistently reverses their wins en banc. Judges of this Court have confirmed as much. "If the protection of the people's fundamental rights wasn't such a serious matter, our court's attitude toward the Second Amendment would be laughably absurd." *Duncan v. Bonta*, 83 F.4th 803, 808 (9th Cir. 2023) (Bumatay, J., Ikuta, J., R. Nelson, J., and VanDyke, dissenting); "17/29ths of our bench is doing its best to avoid the Court's guidance and subvert its approach to the Second Amendment. That is patently obvious to anyone paying attention. To say it out loud is shocking only because judges rarely say such things out loud." *United States v. Duarte*, 108 F.4th 786, 788 (9th Cir. 2024) (VanDyke, J., dissenting from grant of rehearing en banc).

To begin to restore confidence in this Court, it should dismiss the en banc rehearing in this matter as improvidently granted and restore the three-judge panel ruling. This is appropriate because en banc review is intended to be rare and only reserved for issues of exceptional public importance, or those that conflict with Supreme Court rulings, rulings of other circuit courts, or this Court's own precedent, as the federal rules of appellate procedure confirm. Fed. R. App. P. 40(b)(2) (2024). For the reason the three-judge panel majority explained, this ruling is in accord with rulings of other circuit courts and this Court's precedent (even under the too-constraining standard of *B&L Productions, Inc. v. Newsom,* which is discussed further in

the next section). And given that it deals with peculiar firearm acquisition laws unique to Hawaii, there is certainly no question of exceptional importance presented. If the panel's ruling stands, prospective firearm purchasers in Hawaii will still have to undergo background checks to ensure they are not prohibited from owning firearms, they just will not have an arbitrary time limit to do so, nor will they need to bring their newly purchased firearms to the police for inspection. In other words, Hawaii will simply have the gun-purchasing status quo that exists in almost every other state. That does not call out for the extraordinary measure of en banc rehearing, as this is "not the rare case worthy of en banc review." *Anderson v. Neven*, 974 F.3d 1119, 1120 (9th Cir. 2020) (Wardlaw, J., and Thomas, C.J., concurring in the denial of rehearing en banc).

An en banc rehearing that tears away yet another victory by plaintiffs[8] seeking to vindicate their Second Amendment rights will merely confirm that this Court will "continue to twist the law and procedure to reach [its] desired conclusion." *Duncan*, 2023 U.S. App. LEXIS 25723, at *9 (VanDyke, J. dissenting). In that sad scenario, Second Amendment litigants will have nothing left but the hope that the Supreme Court finally tires of receiving the "judicial middle finger" from this Court and begins regularly reversing its rulings. *Duncan v. Bonta*, 133 F.4th 852, 890 (9th Cir. 2025) (R. Nelson, J., dissenting).

---

[8] It is worth noting that counsel for Plaintiffs in this case, Alan Alexander Beck and Stephen Stamboulieh, were also counsel for the *Young* and *Teter* plaintiffs. While most lawyers will go their entire career without facing en banc proceedings, they are now on their *third* such proceeding, because they happen to litigate Second Amendment cases in the Ninth Circuit. And if this Court rules for the government, it will also be the third time they have had a panel victory taken from them.

## II. THIS COURT SHOULD USE THIS AS AN OPPORTUNITY TO REVERSE THE ERRONEOUS INTEREST-BALANCING STANDARD SET FORTH IN *B&L PRODUCTIONS, INC. V. NEWSOM*.

### A. How *B&L Productions* wrongly revived interest-balancing in the Ninth Circuit.

If this Court proceeds with its en banc rehearing in this matter, such rehearing is a prime opportunity to reverse this Court's improper revival of forbidden interest balancing analyses in *B&L Productions, Inc. v. Newsom* ("*B&L Productions*"). While the three-judge panel majority was correct that Plaintiffs-Appellees prevail even under that flawed analysis, there is no reason they should have to jump through the extra hoop of judicial interest balancing before bringing their Second Amendment claims.

In *Bruen*, the Supreme Court expressly dispensed with such analysis. While "judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here." 597 U.S. at 26. That should have transformed this Court's Second Amendment jurisprudence, given that before *Bruen*, this Court would look to the "severity of the burden" before deciding which level of scrutiny to apply. *See, e.g., Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) ("In weighing the severity of the burden, we are guided by a longstanding distinction between laws that regulate the manner in which individuals may exercise their Second Amendment right, and laws that amount to a total prohibition of the right.").

