**Docket No. 21-16756**

*In the*
# United States Court of Appeals
*For the*
## Ninth Circuit

TODD YUKUTAKE; DAVID KIKUKAWA,

*Plaintiffs-Appellees,*

v.

ANNE E. LOPEZ, In her Official Capacity as the Attorney General of the State of Hawaii,

*Defendant-Appellant.*

_____

*Appeal from a Decision of the United States District Court for the District of Hawaii, No. 1:19-cv-00578 JMS-RT · Honorable J. Michael Seabright*

## BRIEF OF NATIONAL ASSOCIATION FOR GUN RIGHTS AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES

BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

*Attorney for Amicus Curiae*



COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER



## CORPORATE DISCLOSURE STATEMENT

National Association for Gun Rights has no parent corporations. It has no stock. Therefore, no publicly held company owns 10% or more of its stock.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................... i

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF AMICUS ........................................................................ 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................ 3

    I.    The Hawaii Legislature Creates a Moving Target ................. 3

        A.    Amendment to Section 134-2(e)—Permit Expiration .................................................................. 3

        B.    Amendment to Section 134-3—Firearm Inspection ................................................................... 4

        C.    The State Moved to Dismiss on Mootness Grounds ..................................................................... 5

    II.    The District Court's Judgment Should Not be Vacated Even if the Court Holds the Appeal is Moot .......................... 6

        A.    The Court Should Overrule *Teter's* "No Unilateral Action" Holding ............................................ 6

        B.    Under *U.S. Bancorp,* the District Court Order Should Not be Vacated ............................................... 10

CONCLUSION ................................................................................... 11

CERTIFICATE OF COMPLIANCE ....................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. C.L. Union of Nevada v. Masto*,
  670 F.3d 1046 (9th Cir. 2012) ......................................................................... 3, 10

*D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.*,
  18 F.4th 1043 (9th Cir. 2021), abrogated on other grounds
  by *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023) .................... 8

*Ex parte Young*,
  209 U.S. 123 (1908) ........................................................................................ 8, 9

*Seven Up Pete Venture v. Schweitzer*,
  523 F.3d 948 (9th Cir. 2008) ............................................................................ 8

*Teter v. Lopez*,
  76 F.4th 938 (9th Cir. 2023) .................................................................... 6, 8, 9

*Teter v. Lopez*,
  125 F.4th 1301 (9th Cir. 2025) ...................................................................... 6, 7

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) .................................................................................. 2-3, 7, 10

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ............................................................................................. 7

*Will v. Mich. Dep't. of State Police*,
  491 U.S. 58 (1989) ............................................................................................. 8

*Yukutake v. Lopez*,
  130 F.4th 1077 (9th Cir.) ................................................................................. 5

**Statutes and Other Authorities:**

U.S. Const., Amend II ........................................................................................ 1, 2, 6

U.S. Const., Amend XI ........................................................................................ 8, 9

Act 30, § 2, 2022 Haw. Sess. Laws 50 .................................................................... 5

Act 30, § 2, 2022 Haw. Sess. Laws 52-54 .............................................................. 5

Act 52, § 13, 2023 Haw. Sess. Laws 113 ............................................... 4, 5

Act 52, § 13, 2023 Haw. Sess. Laws 121 .................................................. 4

Act 52, § 13, 2023 Haw. Sess. Laws 136 .................................................. 5

Haw. Rev. Stat. § 134-2 ............................................................................ 4

Haw. Rev. Stat. § 134-2(a) ........................................................................ 3

Haw. Rev. Stat. § 134-2(e) ............................................................. *passim*

Haw. Rev. Stat. § 134-3 .......................................................................... 11

Haw. Rev. Stat. § 134-3(b) ........................................................................ 4

Haw. Rev. Stat. § 134-3(c) .................................................................... 2, 4

Haw. Rev. Stat. § 134-53 .......................................................................... 6

Jean-Claude André and Sarah Erickson André,
   *Federal Appeals Jurisdiction and Practice* § 14:10 (2025 ed.) ............. 8

