No. 21-16756

IN THE

# United States Court of Appeals for the Ninth Circuit

TODD YUKUTAKE and DAVID KIKUKAWA,

*Plaintiffs-Appellees,*

v.

ANNE E. LOPEZ, in her official capacity
as the Attorney General of the State of Hawai'i,

*Defendant-Appellant,*

and CITY AND COUNTY OF HONOLULU,

*Defendant.*

On Appeal from the United States District Court for the District of Hawai'i
Honorable J. Michael Seabright, United States District Judge,
Civil No. 1:19-cv-00578 JMS-RT

## EN BANC SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT

ANNE E. LOPEZ
*Attorney General of the State of Hawai'i*
KALIKO'ONĀLANI D. FERNANDES
*Solicitor General*
DEPARTMENT OF THE ATTORNEY GENERAL
STATE OF HAWAI'I
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

JO-ANN TAMILA SAGAR
REEDY C. SWANSON
NATALIE J. SALMANOWITZ
ERIC S. ROYTMAN
RYAN M. CAMPBELL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jo-ann.sagar@hoganlovells.com

*Counsel for Defendant-Appellant Anne E. Lopez*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 2

    A. Statutory Background ...................................................................... 2

    B. Factual Background and Prior Proceedings ................................... 3

ARGUMENT ............................................................................................. 6

I.   HAWAIʻI'S FIREARM-ACQUISITION PROVISIONS ARE
    CONSTITUTIONAL ........................................................................ 6

    A. The Challenged Hawaiʻi Statutes Are Presumptively
    Constitutional ................................................................................... 6

        1. *The Challenged Statutes Are Part Of A Shall-Issue
           Regime* ................................................................................... 6

        2. Bruen*'s Presumption Of Constitutionality Applies To All
           Provisions That Form Part Of A Shall-Issue Regime* .......................... 7

        3. *The Panel's Position—That The Presumption Applies
           Only To Firearm Regulations Concerning Felons And
           The Mentally-Ill—Is Inconsistent With Supreme Court
           Precedent And Other Recent Federal Decisions* ................................. 8

    B. Plaintiffs Fail To Rebut The Presumption Of
    Constitutionality ............................................................................. 10

        1. *Recent Decisions Confirm That The Presumption Can Be
           Rebutted With Evidence That The Statute Imposes
           Meaningful Constraints On The Second-Amendment
           Rights Of Responsible Citizens* .......................................... 10

        2. *Plaintiffs Have Not Shown That Hawaiʻi's Laws
           Meaningfully Constrain Their Rights* ................................... 12

i

## TABLE OF CONTENTS—Continued

Page

II.  EVEN IF HAWAIʻIʻS FIREARM-ACQUISITION
     PROVISIONS ARE NOT CONSTITUTIONAL AS APPLIED
     TO PLAINTIFFS, REMAND IS STILL WARRANTED ...........................14

     A.  Plaintiffs Have Not Shown That Hawaiʻiʻs Laws Are
         Unconstitutional In All Their Applications...............................................15

     B.  The District Court's Universal Injunction Is Unlawful Under
         *CASA* ..................................................................................................16

CONCLUSION ...................................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*AFL-CIO v. Trump*,
 ---F.4th --, No. 25-3293, 2025 WL 2716266 (9th Cir. Sept. 19, 2025)..............18

*Arizona v. Biden*,
 40 F.4th 375 (6th Cir. 2022) ...............................................................................17

*B&L Productions v. Newsom*,
 104 F.4th 108 (9th Cir. 2024) .................................................................. 8, 10-13

*District of Columbia v. Heller*,
 554 U.S. 570 (2008)...........................................................................................8, 9

*Frey v. City of New York*,
 ---F.4th --, No. 23-365-CV, 2025 WL 2679729 (2d Cir. Sept. 19, 2025)..........10

*Gazzola v. Hochul*,
 88 F.4th 186 (2d Cir. 2023) ..........................................................................11, 12

*Jackson v. City & County of San Francisco*,
 746 F.3d 953 (9th Cir. 2014) ..............................................................................11

