No. 21-16756

# In the United States Court of Appeals
## for the Ninth Circuit

TODD YUKUTAKE AND DAVID KIKUKAWA

*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAI'I,

*Defendant-Appellant*,

AND

CITY AND COUNTY OF HONOLULU

*Defendant*

**Appeal from a Judgment of United States District Court
For the District of Hawaii; Civ. No. 1:19-cv-00578-JMS-RT
Honorable Chief District Court Judge J. Michael Seabright**

## Appellees' Supplemental Brief

ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellees Todd Yukutake and David Kikukawa*

## **<u>TABLE OF CONTENTS</u>**

Introduction…………..……………………………………………………….1

I.    HAWAII'S FIREARM-ACQUISITION PROVISIONS ARE UNCONSTITUTIONAL……………………………………………………2

    A. The Challenge Hawaii Statutes are Presumptively Unconstitutional...2

    B. Acquisition of Arms is Protected by the Second Amendment…..……4

    C. There is No Presumption of Constitutionality………………..……7

    D. Plaintiffs Brought an As-Applied and a Facial Challenge………….14

II.    THE INJUNCTION DOES NOT VIOLATE *CASA* ………………………16

Conclusion………..…………………………………………………….....18

## TABLE OF AUTHORITIES

**Cases**

*AFGE v. Trump*, --- F.4th ----, 2025 WL 2716266 (9th Cir. Sep. 19, 2025) ............17

*AFGE v. Trump*, 784 F. Supp. 3d 1316 (N.D. Cal. 2025), *stayed, Trump v. AFGE*, 145 S.Ct. 2635 (July 8, 2025) .............................................................................17

*B & L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) ......................... 1, 7, 9

*Citizens United v. FCC*, 558 U.S. 310 (2010) ............................................................15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... passim

*Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2021) ........................................9

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................10

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) ........................................14

*Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759 (8th Cir. 2018)....3

*Frein v. Penn. State Police*, 47 F.4th 247 (3d Cir. 2022) ........................................11

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023) ........................................................9

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ........................11, 14

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot,* 14 F4th 322 (4th Cir. 2021) ....................................7

*McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024)……………………………...12, 13

*Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018) ......17

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)……………………passim

*Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025) ......................................... passim

*NIH v. APHA*, 145 S.Ct. 2658 (2025) ......................................................................17

*Nunn v. State*, 1 Ga. 243 (1846) ..............................................................................10

*Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. 2025) ...........................................5, 8

*Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) ...................................................16

*Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) ........................7

*Reese v. Bureau of Alcohol*, 127 F.4th 583 (5th Cir. 2025).................... 5, 13, 15, 16

*Rhode v. Bonta*, 145 F.4th 1090 (9th Cir. 2025) ........................................................5

*Srour v. New York City, New York,* 699 F.Supp.3d 258 (S.D.N.Y., 2023) *vacated, dismissed as moot,* 117 F.4th 72 (2d Cir. 2024) .......................................................6

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc) ..................5

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .................................................. 2, 16, 17

*United States v. Anderson*, 46 F.4th 1000 (9th Cir. 2022) .......................................12

*United States v. Carlson*, 900 F.2d 1346 (9th Cir. 1990) ........................................13

*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024) ...................................5

*United States v. Elias*, 921 F.2d 870 (9th Cir. 1990) ................................13

*United States v. Mendoza,* 464 U.S. 154 (1984) ...................................16

*United States v. Rahimi,* 602 U.S. 680 (2024) .....................................3, 13

*United States v. Vereen*, 152 F.4th 89 (2d Cir. 2025) ..............................8, 9

*Wolford v. Lopez*, 116 F.4th 959, 984 (9th Cir. 2024), *cert. granted*, 2025 WL
 2808808 (Oct. 03, 2025) ...................................................14

## Statutes

18 U.S.C. § 922(a)(3) ...........................................9

18 U.S.C. § 922(b)(3) ...........................................9

H.R.S. § 134-2(e) .............................................3, 11

H.R.S. § 134-3(b) ...........................................3, 6, 13

H.R.S. § 846-2.7(a) ............................................4

H.R.S. § 846-2.7(b)(43) .........................................4

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ...................................10

