No. 21-16756

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TODD YUKUTAKE, et al.,

*Plaintiff-Appellees*,

v.

ANNE E. LOPEZ,

*Defendant-Appellant,*

and

CITY AND COUNTY OF HONOLULU,

*Defendants.*

On Appeal from the United States District Court
for the District of Hawaii
No. 1:19-cv-00578 (Hon. M. Seabright)

## THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION'S AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF-APPELLEES AND IN SUPPORT OF AFFIRMANCE

Michael T. Jean
U.S. Sportsmen's Alliance Foundation
801 Kingsmill Parkway
Columbus, Ohio 43229
Tel: (248) 508-9765

*Attorney for Amicus Curiae U.S.
Sportsmen's Alliance Foundation*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Amicus Curiae, the U.S. Sportsmen's Alliance Foundation submits the following corporate disclosure statement:

The U.S. Sportsmen's Alliance Foundation is a 501(c)(3) non-profit organization, incorporated in the state of Ohio, with its principal place of business in Columbus, Ohio. U.S. Sportsmen's Alliance Foundation is not publicly traded and has no parent corporation. There is no publicly held corporation that owns 10 percent or more of its stock.

Date: November 20, 2025,    Respectfully submitted:


*/s/ Michael T. Jean*
Michael T. Jean

*Attorney for Amicus Curiae U.S. Sportsmen's Alliance Foundation*

ii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT................................................ii

TABLE OF CONTENTS ...................................................................iii

TABLE OF AUTHORITIES ...............................................................iv

INTEREST OF AMICUS...................................................................1

ARGUMENT ..................................................................................2

    I.   HAWAII'S LAWS ARE UNCONSTITUTIONAL. ..............................2

      A.   Hawaii's laws burden conduct protected by Second Amendment's text................................................................................2

      B.   Hawaii bears the burden to justify its laws. .........................................4

      C.   Hawaii cannot avoid its burden by claiming that its laws are merely part of a shall-issue regime. ..................................................5

      D.   The 30-day permit expiration is not part of our historical tradition of firearms regulation. ...............................................................7

          1.   The 30-day expiration date's purpose is to control a fundamental right............................................................................ 8

          2.   Hawaii has not identified relevantly similar analogues to the 30-day expiration date..................................................... 11

      E.   The in-person inspection requirement is not part of our historical tradition of firearms regulation...........................................15

          1.   The in-person inspection requirement is not relevantly similar to any historical analogues........................................... 17

CONCLUSION........................................................................... 18

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ................... 20

CERTIFICATE OF SERVICE ........................................................ 21

# TABLE OF AUTHORITIES

## Cases

*B & L Prods., Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024) ............................................................3

*Biddle v. Perovich*,
274 U.S. 480 (1927).........................................................................14

*Bondi v. VanDerStok*,
604 U.S. 458 (2025).........................................................................16

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
473 U.S. 432 (1985).........................................................................10

*D.C. v. Heller*,
554 U.S. 570 (2008) ................................................................. passim

*Drummond v. Robinson Twp.*,
9 F.4th 217 (3d Cir. 2021)......................................................... 4, 6, 9

*Fla. Comm'r of Agric. v. Att'y Gen. of United States*,
148 F.4th 1307 (11th Cir. 2025) ........................................................2

*Heller v. D.C. ("Heller II")*,
670 F.3d 1244 (D.C. Cir. 2011).................................................. 5, 9, 11

*Heller v. D.C. ("Heller III")*,
801 F.3d 264 (D.C. Cir. 2015).........................................................17

*Hilao v. Est. of Marcos*,
393 F.3d 987 (9th Cir. 2004).............................................................8

*Kelly v. Comm'r of Internal Revenue*,
139 F.4th 854 (9th Cir. 2025) ............................................................9

*Kennedy v. Louisiana*,
554 U.S. 407 (2008)...........................................................................5

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) ...................................................................... passim

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*,
590 U.S. 336 (2020)...........................................................................8

*Nguyen v. Bonta*,
140 F.4th 1237 (9th Cir. 2025) .................................................. 2, 8, 11

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1955).............................................................................6

*Ortega v. Grisham*,
148 F.4th 1134 (10th Cir. 2025) ........................................................2