Instead, with *B&L Productions*, this Court slapped a fake moustache on its old interest-balancing analysis and revived it. Rather than looking at "severity of the burden," this Court now looks to whether a gun law "meaningfully constrains" the Second Amendment right before any historical analysis even occurs, borrowing

language lifted directly from pre-*Bruen* precedent. *B&L Prods.*, 104 F.4th at 118 (citing *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017)).

Of course, asking whether a gun law "meaningfully constrains" the right to keep and bear arms *is* obviously just an inquiry into the "severity of the burden." It's the same concept, stated with different words. As the Supreme Court explained:

> *Heller* and *McDonald* expressly rejected the application of any "judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'" We declined to engage in means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." We then concluded: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."

*Bruen*, 597 U.S. at 22 (all citations omitted). By inquiring into the "severity of the burden," *B&L Productions* invited judges to do exactly what the Supreme Court just forbade: asking whether the burden placed on protected conduct was really all that serious. And many judges will rarely consider the burden on the Second Amendment to be all that serious because "[g]uns are dangerous, after all, so the government's interest in ameliorating such danger is always important." *McDougall*, 23 F.4th at 1122 n.9 (VanDyke, J., concurring).

This was exemplified in the dissent to the three-judge panel's ruling in this very case. The dissent's example of something that *would* "meaningfully constrain" the Second Amendment right was nothing less than a total ban on gun purchases by an entire class of people. *Yukutake*, 130 F.4th at 1117 (Bea, J., dissenting). But, as the

14

majority explained in response, the Second Amendment protects against infringements except those that can be supported by historical tradition, not merely the total destruction of the right to keep and bear arms. *See id.* at 1092-1093 (citing founding-era definitions of "infringe"). The dissent's view would "allow all manner of harassing limitations on the acquisition of firearms, *without any constitutional scrutiny whatsoever*, so long as those limitations fall short of ultimately preventing a citizen from possessing firearms for self-defense." *Id.*

Recently, the 10th Circuit rejected the dissent's preferred approach as it pertains to firearm acquisition in a case concerning New Mexico's seven-day waiting period law, and agreed it amounts to reimplementing interest balancing:

> According to New Mexico, the Second Amendment's plain text does not cover acquiring or purchasing firearms, especially immediate acquisition of purchased firearms. Yet New Mexico acknowledges that severe or abusive limitations on acquisition would burden the Second Amendment, and that the waiting period here survived because the burden is minimal. So, by New Mexico's illogic, a restriction on firearm sales does not burden the Second Amendment—until it does. That argument provides no limiting principle. It inevitably leads to case-by-case judicial interest balancing. But the Supreme Court and the Constitution reject the notion that a right should be restricted simply because the government believes its interests, on balance, are more important than the individual's.

*Ortega v. Grisham*, No. 24-2121, slip op. at 12 (10th Cir. Aug. 19, 2025). The *Ortega* panel further explained that such a "shortcut analysis could prop up laws that lay heavy burdens on the rights of ordinary citizens, without a glance at whether the supposed condition or qualification is in any way like others given safe harbor." *Id.* at 22.

Because judges will always disagree on what is and is not a "meaningful constraint" or the "severity of the burden,"[9] the Supreme Court purposefully took that question away from judges. This Court should honor that, rather than undermine it by smuggling interest-balancing back into the Second Amendment analysis in order to dodge historical scrutiny.

### B. *B&L Productions* misunderstood the plain text analysis of *Bruen*.

In response to the argument just presented, the *B&L Productions* panel would perhaps argue that because the plain text of the Second Amendment only expressly protects the right to "keep" and "bear" arms, they were justified in setting a different standard for supposedly "ancillary" rights. "The plain text of the Second Amendment directly protects one thing—the right to 'keep and bear' firearms." *B&L Prods.*, 104 F.4th at 117.