## INTEREST OF AMICUS

The right to keep and bear arms is a fundamental right that existed prior to the Constitution. The right is not in any sense granted by the Constitution. Nor does it depend on the Constitution for its existence. Rather, the Second Amendment declares that the pre-existing "right of the people to keep and bear Arms shall not be infringed." The National Association for Gun Rights ("NAGR")[1] is a nonprofit membership and donor-supported organization with hundreds of thousands of members nationwide. The sole reason for NAGR's existence is to defend American citizens' right to keep and bear arms. In pursuit of this goal, NAGR has filed numerous lawsuits seeking to uphold Americans' Second Amendment rights. NAGR has a strong interest in this case because the guidance the Court will provide in its resolution of this matter will have a major impact on NAGR's ongoing litigation efforts in support of Americans' fundamental right to keep and bear arms.

---

[1] No party's counsel authored this brief in whole or in part and other than NAGR no person contributed money to fund its preparation or submission. All parties consent to the submission of this brief.

1

## SUMMARY OF ARGUMENT

Plaintiffs brought a Second Amendment challenge to Haw. Rev. Stat. § 134-2(e) (permit expiration) and Haw. Rev. Stat. § 134-3(c) (in-person inspection). The district court entered summary judgment in favor of the plaintiffs on their constitutional claims. After the district court entered its judgment and while this appeal was pending, the Hawaii legislature amended both statutes, and the State moved to dismiss the case as moot.

In response to the State's motion, Plaintiffs argued that the amendments did not render the case moot and, even if they did, the Court should not vacate the trial court's judgment. The panel agreed that the case was not moot and denied the State's motion. Since it did not dismiss the case, it did not address the issue of vacatur.

If the Court sitting en banc disagrees with the panel and dismisses the case as moot, it should nevertheless not vacate the district court's judgment. In cases such as this, the "principal condition" to which the Supreme Court has looked regarding the vacatur issue is whether the party seeking relief from the judgment below caused the mootness by voluntary action. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513

U.S. 18, 24 (1994). To obtain vacatur, the State must demonstrate equitable entitlement to the *extraordinary remedy* of vacatur. *Id*. at 24. (emphasis added).

NAGR does not believe the case is moot. However, if it is, the State's unilateral actions caused it to become so. Thus, vacating the district court's judgment would frustrate the "unilateral action" rule. See *Am. C.L. Union of Nevada v. Masto*, 670 F.3d 1046, 1046 (9th Cir. 2012) ("When a case has been mooted by the appellant's own actions, the Supreme Court has directed that appellate courts should vacate the district court order only in 'exceptional circumstances.'").

## ARGUMENT

### I. The Hawaii Legislature Creates a Moving Target

#### A. Amendment to Section 134-2(e)—Permit Expiration

Under Hawaii's gun permitting system, a person may not acquire a firearm unless they have procured a permit from the chief of police. Haw. Rev. Stat. § 134-2(a). When this case began, Haw. Rev. Stat. § 134-2(e) stated: "Permits issued to acquire any pistol or revolver shall be void unless used within *ten days* after the date of issue." (emphasis added). On June 2, 2023, the Governor of Hawaii signed Act 52 (available at

http://bit.ly/4n6cR1M). Act 52 amended Haw. Rev. Stat. § 134-2(e) by replacing "ten days" with "thirty days." Act 52, § 4, 2023 Haw. Sess. Laws 113, 121. In summary, Act 52 extended the time for acquiring a handgun after obtaining a permit from ten days to thirty days.