*Maryland Shall Issue, Inc. v. Moore*,
 116 F.4th 211 (4th Cir. 2024) ...................................................................1, 7, 10

*McRorey v. Garland*,
 99 F.4th 831 (5th Cir. 2024) ........................................................................ 12-14

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024)................................................................................... 2, 14-16

*New York State Rifle & Pistol Association v. Bruen*,
 597 U.S. 1 (2022)..................................................... 1, 6-9, 11, 12, 14

*Rhode v. Bonta*,
 145 F.4th 1090 (9th Cir. 2025) .............................................................................8

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025)................................................................................2, 14, 17

## TABLE OF AUTHORITIES—Continued

Page(s)

*United States v. Peterson*,
    150 F.4th 644 (5th Cir. 2025) ........................................................7, 10

*United States v. Rahimi*,
    602 U.S. 680 (2024)........................................................................8, 15

*United States v. Vereen*,
    152 F.4th 89 (2d Cir. 2025) ....................................................... 11-13

*United States v. Vlha*,
    142 F.4th 1194 (9th Cir. 2025) .........................................................11

*United States v. Williams*,
    113 F.4th 637 (6th Cir. 2024) ...........................................................15

*Yukutake v. Conners*,
    554 F. Supp. 3d 1074 (D. Haw. 2021) ...............................................4

**STATUTES:**

Alaska Stat. § 18.65.700(a)(8) (2020) ........................................................9

Haw. Rev. Stat. § 134-2(a) ..........................................................................2

Haw. Rev. Stat. § 134-2(b) ..........................................................................2

Haw. Rev. Stat. § 134-2(d) .................................................................2, 3, 6

Haw. Rev. Stat. § 134-2(e) ....................................................................3, 6

Haw. Rev. Stat. § 134-3(a) ....................................................................3, 6

Haw. Rev. Stat. § 134-3(b) ....................................................................3, 6

Haw. Rev. Stat. § 134-3(c) ....................................................................3, 6

Haw. Rev. Stat. § 134-7 .........................................................................3, 6

Ky. Rev. Stat. Ann. § 237.110(11) (LexisNexis 2021) ...........................9

N.C. Gen. Stat. Ann. § 14-415.11(d) (2021) .............................................9

## TABLE OF AUTHORITIES—Continued

Page(s)

**LEGISLATIVE MATERIAL:**

Act 74, § 2, 2020 Haw. Sess. Laws ...........................................................................7

## INTRODUCTION

After the parties submitted their briefs, the Supreme Court issued *New York State Rifle & Pistol Association v. Bruen*, in which it explained that "shall-issue licensing regimes" are presumptively constitutional. 597 U.S. 1, 38 n.9 (2022) (internal quotation marks omitted). Since then, the courts of appeals have applied *Bruen* in challenges to shall-issue regimes across the country, examining statutory provisions requiring background checks, waiting periods, and restrictions on firearm sales. Those decisions echo *Bruen*: Shall-issue regimes are presumptively constitutional. And to rebut that presumption, a plaintiff bears the burden to show that the state meaningfully constrained his ability to keep and bear firearms. If he cannot make that showing, his challenge fails. *See, e.g.*, *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222–223 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025).

The Panel opinion upends that paradigm. As the Panel saw it, Hawai'i's shall-issue regime was presumptively *un*constitutional, and Hawai'i bore the burden of proving otherwise. Plaintiffs, on the other hand, did not even have to "explain, by reference to factual allegations and proof, why the regulation [they] challenge[] in practice denies [their] ability to keep and carry a gun." Op. 86 (Bea, J., dissenting). That novel approach is as wrong as it sounds. The Panel should not have affirmed the District Court. In so doing, the Panel created a conflict with Supreme Court

1

precedent and made this Court an outlier. The En Banc Court should correct course and reverse the judgment below.

But even if this Court concludes that the Panel was right on the merits, the Panel would still be wrong on the remedy. Plaintiffs brought a facial challenge, yet the Panel did not require Plaintiffs to prove that the challenged statutes are unconstitutional in all their applications. *Contra Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The Panel also affirmed the District Court's universal injunction— barring Hawai'i from enforcing its firearm-acquisition laws against *anyone*, not just Plaintiffs. *Contra Trump v. CASA, Inc.*, 606 U.S. 831, 853 (2025). At a minimum, this Court should remand for the District Court to appropriately tailor the relief.