Noah Webster, *American Dictionary of the English Language* (1828) ................11

Samuel Johnson, 1 *Dictionary of the English Language* 1101 (4th ed. 1773) ........10

iv

## INTRODUCTION

On August 29, 2025, this Court granted Hawaii's motion for supplemental briefing "addressing the impact of the legal developments identified in the parties' Rule 28(j) letters on the issues presented in this case." *See* DktEntry # 141. Hawaii has disobeyed this Court's order and instead presented argument on entirely different topics. The entirety of Hawaii's brief should be dismissed by this Court for that reason alone. However, if this Court considers the arguments made in Hawaii's supplemental brief, they should all be rejected.

As a preliminary manner, to the extent that this Court's "meaningfully constrained" is interpreted to require more than an "infringement" of the right, that test has no basis in text, history or tradition. As this Court is sitting en banc, the Court should make clear that if the "meaningfully constrained" standard articulated in *B & L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024), is read as Hawaii asserts, then that standard conflicts with *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and must be overturned. But even under Defendant's reading, the two challenged Hawaii laws are "meaningful constraints" on Plaintiffs' Second Amendment rights.

Hawaii's argument regarding facial challenges is contradicted by Circuit precedent and thus has no merit. At a minimum, this Court should rule in Plaintiffs' favor on their as-applied challenge. Hawaii also complains about the relief ordered

1

by the district court, claiming that it is a "universal injunction." But *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), was a nationwide injunction case in which the order facially applied to many different entities who were not parties. Here, the only person enjoined here is the "Defendant" (1-ER-040), only applies in the District of Hawaii and is facially limited to according Plaintiffs the complete relief to which they are entitled in their facial and as-applied challenges. The decision below should be affirmed.

## ARGUMENT

### I. HAWAII'S FIREARM-ACQUISITION PROVISIONS ARE UNCONSTITUTIONAL

#### A. The Challenge Hawaii Statutes are Presumptively Unconstitutional

Hawaii claims that Hawaii's permitting law is "shall-issue" and that alone makes it constitutional. Supp. Br. at 6. That is just wrong. The issue here is whether Hawaii's short expiration date of a permit to acquire and in-person registration requirements violate the Second Amendment. Plaintiffs have not asserted that the permit to acquire requirement is a violation of the Second Amendment. The application process for a permit to acquire, including the redundant background checks are simply not at issue in this litigation.

Plaintiffs already went through the application and background check process for obtaining permits and passed the background check. It is undisputed that they are not prohibited individuals. The two statutes at issue come into play **after** a permit to

2

acquire has been granted. The first is H.R.S. § 134-2(e) which provides that "[p]ermits issued to acquire any pistol or revolver shall be void unless used within thirty days after the date of issue." The second statute is H.R.S. § 134-3(b) which requires the applicant to "physically bring their firearm to the police department for in-person inspection and registration." *See* Order Clarifying Remedies, 1-ER-004. Both requirements "amount[] to the sort of 'prophylaxis-upon-prophylaxis' that requires a court to be 'particularly diligent in scrutinizing the law's fit.'" *Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759, 765 (8th Cir. 2018) (striking down State-imposed limits on campaign contributions).

Defendant argues that the "validity period and the inspection requirement – are designed to ensure permittees are 'law abiding, responsible citizens." Supp. Br. at 6. Not so. First, the "responsible law-abiding citizen" language employed in *Heller* and *Bruen* does not establish some sort of magical talisman for constitutionality. In *United States v. Rahimi,* 602 U.S. 680, 701-02 (2024), the Court explained that the term is "vague" and was used in prior decisions simply to describe the class of citizens "who undoubtedly enjoy the Second Amendment right." The Court made clear that prior decisions "did not define the term and said nothing about the status of citizens who were not 'responsible.'" 602 U.S. at 702. Laws regulating the acquisition of arms must satisfy the *Bruen* framework no less than other kinds of restrictions. *Bruen*, 597 U.S. at 24.