*Rhode v. Bonta*,
   145 F.4th 1090 (9th Cir. 2025) ............................................... 4, 7, 13

*State v. Lavoie*,
   573 P.3d 633 (Haw. 2025) ...............................................................17

*State v. Samonte*,
   928 P.2d 1 (Haw. 1996) ..................................................................17

*State v. Slavik*,
   501 P.3d 312 (Haw. App. 2021)............................................ 7, 15, 16

*United States v. Jackson*,
   85 F.4th 468 (8th Cir. 2023) ..........................................................13

*United States v. Rahimi*,
   602 U.S. 680 (2024)............................................................... passim

*United States v. Wilson*,
   32 U.S. (7 Pet.) 150 (1833) ............................................................14

*Yukutake v. Conners*,
   554 F. Supp. 3d 1074 (D. Haw. 2021)..................................... passim

*Yukutake v. Lopez*,
   130 F.4th 1077 (9th Cir. 2025) ...................................................3, 14

## Statutes

18 U.S.C. § 922(g)............................................................................ 10

1994 Hawaii Laws Act 204 (S.B. 2393) ...................................... 15

Haw. Rev. Stat. § 134-2(a) ............................................................. 7

Haw. Rev. Stat. § 134-2(b)-(e) ....................................................... 7

Haw. Rev. Stat. § 134-2(e) .......................................................... 8, 9

Haw. Rev. Stat. § 134-2(f) ............................................................ 16

Haw. Rev. Stat. § 134-3(c) ............................................................ 15

Haw. Rev. Stat. § 134-7 ................................................................ 10

## Other Authorities

Akhil Reed Amar, *The Bill of Rights* (1998)..............................12, 18

Black's Law Dictionary (12th ed. 2024)...................................... 15

Frederick Bernays Wiener, *The Militia Clause of the Constitution*,
   54 Harv. L. Rev. 181 (1940) ...................................................... 12

Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*,
   62 Tenn. L. Rev. 461 (1995)....................................................... 12

Transcript of Oral Argument, *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336 (2020) (No. 18-280).............................. 9

**Constitutional Provisions**

U.S. Const. amend. II. ............................................................................11

U.S. Const. art. I, § 8, cl. 15. ...............................................................12

## INTEREST OF AMICUS[1]

The U.S. Sportsmen's Alliance Foundation is an Ohio-based non-profit organization, incorporated under § 501(c)(3) of the Internal Revenue Code. It is dedicated to promoting and educating the public about our hunting, fishing, and trapping heritage, and science-based wildlife management. Sportsmen's Alliance Foundation achieves its mission through public education and issue research, conducted both on its own and through partnerships with local sportsmen and conservation organizations. It also engages in litigation to protect the beneficial pursuits of hunting, trapping, fishing, and scientific wildlife management. Sportsmen's Alliance Foundation has organizational members, including its parallel entity, the U.S. Sportsmen's Alliance, a § 501(c)(4) non-profit, whose membership consists of individuals across the country, including the Aloha State.

Sportsmen have an interest in defending the Second Amendment. Firearms are part and parcel of our hunting heritage. Hunting is one of the core, lawful purposes for which arms can be kept under the Second Amendment, and

---

[1] All parties consented to the filing of this brief. No counsel for a party authored this brief in any way. No party or party's counsel made contributions to fund the preparation or submission of this brief. No person, other than the Sportsmen's Alliance Foundation, its members, or its counsel, made contributions to fund the preparation or submission of this brief.

many people value hunting more than the more-frequently cited purposes behind the Second Amendment. *D.C. v. Heller*, 554 U.S. 570, 583 n.7, 599 (2008).

## ARGUMENT

### I. HAWAII'S LAWS ARE UNCONSTITUTIONAL.

The "right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (citation omitted). It "is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022) (citation omitted). "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. And "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. (citation omitted).

### A. Hawaii's laws burden conduct protected by Second Amendment's text.

Courts uniformly agree that the right to keep and bear arms necessarily includes the right to acquire them. *Nguyen v. Bonta*, 140 F.4th 1237, 1240 (9th Cir. 2025); *Fla. Comm'r of Agric. v. Att'y Gen. of United States*, 148 F.4th 1307, 1317 (11th Cir. 2025); *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025). Be-

cause Hawaii is "regulat[ing] arms-bearing conduct ... it bears the burden to justify its regulation." *Rahimi*, 602 U.S. at 691 (quotations omitted).