But this too is a misreading of *Bruen* and unjustifiably makes what the Second Amendment protects much too narrow. By its plain language, *Bruen* eschews a two-step analytical test for deciding Second Amendment challenges: "Despite the popularity of th[e] two-step approach, it is one step too many." *Bruen*, 597 U.S. at 19. Indeed, just last year, the Supreme Court reiterated its one-step substantive analysis: "In *Bruen*, we explained that when a firearm regulation is challenged under the Second Amendment, the United States must show that the restriction 'is consistent with the

---

[9] As the panel majority stated, the constraint at issue here is meaningful by any reasonable interpretation. "While it is true that the amended statute no longer applies to *all* acquisitions, it cannot be said to be, like the restriction at issue in *B&L*, so narrowly focused that it does not "meaningfully constrain[]" Second Amendment rights." *Yukutake,* 130 F.4th at 1100 n.15. So Plaintiffs should prevail even under the flawed standard of *B&L*. But a central point of *Bruen* is that judges are not supposed to be empowered to make these sorts of determinations.

Nation's historical tradition of firearm regulation.'" *Rahimi*, 602 U.S. at 689 (citing *Bruen*, 597 U.S. at 24); *see also id.* at 691 ("when the Government regulates arms-bearing conduct, . . . it bears the burden to 'justify its regulation.'").

Of course, there is no doubt that a Second Amendment challenge requires that the restriction at least *implicate* the right to keep and bear arms. *Bruen*, 597 U.S. at 17. That's why a plaintiff challenging a gun law "has the initial burden of showing that 'the Second Amendment's plain text covers [his] conduct.' " *Snope v. Brown*, 145 S. Ct. 1534, 1538 (2025) (Thomas, J., dissenting from denial of certiorari) (quoting *Bruen*, 597 U.S. at 17). Just as a First Amendment free speech case must involve speech, so too must a Second Amendment case involve the acquisition, ownership, possession, carry, use of, or commerce in arms. But that initial burden is not meant to be an intensive analytical step, but rather a simple qualifier. For example, if a law in any way regulates arms-bearing conduct, the plain text is implicated. *Id.* at 1536 (Thomas, J., dissenting from denial of certiorari) ("A challenger need only show that 'the plain text' of the Second Amendment covers his conduct. . . This burden is met if the law at issue 'regulates' Americans' 'arms-bearing conduct.' ").

Put more simply, "implicating" the right to keep and bear arms is far more expansive than covering only laws that directly restrict the literal "keeping" and "bearing" of arms. This discussion is critical here because, ever since *Bruen* was decided, some courts have exaggerated the requirements of the "first step" to dodge the historical analysis altogether, shifting the burden away from the government. Under these "extremely narrow reading[s]," the Second Amendment is "wrongly. . .reduced to 'a second-class right, subject to an entirely different body of rules than the

17

other Bill of Rights guarantees."' *Yukutake*, 130 F.4th at 1092 (citing *Bruen*, 597 U.S. at 70). This exaggerated "plain text analysis" approach ultimately allows lower courts to treat obvious arms-related questions as though they are not, making a mockery of both the Second Amendment and *Bruen*.

A law "implicating" the Second Amendment may be direct or indirect because, as many courts have concluded, "[t]he Second Amendment also protects attendant rights that make the underlying right to keep and bear arms meaningful." *Boland v. Bonta*, 662 F. Supp. 3d 1077, 1085 (C.D. Cal. 2023) (citing *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. Sept. 23, 2022)); *see also Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment) ("Constitutional rights. . . implicitly protect those closely related acts necessary to their exercise.").

Or as the Tenth Circuit recently put it with even more clarity, "[t]he Second Amendment's text is not limited to direct prohibitions on possessing or using firearms. It states that the 'right of the people to keep and bear Arms, shall not be infringed.' " *Ortega*, slip op. at 12 n.3.

Once the concession is made that at least some protection attaches to those attendant or ancillary rights that make the Second Amendment meaningful, this Court has no authority to do anything but a *Bruen* analysis. The Supreme Court has not endorsed any separate interest-balancing Second Amendment test for "lesser" implied rights, but has stated clearly that "when a firearm regulation is challenged under the Second Amendment, the [government] must show that the restriction 'is consistent

18

with the Nation's historical tradition of firearm regulation.'" *Rahimi*, 602 U.S. at 689 (citing *Bruen*, 597 U.S. at 24).