### B. Amendment to Section 134-3—Firearm Inspection

Haw. Rev. Stat. § 134-3(b) states in relevant part: "Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition." At the time this case began, Hawaii required the owners of all firearms (except dealers) to have their firearms inspected when they were registered. Specifically, Haw. Rev. Stat. § 134-3(c) stated in relevant part: "*All . . . firearms* and firearm receivers registered under this section [except those held by licensed dealers] shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration." (emphasis added). On June 3, 2022, the Governor of Hawaii signed Act 30 (available at http://bit.ly/3HVGALH). Act 30 repealed the provision in Haw. Rev. Stat. § 134-3(c) that required the in-person inspection of all firearms (except those held by licensed dealers) at the time of registration and replaced it with a provision that required

4

inspections in three more limited circumstances. Act 30, § 2, 2022 Haw. Sess. Laws 50, 54.[2] Under Act 30, inspections are now required only for (1) privately made firearms, (2) firearms brought from out of state, and (3) firearms transferred in private transactions. Act 30, § 2, 2022 Haw. Sess. Laws 50, 52–54.

### C. The State Moved to Dismiss on Mootness Grounds

The Hawaii legislature amended §§ 134-2(e) and 134-3 after the district court entered its judgment and while this appeal was pending. On May 4, 2023, the State moved to dismiss this appeal and vacate the district court's judgment. See Defendant-Appellant's Motion to Dismiss for Mootness [ECF 80], 11. The panel held that the case is not moot and denied the State's motion. *Yukutake v. Lopez*, 130 F.4th 1077, 1084 (9th Cir.).

In their response to the State's motion to dismiss, Plaintiffs argued that even if the panel dismissed the case as moot, it should not vacate the district court's judgment. Appellees' Opposition to Defendant's Motion to Dismiss [ECF 81], 11-14. The panel did not reach this issue because it

---

[2] Act 30 had a sunset provision, but that provision was later repealed. *See* Act 52, § 13, 2023 Haw. Sess. Laws 113, 136.

held that the case was not moot. If the Court sitting en banc disagrees and holds that the case is moot, for the reasons set forth below, it should nevertheless not vacate the trial court's judgment.

## II. The District Court's Judgment Should Not be Vacated Even if the Court Holds the Appeal is Moot

### A. The Court Should Overrule *Teter's* "No Unilateral Action" Holding

In *Teter v. Lopez,* 125 F.4th 1301 (9th Cir. 2025), the plaintiffs challenged Haw. Rev. Stat. § 134-53, which at the time the case was commenced, prohibited possession of so-called "butterfly knives." The district court granted summary judgment to the State, but a three-judge panel of this Court held that the statute violated the Second Amendment and reversed.[3] The State petitioned for rehearing en banc, and the Court granted the petition (as almost always happens when Plaintiffs prevail in a Second Amendment case in the Ninth Circuit). However, while the petition for rehearing was pending, Hawaii's legislature amended the statute by replacing the prohibition on possession of the knives with a prohibition only on carrying the knives concealed. *Id.*, 125 F.4th at 1305.

---

[3] *Teter v. Lopez,* 76 F.4th 938, 954 (9th Cir. 2023).

This Court held that the amendment to the statute rendered the appeal moot and dismissed the case. *Id.* at 1308.

The court then turned to the issue of whether the district court's decision should be vacated. When a case is moot, the normal practice is to vacate the district court's judgment. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). There is an exception to the *Munsingwear* rule. If mootness is caused by the appellant's unilateral action (as opposed to mere "happenstance"), the judgment will not be vacated. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).

In *Teter*, the plaintiffs asked the court to apply the *U.S. Bancorp* exception to the *Munsingwear* rule, arguing that if the case were moot, the mootness resulted from the State's unilateral action in amending the statute. The court rejected the plaintiffs' request and vacated the district court decision, holding that *U.S. Bancorp* was not applicable because the *Hawaii legislature* (and not the *Hawaii Attorney General*) had caused the case to become moot. And since the legislature was not a party, the "unilateral action of a party" rule did not apply. *Id.*, 125 F.4th at 1309.

7

NAGR respectfully urges the Court to reach a different result in this case if it holds the case is moot.[4] Plaintiffs seeking injunctive relief from an unconstitutional state statute always frame their claims as "official capacity" claims under the *Ex parte Young* doctrine.[5] Importantly, an "official capacity" suit "*is no different from a suit against the State itself.*" *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952-53 (9th Cir. 2008) quoting *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) (emphasis added). That is why parties in cases like this one usually refer to the defendant as the "state," even though the nominal defendant is a state official.