## BACKGROUND

### A.    Statutory Background

Hawai'i regulates the acquisition of firearms through a licensing regime providing that "[t]he chief of police . . . shall issue permits to acquire firearms" to individuals based on statutorily-defined, narrow, and objective criteria. *See* Haw. Rev. Stat. § 134-2(d).

First, the prospective licensee must apply for a permit. *Id.* § 134-2(a). The application requires an individual to provide some identifying information, including the applicant's name, address, and physical description, and to authorize the police to access mental health records. *Id.* § 134-2(b).

2

Second, the police will conduct a background check and review any relevant mental health records. *Id.* § 134-2(e). If the application is complete and the background check and mental health records do not reveal "suicidal or homicidal" tendencies or another "danger to the community as a result of acquiring or possessing a firearm," the police "shall issue" the permit. *Id.* § 134-2(d)-(e); *see also id*. § 134-7 (noting other disqualifying factors such as the commission of certain crimes or treatment for certain mental illnesses).

Third, the prospective purchaser—now a licensee—may present the permit to the seller and purchase the firearm. For pistols or revolvers, a separate permit is required for each purchase, and the permit remains valid for 30 days. *Id.* § 134-2(e).

Finally, if the licensee purchases a firearm, the licensee must register the firearm. *Id.* § 134-3(b). In certain circumstances, registration requires bringing the firearm to a police station for a physical inspection within five days of acquisition. *Id.* This requirement applies only if (1) the firearm was not purchased from a licensed dealer, (2) the firearm was "assembled from parts created using a three-dimensional printer," or (3) the firearm was brought into Hawai'i from out-of-state. *Id.* § 134-3(a)-(c).

## B. Factual Background and Prior Proceedings

Plaintiffs Todd Yukutake and David Kikukawa sued the Hawai'i Attorney General in her official capacity, challenging the permit validity period and the in-

person inspection requirement.[1]  The District Court, ruling on cross-motions for summary judgment, permanently enjoined enforcement of the provisions.  *See Yukutake v. Connors*, 554 F. Supp. 3d 1074 (D. Haw. 2021); *see* 1-ER-041-073.  Hawaiʻi appealed.  A Panel of this Court affirmed the District Court's ruling and found the challenged provisions unconstitutional.  Op. 7.

With respect to the in-person inspection requirement, the Panel concluded that an inspection requirement did not qualify as a part of a background-check system or permitting scheme and thus could not be presumed constitutional.  Op. 53-54.  The Panel also rejected the historical analogues offered by Hawaiʻi to defend this provision—namely, colonial-era laws that required militia members to maintain weapons suitable for militia use and to submit them for inspection.  Op. 46-54.

With respect to the permit validity period, the Panel recognized that the permit validity period is part of a shall-issue regime, but divided on whether it should be treated as presumptively constitutional.  *See* Op. 33-46.

Writing only for himself, Judge Collins stated that "in determining whether a particular feature of an otherwise-valid background-check-based permitting system

---

[1] At the time of the complaint, permits were valid for 10 days after issuance and inspection was required for a larger category of firearms.  The legislature later extended the validity period to 30 days and narrowed the inspection requirement.  After these changes, Hawaiʻi moved to dismiss this matter as moot. ECF No. 80.  The Panel denied that request.  *See* Op. 11-15.  Hawaiʻi maintains that the case is moot.

is impermissibly 'abusive,' one should apply in the Second Amendment context, *mutatis mutandis*, the same principles applied in evaluating permitting systems in the First Amendment context." Op. 41. Judge Collins then relied on First Amendment jurisprudence governing "time, place, and manner" restrictions to find that the 30-day permit validity period was "abusive." Op. 41-43.