3

Second, as explained above, the two challenged provisions simply do not have anything to do with any determination that a person is a "responsible law-abiding" person. Again, these two requirements do not come into play until **after** the applicant has passed a background check and **has been granted** a permit to acquire. Moreover, Hawaii law requires purchasers of firearms to be entered into an FBI database for "constant criminal record monitoring." H.R.S. § 846-2.7(b)(43). Under that provision, county police departments enter firearm purchasers in the FBI "Rap Back" program.[1] *See* https://bit.ly/3JEhVME. "Rap Back" is a service of the FBI that provides continuous criminal record monitoring and notifies law enforcement when an individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country. This notification allows county police departments in Hawaii to be notified immediately if the registered owner of a firearm is arrested or becomes a prohibited person. 2-ER-376.[2] None of these regulations and processes are challenged here.

### B.    Acquisition of Arms is Protected by the Second Amendment

Hawaii glosses over the "plain text" of the Second Amendment. To "keep and bear Arms" includes the right to acquire "Arms." The Second Amendment "'wouldn't mean much' without the ability to acquire arms." *Nguyen v. Bonta*, 140

---

[1] H.R.S. § 846-2.7(a) explicitly mandates that these individuals participate in the "rap back program".

[2] https://bit.ly/3xTXcfg (last accessed 11/11/2025).

F.4th 1237, 1241 (9th Cir. 2025), quoting *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc). Plaintiffs' proposed conduct, acquiring arms, fits within the plain text. *See Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025); *Reese v. Bureau of Alcohol*, 127 F.4th 583, 590 (5th Cir. 2025).

Hawaii wrongly argues that the challenged provisions are "part of a 'shall issue' regime," (Supp. Br. at 7) and that therefore the two restrictions challenged here are "presumptively lawful." Supp. Br. at 8. This Court has already rejected that "presumptively lawful" argument in *Rhode v. Bonta*, 145 F.4th 1090, 1116 n.29 (9th Cir. 2025), holding that "*Bruen* made clear it was not endorsing a per se rule or a presumption of constitutionality because it did not 'rule out constitutional challenges to such shall-issue regimes' under other fact patterns." Indeed, the "shall issue" regimes mentioned in *Bruen* concerned only permits for carrying *loaded firearms in public*, not permits to purchase for possession in the home. 597 U.S. at 38 n.9. Even in that context the Court made clear that because "any permitting scheme can be put toward abusive ends," shall-issue carry permit regimes remain subject to challenges. *Rhode*, 145 F.4th at 1116 n.29.

Other courts have found that historical laws regulating carry in public cannot be used to justify restrictions on possession. *See United States v. Connelly*, 117 F.4th 269, 280 (5th Cir. 2024) (rejecting the use of carry restrictions to uphold a possession ban, noting "that some laws banned carrying weapons while under the influence,

5

none barred gun possession by regular drinkers."). *See also Srour v. New York City, New York,* 699 F.Supp.3d 258, 280-282 (S.D.N.Y., 2023) *vacated, dismissed as moot,* 117 F.4th 72 (2d Cir. 2024) (rejecting use of surety laws to uphold a restriction on firearm possession because surety laws only restricted firearm carry: "Defendants also cite Founding era surety laws…The *Bruen* decision, however, suggests that these surety laws may have extended to carrying firearms in public…That is quite different from the situation here, where a New York City official can deny the right to possess a firearm in the first instance."). The two requirements at issue here deal with permits to acquire and possess firearms in the home, "where the need for defense of self, family, and property is most acute." *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008). The historical traditions associated with public carry are far different than those associated with possession in the home. *Bruen*, 597 U.S. at 47-48.