*Heller*, however, singled out "longstanding ... laws imposing conditions and qualifications on the *commercial sales* of arms" as being "presumptively lawful." 554 U.S. at 627, *id.* n.26 (emphasis added); *Rahimi*, 602 U.S. at 724 (Kavanaugh, J., concurring) (noting that "reasonably consistent and longstanding" post enactment laws can "be probative of the meaning of vague constitutional text."). Here, "[t]he challenged provisions ... are not longstanding." *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1077 (D. Haw. 2021), *aff'd and remanded sub nom. Yukutake v. Lopez*, 130 F.4th 1077 (9th Cir. 2025), *reh'g en banc granted, opinion vacated*, 144 F.4th 1119 (9th Cir. 2025). And even if they were, [f]or any law to be 'presumptively lawful,' it necessarily must not implicate the plain text of the Second Amendment. Otherwise, *Bruen* makes clear that the Constitution would 'presumptively *protect* that conduct,' and the government would bear the burden of identifying a historical tradition of similar regulation." *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024) (emphasis in original) (alterations and citations omitted). And this Court has already ruled that a law requiring arms to be purchased "during a specified period of time ... after passing a background check" "meaningfully constrains ... the right to keep and bear arms" and "is not a 'presumptively lawful regulatory measure.'" *Rhode*

*v. Bonta*, 145 F.4th 1090, 1107, 1109 n.23 (9th Cir. 2025) (citations omitted). Thus, the presumptively lawful exemption does not apply.

**B.    Hawaii bears the burden to justify its laws.**

Hawaii "bears the burden to 'justify its regulation.'" *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 24). It must show that the regulations are "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. And the "court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the *founding generation* to modern circumstances.'" *Rahimi*, 602 U.S. at 692 (alterations and citations omitted) (emphasis added). "Why and how the regulation burdens the right are central to this inquiry." *Id.* at 692 (citing *Bruen*, 597 U.S. at 29). Put simply, the Court must determine if Hawaii's regulation "works in the same way and does so for the same reasons" as the historical regulations. *Id.* at 711 (Gorsuch, J., concurring). In so doing, it must "be careful not to read a principle at such a high level of generality that it waters down the right." *Id.* at 740 (Barrett, J., concurring).

The historical analogues must be both "well[ ]established and representative." *Bruen*, 597 U.S. at 30. This ensures against "'endorsing outliers that our ancestors would never have accepted.'" *Id.* at 30 (quoting *Drummond v. Robinson Twp.*, 9 F.4th 217, 226 (3d Cir. 2021) (abrogated on other grounds by *Bruen*)).

As then-Judge Kavanaugh opined, the historical analogues must have been "common in the states," and six state laws are *not* enough. *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1292 (D.C. Cir. 2011) (dissenting opinion) (citing *Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008)).

### C. Hawaii cannot avoid its burden by claiming that its laws are merely part of a shall-issue regime.

The bulk of Hawaii's supplemental en banc brief, Dkt. 148, attempts to avoid its burden by claiming that its regulations are merely part of a shall-issue regime in accordance with footnote 9 of *Bruen. Bruen*, 597 U.S. at 39 n.9. This argument fails.

The federal government made a similar argument in *Rahimi*. It locked in on language from *Heller* and *Bruen* stating that the Second Amendment applies to "responsible" citizens. *Heller*, 554 U.S. at 635; *Bruen*, 597 U.S. at 70. It then claimed that the prohibition on individuals subject to domestic-violence restraining orders was constitutional "simply because [Rahimi] is not 'responsible.'" *Rahimi*, 602 U.S. at 701. The Court rejected that argument because responsible is a "vague term" and the cases said nothing about who is or is not responsible. *Id*. It also emphasized that the question of who a responsible person is was "simply not presented" to the Court in those cases, *id.*, even though the central holding in *Heller* was whether the Second Amendment protects the indi-

vidual's right to possess a firearm, 554 U.S. at 595.