In sum, any law that affects the right of an American to peaceably acquire, possess, use, or carry bearable arms must be backed by historical tradition. That is *Bruen*'s fundamental holding. It is not for any inferior court to ask whether particular aspects of the Second Amendment right are "really worth insisting upon." *Heller*, 554 U.S. at 634. This Court should seize this opportunity to make that clear, and reverse or narrow *B&L Productions*.

### C. Hawaii Revised Statutes §§ 134-2(e) and 134-3 implicate the plain text of the Second Amendment and lack any distinctly similar supporting historical tradition.

With that correct standard back in place, it will be easy to conclude that the plain text of the Second Amendment is implicated by Hawaii's laws at issue here, Hawaii Revised Statutes §§ 134-2(e) and 134-3. These statutes set strict time limits on the right to acquire a handgun and demand a police inspection of that handgun following the purchase. As *Nguyen v. Bonta* just explained, because there is nothing new about acquiring firearms that would allow for a looser analogical standard under *Bruen*, Hawaii must instead point to "distinctly similar" historical laws, which it will of course fail to do. *See Nguyen*, 140 F.4th 1237 at *19 ("In sum, the modern problems that California identifies as justification for its one-gun-a-month law are perhaps different in degree from past problems, but they are not different in kind. Therefore, a nuanced approach is not warranted."). In fact, much of what the *Nguyen* panel said concerning a limit of buying one handgun a month also applies here:

> We are not aware of any circumstance where government may
> temporally meter the exercise of constitutional rights in this manner.
> And we doubt anyone would think government could limit citizens' free-
> speech right to one protest a month, their free-exercise right to one
> worship service per month, or their right to be free from unreasonable
> searches and seizures to apply only to one search or arrest per month.
> We could go on. If the frequency with which constitutional rights can be
> exercised could be regulated in this manner without infringement, what
> would limit government from deciding that a right need only be available
> every six months or once a year or at any other interval it chooses?
> California had no answer to this concern at oral argument.

*Nguyen*, 140 F.4th 1237 at *12. Just as the government may not place such arbitrary

time limits on free speech rights and then require speakers to come back and confirm

what they said was acceptable, nor may Hawaii place similar restraints on Second

Amendment conduct and then claim the Second Amendment is not even implicated

by them. Unless there is a representative and relevant historical tradition to support

Hawaii's laws, they must crumble.

Tellingly, the otherwise detailed dissent in the panel's ruling did not even

attempt to argue that even if it were wrong about whether there was a "meaningful

restraint," historical tradition nevertheless supported the laws at issue (perhaps an

acknowledgment that no such tradition exists). Rather, the dissent complained that

"[a]fter today's decision, a plaintiff who challenges any aspect of such a regime bears

practically no burden of his own . . . the majority places the burden on the state either

to satisfy strict scrutiny or put forth a historical analogue to justify that provision."

*Yukutake*, 130 F.4th at 1124 (Bea, J., dissenting).

But that is exactly what *Bruen* commands. No high burden is expected of

plaintiffs besides that their proposed course of conduct merely implicate the Second

Amendment. This does indeed make the government's life a bit more difficult, but that is no accident; a Constitutional right at issue, and one that commands that it "shall not be infringed." U.S. Const. amend. II. The Second Amendment is supposed to be hard to limit, and it is not the only aspect of the Bill of Rights that greatly constrains the government. There are no grounds to treat it as "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). To the extent *B&L Productions* and any other precedent in this circuit conflict with that, it should be reversed or narrowed.

## CONCLUSION

For these reasons, Amici urge this Court to either restore the three-judge panel ruling, or in the alternative, rule for Plaintiffs-Appellees.

Dated: August 25, 2025                    Respectfully submitted,

**SECOND AMENDMENT FOUNDATION**

/s/ Konstadinos T. Moros
Konstadinos T. Moros
SECOND AMENDMENT
FOUNDATION
12500 NE 10TH Pl.
Bellevue, WA 98005
(425) 454-7012
kmoros@saf.org
*Counsel for Amici Curiae*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 21-16756

I am the attorney or self-represented party.

**This brief contains** 6,283 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Konstadinos T. Moros  **Date** August 25, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief of Amici Curiae with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit on August 25, 2025, using the Appellate Electronic Filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: August 25, 2025                                 SECOND AMENDMENT FOUNDATION

/s/ Konstadinos T. Moros
Konstadinos T. Moros
*Counsel for Amici Curiae*