The Plaintiffs in this case followed this ubiquitous practice. Thus, while General Lopez is the nominal defendant, in substance, Plaintiffs

---

[4] The Court sitting en banc in this case is not bound by *Teter*, because an en banc court can overrule prior en banc decisions. See Jean-Claude André and Sarah Erickson André, "How the court decides rehearing and en banc petitions," *Federal Appeals Jurisdiction and Practice* § 14:10 (2025 ed.); and *D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1043, 1056–57 (9th Cir. 2021) abrogated on other grounds by *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023) ("today's panel surely has the power to overrule a previous en banc decision").

[5] Suits by individuals against a state are generally barred by the Eleventh Amendment, but under the *Ex parte Young* doctrine, official capacity suits are not barred, even in a case where the suit is, effectively, against a state. *Seven Up Pete Venture*, *supra*, at 953.

8

are seeking relief against the State of Hawaii. General Lopez's office and the Hawaii legislature are both components of the government of the State, and both act for it. Since both are agents for the State, their actions are, in substance, actions of the State.

NAGR urges the Court to recognize the substance of this case (an action against the State) rather than its mere form (an action against a state official in her official capacity). Failure to do so will result in a rule that allows states always to secure vacatur of adverse lower court rulings when state statutes are held unconstitutional and then amended while a case is pending. This is so because, as noted above, plaintiffs seeking relief from unconstitutional statutes always sue state executives under *Ex parte Young*. They never sue the state itself as an entity or the state legislature. Indeed, under the Eleventh Amendment, they generally cannot sue a state legislature. Therefore, every time a situation like this arises, there will be a disconnect between the agent of the state that is the defendant (i.e., an official sued in their official capacity) and the agent of the state that caused the case to become moot (i.e., the legislature).

Thus, under the rule announced in *Teter*, states will always be able to engage in unilateral action that moots a case and still achieve vacatur

of an adverse decision of the lower court. This wholly frustrates the "unilateral action" rule. See *Am. C.L. Union of Nevada v. Masto*, 670 F.3d 1046, 1066 (9th Cir. 2012) ("When a case has been mooted by the appellant's own actions, the Supreme Court has directed that appellate courts should vacate the district court order only in 'exceptional circumstances.'").

### B. Under *U.S. Bancorp,* the District Court Order Should Not be Vacated

If this case is held to be moot, it would be the State's burden, as the party seeking relief from the status quo of the district court's judgment, to demonstrate equitable entitlement to the *extraordinary remedy* of vacatur. *U.S. Bancorp* 513 U.S. at 25 (emphasis added). In cases such as this, the "principal condition" to which the Supreme Court has looked regarding the vacatur issue is whether the party seeking relief from the judgment below caused the mootness by voluntary action. *Id*. at 24.

A straightforward application of *U.S. Bancorp* leads to the conclusion that vacatur is not appropriate. Hawaii lost in the district court. It then rushed to amend its unconstitutional statutes while this litigation was pending in an effort to render the case moot. The panel in this case held that Hawaii failed. If this Court disagrees, at the very least,

10

Hawaii should not be allowed to benefit from its own unilateral action and obtain a vacatur of the adverse district court judgment.

## CONCLUSION

NAGR respectfully requests the Court to affirm the panel's ruling that this case is not moot. But even if the Court holds the amendments to §§ 134-2(e) and 134-3 rendered the case moot, it should nevertheless refuse any request to vacate the district court's judgment.

Respectfully submitted,

/s/ Barry K. Arrington
BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 WADSWORTH BOULEVARD
WHEAT RIDGE, COLORADO 80033
(303) 205-7870
E-mail: barry@arringtonpc.com
*Attorney for Amicus Curiae*

September 2, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 21-16756**

I am the attorney or self-represented party.

**This brief contains 2,182 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

**Signature** */s/ Barry K. Arrington*        Date: September 2, 2025