In his concurrence, Judge Lee explained that he had withheld his vote from the lead opinion on this point because "the *Bruen* court shunned interest-balancing tests," and "I think we should . . . determine 'abusive ends' by comparing Hawai'i's temporal limit in its firearms permitting regime to relevantly similar historical analogues." Op. 56. Because he concluded that Hawai'i had not provided an analogue for the temporal limit, he agreed with the Panel's disposition. Op. 64.

Judge Bea dissented. In his view, the Panel's holding "that any government regulation which applies generally to all firearm acquisitions, no matter how small, is presumptively invalid under the Second Amendment, subject to the government's steep burden of proving otherwise," "avoids the Amendment's text, misreads instructions from the Supreme Court, contravenes controlling Circuit precedent, and diverges from some of our sister Circuits' applications of the Second Amendment." Op. 65. Judge Bea would have "reverse[d] the district court's judgment and vacate[d] the permanent injunction" based on Plaintiffs' failure to "carr[y] their

burden of proving that the regulations they challenge are abusive within the meaning of *Bruen* footnote 9 and our precedents." Op. 67.

## ARGUMENT

Decisions issued since *Bruen* confirm that the judgment below should be reversed for two reasons. *First*, the challenged statutes form part of a presumptively constitutional shall-issue regime, and Plaintiffs have not rebutted that presumption. And *second*, even if the Court believes Plaintiffs have shown a constitutional violation, remand is still required so that the District Court can tailor the relief.

## I. HAWAIʻI'S FIREARM-ACQUISITION PROVISIONS ARE CONSTITUTIONAL.

### A. The Challenged Hawaiʻi Statutes Are Presumptively Constitutional.

*1. The Challenged Statutes Are Part Of A Shall-Issue Regime.*

Hawaiʻi law provides that the "chief of police … *shall* issue permits to acquire firearms to" anyone who meets certain statutory criteria. Haw. Rev. Stat. § 134-2(d) (emphasis added). Those criteria are "narrow, objective, and definite." *Bruen*, 597 U.S. at 38 n.9. The statute specifies the convictions, mental health conditions, and evidence of dangerousness that are disqualifying, Haw. Rev. Stat. §§ 134-2(d)-(e), 134-7, as well as the permit's validity period and the circumstances under which a firearm must be presented for inspection, *id.* §§ 134-2(e), 134-3(a)-(c).

These latter criteria—the validity period and the inspection requirement—are designed to ensure permittees are "law-abiding, responsible citizens." *Bruen*, 597

6

U.S. at 38 n.9.  The permit's 30-day validity window helps ensure that permittees do not obtain disqualifying conditions between receiving a permit and acquiring the firearm.  *See* ECF No. 52-1 at 36–37.  And the inspection requirement addresses the problem of "ghost gun[s]," which are assembled "without . . . identification markings," and enable "persons who would normally be prohibited . . . from owning or possessing firearms to do so."  Act 74, § 2, 2020 Haw. Sess. Laws at 480–481; *see also* Brady Amicus Brief, ECF No. 132 at 21–30.

### 2. Bruen*'s Presumption Of Constitutionality Applies To All Provisions That Form Part Of A Shall-Issue Regime.*

In *Bruen*, the Supreme Court established a two-part test for determining whether a challenged firearm regulation violates the Second Amendment.  At the first step, the plaintiff must show that "the Second Amendment's plain text covers [its] conduct."  *Bruen*, 597 U.S. at 24.  If the plaintiff meets that burden, the test proceeds to the second step, where the government bears the burden of "demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation."  *Id.*

When a challenged law is part of a "shall issue" regime, the analysis generally begins and ends at the first step.  *Maryland Shall Issue*, 116 F.4th at 222–223; *see also United States v. Peterson*, 150 F.4th 644, 654 & n.5 (5th Cir. 2025).  A shall-issue regime exists "where authorities must issue … licenses whenever applicants satisfy certain threshold requirements."  *Bruen*, 597 U.S. at 13.  As opposed to

7

"may-issue" regimes, which grant "licensing officials discretion to deny licenses based on a perceived lack of need or suitability," *id.*, shall-issue regimes impose "narrow, objective, and definitive standards" and are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* at 38 n.9 (internal quotation marks omitted). Because shall-issue regimes generally do not infringe on the right to keep and bear Arms, they are "presumptively lawful" under the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 626–627 & n.26 (2008); *see also Bruen*, 597 U.S. at 38 n.9; *id.* at 80–81 (Kavanaugh, J., concurring).