Hawaii also errs in its reliance on *Heller*'s *obiter dicta* stating that conditions and qualifications for the commercial sale of arms are presumptively constitutional. *See Heller*, 554 U.S. at 626−627, & n.26. The physical inspection requirement now imposed by H.R.S. 134-3(b) applies to acquisition of firearms "from a person who is not a dealer." Such acquisitions are, by definition, not "commercial." More fundamentally, "[a] condition or qualification on the sale of arms is a hoop someone must jump through to *sell* a gun, such as obtaining a license, establishing a lawful

premise, or maintaining transfer records." *Hirschfeld v. BATF*, 5 F.4th 407, 416 (4th Cir. 2021), *vacated as moot,* 14 F.4th 322 (4th Cir. 2021) (emphasis the court's). The presumption does not apply to restrictions "on buying a gun." *Id.* Hawaii's restrictions restrict the buyer, not the seller. Importing *dicta* as to public carry into Hawaii's senseless restrictions on home possession "overreads" *dicta* from both *Bruen* and *Heller*. *See Range v. Attorney General*, 124 F.4th 218, 226 (3d Cir. 2024) (en banc) (cautioning against overreading *dicta*).

### C. There is No Presumption of Constitutionality.

There is nothing presumptively constitutional about the two requirements challenged here. The first step mandated by *Bruen* is whether the proposed conduct falls with the text. 597 U.S. at 19. As noted above, acquisition of arms plainly satisfies that step. Courts may not measure "the severity of the law's burden on that right" in undertaking that textual analysis. *Id.* at 18. As construed by Hawaii, the "meaningful constraints" test adopted by this Court in *B&L* is simply a reformulation of the "severity" inquiry expressly rejected by *Bruen*. 597 U.S. at 23-26. It smacks of the same "judge-empowering 'interest-balancing'" that the Court abolished. *Id.* at 22. As Amici state, *B&L* improperly "reviv[ed] … forbidden interest balancing…" DktEntry 136, Brief of Second Amendment Foundation, et al at 13; *see also* at 14 ("asking whether a gun law 'meaningfully constrains' the right to keep and bear arms is obviously just an inquiry into the 'severity of the burden.' It's the

same concept, stated with different words."). *Id.* (explaining that "*Heller* and *McDonald*" expressly rejected interest-balancing inquires). *See also Ortega*, 148 F.4th at 1144 ("by New Mexico's illogic, a restriction on firearm sales does not burden the Second Amendment—until it does. That argument provides no limiting principle. It inevitably leads to case-by-case judicial interest balancing.").

Accordingly, Hawaii can only prevail in this case if it satisfies scrutiny under *Bruen*'s step two. Under that step, if the law regulates conduct that falls within the text of the Second Amendment (as here), then the restriction is *presumptively unconstitutional*, and the burden falls on the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* 597 U.S. at 19. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 17. Hawaii has made no serious attempt to defend the restrictions at issue here under step two. That means Hawaii loses. It is that simple.

Hawaii purports to find support in *United States v. Vereen*, 152 F.4th 89, 97 (2d Cir. 2025), which defined "meaningful constraint" as having "the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *See* Supp. Br. at 11. Unsurprisingly, that quote is taken out of context. *Vereen* concerned *commercial* sales of handguns and sustained the constitutionality of 18 U.S.C. §

8

922(a)(3), which bars persons from purchasing a handgun other than "in the State where he resides." *Vereen* held that this statute did not "meaningful constrain" acquisition because it "does nothing to keep someone from purchasing a firearm in her home state, which is presumptively the most convenient place to buy anything." 152 F.4th at 97 (citation omitted). Similarly, in *B&L*, this Court held that a ban on gun sales on State property did not "meaningfully constrain" Second Amendment rights because "no individual's access to firearms would be *limited*" by the ban. 104 F.4th at 119 (emphasis added). Here, in contrast, the requirements challenged by Plaintiffs "limit" firearm acquisitions in the entire State of Hawaii, which is the *only* location in which plaintiffs may legally acquire a handgun under Section 922(a)(3). Unlike in *Vereen* and *B&L*, there is no legal way around these requirements.[3]

Hawaii's approach has also been uniformly rejected by other federal courts as well. None of these courts require "a *de facto* prohibition" on the right to acquire. *See, e.g., Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) ("'restrictions that limit the ability of firearms owners to acquire and maintain proficiency in the use of their weapons' may violate the Second Amendment under certain circumstances."); *Drummond v. Robinson Twp.*, 9 F.4th 217, 227-28 (3d Cir. 2021) (similar); *Ezell v.*

---

[3] Under 18 U.S.C. § 922(b)(3), a Hawaiian resident may purchase a rifle or shotgun (not a handgun) *in person* from a *dealer* in another State but *only* if the sale complies with the law of State of purchase *and* Hawaiian law, which requires a permit to purchase.