While *Bruen* elaborates more on certain aspects of shall-issue regimes than the Supreme Court previously did on responsible citizens, that does not save Hawaii. Footnote 9 says that the Court's opinion should not be interpreted to suggest that objective-based permitting regimes that "are designed to ensure *only* that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens,'" are unconstitutional. *Bruen*, 597 U.S. at 39 n.9 (emphasis added). But it does not apply to permitting regimes that are "put towards abusive ends," through, among others, "tim[ing]" restrictions. *Id*. Footnote 9 shows that the individual features of the permitting regime—not the permitting requirement in general—are examined. And footnote 9 expressly does "not rule out constitutional challenges to shall-issue regimes." *Id*. Thus, Hawaii cannot merely recite the phrase "shall issue" and avoid its burden to justify the law. *Drummond*, 9 F.4th at 233 (The government cannot "immunize its own [regulations] from review merely by mentioning public safety.").

The question in *Bruen*, moreover, concerned whether the state had inherent discretion to decide who could exercise their Second Amendment rights. Footnote 9's dicta "must be read in the context of the litigation before the court." *Norwood v. Kirkpatrick*, 349 U.S. 29, 42 n.2 (1955) (Clark, J., dissenting). And the types of abusive means were simply not before the court in *Bruen*.

In any event, this Court has already rejected such an argument. The relevant question is what specific conduct is being regulated, i.e., what does regulation prevent the individual from doing? *Rhode*, 145 F.4th at 1106 n.15 (rejecting California's attempt to broadly frame the *Bruen* analysis as "'purchasing ammunition without complying with any background check requirements.'"). In so doing, the Court held that footnote 9 concerned "one-time background checks to ensure" that the individual was not among the types of dangerous people that can be disqualified from possessing arms. *Id*. at 1112; *see also id.* at 1109 n.23. "This 'how' is unlike the burden imposed by the challenged restrictions on [individuals] who must undergo checks prior to each … purchase," and then must make the purchase within a specific "window." *Id*. at 1112, 1117. Hawaii's restrictions also do not come into play until after the background check is passed.

### D. The 30-day permit expiration is not part of our historical tradition of firearms regulation.

To obtain a firearm in Hawaii, one must first obtain a permit to purchase it. Haw. Rev. Stat. § 134-2(a); *State v. Slavik*, 501 P.3d 312, 327–28 (Haw. App. 2021), *as corrected* (Apr. 8, 2022). The individual must complete a state-issued form, provide their personal background information and information about the firearm, and undergo a background check. Haw. Rev. Stat. § 134-2(b)-(e). The law *forbids* the licensing agency from issuing the permit for 14 days after the ap-

plication was submitted but requires it to be issued or denied within 40 days of submission. Haw. Rev. Stat. § 134-2(e). An individual must acquire a permit for each handgun that they purchase, and the handgun permit expires in 30 days. *Id*. A long gun permit, however, is valid for a year and entitles the individual to make as many purchases as they wish until the permit expires. *Id*.

### 1. *The 30-day expiration date's purpose is to control a fundamental right.*

Here, the purpose for the 30-day expiration is to "control" the right to acquire a firearm. Hawaii Opening Br. at *6, 15, 28, 29 (Dkt. 16); *Nguyen*, 140 F.4th at 1243 (finding that "delay *itself* is the purpose" of California's one-gun-per-month restriction) (emphasis in original). It has nothing to do with the spoilation of the background check or the individual subsequently becoming a prohibited person. Hawaii cannot escape that concession. *Hilao v. Est. of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004).

The Court, moreover, cannot blindly accept Hawaii's ulterior justification for the statute. In pre-*Bruen* precedents, courts often "accepted … with no serious probing" the government's "public safety arguments [that] were weak on their face." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 369–70 (2020) (Alito, J., dissenting). The oral argument in *New York State Rifle & Pistol Ass'n, Inc.* showed that that the government's purported safety

8

justification for the ordinance never existed. Justice Ginsburg noted that the city's regulatory regime forced people to leave guns unattended in second homes, thereby increasing their vulnerability to theft, and making the public less safe. Transcript of Oral Argument at *59, *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336 (2020) (No. 18-280).[2] And in response to a question from Justice Alito, the city's counsel conceded that city residents were *not* less safe after the ordinance was repealed. *Id*. at *52; *see also Drummond*, 9 F.4th at 233.