> 3. *The Panel's Position—That The Presumption Applies Only To Firearm Regulations Concerning Felons And The Mentally-Ill—Is Inconsistent With Supreme Court Precedent And Other Recent Federal Decisions.*

The Panel interpreted *Bruen*'s presumption of constitutionality to apply only to laws justified by the need to "forbid felons and the mentally ill from possessing firearms." Op. 37, 49–50 (internal quotation marks omitted).[2] That view is inconsistent with *Bruen* and *Heller*, and with courts' assessments of shall-issue

---

[2] The decision below did not doubt, however, that shall-issue regimes imposing background checks were presumptively constitutional. Op. 37. To the extent this Court suggested otherwise in *Rhode v. Bonta*, 145 F.4th 1090, 1116 n.29 (9th Cir. 2025) (petition for rehearing en banc pending), that statement does not control here. For one thing, *Rhode*'s reading of *Bruen* cannot be squared with controlling precedent. *See, e.g.*, *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (reaffirming *Heller*). For another, it contravenes this Court's precedent in *B&L Productions v. Newsom*, 104 F.4th 108, 118–119 (9th Cir. 2024). *See also infra*, pp. 9-10.

regimes in *Bruen*'s wake.

Start with Supreme Court precedent. The Supreme Court has said—no fewer than three times—that the presumption of constitutionality is *not* limited to statutes addressing felons and the mentally ill. *First*, in *Heller*, the Supreme Court identified *both* "prohibitions on the possession of firearms by felons and the mentally ill" *and* "laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful" regimes. 554 U.S. at 626–627 & n.26. *Second*, in *Bruen*, when describing the types of laws that fall within the scope of presumptively lawful shall-issue regimes, the Court listed regulations requiring "applicants to undergo a background check *or pass a firearms safety course*." 597 U.S. at 38 n.9 (emphasis added). A firearms safety course does not exclude felons or the mentally ill; it helps ensure that those who possess a gun are "responsible." *Id.* *Third*, also in *Bruen*, the Court cited 43 States' concealed-carry licensing laws as examples of constitutionally permissible "shall-issue" regimes, *id.* at 13 n.1, 38 n.9, many of which include conditions with little connection to felons or the mentally ill.[3]

The courts of appeals have not adopted the Panel's cramped understanding of

---

[3] These laws require that individuals must not have "a physical infirmity that prevents the safe handling of a handgun," Alaska Stat. § 18.65.700(a)(8) (2020); must "carry the permit together with valid identification whenever the person is carrying a concealed handgun," N.C. Gen. Stat. Ann. § 14-415.11(d) (2021); and notify authorities within 30 days of an address change, Ky. Rev. Stat. Ann. § 237.110(11) (LexisNexis 2021).

shall-issue regimes either. The Fourth Circuit, for example, has applied the presumption of constitutionality to a shall-issue regime requiring background checks and firearm safety courses. *Maryland Shall Issue*, 116 F.4th at 225. The Fifth Circuit has applied the presumption to a shall-issue law that imposed "fingerprint, photograph, and background-check requirements" and required the denial of "a firearm-making application if the 'making or possession of the firearm would place the person making the firearm in violation of law.'" *Peterson*, 150 F.4th at 652. And the Second Circuit has applied the presumption to a shall-issue law requiring a New York City-specific license to carry or possess a handgun absent specific exceptions. *Frey v. City of New York*, No. 23-365-CV, 2025 WL 2679729, at *13 (2d Cir. Sept. 19, 2025).

Because Hawai'i law allows any law-abiding, responsible applicant meeting narrow, objective, and definite criteria to acquire a firearm, the presumption of constitutionality applies here.