*City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use").

Hawaii also argues that its two outlier requirements are constitutional because they are supposedly mere "inconveniences." Supp. Br. at 11. That is just a label and a label does not permit a court to disregard *Bruen*'s framework. This Court has thus already rejected similar arguments in *Nguyen* where the Court held that California's "monthly metering of firearm purchases meaningfully constrains the right to purchase and possess firearms and is thus presumptively unconstitutional." *Nguyen*, 140 F.4th at 1243. The Court did not require any "de facto ban." Supp. Br. at 10. Rather, the Court held that a law meaningfully constrains the right when it "infring[es]" a "citizens' exercise of their Second Amendment rights." *Nguyen*, 140 F.4th at 1243, citing *Infringement*, Black's Law Dictionary (12th ed. 2024) ("An encroachment or trespass on (a right, privilege, etc.).").

As *Nguyen* recognizes, "infringement" is not a high bar. *See Heller*, 554 U.S. at 612 (the Second Amendment rights "shall not be *infringed,* curtailed, or broken in upon, in the smallest degree"), quoting *Nunn v. State*, 1 Ga. 243, 251 (1846). Founding Era dictionaries broadly defined "infringe." *See* Samuel Johnson, 1 *Dictionary of the English Language* 1101 (4th ed. 1773) (defining "infringe" as "[t]o destroy; to hinder" (emphasis added)), id. at 1007 (defining "to hinder" as "to cause

impediment"); Noah Webster, *American Dictionary of the English Language* (1828) (defining "infringe" as "[t]o destroy or hinder" (emphasis added)); *id.* (defining "hinder" as "to obstruct for a time" and "[t]o interpose obstacles or impediments"). The Second Amendment thus "forbids lesser 'violat[ions]' that 'hinder' a person's ability to hold on to his guns." *Frein v. Penn. State Police*, 47 F.4th 247, 254 (3d Cir. 2022).

H.R.S. § 134-2(e) plainly "infringes" Plaintiffs' rights because it requires use of the permit to purchase within 30-days, an artificially constrained time period, just as "one-gun-a-month" rule in *Nguyen* acted as a meaningful constraint in limiting purchases to one gun a month. "If the frequency with which constitutional rights can be exercised could be regulated in this manner without infringement, what would limit government from deciding that a right need" be exercised in ten days or three days? *Nguyen*, 140 F.4th at1243.

*Nguyen* adopted the reasoning and holding of *Heller v. District of Columbia*, 801 F.3d 264, 280, (D.C. Cir. 2015) (*Heller III*). *Nguyen*, 140 F.4th at 1242 ("The D.C. Circuit has held that limiting the number of firearms an individual can purchase or register within a 30-day period interferes with 'an individual's undoubted constitutional right to keep arms (plural) in his or her home.'"). In *Heller III*, the D.C. Circuit found that the District's bring-your-gun-to-the-station requirement unconstitutional because "common sense suggests that bringing firearms to the MPD

would more likely be a threat to public safety." 801 F.3d at 277. Hawaii's requirement is functionally identical to the one at issue in *Heller III*. Any decision sustaining the requirement would bring this Court into direct conflict with the D.C. Circuit, thus creating an inter-circuit conflict that his Court seeks to avoid "if at all possible." *United States v. Anderson*, 46 F.4th 1000, 1008 (9th Cir. 2022).