Hawaii's position is also not supported by "the statute's plain text[,] … structure, object, and policy." *Kelly v. Comm'r of Internal Revenue*, 139 F.4th 854, 857 (9th Cir. 2025). If a stale background check was the true concern, then long-gun permits would not be good for a year. Haw. Rev. Stat. § 134-2(e); *Heller II*, 670 F.3d at 1269 (Kavanaugh, J., dissenting) (There is no "constitutional distinction" between handguns and long guns.). And more telling, the legislature would not forbid the agency from issuing the permit within 14 days or give it up to 40 days to issue the permit. Haw. Rev. Stat. § 134-2(e). It would issue the permit as soon as possible to mitigate that problem.

---

[2] Available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-280_8nka.pdf (last visited November 18, 2025).

Common sense also suggests that it is not the true concern. What are the odds that in 30 days after passing a background check, the individual (1) gets convicted of a felony, (2) becomes a fugitive from justice, (3) becomes an unlawful user of or addict to a controlled substance; (4) gets adjudicated mentally defective or involuntary committed to a mental institution, (5) becomes an illegal alien, (6) gets dishonorably discharged from the armed forces, (7) renounces their citizenship, (8) becomes subject to a domestic-violence protective order, or (9) gets convicted of a misdemeanor crime of domestic violence? 18 U.S.C. § 922(g)(1)-(9); Haw. Rev. Stat. § 134-7. They are so low that Hawaii does not apply the restriction to long-gun purchases.

Controlling the exercise of a fundamental right, the true purpose of the requirement, is not a legitimate legislative function: "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. Those policy choices necessarily include regulating a fundamental right for the sake of controling it. *E.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985) (To survive rational basis review, the law must be "relevant to interests the State has the authority to implement."). It would also relieve Hawaii of its burden to justify its regulation under *Bruen*.

> **2.** *Hawaii has not identified relevantly similar analogues to the 30-day expiration date.*

**1.** In its opening brief, Hawaii could only identify three states—Massachusetts (1926), Michigan (1927), and Missouri (1921)—that had time limits on their permits to purchase. Dkt. 16 at *23–24. Three statutes are not enough to establish a tradition. *Heller II*, 670 F.3d at 1292 (Kavanaugh, J., dissenting), and 20th-century regulations are not insightful in the analysis, *Bruen*, 597 U.S. at 66 n.28.

**2.** The other analogues cited in its supplemental brief before the panel, Dkt. 52-1, fair no better. "[I]f a modern law 'regulates arms-bearing for a permissible reason,' it nonetheless violates the Second Amendment 'if it does so to an extent beyond what was done at the founding.'" *Nguyen*, 140 F.4th at 1244 (quoting *Rahimi*, 602 U.S. at 692). Each analogue fails accordingly.

**Militia laws**. The militia laws have no bearing on the 30-day expiration date. Hawaii Supplemental Br. at *8–19 (Dkt. 52-1). Second Amendment rights belong to "the people." U.S. Const. amend. II, i.e., "all Americans." *Rahimi*, 602 U.S. at 752 (citation and quotations omitted). But the militia historically "consisted of a subset of 'the people.'" *Heller*, 554 U.S. at 580. Any restriction on the militia would therefore not be particularly useful in determining the "outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19;

*Yukutake*, 554 F. Supp. 3d at 1087.

Militia laws nevertheless flunk *Bruen's* relevantly similar test. The purpose of the militia laws was not to "control" how one exercises their individual right. Nor do they have any relation to Hawaii's purported ulterior motive of ensuring that an individual does not become a prohibited person before they acquire their firearm. Their purpose is spelled out in the Constitution: "to execute the Laws of the Union, suppress Insurrections and repel Invasions." U.S. Const. art. I, § 8, cl. 15. "[T]he Founders conceived [the militia] to be 'the *Palladium of our security*.'" Frederick Bernays Wiener, *The Militia Clause of the Constitution*, 54 Harv. L. Rev. 181, 182 (1940) (citation omitted) (emphasis added). While the Second Amendment was "'considered as the true *palladium of liberty*.'" *Heller*, 554 U.S. at 606 (citation omitted) (emphasis added).