### B. Plaintiffs Fail To Rebut The Presumption Of Constitutionality.

*1. Recent Decisions Confirm That The Presumption Can Be Rebutted With Evidence That The Statute Imposes Meaningful Constraints On The Second-Amendment Rights Of Responsible Citizens.*

To rebut the presumption that a shall-issue regime is constitutional, a plaintiff must show that the regime imposes "meaningful constraints" on a person's right to keep and bear arms, *B&L*, 104 F.4th at 118–119, such that the law is "put towards

10

abusive ends," *Bruen*, 597 U.S. at 38 n.9; *see also United States v. Vlha*, 142 F.4th 1194, 1199–1200 (9th Cir. 2025).   A meaningful constraint has "the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *United States v. Vereen*, 152 F.4th 89, 97 (2d Cir. 2025) (quoting *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023)).   For instance, a shall-issue regime may be unconstitutional where it features "exorbitant fees," or wait times so "lengthy" as to effectively "deny ordinary citizens" the ability to access arms.  *Bruen*, 597 U.S. at 38 n.9.  Similarly, a "ban on all sales of a certain type of gun or ammunition in a region" meaningfully constrains "the right to keep and bear that firearm or ammunition." *B&L*, 104 F.4th at 119 (discussing *Jackson v. City & County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014)).

By contrast, a law does not impose meaningful constraints where ordinary citizens retain "ample alternative means of acquiring" firearms.  *Vereen*, 152 F.4th at 97.  The Constitution "does not elevate convenience and preference over all other considerations."   *B&L*, 104 F.4th at 119 (quotation omitted).  For that reason, a plaintiff cannot rebut the presumption of constitutionality simply by showing that certain aspects of a shall-issue regime make gun access inconvenient.  *Id.*

In the last few years, courts have applied those principles to reject arguments analogous to those raised by Plaintiffs here.  For instance, this Court held in *B&L Productions* that a law barring the sale of guns on state property did not meaningfully

11

constrain Second Amendment rights. 104 F.4th at 119. The law did not "impair a single individual from keeping and bearing firearms" because people could buy guns on private property—even if it was sometimes less "convenien[t]" to do so. *Id.* (quotation omitted). For similar reasons, the Fifth Circuit held that a plaintiff failed to rebut the presumptive constitutionality of a law imposing ten-day background checks for firearm sales to minors. *McRorey v. Garland*, 99 F.4th 831, 835 (5th Cir. 2024). The law was not "put towards abusive ends," the court reasoned, because a ten-day waiting period "does not qualify" as a "*de facto* prohibition on possession." *Id.* at 840. And the Second Circuit held that a law requiring licenses for interstate gun sales did not "meaningfully constrain" Second Amendment rights because citizens retained "ample alternative means of acquiring firearms" in their home state. *Vereen*, 152 F.4th at 97–98; *see also Gazzola*, 88 F.4th at 196–198 (law requiring firearm sellers to impose certain safety measures was not a meaningful constraint because it did not "have the effect of eliminating" firearm access).

> 2. *Plaintiffs Have Not Shown That Hawaiʻi's Laws Meaningfully Constrain Their Rights.*

The challenged statutes do not "deny ordinary citizens" access to firearms. *Bruen*, 597 U.S. at 38 n.9. Plaintiffs may buy any legally available gun they choose; they need not pay "exorbitant fees" or wait "lengthy" periods of time. *Id.* And Plaintiffs retain ample "means of acquiring" firearms. *Vereen*, 152 F.4th at 97. Indeed, Plaintiffs' asserted burdens are quintessential matters of "convenience and

preference." *B&L*, 104 F.4th at 119. Plaintiffs would *prefer* not to take time off work or wait in line, *see* Response Brief at 37, 45, but Plaintiffs do *not* contend that such inconveniences function as "*de facto* prohibition[s] on possession," *McRorey*, 99 F.4th at 840, or "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms," *Vereen*, 152 F.4th at 97. Indeed, Plaintiffs "have not adduced any evidence . . . that either regulation practically denies them their right to keep and bear arms," such as "evidence that Plaintiffs, in particular, will not be able to acquire, possess, and carry the handguns they seek as a result of the thirty-day permit expiration period" or an explanation of "why having to meet the in-person inspection requirement might effectively deny Plaintiffs their right to public carry." Op. 83-84 (Bea, J., dissenting) (alterations and internal quotation marks omitted); *see also* Brady Amicus Brief, ECF No. 132 at 10 n.3.[4]