*Nguyen* also disposes of Hawaii's argument that any restriction involving the commercial sale of firearms is presumptively constitutional. *Nguyen* held that the one-gun-a-month requirement was "presumptively unconstitutional" and had a "presumption of invalidity" because the requirement constituted an infringement. *Nguyen*, 140 F.4th at 1243. Hawaii's reliance on *McRorey v. Garland*, 99 F.4th 831, 838-39 n.18 (5th Cir. 2024), (Supp. Br. at 12) is similarly misplaced. *McRorey* merely sustained a federal law that imposed enhanced background checks for firearms acquisitions by persons between the ages of 18 to 20 and found the requirement lawful "because such checks 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 99 F.4th at 837, quoting *Bruen*, 597 U.S. at 38 n.9.

Again, the requirements challenged here deal with restrictions imposed **after** a person has **passed** a background check and has thus been found to be entitled to own and possess a firearm. Neither the result nor reasoning of *McRorey* has any application to these kinds of restrictions. As explained in *Nguyen*, "[t]he delay in the

12

federal statute analyzed by *McRorey* served a presumptively valid purpose" (a background check), while in the case of the one-gun-a-month law at issue in *Nguyen* "delay *itself* is the purpose." 140 F.4th at 1243 (emphasis the court's). As *Nguyen* suggests, time periods regulating the exercise of Second Amendment rights are inherently arbitrary. *See Rahimi,* 602 U.S. at 692 (the regulation of arms must be for "permissible reason"). Nothing in *McRorey* or in *Nguyen* can be read as suggesting that **only** "de facto prohibitions" are covered by the text of the Second Amendment. *See Reese*, 127 F.4th at 590 n.2 ("the right to 'keep and bear" can 'implicate the right to purchase'").

Hawaii also speculates that the bring-your-gun-to-the-station requirement targets "ghost guns." Supp. Br. at 7. But the text of H.R.S. §134-3(b) applies to all "firearms" that are "acquired from a person who is not a dealer," providing that "the firearm shall be physically inspected by the chief of police of the appropriate county or designee at the time of registration," which is "within five days of acquisition." Nothing in that in that language is limited to so-called ghost guns. The district court could not "locate any additional legislative history … addressing the purpose of this requirement." 1-ER-068. Hawaii's argument is also waived because it was never raised below. *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990); *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990).

**D.    Plaintiffs Brought an As-Applied and a Facial Challenge**

Hawaii claims that Plaintiffs have to show that Hawaii's "laws are unconstitutional in all their applications." That argument is foreclosed by precedent. In *Wolford v. Lopez*, 116 F.4th 959, 984 (9th Cir. 2024), *cert. granted*, 2025 WL 2808808 (Oct. 03, 2025)(quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted)), this Court stated that "to succeed on a facial challenge, Plaintiffs must show either that the law is 'unconstitutional in every conceivable application' or that the law 'seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.'" This suit satisfies that test. The statute on its face requires **every** civilian purchaser like Plaintiffs to bring their firearm to the station within five days to register it. Hawaii has not carried its burden of showing an historical analogue for that requirement. The requirement is invalid on its face, just as the D.C. Circuit ruled in *Heller III* in holding that the District of Columbia's identical requirement was facially unconstitutional. There is no textual or historical justification for the requirement that every applicant must purchase a firearm within an artificially constrained thirty-day window or satisfy a "bring-your-gun-to-the-station" requirement.

But even if Hawaii were correct, Plaintiffs have also brought an as-applied challenge. *See* 3-ER-432-433 (Prayer for Relief) (An order preliminarily and permanently enjoining Defendant…from enforcing Defendant's requirement that

firearm registration applicants bring their firearms to the station in order for them to be registered, both as-applied to Plaintiffs and facially."); *See also* 3-ER-433 ("An order…enjoining Defendant...from enforcing the…law regarding the expiration of permits to acquire after ten days of issuance both as applied and facially"). Thus, even if Hawaii were correct regarding their arguments regarding Plaintiffs' facial challenge, this Court should still rule in Plaintiffs' favor in their as-applied challenge. *See Citizens United v. FCC*, 558 U.S. 310, 331 (2010) ("the distinction between facial and as-applied challenges" merely "goes to the breadth of the remedy employed by the Court, not what must be pleaded").