Some scholars have also noted that the militia service shares qualities with another "Constitutional institution"—jury duty, Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 486 (1995)—both are "local institution[s], bringing together representative citizens to preserve popular values of society," Akhil Reed Amar, *The Bill of Rights* 56 (1998) ("Amar"). Relying on these "principle[s] at such a high level of generality … waters down the right." *Rahimi*, 602 U.S. at 740 (Barret, J., concurring). They are not relevantly similar.

**Loyalty Oaths**. Hawaii next turns to loyalty oaths. Supplemental Br. at *20–22 (Dkt. 52-1). "Loyalty oaths were a way to tell who might start a rebellion or raise arms against others. They also gave individuals a way to show they were not as dangerous as the government thought." *United States v. Jackson*, 85 F.4th 468, 476 (8th Cir. 2023) (Stras, J., dissenting from the denial of en banc review). Hawaii claims that they satisfy the how and why test and impose "a burden similar to a *permit to acquire*." Supplemental Br. at *2–22 (Dkt. 52-1). This Court, however, rejected that argument when California cited loyalty oaths to justify its ammunition-background-check regime. *Rhode*, 145 F.4th at 1111.

Instead, loyalty oaths serve as an exception to the well-established principle "'that legislatures have the power to prohibit dangerous people from possessing guns.'" *Rahimi*, 602 U.S. at 740 (Barrett, J., concurring). They are based on a predicate finding that the individual belonged to a class of dangerous people that may be disarmed. *Id.* at 700. This is another overly broad interpretation of the Second Amendment's historical tradition that "waters down the right." *Rahimi*, 602 U.S. at 740 (Barret, J., concurring). Moreover, an individual who just passed a background check poses no credible threat to the safety of others to require an exemption. The how and why are completely different.

**Pardons**. Hawaii also invoked the pardon power as a historical analogue. Supplemental Br. at *22–26 (Dkt. 52-1). In the earlier years of the republic, the

pardon was considered "an act of grace, proceeding from the power intrusted [sic.] with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833). A century later, that was largely the same, except for the "act of grace" classification: "a pardon … is not a private act of grace…. It is part of the Constitutional scheme. When granted it is the determination of the ultimate authority that public welfare will be better served by inflicting less what the judgment fixed." *Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (citation omitted). An unconditional pardon's restoration of an individual's civil rights shows that they are one narrow exception to the fact "'that legislatures have the power to prohibit dangerous people from possessing guns.'" *Rahimi*, 602 U.S. at 740 (Barrett, J., concurring). This fails for the same reason that loyalty oaths fail.

\* \* \*

All of Hawaii's arguments miss the mark in the same vein: they are not relevantly similar analogues. They are not even relevantly close analogues. *Yukutake*, 130 F.4th at 1096 n.10 (calling Hawaii's analogies "strained"). Hawaii's arguments should be rejected, and the Court should rule that the 30-day permit expiration violates the Second Amendment.

**E.      The in-person inspection requirement is not part of our historical tradition of firearms regulation.**

Once a person obtains a permit to purchase a firearm and acquires it, Hawaii gives them five days to register it. Haw. Rev. Stat. § 134-3(b). And if that firearm was acquired from a non-licensed dealer, "the firearm shall be physically inspected by the chief of police of the appropriate county or designee at the time of registration." *Id.*

Hawaii wrongly claims the "in-person inspection requirement was only passed in 2020 as part of Act 74." Opening Br. at *53 (Dkt. 16). Since at least 1994, Hawaii law *expressly exempted* licensed dealers from having their "firearms physically inspected by the chief of police at the time of registration." Haw. Rev. Stat. § 134-3(c); 1994 Hawaii Laws Act 204 § 4 (S.B. 2393). There is no reason to draft a statutory exemption unless there is a predicate statutory "duty." *E.g.*, EXEMPTION, Black's Law Dictionary (12th ed. 2024). And that was how the law was interpreted throughout the state. As the district court noted, although the obligation was not "expressly" required by the statute, "the Honolulu Police Department … implemented § 134-3 by requiring applicants to register their firearms in person." *Yukutake*, 554 F. Supp. 3d at 1079 n.5. That was the Hawaii County Police Department's process, too. *Slavik*, 501 P.3d at 318–19 (Police officer testified that the "applicant then must bring the unloaded firearm for an

15

inspection," at a trial "held on January 2 and 3, 2019."). The district court also correctly ruled that the amendment was *not* enacted to address the purported problem of "ghost guns—firearms that are assembled 'without serial numbers or other identification markings.'" *Yukutake*, 554 F. Supp. 3d at 1089 n.15. Instead, the amendment's purpose was to "'amend certain requirements relating to firearms registration.'" *Id*. This makes sense because Hawaii always required firearms to be inspected in person, and "ghost guns" were not common until "the introduction of new technologies like 3D printing and reinforced polymers." *Bondi v. VanDerStok*, 604 U.S. 458, 463 (2025) (citation omitted).

Moreover, the permit to purchase the firearm gives the transferor 48 hours to supply the "names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable." Haw. Rev. Stat. § 134-2(f). That firearm, like all firearms in the state, must already be registered. *Slavik*, 501 P.3d at 329. The purchaser must also supply that information when they register the firearm. Haw. Rev. Stat. § 134-3(b). The agency, therefore, already has this data from multiple inputs and can readily identify whether the individual is trying to acquire or register an illegal firearm.

Again, this regulatory regime is—and always was—about controlling the way people exercise their right to acquire firearms.

  ***1. The in-person inspection requirement is not relevantly similar to any historical analogues***.

**1.** In-person registration requirements like Hawaii's have been invalidated for failing intermediate scrutiny under pre-*Bruen* Second Amendment jurisprudence. *Heller v. D.C. ("Heller III")*, 801 F.3d 264, 277 (D.C. Cir. 2015). The D.C. Circuit ruled that "common sense suggests a person would not go to the trouble of obtaining a registration certificate for a weapon other than a weapon in his possession. On the contrary, common sense suggests that bringing firearms to the [police station] would more likely be a threat to public safety." *Id*. Hawaiian courts and the legislature have made the same observation: "'[l]icensed or registered firearms owners very seldom commit crimes with their guns.'" *State v. Samonte*, 928 P.2d 1, 29 (Haw. 1996), *abrogated on other grounds State v. Lavoie*, 573 P.3d 633 (Haw. 2025) (quoting legislative history). These requirements flunk the common-sense test, which necessarily makes them uncommon. Laws that lack common sense, moreover, cannot be presumptively lawful and are not relevantly similar to our tradition of firearms regulation.

**2.** All of Hawaii's cited analogues fail for the same reasons above. Only the militia laws require further explanation.

While many of the early militia laws required that arms be inspected, these were not for the same purpose as controlling the acquisition of firearms, or the

purported reason of restricting ghost guns. "[T]he militia system was carefully designed to protect liberty through localism." Amar at \*55–56. It was *not* part of the historical tradition of restricting constitutional liberties. And the inspection process worked very differently. During a typical founding-era muster, the militia "'assembled on public grounds, held roll call and prayer, practiced the manual of arms and close order drill, and passed under review and inspection by the militia officers and other public officials. There might also be target practice and sham battles followed … by refreshments, games and socializing.'" *Id.* at \*55 n.\* (citation omitted). The inspection was clearly part of a much bigger process. The district court correctly noted that "the purpose of the militia laws was to ensure that the armed forces maintained weapon stockpiles suitable for the nation's defense and warfare needs." *Yukutake*, 554 F. Supp. 3d at 1087. This, again, fails the how and why test, and the restriction should be struck down.

## CONCLUSION

For the forgoing reasons both the panel's decision and the district court's decision should be affirmed.

Date: November 20, 2025,     Respectfully submitted:

/s/ Michael T. Jean
Michael T. Jean, MI Bar No. p76010
U.S. Sportsmen's Alliance Foundation
801 Kingsmill Parkway

Columbus, Ohio 43229
Tel: (248) 508-9765

*Attorney for Amicus Curiae U.S. Sportsmen's
Alliance Foundation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-16756

I am the attorney or self-represented party.

**This brief contains** | 4,103 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | 08/28/2025 |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Michael T. Jean | **Date** | 11/20/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Date: November 20, 2025            */s/ Michael T. Jean*
                                   Michael T. Jean

                                   *Attorney for Amicus Curiae U.S.*
                                   *Sportsmen's Alliance Foundation*