The Panel, meanwhile, addressed the meaningful-constraint rule in a short footnote. Op. 29 & n.7. Hawaiʻi's firearm-acquisition law "meaningfully constrains the right to acquire a firearm," the Panel insisted, because of "the broad applicability . . . and strict nature" of the "challenged time limit[s]." *Id.* But those

---

[4] Nor are Plaintiffs' amici right to argue that this rule revives the means-end scrutiny *Bruen* rejected. ECF No. 136 at 13. The meaningful-constraint rule does not "consider the weight of . . . government interests"; rather, it addresses an "antecedent question"—whether a particular regulation "implicate[s] the Second Amendment *at all*." *Vereen*, 152 F.4th at 98 (emphasis added).

characteristics do not function to "deny" ordinary citizens access to arms. *Bruen*, 597 U.S. at 38 n.9. And the Panel's contrary holding proves far too much. Many shall-issue regimes are both broadly (indeed, universally) applicable and involve time limits of some kind—states generally do not provide guns "instant[ly]" to anyone. *McRorey*, 99 F.4th at 840. The Panel's reasoning, then, would render presumptively *unlawful* the very regulatory regimes *Bruen* blessed—those "designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Bruen*, 597 U.S. at 38 n.9. That cannot be correct.[5]

## II. EVEN IF HAWAIʻI'S FIREARM-ACQUISITION PROVISIONS ARE NOT CONSTITUTIONAL AS APPLIED TO PLAINTIFFS, REMAND IS STILL WARRANTED.

Even if this Court concludes that Plaintiffs have shown some Second Amendment violation, two independent errors still warrant reversal. First, the District Court failed to apply the demanding standard for facial challenges, which requires Plaintiffs to show that Hawaiʻi's laws are unconstitutional in all their applications. *See Moody*, 603 U.S. at 724. Second, the District Court's universal injunction exceeds the scope of that court's authority under the Judiciary Act. *See CASA*, 606 U.S. at 853. If this Court does not reject Plaintiffs' challenge in full, it

---

[5] Hawaiʻi maintains its position that, if this Court determines the presumption of constitutionality has been rebutted, the Court should remand to the District Court for further development at *Bruen*'s second step rather than reaching the ultimate question of constitutionality in the first instance. *See* ECF Nos. 48 at 3, 52-1 at 42.

14

should still reject their facial challenge, then remand for the District Court to make the appropriate findings regarding Plaintiffs' as-applied challenge and to appropriately tailor the relief.

### A. Plaintiffs Have Not Shown That Hawaiʻi's Laws Are Unconstitutional In All Their Applications.

Plaintiffs claim that Hawaiʻi's permit-validity period and in-person-inspection requirement are facially unconstitutional. *See, e.g.*, Op. 8. Hawaiʻi explained to the Panel that Plaintiffs "cannot satisfy" the heavy burden of proof a facial challenge entails. Opening Brief at 55-56. But the Panel—like the District Court before it—failed to hold Plaintiffs to that burden.

A facial challenge is "the most difficult" to win, requiring a plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (internal quotations omitted). A court "must determine a law's full set of applications" and "evaluate which are constitutional and which are not." *Moody*, 603 U.S. at 724 (quotation omitted). If the law is "constitutional in even just one of its applications," the facial challenge fails. *United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (Thapar, J.) (citing *Rahimi*, 602 U.S. at 693). "That's a steep climb" for a plaintiff, and for good reason. *Id.* Facial challenges "rest on speculation" about a law's sweep, and they "threaten to short circuit the democratic process by preventing duly enacted laws" from taking effect. *Moody*, 603 U.S. at 723 (quotation omitted).

15

Plaintiffs here do not meet the heavy burden such a claim requires. At most, Plaintiffs assert that "[e]veryone in Hawaii" is subject to these requirements, *id.* at 57—but that does not show that the provisions operate as a meaningful constraint in *every* circumstance, as applied to *every* person in Hawaiʻi. And beyond that assertion, their arguments focus largely on the alleged burdens they may personally face. *See, e.g.*, Answering Brief at 45 ("Plaintiffs are required to take time off work."). As Judge Bea explained, Plaintiffs had to show that the provisions are "unconstitutional as applied to everyone," and they fell short. Op. 86 (Bea, J., dissenting). The Panel majority and the District Court mirrored Plaintiffs' mistakes. Neither court considered the challenged provisions' "full set of applications," let alone "evaluate[d] which are constitutional and which are not." *Moody*, 603 U.S. at 718.

Even if the En Banc Court believes that Hawaiʻi's laws may infringe the Second Amendment in some instances, it should still reverse and instruct the District Court to grant summary judgment to Hawaiʻi on Plaintiffs' facial claim.

## B. The District Court's Universal Injunction Is Unlawful Under *CASA*.

At a minimum, the Court should vacate the District Court's universal injunction and remand so that the District Court may tailor the relief. In *Trump v. CASA*, the Supreme Court recently held that federal courts generally lack the power to issue "universal injunctions"—that is, injunctions barring the government from

"enforcing the law against *anyone*, anywhere." 606 U.S. at 837 & n.1. In so holding, the Court construed the Judiciary Act of 1789, which "authorizes the federal courts to issue" injunctions. *Id.* at 841 (citation omitted). Under that Act, equitable relief must be directed towards "*the plaintiffs before the court*," not "*everyone* potentially affected by an allegedly unlawful act." *Id.* at 852. Courts that transgress these rules "take the judicial power beyond its traditionally understood uses," giving nonparties "victories they did not earn and sometimes . . . do not want." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).

A universal injunction is thus permissible only where a district court certifies a class action, or where the plaintiff's harms "cannot be remedied without a blanket ban" on enforcement. *CASA*, 606 U.S. at 853. But where barring enforcement of a potentially unconstitutional law against an individual plaintiff alone suffices to "give that plaintiff complete relief," a court may not extend the injunction to cover "all other similarly situated" nonparties. *Id.*

Yet that is precisely what the District Court did. In its pre-*CASA* judgment, the court "permanently enjoined [Hawaiʻi's officials] from enforcing" the challenged provisions—not just against Plaintiffs, but against anyone, anywhere. ECF No. 107 at 31–32. Nothing in the record justifies such broad relief. Plaintiffs do not represent a class, and "it is difficult to see why an injunction applicable only to [Plaintiffs] would not do the trick." *Arizona*, 40 F.4th at 396 (Sutton, C.J.,

17

concurring).

Thus, even if this Court agrees with Plaintiffs on the merits, remand is appropriate. "Remand will allow the district court to tailor any possible injunction in light of *CASA*." *AFL-CIO v. Trump*, ---F.4th --, No. 25-3293, 2025 WL 2716266, at *6 (9th Cir. Sept. 19, 2025).

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below.

October 13, 2025                                    Respectfully submitted,

                                                    /s/ Jo-Ann Tamila Sagar

ANNE E. LOPEZ                                       JO-ANN TAMILA SAGAR
*Attorney General of the State of Hawaiʻi*          REEDY C. SWANSON
KALIKOʻONĀLANI D. FERNANDES                         NATALIE J. SALMANOWITZ
*Solicitor General*                                 ERIC S. ROYTMAN
DEPARTMENT OF THE ATTORNEY GENERAL                  RYAN M. CAMPBELL
STATE OF HAWAIʻI                                    HOGAN LOVELLS US LLP
425 Queen Street                                    555 Thirteenth Street, N.W.
Honolulu, HI 96813                                  Washington, D.C. 20004
(808) 586-1360                                      (202) 637-5600
kaliko.d.fernandes@hawaii.gov                       jo-ann.sagar@hoganlovells.com

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of the Clerk's Order dated August 29, 2025 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,200 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

October 13, 2025                                          /s/ Jo-Ann Tamila Sagar
                                                                   Jo-Ann Tamila Sagar

## CERTIFICATE OF SERVICE

I certify that on October 13, 2025, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.


October 13, 2025                          /s/ Jo-Ann Tamila Sagar
                                          Jo-Ann Tamila Sagar