Hawaii again asks this Court to remand so that the district court can "make the appropriate findings regarding Plaintiffs' as-applied challenge and to appropriately tailor the relief." Supp. Br. at 15. That request is nothing new. Hawaii has requested or discussed remand no less than four other times. *See* DktEntry 45 (remand after *Bruen*); DktEntry 52-1 (seeking remand "notwithstanding the ruling of the motions panel"); DktEntry 80 (motion to dismiss and remand to dismiss); DktEntry 114 (petition for en banc rehearing). That pattern and the latest request suggest that Hawaii is motivated by nothing more than a desire for delay for the sake of delay. This Court should follow the lead of *Reese* where the Fifth Circuit ruled on the merits and remanded "for further proceedings consistent with this opinion."

*Reese,* 127 F.4th at 600. Hawaii can renew its tailoring arguments in district court after such a remand if it so desires.

## II. THE INJUNCTION DOES NOT VIOLATE *CASA*

Hawaii claims the district court's injunction is a "universal injunction" under *Trump v. CASA, Inc.,* 606 U.S. 831 (2025), asserting that the court's order bars the government from "enforcing the law against *anyone*, anywhere." Supp. Br. at 17, quoting *CASA*, 606 U.S. at 837 & n.1. Again, not so. In *CASA,* the district court "entered a universal preliminary injunction barring various executive officials from applying the policy to anyone in the country." 606 U.S. at 839. Here, in contrast, the court's order declares the two requirements to be unconstitutional and enjoined enforcement. It did not apply that order "to anyone in the country."

In *Perdomo v. Noem*, 148 F.4th 656, 686 (9th Cir. 2025), this Court considered a "TRO enjoining a certain practice of suspicionless stops within the Central District of California," and held that the TRO was **not** an "impermissible 'universal' injunction like the ones disapproved in *CASA*." This Court said "[o]ne obvious difference is geographical: the injunction here is not national, but limited to one judicial district." *Id*. So too here. The Court's decision in *CASA* was intended to allow the federal government to exercise its unique right to relitigate the same issue in other judicial districts. *See CASA*, 606 U.S. at 852 & n.13, citing *United States v. Mendoza,* 464 U.S. 154 (1984). Such concerns are absent here.

16

Hawaii relies on this Court's order in *AFGE v. Trump*, --- F.4th ----, 2025 WL 2716266 (9th Cir. Sep. 19, 2025) at *6, for the proposition that "[r]emand will allow the district court to tailor any possible injunction in light of *CASA*." Supp. Br. at 18. But the district court in *AFGE* issued a wide-ranging injunction against 22 separate federal agencies and that decision was promptly stayed in a 8-1 decision by the Supreme Court. *AFGE v. Trump*, 784 F. Supp. 3d 1316 (N.D. Cal. 2025), *stayed, Trump v. AFGE*, 145 S.Ct. 2635 (July 8, 2025). In contrast, the district court's decision in this case does not purport to bind anyone other than the parties and is no broader than necessary to "administer *complete relief between the parties*." *CASA*, 606 U.S. at 851 (citation omitted) (emphasis the Court's).

Ultimately, Hawaii's demand for a *CASA* remand is much ado about very little. At the very least, Plaintiffs are entitled to have the injunction affirmed on their as-applied claims. Such an affirmance will be binding circuit precedent and will control all future challenges to these laws by other parties as a matter of vertical *stare decisis*. *NIH v. APHA*, 145 S.Ct. 2658, 2664 (2025) (Gorsuch, J., concurring). It may even prompt Hawaii to amend its law. Hawaii "'has no legitimate interest in enforcing an unconstitutional' law." *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 854 (E.D. Cal. 2018) (citation omitted).

## CONCLUSION

This Court should vacate the grant of en banc rehearing and reinstate the panel decision or, alternatively, affirm the judgment below.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
2692 Harcourt Drive
San Diego, CA 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

18

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of the Clerk's Order dated August 29, 2025 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,153 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

November 11, 2025          */s/ Stephen D. Stamboulieh*
                                     Stephen D. Stamboulieh

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2025, I filed the foregoing Appellees' Supplemental Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh